**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated,<br><br>                 Plaintiffs,<br><br>    v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>                 Defendant. | Mis. Case No.  3:26-mc-80036-TSH<br><br>(CASE NO. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANT GT'S LIVING FOODS, LLC, DAVIS, WRIGHT, TREMAINE, AND ATTORNEYS JACOB HARPER AND JOSEPH ELIE-MEYERS.**<br><br>Date:  April 2, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Thomas S. Hixon |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2026, at 10:00 a.m., before the Honorable Thomas S. Hixon of the United States District Court for the Northern District of California, Courtroom E, 15th Floor, San Francisco Courthouse, non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. (the "Non-Parties") will, and hereby do, move for an order issuing sanctions on Defendant GT's Living Foods, LLC, the law firm of Davis, Wright, Tremaine, and attorneys Jacob Harper and Joseph Elie-Meyers.

This Motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, the supporting Declaration of Yeremey Krivoshey, all other papers in this proceeding, and such oral argument as may be heard by the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should sanction Defendant GT's Living Foods, LLC, the law firm of Davis, Wright, Tremaine, and attorneys Jacob Harper and Joseph Elie-Meyers for discovery abuse concerning their subpoena to the Non-Parties issued in connection with *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS ("*Patel*"), in the form of monetary sanctions, and requiring attorneys Harper and Elie-Meyers to either present or attend CLE, or any alternative form of sanction the Court determines is warranted.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   TIMELINE OF RELEVANT FACTS......................................................................3

    A.    December 2019 – December 2025: The Procedural Background Of
*Patel* Leading Up To The Current Dispute ...............................................3

        1.    The Non-Parties' Prior Involvement In *Patel* And The Close
Of Discovery In 2021 ...........................................................................3

        2.    The Non-Parties' Withdrawal From The *Patel* Matter In 2024 .................3

        3.    The December 2025 Order Re-Opening "Limited Discovery"
Concerning New Plaintiffs in *Patel*................................................5

        4.    December 2025 - January 2026: Defendant Obtains All Responsive
Agreements And The *Patel* Plaintiffs Testify About The
Non-Parties' Lack Of Involvement In The Matter .....................................5

    B.    January 29, 2026: Defendant's First Subpoena To The Non-Parties .....................8

    C.    February 4, 2026: Defendant's Second Subpoena To The Non-Parties.................9

    D.    February 6, 2026: The Non-Parties Learn That Defendant Failed
To Provide Notice Of The Second Subpoena........................................................10

    E.    February 9, 2026: Defendant's Counsel Makes A Series Of False
Statements And Omissions During The Meet And Confer Call ..........................10

    F.    February 10, 2026: Defendant Refuses To Continue Or Vacate The
Deposition Date While Effectively Admitting That Discovery Is Closed ...........13

    G.    February 11, 2025: Defendant's Counsel's Pretextual Statements
Concerning The Reason For And Timing Of The Subpoena ...............................13

    H.    February 18, 2025: Defendant Admits That The Prior Justification For
The Subpoena Was False And That They Were Always Seeking
Information Available From The *Patel* Plaintiffs ...............................................15

III.  ARGUMENT ....................................................................................................16

    A.    Sanctions Are Warranted Under Four Applicable Legal Standards.....................16

    B.    The Record Supports Sanctions Here...................................................................18

    C.    Under *Duong*, The Last-Minute Withdrawal Of The Subpoena Does
Not Moot The Motion For Sanctions ...................................................................21

D.    The Court Should Award Sanctions To Compensate For The Misconduct In This Case And To Deter Future Misconduct ................................22

1.    The Court Should Require Defendant's Counsel To Present CLE, Or At A Bare Minimum, Attend CLE In Person ............................22

2.    The Court Should Award Fees And Order Supplemental Briefing On The Appropriate Amount .......................................................23

IV.    CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. BNSF Railway Co.*,
  681 F. Supp. 3d 899 (S.D. Iowa 2023)................................................................20

*Bergeron v. Northwest Publications Inc.*,
  165 F.R.D 518 (D. Mn. Apr. 24, 1996)................................................................23

*Blixseth v. Yellowstone Mountain Club, LLC*,
  796 F.3d 1004 (9th Cir. 2015)................................................................18

*Blixseth v. Yellowstone Mountain Club, LLC*,
  854 F.3d 626 (9th Cir. 2017)................................................................23

*California v. The Kroger Co.*,
  2024 WL 4453267 (C.D. Cal. Oct. 9, 2024) ................................................................21

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)................................................................18

*Claypole v. Cnty. of Monterey*,
  2016 WL 145557 (N.D. Cal. Jan. 12, 2016) ................................................................20

*D'Amico v. N & D Restaurants, LLC*,
  2025 WL 3158124 (C.D. Cal. Sept. 24, 2025)................................................................19

*Davila v. Roblen, LLC*,
  2026 WL 323134 (D. Conn. Feb. 6, 2026) ................................................................2, 22

*Davis v. Los Angeles West Travelodge*,
  2010 WL 623657 (C.D. Cal. Feb. 3, 2010)................................................................23

*Diversified Funding Grp., LLC v. Hendon*,
  2018 WL 1870029 (C.D. Cal. Jan. 4, 2018) ................................................................18

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
  2020 WL 6290374 (N.D. Cal. Oct. 27, 2020)................................................................22

*Duong v. Groundhog Enters., Inc.*,
  2020 WL 2041939 (C.D. Cal. Feb. 28, 2020)................................................................17, 18, 19, 21

*Effinger v. Ancient Organics LLC*,
  2024 WL 3643395 (N.D. Cal. Aug. 2, 2024)................................................................11, 21

*Equal Emp. Opportunity Comm'n v. Dillon Co.*,
  2010 WL 4134696 (D. Colo. Oct. 12, 2010) ...................................................................21

*Eugster v. Washington State Bar, Ass 'n 1933*,
  716 F. App'x 645 (9th Cir. 2018) ...................................................................................16

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001)..........................................................................................18

*Fujikura Ltd. v. Finisar Corp.*,
  2015 WL 5782351 (N.D. Cal. Oct. 5, 2015)...................................................................19

*Golikov v. Walmart*,
  2025 WL 3760635 (C.D. Cal. Dec. 19, 2025) ................................................................24

*Hawkins v. Kroger Co.*,
  2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) ................................................................21

*Hawkins v. Kroger Co.*,
  2020 WL 1952832 (S.D. Cal. Apr. 23, 2020) ............................................................21, 23

*Hawkins v. Kroger Co.*,
  2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ........................................................2, 3, 21, 23

*Haynes v. City & County of San Francisco*,
  688 F.3d 984 (9th Cir. 2012)..........................................................................................22

*In re Keegan Mgmt. Co.*,
  78 F.3d 431 (9th Cir. 1996).............................................................................................18

*In re Vialet*,
  460 Fed. Appx. 30 (2d Cir. 2012) ...................................................................................23

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
  2025 WL 917110 (N.D. Cal. Mar. 26, 2025)..................................................................20

*Koji IP, LLC v. Renesas Electronics Am., Inc.*,
  2025 WL 980796 (N.D. Cal. Mar. 31, 2025)..................................................................23

*Last v. M-I*,
  2022 WL 3012206 (C.D. Cal. May 19, 2022) ................................................................24

*Legal Voice v. Stormans Inc.*,
  738 F.3d 1178 (9th Cir. 2013)....................................................................................17, 18

*Mata v. Avianca, Inc.*,
  678 F. Supp. 3d 443 (S.D.N.Y. June 22, 2023) ..............................................................23

*Mount Hope Church v. Bash Back!*,
  705 F.3d 418 (9th Cir. 2012)..................................................................................16, 17, 18

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546, (1986) ...................................................................................................24

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
  2022 WL 2199029 (C.D. Cal. Feb. 9, 2022)...............................................................17

*Salmon v. CRST Expedited, Inc.*,
  2016 WL 3945362 (N.D. Okla. July 19, 2016)........................................................2, 22

*Scott v. Keller*,
  2010 WL 1267772 (E.D. Cal. March 31, 2010).........................................................19

*US v. CBS*,
  666 F.2d 364 (9th Cir. 1982)......................................................................................17

*User Profile Litig.*,
  655 F. Supp. 3d 899 (N.D. Cal. 2023) ..........................................................18, 22, 23

**Statutes**

28 U.S.C. § 1927 ...............................................................................................................17, 18

**Rules**

Fed. R. Civ. P. 30(b)(6) ........................................................................................................19

Fed. R. Civ. P. 45(d)(1) ...........................................................................................17, 18, 19

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    Introduction

After the close of discovery in *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS ("*Patel*"), the Defendant subpoenaed every law firm that had ever represented any plaintiffs in that six-year long case. Non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. (the "Non-Parties") moved to quash and filed a motion to shorten time when Defendant refused to vacate or continue the noticed deposition date. At 1 a.m. on February 18, 2026, the noticed compliance date, Defendant withdrew the subpoena, claiming that it had obtained what it wanted by forcing the Non-Parties to move to quash, even though Defendant already had the evidence it was purportedly searching for before serving the subpoena.

The Non-Parties seek an order issuing sanctions against Defendant and its counsel. The Non-Parties do not take this motion lightly, but the record of misconduct here is significant, and there is a long judicial record of litigation abuse by Defendant's counsel. Some of the more troubling behavior concerning the subpoena is briefly summarized here:

- ✓ ***Serving A Subpoena After Close of Discovery And Then Lying About It***: Discovery in *Patel* closed five years ago, except for limited discovery concerning certain newly added plaintiffs. Defendant's counsel lied about this fact during the meet and confer call. Serving a subpoena after the close of discovery is enough to warrant sanctions; lying about that fact is indefensible.

- ✓ ***Refusing To Continue the February 18 Deposition Date After Acknowledging Discovery Is Closed***: Defendant refused to continue or vacate the February 18, 2026, deposition date unless the Plaintiffs in *Patel* agreed to re-open full discovery. This shows that Defendant knew the subpoena was untimely and outside the scope of the limited fact discovery allowed in *Patel*.

- ✓ ***Violating Civility and Professionalism Guidelines In Scheduling***. Defendant's counsel knows that Mr. Krivoshey lives in Kentucky. Instead of contacting him to discuss the need for the deposition, its timing, or the need for travel, they quietly sent a process server to his home in Kentucky, and then to the law firm's agent for service of process without

providing notice to *Patel* parties. Then, as noted above, they refused to change the noticed deposition date and purported to require his appearance in California on short notice.

✓ ***Seeking Evidence Available From The Parties And Their Counsel***: Rule 45 requires, at a minimum, that a party attempt to seek discovery from the opposing party before burdening third parties. The evidence shows that Defendant attempted to stage the Non-Parties' depositions first, and then tried to hide that fact during the meet and confer call. Likewise, the only documents that Defendant sought from the Non-Parties were either already in Defendant's position, or available from the *Patel* Plaintiffs or their counsel. Defendant's counsel could not identify a single document Defendant believed the Non-Parties had that Defendant did not already have or could not get from the *Patel* counsel.

At least five other federal judges—including in this District—have criticized or sanctioned Defendant's counsel for "gamesmanship," "bad faith," frivolous filings, and ginning up bogus sanction motions on false pretenses. *E.g.*, *Hawkins v. Kroger Co.*, 2020 WL 6150040 at *2-4 (S.D. Cal. Oct. 20, 2020). Two judges commented that counsel appears to take the threat of monetary sanctions as an acceptable risk of bad behavior, and to this day, Defendant's lead counsel touts his "unorthodox tactics" to prospective clients. *See id.* at *4 (describing "the apparent inadequacy of simply issuing monetary sanctions"); *see also* Ex. K (attorney web bio page).[1]

Judicial intervention is necessary to deter future misconduct and make it clear that what transpired here is not acceptable. The Non-Parties therefore ask that in addition to monetary sanctions, the Court order Defendant's counsel to prepare and present a CLE on ethics and discovery practice on Lawline.com, at a local Bar Association, or another other public forum. There is ample authority for the Court to issue that form of sanction. *See*, *e.g.*, *Davila v. Roblen, LLC*, 2026 WL 323134, at *3 (D. Conn. Feb. 6, 2026); *Salmon v. CRST Expedited, Inc.*, 2016 WL 3945362, at *1-4 (N.D. Okla. July 19, 2016). Alternatively, in *Hawkins*, Magistrate Judge Godard ordered Defendant's counsel to attend eight hours of CLE in person, not inclusive of any CLE requirements already imposed by any state bar. Although District Judge Miller reluctantly overruled that sanction (but not

---

[1] Exhibits in this memorandum are attached to the supporting Declaration of Yeremey O. Krivoshey.

the monetary sanction), he did so only because the issue had not been sufficiently briefed. *See Hawkins*, 2020 WL 6150040 at *10. That will not be a problem here.

## II.    Timeline Of Relevant Facts

### A.    December 2019 – December 2025: The Procedural Background Of *Patel* Leading Up To The Current Dispute

#### 1.    The Non-Parties' Prior Involvement In *Patel* And The Close Of Discovery In 2021

*Patel* was a putative class action filed on December 27, 2019, by the four original Plaintiffs (who were later dismissed) and represented by Bursor & Fisher, P.A. and Westerman Law Corp. *See Patel* ECF No. 1.[2] At the time, Yeremey Krivoshey was the partner at Bursor & Fisher who was primarily responsible for handling the *Patel* matter (at the time, the "*Sharpe* matter"). Krivoshey Decl., ¶ 2. Fact discovery closed in April 2021, expert discovery closed in August 2021, and briefing on the motion for class certification closed shortly afterwards. *Id.* at ¶ 3. In late February 2024, while the parties were waiting for a decision on class certification, Mr. Krivoshey left Bursor & Fisher to start his own firm, Smith Krivoshey, P.C., but he remained an attorney of record in the case with his new law firm. *Id.* at ¶ 4.

#### 2.    The Non-Parties' Withdrawal From The *Patel* Matter In 2024

In June 2024, the district court denied the motion for class certification without prejudice due to a concern about Bursor & Fisher's involvement in a prior settlement concerning similar claims against Defendant, and the potential that the claims of the original four *Sharpe* Plaintiffs may be foreclosed by the prior settlement. *Patel* ECF No. 129. The district court ordered that any later motion for class certification address adequacy concerns related to the prior settlement. *Id.*, at 6. The law firm Dovel & Luner LLP then appeared as new counsel, and Bursor & Fisher, Smith Krivoshey, and Yeremey Krivoshey withdrew from the matter. The Court approved the substitution of counsel on August 7, 2024. *Patel* ECF Nos. 141-144.

*Before* serving the subpoena at issue here, in December 2025, Defendant obtained in

---

[2] "*Patel* ECF" refers to docket entries in the underlying *Patel* matter in the Central District of California.

discovery in *Patel* two agreements, a July 9, 2024 agreement and a July 16, 2024 agreement, between Smith Krivoshey and Dovel & Luner.

The July 9, 2024, agreement anticipated that Dovel & Luner would be sole lead counsel in *Patel* but Non-Parties would stay on as counsel of record and work, if at all, at Dovel & Luner's direction. Krivoshey Decl. ¶ 7. The July 9, 2024, agreement also included a proposed fee split in the case of a recovery of fees. *Id*. Nonetheless, just a week later, this agreement explicitly became null and void through the terms of the July 16, 2024, agreement. *Id*. The July 16, 2024, agreement states that it "**constitutes the entire agreement between the [law firms] regarding the foregoing subject matter, whether oral or written, and specifically supersedes any prior agreements between them**." *Id*. (bolding added).

The July 16, 2024 agreement memorialized that Dovel & Luner would take control over the litigation in *Patel*, serve as sole lead counsel, and bear all future costs of litigation, require Smith Krivoshey to transfer the case files to Dovel & Luner, and that Smith Krivoshey would be entitled to no fees for its time working on the matter other than any that might be approved by the Court upon application by Smith Krivoshey. Krivoshey Decl., ¶ 7; Ex. O (Brenner Decl.) at ¶¶ 17, 18; *id*. Ex S (Joint Stipulation Pursuant to Local Rule 37 for Defendant's Motion to Compel), at 28:8-14. The July 16, 2024 agreement explicitly stated that "Smith Krivoshey and Bursor **will withdraw**." *Id*. (bolding added). The agreement contained no "clear sailing" agreement between Smith Krivoshey and Dovel & Luner as to what Smith Krivoshey could potentially ask the Court in an application for fees. *Id*. Indeed, Dovel & Luner retains discretion to oppose any request for fees. *Id*.

During the transition period around late July or August 2024, Jacob Harper, lead counsel for Defendant, stated that he did not believe that Mr. Krivoshey would ever just "walk away" from the case and accused him of planning to manage the case from behind the scenes. Krivoshey Decl., ¶ 11. Mr. Krivoshey assured Mr. Harper that his speculation was unfounded and mistaken, and that Mr. Krivoshey would truly withdraw as represented. *Id*. As promised, and as required pursuant to the terms of the July 16, 2024 agreement, the Non-Parties withdrew from the matter and were not involved in the matter at all afterwards, apart from transferring case files and materials to Dovel & Luner and briefly assisting with the transition. *Id*. at ¶¶ 8-10. As discussed below, the *Patel* plaintiffs

confirmed in their January 2025 depositions that they had no contact with the Non-Parties.

### 3. The December 2025 Order Re-Opening "Limited Discovery" Concerning New Plaintiffs in *Patel*

On December 17, 2024, and with prior approval from the district court, an amended complaint was filed in the *Patel* matter, which included three new plaintiffs. *Patel* ECF No. 167-68. Ten months later, the district court granted in part and denied in part Defendant's motion to dismiss the amended complaint. The court dismissed the claims of the original *Sharpe* plaintiffs in the case, who were the only parties that the Non-Parties here had ever represented. *Patel* ECF No. 178.

In October 2025, the *Patel* court also re-opened discovery "related solely to the newly added named plaintiffs" to be completed by December 29, 2025. *Patel* ECF No. 180. In November 2025, Defendant made the first of two extension requests, acknowledging at the time that the then-operative December 29 deadline was "***for limited discovery as to the newly added named Plaintiffs***." Ex. L at 1:11-12 (emphasis added). The Court later approved the stipulation, extending the discovery deadline to January 29, 2026, but again stating that discovery would "relate[] solely to the newly added named plaintiffs." *Patel* ECF No. 183.

On December 18, 2025, the parties filed a second request to extend the discovery deadline, this time to March 5, 2026, for the sole purpose of "complet[ing] remaining discovery related to the newly added plaintiffs." Ex. M, at 1:7. Defendant did not ask for leave to serve subpoenas on third parties and emphasized that it had been "diligent" and "moved expeditiously to timely complete discovery." *Id*. at 2:1, 8. On December 23, 2025, the Court granted the stipulation, once again stating, "[a]ny remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**." Ex. N, *Patel* ECF No. 185 (bold in original).

### 4. December 2025 - January 2026: Defendant Obtains All Responsive Agreements And The *Patel* Plaintiffs Testify About The Non-Parties' Lack Of Involvement In The Matter

On November 13, 2025, Defendant served the *Patel* Plaintiffs with a document request seeking any fee sharing and joint prosecution agreements between current and former counsel in the action. *See* Ex. S (Stipulation) at 3:23. The request specifically sought "the fee sharing arrangement by or among Dovel & Luner, LLP" and Non-Party law firm Smith Krivoshey as well as several other

law firms. *Id.*, at 30:2-13. On December 23, 2025, the *Patel* Plaintiffs produced all responsive agreements with Smith Krivoshey discussed above. *Id.*, Ex. O (Brenner Decl.) at ¶¶ 4, 17-18. These were the same agreements that Defendant's requested in their subpoenas to the Non-Parties.

The three remaining Plaintiffs in *Patel* were deposed between January 8 and January 16, 2026. Ex. T (Joseph Eli-Meyers Decl.) ¶ 11. Defendant's counsel asked the *Patel* plaintiffs about any agreements between the Non-Parties and Dovel & Luner, whether the July 16, 2024 agreement supersedes the July 9, 2024 agreement, and any communications those plaintiffs may have had with Non-Parties, including Mr. Krivoshey specifically. *See* Exs. P-R (*Patel* plaintiff deposition transcripts). The following exchanges are illustrative:

Q. Have you heard of Bursor & Fisher?

A. I have – I'll say the same. I have no specific knowledge of any of the law firms outside of Dovel.

Ex. P at 96:6-9 (Patel deposition).

Q. Other than me and your attorneys at Dovel & Luner, have you spoken with any other attorneys from any other law firms about this litigation?

A. I do not – to my knowledge, no.

…

Q. [Introduced July 9, 2024 agreement and asks] Do you have any understanding of what this document sets out?

A. It's regarding the attorneys' fees.

…

Q, Do you recognize the name of the law firm Smith Krivoshey, PC?

A. It's not familiar to me.

Q. Have you had any contact with an attorney from Smith Krivoshey, PC?

A. Not to my knowledge.

Q. Do you recognize the name of the law firm Bursor & Fisher, PA?

A.    No.

Q.    Have you ever had any contact with an attorney from that law firm?

A.    Not to my knowledge.

…

Q.    [Introduced July 16, 2024 agreement and asks] Do you recognize this document?

A.    Vaguely, but I think because it is very similar to the other document.

Q.    On the first page it says it's an agreement regarding the Sharpe litigation?

A.    Yes.

Q.    Do you have any understanding of what this document sets out?

A.    It looks, again, to be regarding attorneys' fees and costs.

…

Q.    Do you know if this document supercedes or cancels the prior Joint Prosecution Agreement that we discussed a few minutes ago?

[Objection]

A.    I'm not an attorney. I do not know.

…

Q.    Sitting here today, do you have any understanding of your law firm, Dovel & Luner's relationship with the law firms that are listed in these two agreements?

[Objection]

A.    At a high level. But again, I'm not an attorney. I believe some of these attorneys were involved well before I was involved in the case when Dovel & Luner took it over.

Ex. Q at 62-69 (Schmidt deposition).

Q.    Other than Martin Brenner, what are other names of other attorneys that you've worked with at Dovel Luner?

A.    My main point person has been Martin Brenner. There was someone else, but

I do not remember their name. It was another man working at Dovel Luner.

Q.    Was it Yeremey Krivoshey?

A.    I don't believe so, no.

    …

Q.    Do you recognize this document?

A.    This does look familiar, yes.

Q.    What is this document?

[Objection]

A.    To my understanding, it's an agreement of law firms to work together in this case against GT's.

    …

Q.    Can you tell me generally what this document is?

A.    I believe, to my understanding, this document is a notice stating that Dovel will be taking on – will be taking over as lead counsel for this case.

Q.    Do you see anything in this document that says that the other law firms, including Smith Krivoshey, will no longer have any share of any proceeds from any class settlement or award to the class in this case?

[Objection]

A.    I'm prefacing by saying I'm not a lawyer and I'm not sure if I'm interpreting this document correctly, but it looks like, to my understanding, that the material cost incurred by – will be borne and paid by Dovel.

Ex. R at 87:1-8, 87:20-88:1, 93:2-19 (Nunez deposition).

In short, by January 16, 2026, Defendant had all the agreements between Dovel & Luner and the Non-Parties, Defendant had deposed every plaintiff in *Patel* about the agreements, and Defendant had specifically questioned the *Patel* plaintiffs about any putative interactions they had with Non-Parties and Smith Krivoshey, PC and Yeremey Krivoshey in particular. All of this evidence pointed in the same direction: the Non-Parties were not involved with the *Patel* matter after they withdrew.

**B.    January 29, 2026: Defendant's First Subpoena To The Non-Parties**

On January 29, 2026, Defendant served the Plaintiffs in the *Patel* action a Notice of

Subpoenas to Testify at Depositions, which included three deposition and document subpoenas on the law firms of Dovel & Luner, Bursor & Fisher, PA, and Ahdoot & Woolfson. Ex. A. A fourth subpoena identified both Non-Parties Yeremey Krivoshey and Smith Krivoshey in the "To" line of the subpoena. *See id.* It was the only subpoena to identify a specific individual attorney as a witness. The depositions were sequenced so that the Non-Parties' deposition was scheduled to occur *first*, on February 10, 2026, in Los Angeles. Bursor & Fisher's deposition was scheduled to occur on February 11; Dovel & Luner's, on February 12; and Ahdoot & Wolfson's,[3] on February 20. *See id.*

Counsel for Defendant knows that Mr. Krivoshey lives in Kentucky because they arranged for a process server to attempt service of the subpoena at his home. Counsel for Defendant never contacted Mr. Krivoshey to discuss the need for a subpoena, its scheduling, the need for travel, or to discuss what documents, if any, the Non-Parties have that cannot be obtained from the plaintiffs in *Patel* or their counsel. Krivoshey Decl., ¶ 20.  The process server never served Mr. Krivoshey at his home. *Id.* at ¶ 13.

### C. February 4, 2026: Defendant's Second Subpoena To The Non-Parties

On February 4, 2026, a new subpoena was served on Smith Krivoshey P.C.'s California agent for service of process (hereinafter, "the second subpoena"). Krivoshey Decl., ¶ 16. On the February 9, 2026, meet and confer call, Non-Parties asked Mr. Elie-Meyers why he thought he could serve Mr. Krivoshey, who lives and works in Louisville, in a personal capacity through a registered agent of the firm in California. *Id.* at ¶ 38. Mr. Elie-Meyers had no response other than a remark that Mr. Krivoshey's name is part of the firm name and that he owns Smith Krivoshey, PC. *Id.* As shown in the Non-Parties' motion to quash, there is no legal support for that position.

Unlike the first subpoena, the deposition date on the second subpoena was set for February 18, 2026, and was to occur in San Francisco rather than Los Angeles. *See* Ex. B. As with the first subpoena, the second subpoena identified both Mr. Krivoshey and the law firm Smith Krivoshey in the "To" line, making it unclear who the intended deponent was. The subpoena included a document request seeking "all communications" between the Non-Parties and Dovel & Luner regarding the

---

[3] Jeff Westerman of Westerman Law Corp. was one of the attorneys who represented the plaintiffs when the matter was first filed. He later transferred to the law firm Ahdoot & Wolfson.

*Patel* matter, and all documents and communications exchanged between the two law firms related to any agreements such as joint prosecution agreements or fee sharing agreements. *See id.* Identical document requests were included with the subpoena to Dovel & Luner. *See* Ex. A.

As with the first subpoena, Defense counsel did not contact the Non-Parties to discuss the need for a subpoena, its timing, the need for travel, or to discuss what documents the Non-Parties have that cannot be obtained from the plaintiffs in *Patel* or their counsel. Krivoshey Decl., ¶ 19.

**D.      February 6, 2026: The Non-Parties Learn That Defendant Failed To Provide Notice Of The Second Subpoena**

On Friday, February 6, 2026, the Non-Parties asked counsel for Defendant to schedule a meet and confer call about the second subpoena. Krivoshey Decl., ¶ 21. He included counsel for the *Patel* Plaintiffs on the email. *Id.* Counsel for the *Patel* Plaintiffs then responded that they had not been given notice of the new subpoena. *See* Ex. C. Counsel for Defendant never responded to the email, and as explained in the section that follows, later took the position that Defendant was not required to provide notice to the *Patel* plaintiffs of the second subpoena.

**E.      February 9, 2026: Defendant's Counsel Makes A Series Of False Statements And Omissions During The Meet And Confer Call**

On February 9, 2026, the Non-Parties had a lengthy meet-and-confer call with counsel for Defendant concerning the subpoenas. Attorney Joseph Elie-Meyers attended the call on behalf of the Defendant. Six things happened on that call that further support the conclusion that the subpoena was served for improper purposes.

*First*, during the call, Mr. Smith of Smith Krivoshey asked when fact discovery closed in the *Patel* case, which is obviously relevant to whether the subpoena is timely. Krivoshey Decl., ¶ 30. Mr. Elie-Meyers responded March 5, 2026. *Id.* When pressed about "whether there was anything else he wanted to say about that date," Mr. Elie-Meyers responded "no." *Id.* Later in the call, Mr. Smith asked Mr. Elie-Meyers why he had not disclosed that fact discovery is closed except for discovery concerning the newly added Plaintiffs when previously asked about that subject. *Id.* Mr. Elie-Meyers responded that he considered that fact to be "not relevant." *Id.* He gave no explanation for that position. *Id.*

*Second*, during the call, Mr. Smith asked Mr. Elie-Meyers whether Mr. Krivoshey's deposition was scheduled to occur before or after the deposition of Plaintiffs' counsel, Dovel & Luner. Krivoshey Decl., ¶ 31. In response to Mr. Elie-Meyers' relevance objection, Mr. Smith explained that it was relevant to whether the information Defendant was seeking from the Non-Parties could be obtained from Plaintiffs or their counsel. *Id.* Mr. Elie-Meyers responded that he needed to check his records and was quiet for approximately 60 seconds. *Id.* He then responded that Dovel & Luner's deposition was noticed *before* the February 18 date set in the second subpoena to Mr. Krivoshey or his law firm. *Id.* This answer was apparently based on the February 12 deposition date in the subpoena that had been served on Dovel & Luner. *See* Ex. A.

However, approximately a half-hour after the February 9, 2026, meet and confer call, the Non-Parties learned from Dovel & Luner that its February 12 deposition had already been rescheduled to a date *after* February 18, 2026, when the meet and confer call with Mr. Elie-Meyers occurred. Krivoshey Decl., ¶ 31. In other words, after serving the second deposition on the Non-Parties, Defendant re-arranged the sequence of depositions so that the Non-Parties' depositions would still occur before the deposition of the *Patel* Plaintiffs' counsel, and then made false statements to hide that fact.

*Third*, as of February 9, 2026, the Non-Parties had not yet seen the first subpoena. Based on a 2024 decision by District Judge Martinez-Olguin criticizing Defendant's counsel's for avoiding "effective notice" of discovery requests and then seeking sanctions, the Non-Parties were concerned that Defendant and its counsel may later claim that the Non-Parties had failed to appear for the first subpoena, despite the fact that it had never been served. *See Effinger v. Ancient Organics LLC*, 2024 WL 3643395 at *1 (N.D. Cal. Aug. 2, 2024) (explaining Defendant's counsel appeared to avoid "effective notice" before moving for sanctions on the opposing party). Accordingly, on the February 9, 2026, call, the Non-Parties asked Mr. Elie-Meyers (a) the date of the deposition in the first subpoena, (b) whether the deposition had occurred or was still scheduled, and (c) whether Defendant's position was that the Non-Parties had been served and failed to appear at the deposition in the first subpoena. Krivoshey Decl., ¶ 32. Mr. Elie-Meyers refused to answer those questions, and stated that if the Non-Parties wanted a copy of the original subpoena, they should ask Dovel & Luner

to provide a copy. *Id.*

*Fourth*, the document request included with the subpoena to the Non-Parties is identical to the document request in the subpoena served on the *Patel* Plaintiffs' current counsel, Dovel & Luner. *See* Exs. A and B. During the call, Mr. Krivoshey repeatedly asked Mr. Elie-Meyers what documents Defendant believed the Non-Parties have that Defendant does not already have or could not get from the *Patel* Plaintiffs. Mr. Elie-Meyers either could not or would not identify any document. Krivoshey Decl., ¶ 33. Mr. Elie-Meyers also stated that because Dovel & Luner's deposition was set to proceed before the Non-Parties' deposition, Defendant would be in a better position to know what information, if any, the Non-Parties may possess that Dovel & Luner does not possess. *Id.* at ¶ 34. As discussed above, however, that statement was false, because by that time, Dovel & Luner's deposition was scheduled to occur *after* the deposition of the Non-Parties here (*id.*), and the *Patel* Plaintiffs had already produced their documents to Defendant in December 2025. *See supra* Section A.4.

*Fifth*, during the call, Mr. Smith asked whether Defendant had provided the *Patel* Plaintiffs notice of the second subpoena, which purported to require the Non-Parties' testimony nine days later. Krivoshey Decl., ¶ 35. This question was prompted by *Patel* counsel's email objecting that no notice of the second subpoena had been provided. *See supra* Section D and Ex. C. Mr. Elie-Meyers stated that Defendant did not serve the *Patel* Plaintiffs with notice of the second subpoena, because in Defendant's view, the two subpoenas were in effect the same subpoena. Krivoshey Decl., ¶ 35. That later proved to be false: the first and second subpoenas had different dates for the depositions (February 10 as opposed to February 18), different locations for the depositions (Los Angeles as opposed to San Francisco), and different definitions of the party whose records were being sought in the document requests, identifying "Yeremey O. Krivoshey" as the "You" in the first subpoena Attachment A (the Document Requests), and "Smith Krivoshey" as the "You" in the second subpoena Attachment A (the Document Requests). *Compare* Exs. A and B.

*Sixth*, During the call, Mr. Smith asked if Defendant had already received any responsive agreements from Dovel & Luner, such that production of the agreements in response to Defendant's subpoena would be unnecessary. Krivoshey Decl., ¶ 36. Mr. Elie-Meyers refused to answer that

question. *Id.* As discussed above, Defendant in fact received all agreements between the firms in December 2025. *See supra* Section A.4.

### F. February 10, 2026: Defendant Refuses To Continue Or Vacate The Deposition Date While Effectively Admitting That Discovery Is Closed

On February 10, 2026, the Non-Parties contacted counsel for Defendant to notify them that the Non-Parties intended to move to shorten time on their motion to quash, and asked whether Defendant would either stipulate to the motion to shorten time, or alternatively, agree to vacate the February 18, 2026, compliance date until the Court rules on the motion to quash. Defendant responded as follows:

> We'd be happy to join a ***stipulated extension of the current discovery deadline*** to allow you the flexibility to file a normally noticed motion, and will seek Dovel & Luner's agreement to a stipulation to that effect. However, ***unless and until such a stipulation is entered, we cannot join a motion to shorten time, nor agree that the subpoena compliance date is vacated***. If opposing counsel agrees to such a stipulation, we are willing to consider rescheduling the deposition pending a ruling on the joint stipulated scheduling order.

Ex. D (emphasis added). There are two things that are relevant about this response. First, Defendant's attempt to negotiate an open-ended "extension of the current discovery deadline" shows that Defendant knew its subpoenas were untimely; otherwise, there would be no reason to make the Non-Parties' request contingent on extending the discovery deadline and re-opening third-party discovery. Second, Defendant refused to modify the February 18 deposition date, which had been unilaterally set by Defendant without any discussion with the Non-Parties. Defendant even refused to *shorten the time* on which the motion to quash could be heard, thereby insisting that the deposition proceed before a hearing on the pending motion to quash. Defendant would only agree to modify the deposition date if the *Patel* Plaintiffs agreed to extend the discovery deadline, which is something the Non-Parties had no control or say over. Krivoshey Decl., ¶ 43.

### G. February 11, 2025: Defendant's Counsel's Pretextual Statements Concerning The Reason For And Timing Of The Subpoena

In a February 11, 2025, email exchange, lead counsel for Defendant purported to justify the delay in serving the subpoenas by claiming they were prompted by testimony recently obtained by

the newly added plaintiffs during their depositions. Defendant's counsel wrote the email addressing *Patel* counsel. The email stated in relevant part as follows:

> With respect to timing, the issues giving rise to the need for these subpoenas on Dovel's co-counsel—none of the plaintiffs' signatures on counsel agreements you partially produced, the discovery of a third agreement (the retention agreement itself) that wasn't produced, the plaintiffs' lack of knowledge or supervision over the class counsel in this case, the troubling fee-sharing agreements at odds with the interests of the current class, and other things**--came to our attention only with the depositions of the three class representatives in January**. And I will remind you that you offered extremely late dates for these witnesses after we first noticed them in December to avoid exactly this kind of issue. The timing issue you raise is disingenuous and a problem of your creation, not ours.

> We will respond to the rest of your email separately but I'm raising this now because that point is so outrageously false that it deserves a response of its own.

Ex. E (emphasis added). Notably, the purported justification for the subpoenas pertains to the newly added named plaintiffs, none of whom were represented by the Non-Parties and who were added to the case *after* the Non-Parties' had withdrawn. Krivoshey Decl., ¶ 47. Further, none of the purported justifications is valid or applies to Non-Parties:

Justification 1: "none of the plaintiffs' signatures on counsel agreements you partially produced" – as discussed above, these agreements were produced in December 2025. The JPA agreements *bearing the signatures of Non-Parties* and Dovel & Luner were produced. Ex. O (Brenner Decl.), at ¶¶ 17, 18. *See also* Ex. P, at 12-29, 36-42 (*Patel* counsel explaining why the *Patel* plaintiffs' signatures were not produced). Whether or not they were signed by *Patel* plaintiffs, whom the Non-Parties have never represented and have never had any contact with, has nothing to do with Non-Parties. By the time Mr. Harper sent the above quoted email, he had already deposed the *Patel* plaintiffs and knew they had no dealings with Non-Parties. To the extent that the *Patel* plaintiffs' signatures exist, they would be in the possession of *Patel* counsel, not Non-Parties.

Justification 2: "the discovery of a third agreement (the retention agreement itself) that wasn't produced" – a retention agreement between *Patel* plaintiffs and *Patel* counsel has nothing to do with Non-Parties. *See also* Ex. P, at 12-29 (*Patel* counsel explaining why retention agreements were not produced). In his email, Mr. Harper cited no evidence suggesting that the *Patel* plaintiffs might have a retention agreement with Non-Parties.

Justification 3: "the plaintiffs' lack of knowledge or supervision over the class counsel in this case" – the *Patel* plaintiffs' supposed lack of knowledge or supervision over *Patel* counsel has nothing to do with Non-Parties, particularly when the Non-Parties never represented those plaintiffs.

Justification 4: "the troubling fee-sharing agreements at odds with the interests of the current class" – Mr. Harper admits in this statement that by this point he already had the JPA agreements between *Patel* counsel and Non-Parties. Any other information concerning the agreements or communications concerning the agreements (or the litigation more generally) could be obtained from *Patel* plaintiffs and their counsel. And, as discussed above, Mr. Harper knew that the July 16, 2024 agreement "specifically supersedes" the July 9, 2024 agreement, and that no "fee-sharing agreements" are in effect.

As detailed in Section H below, the following week, Defendant's counsel offered a completely different justification for the Non-Party subpoena, demonstrating that each of the excuses for the subpoenas given in the above-quoted email was false.

### H.    February 18, 2025: Defendant Admits That The Prior Justification For The Subpoena Was False And That They Were Always Seeking Information Available From The *Patel* Plaintiffs

At 1 a.m. Eastern time[4] on February 18, 2025, the subpoena's date of compliance, counsel for Defendant sent an email withdrawing the February 4, 2026, subpoena. Ex. F. The reason given for the withdrawal was as follows:

> Mr. Krivoshey provided sworn statements describing the history of his involvement in the *Patel* litigation and the nature of his relationship with current *Patel* counsel at Dovel & Luner LLP. *Id.*, paras. 2-10. Because that declaration set out, in sum and substance, the information GT's sought to obtain through the subpoena, and similar to what other subpoenaed parties have agreed in pre-motion conferrals to provide in lieu of deposition testimony or document productions, we are withdrawing GT's subpoena here.

*Id.* This statement directly contradicts the February 11, 2026, email from attorney Harper concerning the purported reasons for the subpoena. *See* Section G above. More importantly, however, it confirms that from the outset, Defendant always sought information that was available from the *Patel* Plaintiffs and their counsel. The subpoena was premised on an unsupported suspicion of the Non-Parties'

---

[4] Louisville, KY, where Mr. Krivoshey resides, is on Eastern time.

continued involvement in the *Patel* matter, despite the fact that by the time Defendant issued its subpoenas, it had already obtained a written agreement between the Non-Parties and Dovel & Luner and deposed the *Patel* plaintiffs showing that was not the case.

The justification is also inconsistent with what transpired on the February 9, 2026 meet and confer call concerning Non-Parties' motion to quash and for sanctions. As detailed in Section E above, Mr. Elie-Meyers refused to disclose the purpose of the deposition, did not request a declaration concerning the "nature" of Mr. Krivoshey's "relationship with current *Patel* counsel," and falsely represented that Defendant intended to get responsive information from the *Patel* counsel first.

### III.    Argument

An award of sanctions is reviewed under a deferential abuse of discretion standard, and factual findings underlying the imposition of sanctions are reviewed for clear error. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012). If a court determines sanctions are warranted, it has broad discretion in fashioning an appropriate sanction to deter future misconduct. *See*, *e.g.*, *Eugster v. Washington State Bar Ass'n 1933*, 716 F. App'x 645, 646 (9th Cir. 2018). As set forth below, all applicable standards for issuing sanctions support the imposition of sanctions here— particularly given that Defendant served a subpoena when third-party fact discovery was closed, and sought information that Defendant either already had or could obtain from the opposing parties.

The Court can and should award fees. However, because a series of judicial decisions shows that monetary sanctions are no deterrent to Defendant's counsel, the Non-Parties also ask that, either in addition to or in lieu of monetary sanctions, the Court order Defendant's counsel to either present or attend CLE in person. As explained in Section D below, history shows that is the only form of sanction that has ever appeared to get counsel's attention.

### A.    Sanctions Are Warranted Under Four Applicable Legal Standards

There are four separate and independent legal standards for sanctions that apply here. Broadly speaking, these standards generally permit sanctions where a party: (A) takes reckless legal positions that are contrary to the law (*i.e.*, by serving an invalid subpoena after the close of discovery; or by purporting to serve Mr. Krivoshey personally through the registered agent of his law firm in California); (B) acts in bad faith (*i.e.*, by refusing to vacate a subpoena compliance

date after admitting that discovery is closed; by lying during the meet and confer process; by not providing notice to *Patel* counsel with the second subpoena); and (C) by imposing undue burdens and engaging in harassment (*i.e.*, by seeking information from the Non-Parties that Defendant already obtained from the parties; by purporting require Mr. Krivoshey to travel on short notice for a unilaterally set deposition date). Satisfaction of just one of the following four standards would support sanctions here.

First, "recognizing the potential for abuse of … broad and liberal discovery, Rule 45 offers protections for nonparties who 'are powerless to control the scope of litigation and discovery.'" *Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *5 (C.D. Cal. Feb. 28, 2020) (quoting *US v. CBS*, 666 F.2d 364, 371 (9th Cir. 1982)). The party responsible for issuing a subpoena has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. *See* Fed. R. Civ. P. 45(d)(1). Courts "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* Under Ninth Circuit law, "[a] court may … impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

Second, "Rule 26(g)(1)(B) generally requires a party seeking discovery to act (1) consistently with the rule of existing law or with good reason to change the law; (2) not with improper purpose, such as harassing, delaying, or needlessly increasing the cost of litigation; and (3) reasonably, without imposing undue burden or expense when considering the needs of the case." *Doung*, 2020 WL 2041939 at *9. These requirements apply to subpoenas too. *See id.* at *9-10 (citing *Mount Hope Church*, 705 F.3d at 425 when issuing sanctions under Rule 26 for issuing an improper subpoena).

Third, 28 U.S.C. § 1927 provides that "[a]ny attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Section 1927 applies broadly to unnecessary filings and tactics once a lawsuit has begun." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 2199029, at *4 (C.D. Cal. Feb. 9, 2022) (*citing In re Keegan Mgmt.*

Co., 78 F.3d 431, 435 (9th Cir. 1996)). Sanctions under section 1927 are warranted by a finding of "subjective bad faith," which is "present when an attorney knowingly or recklessly raises a frivolous argument." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). In other words, "recklessness suffices for § 1927" sanctions. *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

Fourth, "[a] court may impose sanctions under its inherent powers when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924 (N.D. Cal. 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). "[T]he inherent power extends to a full range of litigation abuses," and fills the gap when other existing authorities fail to sufficiently support sanctions for abusive conduct. *Chambers*, 501 U.S. at 46.

### B.  The Record Supports Sanctions Here

The factual record strongly supports the imposition of sanctions here, for four reasons. First, "a facially defective subpoena" is one of the "three possible grounds for sanctions." *Diversified Funding Grp., LLC v. Hendon*, 2018 WL 1870029, at *1 (C.D. Cal. Jan. 4, 2018), *aff'd*, 765 F. App'x 295 (9th Cir. 2019) (citing *Legal Voice*, 738 F.3d at 1185). This principle governs here because the subpoena was served outside the discovery period and in violation of the scheduling order in *Patel*. The fact that Defendant refused to vacate or even continue the February 18 deposition date, knowing that fact discovery was closed, is evidence of bad faith and recklessness, which also support sanctions under Rule 45(d)(1), Rule 26(g)(1)(B), § 1927, and the Court's inherent powers. *See, e.g.*, *Legal Voice.*, 738 F.3d at 1185 (addressing Rule 45); *Mount Hope Church*, 705 F.3d at 425 (addressing Rule 26); *Fink*, 239 F.3d at 993 (addressing § 1927); *Doung*, 2020 WL 2041939 at *9 (addressing Rules 26 and 45).

There also was a litany of additional defects with the second subpoena, including ambiguity about the subpoena recipient as a result of identifying Mr. Krivoshey and his law firm in the "To" line[5]; attempting without legal authority to serve Mr. Krivoshey personally through the law firm's

---

[5] *See Scott v. Keller*, 2010 WL 1267772 at *1-2 (E.D. Cal. March 31, 2010) (discovery requests unenforceable because "it was unclear to whom these requests were directed").

agent of service of process (assuming the subpoena was directed at him)[6]; failing to identify topics of examination as required under Fed. R. Civ. P. 30(b)(6) (assuming the subpoena was directed at the law firm); failure to tender required fees[7]; and failure to provide notice to the *Patel* parties.[8] *See gen*. Motion to Quash, Dkt. 1, at 7-21. In combination, these defects show a disregard for required procedures and are evidence of bad faith and recklessness.

Second, seeking documents or testimony available from the parties violates the duty under Rule 45 to take reasonable steps to avoid imposing undue burden on the person subject to the subpoena. *See* Fed. R. Civ. P. 45(d)(1). It also is improper for a party to serve a subpoena based on "speculation" that the subpoena recipient might have some, unidentified information unavailable from the opposing party. A party that does either of these two things is subject to sanctions. *See Duong*, 2020 WL 2041939, at *8-9. As explained above, here, (a) the document request with the second subpoena is identical to documents sought from the *Patel* plaintiffs' counsel, (b) Defendant refused to disclose that it already had all responsive agreements, and (c) Defendant's counsel was unable to identify a single document Defendant was seeking that it did not already have or could not get from the *Patel* Plaintiffs. Krivoshey Decl. ¶ 33 and Exs. A and B. Defendant's efforts to stage the depositions to ensure that Mr. Krivoshey would be deposed first also demonstrates an absence of any desire to determine whether the evidence Defendant hoped to obtain could be obtained by the *Patel* Plaintiffs or their counsel. Indeed, Defendant now concedes that it could, and did, obtain this information from Dovel & Luner. *See* Declaration of Joseph Elie-Meyers in Support of GT's Living Foods, LLC's Notice of Withdrawal of Subpoena, Dkt. 6-1 at ¶ 11 ("Dovel & Luner has agreed … to provide a sworn declaration describing the nature of its relationship with former counsel in the *Patel* litigation.").

Third, the Northern District of California Guidelines for Professional Conduct and Central District of California Civility and Professionalism Guidelines are in place for a reason, and violating

---

[6] *See, e.g., D'Amico v. N & D Restaurants, LLC*, 2025 WL 3158124, at *2-3 (C.D. Cal. Sept. 24, 2025).

[7] *Fujikura Ltd. v. Finisar Corp*., 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015).

[8] *Id*. at *4.

them can further support sanctions. *See*, *e.g.*, *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, 2025 WL 917110, at *17 (N.D. Cal. Mar. 26, 2025) (citing violations of N.D. Cal. Guidelines for Professional Conduct when ordering sanctions); *Claypole v. Cnty. of Monterey*, 2016 WL 145557, at *1 (N.D. Cal. Jan. 12, 2016) (same). Those guidelines require a basic-level of decency, like making "reasonable efforts" to schedule discovery by agreement, and not "arbitrarily or unreasonably" withholding consent to scheduling accommodations; or refraining from serving discovery in a manner calculated to impede the other party's ability to respond; or taking depositions or seeking documents only "where actually needed to learn facts or information;" or taking into account the "geographic limitations" of witnesses. N.D. Cal. Prof. Conduct Guidelines, §§ 3, 5, 9.

Here, the litany of problem behavior includes arbitrarily setting a deposition date on short notice, without prior notice to the witness or notice to the parties, and knowing it would require cross-country travel; only to obtain information that Defendant already had or could obtain from the parties; and then refusing to vacate or continue the noticed deposition date.

Fourth, courts can and should consider a party's or an attorney's prior history of misconduct when evaluating a motion for sanctions, because a pattern of problem behavior sheds light on whether an offending party or attorney acted in bad faith, and what sanctions, if any, are likely to lead to improved behavior. *See*, *e.g.*, *Koji IP*, 2025 WL 917110, at *6 (citing attorney's prior history of sanctions in other cases when granting motion for sanctions); *Anderson v. BNSF Railway Co.*, 681 F. Supp. 3d 899, 913 (S.D. Iowa 2023) (citing prior history of sanctions); *see also* American Bar Assoc. Model Rules for Lawyer Disciplinary Enforcement ("ABA Rules"), Rule 10(C)(3) and Commentary (permitting the consideration of any "aggravating or mitigating factors" and explaining that "aggravating" factors include prior misconduct).

There is a growing judicial record of defense counsel's improper litigation tactics. Four federal judges (that Non-Parties are aware of) have held that sanctions or fees were warranted for counsel's "gamesmanship," "bad faith" and objectively unreasonable filings, with two judges observing that counsel appeared to treat sanctions as an acceptable risk for improper litigation tactics. *See*, *e.g.*, *Hawkins v. Kroger Co.*, 2020 WL 6150040 at *2-4 (S.D. Cal. Oct. 20, 2020) (Miller, J.) (providing lengthy recitation of "gamesmanship" and "bad faith" by Defendant's counsel);

*California v. The Kroger Co.*, 2024 WL 4453267 at *3 (C.D. Cal. Oct. 9, 2024) (Staton, J.) (awarding fees for lack of "an objectively reasonable basis" for removal).[9] In addition, a fifth district judge— Judge Martinez-Olguin of this District—criticized Defendant's counsel for attempting to set up the opposing counsel for sanctions by serving paper copies of deposition notices "wedged into door handles like solicitations" or other means designed to be overlooked, instead of emailing them. *See Effinger*, 2024 WL 3643395 at *1. These decisions demonstrate that what transpired here was not the result of a momentary lapse of judgment in the heat of litigation, but instead, the result of reckless "unorthodox tactics." *See* Ex. K.

### C.    Under *Duong*, The Last-Minute Withdrawal Of The Subpoena Does Not Moot The Motion For Sanctions

Defendant will argue that no sanctions are warranted because it withdrew the subpoena at 1 a.m. Eastern time, on the February 18 compliance date. That is wrong for two reasons. First, withdrawing an invalid subpoena does not excuse sanctionable conduct when the withdrawal is made after the recipient moves to quash, because by then, the damage is already done. *See Duong*, 2020 WL 2041939, at *5 ("The Court finds this thirteenth hour withdrawal to be 'too little too late,' and that such conduct is sanctionable"). As the court explained in *Duong*, even if withdrawing a subpoena renders a motion to quash moot (as Defendant contends here), that does not moot a related motion for sanctions. *See id.*; *see also Equal Emp. Opportunity Comm'n v. Dillon Co.,* 2010 WL 4134696, at *1 (D. Colo. Oct. 12, 2010) (awarding sanctions despite the defendant's withdrawal of the subpoena).

Second, Defendant's email withdrawing the subpoena contains a damaging admission that is further evidence of bad faith. The Non-Parties' motion to quash included a declaration describing their non-involvement in the *Patel* matter after withdrawing in 2024. Defendant suggested that the subpoena was no longer necessary due to this information. *See* Ex. F. The record shows, however, that by the time Defendant served its subpoena, it already had the testimony of the newly added plaintiffs' testimony, as well as agreements between the Non-Parties and Dovel & Luner, establishing

---

[9] *Hawkins v. Kroger Co.*, 2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) (Major, M.J.) (awarding monetary sanctions); *Hawkins v. Kroger Co.*, 2020 WL 1952832 (S.D. Cal. Apr. 23, 2020) (Goddard, M.J.) *overruled in part* 2020 WL 6150040.

the Non-Parties' lack of involvement. Indeed, the new plaintiffs were specifically asked about Mr. Krivoshey. So, the reason given for the withdrawal was a pretext to avoid sanctions after the Non-Parties put Defendant on notice that a motion for sanctions would be forthcoming during the February 9, 2026 meet and confer call and in the motion to quash that followed. *See* ECF No. 1, at 21:5-6.

### D. The Court Should Award Sanctions To Compensate For The Misconduct In This Case And To Deter Future Misconduct

The purpose of sanctions "may be to deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter." *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012). Here, the value of lost time Non-Parties incurred responding to the misconduct is "loose change" for a company like Defendant and a for a national law firm like Davis Wright Tremaine. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (noting that significant monetary sanctions were unlikely to provide a deterrent to the defendant and its national law firm). Therefore, much like what occurred in *Hawkins*, the Non-Parties ask the Court to impose a prospective sanction that is more likely to encourage improved behavior going forward, either in addition to or in lieu of monetary sanctions.

### 1. The Court Should Require Defendant's Counsel To Present CLE, Or At A Bare Minimum, Attend CLE In Person

"District courts wield significant discretion in determining appropriate sanctions." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 6290374, at *5 (N.D. Cal. Oct. 27, 2020) *aff'd sub nom. Nix v. Major League Baseball*, 2022 WL 4482455 (9th Cir. Sept. 27, 2022). This includes ordering offending attorneys to provide CLE or other presentations on subjects related to misconduct that led to sanctions. *See*, *e.g.*, *Salmon*, 2016 WL 3945362, at *1-4 (ordering monetary sanctions and requiring that plaintiff, a licensed legal intern that had "just opened a legal practice" lecture students at a local law school about the dangers of filing a lawsuit as a licensed legal intern or a new attorney); *Davila*, 2026 WL 323134, at *3 (ordering attorney to complete three hours of CLEs and "share his new knowledge regarding AI and legal practice with the Connecticut legal community in written form"); *cf. Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. June 22, 2023) (requiring counsel to provide sanctions order to their client and to each judge identified as the author of fake judicial opinions).

Alternatively, ordering counsel to attend CLE is also a common sanction, and in *Hawkins*, that sanction was initially imposed on Defendant's counsel here, but later overruled due to the lack of briefing on that issue. *See Hawkins*, 2020 WL 6150040 at *10. Just last year, Magistrate Judge Kang in this District ordered counsel to attend an in-person, California bar-approved CLE class that included an ethics component, where, like here, the offending attorney had a history of prior misconduct. *See Koji IP, LLC v. Renesas Electronics Am., Inc*., 2025 WL 980796, at *19 (N.D. Cal. Mar. 31, 2025). Numerous other courts have imposed similar requirements when issuing sanctions. *See*, *e.g.*, *In re Vialet*, 460 Fed. Appx. 30, at *3 (2d Cir. 2012) (affirming sanction order requiring attendance at live CLE courses in addition to regular CLE courses required by all members of the New York bar); *Bergeron v. Northwest Publications Inc*., 165 F.R.D 518, 523 (D. Mn. Apr. 24, 1996) (requiring counsel to complete a private course on the Federal Rules of Civil Procedure and the Local Rules to be taught by a professor at an accredited law school and that shall consist of at least 40 hours of individualized instruction); *Davis v. Los Angeles West Travelodge*, 2010 WL 623657, at *1 (C.D. Cal. Feb. 3, 2010) (ordering attorneys to attend twenty CLE hours in civility and professionalism and to complete thirty hours of volunteer work with a disability rights organization).

### 2. The Court Should Award Fees And Order Supplemental Briefing On The Appropriate Amount

When awarding compensatory fees as a sanction, the amount includes not only fees incurred in responding to the initial discovery abuse, but also, "fees and costs incurred in moving for sanctions." *In re Facebook*, 655 F. Supp. 3d at 936. "These fees and costs are a result of the misconduct—'were there no sanctionable conduct, there would have been no proceeding to impose sanctions, and no fees incurred in that proceeding.'" *Id*. (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017)). After a court estimates the amount of fees and costs incurred "because of" the misconduct, it then determines whether that amount is reasonable by looking to the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, (1986).

Here, Defendant and its counsel forced half of a small, four-attorney firm to put their other

matters to the side while they responded to a subpoena that should never have been served in the first place. Defendant was warned that this motion for sanctions would be forthcoming during the February 9, 2026, meet and confer call, and again in the motion to quash. *See* ECF No. 1, at 21:5-6. But just like what happened in *Hawkins*, Defendant and its counsel proceeded anyway.

Included with this motion are itemized time/billing records showing the amount of billable time consumed as of February 19, 2026, in responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions.  The current number of hours spent is 78.9, and the lodestar is $78,327.50. However, this lodestar does not factor in time spent on subsequent tasks like filing and serving the motion, working on the reply, or attending the hearing for this motion. Accordingly, unless otherwise ordered by the Court, the Non-Parties will provide updated information with their reply brief and will request leave to file a further supplement after a hearing, if one occurs. *See*, *e.g.*, *Golikov v. Walmart*, 2025 WL 3760635 (C.D. Cal. Dec. 19, 2025) (deciding fees and costs in separate briefing after decision on sanctions); *Last v. M-I*, 2022 WL 3012206, at *3 (C.D. Cal. May 19, 2022) (allowing prevailing party to submit fees after resolution of motion to quash).

Finally, there is no legitimate dispute that the hourly rates are reasonable, because they are comparable to the rates that Defendant's own counsel charges. A comparison chart is provided below, and Defendant's counsel's rates were taken from a sworn declaration from Defendant's lead counsel dated November 17, 2025, which he described as "conservative" and below rates charged by attorneys working in comparable markets and areas of law (*see* Ex. I):

| Non-Party Attorneys (2026 Rates) | | Defendant's Counsel (2025 Rates) | |
|---|---|---|---|
| Attorney (years in practice) | Hourly Rate | Attorney (years in practice) | Hourly Rate |
| Joel Smith (19) | $1,125 | Jacob Harper (16) | $990 |
| Yeremey Krivoshey (13) | $950 | Joseph Elie-Meyers (6) | $800 |
| Brittany Scott (6) | $850 | | |

*See also* Krivoshey Decl. ¶¶ 58-59 (discussing their rates); Ex. U (firm resume).

## IV.     Conclusion

Defendant and its counsel violated a court order by serving a subpoena that never should have been served, seeking information Defendant already had. Then they doubled down by forcing the Non-Parties to move to quash. Then they tripled down by refusing to vacate or continue the February 18, 2026 compliance date, forcing the Non-Parties to move to shorten time. Defendant and its counsel tried to justify all this misconduct with a series of false and inconsistent statements. A meaningful correction from the Court is necessary to send a message that what transpired here is not acceptable.

Dated:  February 20, 2026                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　 /s/     Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com