**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Non-Parties Yeremey O.*
*Krivoshey and Smith Krivoshey, PC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>                                    Defendant. | Misc Case No. 3:26-mc-80036-TSH<br><br>(Case No. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**DECLARATION OF YEREMEY KRIVOSHEY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST GT'S LIVING FOODS, LLC, DAVIS, WRIGHT, TREMAINE, AND ATTORNEYS JACOB HARPER AND JOSEPH ELIE-MEYERS**<br><br>Date: April 2, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Thomas S. Hixon |

---

KRIVOSHEY DECL. ISO NON-PARTY MOTION FOR SANCTIONS; CASE NO. 3:26-mc-80036-TSH

I, Yeremey O. Krivoshey, declare as follows:

1.      I am member of the bar of this Court, and a partner at Smith Krivoshey, PC.  I have personal knowledge of the matters set forth herein, and if called upon to do so, would and could testify competently thereto.  I offer this declaration in support of the Motion for Sanctions Against Defendant GT's Living Foods, LLC, Davis, Wright, Tremaine, and Attorneys Jacob Harper and Joseph Elie-Meyers.

### After Withdrawing from this Case, Smith Krivoshey Has Had No Role In Managing Or Directing The Litigation On Behalf Of Plaintiffs In Patel

2.      When *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS ("*Patel*") was commenced, Smith Krivoshey's founding partners –Joel Smith and I– were partners at Bursor & Fisher, P.A. I represented former Plaintiffs Sharpe, DiGennaro, Leder, Weiler in the *Patel* case (at the time, the *Sharpe* case) while I was a partner at Bursor & Fisher.

3.      In *Patel*, fact discovery closed in April 2021, expert discovery closed in August 2021, and briefing on the motion for class certification closed shortly afterwards. *See Patel* ECF No. 62.

4.      In late February 2024, Mr. Smith and I left Bursor & Fisher to start our own firm. I filed a notice of change of firm affiliation and remained an attorney of record in the case for approximately five months more.

5.      On June 21, 2024, the district court in *Patel* denied the motion for class certification without prejudice. *See Patel* ECF No. 129.

6.      On August 6, 2024, Bursor & Fisher and Smith Krivoshey withdrew from the matter and were replaced by the law firm of Dovel & Luner. *See Patel* ECF Nos. 130-31, 134, 136-37, 139-40. The Court approved the substitution of counsel on August 7, 2024. *Patel* ECF Nos. 141-144.

7.      Two days before Dovel & Luner LLP filed their notices of appearance, on July 16, 2024, Smith Krivoshey executed a written agreement with Dovel & Luner that: (a) superseded an earlier Joint Prosecution Agreement dated July 9, 2024; (b) memorialized that Dovel & Luner would be responsible for all aspects of the litigation in the *Patel* matter and act as lead counsel,

with the Zimmerman firm remaining as counsel of record; (c) provided that Smith Krivoshey and Bursor & Fisher would withdraw from the litigation and transfer all necessary case files to Dovel & Luner for continued litigation, (d) provided that any future costs would be borne and paid solely by Dovel & Luner, and (e) provided that in the event of a class recovery, Smith Krivoshey could seek court approval for fees for the law firm's time working on the matter, and only in an amount to be determined by the Court. The agreement had no "clear sailing" agreement or any other agreement between Smith Krivoshey and Dovel & Luner concerning fees. The July 9, 2024 agreement anticipated that Dovel & Luner would be sole lead counsel in *Patel* but Non-Parties would stay on as counsel of record and work, if at all, at Dovel & Luner's direction. The July 9, 2024 agreement also included a proposed fee split in the case of a recovery of fees. Nonetheless, just a week later, this agreement explicitly became null and void through the terms of the July 16, 2024 agreement. The July 16, 2024 agreement states that it "**constitutes the entire agreement between the [law firms] regarding the foregoing subject matter, whether oral or written, and specifically supersedes any prior agreements between them**" (bolding added). The July 16, 2024 agreement memorialized that Dovel & Luner would take control over the litigation in *Patel*, serve as sole lead counsel, and bear all future costs of litigation, require Smith Krivoshey to transfer the case files to Dovel & Luner, and that Smith Krivoshey would be entitled to no fees for its time working on the matter other than any that might be approved by the Court upon application by Smith Krivoshey. The July 16, 2024 agreement explicitly stated that "Smith Krivoshey and Bursor **will withdraw**." (bolding added). The agreement contained no "clear sailing" agreement between Smith Krivoshey and Dovel & Luner as to what Smith Krivoshey could potentially ask the Court in an application for fees. Indeed, Dovel & Luner retains discretion to oppose any request for fees.

8.     After withdrawing from this matter in August 2024, no one at Smith Krivoshey, including myself, has been involved in managing or consulting on the litigation in the *Patel* matter, either publicly or behind the scenes. I have not reviewed or had any insight concerning draft briefs, participated in or had any insight concerning potential resolution or settlement, or participated in any decision making, and I have no reason to believe that anyone else at Smith

Krivoshey has either.

9. As required by the July 16, 2024 JPA and the ethical rules, I have had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel.

10. There are no secret "side deals" between me or my law firm and Dovel & Luner regarding this matter.

11. Around late July or August 2024, Defendant's counsel, Jacob Harper, told me that he did not believe that I would just "walk away" from this case, and that he suspected that I would remain in this case behind the scenes. I assured Mr. Harper on the meet and confer call concerning my withdrawal that his speculation was unfounded and mistaken, and that I would truly withdraw as represented.

### *Facts Concerning The First And Second Subpoenas*

12. In early February 2026, Defendant sent a process server to my home in Louisville, Kentucky. This was the first of two attempts to serve a subpoena on me.

13. I was never aware that the process server was at my house while the process server was there. The process server did not leave the subpoena at my residence, or otherwise provide the subpoena to any other person that then delivered the subpoena to me. I was never served by the process server at my home.

14. Attached as **Exhibit A** is the January 29, 2029 Defendant GT's Living Foods, LLC's Notice of Subpoenas to Testify at Depositions in the *Patel* matter. Attached to Exhibit A are four noticed subpoenas. **Exhibit 1** to Exhibit A appears to be the subpoena Defendant served on Dovel and Luner LLP. **Exhibit 2** to Exhibit A appears to be a subpoena Defendant tried (but failed) to serve on me personally in Louisville, KY. **Exhibit 3** to Exhibit A appears to be the subpoena served on Bursor & Fisher, P.A. **Exhibit 4** to Exhibit A appears to be the subpoena served on Ahdoot and Wolfson, PC.

15. Exhibit 2 to Exhibit A is what I understand to be a true and correct copy of the subpoena that Defendant tried to serve on me in Louisville, Kentucky. It is made out "To: Yeremey Krivoshey Smith Krivoshey, PC 28 Geary Street, Suite 650 # 1507, San Francisco, CA

94108." The listed date of compliance was February 10, 2026. There are no listed topics for the deposition. The subpoena also has a request for production of documents, which defines "You" as "Yeremey O. Krivoshey." Defendant has never told me or Smith Krivoshey, PC whether the listed February 10, 2026 deposition occurred, or was cancelled, despite repeated requests during the meet and confer in this matter.

16.     On February 4, 2026, Defendant also tried to serve me personally through Smith Krivoshey, PC's registered agent of process in California. Smith Krivoshey, PC's registered agent, Northwest Registered Agent, Inc., located in Sacramento, California, was served with a subpoena on February 4, 2026. Smith Krivoshey's only registered business address in California is 28 Geary Street, Suite 650 # 1507, San Francisco, CA 94108.

17.     Attached as **Exhibit B** is a true and correct copy of the subpoena served on Smith Krivoshey, PC's registered agent on February 4, 2026 (referred to as the "second subpoena"). It states it is directed "To: Yeremey O. Krivoshey Smith Krivoshey, PC 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108." The words "Smith Krivoshey, PC" are highlighted, but I do not know whether the highlighting is original, or was applied there by Smith Krivoshey, PC's registered agent. This subpoena is word for word identical to the subpoena Defendant attempted to serve on me in Louisville, Kentucky, as discussed above.

18.     The subpoena attached as Exhibit B again identifies no topics of examination, as required for corporate deposition subpoenas. However, unlike the subpoena Defendant attempted to serve at my personal residence, the subpoena served on Smith Krivoshey's registered agent defines "You" in the attached requests for production as "Smith Krivoshey, PC."

19.     Prior to attempting to serve the subpoena at my home and later sending the subpoena to the law firm's agent for service of process, Defendant's counsel did not contact me or anyone else at the law firm to discuss the subject of the subpoena, its timing, whether it was permissible under the case schedule, the need for travel, or whether I or anyone else at the law firm had any information that was not already available from the Plaintiffs or their counsel.

20.     No fees were tendered with the February 4, 2026 subpoena.

### *The Apparent Lack of Notice Concerning The Second Subpoena*

21. After Smith Krivoshey received the subpoena attached as Exhibit B, Joel Smith contacted counsel for Defendant to request a meet and confer regarding the subpoena, and cc'd counsel for Plaintiffs. Counsel for Plaintiffs (Dovel & Luner) stated that they had not received notice from Defendant concerning the subpoena to Smith Krivoshey, but had only received notice of a subpoena to Mr. Krivoshey personally, apparently referring to the first subpoena that Defendant had attempted to serve at my home in Kentucky.

22. As far as I am aware, Defendant did not respond to Dovel & Luner's concerns via email.

23. I am unaware of any information that suggests Defendant served formal notice on Plaintiffs concerning the February 18, 2026, deposition date.

24. A true and correct copy of the email from Dovel & Luner concerning this issue is attached as **Exhibit C**.

### *Facts Concerning The February 9, 2026 Meet And Confer Regarding The Subpoena*

25. The meet and confer that preceded the Motion to Quash (ECF No. 1) and this motion occurred on February 9, 2026, at 2 pm ET. The call lasted approximately 24 minutes.

26. I attended the call with Joel D. Smith.

27. Joseph Elie-Meyers attended the call on behalf of the Defendant.

28. The parties discussed numerous issues during the call, including service of the subpoena, whether fact discovery remained open when the subpoena was served, the timing of the subpoena, the nature of the information sought and whether that information could be obtained from the parties in this matter, whether Dovel & Luner has already provided some or all of the requested information and documents, why counsel did not contact us to discuss the need for the subpoena or the time or place of the subpoena before serving it, whether Defendant served more than one subpoena on Mr. Krivoshey, and potential sanctions arising from the subpoena. In connection with sanctions, the subject of the CLE sanctions that had been initially imposed against Defendant's counsel in *Hawkins v. Kroger Co.*, 2020 WL 6150040 at *2-4 (S.D. Cal. Oct. 20, 2020), was discussed as a potential form of sanction appropriate here.

29.     My understanding after the conclusion of the call was that Defendant would not withdraw the subpoena and would not modify the noticed subpoena date of February 18, 2026.

30.     During the call, Mr. Smith asked Mr. Elie-Meyers when fact discovery closed in the case, which is obviously relevant to whether the subpoena was timely or was otherwise properly served. Mr. Elie-Meyers responded March 5, 2026. Mr. Smith then pressed Mr. Elie-Meyers "whether there was anything else he wanted to say about that date?" Mr. Elie-Meyers responded "no." Later in the call, Mr. Smith asked Mr. Elie-Meyers why he had not disclosed that fact discovery is limited to newly added Plaintiffs when Mr. Smith had previously asked him about the close of fact discovery. Mr. Elie-Meyers responded that he considered that fact to be "not relevant," but did not explain the basis for that position.

31.     During the call, Mr. Smith asked Mr. Elie-Meyers whether my deposition was scheduled to occur before or after the deposition of Plaintiffs' counsel. After Mr. Elie-Meyers objected that this information was irrelevant, Mr. Smith explained that it was relevant to whether the information Defendant is seeking from me or my firm could be obtained from Plaintiffs or their counsel. Mr. Elie-Meyers responded that he needed to check his records and was quiet for approximately 60 seconds. He then responded that Dovel & Luner's deposition was noticed first and set to proceed prior to the noticed date for my deposition. About a half hour after the call, I learned that this answer was false, because Dovel & Luner's deposition had already been rescheduled to a date *after* the date of the subpoena I and my firm had received.

32.     At the time of the call, I had not yet seen a copy of the first subpoena that Defendant had attempted to serve at my home in Kentucky. Mr. Elie-Meyers refused to provide a copy of the first subpoena, refused to say whether the subpoena has been withdrawn, refused to specify the listed date for compliance, and refused to say whether Defendant was still in the process of trying to serve the subpoena. He instructed me to contact Dovel & Luner if I wanted to see the subpoena. Dovel & Luner then emailed the subpoena to me on February 9, 2024, which is the first time I had ever seen it. I did not accept service via email.

33.     During the call, I *repeatedly* asked Mr. Elie-Meyers what documents Defendant believed I or my firm have that Plaintiffs or their counsel do not have. Mr. Elie-Meyers either

could not or would not identify any specific document.

34.    Mr. Elie-Meyers also stated that because Dovel & Luner's deposition was set to proceed before my deposition, Defendant would be in a better position to know what information, if any, I may possess that Dovel & Luner does not possess. As discussed above, however, that justification was false, because Dovel & Luner's later informed me that its deposition had been re-scheduled to occur *after* my deposition on February 18, 2026.

35.    On the call, Mr. Smith asked whether Defendant had provided notice of the February 4, 2026 subpoena served on Smith Krivoshey, PC to Dovel & Luner. Mr. Elie-Meyers stated that Defendant did not serve this new subpoena on Dovel & Luner. According to Mr. Elie-Meyers, the two subpoenas were in effect the same subpoena but with modified dates, and Defendant was not under an obligation to notify Dovel & Luner of the new date for the February 18, 2026 deposition because it previously provided Dovel & Luner with notice of the February 10, 2026 deposition.

36.    The subpoena purports to require the production of any agreements between my firm and Dovel & Luner concerning this matter. During the call, Mr. Smith asked if Defendant had already received any responsive agreements from Dovel & Luner, such that production of the agreements in response to Defendant's subpoena would be unnecessary. Mr. Elie-Meyers stated that he declined to answer that question.

37.    During the call, Mr. Smith asked Mr. Elie-Meyers if Defendant believed that Mr. Krivoshey continued to work on this matter behind the scenes, or whether there was an undisclosed agreement between Smith Krivoshey and Dovel & Luner concerning this matter. This question was relevant to the standard for deposing current and former counsel because it pertains to whether the information sought is crucial to the case. Mr. Elie-Meyers stated that he declined to answer that question.

38.    During the meet and confer on the Motion to Quash (ECF No. 1) and this motion, Defendant's counsel explicitly clarified that the second subpoena attached as Exhibit B is intended for me, as an individual, and not for Smith Krivoshey, PC, the law firm**.** Mr. Elie-Meyers was asked why he thought he could serve me in a personal capacity through a registered agent of the

firm in California. Mr. Elie-Meyers had no response other than a remark that my name is part of the firm name and that I own Smith Krivoshey, PC, but had no authority for that proposition.

39.    During the call, Mr. Smith also asked Mr. Elie-Meyers why the subpoena had not been served earlier in the case. Mr. Elie-Meyers stated that he declined to answer that question.

40.    During the call, Mr. Smith asked Mr. Elie-Meyers why counsel for Defendant had not called or emailed me to discuss the need for the subpoena or the time or place of the subpoena. Mr. Elie-Meyers stated that he declined to answer that question.

### Defendant's Refusal To Vacate Or Continue The February 18, 2026 Compliance Date

41.    On February 10, 2026, Joel Smith of Smith Krivoshey contacted counsel for Defendant to notify them that the Non-Parties intended to move to shorten time on their motion to quash, and asked whether Defendant would either stipulate to the motion to shorten time, or alternatively, agree to vacate the February 18, 2026 compliance date until the Court rules on  the motion to quash. Defendant responded as follows:

> We'd be happy to join a stipulated extension of the current discovery deadline to allow you the flexibility to file a normally noticed motion, and will seek Dovel & Luner's agreement to a stipulation to that effect. However, unless and until such a stipulation is entered, we cannot join a motion to shorten time, nor agree that the subpoena compliance date is vacated. If opposing counsel agrees to such a stipulation, we are willing to consider rescheduling the deposition pending a ruling on the joint stipulated scheduling order.

42.    A true and correct copy of Defendant's email containing the above-quoted response is attached as **Exhibit D**.

43.    Neither I or to my knowledge anyone else at Smith Krivoshey have any say or control over any potential modifications to the schedule in the *Patel* matter.

### Defendant's February 11, 2026 Email Concerning The Purpose Of The Subpoenas

44.    In a February 11, 2025, email exchange, Jacob Harper, lead counsel for Defendant, purported to justify the delay in serving the subpoenas by claiming they were prompted by testimony recently obtained by the newly added plaintiffs during their depositions.

45.    The email stated in relevant part as follows:

> With respect to timing, the issues giving rise to the need for these subpoenas on Dovel's co-counsel—none of the plaintiffs' signatures on counsel agreements you

partially produced, the discovery of a third agreement (the retention agreement itself) that wasn't produced, the plaintiffs' lack of knowledge or supervision over the class counsel in this case, the troubling fee-sharing agreements at odds with the interests of the current class, and other things--came to our attention only with the depositions of the three class representatives in January. And I will remind you that you offered extremely late dates for these witnesses after we first noticed them in December to avoid exactly this kind of issue. The timing issue you raise is disingenuous and a problem of your creation, not ours.

We will respond to the rest of your email separately but I'm raising this now because that point is so outrageously false that it deserves a response of its own.

46.    A true and correct copy of the email containing the above-quoted response is attached as **Exhibit E**.

47.    None of the newly added Plaintiffs in the *Patel* matter were represented by myself or anyone else at Smith Krivoshey. As far as I am aware, I have never met or spoke with any of them.

### Defendant's Withdrawal Of The Second Subpoena

48.    At 1 a.m. Eastern time on February 18, 2025, the subpoena's date of compliance, counsel for Defendant sent an email withdrawing the February 4, 2026, subpoena. The reason given for the withdrawal was as follows:

Mr. Krivoshey provided sworn statements describing the history of his involvement in the *Patel* litigation and the nature of his relationship with current *Patel* counsel at Dovel & Luner LLP. *Id.*, paras. 2-10. Because that declaration set out, in sum and substance, the information GT's sought to obtain through the subpoena, and similar to what other subpoenaed parties have agreed in pre-motion conferrals to provide in lieu of deposition testimony or document productions, we are withdrawing GT's subpoena here.

49.    A true and correct copy of the above-quoted email is attached as **Exhibit F**.

### Time Spent Responding To The Subpoena, Moving To Quash, Moving To Shorten Time, And Preparing The Motion For Sanctions

50.    Smith Krivoshey is a small, four-attorney law firm that opened in February 2024.

51.    Responding to Defendant's subpoena was disruptive to the firm, and required myself, attorney Smith, attorney Scott, and the firm's paralegal Ms. Kittleson to divert time and efforts that would have otherwise gone to other pending matters.

52.    Attorneys at my firm are required to keep contemporaneous time records using the

firm's billing software, and in my experience they do so as a matter of standard practice. The law firm uses Practice Panther software to track time and expenses on each matter.

53.    In preparing this declaration, I reviewed all time entries in this matter on my firm's billing software. I then caused to be assembled, with the assistance of my colleagues, timesheets detailing the fees incurred between February 5, 2026, through February 19, 2026, in responding to Defendant's subpoena, moving to quash, moving to shorten time, and preparing the motion for sanctions.

54.    I have reviewed the time entries and used billing judgment to ensure that duplicative or unnecessary time has been excluded and that only time reasonably devoted to the subpoena has been included.

55.    Attached as **Exhibit G** are true and correct itemized time/billing records generated as of mid-day February 19, 2026 Eastern Time in responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions.

56.    Up to the point when Exhibit G was finalized, the number of hours spent is 78.90, and the lodestar is $78,327.50.

57.    I anticipate that additional time/billing entries will be generated as of mid-day February 19, 2026 and afterwards, to include such things as the filing of the motion for sanctions and supporting documents, service of the motion on Defendant, further briefing or supporting documents, and a hearing if one is scheduled.

58.    I have reviewed a recent motion for sanctions filed by Defendant's counsel in *Golikov v. Walmart*, 2025 WL 3760635 (C.D. Cal. Dec. 19, 2025), which included information about Defendant's counsel's rates, as of 2025. Based on information available in those filings-which may be outdated if Defendant's counsel increased its fees for 2026—a comparison of my firm's standard rates and Defendant's counsel standard rates is shown below:

| Non-Party Attorneys | | Defendant's Counsel | |
|---|---|---|---|
| Attorney (years in practice) | Hourly Rate | Attorney (years in practice) | Hourly Rate |
| Joel Smith (19) | $1,125 | Jacob Harper (16) | $990 |
| Yeremey Krivoshey (13) | $950 | Joseph Elie-Meyers (6) | $800 |
| Brittany Scott (6) | $850 | | |

59.     I, Mr. Smith, and Ms. Scott practice almost exclusively in class action litigation, and for the most part, practice in major markets like San Francisco, Los Angeles, Boston, Chicago, and Manhattan. Smith Krivoshey, PC's 2025 hourly rates were most recently approved by Magistrate Judge Michael A. Hammer at the final approval hearing of a settlement in *Niemczyk v. Pro Custom Solar, LLC.*, Case No., 19-cv-07846 (D.N.J.), after a fulsome examination of the hours spent and the rates charged.  Judge Hammer stated, "I find the rates here are certainly reasonable and appropriate as are the number of hours expended by the attorneys and staff." More generally, Smith Krivoshey, PC, Mr. Krivoshey, and Mr. Smith have routinely had their rates approved over the past few years. *See, e.g., George v. Jaguar Land Rover N. Am., LLC*, 2:20-cv-17561-SDA, Doc. No. 93 (D.N.J. Oct. 11, 2024) (approving Smith Krivoshey's requested class action fees); *In re: Beyond Meat, Inc., Protein Content Mktg. & Sales Practices Lit.*, 1:23-cv-00669, ECF No. 66 (N.D. Ill. Mar. 21, 2025) (approving Smith Krivoshey's requested class action fees); *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (approving Yeremey Krivoshey's (then with Bursor & Fisher, P.A.) hourly rates). *See also, e.g., In re: Railway Industry Employee No-Poach Antitrust Litig.,* No. 2:18-MC-00798, ECF No. 313 & 272–300 (W.D. Pa. May 4, 2020) (approving hourly rates for attorneys up to $1,100); *Howard v. Arconic Inc. et al,* Case No. 2:17-cv-1057-MRH (W.D. Pa.) (approving attorney rates from up to $1,375); *In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (finding rates of senior attorneys up to $1,200 per hour to be reasonable); *Nitsch v. DreamWorks Animation SKG Inc.*, Case No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates

for senior attorneys up to $1200 per hour to be reasonable).

60.    The following exhibits are true and correct copies of documents filed by Defendant's counsel in *Golikov v. Walmart Inc.*, C.D. Cal. Case No. 2:24-cv-08211, on November 17, 2025, in support of a fees pursuant to a sanction order, where Defendant's counsel argued that courts routinely award fees in the range of the Non-Parties billing rates here, or much higher. In certain instances, highlighting or other markings of relevant portions have been added. Each document was pulled from the Court's PACER system.

a.    **Exhibit H:** Defendant's Supplemental Brief On The Reasonability Of Attorney's Fees Pursuant To the Court's Order Granting Sanctions. *Golikov* ECF No. 99.

b.    **Exhibit I:** Declaration of Jacob Harper In Support Of Defendant's Supplemental Brief On The Reasonability Of Attorney's Fees Pursuant To the Court's Order Granting Sanctions ("Harper Declaration"). *Golikov* ECF No. 99-1.

c.    **Exhibit J:** Exhibit B to the Harper Declaration, which Mr. Harper stated was a true and correct copy of a spreadsheet providing detailed time entries in the *Golikov* litigation.

d.    **Exhibit K:** Exhibit D to the Harper Declaration, which Mr. Harper stated was a true and correct copy of his attorney biography, obtained from the Davis Wright Tremaine website.

### *Additional Documents Obtained From The Patel Litigation*

61.    The following exhibits are true and correct copies of documents filed in *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS. In certain instances, highlighting or other markings of relevant portions have been added. Each document was pulled from the Court's PACER system.

a.    **Exhibit L:** November 7, 2025, Stipulated Request to Amend Discovery and Class Certification Deadlines. *Patel* ECF No. 181.

b.    **Exhibit M:** December 18, 2025, Stipulated Request to Further Amend Discovery Deadline. *Patel* ECF No. 184.

c.    **Exhibit N:** December 23, 2025, Order Granting Stipulated Request to Further

Amend Discovery Deadline. *Patel* ECF No. 185.

d. **Exhibit O:** February 12, 2026, Declaration of Martin Brenner RE: Discovery Joint Stipulation. *Patel* ECF No. 188-1.

e. **Exhibit P:** Exhibit G to February 12, 2026, Declaration of Martin Brenner RE: Discovery Joint Stipulation, containing Patel deposition transcript excerpts. *Patel* ECF No. 188-1.

f. **Exhibit Q:** Exhibit H to February 12, 2026, Declaration of Martin Brenner RE: Discovery Joint Stipulation, containing Schmidt deposition transcript excerpts. *Patel* ECF No. 188-1. Exhibit H to Mr. Brenner's declaration contains pages 62 and 73 from the Schmidt deposition. On February 19, 2026, Defendant filed the Declaration of Joseph-Elie Meyers in Support of Joint Stipulation, Patel ECF No. 195. Exhibit 8 to Mr. Elie Meyers declaration contains excerpts from the same Schmidt deposition transcript. However, Exhibit 8 contains different pages, including pages 63-69. Accordingly, Exhibit Q is a compilation of pages 62-69, and page 73, assembled from Exhibit H to Mr. Brenner's declaration and Exhibit 8 to Mr. Elie Meyeres declaration.

g. **Exhibit R:** Exhibit I to February 12, 2026, Declaration of Martin Brenner RE: Discovery Joint Stipulation, containing Nunez deposition transcript excerpts. *Patel* ECF No. 188-1.

h. **Exhibit S:** February 12, 2026, Joint Stipulation Pursuant to Local Rule 37…. *Patel* ECF No. 191.

i. **Exhibit T:** February 12, 2026, Redacted Version of Declaration of Joseph Elie-Meyers…. *Patel* ECF No. 188-2.

62. Attached hereto as **Exhibit U** is the firm resume of Smith Krivoshey, PC.

63. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed in Louisville, Kentucky, on February 20, 2026.

Yeremey O. Krivoshey