**EXHIBIT Q**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
----------------------------------x
AMIT PATEL, LAUREN SCHMIDT,
and CHRISTOPHER NUNEZ, on
Behalf of Themselves and All
Others Similarly Situated,
Plaintiffs,
Vs. Case No. 2:19-cv-10920-FMO-GJS
GT'S LIVING FOODS, LLC,
Defendant.
----------------------------------x

HIGHLY CONFIDENTIAL

Videotape Deposition of Lauren Schmidt taken by Defendants pursuant to Notice, taken on January 14, 2026 beginning at 10:13 a.m., held at the offices of Davis Wright Tremaine, LLP, 1251 Avenue of the Americas, New York, New York 10020, before Maureen Ratto, a Registered Professional Reporter, Certified Court Reporter and Notary Public.

with any attorneys from any other law firm, other than myself and other than -- sorry, I got lost in my own question. 11:36:24 11:36:32 11:36:36

Other than me and your attorneys at Dovel & Luner, have you spoken with any other attorneys from any other law firms about this litigation? 11:36:39 11:36:41 11:36:43 11:36:44

A. I do not -- to my knowledge, no. 11:36:46 11:36:53

Q. When was the first time you were put in contact with Martin Brenner? 11:36:53 11:36:55

A. I believe it was December of 2024 but it may have been before. It may have been a month or two before that but it was the end of -- somewhere around the fall of 2024. 11:37:01 11:37:04 11:37:07 11:37:09 11:37:11

Q. When was the first time you were in contact with the attorney who you think might be named Simon? 11:37:12 11:37:15 11:37:17

A. End of summer, August-ish. 11:37:18

Q. Of what year? 11:37:22

A. 2024, I believe. 11:37:24

Q. Ever spoken with Rick Lyon about this case? 11:37:29 11:37:35

A. No. 11:37:36

(Schmidt Exhibit 6, Joint Prosecution Agreement, Bates PLAINTIFFS0000042 was received and marked on this date for identification.) 11:37:36 11:37:36 11:37:36 11:37:36 11:37:58

Q. I'm handing you what the court reporter is marking Exhibit 6. Do you recognize this document? 11:37:58 11:37:59 11:38:20

A. Vaguely. 11:38:21

Q. Have you seen this document before? 11:38:38 11:38:39

A. I believe so. 11:38:40

Q. Do you have any understanding of what this document sets out? 11:38:45 11:38:59

A. It's regarding the attorneys' fees. 11:39:04 11:39:14

Q. I want to direct your attention to the first paragraph of the first page. Let me know once you've had a chance to review that paragraph. 11:39:14 11:39:15 11:39:19 11:39:22

(Deponent reviews the document.) 11:39:22 11:39:26

A. Yes. Okay. 11:39:26

Q. Do you recognize the name of the law firm Smith Krivoshey, PC? 11:39:44 11:39:45

A. It's not familiar to me. 11:39:49
Q. Have you had any contact with an attorney from Smith Krivoshey, PC? 11:39:53 11:39:56
A. Not to my knowledge. 11:39:59
Q. Do you recognize the name of the law firm Bursor & Fisher, PA? 11:40:00 11:40:02
A. No. 11:40:07
Q. Have you ever had any contact with an attorney from that law firm? 11:40:07 11:40:08
A. Not to my knowledge. 11:40:10
Q. And do you recognize the law firm Zimmerman Reed, PC? 11:40:11 11:40:13
A. Other than you saying their name. 11:40:15 11:40:17
Q. So you've never had any contact with anyone from Zimmerman -- 11:40:17 11:40:19
A. Correct. 11:40:20
Q. What about Westerman Law Corp., do you recognize that law firm name? 11:40:20 11:40:23 11:40:25
A. No. 11:40:25
Q. Have you had any contact, to your knowledge, with anyone attorney from Westerman Law Corp.? 11:40:26 11:40:28 11:40:30
A. No. 11:40:32

Q. I'll direct your attention to page 2. Please review the first paragraph and the bullet points that follow. Let me know when you've reviewed that. 11:40:33 11:40:39 11:40:48 11:40:52
A. Okay. 11:40:54
Q. In your own words, what do you understand this portion of the agreement to set out? 11:41:03 11:41:06 11:41:08
A. It is a fee structure, and I'm not an attorney so I couldn't tell you -- I could tell you broadly, it's a fee structure. 11:41:09 11:41:15 11:41:19 11:41:24
Q. Do you understand this to describe the ways in which your counsel will split any proceeds of this lawsuit with other law firms? 11:41:24 11:41:25 11:41:27 11:41:28
A. Yes. 11:41:31
Q. And do you understand that your law firm Dovel & Luner will get a larger percentage of the proceeds of this lawsuit, if any, depending on when this case settles -- 11:41:31 11:41:35 11:41:39 11:41:40 11:41:43
MR. BRENNER: Objection, misstates facts. Go ahead. 11:41:45 11:41:45
Q. -- if it settles or is 11:41:48

resolved? 11:41:49
A. I'm sorry. Can you repeat the question? 11:41:50 11:41:53
Q. Do you understand that your law firm Dovel will get more money if this lawsuit is resolved in your favor later in the litigation? 11:41:53 11:41:53 11:41:57 11:41:59
MR. BRENNER: Objection, misstates facts, calls for a legal conclusion. Go ahead. 11:42:00 11:42:01 11:42:04
A. I am not an attorney. I'm not sure if I'm interpreting this correctly. I do not know. 11:42:04 11:42:06 11:42:14
Q. Have you reviewed this document before? 11:42:15 11:42:16
A. Yes, it is ringing a bell. 11:42:17
Q. I want to direct your attention to the last page of this document. Does that say "Client approval" at the top? 11:42:19 11:42:20 11:42:22 11:42:33
A. It does. 11:42:34
Q. And does it have a space for client name and client signature? 11:42:34 11:42:37
A. Yes. 11:42:38
Q. Do you recall if you signed 11:42:38

this document at any point? 11:42:39
A. I do not recall but -- I do 11:42:41
not recall. I defer to my attorney. 11:42:45
Q. You don't know if you signed 11:42:57
this and sent it back to your attorney? 11:43:00
MR. BRENNER: Asked and 11:43:01
answered. Go ahead. 11:43:02
A. I do not recall. 11:43:04
(Schmidt Exhibit 7, Agreement
Concerning Sharpe Litigation, Bates
PLAINTIFFS0000047 was received and
marked on this date for
identification.)
Q. I'm going to hand you what's 11:43:31
been marked as Exhibit 7 by the court 11:43:32
reporter. 11:43:49
Do you recognize this 11:44:10
document? 11:44:10
A. Vaguely, but I think because 11:44:11
it is very similar to the other document. 11:44:12
Q. On the first page it says it's 11:44:15
an agreement regarding the Sharpe 11:44:23
litigation? 11:44:25
A. Yes. 11:44:25
Q. Do you have any understanding 11:44:26

of what this document sets out? 11:44:31
A. It looks, again, to be regarding attorneys' fees and costs. 11:44:34 11:44:40
Q. I just want to direct your attention to the last page of this document. Does that say "Client approval" at the top? 11:44:43 11:44:52 11:44:53 11:44:59
A. Yes. 11:44:59
Q. Is there space for your client name and a client signature? 11:45:00 11:45:01
A. Yes. 11:45:03
Q. Do you recall if you signed this document? 11:45:03 11:45:05
A. I do not recall. I defer to my attorney. 11:45:06 11:45:09
Q. Do you know if this document supercedes or cancels the prior Joint Prosecution Agreement that we discussed a few minutes ago? 11:45:09 11:45:19 11:45:24 11:45:25
MR. BRENNER: Calls for a legal conclusion. Go ahead. 11:45:26 11:45:27
A. I'm not an attorney. I do not know. 11:45:28 11:45:30
Q. I'm just asking for your understanding. 11:45:30 11:45:31

Do you have any understanding if this cancels the prior Joint Prosecution Agreement or supercedes it? 11:45:32 11:45:34 11:45:40
A. I do not know. 11:45:41
Q. In preparing for this deposition today, did you review Exhibit 6, the Joint Prosecution Agreement? 11:45:46 11:45:47 11:45:49
A. I do not know if it's a specific document or not. They're blending together. 11:45:50 11:45:54 11:45:59
Q. In preparing for this deposition today, did you review Exhibit 7, which is the agreement concerning the Sharpe litigation? 11:46:00 11:46:02 11:46:05 11:46:07
A. I do not recall. 11:46:08
Q. Sitting here today, do you have any understanding of your law firm, Dovel & Luner's relationship with the law firms that are listed in these two agreements? 11:46:13 11:46:24 11:46:29 11:46:32 11:46:35
MR. BRENNER: Vague. Go ahead. 11:46:35
A. At a high level. But, again, I'm not an attorney. I believe some of these attorneys were involved well before I was involved in the case when Dovel & 11:46:37 11:46:41 11:46:44 11:46:46

term "fee" but go ahead. 11:51:09
A. I'm not an attorney. I hired 11:51:11
an attorney to identify what I'm entitled 11:51:13
to. 11:51:18
Q. Do you have any expectation 11:51:19
about the amount of fees or I'll even say 11:51:23
awards that you might be able to receive 11:51:27
as a class representative in this case? 11:51:29
A. Other than a full refund for 11:51:31
what I have purchased, I defer to my 11:51:33
attorneys for any other damages that have 11:51:36
been sought. 11:51:39
Q. Do you know if you are seeking 11:51:40
any damages other than a full refund in 11:51:47
this case? 11:51:50
A. I defer to my attorney. 11:51:51
Q. I'm just going to ask you to 11:51:53
answer these questions based on your own 11:51:56
understanding. If you don't know you can 11:51:58
say that, but if you have any 11:52:00
understanding I'd ask you to give me your 11:52:04
best understanding, sitting here today. 11:52:06
Do you have any expectation 11:52:08
about the amount of money you might 11:52:13
recover through this lawsuit? 11:52:16

C E R T I F I C A T E

I, MAUREEN M. RATTO, a Registered Professional Reporter, do hereby certify that prior to the commencement of the examination, LAUREN SCHMIDT was sworn by me to testify the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

Date: 1/28/2026

Maureen Ratto

MAUREEN M. RATTO, RPR

License No. 817125