DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
   *jharper@dwt.com*
Heather F. Canner (SBN 292837)
   *heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
   *josepheliemeyers@dwt.com*
Peter K. Bae (SBN 329158)
   *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>Defendant. | Case. No. 3:26-mc-80036-TSH<br><br>(Case No. 2:19-cv-10920-FMO-DSR Pending in the Central District of California)<br><br>**OPPOSITION TO MOTION FOR SANCTIONS**<br><br>Date:          April 2, 2026<br>Time:         10:00 a.m.<br>Courtroom:  E – 15th Floor<br><br>*[Motion to Consider Whether Another Party's Material Should Be Sealed; Declarations of Jacob M. Harper and Joseph Elie-Meyers; and [Proposed] Order Filed Concurrently]* |

OPPOSTION TO MOTION FOR SANCTIONS

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................3

        A.      Mr. Krivoshey Negotiates Monetary Settlement and Injunctive Relief in *Retta*.......3

        B.      Mr. Krivoshey Files *Patel*, Then Withdraws as Counsel Due to *Retta* Conflicts......4

        C.      Mr. Krivoshey Files *Mukadam*, His *Third* Near-Identical Kombucha Case. ............4

        D.      *Patel* Plaintiffs Raise Issues About Mr. Krivoshey's Ongoing Involvement. ...........5

        E.      GT's Seeks Information About Mr. Krivoshey's Role From *Patel* Plaintiffs. ..........6

        F.      GT's Serves Subpoenas on Former *Patel* Counsel, Including Mr. Krivoshey. .........6

        G.      GT's Offers to Confer Regarding The Subpoena; Mr. Krivoshey Declines. ............7

        H.      GT's Also Attempts to Confer Regarding The Subpoena
                Over Email. ...................................................................................................8

        I.      Mr. Krivoshey Moves to Quash The Subpoena. ........................................................8

        J.      GT's Withdraws The Subpoena. ...................................................................................9

        K.      Mr. Krivoshey Files Motion for Sanctions. ...............................................................9

III.    ARGUMENT ...........................................................................................................9

        A.      Sanctions Are Not Warranted. ...................................................................... 10

                1.      Narrowly Tailored Subpoenas Did Not Cause
                        Undue Burden. ..................................................................................... 11

                        a.      The Subpoena Is Narrowly Tailored to Seek
                                Information Relevant to the New Plaintiffs in *Patel*. ...................... 11

                        b.      GT's Sought Information from Plaintiffs and
                                Plaintiffs' Counsel. .......................................................................... 13

                        c.      GT's Repeatedly Attempted to Confer with
                                Mr. Krivoshey. ................................................................................. 14

                        d.      GT's Withdrew the Subpoena Before Compliance. ......................... 16

                2.      GT's Subpoena Was Consistent With Law. ............................................... 18

                        a.      The Subpoena Was Timely. .............................................................. 18

                        b.      The Subpoena Otherwise Substantially Complied with Rule 45..... 19

                3.      GT's Did Not Act in Bad Faith. ................................................................ 20

i

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

a.    Disagreements About Discovery Scope and
Timing Are Not Misrepresentations. ................................................ 21

b.    GT's Counsel Acted Consistently With Professional Guidelines. .. 23

B.    Mr. Krivoshey's Requested Sanctions Are Unsupported. ....................................... 24

IV.    CONCLUSION...................................................................................................................25

ii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

# TABLE OF AUTHORITIES

**CASES**

*AECOM Energy & Constr., Inc. v. Topolewski*,
2022 WL 595937 (C.D. Cal. Feb. 25, 2022) ............................................................................24

*Aevoe Corp. v. AE Tech Co.*,
2013 WL 4714273 (D. Nev. Aug. 30, 2013) ............................................................................20

*Alberts v. HCA Inc.*,
405 B.R. 498 (D.D.C. 2009) ....................................................................................................16

*Apple, Inc. v. Samsung Elecs. Co.*,
2013 WL 1942163 (N.D. Cal. May 9, 2013) ...........................................................................16

*Bonzani v. Shinseki*,
2014 WL 2521849 (E.D. Cal. June 14, 2014) .........................................................................23

*Briggs v. Yi*,
2024 WL 5456340 (D. Ala. May 1, 2024)..........................................................................18, 19

*Cal. v. Kroger Co.*,
2024 WL 4453267 (C.D. Cal. Oct. 9, 2024)............................................................................25

*Claypole v. Cnty. of Monterey*,
2016 WL 145557 (N.D. Cal. July 12, 2016)............................................................................23

*Cryotech Int'l, Inc. v. Technifab Prods., Inc.*,
2009 WL 3021185 (N.D. Cal. Sept. 17, 2009) .............................................................17, 18, 20

*D'Amico v. N& D Rests., LLC*,
2025 WL 3158124 (C.D. Cal. Sept. 24, 2025) ........................................................................20

*Dang v. Sutter's Place, Inc.*,
2012 WL 2906109 (N.D. Cal. July 13, 2012)..........................................................................16

*Davila v. Roblen, LLC*,
2026 WL 323134 (D. Conn. Feb. 6, 2026) .............................................................................24

*Dennis v. Good Deal Charlie, Inc.*,
2022 WL 62919 (S.D. Cal. Jan. 6, 2022).................................................................................16

*Dodge v. FirstService Residential Ariz. LLC*,
2025 WL 3653164 (D. Ariz. Dec. 17, 2025) ..........................................................................24

*Duong v. Groundhog Enters., Inc.*,
2020 WL 2041939 (C.D. Cal. Feb. 28, 2020) ....................................................................17, 18

iii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Effinger v. Ancient Organics*,
 2025 WL 1489710 (N.D. Cal. May 23, 2025)...........................................................................25

*Equal Emp. Opportunity Comm'n v. Dillon Co.*,
 2010 WL 4134696 (D. Colo. Oct. 12, 2010) ...........................................................................18

*Evox Prods. LLC v. Yahoo, Inc.*,
 2023 WL 6192716 (C.D. Cal. Aug. 8, 2023)...........................................................................15

*Ferguson v. Smith*,
 2023 WL 8868815 (D. Or. Dec. 22, 2023) ..............................................................................15

*Fujikura Ltd v. Finisar Corp.*,
 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ......................................................................18, 20

*Gharavi v. Google LLC*,
 2026 WL 82256 (N.D. Cal. Jan. 12, 2026)..........................................................................19, 25

*Golikov v. Walmart Inc.*,
 2025 WL 3190642 (C.D. Cal. Nov. 6, 2025)..............................................................................2

*Green v. Baca*,
 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) ............................................................................20

*Hawkins v. Kroger* Co.,
 2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ..........................................................................25

*Hurd v. Boston Sci. Corp.*,
 2023 WL 3564783 (C.D. Cal. May 5, 2023) ...........................................................................14

*In re Subpoena to VaughnPerling*,
 2019 WL 8012372 (C.D. Cal. Dec. 2, 2019) ...........................................................................19

*Issagholi v. McLaren Auto., Inc.*,
 2021 WL 4352297 (C.D. Cal. July 9, 2021).............................................................................16

*Jones v. PGA TOUR, Inc.*,
 668 F. Supp. 3d 907 (N.D. Cal. 2023) .....................................................................................20

*Katz v. Steyn*,
 2019 WL 13211069 (D. Nev. June 27, 2019)...........................................................................21

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
 2025 WL 917110 (N.D. Cal. Mar. 26, 2025)............................................................................23

*Langford et al. v. Walmart Inc.*,
 W.D. Ark. No. 5:25-cv-05228-TLB, ECF No. 12 .....................................................................1

*Legal Voice v. Stormans Inc.*,
 738 F.3d 1178 (9th Cir. 2013) ...........................................................................................passim

iv

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023) ...................................................................................25

*Mount Hope Church v. Bash Back!*,
    705 F.3d 418 (9th Cir. 2012) ........................................................................................passim

*Mukadam et al. v. GT's Living Foods*,
    C.D. Cal. No. 2:23-cv-10514-ODW-SK, ECF No. 20 ...................................................1, 5, 25

*Mukadam v. GT's Living Foods LLC*,
    No. 2:23-cv-10514 (C.D. Cal. Dec. 15, 2023), ECF No. 1.......................................................5

*OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*,
    2023 WL 8473762 (S.D. Cal. Dec. 7, 2023) ........................................................................11

*Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*,
    2019 WL 4267764 (C.D. Cal. July 31, 2019)..................................................................19, 20

*Patel, et al. v. GT's Living Foods, LLC*,
    C.D. Cal. No. 2:19-cv-10920-FMO-DSRx......................................................................passim

*Primus Auto Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) .................................................................................................21

*Retta v. Millennium Prods., Inc.*,
    2017 WL 5479637 (C.D. Cal. Aug. 22, 2017)...........................................................................4

*Retta v. Millennium Prods., Inc.*,
    C.D. Cal. No. 2:15-cv-01801-PSG-AJW........................................................................passim

*Richmond v. Reefer Sys., Inc.*,
    2020 WL 9074805 (C.D. Cal. Dec. 21, 2020) .......................................................................24

*Salmon v. CRST Expedited, Inc.*,
    2016 WL 3945362 (N.D. Okla. July 19, 2016) .....................................................................25

*Santacruz v. Southbank Dairies, LLC*,
    2016 WL 6997086 (W.D. Wash. Nov. 30, 2016).................................................................21

*Sci. Apps. & Rsch. Assoc.'s v. Zipline Int'l, Inc.*, 2024 WL 5011603 (N.D. Cal. Dec. 6,
    2024) ...............................................................................................................13, 15, 24, 25

*Scott v. Keller*,
    2010 WL 1267772 (E.D. Cal. Mar. 31, 2010) ......................................................................19

*Snow Covered Cap., LLC v. Fonfa*,
    2024 WL 3398343 (D. Nev. July 12, 2024) .........................................................................19

*Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*,
    2012 WL 1191214 (D.N.J. Apr. 10, 2012) ...........................................................................18

v

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

*Tennison v. City & Cnty. of San Francisco*,
  2005 WL 8160036 (N.D. Cal. Sept. 19, 2005) ........................................................................13

*The Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc.*,
  2015 WL 6167968 (N.D Cal. Oct. 21, 2015) ...........................................................................23

*Tiberi v. CIGNA Ins. Co.*,
  40 F.3d 110 (5th Cir. 1994) .....................................................................................................15

*United States v. Rico*,
  619 F. App'x 595 (9th Cir. 2015) ...............................................................................10, 21, 23

*Varlitskiy v. Cnty. of Riverside*,
  2022 WL 18284986 (C.D. Cal. Dec. 14, 2022) .......................................................................18

*Vondersaar v. Starbucks Corp.*,
  2013 WL 191546 (N.D. Cal. May 8, 2013).............................................................................20

*Vysata v. Menowitz*,
  2019 WL 1578374 (C.D. Cal. Feb. 1, 2019) ...........................................................................23

*Wakefield v. Walt Disney Co.*,
  2007 WL 9724382 (C.D. Cal. May 10, 2007) .........................................................................20

*Zurich Am. Ins. Co. v. Sealink Ins. Serv. Corp.*,
  2018 WL 10561907 (C.D. Cal. Mar. 16, 2018).......................................................................13

**RULES**

Fed. R. Civ. P.
  5(b)...........................................................................................................................................20
  11 ............................................................................................................................................1, 25
  26(b)(1) ....................................................................................................................................11
  26(g).........................................................................................................................................10
  41(d).........................................................................................................................................14
  45 .......................................................................................................................................passim
  45(b)(1) ....................................................................................................................................20
  45(d)(1) .................................................................................................................................10, 25
  45(d)(1) ....................................................................................................................................10

LR 83-1.3 ........................................................................................................................................4

vi

OPPOSITION TO MOTION FOR SANCTIONS

## I.    INTRODUCTION

Following his forced withdrawal from this case[1], his forced abandonment of a nearly identical copycat case[2], and yet another forced withdrawal from another case after he was served with a Rule 11 motion[3]—all of which was led by undersigned counsel—Yeremy O. Krivoshey has elected to use a baseless Motion for Sanctions (ECF No. 9, Motion) as a vehicle to air preexisting grievances with counsel and punish GT's Living Foods, LLC (GT's) for issuing a subpoena necessitated by Mr. Krivoshey's own conduct and the record in *Patel, et al. v. GT's Living Foods, LLC*, C.D. Cal. No. 2:19-cv-10920-FMO-DSRx. While the subpoena itself was lawfully issued, Mr. Krivoshey's Motion relies on untenable contortions of fact and law and is entirely meritless.

In *Patel*, Judge Fernando M. Olguin denied class certification primarily on the ground that the putative class counsel—Mr. Krivoshey—had improperly taken positions adverse to a *prior* class settlement asserting nearly identical claims that he had negotiated, *Retta v. Millennium Prods., Inc.*, C.D. Cal. No. 2:15-cv-01801-PSG-AJW. *See Patel*, ECF No. 129; Elie-Meyers Decl., Ex. 8 (Class Cert. Order). Judge Olguin found that Mr. Krivoshey's (and other counsel's) inconsistent representations "not only appear to undermine the instant action but also call into question the ability of [counsel] to 'fairly and adequately represent the interests of the class." *Id.* at 6. As a result, Judge Olguin found Mr. Krivoshey likely inadequate and denied class certification. Mr. Krivoshey and his prior firm, Bursor & Fisher, were forced to withdraw from *Patel*.

On October 23, 2025, Judge Olguin reopened discovery regarding the newly added plaintiffs so that they could bring a new class certification motion addressing the prior issues, including adequacy. During this discovery period, plaintiffs (now represented by Dovel & Luner) produced two internal agreements among current- and withdrawn counsel showing fee splitting arrangements. These agreements raised plausible concern that former counsel, including Mr. Krivoshey, continued to direct and stand to profit from the litigation——thereby perpetuating the adequacy issues raised by Judge Olguin. All remaining plaintiffs were deposed regarding the

---

[1] *Patel*, ECF Nos. 136, 137, 152, 155 (Krivoshey's requests to withdraw); Class Cert. Order.
[2] *Mukadam et al. v. GT's Living Foods*, C.D. Cal. No. 2:23-cv-10514-ODW-SK, ECF No. 20.
[3] *Langford et al. v. Walmart Inc.*, W.D. Ark. No. 5:25-cv-05228-TLB, ECF No. 12.

1

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

ambiguous fee split arrangement, and all testified that they did not know the arrangements with Mr. Krivoshey. With the relationships between counsel ambiguous and the lead plaintiffs unable to explain them, GT's took the logical and necessary next step of issuing subpoenas to Mr. Krivoshey and the other firms to seek information about their ongoing involvement in *Patel*, if any.

After giving notice to current *Patel* counsel, GT's diligently attempted to serve Mr. Krivoshey with the subpoena. GT's first attempted service at the address of Mr. Krivoshey's law firm, Smith Krivoshey PC. When that proved to be nothing more than a mailbox center, GT's attempted to serve Mr. Krivoshey three times at his home in Kentucky. When that also failed, GT's was able to serve a substantially identical subpoena (with a later compliance date to account for the passage of time) on Mr. Krivoshey through his firm's registered agent. Mr. Krivoshey— after refusing to meaningfully confer and stating his intention to seek sanctions from the outset— then submitted a sworn declaration with his motion to quash that supplied the precise information GT's sought. Having obtained the needed information, GT's promptly withdrew the subpoena.

Ignoring his own obstructionist behavior, Mr. Krivoshey now asks the Court to impose extraordinary sanctions based not on any actual burden, prejudice, or misconduct, but on his disagreement with GT's decision to test his unsworn representations through narrowly tailored discovery. But the Ninth Circuit has repeatedly warned against chilling vigorous advocacy through sanctions in good-faith discovery disputes such as this one. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Further, GT's was not required to rely on current and former counsel's unsworn representations about ongoing involvement in this lawsuit, and was entitled to seek sworn testimony or declarations to confirm that former counsel is no longer involved in *Patel*.[4]

Mr. Krivoshey's request for sanctions should be denied for several independent reasons.

*First*, there was no undue burden. GT's Subpoena was narrowly tailored, limited to documents and testimony relevant to potential conflicts of interest. Mr. Krivoshey refused to

---

[4] That is particularly the case here, where undersigned counsel recently obtained sanctions in the amount of $623,738 against the *Patel* plaintiffs' current counsel, Dovel & Luner, based on pleading a "false fact" constituting reckless failure to investigate. *Golikov v. Walmart Inc.*, 2025 WL 3190642, at *2 (C.D. Cal. Nov. 6, 2025).

2

OPPOSITION TO MOTION FOR SANCTIONS

discuss narrowing and threatened sanctions from the outset. Once he provided a sworn declaration addressing the issues raised, GT's withdrew the subpoena (long before any potential compliance date, due to Court's order vacating the subpoena until the March 19 hearing). Because Rule 45 focuses on the burden of compliance—and none occurred—sanctions are unwarranted.

*Second*, GT's Subpoena was issued in accordance with the law. The information sought by the subpoena fell squarely within reopened discovery; GT's properly served by first attempting personal service and then serving Mr. Krivoshey through his firm's registered agent; GT's provided advance notice to new plaintiffs' counsel; and GT's scheduled the deposition with sufficient time to respond. Minor, non-prejudicial defects do not support sanctions, and the subpoena substantially complied with Rule 45.

*Third*, Mr. Krivoshey's accusations of misrepresentation are actually just ordinary discovery disagreements. Whether GT's Subpoena fell within reopened discovery, or whether two materially identical subpoenas were "the same" are legal disagreements, not false statements. They do not approach the showing of bad faith required for sanctions.

*Last*, the requested sanctions are improper as a matter of law and equity. Rule 45 does not authorize fee-shifting for merely litigating a motion to quash, and Mr. Krivoshey incurred no compliance costs from a withdrawn subpoena.

For these reasons, and as set forth below, the Court should deny the Motion in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

GT's provides relevant context regarding Mr. Krivoshey's involvement with the *Patel* litigation, which necessitated the Subpoena.

### A.    Mr. Krivoshey Negotiates Monetary Settlement and Injunctive Relief in *Retta*.

Mr. Krivoshey, formerly of the law firm Bursor & Fisher, P.A. (Bursor), was prior counsel for plaintiffs Sharpe, Weiler, Leder, and DiGennaro, in *Patel*, an ongoing putative class action regarding GT's alcohol and sugar content labeling on GT's Synergy and Enlightened kombucha products (the Kombucha). As detailed below, Mr. Krivoshey withdrew as counsel in *Patel* after Judge Olguin denied class certification based, in part, on his role in *Retta*. *Patel*, ECF No. 129;

3

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Elie-Meyers Decl., Ex. 8. As Judge Olguin explained: "The Retta Action involved the same allegations [as *Patel*] regarding the alcohol and sugar levels in defendant's kombucha, asserted the same claims for relief under California and New York law, and was filed by the same attorneys as in this action." Class Cert. Order 2. Mr. Krivoshey ultimately settled *Retta* in 2017 for $8.25 million and injunctive relief requiring GT's to implement an alcohol warning label as well as alcohol and sugar content testing regime, both of which remain in place for all disputed Kombucha products in the instant action. *Id.* at 2, 5 n.8; *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017).

**B.    Mr. Krivoshey Files *Patel*, Then Withdraws as Counsel Due to *Retta* Conflicts.**

On December 27, 2019, Mr. Krivoshey filed *Patel* on behalf of plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro (the original plaintiffs), "challeng[ing] the alcohol warning label they negotiated in Retta." Class Cert. Order 3. On June 21, 2024, Judge Olguin denied plaintiffs' motion for class certification, which was prepared and signed by Mr. Krivoshey. *See id.*; *Patel*, ECF No. 99-1 at 54. As Judge Olguin explained, "plaintiffs made several representations to the *Retta* Court that not only appear to undermine the instant action but also call into question the ability of Bursor to 'fairly and adequately represent the interests of the class,' … i.e., to vigorously and effectively litigate the present action." Class Cert. Order 2. Judge Olguin specifically noted that Bursor failed to file a "Notice of Related Case pursuant to Local Rule 83-1.3 as to the Retta Action at the time it filed this action." *Id.* at 6.

After more than five years of litigation, Mr. Krivoshey, as well as co-counsel from Bursor and Adhoot & Wolfson, were forced to withdraw as counsel of record for the *Patel* plaintiffs following the denial of class certification, and were replaced by counsel from Dovel & Luner LLP (Dovel). *Patel*, ECF Nos. 134, 136–137, 139–144, 152–153, 156–160.

**C.    Mr. Krivoshey Files *Mukadam*, His *Third* Near-Identical Kombucha Case.**

Prior to withdrawing from *Patel*, Mr. Krivoshey filed a third complaint against GT on December 15, 2023, alleging that the Kombucha lacks "appropriate warning[s] on the labels" to warn customers that the products contain some levels of alcohol. *Compare Mukadam v. GT's*

4

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Living Foods LLC,* No. 2:23-cv-10514 (C.D. Cal. Dec. 15, 2023), ECF No. 1 (*Mukadam* Compl.) ¶¶ 88, 123, 130, 141, 152, 163, 183 *with Patel*, ECF No. 1 (*Patel* Compl.) ¶¶ 54, 59, 79, 92, 104, 112. Although *Mukadam* is largely identical to *Retta*, Mr. Krivoshey failed to file a notice of related cases in *Mukadam* to *Retta*. Mr. Krivoshey voluntarily dismissed *Mukadam* on April 23, 2024. *Mukadam*, ECF No. 20.

### D. *Patel* Plaintiffs Raise Issues About Mr. Krivoshey's Ongoing Involvement.

On December 17, 2024, the *Patel* complaint was amended to add new plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez (together, the new plaintiffs), while retaining the original plaintiffs. *Patel*, ECF No. 168. GT's moved to dismiss and for judgment on the pleadings in part because the doctrine of judicial estoppel bars plaintiffs' claims, which are directly contradictory to the position adopted by them and their counsel in the *Retta* settlement. *Patel*, ECF No. 171. On September 30, 2025, the *Patel* Court dismissed the original plaintiffs with prejudice, agreeing that they, as *Retta* class members, were jurisdictionally barred from collaterally challenging the terms of the *Retta* settlement. *Patel*, ECF No. 178 at 4–5.

On October 23, 2025, the *Patel* Court ordered that "[a]ny remaining discovery (related solely to the newly added named plaintiffs) shall be completed by December 29, 2025." *Patel*, ECF No. 180. The parties later continued that discovery deadline by joint stipulation to March 5, 2026, to allow time for follow on discovery and to reschedule all plaintiffs' depositions to dates after the end-of-year holidays. *Id.*, ECF No. 185.

On December 23, 2025, the new plaintiffs produced—for the first time—two agreements between current and former counsel (including Mr. Krivoshey): (1) the July 9, 2024 Joint Prosecution Agreement (JPA), and (2) July 16, 2024 Agreement Concerning *Sharpe* Litigation.

These two agreements provided ample cause for concern that Mr. Krivoshey and other withdrawn counsel continued to play a role or had an ongoing financial interest in the *Patel* action. As Mr. Krivoshey admits, despite the *Patel* Court raising concerns over Mr. Krivoshey's continued involvement in the June 2024 Class Certification Order, "[t]he July 9, 2024, agreement anticipated that Dovel would be sole lead counsel in *Patel* but [Mr. Krivoshey and his law firm Smith

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

Krivoshey] would stay on as counsel of record and work, if at all, at Dover & Luner's direction" and "included a proposed fee split in the case of a recovery of fees." ECF No. 9-1, Declaration of Yeremey Krivoshey (Krivoshey Decl.) ¶ 7. Further, the July 16, 2024 agreement provided that Mr. Krivoshey and Bursor would withdraw from *Patel* subject to the Court's approval, and only after the Class Representatives consent to this agreement. Elie-Meyers Decl., Ex. 1 at 6. Not only is the term Class Representatives undefined, but the client approval signature page on the produced agreement is also blank. *Id.* The agreement also preserves former counsel's right to seek costs or fees by proposing any basis for recovery in the event of a class settlement or judgment. *Id.*

**E.     GT's Seeks Information About Mr. Krivoshey's Role From *Patel* Plaintiffs.**

GT's first attempted to probe the new plaintiffs' knowledge of former counsel's potential involvement with *Patel*. During his January 8, 2026 deposition, Mr. Nunez testified he had seen one of the agreements around "late 2024" and believed he signed it, but could not state whether the fee allocations are still in place, or whether he has "any oversight" over class counsel or other lawyers named in the agreements. Elie-Meyers Decl., Ex. 3. In her January 14 deposition, Ms. Schmidt said she remembered seeing the agreements too, but could not recall if she had signed either. Elie-Meyers Decl., Ex. 4. In his January 16 deposition, Mr. Patel said he saw the two agreements "in the summer of 2024," but did not "particularly recall" whether he had signed the JPA and did not "have knowledge of th[e] specific number of retention agreements he had signed related to this matter." Elie-Meyers Decl., Ex. 2.

**F.     GT's Serves Subpoenas on Former *Patel* Counsel, Including Mr. Krivoshey.**

After exhausting discovery avenues with the *Patel* plaintiffs regarding their knowledge of former counsel's involvement, GT's sought answers from counsel themselves.

On January 29, 2026, GT's served its Notice of Subpoena upon the new plaintiffs, which indicated that GT's would schedule four depositions of former and current *Patel* counsel. ECF No. 9-2 (Notice). The Notice attached a subpoena to Mr. Krivoshey noticing his deposition for February 10. *Id.* at Ex. 2. Between January 29 and February 4, GT's made four attempts to

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

personally serve the subpoena upon Mr. Krivoshey at his law firm address and residence in Kentucky. Elie-Meyers Decl. ¶ 5–8.

Only after those attempts failed—and in light of the approaching March 5 discovery cut-off—did GT's prepare another materially identical Subpoena for Mr. Krivoshey for service upon the registered agent of Smith Krivoshey, PC, which GT's understands to be owned and operated by Mr. Krivoshey. Elie-Meyers Decl. ¶ 9 & ECF No. 9-3 (Subpoena). GT's Subpoena noticed Mr. Krivoshey's deposition further out—February 18—to provide additional time for compliance. Elie-Meyers Decl. ¶ 9. This Subpoena was identical to the earlier subpoena, but the Subpoena's Attachment A defined "You" as Smith Krivoshey PC instead of Mr. Krivoshey due to an administrative error. *Id.*; *compare* ECF No. 9-2 at Ex. 2 *with* ECF No. 9-3. On February 4, GT's Subpoena was served on Smith Krivoshey's registered agent. Elie-Meyers Decl., Ex. 6 (POS).

GT's Subpoena sought narrowly tailored documents to clarify Mr. Krivoshey's relationship to the new plaintiffs' counsel, including whether he had any ongoing involvement in *Patel*. Specifically, the Subpoena requested two categories of documents: (1) communications between Mr. Krivoshey and Dovel regarding *Patel*; and (2) documents and communications relating to any agreements governing representation of putative class or the new plaintiffs in *Patel*. ECF No. 9-3 at Attachment A.

**G.    GT's Offers to Confer Regarding The Subpoena; Mr. Krivoshey Declines.**

On February 9, 2026, counsel for the parties met and conferred regarding the Subpoena. Elie-Meyers Decl. ¶ 11. Present on the call were Mr. Krivoshey, Joel Smith, and Joseph Elie-Meyers (for GT's). *Id.* During the conferral, Mr. Elie-Meyers repeatedly offered to discuss limiting the scope of the Subpoena, or to extend the time for compliance to allow additional time to negotiate the scope of the Subpoena. *Id.* ¶ 12. Mr. Krivoshey and Mr. Smith declined to discuss limiting the scope of the Subpoena or modifying the date for compliance in furtherance of such negotiations. *Id.* Instead, they threatened to move for sanctions from the start. *Id.* ¶¶ 11–12.

While Mr. Krivoshey rebuffed GT's conferral efforts, Mr. Elie-Meyers met and conferred with Bursor on February 9 and 17, and Dovel on February 4 and 13. Elie-Meyers Decl. ¶ 17. As a

7

OPPOSITION TO MOTION FOR SANCTIONS

result of those discussions, GT's agreed to continue those firms' compliance dates to allow further negotiations of the subpoenas' scope, and ultimately, avoided the need for either office to be deposed or produce documents. *Id*. ¶ 18.

**H.     GT's Also Attempts to Confer Regarding The Subpoena Over Email.**

On February 10, 2026, Mr. Elie-Meyers emailed Mr. Smith that GT's was "willing to consider rescheduling the deposition," subject to Dovel's agreement to a stipulation extending the current fast-approaching discovery deadline. Elie-Meyers Decl. ¶ 15; ECF No. 9-5. On February 11, Mr. Harper confirmed that GT's Subpoena sought to clarify whether former counsel (including Mr. Krivoshey) continued to play a role in *Patel*—issues which arose from the joint prosecution and fee-shifting agreements that the new plaintiffs partially produced, their lack of knowledge in depositions regarding their relationships with former and current counsel, and their fee-sharing agreements at odds with the interests of the current class, which only came to light following the new plaintiffs' depositions in January 2026. ECF No. 9-6.

**I.     Mr. Krivoshey Moves to Quash The Subpoena.**

On February 11, 2026, Mr. Krivoshey filed a Motion to Quash the Subpoena and to Shorten Time. ECF Nos. 1, 2. In support of the motion, Mr. Krivoshey submitted a sworn declaration for the first time describing the nature of his involvement in *Patel* after his withdrawal as counsel. ECF No. 1-1. Mr. Krivoshey avers that after formally withdrawing from *Patel* in August 2024, neither he nor anyone else at Smith Krivoshey "has been involved in managing or consulting on the litigation in [*Patel*], either publicly or behind the scene." *Id*. ¶ 8. He claims he has "had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel," and that "[t]here are no secret 'side deals' between [him] or [his] law firm and Dovel & Luner regarding this matter." *Id.* ¶¶ 9, 10. He maintains that the joint prosecution agreements with Dovel provide for fees "only in an amount to be determined by the Court," without reference to any other agreement concerning fees. *Id.* ¶ 5.

On February 12, the Court denied Mr. Krivoshey's Motion to Shorten Time, set a hearing on his Motion to Quash for March 19, and ordered that "Mr. Krivoshey's deposition shall not

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

proceed pending the Court's resolution of the motion to quash." ECF No. 5.

### J.    GT's Withdraws The Subpoena.

On February 17, 2026, Mr. Elie-Meyers notified Mr. Krivoshey that GT's would withdraw its Subpoena given that his declaration set out, in sum and substance, the information GT's sought to obtain through the Subpoena. Elie-Meyers Decl. ¶ 16 & Ex. 7; ECF No. 6. Mr. Elie-Meyers also advised Mr. Krivoshey that other parties to the litigation agreed in pre-motion conferrals to provide substantially similar declarations in lieu of depositions or documents. *Id*.

### K.    Mr. Krivoshey Files Motion for Sanctions.

On February 20, 2026, Mr. Krivoshey filed his Motion seeking sanctions based on GT's decision to pursue discovery relating to his involvement in *Patel*. ECF No. 9. The Motion maintains that GT's basis for the Subpoena—joint-prosecution and fee-related agreements produced by new plaintiffs—was "pretextual," pointing to GT's later withdrawal after subpoenaed counsel provided *sworn* declarations denying continued involvement. The Motion further asserts the Subpoena was untimely, despite being issued during reopened discovery about newly admitted plaintiffs. It alleges bad faith based on disputed accounts of meet-and-confer discussions, deposition sequencing among non-parties, and GT's efforts to effect service or provide notice. Ultimately, Mr. Krivoshey's Motion reframes a good-faith discovery dispute as accusations of "lying" and "harassment," while conceding that no deposition occurred, no documents were produced, and the Subpoena was withdrawn before any compliance.

## III.    ARGUMENT

Mr. Krivoshey's Motion should be denied in its entirety. As explained below, sanctions are unwarranted because Mr. Krivoshey did not suffer any undue burden, GT's issued its Subpoena in accordance with the law, and GT's did not act in bad faith. The requested sanctions themselves are inappropriate because Rule 45 does not authorize sanctions for costs to contest a subpoena, and an award would not be just under the circumstances in any event.

9

OPPOSITION TO MOTION FOR SANCTIONS

### A.    Sanctions Are Not Warranted.

Rule 45(d)(1) provides "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1) encapsulates the discovery principles stated in Rule 26(g), which requires parties seeking discovery to act (1) reasonably without imposing undue burden or expense considering the needs of the case; (2) consistently with the law; and (3) without bad faith. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012); *Legal Voice*, 738 F.3d at 1185 (absent "bad faith," "improper purpose" or conduct "inconsistent with existing law," sanctions are inappropriate).

"The scope of permissible sanctions under Rule 45[(d)(1)] should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends." *Mount Hope*, 705 F.3d at 429–30. "Not every overbroad subpoena is an occasion for sanctions; [the Ninth Circuit] ha[s stated] that in general, sanctions should be reserved for the rare and exceptional case." *United States v. Rico*, 619 F. App'x 595, 601 (9th Cir. 2015).

Similarly, the Ninth Circuit has stated that sanctions for issuance of a subpoena under Section 1927 and the Court's inherent authority requires "bad faith," e.g., "recklessness plus something more," like "intent to harass, or frivolousness":

> [A] court's inherent power must be utilized with caution and restraint, although it can be used when counsel's actions are in 'bad faith' or are 'tantamount to bad faith.' Imposition of sanctions under § 1927 requires similar, if slightly different, determinations. The statute indicates that actions that multiply the proceedings must be both unreasonable and vexatious, and we have also stated that recklessness alone will not suffice. What is required is recklessness plus something more—for example knowledge, intent to harass, or frivolousness.

*Id.* (reversing sanctions based on overbroad subpoena issued to counsel).

Sanctions are not warranted because (1) Mr. Krivoshey did not suffer any burden, let alone any undue burden; (2) the Subpoena was issued in accordance with the law, including Rule 45; and (3) GT's did not act in bad faith in issuing the Subpoena.

10

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**1.    Narrowly Tailored Subpoenas Did Not Cause Undue Burden.**

The Subpoena did not impose an undue burden upon Mr. Krivoshey. "Rule 45 places more emphasis on the recipient's burden than on the issuer's motives." *Mount Hope*, 70 F.3d at 428–29. Sanctions are not appropriate where a subpoena is "narrowly tailored and d[oes] not at all pose an undue burden on" the nonparty. *Id.* at 429. Such is the case here. GT's Subpoena was narrowly tailored to seek information about the new plaintiffs; GT's tried to (but did not) obtain the information sought from the new plaintiffs; Mr. Krivoshey stonewalled GT's attempts to confer on the Subpoena; and GT's ultimately withdrew the Subpoena.

**a.    The Subpoena Is Narrowly Tailored to Seek Information Relevant to the New Plaintiffs in *Patel.***

Mr. Krivoshey does not meaningfully dispute that the narrowly tailored Subpoena seeks information relevant to the new plaintiffs in *Patel*. Discovery obtained through a subpoena is governed by the same standards applicable to party discovery. Fed. R. Civ. P. 45 advisory committee note to 1970 amendment. Rule 26(b)(1) provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts thus decline to impose sanctions based on subpoenas that are reasonably tailored to explore issues relevant to the litigation. *See OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*, 2023 WL 8473762, at *5 (S.D. Cal. Dec. 7, 2023) (no sanctions where subpoena was tailored to determine whether nonparty disclosed confidential information).

As repeatedly explained to Mr. Krivoshey, GT's issued the Subpoena to probe his potentially continued involvement in the *Patel* litigation. Elie-Meyers Decl. ¶ 2. It is undisputed that Mr. Krivoshey's continued involvement would be problematic because: (1) the *Patel* Court denied class certification on adequacy grounds because former counsel (including Mr. Krivoshey) "were challenging the alcohol warning label they negotiated in *Retta*"; (2) Mr. Krivoshey failed to disclose *Retta* when initiating *Patel*; and (3) he withdrew from *Patel* after five years of litigation and the Court raised concerns about his representation. *See* Class Cert. Order 2; *Patel*, ECF Nos. 136, 137, 152, 155 (Krivoshey's requests to withdraw).

11

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Mr. Krivoshey's continued involvement was put directly at issue by the new plaintiffs' production of incomplete versions of joint prosecution and fee-shifting agreements implicating his possible ongoing involvement in *Patel*. Both agreements specifically preserved former counsel's (including Mr. Krivoshey's) right to seek fees in the event of settlement. Elie-Meyers Decl., Ex. 1 at 3, 6–7. In addition, the agreements require the signature of undefined Class Representatives before Mr. Krivoshey's law firm and Bursor would withdraw from *Patel*, yet no client signatures were produced. *Id*. at 6, 9. And although the new plaintiffs testified that they had seen the agreements before joining *Patel*, at least two could not testify as to whether they signed the agreements, and all three could not testify as to whether Mr. Krivoshey had any involvement or financial interest in *Patel*. Elie-Meyers Decl., Exs. 2–4. The new plaintiffs' inability to explain these issues—which raise obvious conflict-of-interest concerns—directly impinges upon their (in)adequacy to represent the class. *Patel*, ECF No. 171 at 7–8. GT's therefore reasonably and in good faith sought to clarify these issues through discovery from former and current counsel.

Considering the foregoing, GT's Subpoena sought two narrow categories of documents: (1) communications between Mr. Krivoshey and Dovel related to *Patel*; and (2) documents and communications relating to any agreements governing representation of the *Patel* putative class or plaintiffs. ECF No. 9-3 at Attachment A.

Mr. Krivoshey fails to show that GT's Subpoena was unjustified. Mot. 14–15. To start, he maintains GT's had "no evidence" suggesting that the *Patel* plaintiffs have a retention agreement with former counsel. *Id.* at 14. He also claims the new plaintiffs' "lack of knowledge or supervision over the class counsel" is irrelevant because he never represented them. *Id.* at 15. These assertions ignore that the Subpoena was *not* about whether Mr. Krivoshey continued to represent the new plaintiffs, but whether he retained a financial interest in *Patel* or was driving the litigation from behind-the-scenes without these plaintiffs' knowledge. In addition, he asserts that whether new plaintiffs signed the agreements has "nothing to do" with him, Mot. 14, but those agreements explicitly require signatures of undefined Class Representatives to be effective. Elie-Meyer Decl., Ex. 1 at 1, 6. And those signed agreements *still* have not been produced. *See Patel*,

12

OPPOSITION TO MOTION FOR SANCTIONS

ECF No. 191. Finally, he argues GT's counsel should have known "'no-fee sharing agreements' are in effect" because the second agreement broadly stated it "supersedes" unidentified prior agreements. Mot. 15. But a party issuing a subpoena "need not accept such representation[s] at face value"; instead, "it is entitled to obtain information [so it] can verify" those assertions. *Zurich Am. Ins. Co. v. Sealink Ins. Serv. Corp.*, 2018 WL 10561907, at *1 (C.D. Cal. Mar. 16, 2018); *see also Tennison v. City & Cnty. of San Francisco*, 2005 WL 8160036, at *2 (N.D. Cal. Sept. 19, 2005) (compelling nonparty to produce documents and ordering that if nonparty "determines that there are no responsive documents to the subpoena, [it] shall so state in a declaration"). In any event, Mr. Krivoshey's proffered interpretation of contractual language fails to establish who is driving the litigation or whether former counsel retains financial interest in *Patel* outside of those agreements.

**b.    GT's Sought Information from Plaintiffs and Plaintiffs' Counsel.**

Mr. Krivoshey's sole undue burden argument is that GT's could have obtained the same information from the (1) *Patel* plaintiffs, whom he asserts already produced "responsive" documents, or (2) *Patel* plaintiffs' current counsel. Mot. 19. Neither assertion holds water.

*First*, GT's could not obtain the requested information from the plaintiffs alone. Rule 45 sanctions are not warranted where, as here, a subpoena reflects "normal advocacy." *Sci. Apps. & Rsch. Assoc.'s v. Zipline Int'l, Inc.*, 2024 WL 5011603, at *2 (N.D. Cal. Dec. 6, 2024) ("[O]verbreadth may sometimes be the result from normal advocacy, which we have said should not give rise to sanctions") (quoting *Mount Hope*, 705 F.3d at 429). In relevant part, courts decline to issue sanctions on a subpoenaing party who first attempts to obtain relevant information from the parties. *See id.* (sanctions not warranted where defendant sought documents from party after serving third-party subpoena). GT's Subpoena requested communications or documents exchanged between former and present counsel, which the new plaintiffs would not possess. ECF No. 9-3 at Attachment A. Mr. Krivoshey is therefore incorrect to suggest that GT's did not identify what "documents" it could not seek from the new plaintiffs. Mot. 19. Further, he completely ignores that the Subpoena sought *his* testimony *in addition* to documents. In addition, the limited agreements

13

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

that the new plaintiffs partially produced prompted—rather than resolved—questions regarding their former counsel's involvement. Elie-Meyers Decl., Ex. 1. GT's attempted to explore these issues at the plaintiffs' depositions, but they did not recall signing the agreements, could not explain their terms, and lacked knowledge about former counsel's role or financial interests. Elie-Meyers Decl., Exs. 2–4. Those evidentiary gaps justified targeted discovery from former and current counsel themselves.

*Second*, GT's sought the same information from the *Patel* plaintiffs' former and current counsel, including Dovel, all of whom were equally positioned as *non-parties* to the action. "It is well-settled that counsel for a party is a non-party," and Rule 45 provides the "exclusive" method of discovery on non-parties. *Hurd v. Boston Sci. Corp.*, 2023 WL 3564783, at *2 (C.D. Cal. May 5, 2023) (denying motion to quash deposition subpoena of counsel because he functioned as a fact witness). Here, GT's issued identical subpoenas to both former and current counsel, so the order of depositions was immaterial. *See* Mot. 19. Specifically, GT's requested that nonparties Dovel and Bursor provide sworn declarations describing their relationship with former counsel in the *Patel* litigation after Mr. Krivoshey submitted his own declaration stating the same. *See* ECF No. 6-1 ¶ 11. Unlike Mr. Krivoshey, however, Dovel and Bursor conferred in good faith with GT's regarding the subpoena, so their depositions were postponed as a result. Elie-Meyers Decl. ¶¶ 17–18. Ultimately, both Dovel and Bursor agreed to provide sworn declarations. *Id.* In any event, duplicative efforts alone do not justify sanctions. *See Legal Voice*, 738 F.3d at 1185–86 (affirming denial of Rule 41(d) sanctions; "a second attempt to compel discovery of internal communications after the first request was denied is not so egregious [for] a finding of bad faith").

In short, GT's pursued reasonable, targeted discovery to fill evidentiary gaps left by the new plaintiffs, and Mr. Krivoshey identifies no authority or facts supporting sanctions for GT's exercise of its right to obtain discovery among nonparties.

### c.    GT's Repeatedly Attempted to Confer with Mr. Krivoshey.

GT's attempted to confer about the Subpoena with Mr. Krivoshey, to no avail, precluding his undue burden claims.

14

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

Courts do not find undue burden where a subpoenaing party attempts to confer with the subpoenaed party. *See Mount Hope*, 705 F.3d at 427 (citing *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (reversing Rule 45 sanctions award based on issuing party's "sufficient good faith efforts to negotiate reasonable parameters on the subpoena")); *Evox Prods. LLC v. Yahoo, Inc.*, 2023 WL 6192716, at *4 (C.D. Cal. Aug. 8, 2023) ("The Court declines to award costs or fees [because the issuant] narrowly tailored its subpoena request after conferring"). Courts have specifically declined sanctions where issuing "counsel took reasonable steps to avoid imposing an undue burden … by offering to extend the deadline to comply." *Ferguson v. Smith*, 2023 WL 8868815, at *2 (D. Or. Dec. 22, 2023).

Here, too, GT's counsel took several measures to avoid undue burden to Mr. Krivoshey, including: (1) on February 9, when Mr. Elie-Meyers met with Mr. Krivoshey and offered to discuss narrowing the Subpoena to continue the date of compliance; (2) on February 10, when Mr. Elie-Meyers offered to extend the Subpoena's compliance deadline to allow Mr. Krivoshey to move to quash, subject to the *Patel* plaintiffs' current counsel's agreement to extend the approaching March 5 discovery deadline; and (3) on February 11, when Mr. Harper explained GT's need for the Subpoena in writing. Elie-Meyers Decl. ¶¶ 9–10; ECF Nos. 9-5, 9-6. For his part, Mr. Krivoshey rebuffed GT's attempts to negotiate the Subpoena, insisting from the outset that he would not negotiate compliance and intended to move to quash and for sanctions. *Id.* ¶ 12. He freely admits that he threatened sanctions at his first and only meet and confer call with counsel for GT's. Mot. 22. By contrast, Bursor and Dovel negotiated the scope of the subpoenas with GT's, so GT's postponed compliance dates during those discussions, and ultimately, neither law firm was required to produce documents or sit for a deposition. Elie-Meyers Decl. ¶¶ 17–18.

Mr. Krivoshey's failure to communicate in good faith militates against undue burden. *See Sci. Apps.*, 2024 WL 5011603, at *3 (declining sanctions where "both parties' counsel were actively communicating in good-faith regarding potential meet-and-confers and [subpoenaed party] declined to have a final meet-and-confer" before motion to compel). As Judge Paul S. Grewal of the Northern District of California observed:

15

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

> Transparency and collaboration is essential to meaningful, cost-effective discovery. Google's attempt to stand outside of these tenets because of its thirdparty [sic] status is unpersuasive. Although it should not be required to "subsidize" litigation to which it is not a party, it confuses undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. ***Third-party status does not confer a right to obfuscation and obstinacy.***

*Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (emphasis added). Neither Rule 45, Section 1927, nor a court's inherent authority provides a basis for sanctions where GT's repeatedly sought to avoid burden, only to be met with Mr. Krivoshey's obstinacy.

**d.　　GT's Withdrew the Subpoena Before Compliance.**

GT's withdrew the Subpoena as soon as it obtained the information it was seeking—sworn testimony confirming that former counsel had no ongoing involvement or financial interest in *Patel*—which does not support a finding of undue burden. ECF No. 6.

Courts decline to issue sanctions simply because a subpoena proves unnecessary. *Mount Hope*, 705 F.3d at 429 ("Sanctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost in the end."); *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009) ("[T]he mere fact … that a disputed subpoena is ultimately deemed unwarranted does not standing, alone, demand sanctions."). This is because courts "interpret[] 'undue burden' as the burden associated with compliance," and "the burdens of complying … are the ones that count." *Mount Hope*, 705 F.3d at 427. And contrary to Mr. Krivoshey's assertions, courts routinely refuse to impose sanctions where a party withdraws a subpoena following a motion to quash, or even "refus[es] to withdraw [a] subpoena" at all. *Issagholi v. McLaren Auto., Inc.*, 2021 WL 4352297, at *2 (C.D. Cal. July 9, 2021) (declining to impose sanctions); *Dang v. Sutter's Place, Inc.*, 2012 WL 2906109, at *2–3 (N.D. Cal. July 13, 2012) (same; party "met and conferred in good faith" and withdrew subpoena after motion to quash). The same principle applies even where courts grant motions to quash or deny a motion to compel. *Legal Voice*, 738 F.3d at 1185 ("Merely losing a motion to compel does not expose a party to Rule 45 sanctions."); *Dennis v. Good Deal Charlie, Inc.*, 2022 WL 62919, at *7 (S.D. Cal.

16

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Jan. 6, 2022) (declining to impose sanctions after quashing subpoena). Withdrawal of a subpoena supports efforts to avoid undue burden, not a finding of bad faith. *Cryotech Int'l, Inc. v. Technifab Prods., Inc.*, 2009 WL 3021185, at *3 (N.D. Cal. Sept. 17, 2009) (finding a "tactical decision to withdraw the subpoenas" did not evidence bad faith).

Mr. Krivoshey could have avoided filing his motion to quash if he met and conferred in good faith. Still, he complains that GT's withdrawal of the Subpoena does not matter because "the damage is already done," *i.e.*, because he chose to move to quash rather than confer with GT's on the Subpoena. Mot. 21. But the Ninth Circuit has held "the mere need to respond to an opponent's advocacy in our civil justice system should [not] be viewed as unduly burdensome when legal arguments are advanced in good faith." *Mount Hope*, 705 F.3d at 429.

Mr. Krivoshey also claims GT's withdrawal was a "pretext to avoid sanctions." Mot. 22. His assertion is unfounded and incorrect. The Subpoena only became unnecessary after subpoenaed counsel—including Mr. Krivoshey—agreed to provide sworn declarations affirming former counsel's lack of involvement with *Patel*. Elie-Meyers Decl. ¶ 16. This is confirmed by the fact that GT's withdrew its subpoenas to the other non-parties, who agreed in pre-motion conferrals to provide substantially similar declarations in lieu of depositions or documents. *Id*.

Mr. Krivoshey's claim that GT's withdrew the Subpoena at the "eleventh hour" is both blatantly disingenuous and belied by the record. Mot. 21. On February 12, the Court ordered that Mr. Krivoshey's deposition would not take place until after the March 19 hearing. Thus, when GT's withdrew the Subpoena on February 17, the February 18 deposition date had already been vacated by order of the Court. ECF No. 5. GT's informed Mr. Krivoshey that it would withdraw the Subpoena on February 17, with the understanding that the Court had already vacated the deposition. Elie-Meyers Decl. ¶ 16.

Mr. Krivoshey relies on two inapposite cases to argue "withdrawal does not moot sanctions." Mot. 21–22. In *Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *2–4 (C.D. Cal. Feb. 28, 2020), the *plaintiff* issued a third-party subpoena "before engaging in any party discovery," which sought years' worth of documents regarding 134 entities that were not relevant

17

OPPOSITION TO MOTION FOR SANCTIONS

to his claims. Unlike Mr. Krivoshey, the nonparty attempted to narrow the subpoena with plaintiff over the course of three months. *Id.* at *3. Yet, the plaintiff only withdrew when threatened with sanctions, not when he obtained the information he sought, as GT's did. *Id.* at *4. And *Equal Emp. Opportunity Comm'n v. Dillon Co.*, 2010 WL 4134696, at *1 (D. Colo. Oct. 12, 2010) involved counsel who repeatedly violated court orders regarding service of subpoenas, including even after a motion to quash was filed. Both *Duong* and *Dillon* are distinguishable and neither supports the imposition of sanctions here.

### 2.    GT's Subpoena Was Consistent With Law.

In addition, GT's Subpoena was timely and legally proper, which does not support sanctions. Courts routinely deny sanctions based on procedural defects with a subpoena absent bad faith or prejudice. *Cryotech Int'l.*, 2009 WL 3021185, at *2 (declining to issue sanctions where subpoena defect was "not intentional" and did not prejudice counsel); *Briggs v. Yi*, 2024 WL 5456340, at *5 (D. Ala. May 1, 2024) (declining to impose sanctions); *Fujikura Ltd v. Finisar Corp.*, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015) (same); *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, 2012 WL 1191214, at *6 (D.N.J. Apr. 10, 2012) (no sanctions for facially defective subpoena where movant failed to show "egregious behavior or repeated violations of Rule 45"). This Court should do the same.

### a.    The Subpoena Was Timely.

Mr. Krivoshey incorrectly claims the Subpoena was "untimely and outside the scope of … fact discovery allowed in *Patel*." Mot. 1. To the contrary, discovery was open at the time GT's served the Subpoena, and would still have been open on the compliance dates. Courts allow third-party discovery during reopened discovery when tied to permitted subjects. *See Varlitskiy v. Cnty. of Riverside*, 2022 WL 18284986, at *4 (C.D. Cal. Dec. 14, 2022) (subpoenas did not violate order reopening discovery as to specific defendants where subpoena related to defendants).

Here, discovery as to the *Patel* plaintiffs reopened in October 2025, and remained open through March 5, 2026. *Patel*, ECF Nos. 180, 185. GT's Subpoena was directly related to the new plaintiffs—it sought to clarify who is directing, or has a financial interest in, the representation of

18

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

new class plaintiffs. These issues also bear directly on the new plaintiffs' adequacy to represent the class, including their knowledge of potential conflicts with the class and management of the case.

### b.    The Subpoena Otherwise Substantially Complied with Rule 45.

Mr. Krivoshey complains about alleged "additional defects" about the Subpoena's target, service, notice, and fees, none of which supports sanctions. Mot. 18.

*Subject of Subpoena.* Mr. Krivoshey asserts that it is unclear if the Subpoena was directed to him or his law firm. Mot. 18. That claim is belied by the record. Both subpoenas are materially identical and addressed to Mr. Krivoshey by name. *Compare* ECF No. 9-2 at Ex. 2 *with* 9-3 at 1; ECF No. 9-3 at Attachment A. He also admits Mr. Elie-Meyers "explicitly clarified that the [Subpoenas were] intended for [Mr. Krivoshey], as an individual, not for Smith Krivoshey." Krivoshey Decl. ¶ 38. This cured any ambiguity, and Mr. Krivoshey cites no authority that such an administrative error warrants sanctions.[5] Mot. 18 n.5 (citing *Scott v. Keller*, 2010 WL 1267772, at *1–2 (E.D. Cal. Mar. 31, 2010) (addressing discovery requests, not subpoena, and declining to issue sanctions)); *see also Gharavi v. Google LLC*, 2026 WL 82256, at *7 (N.D. Cal. Jan. 12, 2026) (defense counsel's "harmless error that [did] not impact the outcome of the parties' motions" was "not in bad faith."); *Briggs*, 2024 WL 5456340, at *5 (no sanctions where "evidence does not show [an error in a deposition subpoena was made] in bad faith").

*Service.* "Rule 45 contains no language that specifically requires personal service upon the individual nonparty deponent." *Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, 2019 WL 4267764, at *5 (C.D. Cal. July 31, 2019). Rather, service is sufficient if reasonably designed to ensure actual receipt. *Id.* Here, GT's repeatedly attempted personal service on Mr. Krivoshey, and served his firm's registered agent only after those efforts failed. Elie-Meyers Decl. ¶¶ 5–9. Courts uphold substituted service where, as here, the nonparty had actual notice and sufficient time to object. *See, e.g.*, *In re Subpoena to VaughnPerling*, 2019 WL 8012372, at *4 (C.D. Cal. Dec. 2,

---

[5] Mr. Krivoshey maintains if the Subpoena was directed at his firm, GT's failed to provide 30(b)(6) topics, which is not sanctionable per se. *See Snow Covered Cap., LLC v. Fonfa*, 2024 WL 3398343, at *1–3 (D. Nev. July 12, 2024) (declining to impose § 1927 sanctions where plaintiff did not provide 30(b)(6) topics).

19

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2019) (declining to find subpoena procedurally defective where nonparty "demonstrated actual knowledge of the subpoena" and issuing party attempted personal service); *Pac. Coast Surgical Ctr.*, 2019 WL 4267764, at *5 (service proper where subpoena served on another attorney at nonparty's office building); *Green v. Baca*, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005) (service sufficient where plaintiff left subpoena "at the various witnesses' offices pursuant to Rule 5(b)"). The single case Mr. Krivoshey cites in support—where service was made on a store clerk, not a registered agent—did not impose sanctions. Mot. 19 n.6 (citing *D'Amico v. N& D Rests., LLC*, 2025 WL 3158124, at *2–3 (C.D. Cal. Sept. 24, 2025)).

*Notice.* GT's provided sufficient notice to the *Patel* parties, attaching a subpoena materially identical to the one served. *See* ECF Nos. 9-2 at 1 & Ex. 2; 9-3. Mr. Krivoshey's own caselaw confirms that sanctions, let alone quashing a subpoena, are not warranted "'when opposing counsel have notice and sufficient time to object, [because] they are not prejudiced by a violation of Rule 45 notice requirement.'" *Fujikura*, 2015 WL 5782351, at *4 (quoting *Vondersaar v. Starbucks Corp.*, 2013 WL 191546, at *2 (N.D. Cal. May 8, 2013) (declining to impose sanctions or "quash the subpoena solely on the grounds that it violated Rule 45(b)(1)'s prior notice requirement")); *accord Cryotech Int'l.*, 2009 WL 3021185, at *2 (pursuant to inherent authority).

*Witness Fees.* Courts routinely decline to impose sanctions based on absence of witness fees alone. *See Wakefield v. Walt Disney Co.*, 2007 WL 9724382, at *1–2 (C.D. Cal. May 10, 2007) (no sanctions for failure to tender fees); *Aevoe Corp. v. AE Tech Co.*, 2013 WL 4714273, at *1–2 (D. Nev. Aug. 30, 2013) (same). And the proper remedy for omitted fees is re-service, which here, proved unnecessary because GT's withdrew the Subpoena. *See Jones v. PGA TOUR, Inc.*, 668, F. Supp. 3d 907, 928 (N.D. Cal. 2023) (ordering re-service of subpoenas with fees).

In sum, GT's Subpoena substantially complied with Rule 45, caused no prejudice to Mr. Krivoshey's ability to object, and reflects reasonable efforts to obtain discovery.

### 3.     GT's Did Not Act in Bad Faith.

Mr. Krivoshey's asserts GT's counsel acted in bad faith and acted uncivilly during the meet and confer process. That accusation fails as a matter of fact and law. The bad faith requirement for

20

OPPOSITION TO MOTION FOR SANCTIONS

sanctions "sets a high threshold," *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Mere disagreement or zealous advocacy is not enough. *See Legal Voice*, 738 F.3d at 1178 (sanctions should not be so broad as to chill or deter vigorous advocacy); *Rico*, 619 F. App'x at 602 (acknowledging "need to protect everyone's right to vigorous, effective advocacy by counsel"). Here, the record shows GT's did not act in bad faith because the Subpoena was properly subject to reopened discovery, and its counsel acted in accordance with civility requirements.

### a.    Disagreements About Discovery Scope and Timing Are Not Misrepresentations.

At most, the record reflects good-faith disagreement about discovery scope, sequencing, and relevance—not misrepresentation, deception, or other bad faith conduct required for sanctions under Rule 45, Section 1927, or the Court's inherent authority. *See Mount Hope*, 705 F.3d at 427 (good faith subpoena seeking privileged information not sanctionable under Rule 45); *Rico*, 619 F. App'x at 602 (overbreadth alone did not warrant sanctions under Section 1927 or inherent authority). Courts decline to impose sanctions where, as here, the record shows litigation disagreements rather than intentional misconduct. *See Santacruz v. Southbank Dairies, LLC*, 2016 WL 6997086, at *3 (W.D. Wash. Nov. 30, 2016) (declining to issue sanctions based on "insufficient evidence that the subpoena was issued solely in bad faith"); *Katz v. Steyn*, 2019 WL 13211069, at *2 (D. Nev. June 27, 2019) ("Plaintiff's subpoena to [the nonparty] was not issued in bad faith and does not warrant an award of sanctions."). Such is the case here.

Mr. Krivoshey's quibbles about the discovery deadline, sequencing of depositions, and the identity and purpose of the Subpoena lack merit:

***Discovery Deadline.*** Mr. Krivoshey claims GT's counsel "lied" about the close of discovery during the February 9 meet and confer. Mot. 10. Not so. GT's attorney accurately stated that discovery closed on March 5. Elie-Meyers Decl. ¶ 13. Whether the discovery sought by the Subpoena within the reopened discovery period relates to the newly added named plaintiffs is a legal disagreement, not a factual misrepresentation. Advancing a reasonable interpretation of the scope of discovery does not constitute bad faith. *See Legal Voice*, 738 F.3d at 1186 (reasonable

21

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

interpretation of discovery order not bad faith).

***Subpoena Sequence.*** Mr. Krivoshey incorrectly claims GT's counsel misrepresented the order of depositions which, in any event, is irrelevant. Mot. 11, 12. During the February 9 call, under aggressive questioning from Messrs. Krivoshey and Smith, GT's counsel reviewed the January 29 Notice, and accurately informed counsel that Dovel's deposition had been noticed for February 12. Elie-Meyers Decl. ¶ 12; ECF Nos. 9-2, 9-3. By February 9, Dovel's deposition had been rescheduled as part of ongoing meet and confer efforts, Elie-Meyers Decl. ¶ 17, not to "re-arrange the sequence of depositions so that [Mr. Krivoshey's] would still occur before" Dovel's, Mot. 12. While Mr. Elie-Meyers neglected to mention that Dovel's noticed deposition date had been postponed to allow for further negotiation between the parties, he did not place particular importance on this issue, because he understood that GT's was not obligated to depose one nonparty before another, that compliance dates were in flux due to ongoing negotiations, and that the order of depositions did not affect the propriety of the Subpoena. Elie-Meyers Decl. ¶ 14. At another point during the conferral, after Mr. Krivoshey repeatedly asked which documents he possessed that Dovel did not, counsel responded that GT's could not know the answer to that question without deposing Dovel. *Id*. Again, Mr. Elie-Meyers did not believe this issue was relevant to the propriety of the subpoena, because both Dovel and Mr. Krivoshey are non-parties. *Id*. At no point did Mr. Elie-Meyers affirmatively represent that Mr. Krivoshey's deposition would actually occur after Dovel's deposition—nor would he have, given that compliance dates were in flux at the time. *Id.*

***Nature of First Subpoena.*** Mr. Krivoshey claims GT's misrepresented that the subpoena attached to the Notice and the later-served Subpoena were "in effect the same." Mot. 12. He is incorrect. Both subpoenas sought identical testimony and documents, listed the same place of compliance (San Francisco and remote), and differed only in deposition date and an administrative error in the definition of "You." *Compare* ECF No. 9-2 at Ex. 2 *with* 9-3. GT's counsel also stated that it considered the later-served Subpoena with the February 18 date as the operative subpoena. Elie-Meyers Decl. ¶ 10.

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

***Purpose of Subpoena.*** Mr. Krivoshey contends GT's counsel offered shifting, "pretextual" justifications for the Subpoena. Mot. 13–14. Not so. From the start, GT's explained that its Subpoena sought to clarify concerns arising from the: (1) joint prosecution and fee agreements first produced in December 2025; (2) new plaintiffs' inability, during sworn depositions, to explain whether they had signed or knew of former counsel's involvement or financial interest in *Patel*; and (3) implications of those facts for adequacy and potential conflicts of interest. GT's provided these same justifications throughout the course of this dispute. *Compare* ECF No. 9-6 *with* ECF No. 6-1. The fact GT's later withdrew the Subpoena after receiving sworn declarations from counsel attesting to the issues above *confirms*, not undermines, its consistent rationale.

### b.    GT's Counsel Acted Consistently With Professional Guidelines.

Mr. Krivoshey argues GT's counsel violated civility and professionalism guidelines by failing to contact him prior to issuing the Subpoena, and refusing to vacate or further continue the deposition date. Mot. 8–9, 20. He misstates both the rules and the record.

Civility guidelines do not prohibit issuing subpoenas or maintaining firm positions in discovery. GT's acted within the bounds of "normal advocacy."[6] *Mount Hope*, 705 F.3d at 429; *Rico*, 619 F. App'x at 602 (issuing subpoena to another attorney is not "inappropriate," nor is it "tantamount to bad faith, … reckless, or vexatious."). Rule 45 does not require a party to meet and confer with a nonparty *before* issuing a subpoena. *See Vysata v. Menowitz*, 2019 WL 1578374, at *2 (C.D. Cal. Feb. 1, 2019) (Rule 45 did not require "opportunity to meet and confer … or seek judicial relief before the subpoenas [are] served"). Moreover, "'[s]ervice of subpoenas at least ***10 days*** before the deposition or production is customary, but not mandatory,'" and "'Rule 45 specifically contemplates circumstances where the response time ***might be less***.'" *The Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc.*, 2015 WL 6167968, at *3 (N.D Cal. Oct. 21, 2015) (quoting *Bonzani v. Shinseki*, 2014 WL 2521849, at *4 (E.D. Cal. June 14, 2014))

---

[6] Mr. Krivoshey's inapposite authorities involve egregious breaches of professional conduct. *See Claypole v. Cnty. of Monterey*, 2016 WL 145557, at *4 (N.D. Cal. July 12, 2016) (sanctioning counsel's sexist remarks); *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, 2025 WL 917110, at *21 (N.D. Cal. Mar. 26, 2025) (unauthorized practice of law in at least "forty-six other cases").

23

OPPOSITION TO MOTION FOR SANCTIONS

(emphasis added). Here, GT's prepared the Subpoena promptly after the new plaintiffs' depositions failed to clarify the issues raised by the agreements, served the Subpoena on February 4, and noticed the deposition for February 18—***more than two weeks later***. Elie-Meyers Decl. ¶ 9.

Nor did GT's refuse to accommodate scheduling. To the contrary, after service of the originally noticed subpoenas failed, GT's unilaterally extended the deposition date to provide reasonable time for compliance. *Id.* Counsel for GT's offered to move the deposition date even further out to discuss narrowing the Subpoena, and in fact did reschedule deposition dates with other subpoenaed counsel. *Id.* ¶¶ 11–13, 15, 17. For his part, Mr. Krivoshey refused to comply with the Subpoena under any circumstances and immediately threatened sanctions. *Id.* ¶¶ 11–12; *see Richmond v. Reefer Sys., Inc.*, 2020 WL 9074805, at *5 (C.D. Cal. Dec. 21, 2020) (noting civility guidelines require conferral even if party believes such discussions are "unnecessary"). Moreover, GT's Subpoena expressly permitted a remote deposition, ECF No. 9-3, so Mr. Krivoshey's suggestion that he had to travel cross-country is again disingenuous—particularly where he is admitted in California and maintains a San Francisco office.

**B.    Mr. Krivoshey's Requested Sanctions Are Unsupported.**

As detailed above, "sanctions are unwarranted because an award would not be just under the circumstances." *Sci. Apps.*, 2024 WL 5011603, at *3 (denying third-party motion for fees in responding to subpoena). In particular, Mr. Krivoshey's caselaw confirms that "to sanction attorney conduct 'that is integrally related to the attorney's role as an advocate,'" "courts must first find that the attorney acted in bad faith," which is absent here. *Davila v. Roblen, LLC*, 2026 WL 323134, at *1 (D. Conn. Feb. 6, 2026). Yet, he asks the Court to (1) order GT's counsel to present or attend CLE, and (2) award fees and order supplemental briefing on the amount. Mot. 22–24.[7]

Mr. Krivoshey's requests lack merit. Courts decline to impose CLE sanctions where, as here, the challenged conduct "did not prejudice" the moving party. *Dodge v. FirstService Residential Ariz. LLC*, 2025 WL 3653164, at *3 (D. Ariz. Dec. 17, 2025). Compensatory

---

[7] Per standard practice in the Ninth Circuit, GT's will "provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs," as necessary. *AECOM Energy & Constr., Inc. v. Topolewski*, 2022 WL 595937, at *14 (C.D. Cal. Feb. 25, 2022).

24

OPPOSITION TO MOTION FOR SANCTIONS

damages—"limited to … 'fees that party would not have incurred but for the bad faith,'" *Gharavi*, 2026 WL 82256, at *3—are also improper. "[T]he Ninth Circuit has interpreted Rule 45(d)(1) sanctions as applying primarily to reimburse a non-party's costs incurred in *complying* with a subpoena, not merely *litigating* a motion to quash." *Sci. Apps.*, 2024 WL 5011603, at *2. Because Mr. Krivoshey did not comply with the (withdrawn) Subpoena, it follows he could not have incurred any costs of compliance. Still, he seeks fees and costs spent "responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions." Mot. 24. He does not care to explain how "responding to the subpoena" is any different from moving to quash, shorten time, or for sanctions—which should not be compensated.[8] In sum, Mr. Krivoshey "incorrectly attempts to compel Rule 45 sanctions when Rule 45 sanctions are for costs to comply with a subpoena, not contest it." *Sci. Apps.*, 2024 WL 5011603, at *3.

Mr. Krivoshey only offers opinions involving different circumstances that support *GT's* position. Mot. 20–24.[9] He refers to a motion to compel that was not granted due to a service issue (*id*. at 21), but ignores that Judge Martínez-Olguín denied class certification in that case based on lack of adequacy and other reasons—after which plaintiffs voluntarily dismissed their individual claims. *Effinger v. Ancient Organics*, 2025 WL 1489710 (N.D. Cal. May 23, 2025). *Cal. v. Kroger Co.*, 2024 WL 4453267, at *3 (C.D. Cal. Oct. 9, 2024) concerns a good-faith dispute about removal jurisdiction, not discovery. And he admits the cited preliminary discovery order from a contentious case was overruled by the district court, after finding insufficient basis for asserting sanctions against counsel. *Hawkins v. Kroger* Co., 2020 WL 6150040, at *10 (S.D. Cal. Oct. 20, 2020) ("[T]he sanctions … cannot stand."). None supports sanctions here.

### IV.     CONCLUSION

For the reasons stated above, the Court should deny Mr. Krivoshey's Motion for Sanctions.

---

[8] Generously construed, only 1.3 hours ("Reviewed subpoena" and "Attention to … subpoena") out of a total 78.9 hours—***1.6%***—were billed complying with the Subpoena. ECF No. 9-8 at 2–3. The remaining hours concern Mr. Krivoshey's mooted motion to quash and unnecessary motion for sanctions.

[9] *See also Salmon v. CRST Expedited, Inc.*, 2016 WL 3945362, at *2 (N.D. Okla. July 19, 2016) (Rule 11 sanctions for "filing frivolous claims"); *Mata v. Avianca*, Inc., 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (similar).

25

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: March 6, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Peter K. Bae

By: */s/ Jacob M. Harper*
    Jacob M. Harper

*Attorneys for Defendant*
*GT's Living Foods, LLC*

26

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On March 6, 2026, I served the foregoing document(s) described as: **OPPOSITION TO MOTION FOR SANCTIONS** by placing a true copy of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Gabriel Zachiah Doble
Richard E Lyon, III
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com
Email: gabe@dovel.com
Email: rick@dovel.com

__X__  (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__  (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **annajimenez@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on March 6, 2026, at Los Angeles, California.

☐  State    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X  Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
Anna Jimenez

1

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899