United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMIT PATEL, et al.,

        Plaintiffs,

    v.

GT'S LIVING FOODS, LLC,

        Defendant.

Case No. 26-mc-80036-TSH

**ORDER RE:  NON-PARTIES' MOTION FOR SANCTIONS**

Re: Dkt. No. 9

## I.    INTRODUCTION

This matter arises out of non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C.'s (collectively, the "Non-Parties") motion to quash deposition subpoena issued by Defendant GT's Living Foods, LLC ("GT") in *Patel et al. v. GT's Living Foods, LLC,* No. 2:19-cv-10920-FMO-DSR (C.D. Cal.) (the "*Patel* Action").  ECF No. 1.  Pending before the Court is the Non-Parties' Motion for Sanctions.  ECF No. 9 ("Mot.").  For the reasons stated below, the Court **GRANTS** the motion.

## II.    BACKGROUND

**A.    Factual Background**

GT is a defendant in the *Patel* Action.  Mot. at 1:2–10.  Yeremey Krivoshey ("Krivoshey") is an attorney who previously represented the original plaintiffs in the *Patel* Action while a partner at Bursor & Fisher.  Declaration of Yeremey Krivoshey ¶ 2 ("Krivoshey Decl.") (ECF No. 9-1).  During this representation, Krivoshey left Bursor & Fisher to start his own firm, Smith Krivoshey, P.C.  *Id.* ¶ 4.  Krivoshey continued his representation in the *Patel* Action after starting his new firm.  *Id.*  In August 2024, Bursor & Fisher and the Non-Parties withdrew from the *Patel* Action.  Mot. at 3:16–24 (citing *Patel* Action, ECF Nos. 141–44).

The law firm Dovel & Luner LLP appeared as new counsel in the *Patel* Action. *Id.* Dovel & Luner and Smith Krivoshey entered into two agreements regarding the *Patel* Action: one on July 9, 2024, and one on July 16, 2024. Mot. at 3:25–4:2; *see* Krivoshey Decl. ¶ 7. In 2026, in connection with the *Patel* Action, GT issued two non-party subpoenas (the "Subpoenas") that named the Non-Parties and included deposition and document subpoenas. Mot. at 8:26–10:14; *see* Krivoshey Decl., Exs. A (the "First Subpoena") (ECF No. 9-2), B (the "Second Subpoena") (ECF No. 9-3). The Subpoenas sought testimony and documents regarding the *Patel* Action and fee agreements between the Non-Parties and Dovel & Luner. Krivoshey Decl., Exs. A, B. The Non-Parties moved to quash the Second Subpoena. Mot. at 1:2–10; *see* ECF No. 1 (Motion to Quash). GT and the Non-Parties dispute the propriety of the Subpoenas.

Overall, the Non-Parties seek sanctions against GT and its counsel (Davis Wright Tremaine LLP and attorneys Jacob Harper and Joseph Elie-Meyers) for discovery abuse, asserting that the Subpoenas were improper, caused an undue burden on the Non-Parties, and violated court orders, discovery rules, and professional guidelines. Mot. at 1:11–2:10.

### 1.　　The Underlying Action

The *Patel* Action is a putative class action that commenced on December 27, 2019. Mot. at 3:7–9 (citing *Patel* Action, ECF No. 1). At inception, the Action was styled as *Sharpe et al. v. GT's Living Foods, LLC* (the "*Sharpe* Action"). Krivoshey Decl. ¶ 2. Krivoshey represented the four original plaintiffs who brought the initial *Sharpe* Action (the "*Sharpe* Plaintiffs"). *Id.* In the *Sharpe* Action, fact discovery closed in April 2021, and expert discovery closed in August 2021. *Id.* ¶ 3 (citing *Patel* Action, ECF No. 62). On August 7, 2024, the court in the *Sharpe* Action approved a substitution of counsel—Bursor & Fisher, Krivoshey, and Smith Krivoshey withdrew from the matter and Dovel & Luner appeared as new counsel in the matter. Mot. at 3:16–24; *see* Krivoshey Decl. ¶ 6 (citing *Patel* Action, ECF Nos. 130–31, 134, 136–37, 139–44). That same day, Davis Wright Tremaine LLP entered a new appearance for GT. Reply at 15:16–23 (citing *Patel* Action, ECF No. 145).

On December 17, 2024, an amended complaint was filed in the *Sharpe* Action that named three new plaintiffs (the "*Patel* Plaintiffs"). Mot. at 5:3–4 (citing *Patel* Action, ECF Nos. 167–

<div align="center">2</div>

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

68).  The *Sharpe* Plaintiffs were dismissed on September 30, 2025.  Opp. at 5:11–14; *see* Mot. at 5:5–7 (citing *Patel* Action, ECF No. 178).

In October 2025, the *Patel* court re-opened discovery "related solely to the newly added named plaintiffs."  Mot. at 5:9–10 (citing *Patel* Action, ECF No. 180).  On December 18, 2025, GT and the *Patel* Plaintiffs filed a second request to extend discovery to March 5, 2026, to "complete remaining discovery related to the newly added named plaintiffs."  Krivoshey Decl., Ex. M at 1:7 (Joint Stipulation) (ECF No. 9-14).  The *Patel* Plaintiffs and GT requested this extension "due to Plaintiffs' unavailability during the week of Christmas and the need to preserve the Parties' ability to file any necessary motions arising from those depositions before the end of the discovery cut off."  *Id.* at 1:10–15.  GT did not request leave to serve third-party subpoenas. Mot. at 5:16–22 (citing Krivoshey Decl., Ex. M).  The *Patel* court granted the extension, stating: "Any remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**.  *Id.* (citing Krivoshey Decl., Ex. N (*Patel* Court Order) (ECF No. 9-15)) (bold emphasis in original).

On November 13, 2025, GT served the *Patel* Plaintiffs with a document request seeking "any fee sharing and joint prosecution agreements between current and former counsel in this action."  Krivoshey Decl., Ex. S at 3:23–27 (Joint Stipulation Pursuant To GT's Motion To Compel) (ECF No. 9-20).  This request included fee sharing arrangements between Dovel & Luner and Smith Krivoshey.  *Id.* at 30:1–13.  On December 23, 2025, the *Patel* Plaintiffs submitted a declaration stating that they had produced executed copies of the responsive agreements between Dovel & Luner and Smith Krivoshey.  Krivoshey Decl., Ex. O ¶¶ 4, 17–18 (Discovery Joint Stipulation) (ECF No. 9-16).

GT deposed the *Patel* Plaintiffs (Plaintiffs Nunez, Schmidt, and Patel) between January 8 and January 26, 2026.  Krivoshey Decl., Ex. T ¶ 11 (Declaration of Joseph Elie-Meyers in *Patel* Action) (ECF No. 9-21); *see* Krivoshey Decl., Exs. P (Deposition of Plaintiff Patel) (ECF No. 9-17), Q (Deposition of Plaintiff Schmidt) (ECF No. 9-18), R (Deposition of Plaintiff Nunez) (ECF No. 9-19).  None of the *Patel* Plaintiffs indicated that they knew or had contact with Bursor & Fisher, Krivoshey, or Smith Krivoshey; nor did they indicate that they were aware of any

United States District Court
Northern District of California

continuing involvement by the Non-Parties in the *Patel* Action.  Mot. at 6:4–8:25 (citing Krivoshey Decl., Exs. P, Q, R).

### 2. The Fee Agreements

Dovel & Luner and Smith Krivoshey entered into two agreements regarding the *Patel* Action.  Mot. at 3:25–4:2; *see* Declaration of Joseph Elie-Meyers ("Elie-Meyers Decl.") (ECF No. 10-2), Ex. 1 (ECF No. 11) at 4 (the "First Agreement"), 9 (the "Second Agreement").  On July 9, 2024, the two law firms entered into the First Agreement.  ECF No. 11 at 7; *see* Mot. at 4:3–10; Krivoshey Decl. ¶ 7; Opp. at 5:20–6:8.  This Agreement states that Smith Krivoshey and Bursor & Fisher will remain counsel of record and will work with Dovel & Luner going forward, and that all counsel will receive some proportion of fees in the event fees are recovered.  ECF No. 11 at 4–5.

On July 16, 2024, the two law firms entered into the Second Agreement.  ECF No. 11 at 11; *see* Mot. at 4:11–20; Krivoshey Decl. ¶ 7; Opp. at 5:20–6:8.  This Agreement states:

> This Agreement constitutes the entire agreement between the Parties regarding the foregoing subject matter, whether oral or written, and specifically supersedes any prior agreements between them.

ECF No. 11 at 10.  The Agreement states that Smith Krivoshey and Bursor & Fisher will withdraw from the *Sharpe* Action "after the Class Representatives consent to this Agreement"; that Dovel & Luner will serve as lead counsel in the Action going forward and be responsible for all aspects of the Action; and that any party to the Agreement could apply to the court for an award of costs or fees, which would be determined by the court.  *Id.* at 9–10.

### 3. The Subpoenas

In connection with the *Patel* Action, GT issued two non-party subpoenas that named the Non-Parties.  Mot. at 8:26–10:14; Opp. at 6:20–7:17.

#### a. The First Subpoena

GT issued the First Subpoena on January 29, 2026, and notified the *Patel* Plaintiffs of this Subpoena.  Krivoshey Decl., Ex. A.  Attorney Jacob M. Harper[1] of Davis Wright Tremaine signed

---

[1] Harper is lead counsel for GT in the *Patel* Action.  Declaration of Jacob M. Harper ¶ 1 ("Harper Decl.") (ECF No. 10-1).

United States District Court
Northern District of California

the Subpoena. *Id.* at 12. This Subpoena listed both Krivoshey and Smith Krivoshey in the "To" line of the Subpoena. *Id.* The First Subpoena noticed a deposition date of February 10, 2026—both in Los Angeles, California and in San Francisco, California—and stated "[r]emote option to be provided to all participants." *Id.* at 1, 12. This deposition date was prior to depositions scheduled for the other law firms named in the Subpoena, including Dovel & Luner. *Id.* at 1. The First Subpoena included a document request for all communications and agreements between the Non-Parties and Dovel & Luner regarding the *Sharpe* Action and *Patel* Action. *Id.* at 15–16.

GT arranged for a process server to serve Krivoshey at his home in Kentucky, but service did not occur. Krivoshey Decl. ¶ 13. The process server did not leave the Subpoena at Krivoshey's residence or provide the Subpoena to any other person. *Id.* GT did not contact Krivoshey to discuss scheduling or what documents it needed that could not be obtained from the *Patel* Plaintiffs or their counsel. *Id.* ¶ 19. GT made four attempts to "personally serve" the First Subpoena on Krivoshey at his law firm address and residence in Kentucky. Elie-Meyers Decl. ¶¶ 5–8.

### b.     The Second Subpoena

GT issued the Second Subpoena on February 4, 2026, again signed by Harper. Krivoshey Decl., Ex. B. GT did not provide notice of the Second Subpoena to the *Patel* Plaintiffs or their counsel. Krivoshey Decl., Ex. C (Email From *Patel* Plaintiffs' Counsel) (ECF No. 9-4). GT states that it provided notice of the Second Subpoena to the *Patel* Plaintiffs by serving them with the First Subpoena which was "materially identical." Opp. at 20:9–16. The Second Subpoena also listed both Krivoshey and Smith Krivoshey in the "To" line of the Subpoena. Krivoshey Decl., Ex. B. The Second Subpoena noticed a deposition date of February 18, 2026, in San Francisco, California, and stated "[r]emote option to be provided to all participants." *Id.* The Second Subpoena included a document request for all communications and agreements between the Non-Parties and Dovel & Luner regarding the *Sharpe* Action and *Patel* Action. *Id.* This same document request was included in the First Subpoena to Dovel & Luner. Krivoshey Decl., Ex. A at 6–10.

The Second Subpoena's Attachment A defined "You" as Smith Krivoshey instead of

United States District Court
Northern District of California

Krivoshey "due to an administrative error." Elie-Meyers Decl. ¶ 9; *see* Krivoshey Decl., Ex. B. GT served the Second Subpoena on Smith Krivoshey's California agent for service of process. Krivoshey Decl. ¶ 16; *see* Elie-Meyers Decl. ¶ 9, Ex. 6 (Proof of Service) (ECF No. 10-2 at 14). GT served Smith Krivoshey's agent because GT understands that Krivoshey owns and operates Smith Krivoshey. Elie-Meyers Decl. ¶ 9. The proof of service for this Subpoena lists "Smith Krivoshey, PC / Yeremey O. Krivoshey" as "Party Served." *Id.* at Ex. 6. GT did not contact Krivoshey to discuss scheduling or what documents it needed that could not be obtained from the *Patel* Plaintiffs or their counsel. Krivoshey Decl. ¶ 19. No fees were tendered with the Second Subpoena. *Id.* ¶ 20.

On February 9, 2026, the Non-Parties and GT had a meet and confer call regarding the Second Subpoena. Krivoshey Decl. ¶ 25; Elie-Meyers Decl. ¶ 11. On February 11, 2026, the Non-Parties moved to quash the Second Subpoena and to shorten time to hear the motion. ECF Nos. 1, 2. The Court denied the motion to shorten time and set a hearing on the motion to quash for March 19, 2026. ECF No. 5. In that order, the Court stayed Krivoshey's pending deposition. *Id.*

On February 18, 2026, at 1:04 a.m. EST, GT's counsel emailed Krivoshey stating that it was withdrawing the Second Subpoena. Krivoshey Decl., Ex. F (Email) (ECF No. 9-7). On February 19, 2026, GT filed a notice of withdrawal of subpoena for the Second Subpoena. ECF No. 6.

### 4.    Actions Of The Non-Parties And GT

Krivoshey avers that in late July or August 2024, Harper told Krivoshey that he did not believe Krivoshey would "walk away" from the *Sharpe* Action and that he believed Krivoshey would remain in the Action behind the scenes. Krivoshey Decl. ¶ 11. Krivoshey assured Harper that Krivoshey would truly withdraw as he represented. *Id.* The Non-Parties withdrew from the *Sharpe* Action and were not involved going forward, apart from transferring case files and briefly assisting with the transition. *Id.* ¶¶ 8–10.

Krivoshey, Joel Smith (of Smith Krivoshey), and Joseph Elie-Meyers (of Davis Wright Tremaine for GT) met and conferred on February 9, 2026, regarding the Second Subpoena. Elie-

Meyers Decl. ¶ 11; Krivoshey Decl. ¶¶ 25–27.

Krivoshey makes the following averments in his Declaration, regarding the meet and confer for the Second Subpoena. *See* Mot. at 9:14–13:2. Smith asked Elie-Meyers when fact discovery closed; Elie-Meyers responded March 5, 2026, but did not state that fact discovery was limited to the *Patel* Plaintiffs. Krivoshey Decl. ¶ 30. Smith asked if Krivoshey's deposition was scheduled to occur before or after that of Dovel & Luner; Elie-Meyers responded that Dovel and Luner's deposition was set to proceed prior to that of Krivoshey. *Id.* ¶ 31. After the call, Krivoshey learned that this information was false—Dovel & Luner's deposition had been rescheduled to occur after that of Krivoshey. *Id.* Krivoshey had not seen a copy of the First Subpoena at that time and asked Elie-Meyers to provide a copy to him; Krivoshey also asked whether the First Subpoena had been withdrawn, what the listed date for compliance was, and whether GT was still in the process of trying to serve the Subpoena. *Id.* ¶ 32. Elie-Meyers refused to provide a copy of the First Subpoena, refused to answer Krivoshey's questions, and told Krivoshey to contact Dovel & Luner for a copy. *Id.* Krivoshey repeatedly asked Elie-Meyers what documents GT believed the Non-Parties had that the *Patel* Plaintiffs or their counsel did not have; Elie-Meyers would not identify specific documents. *Id.* ¶ 33. Elie-Meyers stated that because Dovel & Luner's deposition was set to proceed before Krivoshey's deposition, GT would be in a better position to know what information Krivoshey may possess that Dovel & Luner did not have after Dovel & Luner's deposition. *Id.* ¶ 34. Smith asked whether GT provided notice of the Second Subpoena to Dovel & Luner. *Id.* ¶ 35. Elie-Meyers responded that notice was not provided to Dovel & Luner because the two Subpoenas were in effect the same Subpoena with modified dates. *Id.* Elie-Meyers clarified that the Second Subpoena was intended for Krivoshey, as an individual, and not for Smith Krivoshey. *Id.* ¶ 38. Krivoshey asked Elie-Meyers why he thought he could serve Krivoshey in a personal capacity through a registered agent of the law firm; Elie-Meyers responded that Krivoshey's name is part of the firm name and Krivoshey owns the firm. *Id.* Smith asked if GT had received responsive documents from Dovel & Luner such that the Non-Parties would not need to produce them; Elie-Meyers declined to answer. *Id.* ¶ 36. Smith asked why GT's counsel had not called or emailed Krivoshey to discuss the need for the Subpoena

or the time or place of the Subpoena; Elie-Meyers declined to answer. *Id.* ¶ 40. At the conclusion of the call, GT's counsel indicated that they would not withdraw the Subpoena and would not modify the noticed deposition date of February 18, 2026. *Id.* ¶ 29.

Elie-Meyers makes the following averments in his Declaration, regarding the meet and confer for the Second Subpoena. *See* Opp. at 7:18–8:3. Elie-Meyers told Krivoshey that GT considered the Second Subpoena as the operative Subpoena. Elie-Meyers Decl. ¶ 10. Elie-Meyers "repeatedly offered to discuss limiting the scope of the Subpoena, or to extend the time for compliance to allow additional time to negotiate the scope of the Subpoena." *Id.* ¶ 12. Smith and Krivoshey declined to discuss these topics. *Id.* Elie-Meyers accurately stated that discovery closed on March 5, 2026; his not mentioning that discovery was limited to the *Patel* Plaintiffs does not amount to a "lack of candor." *Id.* ¶ 13. During the call, Elie-Meyers referred to the issued Subpoena to answer Krivoshey's question regarding the order of depositions—Elie-Meyers accurately told Krivoshey that Dovel & Luner's deposition was noticed before that of Krivoshey, based on the Subpoena. *Id.* ¶ 14. Elie-Meyers "neglected to mention that Dovel's noticed deposition date had subsequently been rescheduled as a result of meet-and-confer efforts." *Id.* When asked which documents may be in the Non-Parties' possession that were not possessed by Dovel & Luner, Elie-Meyers responded that he "could not definitively know the answer to that question until after Dovel's deposition." *Id.*

On February 10, 2026—in response to the Non-Parties' request that GT stipulate to shorten time for the motion to quash or vacate the compliance date for the Second Subpoena—Elie-Meyers emailed Smith, stating:

> We'd be happy to join a stipulated extension of the current discovery deadline to allow you the flexibility to file a normally noticed motion, and will seek Dovel & Luner's agreement to a stipulation to that effect. However, unless and until such a stipulation is entered, we cannot join a motion to shorten time, nor agree that the subpoena compliance date is vacated. If opposing counsel agrees to such a stipulation, we are willing to consider rescheduling the deposition pending a ruling on the joint stipulated scheduling order.

Krivoshey Decl. ¶ 41, Ex. D (Email) (ECF No. 9-5); *see* Mot. at 13:3–24; Opp. at 8:4–13; Elie-Meyers Decl. ¶ 15. The Non-Parties did not have control over whether the *Patel* Plaintiffs agreed

to extend discovery in the *Patel* Action.  Krivoshey Decl. ¶ 43.

On February 11, 2026, Harper emailed Krivoshey an email that Harper sent to counsel for the *Patel* Plaintiffs, responding to counsel's concern over timing of the Subpoenas.  *Id.* ¶ 44, Ex. E (Email) (ECF No. 9-6); *see* Mot. at 13:25–15:13; Opp. at 8:4–13.  The email states:

> With respect to timing, the issues giving rise to the need for these subpoenas on Dovel's co-counsel—none of the plaintiffs' signatures on counsel agreements you partially produced, the discovery of a third agreement (the retention agreement itself) that wasn't produced, the plaintiffs' lack of knowledge or supervision over the class counsel in this case, the troubling fee-sharing agreements at odds with the interests of the current class, and other things—came to our attention only with the depositions of the three class representatives in January. And I will remind you that you offered extremely late dates for these witnesses after we first noticed them in December to avoid exactly this kind of issue.  The timing issue you raise is disingenuous and a problem of your creation, not ours.
>
> We will respond to the rest of your email separately but I'm raising this now because that point is so outrageously false that it deserves a response of its own.

Krivoshey Decl., Ex. E.

On February 18, 2026, at 1:04 a.m. EST, Elie-Meyers emailed Krivoshey, notifying Krivoshey that GT was withdrawing the Second Subpoena, and stating:

> Mr. Krivoshey provided sworn statements describing the history of his involvement in the Patel litigation and the nature of his relationship with current Patel counsel at Dovel & Luner LLP. *Id.*, paras. 2–10.  Because that declaration set out, in sum and substance, the information GT's sought to obtain through the subpoena, and similar to what other subpoenaed parties have agreed in pre-motion conferrals to provide in lieu of deposition testimony or document productions, we are withdrawing GT's subpoena here.

Krivoshey Decl. ¶ 48, Ex. F; *see* Mot. at 15:14–16:8; Opp. at 9:2–7; Elie-Meyers Decl. ¶ 16.

Elie-Meyers met and conferred with Bursor & Fisher on February 9 and 17, 2026, and with Dovel & Luner on February 4 and 13, 2026.  Elie-Meyers Decl. ¶ 17.  As a result, GT agreed to continue those firms' compliance dates to allow further negotiations of the Subpoenas' scope.  *Id.* ¶ 18.  After the two firms agreed to provide sworn declarations describing the nature of their relationship with the Non-Parties in the Patel Action, GT withdrew the Subpoenas to these firms. *Id.*

United States District Court
Northern District of California

**B.      Procedural Background**

The *Patel* Action commenced on December 27, 2019 (originally, the "*Sharpe* Action"). Mot. at 3:4–11 (citing *Patel* Action, ECF No. 1). On December 17, 2024, an amended complaint was filed in the *Patel* Action, naming the *Patel* Plaintiffs who are three new plaintiffs. *Id.* at 5:3–4 (citing *Patel* Action, ECF Nos. 167–68). The *Sharpe* Plaintiffs were subsequently dismissed, on September 30, 2025. Opp. at 5:11–14; *see* Mot. at 5:5–7 (citing *Patel* Action, ECF No. 178).

In October 2025, the *Patel* court re-opened discovery. Mot. at 5:9–10 (citing *Patel* Action, ECF No. 180). GT then issued two Subpoenas that named the Non-Parties. On January 29, 2026, GT issued the First Subpoena. Krivoshey Decl., Ex. A. On February 4, 2026, GT issued the Second Subpoena. Krivoshey Decl., Ex. B. The Second Subpoena requested documents from the Non-Parties and noticed a deposition date of February 18, 2026. *Id.*

On February 11, 2026, the Non-Parties filed a motion to quash deposition subpoena and motion to shorten time in connection with the Second Subpoena. ECF Nos. 1, 2. On February 12, 2026, the Court denied the motion to shorten time, ordered that Krivoshey's deposition shall not proceed nor be rescheduled pending resolution of the motion to quash, and set a hearing on the motion to quash for March 19, 2026. ECF No. 5. On February 19, 2026, GT withdrew the Second Subpoena. ECF No. 6.

On February 20, 2026, the Non-Parties filed the instant Motion for Sanctions. ECF No. 9 ("Mot."). On March 6, 2026, GT filed an Opposition. ECF No. 10 ("Opp."). On March 13, 2026, the Non-Parties filed a Reply. ECF No. 13 ("Reply").

## III.    LEGAL STANDARD

**A.      Rule 45**

Rule 45 governs sanctions on parties serving third-party subpoenas:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). Under this rule, a court "may impose sanctions when a party issues a

10

subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). But a "district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id*. Sanctions under Rule 45(d)(1) are discretionary. *Id.* Courts also "have discretion over the type and degree of sanction imposed. Payment of opposing counsel's attorneys' fees is one form of permissible sanction." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012) (citations omitted).

## B.    Rule 26

Rule 26 "requires parties seeking discovery to act (1) consistently with the rules of existing law or with good reason to change the law; (2) without bad faith; and (3) reasonably without imposing undue burden or expense considering the needs of the case." *Id.* (citing Fed. R. Civ. P. 26(g)(1)(B)). "[B]y signing a discovery request, the attorney certifies that, to the best of his or her knowledge, information, and belief, the discovery request is consistent with Rule 26(g)(1)(B)." *Duong v. Groundhog Enters., Inc.*, No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939, at *9 (C.D. Cal. Feb. 28, 2020). Rule 26 further states "that if a certification violates Rule 26 without substantial justification, the Court must impose an appropriate sanction." *Li v. Merck & Co.*, No. 23-cv-03347-JSW(TSH), 2025 WL 2162949, at *6 (N.D. Cal. July 30, 2025) (citing Fed. R. Civ. P. 26(g)(3)). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). Sanctions under Rule 26 are warranted where the signer of a discovery request issues a third-party subpoena that violates Rule 26 and the signer's actions are not substantially justified. *Duong*, 2020 WL 2041939, at *9–10. Moreover, "a violation of any one of the Rule 26 duties will be relevant to assessing propriety of sanctions under Rule 45(c)(1)'s 'undue burden' language." *Mount Hope*, 705 F.3d at 425.

## C.    Section 1927

Pursuant to Section 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

11

expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. "Courts wishing to impose sanctions under § 1927 must make a finding that the attorney to be sanctioned acted with 'subjective bad faith.'"  *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024).  "[A] finding that the attorneys recklessly raised a *frivolous* argument which resulted in the multiplication of the proceedings justifies § 1927 sanctions."  *Id.* at 1155 (emphasis in original) (cleaned up); *see also In re Keegan Mgmt. Co., Secs. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.") (cleaned up).  Frivolous arguments are "ones that are baseless and made without reasonable and competent inquiry or made up of legal or factual contentions so weak as to constitute objective evidence of improper purpose."  *Caputo*, 96 F.4th at 1155 (cleaned up).  Sanctions under Section 1927 may only be imposed upon individual attorneys, rather than against the client or law firm. *Kaass Law Firm v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–94 (9th Cir. 2015).

### D.      Court's Inherent Power

A district "court has the inherent power to sanction a party or its lawyers if it acts in willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as well as for willful abuse of the judicial processes."  *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980)) (cleaned up).  "[T]he district court may not sanction mere 'inadvertent' conduct."  *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).  Rather, the imposition of sanctions under the court's inherent powers requires "a finding of bad faith, or conduct tantamount to bad faith."  *Vernon*, 255 F.3d at 1134.  "[R]ecklessness, of itself, does not justify the imposition of sanctions" under the Court's inherent power.  *Id.*  However, "sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Id.* (cleaned up).  "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's

12

fees." *Fink*, 239 F.3d at 992 (cleaned up).

## IV.　DISCUSSION

The Non-Parties move for sanctions under (1) Rule 45; (2) Rule 26; (3) Section 1927; and (4) the Court's inherent power. Mot. at 16:23–18:11. Overall, the Non-Parties request sanctions against GT and its counsel in the form of monetary sanctions and an order requiring GT's counsel "to prepare and present a CLE on ethics and discovery practice on Lawline.com, at a local Bar Association, or another public forum."[2] *Id.* at 1:11–3:1. GT contends that the Motion is "baseless" and serves "as a vehicle to air preexisting grievances" with GT's counsel and to punish GT. Opp. at 1:1–9.

In sum, the Court concludes that sanctions are warranted under Rule 45 and under Rule 26. Because the Court awards the Non-Parties the relief they seek under these Rules, the Court need not determine whether sanctions are also warranted under Section 1927 or under the Court's inherent power.

### A.　　Basis For Sanctions

The Non-Parties argue that sanctions are warranted because GT and its counsel (1) took reckless legal positions that are contrary to law; (2) acted in bad faith; and (3) imposed undue burdens on the Non-Parties and engaged in harassment. Mot. at 16:23–18:11. GT contends that sanctions are not warranted because (1) there was no undue burden; (2) GT's Subpoena was issued in accordance with the law; (3) Krivoshey's accusations of misrepresentation are actually just ordinary discovery disagreements; and (4) the requested sanctions are improper as a matter of law and equity. Opp. at 2:22–3:18.

#### 1.　　Rule 45

Under Rule 45, a court "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice*, 738 F.3d at 1185. "For example, a party may issue a subpoena in a manner inconsistent with existing law if it

---

[2] Regarding GT's counsel, the Non-Parties seek sanctions against "the law firm of Davis, Wright, and Tremaine, and attorneys Jacob Harper and Joseph Elie-Meyers for discovery abuse[.]" Mot. at *i*.

does not follow the subpoena procedures in Rule 45, such as failure to notify opposing counsel of the subpoenas or requesting information that is wholly irrelevant under any legal theory." *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, No. 3:22-cv-04480-JSC, 2024 WL 5011603, at *2 (N.D. Cal. Dec. 6, 2024) (cleaned up).

Here, the Court concludes that under Rule 45, sanctions are appropriate because GT's "conduct in pursuing the subpoenas and the subpoenas themselves imposed an undue burden on [the Non-Parties], was inconsistent with existing law and issued for an improper purpose." *Cf. Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-mc-80076-JSC, 2016 WL 7212308, at *3 (N.D. Cal. Dec. 13, 2016).

First, the Court finds that because the Second Subpoena had a plethora of defects, it was inconsistent with existent law. The Non-Parties argue that the record supports sanctions because the Second Subpoena was facially defective. Mot. at 18:12–19:5. The Court agrees. GT admits that it did not serve the Second Subpoena on the *Patel* Plaintiffs or their counsel (Dovel & Luner). Opp. at 20:9–16. Rule 45 requires that any subpoena commanding the production of documents must be "served on each party" before "it is served on the person to whom it is directed." Fed. R. Civ. P. 45(a)(4). Indeed, the face of the Second Subpoena quotes this very section. *See* Krivoshey Decl., Ex. B. Yet GT cites no authority for its proposition that it can disregard Rule 45's notice requirement because the Second Subpoena was "materially identical" to the one previously served. Opp. at 20:9–16. Next, GT does not dispute that it did not personally serve Krivoshey but instead served the Second Subpoena on Smith Krivoshey's registered agent. *Id.* at 19:18–20:8; Elie-Meyers Decl. ¶ 9. Most district courts agree that "delivering" a Rule 45 subpoena to a third-party "requires personal service." *Netlist, Inc. v. Montage Tech., Inc.*, No. 22-mc-80337-VKD, 2023 WL 2940043, at *2 (N.D. Cal. Feb. 24, 2023); *see* Reply at 10:4–18 (collecting cases). GT cites to no authority—and the Court is aware of none—that service on a business entity's registered agent is tantamount to personal service on an individual. *See Netlist*, 2023 WL 2940043, at *2 (noting courts acknowledge "that personal service on a corporation may be accomplished by serving its agent"). And in fact, the proof of service for the Second Subpoena lists Smith Krivoshey as a "Party Served." Elie-Meyers Decl., Ex. 6. Nor does GT dispute that the Second

14

Subpoena defined "You" as Smith Krivoshey—not Krivoshey—but avers this was "due to an administrative error." *Id.* ¶ 9; *see* Opp. at 19:6–17. This "mistake" created ambiguity as to the Subpoena recipient and did not clearly convey that Krivoshey was noticed for deposition, as opposed to Smith Krivoshey. *Cf. Scott v. Keller*, No. 2:07-cv-00184-KJD-PA, 2010 WL 1267772, at *2 (E.D. Cal. Mar. 31, 2010) (explaining that under Rule 34, listing multiple defendants as subpoena recipients made unclear which defendant was supposed to respond). Lastly, GT concedes that the Second Subpoena did not include witness fees. *See* Krivoshey Decl. ¶ 20; Opp. at 20:17–22. Rule 45 requires "concurrent tender of witness fees and an estimated mileage allowance with service of a subpoena." *San Francisco Bay Area Rapid Transit Dist. v. Spencer,* No. C-04-04632-SI, 2006 WL 2734284, at *1 (N.D. Cal. Sept. 25, 2006) (cleaned up).

In sum, GT's counsel issued the Second Subpoena which was not served on the opposing party, was ambiguous regarding the Subpoena recipient, was not personally served on the purported Subpoena recipient, and did not tender the required fees—this was contrary to law. *See Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL(JSC), 2015 WL 5782351, at *8 (N.D. Cal. Oct. 5, 2015) (noting party's "attempt to sidestep the well-settled requirements of Rule 45 . . . weighs in favor of sanctions"); *Spencer*, 2006 WL 2734284, at *1 (holding Rule 45 subpoenas "are invalid because they were not personally served and accompanied by tender of witness fees"). GT's arguments to the contrary are unpersuasive—while courts may excuse singular or inadvertent procedural defects in a subpoena, here, GT knowingly issued a Subpoena that contained several defects. *See* Opp. at 19:3–20:24; Reply at 10:1–3. Therefore, GT's issuance of the facially defective Second Subpoena supports sanctions. *See Diversified Funding Grp., LLC v. Hendon*, No. CV-17-00189-VAP(AFMx), 2018 WL 1870029, at *1 (C.D. Cal. Jan. 4, 2018) (explaining facially defective subpoena is a ground for sanctions under Rule 45).

Second, the Court finds that in issuing the Subpoenas, GT's counsel failed to take reasonable steps to avoid imposing an undue burden on the Non-Parties, which was contrary to law. The Non-Parties argue that the record supports sanctions because GT's counsel sought documents or testimony available from the *Patel* Plaintiffs, counsel refused to work with the Non-Parties to narrow the issues, and counsel's conduct regarding the Second Subpoena violated

15

United States District Court
Northern District of California

professional rules of conduct. Mot. at 19:6–20:13. GT does not contest that a party must seek documents from other parties prior to relying on non-parties. Opp. at 13:12–14:24. Nor could it. *See Duong*, 2020 WL 2041939, at *7 ("In its undue burden inquiry, the Court properly may evaluate whether information requested through a nonparty subpoena is readily available from a party."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). But GT contends that the *Patel* Plaintiffs would not possess the documents requested in the Subpoenas, and because Dovel & Luner are also non-parties, GT is not required to go to Dovel prior to the Non-Parties. Opp. at 13:12–14:24. These arguments miss the mark. The Subpoenas sought communications and documents exchanged between the former and present counsel involved in the *Patel* Action—these documents are part of the case file in the *Patel* Action because they concern representation of the *Patel* Plaintiffs by their current counsel. Reply at 6:2–21. Importantly, these documents would be in the *Patel* Plaintiffs' control, through Dovel if necessary. Reply at 6:2–21; *see* Cal. R. Prof. Cond. 1.16(e)(1) ("'Client materials and property' includes correspondence, . . . and other items reasonably necessary to the client's representation, whether the client has paid for them or not."). Moreover, GT asked other law firms to "provide sworn declarations describing their relationship with former counsel," *after* Krivoshey submitted a declaration with his motion to quash; GT does not explain why it did not seek these items prior to noticing Krivoshey's deposition. Opp. at 14:12–21; *see* Reply at 7:1–11. GT thus unnecessarily burdened the Non-Parties by failing to obtain requested materials from the *Patel* Plaintiffs.

GT further contends that sanctions are not warranted because it attempted to narrow the issues posed by the Second Subpoena by conferring with Krivoshey. Opp. at 14:26–16:8. But this contention is belied by the record. Elie-Meyers makes a general averment that during the call for the Second Subpoena, he "repeatedly offered to discuss limiting the scope of the Subpoena, or to extend the time for compliance to allow additional time to negotiate the scope of the Subpoena." Elie-Meyers Decl. ¶ 12. However, he does not dispute that during the meet and confer call for the Second Subpoena, he refused to continue Krivoshey's deposition after Krivoshey pointed out the facial deficiencies with the Subpoena; he refused to provide a copy of the First Subpoena or

16

United States District Court
Northern District of California

answer questions about that Subpoena; he refused to tell the Non-Parties which documents GT had obtained from the *Patel* Plaintiffs and would not communicate what documents GT was seeking; he relayed incorrect information that Dovel's deposition was scheduled to occur before Krivoshey's deposition and told Krivoshey that he would know what documents were needed after deposing Dovel; and he did not disclose that fact discovery was limited to the new *Patel* Plaintiffs. *See* Krivoshey Decl. ¶¶ 29–40; *see generally* Elie-Meyers Decl. Nor does Elie-Meyers dispute that at the time of call, GT had received discovery from the *Patel* Plaintiffs that was responsive to the Second Subpoena that he refused to disclose to the Non-Parties. Reply at 3:17–4:9. And despite the myriad problems with the Second Subpoena, GT refused to continue the compliance date unless the *Patel* Plaintiffs agreed to extend discovery—something the Non-Parties had no control over. *See* Krivoshey Decl. ¶¶ 29, 43, Ex. D; Reply at 9:17–24. Therefore, GT's counsel's behavior—failing to obtain requested materials from the *Patel* Plaintiffs first, refusing to narrow the scope of the Second Subpoena, and refusing to extend the compliance date in the face of the defective Second Subpoena—supports sanctions. *Cf. In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967-CW(NC), 2012 WL 629225, at *8 (N.D. Cal. Feb. 27, 2012) (awarding sanctions under Rule 45 where plaintiffs "did not take advantage of the discovery they obtained from other sources in tailoring their document requests" and exhibited an "unwillingness to compromise during the meet-and-confer process"); *contra Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 283 (N.D. Cal. 2017) (declining to impose Rule 45 sanctions where counsel engaged in discussions to narrow subpoena's scope and "suggested ways to reduce the burden" on the non-party).

Third, the Court finds that the Subpoenas were issued for an improper purpose. The Non-Parties argue that the record supports sanctions because the Subpoenas were served based on GT's "speculation" that the Non-Parties "might have some, unidentified information unavailable from the opposing party." Mot. at 15:25–16:8, 19:6–22. GT contends that that it issued the Subpoenas "to probe [Krivoshey's] potentially continued involvement in the *Patel* litigation." Opp. at 11:9–13:11 (citing Elie-Meyers Decl. ¶ 2). As discussed, GT's document requests were improper. And GT relies on the thinnest of reeds to justify its request to depose Krivoshey. The undisputed

17

evidence shows that Harper doubted Krivoshey would "walk away" from the *Sharpe* Action; the Non-Parties withdrew from the *Sharpe* Action prior to the addition of the *Patel* Plaintiffs; the Non-Parties and the newly added counsel agreed that the new counsel would be responsible for all aspects of the *Sharpe/Patel* Action going forward; the Non-Parties were not entitled to fees from the *Patel* Action; and none of the *Patel* Plaintiffs testified that the Non-Parties were involved in the *Patel* Action. Reply at 2:5–4:15; *see* Krivoshey Decl. ¶¶ 6–7, 11, Exs. P, Q, R; ECF No. 11 at 11. In the face of this evidence, GT's argument that the fee agreements created a "plausible concern" that Krivoshey "continued to direct and stand to profit from the litigation" is insufficient to justify issuing the Subpoenas. Opp. at 1:19–2:4. Therefore, GT's issuance of the Subpoenas for an improper purpose supports sanctions. *Cf. Beaver*, 2016 WL 7212308, at *4 (holding subpoenas were issued for improper purpose where "subpoenas appeared to be an attempt to fish around to see if there is a basis for bringing a libel case against Gotham which is not an appropriate reason for the subpoena") (cleaned up).

Moreover, as discussed below, the Court finds that GT's counsel's actions also violated Rule 26. This supports an award of sanctions under Rule 45. *Mount Hope*, 705 F.3d at 425.

Accordingly, the Court concludes that sanctions are warranted under Rule 45. Rule 45(d)(1) states that the sanctions are to be imposed "on a party or attorney who fails to comply." Here, those attorneys are Harper and Elie-Meyers, and accordingly the Court sanctions them.[3]

### 2. Rule 26

Rule 26 "requires parties seeking discovery to act (1) consistently with the rules of existing law or with good reason to change the law; (2) without bad faith; and (3) reasonably without imposing undue burden or expense considering the needs of the case." *Mount Hope*, 705 F.3d at 425 (citing Fed. R. Civ. P. 26(g)(1)(B)). Rule 26(g) "requires a signing attorney to certify that a reasonable inquiry has been made with respect to the factual and legal basis for any discovery request or response." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987). If a certification violates Rule 26 "without substantial justification, the court, on

---

[3] The Court declines to sanction the client or the firm, as the two identified attorneys appear to be the ones responsible.

United States District Court
Northern District of California

motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

Here, the Court concludes that under Rule 26, sanctions must be issued. Attorney Harper signed the certifications on the Subpoenas on behalf of Davis Wright Tremaine. *See* Krivoshey Decl., Exs. A, B. As discussed, the Second Subpoena was a facially defective subpoena that imposed an undue burden on the Non-Parties and was issued for an improper purpose. The Second Subpoena thus violates Rule 26. *Mount Hope*, 705 F.3d at 425. In addition, Harper fails to demonstrate that his actions were substantially justified. Indeed, Harper's only explanation for serving the Subpoenas is that they "were issued in *Patel* strictly for the needs of this litigation," and GT "employed the least burdensome means of obtaining information sufficient to address its concerns regarding the ongoing involvement and financial interest of former counsel before issuing the subpoenas."[4] Harper Decl. ¶ 2. Harper does not explain why GT did not seek documents from the *Patel* Plaintiffs or why GT refused to narrow the scope of the Subpoena. And Harper offers no explanation for why the Second Subpoena did not conform to existing rules of law. Therefore, sanctions under Rule 26 are required. *See Williams v. Dr. Harold Katz, LLC*, No. 20-cv-05188-SK, 2020 WL 13832893, at *2 (N.D. Cal. Dec. 30, 2020) (holding sanctions were mandatory for Rule 26 violation).

Accordingly, the Court concludes that sanctions are warranted under Rule 26. Rule 26(g)(3) states that the sanctions should be imposed "on the signer, the party on whose behalf the signer was acting, or both." Here, the Court sanctions Harper, the signer.[5]

**B.      Appropriate Sanctions**

The Non-Parties request both monetary and prospective sanctions "to compensate for the misconduct in this case and to deter future misconduct." Mot. at 22:5–15.

---

[4] In its Opposition, GT sets forth numerous arguments for why the Second Subpoena was proper and consistent with existing law. "But it is well established in this District that attorney argument is not evidence on which the court can rely." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286 (N.D. Cal. 2015); *see also* Civ. L.R. 7-5(a). And in any event, the Court rejects those arguments above.

[5] The Court declines to sanction the client, as the Rule 26 violations are properly attributable to Harper.

19

United States District Court
Northern District of California

### 1. Continuing Legal Education

The Non-Parties request the Court impose prospective sanctions on GT's counsel as these sanctions are "likely to encourage improved behavior going forward." Mot. at 22:12–14. Specifically, the Non-Parties request the Court (1) require GT's counsel "to present CLE, or at a bare minimum, attend CLE in person." *Id.* at 23:17–24:26.

Under Rule 45, courts "have discretion over the type and degree of sanction imposed." *Mount Hope*, 705 F.3d at 425.

Here, the Court concludes that prospective sanctions against Attorneys Jacob Harper and Joseph Elie-Meyers are appropriate. GT does not dispute that the Court can impose CLE sanctions; instead, GT argues that such sanctions are not warranted here because the conduct of GT's counsel did not prejudice the Non-Parties. Opp. at 24:15–25:21. But as discussed, the Non-Parties argue persuasively that GT's counsel's conduct—issuing a Subpoena that imposed an undue burden on the Non-Parties, was inconsistent with existing law, and was issued for an improper purpose—*did* prejudice the Non-Parties. *See supra*, Part IV.A.1. Moreover, given that GT's counsel has already been warned about their improper litigation tactics—including by a court in this district—the Court agrees that prospective sanctions are necessary to encourage better behavior in the future. *See* Mot. at 20:14–21:8; *Effinger v. Ancient Organics LLC*, No. 22-cv-03596-AMO, 2024 WL 3643395, at *1 (N.D. Cal. Aug. 2, 2024) (criticizing GT's counsel for lack of "a meaningful effort to schedule and complete depositions" where counsel "avoided making service by electronic means, as the parties had done throughout the case" and "did not coordinate with Plaintiffs' counsel prior to issuing the deposition notices"); *Hawkins v. Kroger Co.*, No. 15-cv-2320-JM(AHG), 2020 WL 6150040, at *10 (S.D. Cal. Oct. 20, 2020) (stating "this court is highly critical of the gamesmanship and stonewalling tactics employed by Counsel, resulting in the derailing of the orderly discovery process," in analyzing GT's counsel's actions). Further, monetary sanctions alone are unlikely to deter counsel's conduct going forward because they are but "loose change" for a national law firm like Davis Wright Tremaine. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 936 (N.D. Cal. 2023). Therefore, the Court finds that monetary sanctions alone are not sufficient to deter the conduct at issue here and

that prospective sanctions are appropriate to serve the goal of deterrence. *Cf. Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 980796, at *19 (N.D. Cal. Mar. 31, 2025) (issuing CLE sanctions against counsel); *Davis v. Los Angeles W. Travelodge*, No. CV-08-8279-CBM(CTx), 2010 WL 623657, at *1 (C.D. Cal. Feb. 3, 2010) (issuing CLE sanctions "due to the incivility and unprofessional conduct" by counsel).

Accordingly, the Court **GRANTS** the Non-Parties' request for prospective sanctions. The Court **ORDERS** Attorney Harper and Attorney Elie-Meyers to each complete at least two hours of in-person, California bar-approved CLE classes on Federal Court Litigation (one hour of which shall include a Legal Ethics component or credit), by no later than June 30, 2027, and each file with the Court a certification, under oath, that each has completed such CLE by the deadline. These CLE hours shall be in addition to any CLE hours that Harper and Elie-Meyers must complete to satisfy other requirements.

### 2.        Monetary Sanctions

The Non-Parties request the Court award monetary sanctions in the form of compensatory fees and "order supplemental briefing on the appropriate amount." Mot. at 22:16–24:27. GT opposes sanctions but states that per "standard practice in the Ninth Circuit," GT will "provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs, as necessary." Opp. at 24 n.7 (cleaned up).

Both Rule 45 and Rule 26 permit an award of attorneys' fees and expenses as a sanction for misconduct. *See Mount Hope*, 705 F.3d at 425 (explaining "[p]ayment of opposing counsel's attorneys' fees is one form of permissible sanction" under Rule 45); *Li*, 2025 WL 2162949, at *7 (explaining that under Rule 26, "[t]he sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation").

Here, the Court concludes that monetary sanctions are appropriate. The parties dispute to what extent fees may be awarded. The Non-Parties request an award for attorneys' fees incurred "in responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions." Mot. at 23:17–24:27. GT argues that under Rule 45, courts may only award sanctions for costs incurred in complying with a subpoena. Opp. at 24:25–25:11. The Non-

Parties respond that Rule 45 permits an award of costs beyond those associated with compliance where a party issues a third-party subpoena for an improper purpose or in a manner inconsistent with law. Reply at 11:3–18. Under the facts of this matter, the Non-Parties have the better argument. GT issued the Second Subpoena on February 4, 2026; the Non-Parties attempted to narrow the scope of the Subpoena and continue its compliance date during the call on February 9, 2026, but GT refused; the Non-Parties filed a motion to quash and shorten time on February 11, 2026; GT notified the Non-Parties that it was withdrawing the Subpoena on February 18, 2026, and withdrew the Subpoena on February 19, 2026; and the Non-Parties filed their Motion for Sanctions on February 20, 2026. *See* Krivoshey Decl. ¶¶ 29–40, 48, Exs. B, F; ECF Nos. 1, 2, 6, 9. Because GT did not withdraw the improper Second Subpoena until *after* the Non-Parties filed their motion to quash, GT's conduct caused the Non-Parties to incur fees for their motion to quash (and related motion to shorten time) and motion for sanctions. *Cf. Hill v. Robert's Am. Gourmet Food, LLC*, No. C-13-80166-MISC-JST(EDL), 2013 WL 5118943, at *4 (N.D. Cal. Sept. 13, 2013) (granting sanctions under Rule 45 and explaining "because of the timing of Plaintiff's offer [to not enforce the subpoena], two hours before the filing of the motion [to quash], [the non-party] could not reasonably avoid incurring the fees associated with drafting the opening motion to quash and motion for sanctions and filing the motions") (alterations added); *see also Duong*, 2020 WL 2041939, at *5 ("Sanctions are properly imposed where the party issuing an improper subpoena refuses to withdraw it, requiring the nonparty served with the subpoena to institute a motion to quash."). To that end, GT's argument that sanctions are not warranted because GT withdrew the Second Subpoena before the compliance date fails. Opp. at 16:9–18:7; *see* Mot. at 21:9–22:4. GT's delay in withdrawing the Second Subpoena needlessly increased the Non-Parties' costs. *Cf. Beaver*, 2016 WL 7212308, at *3 (awarding attorneys' fees where defendants "needlessly multiplied [non-party's] costs" by withdrawing motion to compel compliance with improper subpoena after non-party incurred costs opposing motion to compel).

Further, GT does not respond to the Non-Parties' request for monetary sanctions under Rule 26. *See* Opp. at 24:15–25:21; *Williams*, 2020 WL 13832893, at *2 (awarding sanctions under Rule 26 for attorneys' fees incurred in filing motion for sanctions). Therefore, the Court

22

finds that sanctions are appropriate for the Non-Parties' attorneys' fees and costs incurred in responding to the Second Subpoena, moving to quash and shorten time for the Second Subpoena, and moving for sanctions and replying to GT's Opposition to the motion for sanctions.

Accordingly, the Court **GRANTS** the Non-Parties' request for monetary sanctions in the form of attorneys' fees and expenses.  The Court **ORDERS** the Non-Parties to file a supplemental brief detailing the reasonable fees so incurred, along with a proposed order, no later than July 9, 2026.

### V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Non-Parties' Motion for Sanctions. The Court **SANCTIONS** Joseph Elie-Meyers under Rule 45 and Jacob Harper under Rules 45 and 26.  The Non-Parties shall submit a supplemental brief in accordance with this Order by July 9, 2026.  The sanctioned attorneys' response, if any, shall be filed by July 23, 2026.

**IT IS SO ORDERED.**

Dated: June 18, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

23