ROSING POTT & STROHBEHN
Heather Rosing (SBN 183986)
  *hrosing@rosinglaw.com*
Wener Vieux (SBN 348047)
*Pending admission to the Northern District*
  *wvieux@rosinglaw.com*
770 First Avenue, Suite 200
San Diego, California 92101
Telephone: (619) 231-0303

*Attorneys for Jacob M. Harper and*
*Joseph Elie-Meyers*

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
  *jacobharper@dwt.com*
Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
Peter K. Bae (SBN 329158)
  *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>Defendant. | Case No. 3:26-mc-80036-TSH<br><br>(Case No. 2:19-cv-10920-FMO-DSR Pending in the Central District of California)<br><br>**DECLARATION OF JACOB M. HARPER IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>*[Motion for Relief From Nondispositive Pretrial Order; Declaration of Joseph Elie-Meyers; and [Proposed] Order Filed Concurrently]* |

## DECLARATION OF JACOB M. HARPER

I, Jacob M. Harper, declare and state as follows:

1.     I am a member in good standing of the bar of the state of California and a partner at the law firm of Davis Wright Tremaine LLP.  I represent Defendant GT's Living Foods, LLC (GT's) in the above-referenced matter and am lead defense counsel.  I have been counsel of record in *Patel v. GT's Living Foods, LLC*, No. 2:19-cv-10920-FMO-DSR (C.D. Cal.) (formerly captioned *Sharpe v. GT's Living Foods, LLC*) (this Action) since August 7, 2024.  I make this declaration in support of the concurrently-filed Motion for Relief From Nondispositive Pretrial Order of Magistrate Judge (Motion for Relief), which sets forth the erroneous findings and holdings contrary to law made in the June 18, 2026 Order (Order); and based on my understandings, belief, and knowledge based on my review of the case, files, and experience in this litigation.

2.     We issued the subpoenas that are the subject of the Magistrate Judge's Order and the Motion for Relief to address key questions at issue in the underlying class action (including the class counsel adequacy and conflict issues District Judge Ferdinand Olguin specifically identified as critical to the class action pursuant to Federal Rule of Civil Procedure 23(a)).

3.     We sought discovery from the parties consistent with the Court's discovery protocol pertaining to that issue (and according to Judge Olguin's guidelines and orders, which specifically defined "Plaintiffs" to include Class Counsel, including former class counsel previously at Bursor & Fisher who later moved to Smith Krivoshey).  Only when it became clear that Plaintiffs and Class Counsel would not or could not provide further information, did we issue tailored subpoenas to the former class counsel themselves.  And, when those counsel provided satisfactory declarations that answered our questions, we withdrew subpoenas.

4.     As detailed below, I offer the following timeline and factual material to demonstrate the good cause, proper purposes, proper justification, consistency with the law, and lack of undue burden for serving the subpoenas—all of which support a reversal of the order of sanctions based on their issuance.

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

# I.   TIMELINE

5.   Below I provide the relevant procedural and factual background for those Objections, as also discussed in the Objections brief.

**A.   The Court's Class Certification Order Requires the "Parties Shall" Address Adequacy of Counsel, and Defines "Plaintiffs" to Include Former Class Counsel.**

6.   This Action was originally filed in the Central District of California (United States District Judge Ferdinand Olguin presiding) by Bursor & Fisher P.A. in December 2019, according to court records, with attorney Yeremey Krivoshey named as lead counsel (and I understand Mr. Krivoshey was an attorney at Bursor & Fisher until sometime around February 2024, when he started his own firm, but remained counsel of record in this Action). The complaint also lists Jeff Westerman as counsel for plaintiffs, and Mr. Westerman remains counsel of record today. A true and correct copy of the Docket entries for *Patel v. GT's Living Foods, LLC*, No. 2:19-cv-10920-FMO-DSR (C.D. Cal.) is attached hereto as **Exhibit 2**, sometimes called below "*Patel* Dkt." A true and correct copy of the original complaint is attached hereto as **Exhibit 3**.

7.   In the original operative complaint, the four plaintiffs alleged they were misled by the label on GT's Living Foods, LLC's (GT's) kombucha products because it allegedly (a) contained more alcohol than disclosed and required a surgeon general's warning, and (b) understated the sugar content in the nutrition panel. They purported to sue on behalf of all customers in the United States who purchased the kombucha products on or after February 28, 2017. At the time the case was filed, Mr. Krivoshey was an attorney at Bursor & Fisher P.A. (Bursor); in or around February 2024, I understand that he left Bursor and started his own firm, Smith Krivoshey, PC (Smith Krivoshey), but remained lead counsel of record (so both Bursor and Smith Krivoshey were then counsel of record).

8.   In August 2021, Plaintiffs filed their Motion for Class Certification, according to Court records. (See Dkt. 99.)

9.   On June 21, 2024, District Judge Olguin issued an Order denying the motion for class certification without prejudice. A true and correct copy of the June 21, 2024 Order on the Motion for Class Certification in this Action is attached hereto as **Exhibit 1**. The Order sets forth

a number of issues guiding litigation of the underlying case since then, including the basis for the subpoenas at issue here:

a.      According to the June 21 Order, the Court denied the Motion based on its "concerns" that named plaintiffs and class counsel, Bursor, could not "adequately represent the class in this case."  In explaining its adequacy holding, the Court specifically used the term "plaintiffs" to refer to counsel, Bursor:  "Although the named plaintiffs … appear to be inadequate class representatives, … the majority of the court's concerns relate to counsel.  **Thus, the court's reference to 'plaintiffs' throughout this Order is generally intended to refer to class counsel, specifically Bursor.**" Exhibit 1 at 2 n.3 (emphasis added).

b.      The Court specifically discussed that Bursor, "including Yeremey Krivoshey," had filed a prior action, *Retta v. Millenium Prods., Inc.*, No. 15-1801 (C.D. Cal.) (the *Retta* Action), that asserted the same alcohol and sugar allegations against GT's for the same kombucha products, asserted the same claims, and obtained a favorable settlement, with both significant monetary and injunctive relief.  *Id.* at 1–2.  The settlement was approved on August 22, 2017, and for injunctive relief, the parties (1) specifically designed an updated product label for the kombucha, which Bursor, including Mr. Krivoshey, had represented to the Court sufficiently informed consumers of the product's alcohol content; and (2) agreed to periodic sugar and alcohol testing pursuant to a specified testing regime.  *Id.* at 2–3.

c.      Judge Olguin found that in litigating this Action, Bursor, including Mr. Krivoshey, appeared to take positions contrary to their representations to the Court in the *Retta* Action, as they challenged the exact label design they argued was sufficient in *Retta*, as well as the testing regime they agreed was sufficient in *Retta*:

> In seeking approval of the settlement, plaintiffs made several representations to the Retta Court that not only appear to undermine the instant action but also call into question the ability of Bursor to "fairly and adequately represent the interests of the class[,]" see Fed. R. Civ. P. 23(g)(B), i.e., to vigorously and effectively litigate the present action. For example, in Retta, Bursor touted the settlement's "expansive injunctive relief," which included "a warning on its labels that 'the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies,

3

sensitivities or religious beliefs[.]" … Indeed, a copy of the alcohol warning label that is the subject of this lawsuit was submitted as part of the settlement approval process in the Retta Action. … Yet, in this case, plaintiffs claim that this alcohol warning label is inadequate. … As defendant notes, plaintiffs "are collaterally attacking the injunctive relief from a class settlement that their counsel negotiated and obtained on their behalf." … In other words, plaintiffs are challenging the alcohol warning label they negotiated in Retta.

Ex. 1 at 3–6 (citations omitted for brevity).

d.      The Court also explained it was denying the motion without prejudice, but explicitly ordered that any renewed motion for class certification must address its list of topics, including "the parties shall: . . . (3) address whether plaintiffs and class counsel, including Bursor & Fisher, are adequate representatives and class counsel." *Id.* at p. 6.

10.      While the motion for class certification had been pending (i.e., before the Court issued its Order on class certification), court records show Mr. Krivoshey filed a third putative class action against GT's (and its owner George Thomas "GT" Dave) again asserting the same allegations and claims as in this Action and the *Retta* Action.  Compl., *Mukadam et al. v. Dave et al.*, No. 2:23-cv-10514, Dkt. No. 1 (C.D. Cal. Dec. 15, 2023).  After I conferred with Mr. Krivoshey on GT's anticipated motions to dismiss and to disqualify counsel (based on the same conflicts that were later raised by Judge Olguin in the class certification order), Mr. Krivoshey voluntarily dismissed the action. *Id.*, *Mukadam* Dkt. 20.

**B.      New Counsel Substitutes in and Seeks Leave to Amend Complaint to Address "Counsel's Ability to Adequately Represent the Class in Light of that Counsel's Involvement in the Previous Action"**

11.      On July 18–22, 2024, attorneys from Dovel & Luner LLP filed notices of appearance on behalf of plaintiffs.  (*Patel* Dkts. 130, 131, 134.)  True and correct copies of these notices of appearance are attached as **Exhibits 4** through **6**.

12.      Bursor and Smith Krivoshey then appeared to seek formal withdrawal, which took them several additional weeks.  Three of Mr. Krivoshey's requests for withdrawal were fully executed by August 2, 2024, but were not filed until August 12, 2024 and August 13, 2024.

4

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

(*Patel* Dkts. 136, 137, 152, 155.)  On August 9, 2024, plaintiffs filed a Joint Stipulation in which their counsel represented that "former counsel (Bursor & Fischer, P.A. and Smith Krivoshey, PC) has begun to withdraw from this case" and that "new counsel (Dovel & Luner, LLP) has only recently substituted into this case and received former counsel's files[.]"  (*Patel* Dkt. 151).  A true and correct copy of this August 9, 2024, Joint Stipulation is attached as **Exhibit 7**.  Bursor and Smith Krivoshey completed filing formal requests to withdraw the four plaintiffs on August 13, 2024; the Court approved the requests the same or the next day.

13.    Before Bursor and Smith Krivoshey completed formal withdrawal, on August 7, 2024, plaintiffs filed a Motion for Leave to File Second Amended Complaint to add three new named plaintiffs.  (*Patel* Dkt. 150.)  A true and correct copy of this Motion for Leave to File Second Amended Complaint is attached as **Exhibit 8**.  Replacement plaintiffs' counsel (Dovel & Luner) reiterated the Court's concern with class certification as relating to the named plaintiffs and former counsel's involvement in the case:

> The Court expressed concern over Plaintiffs' then-current (now-former) counsel's ability to adequately represent the class in light of that counsel's involvement in a previous class action—*Retta v. Millennium Prods., Inc.*, Case No. 15-CV-1801 (PSG) (C.D. Cal.)—against the same defendant. Dkt. #129 at 1-2. Although the Court made clear that "the majority of [its] concerns relate[d] to counsel," the Court also questioned whether the named plaintiffs would be adequate class representatives because, as a result of also being class members in the Retta action, they "would be subject to unique defenses." *Id.* at 2 n.3.

14.    On December 17, 2024, the Court granted plaintiff's Motion for Leave to file the Second Amended Complaint, and ordered that "The parties shall, no later than December 20, 2024, file a proposed schedule, including with respect to the limited reopening of discovery." (*Patel* Dkt. 167.)

15.    On January 16, 2025, GT's filed a Motion to Dismiss the Second Amended Complaint, which sought to excise the original plaintiffs, as they were members of the *Retta* class who were represented by Mr. Krivoshey.  (*Patel* Dkt. 171.)

16.    On September 30, 2025, the Court granted GT's Motion to Dismiss in part, and struck the prior class members (who were represented by Mr. Krivoshey) from the Second

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

Amended Complaint. (*Patel* Dkt. 178.) A true and correct copy of the September 30, 2025 Order is attached as **Exhibit 9**. In the Order, the Court made several key findings:

a. First, the Court reemphasized the ongoing relevance of counsel and plaintiff adequacy issues, explaining that:

> In June 2024, the court denied plaintiffs' motion for class certification without prejudice primarily due to procedural issues. (See Dkt. 129, Court's Order of June 21, 2024, at 1). But the court also expressed concern regarding the adequacy of named plaintiffs and proposed class counsel given the settlement in a previously filed class action against defendant – Retta v. Millennium Products, Inc. , CV 15-1801 PSG ("Retta Action"). (See id. at 2-5). On August 22, 2017, Judge Gutierrez (Ret.) granted final approval of the settlement in that case. See Retta v. Millennium Products, Inc. , 2017 WL 5479637, *10 (C.D. Cal. 2017).
>
> In its order denying class certification, the court explained that the Retta Action involved the same allegations regarding the alcohol and sugar levels in defendant's kombucha, asserted the same claims for relief under California and New York law, and was filed by the same attorneys that filed the instant action, i.e. , Bursor & Fisher ("Bursor"). (See Dkt. 129, Court's Order of June 21, 2024, at 2). The court noted that Bursor had made representations to the Retta court regarding the settlement terms that appeared to undermine the instant action and Bursor's ability to "'fairly and adequately represent the interests of the class[,]' [] i.e. , to vigorously and effectively litigate the present action." (See id. ) (quoting Fed. R. Civ. P. 23(g)(B)). In response to court's order denying class certification, Bursor withdrew and new counsel appeared. (See Dkt. 130, 131, 134, 141-144).

Ex. 9 at 2.

b. Second, the Court found the initial plaintiffs (represented by Mr. Krivoshey) were covered by the *Retta* settlement, and thus could not remain in this Action.

> Defendant contends that the court lacks jurisdiction over the initial plaintiffs – Sharpe, Weiler, Leder, and DiGennaro (collectively "Sharpe plaintiffs") – because they were Retta class members and are therefore covered by the settlement in that case. (See Dkt. 171, Motion at 7-11). The court agrees. The Retta court "retain[ed] exclusive jurisdiction over Defendant[] and the Settlement Class Members for all matters relating to this litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this Order." Retta , 2017 WL 5479637, at *19. In denying plaintiffs' motion for class certification, this court found that the Sharpe "plaintiffs are challenging the [same] alcohol warning label [that their prior counsel, Bursor,] . . . negotiated in Retta." (See Dkt. 129, Court's Order of June 21, 2024, at 3). Indeed, the

6

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

court noted that the <u>Retta</u> plaintiffs "touted the settlement's 'expansive injunctive relief,' which included 'a warning on its labels that 'the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]'" (<u>Id.</u> at 2-3). In other words, it appears that the Sharpe plaintiffs are improperly seeking to enforce or challenge the <u>Retta</u> Settlement. (<u>See</u> Dkt. 129, Court's Order of June 21, 2024, at 3) (finding that the Sharpe "plaintiffs are challenging the alcohol warning label they negotiated in <u>Retta</u>"). Thus, for the reasons set forth in the Court's Order of June 21, 2024 (Dkt. 129), the court finds that the Sharpe plaintiffs should be dismissed from this action.

Ex. 9 at 4.

c.    Third, the court noted that the plaintiffs themselves (similar to prior counsel) would have been disqualified due to their involvement in the *Retta* Action because they would be subject to unique defenses:

[E]ven if the court declined to dismiss the Sharpe plaintiffs, the court would be unable to approve them as class representatives for the reasons set forth in the court's order denying class certification, <u>i.e.</u>, they would be inadequate under Rule 23(a)(3)-(4) as they would be subject to unique defenses. (<u>See</u> Dkt. 129, Court's Order of June 21, 2024, at 2 & n. 3)

Ex. 9 at 4 n.4.

**C.    The Court Orders Further Limited Discovery, and Both GT's and Plaintiffs Pursue Discovery.**

17.    On October 23, 2025, the Court issued an order reopening discovery for "Any remaining discovery (related solely to the newly added named plaintiffs)," for which the eventual deadline (following several stipulations extending the deadline) was March 2026.  (*Patel* Dkts. 180; 185.)  A copy of the October 23, 2025 Order is attached as **Exhibit 10**.  A true and correct copy of the December 23, 2025 Order granting the parties' stipulation to extend the discovery deadline to March 5, 2026 is attached as **Exhibit 11.**

18.    I (and I understand other counsel) interpreted "related solely to the newly added named plaintiffs" consistent with Judge Olguin's June 21, 2024, Order denying class certification, such that "plaintiffs" is "generally intended to refer to class counsel, specifically Bursor," who at the time included Yeremey Krivoshey before he departed for Smith Krivoshey.  Ex. 1 at 2 n.3.

7

Thus, (a) discovery was not related to defendants, and (b) issues regarding adequacy of class counsel would continue to relate.

19.    With discovery reopened for a limited purpose, the parties served discovery requests. Because GT had interest in ensuring that the class was properly certified, it sought information relating to Bursor and Smith Krivoshey's involvement in the litigation or whether they retained a financial interest in this Action.  Their continued involvement could render counsel inadequate under Federal Rule of Civil Procedure 23(a) (thereby precluding class certification)—the same issue that resulted in Judge Olguin denying class certification during plaintiffs' previous attempt.

20.    GT's and Counsel immediately began serving discovery in furtherance of the issues remaining for class certification, including the newly added plaintiffs and the adequacy of counsel, as I describe below.

21.    On November 13, 2025, my office served discovery requests to Plaintiffs Amit Patel, Christopher Nunez, and Lauren Schmidt.  True and correct copies of excerpts of GT's Requests for Production served on plaintiffs on November 13, 2025 are attached hereto as **Exhibit 12** (Schmidt), **Exhibit 13** (Nunez), and **Exhibit 14** (Patel).  This included Requests for Production, which defined "Plaintiffs" to include their "agents" and "attorneys," and sought, for example:

- **Request for Production No. 15**: All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent … and they intend to prosecute this action vigorously."

- **Request for Production No. 16**: All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

- **Request for Production No. 17**: All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "[t]he

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

- **Request for Production No. 22**: All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

  i. the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

  ii. who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

  iii. whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

  iv. the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

22. On December 15, 2025, Plaintiffs served responses, which included a limited objection to the term "plaintiffs"— Plaintiff objects to the definition of the terms "PLAINTIFF," "YOU," and "YOUR" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession, custody, or control." (*Plaintiffs did not object to the inclusion of "agents" or "attorneys" as part of the definition of "Plaintiffs."*) True and correct copies of excerpts of Plaintiffs' December 14, 2025, Responses & Objections to GT's Requests for Production are attached hereto as **Exhibit 15** (Schmidt), **Exhibit 16** (Nunez), and **Exhibit 17** (Patel). True and correct copies of excerpts plaintiff's December 14, 2025, Responses & Objections to GT's Special Interrogatories are attached hereto as **Exhibit 18** (Schmidt), **Exhibit 19** (Nunez), and **Exhibit 20** (Patel).

a. For Requests for Production No. 15, 16, and 17 (seeking documents concerning plaintiffs' allegations that their counsel are adequate and do not have conflicts of interest), plaintiffs responded as excerpted below. They did not object that these records were outside the Court-ordered limited scope of discovery, but rather agreed to produce them.

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

> Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search … , if any.  Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

b.   For Request for Production No. 22 (seeking all documents relating to agreements between plaintiffs' attorneys, including agreements concerning whether there will be any fee sharing), plaintiffs again did not object that this was outside the limited scope of re-opened discovery.  Rather, they described and agreed to produce their counsel's joint prosecution agreement with former class counsel, but refused to produce responsive communications (as privileged):

> Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around August 2, 2024. Plaintiff's retention agreement with her lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning Sharpe Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel & Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.

Ex. 15 at 22–23 (Schmidt).

23.   Plaintiffs' Responses & Objections to GT's Special Interrogatories also stated that each had entered into retention agreements with Dovel after the July 9, 2024 joint prosecution agreement between Dovel & Luner LLP, Smith Krivoshey, Bursor & Fisher, P.A., Zimmerman Reed LLP, and Westerman Law Corp. described below.  See Ex. 18 at 24–25, Ex. 19 at 26–27, Ex. 20 at 26.

24.   On December 18, 2025, the Parties jointly stipulated to extend the discovery cutoff to March 5, 2026, to allow for Plaintiffs' depositions and to allow sufficient time to raise any

remaining discovery disputes with the Court. Dkt. 184. The Court granted the request. Dkt. 185.

25. On December 22, 2025, despite representations to Judge Olguin that plaintiffs would take no further discovery on defendants (*see* Plaintiffs' Motion for Leave to File Second Amended Complaint, *Patel* Dkt. 150, Ex. 9), Plaintiffs also served an interrogatory and requests for production on GT's, which sought information and records regarding the named plaintiffs and their involvement in the *Retta* Action (if any). True and correct copies of Plaintiffs' discovery requests are attached as **Exhibit 21**.

**D.    The Joint Prosecution Agreements Were Missing Client Consent Approvals, and Plaintiffs Refused to Produce Any Other Discovery Regarding the Joint Prosecution or Retention Agreements.**

26. On December 23, 2025, Plaintiffs made a document production, which included:

a.    the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (PLAINTIFFS000042–46); and

b.    the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (PLAINTIFFS000047–50) (together, the "JP Agreements"). A true and correct copy of the document plaintiffs produced titled "▮▮▮▮▮▮▮▮▮▮▮▮▮" bearing bates numbers PLAINTIFFS000042–46 is attached as **Exhibit 22.** A true and correct copy of the document plaintiffs produced titled "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" bearing bates numbers PLAINTIFFS000047–50 is attached as **Exhibit 23.** Plaintiffs did not produce any other agreements among counsel besides these two agreements.

27. These JP Agreements ▮▮▮▮▮▮▮▮▮ while all counsel remained counsel of record (i.e., before any had withdrawn), but neither agreement is signed by any plaintiff, ▮▮▮▮▮▮▮▮▮▮▮▮▮.

28. Plaintiffs did not produce any version of these JP Agreements (or any other joint prosecution agreements) that they had signed or approved. Plaintiffs also refused to produce their retention agreements.

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

a. In the ███████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████ ███████████████████████. Exhibit 22 at 1.

i. It specified that ██████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ *Id.* at 1. ███████ ████████████████████████████. *Id.*

ii. The First JPA also contemplates that ████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ *Id.* at 1–2.

iii. Further, ████████████████████████████ ████████████████████████████████ ███████████████████ *Id.* at 3.

iv. The ████████████████████████████████ ████████████████████████████████████ ██████████ *Id.* at 4.

b. About two weeks later, counsel appear to have signed the second agreement, titled ████████████████████████ (the Second JPA). Exhibit 23. The Second JPA contemplated that ██████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████, as detailed below. *Id.* at 1.

i. The Second JPA specifically provided that ██████████████████ ████████████████████████████████████████ *Id.* at 1



12

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

(emphasis added). ████████████████████████████ ████████████████████████████████████ ████████ *Id.* at 4. The Second JPA, however, has no client signatures.

    ii. I understand that neither plaintiffs nor counsel have ever produced a signed version of this Second JPA. And, as I noted above (and as discussed more below), plaintiffs and their counsel refused to provide any discovery about their retention agreement or any communications between counsel about the JPA. It was unclear to me whether this Second JPA was ever signed by plaintiffs as required, and thus was ever in effect, as opposed to the First JPA or some other written or verbal arrangement.

    iii. As for financial recovery, the Second JPA provides that, ████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ ████████████████████████ Exhibit 23 at 1–2. In other words, the terms prevent Dovel from objecting to Bursor and Smith Krivoshey's efforts to seek payment from the "████████," even if it conflicts with the class's interests or "████████ ████" *Id.* This term thus generates conflict of interest issues that undermine counsel's adequacy for class certification, and in our view GT's was entitled to discovery on this term. (As noted below, GT's did ultimately raise this argument in opposing the renewed Motion for Class Certification.)

    iv. The Second JPA also purports to ████████████████████ ████████████████████████████████ ████████████████████

29. On January 8, 2026, I took the deposition of plaintiff Christopher Nunez. A true and correct copy of excerpts of the transcript of Mr. Nunez's January 8, 2026, deposition in this Action is attached as **Exhibit 24**. I sought to get his testimony regarding the JP Agreements and his retention agreement with counsel. He testified as follows:

    a. He recognized the First JPA and "believe[d]" he had signed a copy of the First

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

JPA. Exhibit 24 at 87:16–88:9, 89:10–15 (discussing deposition Exhibit 11, which is the First JPA).

        b.   He understood the fee allocations for counsel in the First JPA were still in place. *Id.* at 88:21–89:9. He did not recall any reviewing or approving any other fee allocation. *Id.* at 90:1–20. He knew he was a "part" of the agreement but was "not entirely certain how [he] fit[s] into which category." *Id.* at 88:21–89:9.

        c.   He also reviewed the Second JPA (labeled as Exhibit 12 at the deposition), testified he "ha[d] reason to believe" he signed the Second JPA, but he did not believe the Second JPA changed the fee allocations from the First JPA. *Id.* at 92:17–94:3, 95:3–96:8. When I asked questions about how the JP Agreements worked, counsel objected that I was seeking a "legal conclusion" and calling for "speculation." *Id.* at 90:1–20, 92:17–94:3, 95:3–96:8.

        d.   He confirmed he had a written retention agreement with counsel for this Action, but could not remember which firm it was with, which firm or individuals he spoke with, or the terms of the agreement. *Id.* at 84:25–86:5. He also testified that he is unfamiliar with former counsel Smith Krivoshey. *Id*. at 80:24–81:5, 87:7–8. He was also unfamiliar with most of the individual attorneys from Dovel representing him. *Id.* at 86:20–87:10.

30.    Mr. Patel's deposition testimony, in my view, raised further questions about the JP Agreements—he suggested signed copies of the agreements existed but were not produced, and possibly that the fee allocations in the First JPA were being treated as in effect.

31.    On January 14, 2026, my colleague Joseph Elie-Meyers deposed plaintiff Lauren Schmidt. A true and correct copy of excerpts of the transcript of Ms. Schmidt's January 14, 2026 deposition in this Action is attached as **Exhibit 25**. Mr. Elie-Meyers questioned her regarding the JP Agreements and any retention agreements with counsel. She testified as follows:

        a.   She recognized the First JPA but did "not recall" if she had signed it. Exhibit 26 at 63:1–63:16, 66:14–67:8. When Mr. Elie-Meyers asked how she understood the First JPA to operate, she said she did "not know" and her counsel objected that it "calls for a legal conclusion." *Id.* at 66:4–13.

        b.   She did not appear to recognize the Second JPA, and said she did "not recall"

14

if she signed it. *Id.* at 67:9–68:15. She did not know if the Second JPA superseded or canceled the First JPA. *Id.* at 68:16–69:10. When asked questions about how the JP Agreements worked, counsel objected that the question was seeking a "legal conclusion." *Id.*

c.     She was unfamiliar with former counsel Smith Krivoshey. *Id*. at 63:24–64:4. She testified that she had a "high level" understanding of the relationship between Dovel and prior counsel, but noted she is "not an attorney." *Id.* at 69:16–70:1.

d.     She signed a retention agreement for this Action. *Id.* at 74:22–25.

32.     Ms. Schmidt's testimony also, in our view, raised more questions than answers— apparently there is an unproduced First JPA with Ms. Schmidt's signature, but she seemed unaware that any Second JPA existed and could not recall signing it. Nor could she shed light on her counsel's current fee allocation or the import of these agreements.

33.     On January 16, 2026, I took the deposition of plaintiff Amit Patel in this Action. A true and correct copy of excerpts of the transcript of Mr. Patel's January 16, 2026 deposition in this Action is attached as **Exhibit 26**. I sought to get his testimony regarding the JP Agreements and his retention agreement with counsel. He testified as follows:

a.     He recognized the First JPA but did not "particularly recall" if he had signed it. Exhibit 26 at 97:16–98:17 (discussing deposition Exhibit 4, which is the First JPA).

b.     He agreed the First JPA appeared to provide for different attorneys' fees allocations for all counsel, and believed those allocations were still in place. *Id.* at 102:12–23. He also noted, however, that he "is not particularly reviewing any of these documents in detail" and does not pay "particular attention." *Id.* at 102:19–103:7.

c.     He "believed" he signed the Second JPA. *Id.* at 105:25–106:15 (discussing Exhibit 5, which is the Second JPA) When I asked why he did not produce that document, his counsel objected that the question was "not appropriate for this deposition." *Id.* at 106:13–20. Mr. Patel ultimately testified that he did not produce a signed version of the Second JPA because "[i]t didn't show up in the searches that" he ran for document collection. *Id.* at 106:4–107:2.

d.     He confirmed he had at least one retention agreement with counsel for this Action, but did not know how many retention agreements he had entered. *Id.* at 107:4–21.

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

e.   He was unfamiliar with former counsel Smith Krivoshey. *Id.* at 95:18–21.  He was only familiar with two of the individual attorneys from Dovel that represent him. *Id.* at 72:9–73:7.

34.   Mr. Patel's deposition testimony, like the other plaintiffs, further emphasized the lack of information regarding the JP Agreements.  Mr. Patel's testimony indicated the First JPA remained operative, but he may have signed the Second JPA. Plaintiff's counsel objected to GT's efforts to understand why no fully signed JP Agreements had not been produced.

35.   While we were hopeful we could obtain more relevant discovery regarding the JP Agreements and plaintiffs' retention agreements at their depositions, they proved insufficient. Plaintiffs' testimony failed to fill the gaps left by their deficient written discovery responses and document production.

**E.   After Exhausting Party Discovery, and with the Discovery Cutoff Approaching, GT's Sought to Obtain Discovery From Former and Current Counsel.**

36.   As the discovery cutoff was approaching, and we had hit a dead end with plaintiffs' knowledge and discovery, we moved forward with seeking discovery directly from current counsel and, if necessary, former counsel.  Further, former counsel may have records regarding joint agreements and their involvement in the Action that current counsel or plaintiffs may not have.

37.   On January 29, 2026, GT's served plaintiffs with notices of subpoenas for deposition and documents to be served on all the third-parties who were serving or previously served as class counsel to the named Plaintiffs, including Dovel & Luner, Mr. Krivoshey, Bursor & Fisher PA (Bursor), and Adhoot & Wolfson, PC. A true and correct copy of the notice of subpoenas is attached as **Exhibit 27A**.

38.   We sought discovery from current counsel regarding the agreements they had entered into with former counsel, the nature of any ongoing working relationship, and any continuing financial arrangements.  We separately sought discovery from former counsel because only they could testify regarding their own continuing involvement in the litigation, their understanding of those agreements, their ongoing financial interests, and any continuing role they

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

were playing in the prosecution of the case. We served all subpoena recipients at approximately the same time because discovery was nearing its close and each possessed potentially unique, non-duplicative information relevant to the adequacy-of-counsel issues raised by Judge Olguin.

39.     As detailed in the concurrently-filed Declaration of Joseph Elie-Meyers, after serving the new plaintiffs with notice, numerous attempts were made to serve Mr. Krivoshey with a deposition and document subpoena. The subpoena was also amended, which version was ultimately served on Mr. Krivoshey on February 4, with a later deposition date of February 18, 2026. A true and correct copy of the amended subpoena served on February 4, along with the proof of service, is attached as **Exhibit 27B.**

40.     On February 9 and 10, 2026, Mr. Elie-Meyers conferred with Mr. Krivoshey and Joel Smith regarding the subpoena. Mr. Elie-Meyers details this and other conferral efforts with Messrs. Krivoshey and Smith in his concurrently-filed declaration.

41.     On February 11, 2026, Mr. Krivoshey filed a motion to quash the deposition subpoena in this ancillary action, as well as a Motion to Shorten Time on the motion to quash. A true and correct copy of the Motion to Quash is attached as **Exhibit 28**, and a true and correct copy of the Motion to Shorten Time is attached as **Exhibit 29**.

42.     Mr. Elie-Meyers also conducted several conferrals with the other counsel on which GT's had served the subpoenas—including with Bursor on February 9 and 17, 2026, and with Dovel on February 4 and 13, 2026—and through those conferral efforts, was able to resolve the subpoenas as to those other counsel and reach an agreement. I understand (as detailed in Mr. Elie-Meyers's declaration) that counsel agreed to provide the information GT's required, i.e., regarding former counsel's financial interests and continued involvement in the Action, through declarations. True and correct copies of those declarations are attached as **Exhibit 30**. (Plaintiffs even filed their counsel's declaration in support of their Motion for Class Certification, as I note below.)

43.     On February 12, 2026, the Court denied the motion to shorten time, set a hearing for the Motion to Quash for March 19, 2026, and ordered that the deposition "shall not proceed pending the Court's resolution of the motion to quash." A true and correct copy of this February

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

12, 2026 Order is attached hereto as **Exhibit 31**.

44.     With the Motion to Quash, Mr. Krivoshey filed a declaration that provided the information GT's primarily sought in its subpoena—whether he remained involved in the Action or retained any financial interest in the Action.  Attached as **Exhibit 32** is the Declaration of Yeremey Krivoshey filed in support of the Motion to Quash.  It is similar to the declarations GT's obtained in lieu of the subpoenaed documents and testimony from the other subpoenaed counsel.

45.     Thus, on February 17, 2026, I understand Mr. Elie-Meyers emailed Mr. Krivoshey to advise GT's was withdrawing the subpoena.  GT's also filed a formal notice of withdrawal on February 19, 2026.  Attached as **Exhibit 33** is a true and correct copy of GT's February 19, 2026 Notice of Withdrawal of Subpoena.  The same day, the Court held that the Motion to Quash was moot.

46.     The next day, on February 20, 2026, Mr. Krivoshey filed the Motion for Sanctions, which noticed a hearing date of April 2, 2026.  Attached as **Exhibit 34** is a true and correct copy of that Motion for Sanctions.

47.     GT's Opposition to the Motion for Sanctions was due March 6, 2026, which it timely filed.  Attached as **Exhibit 35** is a true and correct copy of defendant GT's Living Foods LLC's opposition to Mr. Krivoshey's Motion.

48.     Attached as **Exhibit 36** is a true and correct copy of my declaration filed in support of the Opposition to Motion for Sanctions.

49.     Mr. Krivoshey filed his Reply in support of the Motion for Sanctions on March 13, 2026.  Attached as **Exhibit 37** is a true and correct copy of Mr. Krivoshey's Reply brief in support of the Motion for Sanctions.

**F.     The Parties Brief the Motion for Class Certification, Raising the Conflicts Issues First Raised by the June 21 Order and Continuing as Raised by the Joint Prosecution Agreements.**

50.     On March 20, 2026, Plaintiffs filed the renewed Motion for Class Certification, which included the Parties' Joint Brief, pursuant to Judge Olguin's relevant standing order. *Patel* Dkt. 207.  Both plaintiffs and GT's discussed the JP Agreements in their argument sections about

class counsel's adequacy under Federal Rule of Civil Procedure 23, and attached the declaration their counsel provided to GT's in lieu of responding to the subpoena. Attached as **Exhibit 38** is a true and correct copy of the Joint Brief filed on March 20, 2026.

51.     In plaintiffs' portions of the Joint Brief, plaintiffs argued:

> Neither Plaintiffs nor counsel have conflicts of interest with other class members, and they will vigorously prosecute the case. Plaintiff Decls. (Appx. 1-9) ¶ 3; Franzini Decl. (Appx. 10) ¶¶ 2-5.

> The Court previously expressed adequacy concerns about plaintiffs and counsel who were involved in the *Retta* litigation. Dkt. 129. They are no longer part of this case. This motion is brought by new plaintiffs and counsel who had nothing to do with *Retta*. *See* Dkt. 178 at 4-5 (rejecting Defendant's *Retta* arguments as to the new Plaintiffs). Prior *Retta* counsel withdrew and is no longer involved, and there is no fee-sharing agreement with prior counsel. Dkt. 141-144; Ex. 6 (Appx. 48) (2/19/26 Franzini Decl.) ¶¶ 6-7.

Ex. 38 at 5–6.

52.     In a footnote, plaintiffs addressed their JP Agreements, explaining how the two worked together, why they supported counsel's adequacy, and that prior counsel has not been involved in the litigation—which is precisely the discovery GT's sought with its subpoena. Ex. 38 at 7 n.3.

53.     In opposition, GT's argued that the Second JPA that plaintiffs contend governs actually impermissibly ties current counsel, Dovel's hands, and creates a conflict of interest because it cannot oppose former counsel's effort to obtain fees out of any class recovery. As GT's Opposition sections explained (Ex. 38 at 7–8):

> That creates divided loyalties and places them at odds with the putative class's interests, making them inadequate. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (class counsel "responsibility … does not permit even the appearance of divided loyalties of counsel*.*"); *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1167-68 & n.6 (9th Cir. 2013) (agreement created divergent potential "independent conflict of interest because of the fee-sharing agreement" among counsel).

**G.     The Magistrate Judge Grants the Motion for Sanctions.**

54.     On April 1, 2026, the Court vacated the April 2 hearing on the Motion for Sanctions. (Dkt. 19.) A true and correct copy of the April 1, 2026 Order vacating the hearing

19

date is attached as **Exhibit 39.**

55.     On June 18, 2026, the Court granted the Motion for Sanctions.  A true and correct copy of the June 18, 2026 Order is attached as **Exhibit 40.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed Thursday, July 2, 2026, at Los Angeles, California.

*/s/ Jacob M. Harper*
Jacob M. Harper

HARPER DECL. ISO MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

Present: The Honorable    Fernando M. Olguin, United States District Judge

| Vanessa Figueroa | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorney Present for Plaintiff(s):    Attorney Present for Defendant(s):

None Present    None Present

**Proceedings:    (In Chambers) Order Re: Motion for Class Certification [99]**

Having reviewed all the briefing filed with respect to plaintiffs' Motion for Class Certification (Dkt. 99, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.[1]  Although the Court's Order Re: Class Certification Motions required each issue or sub-issue raised by a party to be immediately followed by the opposing party's response, and that all evidentiary objections be made in the joint brief, (see Dkt. 26, Court's Order of March 20, 2020, at 1-3), the parties' papers did not fully comply with these requirements. (See, e.g., Dkt. 113, Joint Brief on Plaintiffs' Motion for Class Certification ("Jt. Br.") at 13-17) (addressing all Rule 23(a) requirements in one fell swoop); (Dkt. 103, Plaintiffs' Supplemental Memorandum in Support of Motion for Class Certification ("Plf. Supp. Br.") at 1-7) (challenging qualifications and reliability of defendant's experts in Supplemental Brief); (Dkt. 104, GT's Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification 2-6) (challenging plaintiffs' expert's qualifications).  Also, the Motion was filed in August, 2021, (see Dkt. 99, Motion), and since then, the Ninth Circuit has issued several class certification decisions, including Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc), that bear on the issues in this case.  Finally, this court has addressed class certification in the consumer food, beverages, and supplements context.  See Capaci v. Sports Research Corp., 2022 WL 1133818 (C.D. Cal. 2022); Lytle v. Nutramax Laboratories, Inc., 2022 WL 1600047 (C.D. Cal. 2022).  Under the circumstances, the court will deny the Motion without prejudice to plaintiffs filing a renewed motion.

In considering whether to file a renewed motion, plaintiffs should note that, in light of Retta v. Millennium Products, Inc.,[2] Case No. CV 15-1801 PSG ("Retta Action"), the court has concerns

---

[1]  Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

[2]  Defendant GT's Living Foods, LLC was named Millennium Products between 1995 and 2017.  (See Dkt. 113, Jt. Br. at 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

regarding the named plaintiffs'[3] and proposed class counsel, Bursor & Fisher, P.A.'s ("Bursor") ability to adequately represent the class in this case. The Retta Action involved the same allegations regarding the alcohol and sugar levels in defendant's kombucha,[4] asserted the same claims for relief under California and New York law, and was filed by the same attorneys as in this action, i.e., Bursor & Fisher, including Yeremey Krivoshey. (See Retta Action, Dkt. 68, Fifth Amended Complaint ("Retta 5AC") ¶¶ 5, 86-149, 159-171).[5]

On August 22, 2017, Judge Gutierrez granted final approval of the settlement in the Retta Action. See Retta, 2017 WL 5479637, at *1 & *19. In addition to monetary relief, the Retta settlement provided for injunctive relief which, among other things, required defendant to: (1) "[a]dd a warning label that 'the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[,]'" id., at *2; (Retta Action, Dkt. 103-3, Exh. 1, Stipulation of Class Action Settlement ("Retta Settlement Agreement") at ¶ 47(b)); (2) "regularly test samples from every [s]ubject [p]roduct line (at the time of bottling and the time of expiration) using a third-party laboratory[,]" (Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 47(c)); Retta, 2017 WL 5479637, at *2; (3) "test the sugar content of multiple product samples, drawn from every [s]ubject [p]roduct line, using a third-party laboratory" every three months, (Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 47(e)); Retta, 2017 WL 5479637, at *2; and (4) "adopt any new industry wide methodology for testing the alcohol content of kombucha, should one be developed." Retta, 2017 WL 5479637, at *2; (Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 47(d)).

In seeking approval of the settlement, plaintiffs made several representations to the Retta Court that not only appear to undermine the instant action but also call into question the ability of Bursor to "fairly and adequately represent the interests of the class[,]" see Fed. R. Civ. P. 23(g)(B), i.e., to vigorously and effectively litigate the present action. For example, in Retta, Bursor touted the settlement's "expansive injunctive relief," which included "a warning on its labels that 'the

---

[3] Although the named plaintiffs, who were class members in the Retta Action, (see Dkt. 113, Jt. Br. at 16) (citing responses to interrogatories); Retta v. Millennium Products, Inc. 2017 WL 5479637, *3 (C.D. Cal. 2017) (The class period in Retta was March 11, 2011 to February 26, 2017), appear to be inadequate class representatives, as they would be subject to unique defenses, the majority of the court's concerns relate to counsel. Thus, the court's reference to "plaintiffs" throughout this Order is generally intended to refer to class counsel, specifically Bursor.

[4] This action and Retta involved defendant's Enlightened and Synergy line of kombucha. (See Dkt. 29, First Amended Complaint ("FAC") at ¶ 1 n. 1); (Retta Action, Dkt. 68, 5AC at ¶ 2 n. 1). For ease, the court will refer to the products simply as kombucha or defendant's kombucha.

[5] The Retta 5AC asserted an additional claim for negligent misrepresentation. (See Retta Action, Dkt. 68, 5AC at ¶¶ 150-58).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]'" (Retta Action, Dkt. 103-1, Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement at 2); (id. at 23) (stating that the settlement "provides precisely the injunctive relief sought in the Complaint" which consists of "the addition of an alcohol warning on the labels of [] Enlightened kombucha products"); Retta, 2017 WL 5479637, at *2. Indeed, a copy of the alcohol warning label that is the subject of this lawsuit was submitted as part of the settlement approval process in the Retta Action. (See Retta Action, Dkt. 136-1, Declaration of George Thomas Dave at ¶ 3 & Exh. 1) (Enlightened Kombucha Label). Yet, in this case, plaintiffs claim that this alcohol warning label is inadequate. (See Dkt. 29, FAC at ¶¶ 1, 5, 8, 11, 14, 25, 32). As defendant notes, plaintiffs "are collaterally attacking the injunctive relief from a class settlement that their counsel negotiated and obtained on their behalf." (Dkt. 113, Jt. Br. at 15) (emphasis omitted). In other words, plaintiffs are challenging the alcohol warning label they negotiated in Retta.

In seeking to challenge the Retta alcohol warning label in this action, plaintiffs contend that they have "put forth evidence that neither they, nor any reasonable consumers, would have purchased Enlightened Kombucha had they known that doing so exposed them to criminality, and if they knew that they could not rely on Defendant's marketing and labeling of the products as non-alcoholic beverages." (Dkt. 113, Jt. Br. at 29) (citing Ex. B at ¶¶ 32, 58-59). According to plaintiffs, "[t]he unwitting consumption of alcoholic beverages is . . . obviously inherently dangerous, and can cause, inter alia, birth defects, accidents, and health complications." (Id.). But it is difficult to give much credence to such contentions since it was Bursor that negotiated and, indeed, advocated for the subject alcohol warning label during the settlement process in the Retta Action. Significantly, an objector to the Retta settlement questioned whether the settlement was fair to minors, and whether it "provide[d] adequate protections to minors going forward" because "Defendant's failure to properly label and advertise its products caused minors to purchase and consume Defendant's alcoholic beverages." (Retta Action, Dkt. 135-1, Declaration of Yeremey Krivoshey in Support of Plaintiffs' Response to Objections to Settlement ("Krivoshey Retta Decl."), Exh. 2 (Objection to Proposed Class Action Settlement ("Retta Obj.") at 2-3). In response to the objection, Bursor argued that the objector "overlooked entirely that the Settlement provides injunctive relief with respect to the alcohol claims[,]" and relied on the warning label – i.e., that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs" – it negotiated as part of the settlement and that would be included on defendant's kombucha going forward. (See Retta Action, Dkt. 135, Plaintiffs' Response to Objections to Settlement ("Retta Response") at 8). In overruling the objection, the Retta Court accepted Bursor's representations, stating that "all class members, including minors, stand to receive their fair share of the settlement and the injunctive relief will adequately ensure that consumers are informed about the alcohol content in" defendant's kombucha. Retta, 2017 WL 5479637, at *8.

Moreover, despite the allegations in Retta that defendant's kombucha continues to ferment and produce alcohol after bottling, (see, e.g., Retta Action, Dkt. 68, 5AC at ¶ 29) ("[T]he

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

Enlightened line is a 'raw' and 'unpasteurized' kombucha, necessarily meaning that the beverages continue to ferment and increase in alcohol over time, especially if left unrefrigerated for even short periods of time. Whatever changes Millennium made to its Enlightened line, if any, are ineffective at curbing the accumulation of alcohol in the products past 0.5 percent alcohol by volume through the normal and expected use of the products."), there is nothing in the Retta settlement, (see, generally, Retta Action, Dkt. 103-3, Retta Settlement Agreement), that required defendant to conduct alcohol tests at the point of sale. Instead, Bursor accepted the testing regime (and alcohol disclosure label) that it now challenges in this action.

Finally, with respect to plaintiffs' damages model, Bursor acknowledged in plaintiffs' motion for final approval that a full-refund model is "typically foreclosed" at class certification, in part because beverages provide "benefits in the form of calories, hydration, vitamins, and minerals," (Retta Action, Dkt. 117-1, Motion for Final Approval at 11) (citing In re POM Wonderful LLC, 2014 WL 1225184, *2-3 (C.D. Cal. 2014)), and conceded that defendant's kombucha "contain[s] multiple vitamins, enzymes and probiotics, and provide[s] hydration and calories." (Id.). Notwithstanding that concession, plaintiffs advance a full-refund damages model here. (See Dkt. 113, Jt. Br. at 29-36).

Plaintiffs' responses to defendant's contentions regarding the impact of the Retta Action, (see Dkt. 103, Plf. Supp. at 8-10), are largely unsatisfactory. First, whether the statements made in Retta are admissible is beside the point in addressing the adequacy of counsel. See Fed. R. Civ. P. 23(g)(1)(B) (providing that a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"). Second, plaintiffs' argument that it "never agreed that the label disclosure would be sufficient if [defendant] decided to continue selling booze to children,"[6] (Dkt. 103, Plf. Supp. at 10), is non-responsive to the issue here because the record indicates that plaintiffs agreed that the alcohol warning label they negotiated in the Retta Action would be adequate to address claims regarding the sale of defendant's kombucha to minors. As noted above, in addressing an objection that the Retta settlement failed to "provide[] adequate protections to minors going forward[,]" (Retta Action, Dkt. 135-1, Krivoshey Retta Decl, Exh. 2 (Retta Obj.) at 3), Bursor directed the court to the injunctive relief language relating to the "alcohol claims" and set out verbatim the negotiated alcohol warning language.[7]

---

[6] As noted earlier, the Retta settlement provided monetary relief by which class members could elect to receive a cash payment or a product voucher redeemable for free Enlightened Kombucha. (See Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 45). But nothing in the Retta Settlement Agreement limited the voucher option to class members 21 years of age and over. (See, generally, id. at ¶ 45(b)); (see also id. at Exh. C, Claim Form).

[7] Bursor's reliance on Slusher v. Big Lots Stores, Inc., 2018 WL 10164064 (N.D. Cal. 2018) is misplaced. In that case, the defendant argued that the doctrine of claim splitting barred a subsequently filed class action. See id. at *1-2. Significantly, Slusher involved simultaneous class actions, see id. at *1, rather than the situation here, i.e., where class counsel negotiated label

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

(Retta Action, Dkt. 135, Retta Response at 8).

Third, plaintiffs contend that they had "hoped that the new formulation" of using kiwi juice instead of cane sugar in defendant's kombucha coupled with the requirement for future testing "would have led to corrective behavior." (See Dkt. 103, Plf. Supp. at 9). Plaintiffs also contend that "no claims in Retta (of either Plaintiffs or Class Members) are being re-litigated here" because "[t]he class period in Retta ended on February 26, 2017." (Id.). Plaintiffs' contentions are unpersuasive.

As an initial matter, plaintiffs' contentions regarding the temporal scope of the class and the claims that are (or are not) being litigated in this action may be accurate as to plaintiffs' damages claims, but it does not apply to the injunctive relief issued by the Retta Court.[8] Indeed, plaintiffs acknowledge that "[t]he Retta settlement had no requirement for how long [defendant] needed to use the proposed labeling[.]" (Id. at 9). In other words, the injunctive relief issued by the Retta Court was permanent. Putting aside the fact that the alcohol warning label Bursor negotiated has been used by defendant since the Retta settlement, it appears that plaintiffs simply aren't satisfied with the injunctive relief they negotiated and had approved by the Retta Court. But when a court issues permanent injunctive relief that a party believes is insufficient or needs to be modified (i.e., if the new formulation of defendant's kombucha turned out to be insufficient or inadequate), the remedy isn't to file a new action – before a different judge – seeking to challenge the injunctive relief. Rather, the remedy is to seek to modify or challenge the injunctive relief through a proper motion filed with the judge who issued the injunctive relief,[9] cf., e.g., Flores v. Lynch, 828 F.3d 898, 905 (9th Cir. 2016) (noting use of motion to enforce settlement), or, seek to have the case transferred as a related case to the judge who issued the injunctive relief.

---

language in a prior action that it subsequently contends is inadequate in a subsequent action.

[8] The court is not persuaded by plaintiffs' contention that "the main benefits of the Retta settlement was the $8.25 million cash consideration." (Dkt. 103, Plt. Supp. at 9). A review of the final approval order and the underlying settlement documents in the Retta Action indicate that the injunctive relief was a significant part of the Retta settlement and, indeed, some of the injunctive relief was intended to address claims in a related class action. See Retta, 2017 WL 5479637, at *2 & n. 1 (setting forth injunctive relief provisions and noting that one provision is intended to address claim from related class action).

[9] This procedure, arguably, would not apply to a non-party or non-class member to the Retta case. However, a case filed by a non-party or non-class member would still be subject to transfer, as a related case, to the Retta Court which issued the subject injunctive relief. See L.R. 83-1.3.1 (providing that a notice of related case shall be filed "whenever two or more civil cases filed in this District[] . . . arise from the same or a closely related transaction, happening, or event" or "call for determination of the same or substantially related or similar questions of law and fact[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

The issues and concerns raised in this Order perhaps could have been avoided if Bursor had simply filed a Notice of Related Case pursuant to Local Rule 83-1.3 as to the Retta Action at the time it filed this action. Instead, Bursor filed a Local Rule 83-1.3 Notice of Related Case (Dkt. 8), as to the then-pending action, Tortilla Factory, LLC v. GT's Living Foods, LLC, Case No. CV 17-7539 FMO, contending that this case contained largely the same allegations as in Tortilla Factory. (Id. at 1). While Bursor acknowledged that Tortilla Factory was a competitor case, it claimed that discovery and motion practice would cover many overlapping issues, and that it "would be far more efficient for the two cases to be heard by the same judge." (Id. at 2). However, given that the Retta Court approved the alcohol warning label that is being challenged here, see Retta, 2017 WL 5479637, at *19, and that Court "retain[ed] exclusive jurisdiction over Defendant[] and the Settlement Class Members for all matters relating to this litigation, including the . . . interpretation, effectuation, or enforcement of the Settlement Agreement and th[e] Order[,]" id., counsel should have filed a notice of related case as to the Retta Action which, like the instant case, was a consumer case. Though Retta was closed at the time the notice of related case was filed, nothing in the applicable Local Rule prohibits the filing of a notice of related case with respect to a closed case. See, generally, L.R. 83-1.3.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Class Certification **(Document No. 99)** is **denied without prejudice**.

2. No later than **August 22, 2024**, plaintiffs shall file a renewed motion for class certification.

3. With respect to any renewed motion, the parties shall: (1) apply updated applicable case law; (2) strictly comply with the Court's Order Re: Motions for Class Certification (Dkt. 26); (3) address whether plaintiffs and class counsel, including Bursor & Fisher, are adequate representatives and class counsel; (4) address whether res judicata and/or judicial estoppel apply and at what stage, i.e., the class certification or the merits stage of the litigation; and (5) address whether a full refund damages model is viable in light of the court's rulings in other cases, given that this case does not involve the sale of pills or supplements and, if such a model is not available, whether this is an issue for the class certification or the merits stage of litigation.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

# EXHIBIT 2

ACCO,(DSRx),DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:19-cv-10920-FMO-DSR

Delaney Sharpe et al v. GTs Living Foods, LLC
Assigned to: Judge Fernando M. Olguin
Referred to: Magistrate Judge Daniel S. Roberts
Related Case: 2:17-cv-07539-FMO-GJS
Cause: 28:1332 Diversity-Fraud

Date Filed: 12/27/2019
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Delaney Sharpe**
*on Behalf of Themselves and all Others*
*Similarly Situated*
*TERMINATED: 09/30/2025*

represented by **Yeremey O. Krivoshey**
Smith Krivoshey, PC
28 Geary Street, Ste. 650 No. 1507
San Francisco, CA 94108
415-839-7000
Email: yeremey@skclassactions.com
*TERMINATED: 08/12/2024*
*LEAD ATTORNEY*

**Gabriel Zachiah Doble**
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
310-656-7066
Fax: 310-656-7069
Email: gabe@dovel.com
*ATTORNEY TO BE NOTICED*

**Guido E Toscano**
Bibiyan Law Group
1460 Westwood Blvd
Los Angeles, CA 90024
310-295-4047
Email: gtoscano@tomorrowlaw.com
*TERMINATED: 09/12/2022*

**Jeff S. Westerman**
Ahdoot and Wolfson, PC
2600 West Olive Ave, Suite 500
Burbank, CA 91505
310-474-9111
Fax: 310-474-8585
Email: jwesterman@ahdootwolfson.com
*ATTORNEY TO BE NOTICED*

**Kenneth A. Remson**
Freeman Mathis and Gary
550 South Hope Street, 22nd Floor
Los Angeles, CA 90071

213-615-7000
Fax: 213-615-7100
Email: ken.remson@fmglaw.com
*TERMINATED: 07/28/2020*

**L. Timothy Fisher**
Bursor and Fisher PA
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
925-300-4455
Fax: 925-407-2700
Email: ltfisher@bursor.com
*TERMINATED: 08/12/2024*

**Richard E Lyon , III**
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
310-656-7066
Fax: 310-656-7069
Email: rick@dovel.com
*ATTORNEY TO BE NOTICED*

**Scott A Bursor**
Bursor and Fisher P.A.
701 Brickell Avenue, Suite 2100
Miami, FL 33131
305-330-5512
Email: scott@bursor.com
*TERMINATED: 08/12/2024*

**Simon Carlo Franzini**
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
310-656-7066
Fax: 310-656-7069
Email: simon@dovel.com
*ATTORNEY TO BE NOTICED*

**Stephen Andrews**
Dovel and Luner, LLP
201 Santa Monica Blvd, Ste 600
Santa Monica, CA 90401
310-656-7066
Fax: 310-656-7069
Email: stephen@dovel.com
*TERMINATED: 03/07/2025*

**Plaintiff**

| | | |
|---|---|---|
| **Erin Weiler** | represented by | **Yeremey O. Krivoshey** |
| *on Behalf of Themselves and all Others* | | (See above for address) |
| *Similarly Situated* | | *TERMINATED: 08/07/2024* |
| *TERMINATED: 09/30/2025* | | *LEAD ATTORNEY* |

**Gabriel Zachiah Doble**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Guido E Toscano**
(See above for address)
*TERMINATED: 09/12/2022*

**Jeff S. Westerman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth A. Remson**
(See above for address)
*TERMINATED: 07/28/2020*

**L. Timothy Fisher**
(See above for address)
*TERMINATED: 08/07/2024*

**Richard E Lyon , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott A Bursor**
(See above for address)
*TERMINATED: 08/07/2024*

**Simon Carlo Franzini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Andrews**
(See above for address)
*TERMINATED: 03/07/2025*

**Plaintiff**

**Jenna Leder**
*on Behalf of Themselves and all Others
Similarly Situated*
*TERMINATED: 09/30/2025*

represented by **Yeremey O. Krivoshey**
(See above for address)
*TERMINATED: 08/07/2024*
*LEAD ATTORNEY*

**Gabriel Zachiah Doble**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Guido E Toscano**
(See above for address)
*TERMINATED: 09/12/2022*

**Jeff S. Westerman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth A. Remson**
(See above for address)
*TERMINATED: 07/28/2020*

**L. Timothy Fisher**
(See above for address)
*TERMINATED: 08/07/2024*

**Richard E Lyon , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott A Bursor**
(See above for address)
*TERMINATED: 08/07/2024*

**Simon Carlo Franzini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Andrews**
(See above for address)
*TERMINATED: 03/07/2025*

**Plaintiff**

**Adriana DiGennaro**                          represented by **Yeremey O. Krivoshey**
*on Behalf of Themselves and all Others*                    (See above for address)
*Similarly Situated*                                         *TERMINATED: 08/13/2024*
*TERMINATED: 09/30/2025*                                     *LEAD ATTORNEY*

**Gabriel Zachiah Doble**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Guido E Toscano**
(See above for address)
*TERMINATED: 09/12/2022*

**Jeff S. Westerman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth A. Remson**
(See above for address)
*TERMINATED: 07/28/2020*

**L. Timothy Fisher**
(See above for address)
*TERMINATED: 08/14/2024*

**Richard E Lyon , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott A Bursor**
(See above for address)
*TERMINATED: 08/14/2024*

**Simon Carlo Franzini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Andrews**
(See above for address)
*TERMINATED: 03/07/2025*

**Plaintiff**

**Amit Patel**                                     represented by **Gabriel Zachiah Doble**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonas Jacobson**
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
310-656-7066
Fax: 310-656-7069
Email: jonas@dovel.com
*ATTORNEY TO BE NOTICED*

**Martin E. Brenner , III**
Dovel and Luner, LLP
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401
310-656-7066
Fax: 310-656-7069
Email: martin@dovel.com
*ATTORNEY TO BE NOTICED*

**Richard E Lyon , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Simon Carlo Franzini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lauren Schmidt**                               represented by **Gabriel Zachiah Doble**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonas Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Martin E. Brenner , III**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard E Lyon , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Simon Carlo Franzini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Christopher Nunez                    represented by **Gabriel Zachiah Doble**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonas Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Martin E. Brenner , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard E Lyon , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Simon Carlo Franzini**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

GTs Living Foods, LLC                    represented by **Jacob Michael Harper**
Davis Wright Tremaine LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
213-633-6800
Fax: 213-633-6899
Email: jacobharper@dwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian M Berliner**
O'Melveny and Myers LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071-2899
213-430-6000
Fax: 213-430-6407
Email: brian-berliner-
3164@ecf.pacerpro.com

*ATTORNEY TO BE NOTICED*

**Carlos Manuel Lazatin**
O'Melveny and Myers LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071-2899
213-430-6000
Fax: 213-430-6407
Email: clazatin@omm.com
*ATTORNEY TO BE NOTICED*

**Hannah Y. Chanoine**
O'Melveny and Myers LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
212-326-2000
Email: hchanoine@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather Fay Canner**
Davis Wright Tremaine LLP
350 South Grand Avenue 27th Floor
Los Angeles, CA 90071
213-633-6800
Fax: 213-633-6899
Email: heathercanner@dwt.com
*ATTORNEY TO BE NOTICED*

**Joseph Elie-Meyers**
Davis Wright Tremaine LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
615-714-1996
Email: josepheliemeyers@dwt.com
*TERMINATED: 06/17/2026*

**Kihyun Peter Bae**
Davis Wright Tremaine LLP
350 South Grand Avenue, Ste 27th Floor
Los Angeles, CA 90071
213-633-6800
Email: peterbae@dwt.com
*ATTORNEY TO BE NOTICED*

**Zachariah A Tafoya**
O'Melveny and Myers LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071-2899
213-430-8157
Fax: 213-430-6407
Email: zach-tafoya-3949@ecf.pacerpro.com
*ATTORNEY TO BE NOTICED*

Scott M Voelz
O'Melveny and Myers LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071-2899
213-430-6000
Fax: 213-430-6407
Email: svoelz@omm.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Circana LLC**                           represented by   **Jason Jonathan Kim**
Hunton Andrews Kurth LLP
550 South Hope Street Suite 2000
Los Angeles, CA 90071
213-532-2000
Fax: 213-532-2020
Email: kimj@huntonak.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/27/2019 | 1 | COMPLAINT Receipt No: 0973-25026694 - Fee: $400, filed by Plaintiffs Delaney Sharpe, Adriana DiGennaro, Jenna Leder, Erin Weiler. (Attorney Yeremey O Krivoshey added to party Adriana DiGennaro(pty:pla), Attorney Yeremey O Krivoshey added to party Jenna Leder(pty:pla), Attorney Yeremey O Krivoshey added to party Delaney Sharpe(pty:pla), Attorney Yeremey O Krivoshey added to party Erin Weiler(pty:pla)) (Krivoshey, Yeremey) (Entered: 12/27/2019) |
| 12/27/2019 | 2 | CIVIL COVER SHEET filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 12/27/2019) |
| 12/27/2019 | 3 | NOTICE of Interested Parties filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler, (Krivoshey, Yeremey) (Entered: 12/27/2019) |
| 12/27/2019 | 4 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 12/27/2019) |
| 12/27/2019 | 5 | NOTICE OF ASSIGNMENT to District Judge Percy Anderson and Magistrate Judge Steve Kim. (lh) (Entered: 12/27/2019) |
| 12/27/2019 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: 12/27/2019) |
| 12/27/2019 | 7 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant GTs Living Foods, LLC. (lh) (Entered: 12/27/2019) |
| 12/30/2019 | 8 | NOTICE of Related Case(s) filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Related Case(s): 2:17-cv-07539-FMO (Krivoshey, Yeremey) (Entered: 12/30/2019) |
| 12/30/2019 | 9 | STANDING ORDER by Judge Percy Anderson. READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. (et) (Entered: 01/02/2020) |
| 01/03/2020 | 10 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 19-03-Related Case-filed. Related Case No: 2:17-cv-07539 FMO(GJSx). Case transferred from Judge Percy |

| | | Anderson and Magistrate Judge Steve Kim to Judge Fernando M. Olguin and Magistrate Judge Gail J. Standish for all further proceedings. The case number will now reflect the initials of the transferee Judge 2:19-cv-10920 FMO(GJSx). Signed by Judge Fernando M. Olguin (rn) (Entered: 01/03/2020) |
|---|---|---|
| 01/10/2020 | 11 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. This matter has been assigned to District Judge Fernando M. Olguin. The Court refers counsel to the Court's Initial Standing Order found on the Court's Website under Judge Olguin's Procedures and Schedules. Please read this Order carefully. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vdr) TEXT ONLY ENTRY (Entered: 01/10/2020) |
| 01/22/2020 | 12 | Joint STIPULATION Extending Time to Answer the complaint as to GTs Living Foods, LLC answer now due 2/7/2020, re Complaint (Attorney Civil Case Opening), 1 filed by Defendant GTs Living Foods, LLC.(Attorney Scott M Voelz added to party GTs Living Foods, LLC(pty:dft))(Voelz, Scott) (Entered: 01/22/2020) |
| 01/22/2020 | 13 | Notice of Appearance or Withdrawal of Counsel: for attorney Zachariah A Tafoya counsel for Defendant GTs Living Foods, LLC. Adding Zach A. Tafoya as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Zachariah A Tafoya added to party GTs Living Foods, LLC(pty:dft))(Tafoya, Zachariah) (Entered: 01/22/2020) |
| 02/07/2020 | 14 | NOTICE OF MOTION AND MOTION to Strike Portions of Plaintiff's Class Action Complaint (Attorney Civil Case Opening), 1 filed by Defendant GTs Living Foods, LLC. Motion set for hearing on 3/12/2020 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Appendix, # 2 Proposed Order) (Voelz, Scott) (Entered: 02/07/2020) |
| 02/07/2020 | 15 | Joint STIPULATION to Strike filed by Defendant GTs Living Foods, LLC.(Voelz, Scott) (Entered: 02/07/2020) |
| 02/10/2020 | 16 | ORDER SETTING SCHEDULING CONFERENCE by Judge Fernando M. Olguin. Scheduling Conference set for 4/2/2020 at 10:00 AM before Judge Fernando M. Olguin. (vdr) (Entered: 02/10/2020) |
| 02/10/2020 | 17 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Stipulation to Strike 15 . The following error(s) was/were found: L.R. 52-4.1. A separate proposed order shall be submitted with any stipulation, application, motion, or request of the parties requiring an order of the court. Proposed order required by 2/12/2020, or the stipulation may be stricken. (vdr) (Entered: 02/10/2020) |
| 02/11/2020 | 18 | NOTICE OF LODGING filed *of Proposed Order* re Stipulation to Strike 15 , Deficiency in Electronically Filed Documents (G-112A) - optional html form, 17 (Attachments: # 1 Proposed Order)(Voelz, Scott) (Entered: 02/11/2020) |
| 02/11/2020 | 19 | ORDER GRANTING STIPULATION TO DISMISS PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF WITHOUT PREJUDICE 18 by Judge Fernando M. Olguin. Plaintiffs' claims for injunctive relief are dismissed without prejudice. (iv) (Entered: 02/11/2020) |
| 02/20/2020 | 20 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Strike Portions of Plaintiff's Class Action Complaint (Attorney Civil Case Opening), 1 14 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 02/20/2020) |
| 02/27/2020 | 21 | REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION to Strike Portions of Plaintiff's Class Action Complaint (Attorney Civil Case Opening), 1 14 filed by Defendant GTs Living Foods, LLC. (Voelz, Scott) (Entered: 02/27/2020) |

| 03/04/2020 | 22 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. On the court's own motion, the Motion to Strike 14 is taken off the 3/12/2020 calendar and placed under submission. No appearances are required on 3/12/2020. An order with the court's ruling will issue. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vdr) TEXT ONLY ENTRY (Entered: 03/04/2020) |
|---|---|---|
| 03/19/2020 | 23 | STATUS REPORT *(Joint FRCP 26(f) and L.R. 26-1 Report)* filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 03/19/2020) |
| 03/20/2020 | 24 | SCHEDULING AND CASE MANAGEMENT ORDER RE: CLASS ACTION & REPRESENTATIVE ACTIONS by Judge Fernando M. Olguin. The Scheduling Conference is hereby vacated. *See order for deadlines and requirements imposed.* (vdr) (Entered: 03/20/2020) |
| 03/20/2020 | 25 | ORDER RE: SUMMARY JUDGMENT MOTIONS by Judge Fernando M. Olguin. (vdr) (Entered: 03/20/2020) |
| 03/20/2020 | 26 | ORDER RE: MOTIONS FOR CLASS CERTIFICATION by Judge Fernando M. Olguin. (vdr) (Entered: 03/20/2020) |
| 03/30/2020 | 27 | MINUTES (In Chambers) Order Re: Pending Motion by Judge Fernando M. Olguin. Accordingly, IT IS ORDERED THAT: Defendant's Motion (Document No. 14 ) is denied. Defendant shall file its Answer no later than April 13, 2020. (et) (Entered: 03/30/2020) |
| 04/09/2020 | 28 | STIPULATION for Leave to File Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 15(a)(2) filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler.(Krivoshey, Yeremey) (Entered: 04/09/2020) |
| 04/09/2020 | 29 | First AMENDED COMPLAINT against Defendant GTs Living Foods, LLC amending Complaint (Attorney Civil Case Opening), 1 , filed by Plaintiffs Delaney Sharpe, Adriana DiGennaro, Jenna Leder, Erin Weiler(Krivoshey, Yeremey) (Entered: 04/09/2020) |
| 04/10/2020 | 30 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Stipulation 28 . The following error(s) was/were found: Proposed Document was not submitted as separate attachment. Lodging of a proposed order, or emailing of a proposed order is required no later than 4/13/2020, or the response may be stricken. (vdr) (Entered: 04/10/2020) |
| 04/13/2020 | 31 | ORDER GRANTING STIPULATION 28 PERMITTING PLAINTIFFS TO FILE AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P.15(a)(2) by Judge Fernando M. Olguin. The Court hereby ORDERS as follows: Plaintiffs are granted leave to file Plaintiffs' Amended Class Action Complaint. Defendant may move to dismiss or assert any other defense it may have to Plaintiffs' Amended Class Action Complaint by April 23, 2020. (lom) (Entered: 04/13/2020) |
| 04/23/2020 | 32 | NOTICE OF MOTION AND MOTION to Dismiss *Plaintiffs' Injunctive Relief Claims from Amended Class Action Complaint* filed by Defendant GTs Living Foods, LLC. Motion set for hearing on 5/21/2020 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Proposed Order) (Voelz, Scott) (Entered: 04/23/2020) |
| 04/24/2020 | 33 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Motion to Dismiss 32 . The following error(s) was/were found: Local Rule 7.1-1 No Notice of Interested Parties and/or no copies. Compliance with Local Rule 7.1-1 is required no later than April 27, 2020. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. (iv) (Entered: 04/24/2020) |

| 04/24/2020 | 34 | NOTICE of Interested Parties filed by Defendant GTs Living Foods, LLC, (Voelz, Scott) (Entered: 04/24/2020) |
|---|---|---|
| 04/24/2020 | 35 | CORPORATE DISCLOSURE STATEMENT filed by Defendant GTs Living Foods, LLC identifying No Corporate Parent as Corporate Parent. (Voelz, Scott) (Entered: 04/24/2020) |
| 04/29/2020 | 36 | Joint STIPULATION for Protective Order filed by Defendant GTs Living Foods, LLC. (Voelz, Scott) (Entered: 04/29/2020) |
| 04/30/2020 | 37 | STIPULATED PROTECTIVE ORDER by Magistrate Judge Gail J. Standish re Stipulation for Protective Order 36 . (efc) (Entered: 04/30/2020) |
| 04/30/2020 | 38 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Dismiss *Plaintiffs' Injunctive Relief Claims from Amended Class Action Complaint* 32 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 04/30/2020) |
| 05/07/2020 | 39 | REPLY in Support of NOTICE OF MOTION AND MOTION to Dismiss *Plaintiffs' Injunctive Relief Claims from Amended Class Action Complaint* 32 filed by Defendant GTs Living Foods, LLC. (Voelz, Scott) (Entered: 05/07/2020) |
| 05/18/2020 | 40 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. On the court's own motion, the Motion to Dismiss 32 is taken off the 5/21/2020 calendar and placed under submission. No appearances are required on 5/21/2020. An order with the court's ruling will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vdr) TEXT ONLY ENTRY (Entered: 05/18/2020) |
| 07/15/2020 | 41 | NOTICE of Change of Attorney Business or Contact Information: for attorney Scott A Bursor counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Changing Address to 701 Brickell Ave., Suite 1420, Miami, FL 33131. Filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Bursor, Scott) (Entered: 07/15/2020) |
| 07/28/2020 | 42 | Notice of Appearance or Withdrawal of Counsel: for attorney Jeff S Westerman counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Kenneth A Remson is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by plaintff plaintiff. (Westerman, Jeff) (Entered: 07/28/2020) |
| 08/03/2020 | 43 | STIPULATION for Discovery as to Continuing Fact and Expert Discovery Deadlines filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 08/03/2020) |
| 08/06/2020 | 44 | ORDER GRANTING JOINT STIPULATION 43 CONTINUING FACT AND EXPERT DISCOVERY DEADLINES by Judge Fernando M. Olguin. *See Order for dates and deadlines.* (iv) (Entered: 08/06/2020) |
| 11/25/2020 | 45 | MINUTE ORDER IN CHAMBERS by Magistrate Judge Gail J. Standish re parties' November 4, 2020 email.. Given that the extended discovery cutoff [see Dkt. 44] in this case is only six weeks after the first date proposed by the parties for the conference, the winter holidays, the Court's schedule, and the number and complexity of the issues presented in the e-mail, the Court hereby dispenses with the pre-discovery motion conference requirement. Plaintiff shall file its motion to compel no later than December 1, 2020. Defendant's opposition is due on or before December 8, 2020. Plaintiff's optional reply, which is limited to 7 pages and may not repeat arguments from its opening brief, is due on or before December 14, 2020. The motion shall stand submitted as of that date unless the Court sets the matter for hearing. Counsel shall ensure that copies of all filings, |

| | | with any attachments shall be emailed to the chambers email address. (efc) (Entered: 11/25/2020) |
|---|---|---|
| 12/01/2020 | 46 | NOTICE OF MOTION AND MOTION to Compel Production of Documents filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion to Compel, # 2 Declaration of Yeremey Krivoshey, # 3 Proposed Order)(Krivoshey, Yeremey) (Entered: 12/01/2020) |
| 12/08/2020 | 47 | REPLY in Opposition to MOTION to Compel Production of Documents 46 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Zach A. Tafoya in Support, # 2 Exhibit 1 to Declaration of Zach A. Tafoy, # 3 Exhibit 2 to Declaration of Zach A. Tafoy)(Voelz, Scott) (Entered: 12/08/2020) |
| 12/14/2020 | 48 | STIPULATION to Continue Completion of Fact Discovery from January 15, 2021 to March 1, 2021 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 12/14/2020) |
| 12/14/2020 | 49 | REPLY in Support of MOTION to Compel Production of Documents 46 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 12/14/2020) |
| 12/18/2020 | 50 | NOTICE by Magistrate Judge Gail J. Standish scheduling a hearing on the Motion to Compel Production of Documents 46 for 12/29/2020 1:30 PM before Magistrate Judge Gail J. Standish. The conference will be conducted via Zoom. Counsel shall notify the Court Clerk immediately via email at GJS_chambers@cacd.uscourts.gov of the name of each counsel appearing at the conference, including email address and telephone number. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (efc) TEXT ONLY ENTRY (Entered: 12/18/2020) |
| 12/21/2020 | 51 | ORDER GRANTING JOINT STIPULATION CONTINUING FACT AND EXPERT DISCOVERY DEADLINES 48 by Judge Fernando M. Olguin. *See Order for dates and deadlines.* (iv) (Entered: 12/21/2020) |
| 12/29/2020 | 52 | MINUTES of Plaintiffs Motion To Compel (Dkt. 46); Order held before Magistrate Judge Gail J. Standish. The Motion to Compel is denied without prejudice. The parties are ordered to meet and confer in accordance with the Courts guidance, as explained in further detail on the record, by Monday, January 11, 2021. They must provide an informal status report in the form of a joint e-mail to the Courts chambers e-mail address by close of business on Thursday, January 14, 2021. (See Minute Order for further details) denying 46 Motion to Compel; Motion Hearing Court Recorder: 12/29/2020 Zoom.gov. (vm) (Entered: 12/29/2020) |
| 02/01/2021 | 53 | MINUTES (IN CHAMBERS) ORDER RE: PENDING MOTION by Judge Fernando M. Olguin. Defendant's Motion to Dismiss Plaintiffs' Injunctive Relief Claims From Amended Class Action Complaint 32 is denied. Defendant shall file its answer to the FAC no later than February 15, 2021. (iv) (Entered: 02/02/2021) |
| 02/12/2021 | 54 | ANSWER to Amended Complaint/Petition 29 with JURY DEMAND filed by Defendant GTs Living Foods, LLC.(Voelz, Scott) (Entered: 02/12/2021) |
| 03/01/2021 | 55 | STIPULATION to Continue Fact and Expert Discovery Deadlines filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 03/01/2021) |
| 03/08/2021 | 56 | ORDER GRANTING JOINT STIPULATION 55 CONTINUING FACT AND EXPERT DISCOVERY DEADLINES by Judge Fernando M. Olguin. *See Order for dates and deadlines.* (iv) (Entered: 03/08/2021) |

| 03/08/2021 | 57 | APPLICATION to file document under seal filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order, # 2 Redacted Document Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, # 3 Redacted Document Declaration of Yeremey Krivoshey in Support of Plaintiffs' Motion to Compel Production of Documents)(Krivoshey, Yeremey) (Entered: 03/08/2021) |
|---|---|---|
| 03/08/2021 | 58 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document under seal 57 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Unredacted Document Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, # 2 Unredacted Document Declaration of Yeremey Krivoshey in Support of Plaintiffs' Motion to Compel Production of Documents)(Krivoshey, Yeremey) (Entered: 03/08/2021) |
| 03/08/2021 | 59 | (STRICKEN PURSUANT TO COURT ORDER) NOTICE OF MOTION AND MOTION to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Motion set for hearing on 3/17/2021 at 10:00 AM before Magistrate Judge Gail J. Standish. (Attachments: # 1 Redacted Document Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, # 2 Redacted Document Declaration of Yeremey Krivoshey in Support of Plaintiffs' Motion to Compel Production of Documents, # 3 Proposed Order, # 4 Proof of Service)(Krivoshey, Yeremey) Modified on 3/10/2021 (efc). (Entered: 03/08/2021) |
| 03/09/2021 | 60 | MINUTE ORDER IN CHAMBERS by Magistrate Judge Gail J. Standish striking Motion to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee 59 . Plaintiff filed a Motion to Compel Production Of Documents And To Redepose Defendant's Fed. R. Civ. P. 30(B)(6) Designee (Motion). [Dkt. 59.] The motion was noticed for hearing on March 17, 2021 at 10:00 a.m. only 9 days after it was noticed, in clear violation of the Local Rules of the Central District of California. By e-mail to the Court's Deputy Clerk dated today, March 9, 2021, the parties requested that the hearing be continued by one week, which is still in violation of the notice and filing requirements of the Local Rules. The Motion is therefore untimely and will be stricken. (efc) (Entered: 03/10/2021) |
| 03/11/2021 | 61 | STIPULATION to Continue Fact and Expert Discovery Deadlines filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 03/11/2021) |
| 03/16/2021 | 62 | ORDER GRANTING JOINT STIPULATION 61 CONTINUING FACT AND EXPERT DISCOVERY DEADLINES by Judge Fernando M. Olguin. *See Order for dates and deadlines.* (iv) (Entered: 03/16/2021) |
| 03/16/2021 | 63 | APPLICATION to file document under seal filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order, # 2 Redacted Document Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, # 3 Redacted Document Declaration of Yeremey Krivoshey in Support of Plaintiffs' Motion to Compel Production of Documents)(Krivoshey, Yeremey) (Entered: 03/16/2021) |
| 03/16/2021 | 64 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document under seal 63 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Unredacted Document Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, # 2 Unredacted Document Declaration of Yeremey Krivoshey in Support of Plaintiffs' Motion to Compel Production of Documents)(Krivoshey, Yeremey) (Entered: 03/16/2021) |

| 03/16/2021 | 65 | NOTICE OF MOTION AND MOTION to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Motion set for hearing on 4/14/2021 at 10:00 AM before Magistrate Judge Gail J. Standish. (Attachments: # 1 Redacted Document Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, # 2 Redacted Document Declaration of Yeremey Krivoshey in Support of Plaintiffs' Motion to Compel Production of Documents, # 3 Proposed Order, # 4 Proof of Service)(Krivoshey, Yeremey) (Entered: 03/16/2021) |
|---|---|---|
| 03/17/2021 | 66 | NOTICE BY GAIL J. STANISH, UNITED STATES MAGISTRATE JUDGE re PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TO RE-DEPOSE DEFENDANT'S FED. R. CIV. P 30(b)(6) DESIGNEE 65 , filed on March 16, 2021. The hearing on the Motion is hereby vacated. The Parties will adhere to the following briefing schedule on the motion: Defendant's opposition is due on or before March 23, 2021. Plaintiff's optional reply, which is limited to 5 pages and may not repeat any arguments made in the opening brief, is due on or before March 26, 2021. The Court will take the motion under submission once it is fully briefed. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (efc) TEXT ONLY ENTRY (Entered: 03/17/2021) |
| 03/17/2021 | 67 | ORDER by Magistrate Judge Gail J. Standish: granting APPLICATION to file document under seal 63 . (efc) (Entered: 03/17/2021) |
| 03/19/2021 | 68 | SEALED DOCUMENT *Plaintiffs' Memorandum in Support of Motion to Compel Production of Documents* re MOTION to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee 65 , Order on Motion for Leave to File Document Under Seal, 67 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Declaration of Yeremey Krivoshey) (Krivoshey, Yeremey) (Entered: 03/19/2021) |
| 03/23/2021 | 69 | APPLICATION to file document under seal filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Proposed Order, # 2 Opposition to Plaintiffs' Motion to Compel - Redacted, # 3 Exhibit 8 to Declaration of Zach Tafoya - Redacted, # 4 Exhibit 9 to Declaration of Zach Tafoya - Redacted, # 5 Exhibit 11 to Declaration of Zach Tafoya - Redacted)(Voelz, Scott) (Entered: 03/23/2021) |
| 03/23/2021 | 70 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document under seal 69 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Opposition to Plaintiffs' Motion to Compel - Unredacted, # 2 Exhibit 8 to Declaration of Zach Tafoya - Unredacted, # 3 Exhibit 9 to Declaration of Zach Tafoya - Unredacted, # 4 Exhibit 11 to Declaration of Zach Tafoya - Unredacted)(Tafoya, Zachariah) (Entered: 03/23/2021) |
| 03/23/2021 | 71 | CERTIFICATE OF SERVICE filed by Defendant GTs Living Foods, LLC, re Sealed Declaration in SupportDeclaration, 70 served on March 23, 2021. (Voelz, Scott) (Entered: 03/23/2021) |
| 03/23/2021 | 72 | OPPOSITION re: MOTION to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee 65 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Zach A. Tafoya in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11)(Voelz, Scott) (Entered: 03/23/2021) |
| 03/24/2021 | 73 | ORDER by Magistrate Judge Gail J. Standish: granting 69 Application to Seal Document. (efc) (Entered: 03/24/2021) |

| 03/24/2021 | 74 | SEALED OPPOSITION RE MOTION to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee 65 , Order on Motion for Leave to File Document Under Seal 73 filed by Defendant GTs Living Foods, LLC.(Voelz, Scott) (Entered: 03/24/2021) |
|---|---|---|
| 03/24/2021 | 75 | SEALED DOCUMENT / *Sealed Exhibits to Declaration of Zach A. Tafoya in Support* re Objection/Opposition (Motion related), 72 , Order on Motion for Leave to File Document Under Seal 73 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Exhibit 9 to the Declaration of Zach A. Tafoya, # 2 Exhibit 11 to the Declaration of Zach A. Tafoya) (Voelz, Scott) (Entered: 03/24/2021) |
| 03/24/2021 | 76 | CERTIFICATE OF SERVICE filed by Defendant GTs Living Foods, LLC, re Sealed Document, 75 , Sealed Opposition, 74 served on March 24, 2021. (Voelz, Scott) (Entered: 03/24/2021) |
| 03/26/2021 | 77 | NOTICE by Magistrate Judge Gail J. Standish scheduling a Discovery Status Conference via a Zoom hearing on 4/6/2021 at 2:00 PM before Magistrate Judge Gail J. Standish. All counsel appearing at the hearing shall provide their email addresses and telephone numbers to the Court Clerk at GJS_chambers@cacd.uscourts.gov. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (efc) TEXT ONLY ENTRY (Entered: 03/26/2021) |
| 03/26/2021 | 78 | NOTICE by Magistrate Judge Gail J. Standish to disregard hearing scheduled for 4/6/2021 because hearing inadvertently docketed in the wrong case. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (efc) TEXT ONLY ENTRY (Entered: 03/26/2021) |
| 03/26/2021 | 79 | REPLY in Support of MOTION to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee 65 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 03/26/2021) |
| 04/02/2021 | 80 | NOTICE by Magistrate Judge Gail J. Standish scheduling the Motion to Compel 65 for a Zoom hearing on 4/20/2021 at 3:00 PM before Magistrate Judge Gail J. Standish. All counsel appearing at the hearing shall provide their email addresses and telephone numbers to the Court Clerk at GJS_chambers@cacd.uscourts.gov.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (efc) TEXT ONLY ENTRY (Entered: 04/02/2021) |
| 04/06/2021 | 81 | NOTICE by Magistrate Judge Gail J. Standish advanced the hearing regarding Plaintiff's Motion 65 from 4/20/2021 to 4/6/2021 at 03:00 PM before Magistrate Judge Gail J. Standish. (efc) TEXT ONLY ENTRY (Entered: 04/06/2021) |
| 04/06/2021 | 82 | MINUTES OF Discovery Hearing held before Magistrate Judge Gail J. Standish re Plaintiff's Motion to Compel Production of Documents and to Re-Depose Defendant's Fed. R. Civ. P. 30(b)(6) Designee 65 . 1. Defense counsel is directed to prepare a clear, detailed redaction log and serve it on plaintiffs' counsel by no later than Monday, April 19, 2021. The parties were counseled about the Court's limited availability - specifically, that the Court may not be available for follow-up issues related to the log given the impending discovery cutoff - but that the Court will attempt to address specific issues through the Court's pre-discovery telephonic hearing process if possible. Should the parties present the Court with a request for such a hearing, they should attach a copy of the redaction log to their joint e-mail. (See order for details) Court Recorder: Zoom. (efc) (Entered: 04/06/2021) |
| 04/09/2021 | 83 | TRANSCRIPT ORDER as to Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler for Court Smart (CS). Court will contact Debbie Schroeder at dschroeder@bursor.com with further instructions regarding this order. Transcript |

| | | |
|---|---|---|
| | | preparation will not begin until payment has been satisfied with the transcription company. (Krivoshey, Yeremey) (Entered: 04/09/2021) |
| 04/13/2021 | 84 | TRANSCRIPT ORDER as to Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler for Court Smart (CS). Court will contact Debbie Schroeder at dschroeder@bursor.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Krivoshey, Yeremey) (Entered: 04/13/2021) |
| 04/14/2021 | 85 | TRANSCRIPT for proceedings held on 4/6/21. Court Reporter/Electronic Court Recorder: EXCEPTIONAL REPORTING SERVICES, phone number 361-949-2988. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 5/5/2021. Redacted Transcript Deadline set for 5/17/2021. Release of Transcript Restriction set for 7/13/2021. (jlo) (Entered: 04/14/2021) |
| 04/14/2021 | 86 | NOTICE OF FILING TRANSCRIPT filed for proceedings 4/6/21 re Transcript 85 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jlo) TEXT ONLY ENTRY (Entered: 04/14/2021) |
| 04/26/2021 | 87 | NOTICE of Appearance filed by attorney Guido E Toscano on behalf of Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler (Attorney Guido E Toscano added to party Adriana DiGennaro(pty:pla), Attorney Guido E Toscano added to party Jenna Leder(pty:pla), Attorney Guido E Toscano added to party Delaney Sharpe(pty:pla), Attorney Guido E Toscano added to party Erin Weiler(pty:pla))(Toscano, Guido) (Entered: 04/26/2021) |
| 06/14/2021 | 88 | Notice of Appearance or Withdrawal of Counsel: for attorney Carlos Manuel Lazatin counsel for Defendant GTs Living Foods, LLC. Adding Carlos M. Lazatin as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Carlos Manuel Lazatin added to party GTs Living Foods, LLC(pty:dft))(Lazatin, Carlos) (Entered: 06/14/2021) |
| 06/16/2021 | 89 | Notice of Appearance or Withdrawal of Counsel: for attorney Brian M Berliner counsel for Defendant GTs Living Foods, LLC. Adding Brian M. Berliner as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Brian M Berliner added to party GTs Living Foods, LLC(pty:dft))(Berliner, Brian) (Entered: 06/16/2021) |
| 06/17/2021 | 90 | APPLICATION of Non-Resident Attorney Hannah U. Chanoine to Appear Pro Hac Vice on behalf of Defendant GTs Living Foods, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-31485249) filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Proposed Order) (Voelz, Scott) (Entered: 06/17/2021) |
| 06/18/2021 | 91 | MEMORANDUM in Opposition to APPLICATION of Non-Resident Attorney Hannah U. Chanoine to Appear Pro Hac Vice on behalf of Defendant GTs Living Foods, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-31485249) 90 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Declaration of Yeremey Krivoshey)(Krivoshey, Yeremey) (Entered: 06/18/2021) |
| 06/21/2021 | 92 | REPLY in Support of APPLICATION of Non-Resident Attorney Hannah U. Chanoine to Appear Pro Hac Vice on behalf of Defendant GTs Living Foods, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-31485249) 90 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Hannah Y. Chanoine in Support)(Voelz, Scott) (Entered: 06/21/2021) |

| 06/21/2021 | 93 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Hannah U. Chanoine to Appear Pro Hac Vice on behalf of Defendant GTs Living Foods, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-31485249) 90 . The following error(s) was/were found: Local Rule 83-2.1.3.3(a) Application not complete: state courts to which the applicant has been admitted are not listed. (lt) (Entered: 06/21/2021) |
|---|---|---|
| 06/21/2021 | 94 | ORDER by Judge Fernando M. Olguin: Granting Application of Non-Resident Attorney Hannah Chanoine to Appear Pro Hac Vice on behalf of Defendant GT's Living Foods, LLC, designating Scott Voelz as local counsel 90 . (iv) (Entered: 06/21/2021) |
| 07/28/2021 | 95 | STIPULATION to Continue Summary Judgment Briefing Deadlines filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 07/28/2021) |
| 07/29/2021 | 96 | ORDER GRANTING JOINT STIPULATION CONTINUING SUMMARY JUDGMENT BRIEFING DEADLINES 95 by Judge Fernando M. Olguin. *See Order for deadlines* (et) (Entered: 07/29/2021) |
| 08/02/2021 | 97 | APPLICATION to file document *Joint Brief on Plaintiffs' Motion for Class Certification* under seal filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order, # 2 Redacted Document Joint Brief on Plaintiffs' Motion for Class Certification, # 3 Redacted Document Evidentiary Appendix Vol. 1, # 4 Redacted Document Evidentiary Appendix Vol. 2, # 5 Redacted Document Evidentiary Appendix Vol. 4, # 6 Redacted Document Evidentiary Appendix Vol. 5) (Krivoshey, Yeremey) (Entered: 08/02/2021) |
| 08/02/2021 | 98 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Joint Brief on Plaintiffs' Motion for Class Certification* under seal 97 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Unredacted Document Joint Brief on Plaintiffs' Motion for Class Certification, # 2 Unredacted Document Evidentiary Appendix Vol. 1, # 3 Unredacted Document Evidentiary Appendix Vol. 2, # 4 Unredacted Document Evidentiary Appendix Vol. 4, # 5 Unredacted Document Evidentiary Appendix Vol. 5)(Krivoshey, Yeremey) (Entered: 08/02/2021) |
| 08/02/2021 | 99 | NOTICE OF MOTION AND MOTION to Certify Class filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Motion set for hearing on 9/2/2021 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Redacted Document Joint Brief on Plaintiffs' Motion for Class Certification, # 2 Redacted Document Evidentiary Appendix Vol. 1, # 3 Redacted Document Evidentiary Appendix Vol. 2, # 4 Evidentiary Appendix Vol. 3, # 5 Redacted Document Evidentiary Appendix Vol. 4, # 6 Redacted Document Evidentiary Appendix Vol. 5, # 7 Proposed Order, # 8 Proof of Service) (Krivoshey, Yeremey) (Entered: 08/02/2021) |
| 08/06/2021 | 100 | DECLARATION of Zach A. Tafoya in Support APPLICATION to file document *Joint Brief on Plaintiffs' Motion for Class Certification* under seal 97 filed by Defendant GTs Living Foods, LLC. (Tafoya, Zachariah) (Entered: 08/06/2021) |
| 08/19/2021 | 101 | APPLICATION to file document under seal filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order, # 2 Redacted Document Declaration of Yeremey Krivoshey)(Krivoshey, Yeremey) (Entered: 08/19/2021) |
| 08/19/2021 | 102 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document under seal 101 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Unredacted Document Declaration of Yeremey Krivoshey) (Krivoshey, Yeremey) (Entered: 08/19/2021) |

| 08/19/2021 | 103 | SUPPLEMENT to NOTICE OF MOTION AND MOTION to Certify Class 99 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Redacted Document Declaration of Yeremey Krivoshey, # 2 Proof of Service) (Krivoshey, Yeremey) (Entered: 08/19/2021) |
|---|---|---|
| 08/19/2021 | 104 | SUPPLEMENT to NOTICE OF MOTION AND MOTION to Certify Class 99 / *GT's Living Foods, LLC's Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification* filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Zach A. Tafoya, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Declaration of George Thomas Dave)(Voelz, Scott) (Entered: 08/19/2021) |
| 08/23/2021 | 105 | DECLARATION of Zach A. Tafoya in Support of APPLICATION to file document under seal 101 filed by Defendant GTs Living Foods, LLC. (Tafoya, Zachariah) (Entered: 08/23/2021) |
| 08/30/2021 | 106 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. On the court's own motion, the Motion to Certify Class 99 , currently set for September 2, 2021, is taken off calendar and placed under submission. No appearances are required on that date. An order with the court's ruling will issue. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (gga) TEXT ONLY ENTRY (Entered: 08/30/2021) |
| 08/31/2021 | 107 | NOTICE of Supplemental Authority filed by Defendant GTs Living Foods, LLC. (Voelz, Scott) (Entered: 08/31/2021) |
| 09/01/2021 | 108 | RESPONSE filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weilerto Notice (Other) 107 *Plaintiffs' Objection and Response to GT's Living Foods, LLC's Notice of Supplemental Authority* (Krivoshey, Yeremey) (Entered: 09/01/2021) |
| 10/18/2021 | 109 | NOTICE of Supplemental Authority filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 10/18/2021) |
| 10/19/2021 | 110 | RESPONSE filed by Defendant GTs Living Foods, LLCto Notice (Other) 109 *(Response to Plaintiffs' Notice of Supplemental Authority)* (Voelz, Scott) (Entered: 10/19/2021) |
| 03/28/2022 | 111 | MINUTES (IN CHAMBERS) ORDER RE: APPLICATION TO SEAL by Judge Fernando M. Olguin. *See Order for details.* (iv) (Entered: 03/28/2022) |
| 04/01/2022 | 112 | SEALED DOCUMENT re NOTICE OF MOTION AND MOTION to Certify Class 99 , Order on Motion for Leave to File Document Under Seal, 111 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Evidentiary Appendix in Support of Joint Brief on Plaintiffs' Motion for Class Certification - Vol. 2, # 2 Evidentiary Appendix in Support of Joint Brief on Plaintiffs' Motion for Class Certification - Vol. 4, # 3 Evidentiary Appendix in Support of Joint Brief on Plaintiffs' Motion for Class Certification - Vol. 5)(Krivoshey, Yeremey) (Entered: 04/01/2022) |
| 04/01/2022 | 113 | JOINT BRIEF ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION re NOTICE OF MOTION AND MOTION to Certify Class 99 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Redacted Document Evidentiary Appendix in Support of Joint Brief on Plaintiffs' Motion for Class Certification - Vol. 1, # 2 Redacted Document Evidentiary Appendix in Support of Joint Brief on Plaintiffs' Motion for Class Certification - Vol. 5)(Krivoshey, Yeremey) (Entered: 04/01/2022) |
| 04/01/2022 | 114 | SEALED DOCUMENT *Declaration of Yeremey Krivoshey in Support of Plaintiffs' Supplemental Memorandum in Support of Motion for Class Certification* re Supplement(Motion related), 103 , Order on Motion for Leave to File Document Under Seal, 111 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler.(Krivoshey, Yeremey) (Entered: 04/01/2022) |

| 04/01/2022 | 115 | SUPPLEMENT to NOTICE OF MOTION AND MOTION to Certify Class 99 *Per March 28, 2022 Order - Declaration of Yeremey Krivoshey in Support of Plaintiffs' Supplemental Memorandum in Support of Motion for Class Certification - Redacted Version* filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 04/01/2022) |
|---|---|---|
| 04/01/2022 | 116 | PROOF OF SERVICE filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler, re Sealed Document,, 112 , Sealed Document, 114 served on April 1, 2022. (Krivoshey, Yeremey) (Entered: 04/01/2022) |
| 09/12/2022 | 117 | Notice of Appearance or Withdrawal of Counsel: for attorney Guido E Toscano counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Guido Toscano is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by Plaintiff DELANEY SHARPE, ERIN WEILER, JENNA LEDER, and ADRIANA DIGENNARO. (Toscano, Guido) (Entered: 09/12/2022) |
| 08/02/2023 | 118 | Notice of Supplemental Authority filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 08/02/2023) |
| 10/18/2023 | 119 | Joint STIPULATION for Order Updating Pending Class Counsel Definition filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 10/18/2023) |
| 10/19/2023 | 120 | ORDER GRANTING JOINT STIPULATION 119 UPDATING PENDING CLASS COUNSEL DEFINITION by Judge Fernando M. Olguin. *See Order for Details.* (iv) (Entered: 10/20/2023) |
| 10/23/2023 | 121 | MINUTE ORDER IN CHAMBERS by Judge Fernando M. Olguin. No later than 10/27/2023, each side shall mail to the chambers email address a notice of proposed private mediators proposing at least three candidates to be considered for the appointment of private mediator. (vdr) (Entered: 10/23/2023) |
| 10/27/2023 | 122 | ORDER RE: SETTLEMENT CONFERENCE by Judge Fernando M. Olguin. The parties shall attend a Settlement Conference before Hon. Margaret A. Nagle (Ret.) of JAMS no later than 12/31/2023. The parties must, no later than 24 hours after the proceeding, file a Status Report Re: Settlement. (vdr) (Entered: 10/27/2023) |
| 12/06/2023 | 123 | STIPULATION to Continue Mediation Deadline filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 12/06/2023) |
| 12/07/2023 | 124 | ORDER GRANTING STIPULATION 123 by Judge Fernando M. Olguin. The deadline for the parties to attend a mediation shall be continued to 2/23/2024. The parties shall file a Status Report Re: Settlement by 2/28/2024. (vdr) (Entered: 12/07/2023) |
| 02/23/2024 | 125 | NOTICE of Change of Attorney Business or Contact Information: for attorney Yeremey O Krivoshey counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Changing Firm Name and Address to Smith Krivoshey, PC, 166 Geary Street, Suite 1500, #1507, San Francisco, CA 94108. Changing E-Mail and Fax Number to yeremey@skclassactions.com Fax No. (888) 410-0415. Filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Krivoshey, Yeremey) (Entered: 02/23/2024) |
| 02/28/2024 | 126 | STATEMENT Re: Settlement Conference filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler (Krivoshey, Yeremey) (Entered: 02/28/2024) |

| 03/11/2024 | 127 | Second STIPULATION for Order Updating Pending Class Counsel Definition filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Krivoshey, Yeremey) (Entered: 03/11/2024) |
|---|---|---|
| 03/12/2024 | 128 | ORDER RE: STIPULATION 127 by Judge Fernando M. Olguin. *See order for updated class counsel definition.* (vdr) (Entered: 03/12/2024) |
| 06/21/2024 | 129 | MINUTES (IN CHAMBERS) ORDER RE: MOTION FOR CLASS CERTIFICATION 99 by Judge Fernando M. Olguin. *See Order for Details.* (iv) (Entered: 06/21/2024) |
| 07/18/2024 | 130 | Notice of Appearance or Withdrawal of Counsel: for attorney Simon Carlo Franzini counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Adding Simon Franzini as counsel of record for Plaintiffs for the reason indicated in the G-123 Notice. Filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro. (Attorney Simon Carlo Franzini added to party Adriana DiGennaro(pty:pla), Attorney Simon Carlo Franzini added to party Jenna Leder(pty:pla), Attorney Simon Carlo Franzini added to party Delaney Sharpe(pty:pla), Attorney Simon Carlo Franzini added to party Erin Weiler(pty:pla))(Franzini, Simon) (Entered: 07/18/2024) |
| 07/18/2024 | 131 | Notice of Appearance or Withdrawal of Counsel: for attorney Gabriel Zachiah Doble counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Adding Gabriel Doble as counsel of record for Plaintiffs for the reason indicated in the G-123 Notice. Filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro. (Attorney Gabriel Zachiah Doble added to party Adriana DiGennaro(pty:pla), Attorney Gabriel Zachiah Doble added to party Jenna Leder(pty:pla), Attorney Gabriel Zachiah Doble added to party Delaney Sharpe(pty:pla), Attorney Gabriel Zachiah Doble added to party Erin Weiler(pty:pla))(Doble, Gabriel) (Entered: 07/18/2024) |
| 07/18/2024 | 132 | Joint STIPULATION for Order Granting Extension of Time for Class Certification Deadlines filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Declaration of Simon Franzini, # 2 Proposed Order)(Franzini, Simon) (Entered: 07/18/2024) |
| 07/22/2024 | 133 | ORDER RE: STIPULATION 132 by Judge Fernando M. Olguin. Defendant shall file its Motion for Summary Judgment and plaintiff shall file their Motion to Amend by 8/7/2024. *See order for ruling.* (vdr) (Entered: 07/22/2024) |
| 07/22/2024 | 134 | Notice of Appearance or Withdrawal of Counsel: for attorney Stephen Andrews counsel for Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Adding Stephen Andrews as counsel of record for Plaintiffs for the reason indicated in the G-123 Notice. Filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro. (Attorney Stephen Andrews added to party Adriana DiGennaro(pty:pla), Attorney Stephen Andrews added to party Jenna Leder(pty:pla), Attorney Stephen Andrews added to party Delaney Sharpe(pty:pla), Attorney Stephen Andrews added to party Erin Weiler(pty:pla))(Andrews, Stephen) (Entered: 07/22/2024) |
| 07/24/2024 | 135 | NOTICE of Related Case(s) filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Related Case(s): 2:15-cv-01801 (Franzini, Simon) (Entered: 07/24/2024) |
| 08/06/2024 | 136 | REQUEST TO WITHDRAW ATTORNEY Yeremey Krivoshey as counsel of record filed by Plaintiff Jenna Leder. (Attachments: # 1 Proposed Order) (Krivoshey, Yeremey) (Entered: 08/06/2024) |
| 08/06/2024 | 137 | REQUEST TO WITHDRAW ATTORNEY Yeremey Krivoshey as counsel of record filed by Plaintiff Erin Weiler. (Attachments: # 1 Proposed Order) (Krivoshey, Yeremey) (Entered: 08/06/2024) |

| 08/06/2024 | 138 | ORDER RE TRANSFER to this Court's General Order in the Matter of Assignment of Cases and Duties to the District Judges. (Related Case) filed. Transfer of case declined by Judge Philip S. Gutierrez, for the reasons set forth on this order. Related Case No. 2:15-cv-01801 PSG(AJWx) (rn) (Entered: 08/06/2024) |
|---|---|---|
| 08/06/2024 | 139 | REQUEST TO WITHDRAW ATTORNEY L. Timothy Fisher and Scott A. Bursor as counsel of record filed by Plaintiff Erin Weiler. (Attachments: # 1 Proposed Order) (Fisher, L.) (Entered: 08/06/2024) |
| 08/06/2024 | 140 | REQUEST TO WITHDRAW ATTORNEY L. Timothy Fisher and Scott A. Bursor as counsel of record filed by Plaintiff Jenna Leder. (Attachments: # 1 Proposed Order) (Fisher, L.) (Entered: 08/06/2024) |
| 08/07/2024 | 141 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 136 by Judge Fernando M. Olguin. The request of Yeremey Krivoshey to withdraw as attorney of record for Plaintiff Jenna Leder is GRANTED. (iv) (Entered: 08/07/2024) |
| 08/07/2024 | 142 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 137 by Judge Fernando M. Olguin. The request of Yeremey Krivoshey to withdraw as attorney of record for Plaintiff Erin Weiler is GRANTED. (iv) (Entered: 08/07/2024) |
| 08/07/2024 | 143 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 139 by Judge Fernando M. Olguin. The request of L. Timothy Fisher and Scott A Bursor to withdraw as attorney of record for Plaintiff Erin Weller is GRANTED. (iv) (Entered: 08/07/2024) |
| 08/07/2024 | 144 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 140 by Judge Fernando M. Olguin. The request of L. Timothy Fisher and Scott A Bursor to withdraw as attorney of record for Plaintiff Jenna Leder is GRANTED. (iv) (Entered: 08/07/2024) |
| 08/07/2024 | 145 | Notice of Appearance or Withdrawal of Counsel: for attorney Jacob Michael Harper counsel for Defendant GTs Living Foods, LLC. Adding Jacob Michael Harper as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Jacob Michael Harper added to party GTs Living Foods, LLC(pty:dft))(Harper, Jacob) (Entered: 08/07/2024) |
| 08/07/2024 | 146 | Notice of Appearance or Withdrawal of Counsel: for attorney Heather Fay Canner counsel for Defendant GTs Living Foods, LLC. Adding Heather F. Canner as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Heather Fay Canner added to party GTs Living Foods, LLC(pty:dft))(Canner, Heather) (Entered: 08/07/2024) |
| 08/07/2024 | 147 | Notice of Appearance or Withdrawal of Counsel: for attorney Kihyun Peter Bae counsel for Defendant GTs Living Foods, LLC. Adding Peter Bae as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Kihyun Peter Bae added to party GTs Living Foods, LLC(pty:dft))(Bae, Kihyun) (Entered: 08/07/2024) |
| 08/07/2024 | 148 | Notice of Appearance or Withdrawal of Counsel: for attorney Joseph Elie-Meyers counsel for Defendant GTs Living Foods, LLC. Adding Joseph Elie-Meyers as counsel of record for GT's Living Foods, LLC for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Attorney Joseph Elie-Meyers added to party GTs Living Foods, LLC(pty:dft))(Elie-Meyers, Joseph) (Entered: 08/07/2024) |

| 08/07/2024 | 149 | NOTICE OF MOTION AND MOTION to Dismiss for Lack of Jurisdiction *and for Judgment on the Pleadings; Memorandum of Points and Authorities* filed by Defendant GTs Living Foods, LLC. Motion set for hearing on 9/5/2024 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Proposed Order) (Harper, Jacob) (Entered: 08/07/2024) |
|---|---|---|
| 08/07/2024 | 150 | NOTICE OF MOTION AND MOTION to AMEND *FIRST AMENDED COMPLAINT* filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. Motion set for hearing on 9/5/2024 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Declaration of Simon Franzini, # 2 Exhibit 1 - Proposed Second Amended Complaint, # 3 Exhibit 2 - Redlined Second Amended Complaint, # 4 Exhibit 3 - Chart Showing Proposed Changes, # 5 Proposed Order) (Franzini, Simon) (Entered: 08/07/2024) |
| 08/09/2024 | 151 | Joint STIPULATION for Extension of Time to File Responses and Replies as to NOTICE OF MOTION AND MOTION to Dismiss for Lack of Jurisdiction *and for Judgment on the Pleadings; Memorandum of Points and Authorities* 149 , NOTICE OF MOTION AND MOTION to AMEND *FIRST AMENDED COMPLAINT* 150 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Declaration of Simon Franzini, # 2 Proposed Order)(Andrews, Stephen) (Entered: 08/09/2024) |
| 08/12/2024 | 152 | REQUEST TO WITHDRAW ATTORNEY Yeremey Krivoshey as counsel of record filed by Plaintiff Delaney Sharpe. (Attachments: # 1 Proposed Order) (Krivoshey, Yeremey) (Entered: 08/12/2024) |
| 08/12/2024 | 153 | REQUEST TO WITHDRAW ATTORNEY L. Timothy Fisher and Scott A. Bursor as counsel of record filed by Plaintiff Delaney Sharpe. (Attachments: # 1 Proposed Order) (Fisher, L.) (Entered: 08/12/2024) |
| 08/12/2024 | 154 | ORDER GRANTING JOINT STIPULATION 151 RE: EXTENDING BRIEFING OF THE PARTIES' MOTIONS AND RESCHEDULING HEARINGS by Judge Fernando M. Olguin. *See Order for dates and deadlines.* (iv) (Entered: 08/12/2024) |
| 08/12/2024 | 156 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 152 by Judge Fernando M. Olguin. Granting 152 Request to Substitute Attorney. (rolm) (Entered: 08/13/2024) |
| 08/12/2024 | 157 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 153 by Judge Fernando M. Olguin. Granting 153 Request to Substitute Attorney. (rolm) (Entered: 08/13/2024) |
| 08/13/2024 | 155 | REQUEST TO WITHDRAW ATTORNEY Yeremey Krivoshey as counsel of record filed by Plaintiff Adriana DiGennaro. (Attachments: # 1 Proposed Order) (Krivoshey, Yeremey) (Entered: 08/13/2024) |
| 08/13/2024 | 158 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 155 by Judge Fernando M. Olguin. Granting 155 Request to Substitute Attorney. (rolm) (Entered: 08/13/2024) |
| 08/13/2024 | 159 | REQUEST TO WITHDRAW ATTORNEY L. Timothy Fisher and Scott A. Bursor as counsel of record filed by Plaintiff Adriana DiGennaro. (Attachments: # 1 Proposed Order) (Fisher, L.) (Entered: 08/13/2024) |
| 08/14/2024 | 160 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OR WITHDRAWAL OF ATTORNEY 159 by Judge Fernando M. Olguin. The request of L. Timothy Fischer and Scott A. Bursor is GRANTED. (iv) (Entered: 08/14/2024) |

| | | |
|---|---|---|
| 09/05/2024 | 161 | OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss for Lack of Jurisdiction *and for Judgment on the Pleadings; Memorandum of Points and Authorities* 149 filed by Plaintiffs Adriana DiGennaro, Jenna Leder, Delaney Sharpe, Erin Weiler. (Attachments: # 1 Proposed Order)(Franzini, Simon) (Entered: 09/05/2024) |
| 09/05/2024 | 162 | Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint re: NOTICE OF MOTION AND MOTION to AMEND *FIRST AMENDED COMPLAINT* 150 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 09/05/2024) |
| 09/26/2024 | 163 | REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION to Dismiss for Lack of Jurisdiction *and for Judgment on the Pleadings; Memorandum of Points and Authorities* 149 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 09/26/2024) |
| 09/26/2024 | 164 | REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION to AMEND *FIRST AMENDED COMPLAINT* 150 filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro. (Franzini, Simon) (Entered: 09/26/2024) |
| 10/04/2024 | 165 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. On the court's own motion, the Motions to Dismiss 149 and 150 are taken off the 10/10/2024 calendar and placed under submission. No appearances are required on 10/10/2024. An order with the court's rulings will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vdr) TEXT ONLY ENTRY (Entered: 10/04/2024) |
| 11/24/2024 | 166 | NOTICE of Change of address by Jacob Michael Harper attorney for Defendant GTs Living Foods, LLC. Changing attorneys address to 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071. Filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 11/24/2024) |
| 12/17/2024 | 167 | MINUTES (IN CHAMBERS) ORDER by Judge Fernando M. Olguin. Plaintiffs' Motion for Leave to File Second Amended Complaint 150 is granted. Plaintiffs shall, no later than two court days from the filing date of this Order, file theirSecond Amended Complaint in compliance with Local Rule 3-2. Defendant's Motion to Dismiss 149 is denied as moot. Defendant shall file its Answer to the Second Amended Complaint or a motion by 12/30/2024. The parties shall, no later than 12/20/2024, file a proposed schedule. (vdr) (Entered: 12/17/2024) |
| 12/17/2024 | 168 | SECOND AMENDED COMPLAINT against Defendant All Defendants amending Amended Complaint/Petition 29 , filed by Plaintiffs Jenna Leder, Erin Weiler, Delaney Sharpe, Adriana DiGennaro, Amit Patel, Lauren Schmidt, Christopher Nunez (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Attorney Simon Carlo Franzini added to party Amit Patel(pty:pla), Attorney Simon Carlo Franzini added to party Lauren Schmidt(pty:pla), Attorney Simon Carlo Franzini added to party Christopher Nunez(pty:pla))(Franzini, Simon) (Entered: 12/17/2024) |
| 12/18/2024 | 169 | STIPULATION Extending Time to Answer the complaint as to GTs Living Foods, LLC answer now due 12/30/2024, re Amended Complaint/Petition,, 168 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Jacob M. Harper in Support of Stipulated Request to Extend Time to Respond to Complaint and to Modify Briefing Schedule, # 2 Declaration of Heather Canner in Support of Stipulated Request to Extend Time to Respond to Complaint and to Modify Briefing Schedule, # 3 Declaration of Joseph Elie-Meyers in Support of Stipulated Request to Extend Time to Respond to Complaint and to Modify Briefing Schedule, # 4 Declaration of Peter Bae in Support of Stipulated Request to Extend Time to Respond to Complaint and to Modify Briefing Schedule, # 5 Proposed Order)(Harper, Jacob) (Entered: 12/18/2024) |
| 12/19/2024 | 170 | ORDER GRANTING STIPULATED REQUEST 169 TO EXTEND TIME TO RESPOND TO COMPLAINT AND TO MODIFY BRIEFING SCHEDULE by Judge |

| | | Fernando M. Olguin. Defendant's motion to dismiss shall be filed on or before January 16, 2025. (iv) (Entered: 12/20/2024) |
|---|---|---|
| 01/16/2025 | 171 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendant GTs Living Foods, LLC. Motion set for hearing on 3/6/2025 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Proposed Order) (Harper, Jacob) (Entered: 01/16/2025) |
| 01/23/2025 | 172 | JOINT REPORT of PROPOSED SCHEDULE filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Amit Patel, Lauren Schmidt, Adriana DiGennaro, Christopher Nunez. (Franzini, Simon) (Entered: 01/23/2025) |
| 02/06/2025 | 173 | OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case 171 filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Amit Patel, Lauren Schmidt, Adriana DiGennaro, Christopher Nunez. (Franzini, Simon) (Entered: 02/06/2025) |
| 02/13/2025 | 174 | Notice of Appearance or Withdrawal of Counsel: for attorney Richard E Lyon, III counsel for Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Amit Patel, Lauren Schmidt, Adriana DiGennaro, Christopher Nunez. Adding Richard Lyon as counsel of record for Plaintiffs for the reason indicated in the G-123 Notice. Filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez. (Attorney Richard E Lyon, III added to party Delaney Sharpe(pty:pla), Attorney Richard E Lyon, III added to party Erin Weiler(pty:pla), Attorney Richard E Lyon, III added to party Jenna Leder(pty:pla), Attorney Richard E Lyon, III added to party Amit Patel(pty:pla), Attorney Richard E Lyon, III added to party Lauren Schmidt(pty:pla), Attorney Richard E Lyon, III added to party Adriana DiGennaro(pty:pla), Attorney Richard E Lyon, III added to party Christopher Nunez(pty:pla))(Lyon, Richard) (Entered: 02/13/2025) |
| 02/20/2025 | 175 | REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION to Dismiss Case 171 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 02/20/2025) |
| 02/28/2025 | 176 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. On the court's own motion, the Motion to Dismiss 171 is taken off the 3/6/2025 calendar and placed under submission. No appearances are required on 3/6/2025. An order with the court's ruling will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vdr) TEXT ONLY ENTRY (Entered: 02/28/2025) |
| 03/07/2025 | 177 | Notice of Appearance or Withdrawal of Counsel: for attorney Simon Carlo Franzini counsel for Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Amit Patel, Lauren Schmidt, Adriana DiGennaro, Christopher Nunez. Stephen D. Andrews is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana Digennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez. (Franzini, Simon) (Entered: 03/07/2025) |
| 09/30/2025 | 178 | MINUTES (IN CHAMBERS) ORDER by Judge Fernando M. Olguin. IT IS ORDERED THAT defendant's Motion 171 is granted in part and denied in part. The Motion is granted as to plaintiffs Sharpe, Weiler, Leder, and DiGennaro who are dismissed with prejudice. The Motion is denied in all other respects. (vdr) (Entered: 10/04/2025) |
| 10/20/2025 | 179 | ANSWER to Amended Complaint/Petition,, 168 with JURY DEMAND *ANSWER TO SECOND AMENDED COMPLAINT* filed by Defendant GTs Living Foods, LLC.(Harper, Jacob) (Entered: 10/20/2025) |
| 10/23/2025 | 180 | MINUTE ORDER IN CHAMBERS by Judge Fernando M. Olguin. Any remaining discovery shall be completed by 12/29/2025. Any renewed motion for class certification shall be filed by 2/27/2026. (vdr) (Entered: 10/23/2025) |

| 11/07/2025 | 181 | Joint STIPULATION to Extend Discovery Cut-Off Date to February 20, 2026, Joint STIPULATION for Extension of Time to File Motion for Class Certification filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration Declaration of Jacob M. Harper in Support of Stipulated Request to Amend Discovery and Class Certification Motion Deadlines, # 2 Proposed Order [Proposed] Order Granting Stipulated Request to Amend Discovery and Class Certification Deadlines)(Harper, Jacob) (Entered: 11/07/2025) |
| --- | --- | --- |
| 11/12/2025 | 182 | NOTICE OF REASSIGNMENT OF CASE due to Unavailability of Judicial Officer filed. The previously assigned Magistrate Judge is no longer available. Pursuant to directive of the Chief Magistrate Judge and in accordance with the rules of this Court, the case has been returned to the Clerk for reassignment. This case has been reassigned to Magistrate Judge Daniel S. Roberts for any discovery and/or post-judgment matters that may be referred. Case number will now read as 2:19-cv-10920-FMO-DSRx. (rolm) (Entered: 11/12/2025) |
| 11/13/2025 | 183 | MINUTE ORDER IN CHAMBERS by Judge Fernando M. Olguin. The Stipulation 181 is granted. Any remaining discovery shall be completed by 1/29/2026. Any renewed motion for class certification shall be filed no later than 3/30/2026. (vdr) (Entered: 11/13/2025) |
| 12/18/2025 | 184 | Joint STIPULATION to Extend Discovery Cut-Off Date to March 5, 2026 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Jacob Harper in Support of Stipulated Request to Further Amend Discovery Deadline, # 2 Proposed Order Granting Stipulated Request to Further Amend Discovery Deadline)(Harper, Jacob) (Entered: 12/18/2025) |
| 12/23/2025 | 185 | ORDER GRANTING STIPULATED REQUEST 184 TO FURTHER AMEND DISCOVERY DEADLINE by Judge Fernando M. Olguin. *See Order for Details.* (iv) (Entered: 12/23/2025) |
| 02/12/2026 | 186 | Notice of Appearance or Withdrawal of Counsel: for attorney Jonas Jacobson counsel for Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. Adding Jonas Jacobson as counsel of record for Plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez for the reason indicated in the G-123 Notice. Filed by Plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez. (Attorney Jonas Jacobson added to party Christopher Nunez(pty:pla), Attorney Jonas Jacobson added to party Amit Patel(pty:pla), Attorney Jonas Jacobson added to party Lauren Schmidt(pty:pla))(Jacobson, Jonas) (Entered: 02/12/2026) |
| 02/12/2026 | 187 | APPLICATION to File Under Seal Portions of Documents Designated by Plaintiffs as Confidential Pursuant to Protective Order filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Joseph Elie-Meyers in Support of Application for Leave to File Under Seal Portions of Documents Designated by Plaintiff as Confidential Pursuant to Protective Order, # 2 Proposed Order) (Harper, Jacob) (Entered: 02/12/2026) |
| 02/12/2026 | 188 | NOTICE OF MOTION AND MOTION to Compel Plaintiffs' Further Responses to Request for Production filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration Martin Brenner, # 2 Declaration Joseph Elie-Meyers, # 3 Proposed Order) (Harper, Jacob) (Entered: 02/12/2026) |
| 02/12/2026 | 189 | SEALED DOCUMENT *Declaration of Martin Brenner re Discovery Joint Stipulation* re Order 37 filed by Defendant GTs Living Foods, LLC.(Harper, Jacob) (Entered: 02/12/2026) |
| 02/12/2026 | 190 | SEALED DOCUMENT *Declaration of Joseph Elie-Meyers in Support of Joint Stipulation Pursuant to Loal Rule 37 for Motion to Compel* re Order 37 filed by |

| | | Defendant GTs Living Foods, LLC.(Harper, Jacob) (Entered: 02/12/2026) |
|---|---|---|
| 02/12/2026 | 191 | JOINT STIPULATION to MOTION to Compel Plaintiffs' Further Responses to Request for Production 188 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 02/12/2026) |
| 02/13/2026 | 192 | Notice of Appearance or Withdrawal of Counsel: for attorney Martin E. Brenner, III counsel for Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. Adding Martin Brenner as counsel of record for Plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez for the reason indicated in the G-123 Notice. Filed by Plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez. (Attorney Martin E. Brenner, III added to party Christopher Nunez(pty:pla), Attorney Martin E. Brenner, III added to party Amit Patel(pty:pla), Attorney Martin E. Brenner, III added to party Lauren Schmidt(pty:pla)) (Brenner, Martin) (Entered: 02/13/2026) |
| 02/17/2026 | 193 | DECLARATION of Martin Brenner re APPLICATION to File Under Seal Portions of Documents Designated by Plaintiffs as Confidential Pursuant to Protective Order 187 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Proposed Order)(Brenner, Martin) (Entered: 02/17/2026) |
| 02/18/2026 | 194 | ORDER GRANTING IN PART AND DENYING IN PART APPLICATION FOR LEAVE TO FILE UNDER SEAL PORTIONS OF DOCUMENTS DESIGNATED BY PLAINTIFFS AS CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER (DKT. 187) by Magistrate Judge Daniel S. Roberts. [SEE ORDER FOR DETAILS.] (san) (Entered: 02/18/2026) |
| 02/19/2026 | 195 | DECLARATION of Joseph Elie-Meyers re Joint Stipulation re Discovery Motion 191 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 02/19/2026) |
| 02/19/2026 | 196 | DECLARATION of Martin Brenner re Order on Motion for Leave, 194 , Joint Stipulation re Discovery Motion 191 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 02/19/2026) |
| 02/24/2026 | 197 | SUPPLEMENT to MOTION to Compel Plaintiffs' Further Responses to Request for Production 188 filed by Defendant GTs Living Foods, LLC. (Elie-Meyers, Joseph) (Entered: 02/24/2026) |
| 02/24/2026 | 198 | SUPPLEMENT to MOTION to Compel Plaintiffs' Further Responses to Request for Production 188 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Brenner, Martin) (Entered: 02/24/2026) |
| 03/10/2026 | 199 | MINUTES OF Hearing on DEFENDANT'S MOTION TO COMPEL (DOC. NO. 188 ) held before Magistrate Judge Daniel S. Roberts. Case is called. Proceedings are held in person. Counsel state their appearances for the record. The Court confers with counsel, hears oral argument, and orders the following: Defendant's Motion is DENIED as untimely. Formal Order to follow. IT IS SO ORDERED. Court Recorder: C/S 03/10/2026. (lkr) (Entered: 03/10/2026) |
| 03/10/2026 | 200 | ORDER DENYING DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S FURTHER RESPONSES TO REQUEST FOR PRODUCTION (DOC. NO. 188 ) by Magistrate Judge Daniel S. Roberts. The discovery cutoff in this case has passed; thus, this Court lacks authority to hear Defendant's instant Motion to Compel. The Motion is therefore denied on that basis, without prejudice to being refiled if the District Judge modifies the Scheduling Order to extend the deadline for hearing discovery motions. IT IS SO ORDERED. (See Order for further details.) (lkr) (Entered: 03/10/2026) |
| 03/20/2026 | 201 | APPLICATION to file document *Portions of Documents Submitted in Support of Joint Brief on Renewed Motion for Class Certification* under seal filed by Plaintiffs Christopher |

| | | |
|---|---|---|
| | | Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Proposed Order Granting Application to Seal, # 2 Redacted Document Exhibit 7 to Franzini Declaration, # 3 Redacted Document Exhibit 8 to Franzini Declaration, # 4 Redacted Document Exhibit 21 to Franzini Declaration, # 5 Redacted Document Exhibit 22 to Franzini Declaration, # 6 Redacted Document Exhibit 23 to Franzini Declaration, # 7 Redacted Document Exhibit 35 to Elie-Meyers Declaration, # 8 Redacted Document Exhibit 36 to Elie-Meyers Declaration)(Attorney Gabriel Zachiah Doble added to party Christopher Nunez(pty:pla), Attorney Gabriel Zachiah Doble added to party Amit Patel(pty:pla), Attorney Gabriel Zachiah Doble added to party Lauren Schmidt(pty:pla))(Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 202 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Portions of Documents Submitted in Support of Joint Brief on Renewed Motion for Class Certification* under seal 201 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Unredacted Document Exhibit 7 to Franzini Declaration, # 2 Unredacted Document Exhibit 8 to Franzini Declaration, # 3 Unredacted Document Exhibit 21 to Franzini Declaration, # 4 Unredacted Document Exhibit 22 to Franzini Declaration, # 5 Unredacted Document Exhibit 23 to Franzini Declaration, # 6 Unredacted Document Exhibit 35 to Elie-Meyers Declaration, # 7 Unredacted Document Exhibit 36 to Elie-Meyers Declaration, # 8 Proof of Service)(Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 203 | APPLICATION to file document *Portions of Documents Designated by Defendant as Confidential* under seal filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Proposed Order Granting Application to Seal, # 2 Redacted Document Exhibit 1 to Franzini Declaration, # 3 Redacted Document Exhibit 2 to Franzini Declaration, # 4 Redacted Document Exhibit 10 to Franzini Declaration, # 5 Redacted Document Exhibit 11 to Franzini Declaration, # 6 Redacted Document Exhibit 17 to Franzini Declaration, # 7 Redacted Document Exhibit W to McCarroll Declaration (Exhibit 27))(Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 204 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Portions of Documents Designated by Defendant as Confidential* under seal 203 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Unredacted Document Exhibit 1 to Franzini Declaration, # 2 Unredacted Document Exhibit 2 to Franzini Declaration, # 3 Unredacted Document Exhibit 10 to Franzini Declaration, # 4 Unredacted Document Exhibit 11 to Franzini Declaration, # 5 Unredacted Document Exhibit 17 to Franzini Declaration, # 6 Unredacted Document Exhibit W to McCarroll Declaration (Exhibit 27), # 7 Proof of Service)(Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 205 | APPLICATION to file document *Portions of Documents Designated by Circana Inc. as Confidential* under seal filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Proposed Order Granting Application to Seal, # 2 Redacted Document Exhibit 17 to Franzini Declaration)(Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 206 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Portions of Documents Designated by Circana Inc. as Confidential* under seal 205 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Unredacted Document Exhibit 17 to Franzini Declaration, # 2 Proof of Service)(Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 207 | Renewed NOTICE OF MOTION AND MOTION to Certify Class filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. Motion set for hearing on 4/23/2026 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Joint Brief on Plaintiffs' Renewed Motion for Class Certification, # 2 Index Re: Evidentiary Appendix in Support of Joint Brief, # 3 Redacted Document Evidentiary Appendix Vol. 1, # 4 Redacted |

| | | |
|---|---|---|
| | | Document Evidentiary Appendix Vol. 2, # 5 Evidentiary Appendix Vol. 3, # 6 Evidentiary Appendix Vol. 4, # 7 Evidentiary Appendix Vol. 5, # 8 Evidentiary Appendix Vol. 6, # 9 Evidentiary Appendix Vol. 7, # 10 Evidentiary Appendix Vol. 8, # 11 Evidentiary Appendix Vol. 9, # 12 Evidentiary Appendix Vol. 10, # 13 Redacted Document Evidentiary Appendix Vol. 11, # 14 Proposed Order Granting Plaintiffs' Renewed Motion for Class Certification, # 15 Proof of Service) (Doble, Gabriel) (Entered: 03/20/2026) |
| 03/20/2026 | 208 | NOTICE OF MOTION AND MOTION to Strike or Exclude Expert Reports of Dr. J. Michael Dennis; Colin B. Weir; Dr. Gary Spedding, and Bruce G. Silverman filed by Defendant GTs Living Foods, LLC. Motion set for hearing on 4/23/2026 at 10:00 AM before Judge Fernando M. Olguin. (Attachments: # 1 Declaration of Joseph Elie-Meyers, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Proposed Order) (Harper, Jacob) (Entered: 03/20/2026) |
| 03/25/2026 | 209 | STATEMENT *of Designating Non-Party Circana LLC Under L.R. 79-5.2.2(b)(I)* re: APPLICATION to file document *Portions of Documents Designated by Circana Inc. as Confidential* under seal 205 . (Attachments: # 1 Declaration of Brian Burke)(Kim, Jason) (Entered: 03/25/2026) |
| 03/25/2026 | 210 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Portions of Documents Designated by Defendant as Confidential* under seal 203 filed by Defendant GTs Living Foods, LLC.(Harper, Jacob) (Entered: 03/25/2026) |
| 04/01/2026 | 211 | APPLICATION for Leave to file Declaration of Joseph Elie-Meyers in support of Defendant's Application for Leave to File Under Seal Portion of Document Submitted in support of Motion to Strike or Exclude Expert Reports filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Proposed Order) (Harper, Jacob) (Entered: 04/01/2026) |
| 04/01/2026 | 212 | SEALED DOCUMENT *Declaration of Joseph Elie-Meyers in Support of Defendant's Application for Leave to File Under Seal Portion of Document Submitted in Support of Motion to Strike or Exclude Expert Reports* re APPLICATION for Leave to file Declaration of Joseph Elie-Meyers in support of Defendant's Application for Leave to File Under Seal Portion of Document Submitted in support of Motion to Strike or Exclude Expert Reports 211 , Order 37 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Proof of Service)(Harper, Jacob) (Entered: 04/01/2026) |
| 04/01/2026 | 213 | ORDER GRANTING PLAINTIFFS' APPLICATION 201 by Judge Fernando M. Olguin. (vdr) (Entered: 04/02/2026) |
| 04/01/2026 | 214 | ORDER GRANTING PLAINTIFFS' APPLICATION 203 by Judge Fernando M. Olguin. (vdr) (Entered: 04/02/2026) |
| 04/01/2026 | 215 | ORDER GRANTING PLAINTIFFS' APPLICATION 205 by Judge Fernando M. Olguin. (vdr) (Entered: 04/02/2026) |
| 04/02/2026 | 216 | STATEMENT *of Designating Non-Party Circana, LLC Under L.R. 79-5.2.2(b)(1)* re: APPLICATION for Leave to file Declaration of Joseph Elie-Meyers in support of Defendant's Application for Leave to File Under Seal Portion of Document Submitted in support of Motion to Strike or Exclude Expert Reports 211 . (Kim, Jason) (Entered: 04/02/2026) |
| 04/02/2026 | 217 | APPLICATION to file document *Designated by Defendant as Confidential and Portions of Document Designated by Defendant and Circana, Inc. as Confidential* under seal filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Proposed Order Granting Plaintiffs' Application for Leave to File Under Seal, # 2 Redacted Document Exhibit C to Plaintiffs' Opposition to Defendant's Motion to Strike or Exclude |

| | | |
|---|---|---|
| | | Expert Reports, # 3 Exhibit E to Plaintiffs' Opposition to Defendant's Motion to Strike or Exclude Expert Reports)(Jacobson, Jonas) (Entered: 04/02/2026) |
| 04/02/2026 | 218 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Designated by Defendant as Confidential and Portions of Document Designated by Defendant and Circana, Inc. as Confidential* under seal 217 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Unredacted Document Exhibit C to Plaintiffs' Opposition to Defendant's Motion to Strike or Exclude Expert Reports, # 2 Exhibit E to Plaintiffs' Opposition to Defendant's Motion to Strike or Exclude Expert Reports, # 3 Proof of Service)(Jacobson, Jonas) (Entered: 04/02/2026) |
| 04/02/2026 | 219 | OPPOSITION to NOTICE OF MOTION AND MOTION to Strike or Exclude Expert Reports of Dr. J. Michael Dennis; Colin B. Weir; Dr. Gary Spedding, and Bruce G. Silverman 208 filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Attachments: # 1 Declaration of Jonas Jacobson in Support of Plaintiffs' Opposition to Defendant's Motion to Strike or Exclude Expert Reports, # 2 Exhibit A, # 3 Exhibit B, # 4 Redacted Document Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I)(Jacobson, Jonas) (Entered: 04/02/2026) |
| 04/06/2026 | 220 | STATEMENT of Designating Non-Party Circana, LLC Under L.R. 79-5.2.2(b)(I) re: APPLICATION to file document *Designated by Defendant as Confidential and Portions of Document Designated by Defendant and Circana, Inc. as Confidential* under seal 217 filed by ThirdParty Plaintiff Circana LLC. (Attorney Jason Jonathan Kim added to party Circana LLC(pty:3pp))(Kim, Jason) (Entered: 04/06/2026) |
| 04/09/2026 | 221 | SUPPLEMENT to Renewed NOTICE OF MOTION AND MOTION to Certify Class 207 *(Plaintiffs' Supplemental Memorandum in Support of Renewed Motion for Class Certification)* filed by Plaintiffs Christopher Nunez, Amit Patel, Lauren Schmidt. (Doble, Gabriel) (Entered: 04/09/2026) |
| 04/09/2026 | 222 | Supplemental Brief in Opposition re: Renewed NOTICE OF MOTION AND MOTION to Certify Class 207 filed by Defendant GTs Living Foods, LLC. (Harper, Jacob) (Entered: 04/09/2026) |
| 04/09/2026 | 223 | REPLY in Support of NOTICE OF MOTION AND MOTION to Strike or Exclude Expert Reports of Dr. J. Michael Dennis; Colin B. Weir; Dr. Gary Spedding, and Bruce G. Silverman 208 filed by Defendant GTs Living Foods, LLC. (Attachments: # 1 Declaration of Joseph Elie-Meyers, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Harper, Jacob) (Entered: 04/09/2026) |
| 04/10/2026 | 224 | ORDER GRANTING APPLICATION 211 by Judge Fernando M. Olguin. (vdr) (Entered: 04/13/2026) |
| 04/10/2026 | 225 | ORDER GRANTING APPLICATION 217 by Judge Fernando M. Olguin. (vdr) (Entered: 04/13/2026) |
| 04/17/2026 | 226 | TEXT ONLY ENTRY by Chambers of Judge Fernando M. Olguin. On the court's own motion, the Motions 207 and 208 are taken off the 4/23/2026 calendar and placed under submission. No appearances are required on 4/23/2026. An order with the court's rulings will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vdr) TEXT ONLY ENTRY (Entered: 04/17/2026) |
| 06/17/2026 | 227 | Notice of Appearance or Withdrawal of Counsel: for attorney Joseph Elie-Meyers counsel for Defendant GTs Living Foods, LLC. Joseph Elie-Meyers is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by Defendant GT's Living Foods, LLC. (Elie-Meyers, Joseph) (Entered: 06/17/2026) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/02/2026 12:22:56 | | | |
| **PACER Login:** | imakyure | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-10920-FMO-DSR End date: 7/2/2026 |
| **Billable Pages:** | 29 | **Cost:** | 2.90 |

# EXHIBIT 3

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Yeremey O. Krivoshey (SBN 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
        ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (SBN 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail:  scott@bursor.com

*Attorneys for Plaintiffs*
*(additional counsel on signature page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, and ADRIANA DIGENNARO on Behalf of Themselves and all Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>      Defendant. | Case No.  2:19-cv-10920<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| --- | --- |

CLASS ACTION COMPLAINT

Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant GT's Living Foods, LLC ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1. GT's Living Foods, LLC has passed off millions of bottles of its wildly successful Enlightened Kombucha[1] beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages. Having been caught selling alcoholic kombucha beverages to unsuspecting customers in 2006 and 2010, Millennium decided to market and distribute an alcoholic version of its kombucha products (the "Classic" kombucha line) and a so called "non-alcoholic" version (the "Enlightened" line), knowing that omitting information on true alcohol content to give the impression there is a non-alcoholic line provides much greater market appeal and enables sales in far more retail locations. But the purported distinction between the "Classic" and "Enlightened" lines is a sham designed to confuse the public and government

---

[1] Enlightened Kombucha refers to every flavor of Defendant's Enlightened Synergy and Enlightened Kombucha beverages sold nationwide, as described herein, including, but not limited to, the following flavors: Original, Gingerade, Laveder Love, Hibiscus Ginger, Lemonade, Multi-Green, Bilberry Blessing, Cayennade, Tantric Turmeric, Heart Beet, Golden Sage, Cucumber Mint Lime, Karma Citra, Koffee, Strawberry Lemonade, Pomegranate Power, Rose Berry, Pink Lady Basil, Watermelon Wonder, Trilogy, Mystic Mango, Cosmic Cranberry, Guava Goddess, Gingerberry, Passionberry Bliss, Strawberry Serenity, Cherry Chia, Grape Chia, Raspberry Chia, and Black Chia. The various flavors of Enlightened Kombucha are substantially identical other than their flavor profile, as each flavor is above the 0.5 percent alcohol by volume threshold and understates the amount of sugar in the beverages. None of the flavors has the requisite government warning required for alcoholic beverages.

CLASS ACTION COMPLAINT                                                     1

regulators, as both lines of products contain alcohol levels far surpassing the legal limit for non-alcoholic beverages.

2. Further, Defendant greatly understates by omission the sugar content of its Enlightened Kombucha beverages on the products' labels, making consumers believe the beverages are healthier than they really are. Independent testing shows that Defendant's Enlightened Kombucha contains more than 15 percent more sugar than listed on the beverages' labels. Indeed, the undeclared high sugar content of Defendant's Enlightened Kombucha beverages contributes to the continued fermentation of the beverages after bottling. As discussed herein, such continued fermentation causes the Enlightened Kombucha line to cross the .5 percent alcohol by volume threshold set for non-alcoholic beverages.

3. Plaintiffs purchased numerous bottles of Defendant's Enlightened Kombucha beverages based on Defendant's misleading advertising and labeling of the products.

4. Plaintiffs seek relief in this action individually, and on behalf of all purchasers of Defendant's Enlightened Kombucha beverages, for Defendant's violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*., and New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349 ("NYGBL"), for breach of express and implied warranties, fraud, and unjust enrichment.

## PARTIES

5. Plaintiff Adriana DiGennaro is a citizen of New York, residing in Brooklyn. Between February 28, 2017 and the end of 2018, Ms. DiGennaro purchased Enlightened Kombucha in at least the following flavors: Trilogy, Cayennade, Gingerade, Watermelon Wonder, and Multi-Green. Plaintiff DiGennaro

CLASS ACTION COMPLAINT                                                    2

purchased Enlightened Kombucha at Fine Fare Supermarket in Brooklyn, New York. Plaintiff DiGennaro purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enligthened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff DiGennaro did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail location at which she made her purchases. Plaintiff DiGennaro would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff DiGennaro would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

6. Plaintiff DiGennaro had been sober (had not knowingly consumed alcohol) since 2012, and would not have risked breaking her sobriety by purchasing Enlightened Kombucha had she known that it contained spiked levels of alcohol.

7. Plaintiff Jenna Leder is a citizen of New Jersey, residing in Red Bank. Within the past three years (including after February 28, 2017), Plaintiff Leder purchased Enlightened Kombucha in at least the following flavors: Trilogy, Cayennade, Lemonade, Guava Goddess, Strawberry Serenity, and Cosmic Cranberry. Plaintiff Leder purchased Enlightened Kombucha at Whole Foods, Deans Natural Food Market, Wegmans, and Target in New Jersey, New York, and Delaware. Plaintiff Leder purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enligthened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning

CLASS ACTION COMPLAINT                                                    3

regarding the beverages' high alcohol content. Plaintiff Leder did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases. Plaintiff Leder would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Leder would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

8. Due to medical and health reasons, Plaintiff Leder does not knowingly consume any alcohol. When she consumed the Enlightened Kombucha she purchased, she experience feeling "buzzed," as if from alcohol. However, because Enlightened Kombucha is marketed as a non-alcoholic beverage, she did not know that those feelings were in fact from the alcohol in Enlightened Kombucha. Accordingly, Enlightned Kombucha put her health and recovery from a prior medical procedure in peril.

9. Plaintiff Erin Weiler is a citizen of California, residing in Beverly Hills. Within the past three years (including after February 28, 2017), Plaintiff Weiler purchased Enlightened Kombucha in at least the following flavors: Trilogy, Guava Goddess, Gingerade, Cayennade, Multi-Green, and Original. Plaintiff Weiler purchased Enlightened Kombucha at Whole Foods, Trader Joe's, and Erewhon Market in in the Los Angeles area. Plaintiff Weiler purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enligthened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Weiler did not have to show any identification of her age in order to purchase the

CLASS ACTION COMPLAINT 4

Enlightened Kombucha products.  The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases.  Plaintiff Weiler would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Weiler would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

10.    Plaintiff Weiler has been sober (has not knowingly consumed alcohol) since 2006, and would not have risked breaking her sobriety by purchasing Enlightened Kombucha had she known that it contained spiked levels of alcohol.

11.    Plaintiff Delaney Sharpe is a citizen of California, residing in Los Angeles.  Within the past two years, Plaintiff Sharpe purchased Enlightened Kombucha in at least the following flavors: Pink Lady Basil, Guava Goddess, Watermelon Wonder, and Trilogy.  Plaintiff Sharpe purchased Enlightened Kombucha at Whole Foods, Ralphs, and Sprouts in in the Los Angeles area and in Colorado.  Plaintiff Sharpe purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Enlightened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content.  Plaintiff Sharpe did not have to show any identification of her age in order to purchase the Enlightened Kombucha products.  The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases.  Plaintiff Sharpe would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Sharpe would have paid significantly less for

CLASS ACTION COMPLAINT                                                                                      5

the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

12. Plaintiff Sharpe was under the age of 21 (and over the age of 18) when she purchased Enlightened Kombucha, and remains under 21 years of age as of the date of this Complaint. Had Enlightened Kombucha been properly labeled as an alcoholic beverage, it would have been illegal for her to purchase the beverages. Because Enlightened Kombucha is an alcoholic beverage, it was unlawful for Defendant to manufacture and label the beverage as a non-alcoholic product and cause the beverage to be sold to Plaintiff Sharpe. Plaintiff Sharpe cannot lawfully purchase alcoholic beverages, and, accordingly, would not have purchased Enlightened Kombucha had she known that it is an alcoholic beverage.

13. Defendant GT's Living Foods, LLC is a Delaware corporation headquartered at 4646 Hampton St., Vernon, California 90058. Defendant manufactures, advertises, sells, distributes, and markets Enlightened Kombucha as alleged herein nationwide, including in California. Defendant's incomplete misleading marketing, advertising and product information concerning the sugar and alcohol content in Enlightened Kombucha was conceived, reviewed, approved, and otherwise controlled from Defendant's California headquarters. Defendant's misleading marketing concerning the alcohol and sugar content of Enlightened Kombucha was coordinated at, emanated from, and was developed at its California headquarters. All critical decisions regarding the misleading sugar and alcohol marketing of Enlightened Kombucha were made in California.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and Plaintiffs DiGennaro and Leder, as well as most members of the proposed

CLASS ACTION COMPLAINT                                                              6

class, are citizens of states different from the state of Defendant. Defendant has sold hundreds of thousands, if not millions, of bottles of Enlightened Kombucha.

15. This Court has general jurisdiction over Defendant because it is headquartered in California. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District and because Defendant is headquartered in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION
### Defendant's "Non-Alcoholic" Kombucha Beverages Are Greater Than .5% Alcohol By Volume

17. Defendant's GT's Kombucha Beverages – comprised of the "G.T.'s Kombucha" and "Synergy" brands - are nearly identical products, with nearly identical advertising, using different names. The name "kombucha" itself comes from the common name for what is essentially a fermented tea drink. Kombucha is made of tea that ferments for up to a month while a "blob" of bacteria known as "scoby" (for symbiotic colony of bacteria and yeast) floats on top. The scoby purportedly "eats the sugar, tannic acids, and caffeine in the tea, and creates a cocktail of live microorganisms." Basic chemistry explains that the scoby converts the sugar into carbon dioxide and alcohol. Defendant's "G.T.'s Kombucha" brand is advertised as 98 percent kombucha and 2 percent juice, while the bottles of the "Synergy" brand purportedly consist of 95 percent kombucha and 5 percent juice added for taste.

18. In 2010, major retailers throughout the country, including Whole Foods, were forced to immediately stop selling GT's kombucha beverages because it was

CLASS ACTION COMPLAINT 7

discovered that the beverages contained alcohol levels as high as 2.5 percent by volume, roughly five times the legal limit for non-alcoholic beverages. In response, Defendant released an "Enlightened" line of the products, named "Enlightened Synergy" and "GT's Enlightened Kombucha," and a "Classic" line of kombucha products. The Enlightened line was purportedly slightly altered to ensure that the products did not exceed the 0.5 percent alcohol by volume threshold, while the Classic retained the original alcoholic formula. Around the time of the labeling change, the labels of the "Classic" line stated:

NOTE TO OUR BELOVED FANS: GT's Kombucha is raw and alive, hand-crafted by nature and made with the best intentions. We refuse to do anything that could compromise our product's integrity or effectiveness. That's why we have chosen to modify our labeling instead of changing the way we make our products.

19.   A display on Defendant's website summarized that the "Classic" line retained the "Original" alcoholic formula:

Once An Original…Now A Classic.

We're proud to bring back the formula that started it all. Must be 21 years or older to purchase.



20. Currently, Defendant's website explains the difference between the "Classic" and "Enlightened" lines as follows:

> **What's the difference between GT's Enlightened Kombucha, GT's Classic Kombucha, and GT's Classic Gold Kombucha?**
>
> Did you know that we make two lines of Kombucha?  We do! The main difference is the level of alcohol in each offering and the color of the glass we bottle it in.
>
> ***GT's Enlightened Kombucha*** is served in clear glass bottles with white caps and available for people of all ages.
>
> ***GT's Classic Kombucha*** is served in dark amber bottles with black caps and contains over 0.5 – 1 % alcohol-by-volume.  For this reason, GT's Classic Kombucha is only available to those over 21…
>
> ***GT's Classic Gold Kombucha*** is our take on hard Kombucha. Each offering contains 3 % ABV, making it a better-for-you happy hour alternative for those over 21…[2]

21. Defendant's transition from a single line of kombucha beverages to two separate lines of kombucha beverages, the "Classic" and "Enlightened" lines, however, is a sham.  In fact, both the Classic and Enlightened versions of the products contain alcohol above the 0.5 percent by volume threshold set by Federal and State laws regulating the sale, marketing, labeling, and distribution of alcoholic beverages.

22. The front of the labels of the Classic line, including Classic Kombucha and Classic Synergy, have, at various time, bore a prominent display stating, in capitalized letters, "CONTAINS ALCOHOL MUST BE 21 OR OLRDER TO PURCHASE."  The beverages' caps or lids are wrapped in a removable wrapping

---

[2] https://gtslivingfoods.com/faq/raw-kombucha/ (last accessed on November 15, 2019) (bolding and emphasis in original).

CLASS ACTION COMPLAINT                                                                 9

stating "over 21."  The Classic line of beverages also include the following federally mandated government warning on their labels:

> GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

Just below the government warning, the Classic labels have stated: "Kombucha is a cultured tea that is low in alcohol however federal law requires a warning statement on any product that may contain more than 0.5% of alcohol per volume."



23.    Just below the Nutrition Facts section, the Classic labels have stated: "**This product is considered a beer** and contains a natural effervescence.  Please open carefully." (emphasis added).

24.    The labels of the Enlightened line, however, do not contain any of the aforementioned displays, warnings, or markings concerning the alcohol content of the beverages.  Unlike the Classic line, Defendant sells Enlightened Kombcuha to persons of any age, including those under the age of 21.

CLASS ACTION COMPLAINT                                                                          10

25. Indeed, Defendant actively promotes Enlightened Kombucha as non-alcoholic and promotes its consumption even for children and pregnant women. The Frequently Asked Questions section of Defendant's website states:

**Can children drink GT's Enligthened Kombucha?**

Our Enlightened Kombucha can be safe for children and can also be a better-for-you alternative to sugary juices and soda…

**Can I drink GT's Enlightened Kombucha if I'm pregnant or breastfeeding?**

We have heard from many mothers who continue to drink Kombucha during pregnancy and while breastfeeding…

**I heard that there is alcohol in Kombucha. Why is this?**

Alcohol is a natural byproduct of fermentation and can be found in all fermented foods, like miso, kefir, sauerkraut, and kimchi. This alcohol is very beneficial, as it provides a natural form of food preservation – Nature's self-defense against contamination and bacteria.

<u>Sometimes people mistake the feeling they get from drinking Kombucha for a "buzzed" feeling, yet this is not the case with our Enlightened Kombucha. It's simply the detoxifying effect that can occur from the influx of probiotics</u>…[3]

26. As discussed above, however, the "buzzed" feeling people feel from drinking Enlightened Kombucha is from the alcohol in the beverages, not from a purported "detoxifying effect," as stated on Defendant's website. Defendant's marketing is incredibly dangerous as it attempts to convince people that the "buzz" they feel from drinking Defendant's alcoholic beverages is not actually due to alcohol, and, accordingly, that there is nothing to worry about. Defendant, in effect, actively encourages people to distrust their own feelings of alcohol intoxication and convince them that their feelings of alcohol intoxication are not real.

---

[3] *Id*. (underlining added).

CLASS ACTION COMPLAINT 11

27.     While pasteurized versions of kombucha products are non-alcoholic, as the pasteurization kills the yeast in the kombucha, the raw (unpasteurized) versions of kombucha become alcoholic over time as the living yeast in the beverage converts sugars into alcohol.  Such natural conversion of sugar to alcohol in unpasteurized kombucha beverages can result in alcohol levels as high as 4 percent alcohol by volume, roughly the same alcohol content as regular beer.

28.     Because both the "Classic" and "Enlightened" versions of Defendant's kombucha beverages are unpasteurized, each set of beverages predictably undergoes a natural fermentation process where the yeast in the beverages converts the sugar in the products into alcohol.  While Defendant claims that it has found a way to brew its Enlightened line of products such that the products never cross the 0.5 percent alcohol threshold post-bottling, many rigorous independent tests uniformly show that each of the beverages in the Enlightened line contains greater than 0.5 percent alcohol by volume, and are often as alcoholic as their "alcoholic" "Classic" counterpart.

29.     One of the major reasons that both the Enlightened and Classic lines become alcoholic is because the beverages' labels vastly underreport the amount of sugar in the products.  As discussed above, the yeast in these raw kombucha beverages converts the high sugar content into alcohol.  Aside from causing the Enlightened Kombucha beverages to become alcoholic, the misrepresented sugar content of Enlightened Kombucha causes the beverages to be less healthy than advertised.[4]  The misrepresented amount of sugar in Enlightened Kombucha, by omitting to disclose the full amount,  is misleading to consumers and misled the Plaintiffs, and causes the products to be misbranded.

---

[4] *See, e.g.*, KRISTIN KIRKPATRICK, M.S., R.D., L.D., 10 THINGS YOU DON'T KNOW ABOUT SUGAR (The Huffington Post, 2013) (summarizing that high sugar diets can be the source of obesity, heart failure, and cancer).

CLASS ACTION COMPLAINT                                                                              12

**Defendant's History Of Fraudulently Manufacturing Kombucha Beverages With Alcohol Levels Above The 0.5 Percent Alcohol By Volume Threshold**

30. Defendant's fraudulent marketing and labeling of its kombucha beverages as non-alcoholic, when in fact they contain substantial amounts of alcohol, stretches back at least several years before the 2010 recall, and likely to the formation of the company in 1995.

31. For example, on September 1, 2006, Defendant (through a related entity) reached a settlement with the Bureau of Alcohol, Tobacco and Firearms (currently operating as the Alcohol and Tobacco Tax and Trade Bureau or "TTB") for selling kombucha beverages "that contained over 0.5% alcohol without having a basic permit, a violation of 27 U.S.C. 203(b)(1)&(2) and 27 CFR 24.106" and for selling such beverages "without the proper labels [or] labels approvals," and for distributing the products "without the government warning statement, a violation of 27 U.S.C. 215(a) and 27 CFR 16.21."[5]

32. In 2010, an inspector from the Maine Department of Agriculture noticed that some bottles of kombucha were leaking and bubbling in one of Whole Foods' Portland stores, sparking Federal Drug Administration ("FDA") and TTB investigations concerning the alcohol content of various kombucha products, including GT's Kombucha. After it was discovered that many kombucha products had alcohol levels as high as 2.5 percent by volume, Whole Foods pulled kombucha products, including GT's Kombucha products, off the shelves.

33. Several other manufacturers of kombucha beverages, such as Honest Tea, owned and operated by the Coca-Cola Company, were unable to reformulate their kombucha beverages to ensure that the products never crossed the 0.5 alcohol by volume threshold at retail or consumption. "Despite reformulating its kombucha drinks in August 2010, Honest Tea found that the level of alcohol in Honest

---

[5] A copy of the charge and settlement agreement is attached to this Complaint as Exhibit 1.

CLASS ACTION COMPLAINT 13

Kombucha – when left at room temperature – increased beyond 0.5 percent. Citing the difficulty in maintaining legal alcohol levels, Honest Tea discontinued the line in December 2010."[6]

34. Defendant's C.E.O., GT Dave, however, "was unwilling to radically change [its] process." While "[s]ome brewers use pasteurization to help control the alcohol content in their products, or ferment for shorter periods and add forced carbonation," GT Dave claimed that Defendant "changed the potential for alcohol by controlling the chemistry of the fermentation" for its Enlightened line of kombucha beverages.[7] As described above, the Enlightened line is a "raw" and "unpasteurized" kombucha, necessarily meaning that the beverages continue to ferment and increase in alcohol over time, especially if left unrefrigerated for even short periods of time. Whatever changes Defendant made to its Enlightened line, if any, are ineffective at curbing the accumulation of alcohol in the products past 0.5 percent alcohol by volume through the normal and expected use of the products.

**Testing from TTB Accredited Laboratories Shows that Enlightened Kombucha has Greater than 0.5 Percent Alcohol by Volume**

35. Brewing & Distilling Analytical Services, LLC ("BDAS"), an Alcohol and Tobacco Tax and Trade Bureau certified laboratory, conducted tests on multiple batches of Enlightened Kombucha. BDAS utilized scientifically valid, TTB approved methodology for testing kombucha beverages. Each test showed that every bottle of the products tested contained a level of alcohol by volume greater than 0.5 percent. Specifically, in February 2018, BDAS tested the alcohol by volume content of the following flavors of Defendant's Enlightened Kombucha: Multi-Green,

---

[6] Ray Latif, *Kombucha Class Action Suits Settled with GT's, Honest Tea*, BevNet.com, Nov. 8, 2011. Available at http://www.bevnet.com/news/2011/kombucha-class-action-suits-settled-with-gts-honest-tea (last accessed December 26, 2019).
[7] Tom Foster, *Meet the King of Kombucha*, Inc., March 2015. Available at http://www.inc.com/magazine/201503/tom-foster/the-king-of-kombucha.html (last accessed December 26, 2019).

---

CLASS ACTION COMPLAINT

Strawberry Serenity, and Original.  The alcohol by volume content of these samples ranged between 0.59 -1.40 percent alcohol by volume.  Then, in September 2019, BDAS tested the alcohol by volume content of the following flavors of Defendant's Enlightened Kombucha: Gingerberry, Strawberry Serenity, Watermelon Wonder, Passionberry Bliss, Guava Goddess, Pink Lady Basil, Trilogy, Lavender Love, Heart Beet, Tantric Tumeric, Gingerade, Original, Hibiscus Ginger, Cayennade, Lemonade, Multi-Green, Raspberry Chia, Cosmic Cranberry, and Mystic Mango. The alcohol by volume content of these samples ranged between 0.71 and 2.21 percent alcohol by volume.  At the time of the testing, none of the products had passed their stated expiration date.  Not a single product tested was below the federally mandated 0.5 percent alcohol by volume limit.

36.     In September 2019, BDAS also tested all of the same samples of Enlightened Kombucha (as discussed above) to determine the beverages' sugar content.  BDAS's test results showed that Enlightened Kombucha beverages contain more than 15 percent more sugar than declared on the beverages' labels.

37.     Multiple other independent laboratories have tested Defendant's Enlightened Kombucha products and have seen nearly identical results.  For instance, in February 2019, Blake Ebersole, one of the foremost experts in kombucha alcohol testing in the United States, tested 29 samples of Defendant's Enlightened Kombucha products using AOAC Official Method of Analysis AOAC 2016.12, a gas chromatography with flame ionization detection (GC-FID) with headspace autosampling methodology, run by Covance-Eurofins Laboratory.  Mr. Ebersole found that "[a]ll 29 [Enlightened Kombucha] samples tested contained greater than 0.5 percent alcohol by volume (% ABV), with results ranging from 0.64 – 1.85% ABV.  This is between 28% and 370% higher than the legal limit of 0.5% ABV."  A copy of Mr. Ebersole's declaration, which discusses his testing methodology and results, as attached to the Complaint as Exhibit 2.

---

CLASS ACTION COMPLAINT                                                                 15

38. Mr. Ebersole also "conducted testing in December 2015 and July 2016 using the same analytical method (AOAC 2016.12) at Covance on 21 [Enlightened Kombucha] samples. All 21 [Enlightened Kombucha] samples contained greater than 0.5% ABV, ranging from 1.09 – 1.96% ABV. This is between 218 and 392% higher than the legal limit of 0.5% ABV." *See* Exhibit 2, at ¶ 12(b).

39. Mr. Ebersole also "conducted testing in March 2016 within a method verification and round-robin study that yielded four candidate methods from three laboratories (including the headspace GC-FID method). [Mr. Ebersole] found consistency in results among the laboratories on four [Enlightened Kombucha] samples that all contained greater than 0.5% ABV. In this round of testing, alcohol in [Enlightened Kombucha] ranged from 1.27-1.51% ABV. This is between 254 and 302% higher than the legal limit of 0.5% ABV." *See* Exhibit 2, at ¶ 12(c).

40. For all of Mr. Ebersole's testing, the samples were purchased directly from retailers' refrigerated shelves, from non-alcoholic beverage refrigerated sections of the stores that were separate from the alcoholic beverage sections. The samples were not expired. Samples were transported in refrigerated conditions, ensuring that the samples were kept cold at all times. *See* Exhibit 2, at ¶¶ 35-40, 61-72.

41. Mr. Ebersole also reported that Enartis Vinquiry conducted testing of 46 bottles of Enlightened Kombucha in 2017 and 2018 using GC-FID. "The samples contained an average of 1.16% ABV, ranging from 0.60 to 2.05%." *See* Exhibit 2, at ¶ 12(d).

42. Mr. Ebersole also reported that these results "for alcohol in [Enlightened Kombucha] are consistent with results independently reported by others in the published literature:"

For example, in 2015 John Edwards, Ph.D. from Process NMR Associates analyzed three samples of [Enlightened Kombucha] in 2015 using a nuclear

magnetic resonance method.  He found all three samples had alcohol levels higher than 0.5% ABV, ranging from 1.23-1.40 % ABV, reflecting alcohol levels 246%-280% higher than the 0.5% limit.  In 2017, Daniel Armstrong, Ph.D. and colleagues at the University of Texas analyzed eight samples of [Enlightened Kombucha] using headspace GC-FID, and found they all exceeded 0.5% alcohol, reporting a range of 1.1%-1.8% ABV in the drinks.  This reflects an amount that is 220%-360% higher than the 0.5% ABV limit for non-alcoholic beverages.

**Every Enlightened Kombucha Bottle Violates A Host of Federal and State Laws Regulating The Labeling Of Alcoholic Beverages**

43.     Prior to a recent update, the Alcohol and Tobacco Tax and Trade Bureau's website stated that "TTB's initial testing of kombucha in the marketplace reveals that many of these products contain at least 0.5 percent alcohol by volume. These products are alcohol beverages and are consequently subject to regulation."[8] The TTB stated that its "primary concern is to ensure that consumers are not misled about the nature of alcohol beverage products that might be marketed as non-alcoholic beverages.  It is important that consumers are adequately informed about the nature of these products."

44.     The TTB's current website shows that the concern over alcohol in kombucha beverages persists.  "Some kombucha products contain 0.5% or more alcohol by volume.  These products are alcohol beverages ... It is important to note that regardless of the alcohol content of the finished beverage, when kombucha reaches 0.5% alcohol or more by volume at any time during the production process, it must be produced on a TTB-qualified premises and is subject to TTB regulation. Thus, for example, a producer of a kombucha-style beer that reaches an alcohol content of 1.2% alcohol by volume during production must qualify as a brewer and

---

[8] https://web.archive.org/web/20150818084444/http://www.ttb.gov/faqs/kombucha-faqs.shtml

CLASS ACTION COMPLAINT                                                                    17

comply with TTB regulations in 27 CFR part 25, even if the finished product is a non-alcoholic beverage (containing less than 0.5% alcohol by volume)."[9]

45.     According to the TTB, "[e]ven though a kombucha beverage may have less than 0.5% alcohol by volume at the time of bottling, fermentation may continue in the bottle after it leaves the production facility, depending on how the kombucha beverage is made and stored.  As a result, the alcohol content may increase to 0.5% or more alcohol by volume.  Such a product is an alcohol beverage, which is subject to the laws and regulations governing the production, taxation, labeling, marketing, and distribution of alcohol beverages."[10]

46.     The TTB makes clear that distributors and manufacturers (such as Defendant) cannot escape liability for failing to include the required alcohol warning statement even if the beverages become alcoholic *after* they are sold downstream to retailers or consumers that fail to refrigerate the beverages.  "Refrigeration of the product is not an adequate method of ensuring that the alcohol content will not increase while in the original container after removal because, among other things, you cannot control whether the product will be refrigerated after removal."[11]

47.     In the Frequently Asked Questions portions of its website, the TTB explains in a series of questions and answers the various labeling requirements kombucha beverages must meet if they have more than 0.5 percent alcohol by volume.  One of the questions is "Are kombucha containers required to bear a health warning statement?"  The TTB answers, "Yes, if the kombucha beverage contains 0.5 percent or more alcohol by volume.  The container of any alcohol beverage sold or distributed in the United States with an alcohol content of 0.5 percent or more must bear the health warning statement required by the Alcoholic Beverage Labeling Act of 1988," citing 27 C.F.R. § 16.  In turn, 27 C.F.R. § 16.10 defines "Alcoholic

---

[9] https://www.ttb.gov/kombucha/kombucha-general#testing
[10] *Id.*
[11] *Id.*

---

CLASS ACTION COMPLAINT                                                           18

beverage" as "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption." 27 C.F.R. § 16.20 goes on to state that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the health warning statement required by § 16.21."

48.     27 C.F.R. § 16.21 states that "[t]here shall be stated on the brand label or separate front label, or on a back or side label, separate and apart from all other information, the following statement: GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."  The labels of Enlightened Kombucha do not bear this warning.

49.     Within the past year, the TTB's website has also stated that certain "beers," including kombucha products, "that [are] made without both malted barley and hops .... must ... comply with FDA labeling requirements.  Such products are still subject to the marking requirements of the IRC and the health warning statement requirements of ABLA."[12]  The FDA clarifies that such alcoholic beverages are subject to the nutrition labeling requirements set out at 21 C.F.R. 101.9, and the general requirements of 21 C.F.R. 101.3 and 21 C.F.R. 101.4.[13]  Because Enlightened Kombucha is "made without both malted barley and hops," Enlightened Kombucha is also subject to the general nutrition labeling requirements set out by the FDA.  Accordingly, the labels of Enlightened Kombucha are subject to the "false and misleading" standard of 21 U.S.C. § 343(a)(1) and the corresponding state law

---

[12]https://web.archive.org/web/20180726103232/https://www.ttb.gov/kombucha/kombucha-general.shtml (last accessed November 15, 2019).

[13] U.S. Food and Drug Administration, *Guidance for Industry: Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug Administration*, December 2014.  Available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-labeling-certain-beers-subject-labeling-jurisdiction-food-and-drug-administration (last accessed November 15, 2019).

counterparts that track the federal standards. *See, e.g.*, Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act … shall be the food labeling regulations of this state."); 1 N.Y.C.R.R. § 259.1 (same). Because Enlightened Kombucha contains alcohol above 0.5 percent by volume, it is misbranded under the FDA's labeling requirements, and the corresponding state law counterparts that track the federal standards.

50. Defendant's sale and marketing of Enlightened Kombucha as a non-alcoholic beverage also violates a host of State consumer health and safety regulations. For example, California Health & Safety Code Section 25249.2 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." The method of warning should be a warning that appears on the product's label. *See* 27 Cal. Code of Reg. § 25603(c). Pursuant to Proposition 65, the Safe Drinking Water and Toxic Enforcement Act ("Proposition 65"), California recognizes "Ethyl alcohol in alcoholic beverages" as a chemical known to cause reproductive toxicity. 27 Cal. Code of Reg. § 27001(c). "Alcoholic beverage" includes "every liquid or solid containing alcohol, spirits, wine, or beer, and which contains one-half of one percent or more of alcohol by volume and which is fit for beverage purposes either alone or when diluted, mixed, or combined with other substances." *Consumer Cause, Inc. v. Arkopharma, Inc.* (2003) 106 Cal. App. 4th 824, 829 (citing Cal. Bus. & Prof. Code § 23004). Because Enlightened Kombucha in fact contains "one-half of one percent or more of alcohol by volume," but the labels do not bear the appropriate warning, the products violate Proposition 65. A warning statement identical to the one

prescribed by 27 C.F.R. § 16.21 would suffice to comply with the law and to notify consumers.

51.     Under federal law, Defendant cannot turn a blind eye to what happens to Enlightened Kombucha products after they leave Defendant's facilities. Considering that Defendant has repeatedly been caught selling kombucha beverages that contained elevated amounts of alcohol, Plaintiff alleges on information and belief that Defendant knowingly and willfully distributes Enlightened Kombucha in violation of Federal and State laws that require such beverages to contain the government warning, as set out above.

52.     Defendant's sale and marketing of Enlightened Kombucha as non-alcoholic, low sugar beverages, by omitting to disclose their true content, is highly misleading to a reasonable consumer, including Plaintiffs.  Because Enlightened Kombucha does not include the required warnings concerning the significant presence of alcohol, consumers, including Plaintiffs, are led to believe that the products are safe to consume when driving a car, operating machinery, and taking with potentially a deadly cocktail of incompatible medications.

53.     Defendant made, and continues to make, unlawful and misleading claims on the labels of Enlightened Kombucha that are prohibited by identical federal and state laws, and which render these products misbranded.  Under federal and state law, Enlightened Kombucha cannot legally be manufactured, distributed, held, or sold.

54.     Defendant's unwillingness to treat the 0.5 alcohol by volume threshold seriously can be seen through Defendant's C.E.O.'s statements in 2010 concerning being forced to release the Enlightened line due to the recall.  Defendant's C.E.O. stated in an interview:

> The whole .5% alcohol threshold is so arbitrary.  It's acting like .4% is not going to do anything but .6% is gonna get you wasted.  It's not.  A lot of these

CLASS ACTION COMPLAINT                                                        21

laws and regulations were created in the 1920's.  You can get more alcohol in your system from mouthwash, cough syrup, vanilla extract, cooking wine, an herbal tincture or a dozen other products…It's a little distorted.[14]

In another interview given around the same time, Defendant's C.E.O. stated:

Most of these laws [regarding alcohol content of store-sold beverages] were written around the prohibition period, and the .5 percent threshold is very arbitrary – **there is really no difference with a product that is slightly below or above**…Our long-term goal is to change legislation, a mission that will take some time.  **We are being asked to control something that is out of our control**…That's why it was a confusing time.[15]

(emphasis added).  But whatever long-term goals Defendant may have about changing legislation are irrelevant to the fact that the 0.5 alcohol by volume threshold is the law of the land.  There is a very big difference between a beverage under and over this limit, as underscored throughout federal and state law in this field going back to the 1930's, the fall of prohibition, and before.  One is lawful and the other is not.  Further, as discussed above, the Enlightened line is not "slightly" above the legal limit.  In fact, many, if not most, of the beverages in the Enlightened line are at least double the legal limit, with some reaching over four times the legal limit.  If the natural fermentation of the Enlightened line, such that the beverages become more alcoholic than permitted by law, is "something that is out of [Defendant's] control," Defendant cannot and should not sell the products.

55.  Defendant's marketing of the Enlightened line as the non-alcoholic version of its Classic line is highly misleading to a reasonable consumer.  Because

---

[14] Kombuchakamp.com, *GT Dave – Exclusive Interview*, 2010.  Available at https://www.kombuchakamp.com/update-gts-original-enlightened-kombucha-on-the-way-will-stay-raw-and-true-to-ourselves (last accessed on November 15, 2019).

[15] Kelly Green, *What Happened to GT Dave's Kombucha?*, Phoenix New Times, Oct. 21, 2010.  Available at http://www.phoenixnewtimes.com/restaurants/what-happened-to-gt-daves-kombucha-6533129 (last accessed on November 15, 2019).

the Enlightened products omit the appropriate warnings and are sold to consumers of all ages, consumers, including Plaintiffs, are led to believe that the products are safe to consume when driving a car or operating machinery and pose no safety concerns. Like any other forms of alcohol, Enlightened Kombucha may in fact cause health problems, is not safe to consume while driving or operating machinery, and may increase the chance of birth defects if consumed during pregnancy. For these reasons, Enlightened Kombucha must bear the government warning mandated by 27 C.F.R. § 16.21 and is misbranded under State and Federal law.

56. Defendant made, and continues to make, unlawful and misleading claims on the labels of Enlightened Kombucha that are prohibited by identical federal and state laws, and which render these products misbranded. Under federal and state law, Enlightened Kombucha cannot legally be manufactured, distributed, held, or sold.

## CLASS REPRESENTATION ALLEGATIONS

57. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, between February 28, 2017 and the date that class notice is disseminated, purchased Enlightened Kombucha.

58. Plaintiffs Weiler and Sharpe also seek to represent a subclass defined as all members of the Class who purchased Enlightened Kombucha in California (the "California Subclass").

59. Plaintiffs Leder and DiGennaro also seek to represent a subclass defined as all members of the Class who purchased Enlightened Kombucha in New York (the "New York Subclass").

60. Plaintiff Sharpe also seeks to represent a subclass defined as all members of the Class who purchased Enlightened Kombucha and were between the

CLASS ACTION COMPLAINT 23

ages of 18 to 21 (not including persons aged 21 or older, or under the age of 18) at the time of purchase (the "Under 21 Subclass").

61.　Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

62.　Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

63.　Also excluded from the Class are persons or entities that purchased Enlightened Kombucha for purposes of resale.

64.　Plaintiffs are members of the Class they seek to represent.

65.　Defendant sell hundreds of thousands, if not millions, of bottles of Enlightened Kombucha. Enlightened Kombucha is available in major supermarkets nationwide, including in California and New York. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, third party retailers, and vendors.

66.　Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Enlightened Kombucha is misbranded, and whether the labeling, marketing and promotion of Enlightened Kombucha is false and misleading.

67.　The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to and relied on Defendant's false,

CLASS ACTION COMPLAINT　24

misleading and misbranded labels (and were influenced by the material omissions on the labels), purchased Enlightened Kombucha, and suffered losses as a result of those purchases.

68. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

69. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation Of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, et seq.

70. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

---

CLASS ACTION COMPLAINT                                                                 25

71.    Plaintiffs bring this claim individually and on behalf of members of the proposed Class against Defendant.  Plaintiffs Weiler and Sharpe also bring this claim individually and on behalf of members of the proposed California Subclass against Defendant.  Plaintiff Sharpe also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

72.    Plaintiffs and Class members are consumers who purchased Enlightened Kombucha for personal, family or household purposes.  Plaintiffs and the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

73.    The Enlightened Kombucha that Plaintiffs and Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

74.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

75.    Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the omission or absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The omission and lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol

CLASS ACTION COMPLAINT                                        26

addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

76. Further, Defendant's omission on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised.

77. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular characteristics, benefits and quantities of the goods.

78. Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular standard, quality or grade of the goods.

79. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or

CLASS ACTION COMPLAINT                                                                    27

fraudulent acts or practices, in that Defendant advertises goods with the intent not to sell the goods as advertised.

80. Plaintiffs and the Class acted reasonably when they purchased Enlightened Kombucha based on their belief that Defendant's representations were accurate, true and lawful.

81. Plaintiffs and the Class suffered injuries caused by Defendant because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

82. More than thirty-days prior to filing this action, CLRA notice letters were served on Defendant which comply in all respects with California Civil Code § 1782(a). Plaintiffs, collectively, on behalf of themselves and the proposed Class, served letters via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. True and correct copy of Plaintiffs' letters are attached hereto as Exhibits 3 and 4.

83. Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT II

### Violation Of California's Unfair Competition Law, California Business & Professions Code §§ 17200, et seq.

84. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

85. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

86. Plaintiff Weiler and Sharpe also bring this claim individually and on behalf of members of the proposed California Subclass against Defendant. Plaintiff Sharpe also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

87. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

88. Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the omission and absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

89. Further, Defendant's omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the labels makes such advertising false and misleading to a reasonable consumer,

CLASS ACTION COMPLAINT                                                                      29

including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised.

90. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the FDCA [21 U.S.C. 343(r)(1)(a)], California Health & Safety Code § 110670, 27 C.F.R. § 16, California Health & Safety Code Section 25249.2, the CLRA, the FAL and other applicable law as described herein.

91. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and has been declared misleading and harmful to consumers by the TTB and the FDA. Creating consumer confusion regarding the amount of sugar and alcohol in Enlightened Kombucha is of no benefit to consumers. Defendant's advertising of Enlightened Kombucha as the non-alcoholic version of Millennium's "Classic" line and the fact that the labels of Enlightened Kombucha do not bear the requisite government warnings concerning the presence of significant amounts of alcohol causes the products to pose a threat to public health, safety, and morality. Consumers are unwittingly purchasing and consuming Enlightened Kombucha products prior to driving a car or operating machinery and while pregnant or under 21 years of age. Such practices are of no benefit to consumers.

92. Defendant violated the "fraudulent" prong of the UCL through omitting the required government warning concerning alcohol and selling the products alongside non-alcoholic beverages when, in fact, the products contain a substantial amount of alcohol. Defendant also violated the fraudulent prong by omitting the fact

CLASS ACTION COMPLAINT                                                    30

that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels.

93. Plaintiffs and the Class acted reasonably when they purchased Enlightened Kombucha based on their belief that Defendant's representations were not misleading, true and lawful.

94. Plaintiffs and the Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

## COUNT III

### Violation Of California's False Advertising Law, California Business & Professions Code §§ 17500, et seq.

95. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

96. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

97. Plaintiffs Weiler and Sharpe also bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant. Plaintiff Sharpe also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

98. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or

CLASS ACTION COMPLAINT                                                  31

in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

99. Defendant engaged in a scheme of offering misbranded bottles of Enlightened Kombucha for sale to Plaintiffs and the Class members by way of product packaging, labeling, and other promotional materials. These materials misrepresented and/or omitted the true content and nature of the misbranded bottles of Enlightened Kombucha. Defendant's advertisements, labeling, and inducements were made in and originated from California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging, labeling, and promotional materials were intended as inducements to purchase Enlightened Kombucha, and are statements disseminated by Defendant to Plaintiffs and Class members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

100. Further, Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly

CLASS ACTION COMPLAINT 32

consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

101. Further, Defendant's omission on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised.

102. Defendant violated § 17500, *et seq*. by misleading Plaintiffs and the Class to believe that Enlightened Kombucha is a non-alcoholic beverage when, in fact, it contains a substantial amount of alcohol, and by omitting the true amount of sugar in the beverages.

103. Defendant knew or should have known, through the exercise of reasonable care that Enlightened Kombucha was and continues to be misbranded, and that their omissions about the sugar and alcohol content of the beverages were unauthorized, inaccurate, and misleading. Defendant also knew or should have known, through the exercise of reasonable care that Enlightened Kombucha is an alcoholic beverage and that Defendant's omissions are misleading.

104. Plaintiffs and the Class lost money or property as a result of Defendant's FAL violation because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

# COUNT IV

## Violation of New York's Deceptive and Unfair Trade Practices Act,

## New York General Business Law § 349, et seq.

105.   Plaintiffs DiGennaro and Leder hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

106.   Plaintiffs DiGennaro and Leder bring this claim individually and on behalf of the members of the proposed New York Subclass against both Defendants.

107.   Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

108.   Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Enlightened

CLASS ACTION COMPLAINT                                                                34

Kombucha is an unreasonably dangerous product that is unfit for sale. Defendant's failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the alcohol content of Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Accordingly, Defendant's practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Enlightened Kombucha is misbranded.

109. Further, Defendant's omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised. Defendant's failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the sugar content of Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Accordingly, Defendants' practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Enlightened Kombucha is misbranded.

110. The foregoing deceptive acts and practices were directed at consumers.

111. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of Enlightened Kombucha to induce consumers to purchase same.

112. Plaintiffs DiGennaro and Leder and the New York Subclass members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices,

Plaintiffs DiGennaro and Leder and the New York Subclass members suffered monetary losses associated with the purchase of Enlightened Kombucha because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

## COUNT V

## Breach of Express Warranty

113.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all of the Subclasses) against Defendant.

114.   In connection with the sale of Enlightened Kombucha, Defendant issues an express warranty that Enlightened Kombucha contains 15 percent less sugar (listed in explicit grams of sugar per serving) than is actually present in the beverages.

115.   Defendant's affirmation of fact and promise on Enlightened Kombucha's labels that the products contained at least 15 percent less sugar than actually present in the beverages became part of the basis of the bargain between Defendant and Plaintiffs and Class members, thereby creating express warranties that the products would conform to Defendant's affirmation of fact, representations, promise, and description.

116.   Defendant breached its express warranty because Enlightened Kombucha in fact contains at least 15 percent more sugar than promised on the labels.  In short, Enlightened Kombucha does not live up to Defendant's express warranty.

CLASS ACTION COMPLAINT                                                          36

117.   Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Enlightened Kombucha if they had known the true facts; (b) they paid for Enlightened Kombucha due to the mislabeling of the products; (c) they would not have purchased Enlightened Kombucha on the same terms if they had known the true facts; (d) they paid a price premium for Enlightened Kombucha due to Defendant's false warranties and affirmations of fact; and (e) Enlightened Kombucha did not have the characteristics or qualities as promised.

118.   Plaintiffs served Defendant with written notice of Defendant's breach of warranties at least 30 days prior to the filing of the Complaint.

## COUNT VI

### Breach of Implied Warranty of Merchantability

119.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all of the Subclasses) against Defendant.

120.   The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, *inter alia*, "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label if any."

121.   Defendant, through their acts and omissions set forth herein, in their sale, marketing, and promotion of Enlightened Kombucha, impliedly warranted that (a) Enlightened Kombucha was a non-alcoholic beverage that could be lawfully purchased and safely consumed by anyone; and that (b) Enlightened Kombucha was a low-sugar beverage.

CLASS ACTION COMPLAINT                                                    37

122. Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

123. However, Defendant breached that warranty implied in the contract for the sale of Enlightened Kombucha in that the products do not contain the "quality and quantity" of kombucha beverages as impliedly warranted, and because Enlightened Kombucha do not conform to the promises made on their labels, as described herein. Defendant also breached that implied warranty because Enlightened Kombucha is an unreasonably dangerous product that cannot be used or sold without the necessary government warnings concerning alcohol.

124. As a result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods and because the goods were unreasonably dangerous and could not be used.

125. Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Enlightened Kombucha if they had known the true facts; (b) they paid for Enlightened Kombucha due to Defendant's implied warranties; (c) they would not have purchased Enlightened Kombucha on the same terms if they had known the true facts; (d) they paid a price premium for Enlightened Kombucha due to Defendant's implied warranties; and (e) Enlightened Kombucha did not have the characteristics or qualities as impliedly warranted.

## COUNT VII

### Fraud

126. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all Subclasses) against Defendant.

CLASS ACTION COMPLAINT                                                          38

127. As discussed above, Defendant failed to disclose material facts about Enlightened Kombucha, including by failing to include the government mandated alcohol warning on the products' labels and by failing to disclose the fact that the beverages contain at least 15 percent more sugar than listed on the products' labels. These omissions were made with knowledge that the labels are misleading.

128. The omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended and actually induced Plaintiffs and Class members to purchase Enlightened Kombucha.

129. The fraudulent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII

### Unjust Enrichment

130. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all Subclasses) against Defendant.

131. Plaintiffs and members of the Class conferred benefits on Defendant by purchasing Enlightened Kombucha.

132. Defendant has knowledge of such benefits.

133. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of Enlightened Kombucha. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misleadingly omitted the required government alcohol warning on the labels of Enlightened Kombucha and misrepresented and omitted the true amount of sugar in Enlightened Kombucha. These misrepresentations caused injuries to Plaintiffs and members of the Class because they would not have purchased Enlightened Kombucha had the true facts been known.

CLASS ACTION COMPLAINT 39

134. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b) For an order certifying the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Weiler and Sharpe as representative of the California Subclass and Plaintiffs' attorneys as Class Counsel to represent the California Subclass members;

c) For an order certifying the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs DiGennaro and Leder as representatives of the New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the New York Subclass members;

d) For an order certifying the Under 21 Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Sharpe as representative of the Under 21 Subclass and Plaintiffs' attorneys as Class Counsel to represent the Under 21 Subclass.

e) For an order declaring that Defendant's conduct violates the statutes referenced herein;

CLASS ACTION COMPLAINT                                                    40

f) For an order finding in favor of Plaintiffs, the Class and the Subclasses on all counts asserted herein;

g) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

h) For prejudgment interest on all amounts awarded;

i) For an order of restitution and all other forms of equitable monetary relief;

j) For equitable or injunctive relief, including for restraining sales without truthful labeling, or as the Court may deem proper; and

k) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated: December 27, 2019                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By:  */s/ Yeremey Krivoshey*
                                                  Yeremey Krivoshey

                                           L. Timothy Fisher (SBN 191626)
                                           Yeremey O. Krivoshey (SBN 295032)
                                           1990 North California Blvd., Suite 940
                                           Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700
                                           E-Mail:  ltfisher@bursor.com
                                                      ykrivoshey@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Scott A. Bursor (SBN 276006)
                                           2665 S. Bayshore Dr., Suite 220
                                           Miami, FL 33133
                                           Telephone: (305) 330-5512

CLASS ACTION COMPLAINT                                                     41

Facsimile:  (305) 676-9006
E-Mail:  scott@bursor.com

**WESTERMAN LAW CORP.**
Jeff Westerman (SBN 94559)
Ken Remson (SBN 153850)
1875 Century Park East, Suite 2200
Los Angeles, CA 90067
Telephone: (310) 698-7450
Facsimile:  (310) 775-0777
E-Mail:  jwesterman@jswlegal.com
          kremson@jswlegal.com

*Attorneys for Plaintiffs*

**EXHIBIT 1**

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

# ABSTRACT AND STATEMENT

NOT IN SUIT

For briefing offers in compromise of liabilities and/or violations incurred under Chapters 32,51,52,53,68 and/or 78 of the Internal Revenue Code, and/or liabilities and/or violations incurred under the Federal Alcohol Administration Act.

| 1. OFFER SUBMITTED BY (Name and address) | OFFER IN COMPROMISE | |
|---|---|---|
| **Millennium Products, Inc.**<br>1248 W. 134th Street, #4<br>Gardena, California 90247 | 2. ORIGINATING OFFICE<br><br>**California Field Office** | 3. AMOUNT OF OFFER<br><br>**$2,500.00** |
| | 4. PERMIT, LICENSE, OR REGISTRY NO. (If applicable)<br>▮▮▮▮▮ | 5. SYSTEM CONTROL NUMBER(S)<br><br>**N/A** |
| | 6. DOLLAR AMOUNT OF LIABILITY BEING COMPROMISED (if applicable)<br><br>**$30,773.66** | |
| 7. TAXPAYER IDENTIFICATION NUMBER<br>▮▮▮▮▮ | | |

8. CHARGE

**VIOLATIONS:**

During the period April, 2004 through February, 2005, the proponent allegedly (1) produced 15,156 w.g. of herbal beverages that contained over 0.5% alcohol without having a basic permit, a violation of 27 U.S.C. 203(b)(1)&(2) and 27 CFR 24.106; (2) introduced product into interstate commerce without the proper labels, label approvals, marks, brands, packages and size and fill of containers, a violation of 27 U.S.C. 205(e) and 27 CFR 4.30-4.39; (3) distributed product without the government warning statement, a violation of 27 U.S.C. 215(a) and 27 CFR 16.21; and (4) removed product without paying excise tax, a violation of 26 U.S.C. 5041(a)&(b) and 27 CFR 24.270.

**BUSINESS IN WHICH ENGAGED:**
The proponent is in the business of producing herbal beverages.

**DATE OR PERIOD and LOCATION OF VIOLATIONS:**
The violations occurred during the period April, 2004 through February, 2005 at the proponent's premises located in Gardena, CA.

**AMOUNT AND TERMS OF OFFER:**
The proponent has submitted an offer of $2,500.00 in compromise of the above civil and criminal violations incurred under the Federal Alcohol Administration Act and Internal Revenue Code.

**RECOMMENDATIONS:**
The Director, Trade Investigations Division recommends acceptance of the offer.

(Continued on page(s) _____ )

9. I have considered the proposition to compromise the liability as charged herein, and, for the reasons embodied in the above abstract and statement, am of the opinion that it will be for the best interest of the United States to ☒ ACCEPT ☐ REJECT the terms proposed.

10. SIGNATURE AND TITLE ▮▮▮▮▮▮▮▮▮▮▮▮▮

Assistant Administrator, Field Operations

11. DATE

9-1-06

ATF F 5640.3 (10-94) PREVIOUS EDITIONS ARE OBSOLETE

**EXHIBIT 2**

Stephen D. Weisskopf, Esq. (State Bar No. 213596)
sweisskopf@levatolaw.com
Christopher E. Stiner, Esq. (State Bar No. 276033)
cstiner@levatolaw.com
LEVATOLAW, LLP
2029 Century Park East, Suite 2910
Los Angeles, California 90067
Telephone: (310) 734-2026
Facsimile: (310) 421-4180

Michael L. Cohen, Esq. (State Bar No. 206253)
cohen@mlcplclaw.com
Michael L. Cohen, A Professional Law Corporation
2300 Westwood Boulevard, Suite 200
Los Angeles, CA 90064
Telephone: (213) 413-6400
Facsimile: (213) 403-6405

Attorneys for Plaintiff
TORTILLA FACTORY, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORTILLA FACTORY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>GT'S LIVING FOODS, LLC, and DOES 1-10,<br><br>Defendants. | Case No. 2:17-cv-07539-FMO-GJS<br><br>**DECLARATION OF BLAKE EBERSOLE**<br><br>Judge: Fernando M. Olguin |

1

DECLARATION OF BLAKE EBERSOLE

1.     Tortilla Factory LLC retained me as an expert in chemical analytical testing of natural products. Tortilla Factory hired me to perform an analysis of ethanol and total sugars in GT's Enlightened Kombucha and Enlightened Synergy drinks (hereafter referred to as GT's Kombucha).  I make this declaration of my own personal knowledge and, if called as an expert witness, I could and would testify competently to the matters stated herein.

**Expert Qualifications**

2.     I am a scientific consultant and trained chemist with 14 years' experience in technical affairs and quality assurance of natural products, foods, and dietary supplements. Over this time, I have managed quality control and testing programs for more than 30 firms in the food and dietary supplement industry.

3.     I am a participant in the standards development activities for ethanol analysis in kombucha. I was a voluntary member of the AOAC International[1] Ethanol in Kombucha Working Group in late 2015 and 2016 that was formed to establish the standard method performance requirements (SMPR) for candidate methods. I reviewed and voted to revise and approve Standard Method Performance Requirements (SMPR) drafted through voluntary stakeholder consensus. The SMPR were voted by kombucha industry affiliates of AOAC, to be the official criteria for approving ethanol in kombucha analytical methods as Official Methods. The Working Group approved AOAC SMPR 2016.001 in early 2016.

4.     After SMPR were established, I was selected to participate in the Expert Review Panel (ERP) for ethanol analysis in kombucha.  I am one of the 7

---

[1] The legal name since 1991 is AOAC INTERNATIONAL. In 1884 the organization was established as the Association of Official Agricultural Chemists, our heritage. Later on, the name changed to the Association of Official Analytical Chemists, a reflection of our membership.  Subsequently, the membership changed to include microbiologists, food science personnel as well as chemists. We also became an organization of international influence and membership, so, it was decided to change to the current legal name AOAC INTERNATIONAL. While you may have seen that "AOAC" stands for the THE ASSOCIATION OF ANALYTICAL COMMUNITIES, this is only a statement to encompass all the scientific disciplines involved in doing the work of the Association, not a legal name.

2

scientific experts on the ERP that includes others from the U.S. Alcohol and Tobacco Tax and Trade Bureau (TTB), the regulatory authority for alcoholic beverages in the United States, as well as scientists from Coca-Cola and Merieux NutriSciences, a contract laboratory who specializes in food testing. The AOAC ERP also included Hannah Crum, Kombucha Brewer's International (KBI), as an industry stakeholder. (KBI claims to be one of the largest kombucha industry trade organizations in the world.) Organizational affiliates supporting this effort included kombucha industry stakeholders such as KBI, GT's Kombucha, Health-Ade, and Kevita (see reference 6).

5.     According to the AOAC website, for participation on ERP, interested scientists are invited to submit their curriculum vitae (CV) for consideration. Advisory panel, stakeholder panel, and working group members may make recommendations to AOAC for ERP members. All CVs are reviewed and evaluated for expertise by the AOAC Chief Scientific Officer (CSO) and then to the AOAC Official Methods Board for formal review. The composition of the ERP must be fulfilled with qualified subject matter experts representing various perspectives. ERP members must affirm to adhere to rigorous standards of objective and scientific integrity in order to participate.

6.     As part of the kombucha ERP, I have reviewed the existing methods for analysis of alcohol in foods, and have also reviewed validation data for several methods submitted to the ERP for review, that can be useful for quantification of ethanol in kombucha.

7.     I also participated in the method development process by coordinating the validation of a method that is widely used for ethanol in various foods and beverages, and later determining through several validation studies that it is reliable for purposes of quantification of ethanol in kombucha. As a member of the AOAC Expert Review Panel, I was not permitted to review, vote, or otherwise influence the

DECLARATION OF BLAKE EBERSOLE

review of the headspace GC-FID method that I submitted, as per AOAC Expert Panel requirements.

8.    In 2015 and 2016, I independently conducted the verification of fit for purpose of a method employed by Covance Laboratories in Madison, Wisconsin. The method uses gas chromatography with flame ionization detection (GC-FID) with headspace autosampling for the quantification of ethanol in a variety of products and compositions. In spring of 2016, I conducted and single laboratory validation of this GC-FID method, according to AOAC guidelines for SLV. During summer 2016, I submitted this method to the Expert Panel in 2016, and the method was approved to be Official Method of Analysis (OMA) AOAC 2016.12 on September 18, 2016. OMA status was first action, granted upon the first submission to the Panel. This SLV validation study was later submitted for peer review to the Journal of AOAC International.

9.    In 2017, I received the award for 2016-2017 Expert Review Panel Member of the Year from AOAC International for my participation and efforts on the ethanol in kombucha Expert Panel.  Subsequently, in 2017 and 2018 I coordinated the multi-lab validation of AOAC Official Method 2016.12, which was published in peer review in the Journal of AOAC International in 2018, and reviewed by the Expert Panel. Further details supporting the validity of this method is summarized in the following sections, and in references 1-3. I have also coordinated and reviewed the testing of ethanol in more than 100 commercial kombucha samples since 2015.

10.    I also serve on various technical and standards committees for natural products quality for ASTM International and the American Herbal Products Association. I have published more than 25 peer-reviewed academic journal and conference papers in the area of natural product chemistry, including five peer-

4

reviewed papers relating to the analysis of ethanol in kombucha. A true and correct copy of my CV is attached hereto as Exhibit 4.

**Statement of Opinions**

11.     Tortilla Factory LLC retained me as an expert in chemical analytical testing of natural products. Tortilla Factory hired me to perform an analysis of ethanol and total sugars in GT's Enlightened Kombucha and Enlightened Synergy drinks (hereafter referred to as GT's Kombucha).

12.     Based on the results of several studies and extensive experience in analytical testing of kombucha and other natural products, I determined that GT's Kombucha sold in the U.S. contains more than 0.5% alcohol by volume:

        (a)     I conducted testing in February 2019 using AOAC Official Method of Analysis AOAC 2016.12, a gas chromatography with flame ionization detection (GC-FID) with headspace autosampling, run by Covance-Eurofins Laboratory. All 29 GT's Kombucha samples tested contained greater than 0.5 percent alcohol by volume (% ABV), with results ranging from of 0.64 - 1.85% ABV. This is between 28% and 370% higher than the legal limit of 0.5% ABV.  Attached hereto as Exhibit 1 are true and correct copies of the lab reports.

        (b)     I conducted testing in December 2015 and July 2016 using the same analytical method (AOAC 2016.12) at Covance on 21 GT's Kombucha samples. All 21 GT's Kombucha samples contained greater than 0.5% ABV, ranging from 1.09 - 1.96% ABV. This is between 218 and 392% higher than the legal limit of 0.5% ABV (See Exhibit 1).

        (c)     I conducted testing in March 2016 within a method verification and round-robin study that yielded four candidate methods from

5

three laboratories (including the headspace GC-FID method). I found consistency in results among the laboratories on four GT's Kombucha samples that all contained greater than 0.5% ABV. In this round of testing, alcohol in GT's Kombucha ranged from 1.27-1.51% ABV. This is between 254 and 302% higher than the legal limit of 0.5% ABV. Attached hereto as Exhibit 5 is a true and correct copy of the study.

(d)     Chris Stiner provided test results to me that were reported by Enartis Vinquiry in 2017 and 2018 using GC-FID to analyze 46 bottles of GT's Kombucha. The samples contained an average of 1.16% ABV, ranging from 0.60 to 2.05%. This is between 20 and 410% higher than the legal limit of 0.5% ABV. Attached hereto as Exhibit 7 are true and correct copies of those lab reports.

(e)     The foregoing results obtained for alcohol in GT's Kombucha are consistent with results independently reported by others in the published literature (see references 5,6,7). For example, in 2015 John Edwards, Ph.D. from Process NMR Associates analyzed three samples of GT's Kombucha in 2015 using a nuclear magnetic resonance method. He found all thee samples had alcohol levels higher than 0.5% ABV, ranging from 1.23-1.40 % ABV, reflecting alcohol levels 246%-280% higher than the 0.5% limit. In 2017, Daniel Armstrong, Ph.D. and colleagues at the University of Texas analyzed eight samples of GT's Kombucha using headspace GC-FID, and found they all exceeded 0.5% alcohol, reporting a range of 1.1%-1.8% ABV in the drinks. This reflects an amount that is 220%-360% higher

6

than the 0.5% ABV limit for non-alcoholic beverages.

13. In my professional opinion, based on credible and reliable scientific analysis, GT's Kombucha sold in the U.S. contains more than 0.5% ABV.

14. My expert opinion is based on a thoughtful review and evaluation of the methods and data, including:

> (a) Method verification, single laboratory validation and multi-lab validation of a reliable analytical method according to the most rigorous scientific standards;

> (b) Approval of the validated analytical method by experts, and selection as AOAC Official Method of Analysis by the AOAC Expert Review Panel, plus an additional peer-reviewed publication in the Journal of AOAC International;

> (c) Results from testing more than 50 samples of GT's Kombucha purchased from multiple retailers, multiple U.S. locations and multiple time points over a time period of more than 3 years, with the finding that every GT's Kombucha I tested contained more than 0.5% ABV.

15. Also during 2016-2019, I have analyzed 60 samples of GT's Kombucha for total sugars also using scientifically valid AOAC Official Methods. In total, 54 out of 60 GT's Kombucha contained sugar content more than 20% higher than the claimed amount on the label. Attached hereto as Exhibit 6 is a true and correct copy of my study that contains the test results.

16. In my professional opinion, based on credible and reliable scientific analysis, GT's Kombucha sold in the U.S. contains more than 120% of the claimed amount of total sugars per serving.

**Supporting Information:**

**Analysis of Alcohol in Kombucha**

7

17.    Ethanol, commonly called alcohol, has been analyzed in foods and beverages for more than 100 years. In this report, when I write "alcohol" I mean ethanol, unless specified otherwise.

18.    A number of reliable analytical methods have been used for the analysis of alcohol content in wine, beer, and spirits, including those based on the following principles: distillation, near infrared (NIR) spectrometry, gas chromatography with flame ionization detection (GC-FID), gas chromatography with mass spectrometry detection (GC-MS), and nuclear magnetic resonance imaging (NMR).

19.    One of the most common methods used for alcohol analysis is gas chromatography with flame ionization detection (GC-FID). Regulators and industry have used GC-FID for quantifying ethanol and other alcohols in foods and beverages for more than 30 years. GC-FID was the basis of the original method used for forensic analysis of blood alcohol levels[2]. Most regulators and industry accept GC-FID for alcohol testing in alcoholic and non-alcoholic beverages, including the U.S. Food and Drug Administration (FDA), the U.S. Bureau of Alcohol, Tobacco and Firearms (ATF) and its successor agency, the U.S. Alcohol and Tobacco Tax and Trade Bureau (TTB). Many laboratories for the food and beverage industry rely on GC-FID to accurately measure alcohol in foodstuffs.

**Development of AOAC Method Performance Requirements**

20.    During late 2015 and early 2016, I volunteered to participate in the Method Development Working Group for Analysis of Ethanol in Kombucha for AOAC International, the top global standards-setting organization for food analytical methods. As part of the Working Group, I reviewed and approved

---

[2] Anthony, R.M., Sutheimer, C.A., & Sunshine, I. (1980) *J. Anal. Toxicol.* 4, 43–45

8

Standard Method Performance Requirements (SMPR) for methods for alcohol in kombucha, which were passed by stakeholder consensus.

21. Industry stakeholders such as GT's Kombucha, Kombucha Brewer's International, Kevita, Health-Ade and others provided formal support to AOAC for this development work. The SMPR were voted to be the official criteria for ethanol in kombucha methods, were reviewed and approved by the alcohol in kombucha Expert Review Panel.

22. I was one of seven selected members to serve on the AOAC Expert Review Panel (ERP). The purpose of the ERP was to serve as independent scientific experts to review the validity of methods submitted for selection as Official Methods of Analysis. Myself, along with six other scientific experts on the ERP, approved the SMPR. In 2016, the approved SMPR were assigned as AOAC 2016.001. (More information on AOAC and the Expert Review Panel follows in a later section).

**Method Verification of a Headspace GC-FID Method for Alcohol in Kombucha**

23. In fall of 2015, Kevita Inc., a producer of kombucha contacted me because their initial testing found that kombucha products on the market sold as non-alcoholic exceeded the legal limit of 0.5% ABV, and they wanted to independently verify their results. They had received mostly consistent results from internal and third party laboratories on ethanol in kombucha. Kevita hired me to test samples of kombucha using a study design, method and lab of my choice. Kevita made no specific requests for the study, except that I include what I determined to be the most popular kombucha products on the market, and also include samples of Kevita in my testing.

24. The gas chromatography with flame ionization detection (GC-FID) and headspace autosampling method I selected is a commercial analytical method

9

developed used on a daily basis by Covance Food Solutions (hereafter called Covance). GC-FID is applicable across a wide range of foods and beverages. The Covance headspace GC-FID method used is based on a long-established forensic analysis method originally developed to detect trace to low levels of alcohol in blood. I had previously used this method at Covance for quantification of low levels of residual ethanol and other solvents in samples of botanical extracts that were required to meet FDA and international regulatory limits for foods and dietary supplements.

25. In December 2015 and early 2016, I began to perform testing of kombucha, including GT's Kombucha, as part of a method verification on the headspace GC-FID method "ETME", used for quantification of trace to low levels of alcohol in foods and beverages, that is performed by Covance Food Solutions, Madison, Wisconsin[3].

26. I evaluated this method's suitability for alcohol in kombucha by analyzing a set of alcohol-containing liquids, including water, pure ethanol, ethanol-water mixtures and beer at different concentrations, along with samples of commercial kombucha from seven manufacturers, including GT's Kombucha (see Exhibit 5). The headspace GC-FID method is advantageous in that it is able to reliably eliminate any interferences that may arise from the composition of the sample. For example, methanol or acetic acid may be present in complex mixtures such as fermented beverages, and may interfere with the quantification.

---

[3] Covance Food Solutions (CFS) was the food testing arm of Covance, a global contract research organization whose origins date to 1968. For several years, CFS was considered one of the largest and most reliable food testing labs in the U.S. CFS was purchased by Eurofins in 2018 for a reported $670 million. CFS is now known as Eurofins Food Integrity and Innovation. Data and details that refer to Covance or CFS in this report may also be referring to Eurofins Food Integrity and Innovation, depending on the time at which research was conducted. For the purposes of this report, the same laboratory was used, in Madison, Wisconsin, regardless of its ownership.

10

DECLARATION OF BLAKE EBERSOLE

27.    With the headspace GC-FID, no interference is observed in GC chromatograms using this method (see following chromatogram, also published in reference 2).



EBERSOLE ET AL.: JOURNAL OF AOAC INTERNATIONAL VOL. 100, NO. 3, 2017    735

Figure 1.    Gas chromatograms of commercial kombucha products and ethanol references. (A) Representative commercial kombucha sample; (B) blank sample, G(h); (C) blank sample, G(h), spiked with ethanol standard solution at 3.30% ABV.

28.    Headspace autosampling is the most reliable way to completely extract ethanol and other volatiles from food and beverage samples.  Headspace sampling is often the preferred method of sampling for complex mixtures, versus direct injection methods that may introduce a greater degree of interference to the GC-FID detector.

29.    A brief summary of the Covance headspace GC-FID method follows, with full method details also published in reference 2:

30.    Kombucha samples are heated and agitated in a 20-mL headspace vial. A portion of the headspace is injected into a gas chromatograph (GC) with a flame ionization detector (FID) on a DB-WAXetr or equivalent GC column. The lab performs quantitation using a 6-point calibration curve generated by a weighted (1/concentration) least squares linear regression analysis.

**2016 Method Verification Results**

11

31.     Based on the method verification, I had determined that the Covance headspace GC-FID method was accurate and precise for quantification of ethanol in kombucha (see Exhibit 5), and met the Standard Method Performance Requirements (SMPR) established by the AOAC kombucha working group. In this study, no interferences from co-eluting peaks or other interferences was observed.

32.     In the method verification study, the limit of quantitation (LOQ) for the method was 0.015% ABV, far below the legal limit of 0.5% ABV for nonalcoholic beverages in the U.S. The method was linear between 0.1% and 2.8% ABV. Intermediate precision, measured by the relative standard deviation (RSD) across different days, instruments and technicians, was < 4%, meeting the SMPR method requirements. Recovery for lab-spiked control kombucha samples ranged from 98.3 to 104.2% over spiked alcohol levels of 0.13%, 1.3% and 3.3% ABV. Recovery for lab-blinded Certified Reference Materials (CRM) was 101-104% for CRM at spike levels of 0.1267%, 0.505% and 2.53% ABV. Based on these verification data, I determined that the results obtained with this method for quantifying ethanol in kombucha were reliable and credible.

**Kombucha Alcohol Testing in 2015**

33.     Before and after the method verification, I tested multiple samples of commercial kombucha on multiple dates between December 2015 and July 2016.

34.     On December 12, 2015, I purchased GT's Enlightened Kombucha and Enlightened Synergy drinks, along with samples from other kombucha brands, for testing of alcohol content. (As mentioned on page 3, GT's Enlightened Kombucha and Enlightened Synergy drinks are referred in this report as GT's Kombucha). In the U.S., GT's Kombucha is sold as a non-alcoholic beverage and is commonly sold in most suburban U.S. grocery stores, supermarkets and health food stores. There, it is commonly stored under refrigeration and is often located near the refrigerated teas, juices and waters.

12

DECLARATION OF BLAKE EBERSOLE

**Materials Selection**

35. For all testing in this report, I purchased all samples from the retailers' refrigerated shelves. I selected the bottles from the non-alcoholic beverage refrigerated section of the store, that is a separate physical location from the refrigerated alcoholic beverages. I selected flavors based on what I considered to be the more popular flavors, particularly the flavors that appeared to be taking up the most shelf space. I selected bottles that were not expired, and which had legible lot numbers. For the most abundant flavors, I often selected multiple bottles from the same lot, to duplicate results on the same discrete lot or batch, and get a sense if variation of results within the same lot number was observed.  For some flavors, I selected multiple lots from the same shelf, to determine whether differences existed from lot to lot for the same flavor made at different times.

36. All commercial kombucha samples sent to Covance were purchased, stored and shipped according to the following process, including cold chain verification. Cold chain verification is important because it is possible that "live" fermented drinks containing dormant yeast and bacteria may begin to actively ferment if warmed to temperatures above 60 degrees for more than 24-48 hours.

37. Each bottle comprised one sample of GT's Kombucha. I ensured all samples were refrigerated at purchase, and I verified the refrigerator case thermometer to be between 33 and 39 degrees Fahrenheit. In 2015 and 2016, I recorded temperatures of the store refrigerated shelf with infrared thermometer readings to verify the accuracy of the refrigerator thermometer. For all studies, refrigerator thermometers were inspected to read between 33 and 39 degrees Fahrenheit at the time of purchase.

38. I bought, inspected, transported and shipped all samples in this study to the laboratory, Covance.  Before purchase, I visually inspected the thermometer in the refrigerated case with GT's Kombucha. Before purchase, I also inspected the

13

GT's Kombucha for intact tamper-evident seals, intact labels, product contents and fill volume, and legible lot number and expiration date. In my possession, I took care to not shake or disturb the GFT's Kombucha, and kept all bottles upright during purchasing, transport and shipping. After purchase and inspection, I transferred and packaged the samples in a Inmark Insulated Cooler # TCLS10A in my personal vehicle to my house. I took pictures of the samples (true and correct copies of which are attached hereto as Exhibit 3) including labels and lot numbers of each flavor, and recorded all relevant label information. I wrapped the bottles carefully with bubble wrap and included plastic or paper based food-grade packaging materials in the shipment containers, to ensure bottles would not move or shift during transit. I included a temperature monitor in the cooler, (TempTale 4, Sensitech) to validate that the temperature remained within refrigerated limits during shipping.

39. The insulated coolers were sent the same day of purchase, marked with the following: "Fragile", "Perishable", "Refrigerate upon receipt". Shipments were transported by Priority Overnight (next day delivery by 10:30 am) by FedEx Express. The laboratory was notified of storage requirements before receiving.

40. All samples were reported by the laboratory to have been received on time, at a cold temperature, with ice packs. The laboratory confirmed the samples were under their control at all times, and were stored in refrigeration at 2-8 degrees Celsius, until the time of testing. During sample processing, the laboratory did not permit samples to remain outside of refrigerated conditions for more than two hours. During sample processing, kombucha materials were transferred based on weight, not volume, to account for dissolved gases. Testing was performed within 14 days of receipt. All samples were tested before the date of expiration listed on the label.

**Results from Initial Verification**

14

DECLARATION OF BLAKE EBERSOLE

41. Results from the GT's Kombucha samples reported by Covance on December 29, 2015 were 1.35% ABV in the GT's Original and 1.45% in the GT's Gingerade (see table on page 14 for results).

42. Covance also tested each sample using a separate GC-MS method (Covance method "RESO") used for detection of residual solvents in pharmaceuticals. Using this GC-MS method, they found 1.43% in the GT's Original, and 1.40% ABV in the GT's Gingerade, results that were consistent with those from the headspace GC-FID method.

**Multi-Lab Round-Robin Study in December 2015-March 2016**

43. The verification of the Covance headspace GC-FID method included a multi-lab "round-robin" study of the same GT's Kombucha samples, using five methods from four independent laboratories—Covance, ETS Laboratory in St. Helena, California, BDAS Labs in Lexington, Kentucky, and Cornerstone Laboratories in Memphis, Tennessee (see Exhibit 5, Supplementary Report).

| Lab # | Instrument | Method Reference |
|---|---|---|
| 1 (Covance) | a) GC-FID Headspace<br>b) GC-MS Headspace | MP-ETME (Anthony et al JAT 1980, AOAC , GC-FID);<br>RESO (GC-MS) |
| 2 (ETS) | GC-FID Headspace | AOAC 983.13 (GC-FID) |
| 3 (Cornerstone) | GC-MS Headspace | EPA 624 Part 136, Title 40, EPA 8260B, SW-846 |
| 4 (BDAS) | Distillation and NIR | Traditional; TTB |

44. I purchased GT's Kombucha, along with certified reference materials (CRM) for alcohol from LGC, Cerilliant, NIST and Sigma Aldrich. CRM are

15

certified by government or regulatory agencies to contain a specific amount of alcohol, and the performance and proficiency of laboratories are typically based on their accuracy in determining the correct amount in CRM. The details of these reference materials are listed in the following table:

| Reference # | Identification | Lot Number | Purity | Stability | Storage |
|---|---|---|---|---|---|
| 1 | GT's Gingerade (Ginger flavor) | 2621*C4B, Covance sample 4814442 | "non-alcoholic", ethanol content not labeled, product previously tested to contain >1.0% ethanol | Tested on or before expiration date (March 25, 2016) | In a chamber set to maintain 5 ±3 deg C. |
| 2 | 1-Propanol, Sigma #34871 | SHBF0634V | 99.98% | July 2018 | Not specified |
| 3 | Control Kombucha (Kevita Inc) (ethanol-free, non-carbonated) | 01206-1, Covance sample 4814443 | <0.015% ethanol. Total acids 1.15%, Brix 3.0, pH 3.0 as per manufacturer. | Not specified | In a chamber set to maintain 5 ±3 deg C. |
| 4 | Ethanol (Reference standard, absolute (200 proof), Sigma-Aldrich # 459836) | SHBG7349V | 99.97% | Not specified | Closed original container, room temp |
| 5 | Ethanol (Reference standard, absolute (200 proof), Sigma-Aldrich # 459836) | SHBG4976V | >99.5% | Not specified | Closed original container, room temp |
| 6 | Ethanol-water Certified Reference Material, NIST # 2894 | Not applicable | 0.10084% ±0.00083% certified mass fraction | valid until 30 April 2023 | Refrigerate (do not freeze) |
| 7 | Ethanol-water Certified Reference Material, Cerilliant E-031 | FN06181501, | 100 mg/dL, (0.1267% ABV @ 20C) | exp June 2020 | Refrigerate (do not freeze) |

16

| 8 | Beer Certified Reference Material, LGC BCR-651 | 000149, 000150, 000189, 000191 | 0.505 +/- 0.006 % ABV | valid until April 1, 2017 | Approx 4 deg C. Room temp before opening. Do not freeze. |
|---|---|---|---|---|---|
| 9 | Ethanol-water Certified Reference Material, NIST 2897a | Not applicable | 2% nominal mass fraction (2.53% +/- | | Refrigerate (do not freeze) |

45.    The kombucha samples, including GT's Kombucha were selected from an initial survey of six retail locations in Carmel, Indiana. Multiple flavors from multiple manufacturers were selected.

**Results of 2016 Round-Robin Study**

46.    Results reported by Covance and ETS using their respective headspace GC-FID methods indicated a relative agreement in results on all samples tested, including those on GT's Kombucha. The distillation and NIR alcolizer methods run by BDAS laboratory also reported consistent results on all samples tested, relative to the other two labs (see reference 5).

47.    In the round-robin study, six samples of kombucha tested contained greater than 1% alcohol by volume (ABV), five of which were GT's Kombucha. The amount of alcohol reported was consistent with previous laboratory and manufacturer reports. The range of ethanol content of GT's kombucha samples reported using the Covance headspace GC-FID method was 1.34% to 1.61% ABV (see following table).

17

DECLARATION OF BLAKE EBERSOLE

| Results from Pre-validation Study | | | Test Date | Mar 1 | Dec 15 | Dec 15 | Mar 1 | Jan 11 | Jan 11 |
|---|---|---|---|---|---|---|---|---|---|
| Product | Lot# | Expiry/ Best by | Expected Value from Spike | Lab #1 (GC-FID) | Lab #1 (GC-FID) | Lab #1 (GC-MS) | Lab #2 (GC-FID) | Lab #4 NIR | Lab #4 Distillation |
| GT Gingerade | 1831**BBB | 1/17/16 | NA | | 1.45, 1.46% | 1.42%, 1.38 | | | |
| GT Original | 2230**D2B | 1/20/16 | NA | | 1.34, 1.36% | 1.41%, 1.45% | | | |
| GT Citrus | 1831**B7B | 1/17/16 | NA | | | | | 1.36% | 1.27% |
| GT Trilogy | 0232C*A7B | 1/31/16 | NA | | | | | 1.51% | |
| Commercial kombucha | 5/23/16-8 | 5/23/16 | NA | | | | | | |
| Commercial kombucha | 5370606 | 4/30/16 | NA | | 1.23, 1.21% | 1.21, 1.19% | | | |
| Commercial kombucha | FEB2016L112 | 2/1/16 | NA | | | | | 0.11% | 0.08% |
| Commercial kombucha | MAR2716E306 | 3/27/16 | NA | | 0.263, 0.253% | 0.275, 0.271% | | | |
| Commercial kombucha | APR2016 L351 | 4/20/16 | NA | | 0.236, 0.232% | 0.251, 0.244% | | | |
| GT's Gingerade | 2621**C4B | 3/25/16 | NA | 1.61% | | | 1.44% | | |
| Spiked Commercial kombucha* | 02292B | 3/25/2016 | | 1.432% | | | 1.37% | | |
| Spiked Commercial kombucha | 02292A | 3/25/2016 | 1.68% * | 1.658% | | | 1.61% | | |
| Spiked Commercial kombucha | 02292C | 3/25/2016 | 1.93% * | 1.922% | | | 1.86% | | |
| Control (ethanol-free kombucha) | 02291A | NA | 0% | <0.015% | | | <0.05% | | |
| Control (ethanol-free kombucha) | 02291C | NA | 0.500% | 0.692% | | | | | |
| Control (ethanol-free kombucha) | 02291B | NA | 1.500% | 1.47% | | | 1.43% | | |

48. I determined there was acceptable precision and percent recovery (accuracy) reported by 3 of 4 labs on reference materials, including standard reference materials, certified reference materials, and lab-spiked kombucha materials.

18

DECLARATION OF BLAKE EBERSOLE

49. One lab (Cornerstone) failed to recover the certified amount of ethanol in multiple Certified Reference Materials (CRM), and also failed to meet standards for precision on duplicates of blinded kombucha samples. Cornerstone's results were therefore considered to be invalid and were not included in any further analysis or reports.

50. Based on these initial indicators of reliability, Covance's daily use of this method for several years, and previous validations conducted with this method principle in complex forensic and food matrices, the Covance headspace GC-FID method and laboratory was selected to undergo a full scientific validation.

**Headspace GC-FID Method Validation**

51. While GC-FID is highly sensitive and specific for ethanol in foods and beverages, there is a theoretical possibility that there are unique parts within kombucha that can interfere with the instrument in ways that other foods do not.

52. To eliminate the possibility that kombucha may contain unique compositional interferences that are not observed with other foods or beverages, members of the kombucha industry commissioned a method development program in 2015 with AOAC International, the leading international organization for establishing analytical methods for foods.

53. I participated in the AOAC method development process by coordinating the single laboratory validation (SLV) of the Covance headspace GC-FID method that I had previously verified to be accurate and precise.

**Headspace GC-FID Method -- Single Laboratory Validation (SLV) in 2016**

54. On May 27, 2016, AOAC issued a call for methods for ethanol in kombucha. Prior, in April 2016, following my verification of the headspace GC-FID method, I hired Covance to perform a single laboratory validation (SLV) of the method. On this study, I collaborated with Dr. Paula Brown, Ph.D. Director of the

19

Natural Health and Food Products Research Group (NRG) at British Columbia Institute of Technology (BCIT) in Burnaby, British Columbia, Canada. Dr. Brown is a member of the Natural Health Products Program Advisory Committee for Health Canada[4], a current member of the AOAC Dietary Supplement Task Force related to method development, is a former Referee for the Dietary Supplement Methods Committee from 2004-2009, and has participated in seven AOAC Expert Review Panels related to method validation.

55. A summary of the single laboratory validation (SLV) data is as follows: An ethanol standard curve ranging from 0.05 to 5.09% ABV was used, with correlation coefficients greater than 99.9%. The method detection limit was 0.003% ABV and the LOQ was 0.01% ABV. The repeatability precision (RSD(r)) ranged from 1.62 to 2.21% and the Horwitz ratio ranged from 0.4 to 0.6. The average accuracy of the method was 98.2%. This method was validated following the guidelines for single-laboratory validation by AOAC International and met the requirements set by AOAC SMPR 2016.001, "Standard Method Performance Requirements for Determination of Ethanol in Kombucha." The headspace GC-FID method was approved by the Expert Panel as First Action Official Method of Analysis (OMA) AOAC 2016.12 on September 18, 2016 (see reference 3). The SLV was published after peer review by the Journal of AOAC in 2017 (see reference 2).

**Kombucha Alcohol Testing in June-July 2016**

56. In June 2016, I conducted testing of commercial kombucha samples for alcohol using the headspace GC-FID method previously validated at Covance. On June 28, 2016, I directed 18 bottles of GT's to be purchased from six retail locations spread geographically across the U.S., in Lititz, PA, Inverness, FL, Boulder, CO,

---

[4] Health Canada is the primary governmental authority for regulation of foods and drugs in Canada, considered the counterpart to the U.S. FDA.

Carmel, IN and Ventura, CA. The purpose for the multiple locations was to determine whether the transportation distance, distribution or retailer may impact the ethanol content in kombucha products. I hired four qualified, experienced professionals in the food and beverage industry whom I had worked with in a professional capacity for at least three years. My purchasing team followed all procedures for inspection and temperature control during purchasing and transport. Briefly, my team members purchased GT's Enlightened Kombucha and Synergy Kombucha from refrigerated coolers at established retailers; temperature was verified to be 32-39 degrees Fahrenheit by refrigerator thermometer; samples were immediately packaged in insulated cooler with ice packs, and shipped overnight via FedEx to Covance in Madison, Wisconsin. Covance stored all samples in refrigeration until testing. Covance tested all samples before their expiration date.

57.     Results from the summer 2016 analysis using the validated Covance headspace GC-FID method are shown in the following table. Covance reported all samples tested to contain greater than 0.5% ABV, with the range of 1.09-1.96%. These levels are approximately 2-4 times greater than the 0.5% ABV legal limit for non-alcoholic beverages. From this data, I determined there to be no apparent differences due to the retailer or the location of purchase, based on a qualitative review of the data.

DECLARATION OF BLAKE EBERSOLE

Ebersole Decl. - Page 1076

| Store | Store Location | Purchase Date | Manufacturer | Flavor | Enjoy by: | Lot # | Ethanol Result (% ABV) | Report Date |
|---|---|---|---|---|---|---|---|---|
| Fresh Thyme #207 | Carmel, IN | 12/12/15 | GT's | Citrus | 1/17/16 | 1831**B7B | 1.42% | 12/29/15 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Cosmic Cranberry | 8/5/16 | 0626**A9B | 1.60% | 7/12/16 |
| Sprouts 2950 Baseline Rd | Boulder, CO | 6/28/16 | GT's | Gingerade | 8/5/16 | 0626**E2B | 1.56% | 7/12/16 |
| Vons #2096 | Ventura, CA | 6/28/16 | GT's | Gingerade | 8/6/16 | 0726*D1B | 1.35% | 7/7/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Gingerade | 8/7/16 | 0826*D6B | 1.49% | 7/12/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Gingerade | 8/7/16 | 0826*D6B | 1.43% | 7/12/16 |
| Giant 6004 | Lititz, PA | 6/28/16 | GT's | Gingerade | 8/7/16 | 0826*D9B | 1.43% | 7/12/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Gingerade | 8/12/16 | 1326**F3B | 1.09% | 7/12/16 |
| Whole Foods | Carmel, IN | 12/12/15 | GT's | Gingerade | 1/17/16 | 1831**BBB | 1.45% | 12/29/15 |
| Sprouts 2950 Baseline Rd | Boulder, CO | 6/28/16 | GT's | Gingerberry | 8/7/16 | 0826*B5B | 1.54% | 7/12/16 |
| Giant 6004 | Lititz, PA | 6/28/16 | GT's | Gingerberry | 7/25/16 | 2625C*B0B | 1.89% | 7/12/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Hibiscus Ginger | 8/12/16 | 1326C*A8B | 1.10% | 7/12/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Lavender Love | 8/6/16 | 0726**A9B | 1.37% | 7/12/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Multigreen | 8/13/16 | 1426**A8B | 1.41% | 7/12/16 |
| Sprouts 2950 Baseline Rd | Boulder, CO | 6/28/16 | GT's | Original | 8/30/16 | 0266**F1B | 1.60% | 7/12/16 |
| Whole Foods | Carmel, IN | 12/12/15 | GT's | Original | 1/20/16 | 2230**D2B | 1.35% | 12/29/15 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Original | 7/26/16 | 2724*F1B | 1.44% | 7/12/16 |
| Vons #2096 | Ventura, CA | 6/28/16 | GT's | Original | 8/28/16 | 3025**A3B | 1.58% | 7/7/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Trilogy | 8/1/16 | 0226*C4B | 1.96% | 7/12/16 |
| Giant 6004 | Lititz, PA | 6/28/16 | GT's | Trilogy | 8/1/16 | 0226*D1B | 1.80% | 7/12/16 |
| Vons #2096 | Ventura, CA | 6/28/16 | GT's | Trilogy | 8/14/16 | 1526**F3B | 1.55% | 7/7/16 |

58.     In the above table, results from three samples tested in 2015 are also reported in the Round-Robin section of this report.

**2018 Multi-lab Validation Study of the Alcohol Method**

59.     I was an investigator in a multi-lab validation study that conducted following the single laboratory validation (SLV) study, its peer-reviewed publication in the Journal of AOAC, and the review and approval by the Expert Panel as AOAC OMA 2016.12.  During 2017 and 2018 I coordinated the multi-lab validation (MLV) of the method in collaboration with Dr. Brown at BCIT. This work was supported by a contract with BCIT through funding by Pepsico, who acquired Kevita in 2017.

60.     In the multi-lab validation (MLV) study, four laboratories participated in the study and received practice samples, test samples, reference standards, and detailed protocols (see reference 1). Eight kombucha samples sent out to each laboratory had randomly assigned, coded sample numbers. Laboratories were blinded to the content and identity of the samples. Each laboratory analyzed all

DECLARATION OF BLAKE EBERSOLE

samples using the GC-FID method and reported their results. Cochran's C-test and single and double Grubbs' tests were used to identify and remove outliers. Horwitz ratio values for all samples were between 0.5 and 1.7. As per the AOAC Standard Method Performance Requirements (SMPR), all samples within the analytical range of 0.1-2.0 % ABV had reproducibility (RSD(R)) values of <6%. The results from this multi-lab study demonstrated the headspace GC-FID method met the AOAC SMPR requirements across multiple laboratories, and is fit for purpose for detecting ethanol in kombucha products. Dr. Brown and I, along with Dr. Michael Chan, Ph.D. and collaborators at BCIT, submitted and published the multi-laboratory validation study of the method in peer review, which was accepted and published in the Journal of AOAC International, in September 2018 (reference 1).

**February 2019 Analysis of Alcohol in GT's Enlightened Kombucha and Enlightened Synergy**

61.     In February 2019, Chris Stiner, counsel for Tortilla Factory asked me to conduct independent testing of GT's Enlightened Kombucha and Enlightened Synergy drinks (GT's Kombucha). I was instructed to conduct the testing as per the most reliable scientific procedures available. Stiner provided no other instructions and I was free to conduct the testing as I considered the most appropriate.

62.     I purchased 29 bottles of GT's Kombucha on February 20, 2019 in Carmel, Indiana—from Whole Foods at 146th Street and Clay Terrace, from Earth Fare on South Rangeline Road, and from Market District at 116th St and Illinois St. I selected the locations based on an approximate geographic center of the U.S. I selected retailers to represent distinct health food retail chains that I presumed to employ different distribution and handling practices who are not related to each other, and who are headquartered in different U.S. locations.

63.     I selected the bottles from the non-alcoholic beverage refrigerated section of the store, which is a separate physical location from the refrigerated

DECLARATION OF BLAKE EBERSOLE

Ebersole Decl. - Page 1078

alcoholic beverages. I selected flavors based on what I considered to be the more popular flavors, particularly the flavors that are most abundant on the shelves, and also to flavors that had been previously subjected to testing. I selected bottles with at least 3 weeks until expiration, and that had legible lot numbers. I also selected multiple bottles from the same lot, to duplicate same-lot results and get a sense if there could be variation of results within the same lot number.  For some flavors, I selected multiple lots from the same shelf, to determine whether there might be differences from lot to lot for the same flavor made at different times.  Each bottle comprised one sample. A list of samples tested is found in the following table.

| Sample # | Store | Sample Name | Lot # | Enjoy By | Lab Sample # | Report Date |
|---|---|---|---|---|---|---|
| 1 | Market District | GTs Cayennade | 0721C2EQ1 | 4/7/19 | 8177173 | 2/25/19 |
| 2 | Market District | GTs Cayennade | 0721C2EQ1 | 4/7/19 | 8177174 | 2/25/19 |
| 3 | Earth Fare | GTs Cranberry | 1021H2ES1 | 4/10/19 | 8177185 | 2/26/19 |
| 4 | Earth Fare | GTs Cranberry | 1021H2ES1 | 4/10/19 | 8177184 | 2/26/19 |
| 5 | Whole Foods | GTs Cranberry | 2921H1ED2 | 4/9/19 | 8177172 | 2/25/19 |
| 6 | Earth Fare | GTs Gingerade | 0421B1EL1 | 4/4/19 | 8177181 | 2/26/19 |
| 7 | Earth Fare | GTs Gingerade | 1232B1EL2 | 3/12/19 | 8177176 | 2/26/19 |
| 8 | Earth Fare | GTs Gingerade | 1232B1EL2 | 3/12/19 | 8177175 | 2/26/19 |
| 9 | Whole Foods | GTs Gingerade | 1421C1EL2 | 4/14/19 | 8177168 | 2/25/19 |
| 10 | Whole Foods | GTs Gingerade | 1421C1EL2 | 4/14/19 | 8177169 | 2/25/19 |
| 11 | Market District | GTs Gingerberry | 2921H2EM2 | 4/9/19 | 8177177 | 2/26/19 |
| 12 | Market District | GTs Gingerberry | 2921H2EM2 | 4/9/19 | 8177178 | 2/26/19 |
| 13 | Whole Foods | GTs Guava | 1021B1EK1 | 3/18/19 | 8177183 | 2/26/19 |
| 14 | Whole Foods | GTs Guava | 2921C1EH2 | 4/6/19 | 8177182 | 2/26/19 |
| 15 | Whole Foods | GTs Guava | 3121H1EG3 | 4/8/19 | 8177163 | 2/25/19 |
| 16 | Market District | GTs Multigreens | 1521B1ES1 | 3/23/19 | 8177180 | 2/26/19 |
| 17 | Market District | GTs Multigreens | 1521B1ES1 | 3/23/19 | 8177179 | 2/26/19 |
| 18 | Whole Foods | GTs Original | 1021B1EI1 | 4/10/19 | 8177170 | 2/25/19 |
| 19 | Whole Foods | GTs Original | 1021B1EI1 | 4/10/19 | 8177171 | 2/25/19 |
| 20 | Earth Fare | GTs Original | 1021B1EI2 | 4/10/19 | 8177188 | 2/26/19 |
| 21 | Earth Fare | GTs Original | 1021B1EI2 | 4/10/19 | 8177187 | 2/26/19 |
| 22 | Earth Fare | GTs Original | 1021B1EI2 | 4/10/19 | 8177186 | 2/26/19 |
| 23 | Earth Fare | GTs Original | 1021B1EI2 | 4/10/19 | 8177189 | 2/26/19 |
| 24 | Whole Foods | GTs Trilogy | 3021H2EJ1 | 4/10/19 | 8177165 | 2/25/19 |
| 25 | Whole Foods | GTs Trilogy | 3021H2EJ1 | 4/10/19 | 8177164 | 2/25/19 |
| 26 | Whole Foods | GTs Turmeric | 1421H1EL1 | 3/22/19 | 8177161 | 2/25/19 |
| 27 | Whole Foods | GTs Watermelon | 1721B1ET1 | 3/25/19 | 8177167 | 2/25/19 |
| 28 | Whole Foods | GTs Watermelon | 1721B1ET1 | 3/25/19 | 8177166 | 2/25/19 |
| 29 | Whole Foods | GTs Mango | 2921C1EF2 | 4/6/19 | 8177162 | 2/25/19 |

24

**February 2019 Alcohol Analytical Procedures**

64. I purchased GFT's Kombucha samples from the refrigerated shelves where they were sold, after verifying the shelves' thermometer to be between 33 and 39 degrees Fahrenheit. Before purchase, and before shipping, I visually inspected the samples for intact tamper-evident seals, intact labels, product contents and fill volume, and legible lot number and expiration date. I took care not to shake bottles and kept them upright during purchasing, transport and shipping. I took pictures of the samples (true and correct copies of which are attached hereto as Exhibit 3) including labels and lot numbers of each flavor. After purchase and inspection, I transferred and packaged the samples in an insulated shipper equivalent to a PolarTech validated insulated carton shipper with 1.5" thick refrigerant packs. I wrapped the bottles with bubble wrap and included food-grade packaging materials in the shipment containers, to ensure bottles would not move during transit. The shippers were sent the same day of purchase, marked with the following: Fragile, Perishable, Refrigerate upon receipt.

65. Shipments were transported by Priority Overnight (next day delivery by 10:30 am) by FedEx Express. The laboratory was notified of the analytical method, including storage and handling requirements before receiving the samples

66. All GT's Kombucha samples were reported by the laboratory to have been received cold, with ice packs. The laboratory confirmed the samples were under their control at all times. The samples were stored in refrigeration between 2-8 degrees Celsius, until the time of testing. During sample processing, the laboratory did not permit samples to remain outside of refrigerated conditions for more than two hours.

67. All samples were tested according to the headspace GC-FID method, which is AOAC Official Method of Analysis 2016.12, by Covance-Eurofins. Testing was performed within five days of receipt. Analysis was performed between

25

February 21 and 25, 2019, with results reported on February 25 and 26, 2019. All samples were tested before the date of expiration listed on the label.

68. All 29 GT's Kombucha samples tested in the February 2019 study contained alcohol in excess of 0.5% ABV (see below table, laboratory test reports in Exhibit 1). The results ranged from between 0.64% ABV to 1.85% ABV, with a mean of 1.22% ABV.

| Bottle # | Sample Name | Lot # | Enjoy By | Lab Sample # | Ethanol (% ABV) |
|---|---|---|---|---|---|
| 1 | GTs Cayennade | 0721C2EQ1 | 4/7/19 | 8177173 | 0.70% |
| 2 | GTs Cayennade | 0721C2EQ1 | 4/7/19 | 8177174 | 0.70% |
| 3 | GTs Cranberry | 1021H2ES1 | 4/10/19 | 8177185 | 1.04% |
| 4 | GTs Cranberry | 1021H2ES1 | 4/10/19 | 8177184 | 1.03% |
| 5 | GTs Cranberry | 2921H1ED2 | 4/9/19 | 8177172 | 1.34% |
| 6 | GTs Gingerade | 0421B1EL1 | 4/4/19 | 8177181 | 1.21% |
| 7 | GTs Gingerade | 1232B1EL2 | 3/12/19 | 8177176 | 1.53% |
| 8 | GTs Gingerade | 1232B1EL2 | 3/12/19 | 8177175 | 1.51% |
| 9 | GTs Gingerade | 1421C1EL2 | 4/14/19 | 8177168 | 1.35% |
| 10 | GTs Gingerade | 1421C1EL2 | 4/14/19 | 8177169 | 1.36% |
| 11 | GTs Gingerberry | 2921H2EM2 | 4/9/19 | 8177177 | 1.65% |
| 12 | GTs Gingerberry | 2921H2EM2 | 4/9/19 | 8177178 | 1.61% |
| 13 | GTs Guava | 1021B1EK1 | 3/18/19 | 8177183 | 1.20% |
| 14 | GTs Guava | 2921C1EH2 | 4/6/19 | 8177182 | 1.11% |
| 15 | GTs Guava | 3121H1EG3 | 4/8/19 | 8177163 | 1.05% |
| 16 | GTs Multigreens | 1521B1ES1 | 3/23/19 | 8177180 | 0.82% |
| 17 | GTs Multigreens | 1521B1ES1 | 3/23/19 | 8177179 | 0.81% |
| 18 | GTs Original | 1021B1EI1 | 4/10/19 | 8177170 | 1.38% |
| 19 | GTs Original | 1021B1EI1 | 4/10/19 | 8177171 | 1.31% |
| 20 | GTs Original | 1021B1EI2 | 4/10/19 | 8177188 | 1.38% |
| 21 | GTs Original | 1021B1EI2 | 4/10/19 | 8177187 | 1.32% |
| 22 | GTs Original | 1021B1EI2 | 4/10/19 | 8177186 | 1.44% |
| 23 | GTs Original | 1021B1EI2 | 4/10/19 | 8177189 | 1.36% |
| 24 | GTs Trilogy | 3021H2EJ1 | 4/10/19 | 8177165 | 1.85% |
| 25 | GTs Trilogy | 3021H2EJ1 | 4/10/19 | 8177164 | 1.76% |
| 26 | GTs Turmeric | 1421H1EL1 | 3/22/19 | 8177161 | 1.37% |
| 27 | GTs Watermelon | 1721B1ET1 | 3/25/19 | 8177167 | 0.64% |
| 28 | GTs Watermelon | 1721B1ET1 | 3/25/19 | 8177166 | 0.64% |
| 29 | GTs Mango | 2921C1EF2 | 4/6/19 | 8177162 | 0.96% |

69. The range of alcohol in the data represents between 28% and 370% higher than the legal limit of 0.5% ABV. These results were generally consistent

26

with the results from the testing I conducted in 2016, described previously in this report.

70. The alcohol levels reported in GT's Kombucha are consistent with those in reports provided to me by Chris Stiner, who conducted testing of 60 bottles GT's Kombucha, using the laboratory Enartis Vinquiry (Vinquiry) in Windsor, California from December 2017. Vinquiry uses a GC-FID method to quantify alcohol in various alcoholic beverages, such as wine. I reviewed these Vinquiry reports, and removed 14 samples from the analysis, due to a lack of recorded information on the sample expiration date or a complete record of cold chain assurance. Vinquiry found all 46 bottles within the remaining set to contain more than 0.5% ethanol, within the range of 0.60- 2.05% ABV (see Exhibit 7). The alcohol in these samples is between 20% and 310% higher than the legal limit of 0.5% ABV.

71. The results obtained for alcohol in GT's Enlightened Kombucha and Enlightened Synergy is generally consistent with the concentrations reported in the published literature. A number of independently conducted reports have also found commercial kombucha to contain in excess of 0.5% ABV (see references 5-7).

72. For example, in 2015 John Edwards, Ph.D. from Process NMR Associates analyzed three samples of GT's Kombucha using nuclear magnetic resonance method, which is highly specific and sensitive for alcohol. He found All GT's Kombucha exceeded 0.5% ABV, with a range of 1.23-1.40 % ABV, reflecting alcohol levels 246%-280% higher than the 0.5% limit. In 2017, Daniel Armstrong, Ph.D. and colleagues at the University of Texas analyzed eight samples of GT's Kombucha using headspace GC-FID, and found they all exceeded 0.5% alcohol, reporting a range of 1.1%-1.8% ABV in GT's Kombucha drinks. This reflects an amount that is 220%-360% higher than the 0.5% ABV limit for non-alcoholic beverages.

27

**Alcohol in GT's Compared to Alcoholic Beverages**

73.     Although a serving size of 8 oz is labeled on GT's Kombucha containers, many consumers may drink an entire bottle as a serving, since the container provides no way to measure a serving. Drinking an entire container of GT's kombucha containing 1.85% ABV (such as GT's Trilogy, lab sample # 8177165) would provide 8.8 mL (milliliters) of alcohol. This is the same quantity of alcohol that would be consumed in 6 oz of 5% ABV beer—equivalent to one half of a 12 oz. bottle of Budweiser. If we were to take a more conservative estimate, the average (mean) GT's with 1.22% alcohol (containing approximately 5.8 mL of alcohol per bottle) provides the same alcohol as about 4 ounces of Budweiser, or about 1/3 of a bottle.

74.     As a result of the method verification, single laboratory validation and multi-lab validation of this headspace GC-FID method, in addition to thoughtful review and evaluation of the ethanol method by AOAC Expert Review Panel and the Journal of AOAC International, along with my testing a number of GT's Enlightened Kombucha and Enlightened Synergy samples from multiple retailers and locations, and the consistency of these results using the same scientifically valid method over more than three years, I consider the alcohol results reported in my studies here to be highly credible and reliable.

**Sugars Analysis in Kombucha**

**Spring 2016 Sugars Analysis**

75.     In spring and summer of 2016, I had conducted an analysis of total sugars in 31 GT's Enlightened Kombucha and Enlightened Synergy products. I performed the sugars analysis on some of the same samples tested for alcohol, so the purchasing, storage, transportation and sampling procedures detailed above for alcohol were the same for the sugars analysis. The analysis used three different laboratories running different AOAC Official Methods of Analysis based on high

28

performance liquid chromatography (HPLC). The 2016 study found that all three labs together, using different AOAC Official Methods, found all 31 GT's samples analyzed to exceed levels above 20% more than the labeled quantity of sugars and carbohydrates.

76.     Test results on 31 samples of GT's kombucha in October 2016 using AOAC Official Method 982.14 resulted in 6.7-11 grams of total sugars per serving, versus 2-6 grams listed on the label. On average, GT's products contained more than three times the labeled amount of sugars (see following table and a true and correct copy of my study, Exhibit 6).

| Store | Store Location | Purchase Date | Manufacturer | Flavor | Enjoy by: | Lot # | Sugars Claim (g/serv) | Sugars Result (g/serv) | Report Date |
|---|---|---|---|---|---|---|---|---|---|
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Cosmic Cranberry | 8/5/16 | 0626**A9B | 2 | 10.0 | 7/12/16 |
| Vons #2096 | Ventura, CA | 5/12/16 | GT's | Gingerade | 6/17/16 | 1824 *C9B | 2 | 7.5 | 6/7/16 |
| Fresh Thyme | Indianapolis IN | 5/3/16 | GT's | Gingerade | 6/11/16 | 1224*D6B | 2 | 7.9 | 5/27/16 |
| Fresh Thyme | Indianapolis IN | 5/3/16 | GT's | Gingerade | 6/11/16 | 1224*D6B | 2 | 8.1 | 5/27/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Gingerade | 8/12/16 | 1326**F3B | 2 | 8.2 | 7/12/16 |
| Giant 6004 | Lititz, PA | 6/28/16 | GT's | Gingerade | 8/7/16 | 0826*D9B | 2 | 8.2 | 7/12/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Gingerade | 8/7/16 | 0826*D6B | 2 | 8.3 | 7/12/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Gingerade | 8/7/16 | 0826*D6B | 2 | 8.7 | 7/12/16 |
| Sprouts 2950 Baseline Rd | Boulder, CO | 6/28/16 | GT's | Gingerade | 8/5/16 | 0626**E2B | 2 | 8.9 | 7/12/16 |
| Vons #2096 | Ventura, CA | 6/28/16 | GT's | Gingerade | 8/6/16 | 0726*D1B | 2 | 8.9 | 7/7/16 |
| WholeFoods | Carmel IN | 4/4/16 | GT's | Gingerade | 5/14/16 | 1529*B9B | 2 | 9.0 | 4/21/16 |
| Whole Foods | Carmel IN | 4/4/16 | GT's | Gingerade | 5/14/16 | 1529*B9B | 2 | 9.1 | 4/11/16 |
| Fresh Thyme | Indianapolis IN | 5/3/16 | GT's | Gingerberry | 6/3/16 | 0424C*C4B | 4 | 7.7 | 5/27/16 |
| Fresh Market | Carmel IN | 5/3/16 | GT's | Gingerberry | 6/3/16 | 0424C*C4B | 4 | 7.9 | 5/27/16 |
| Giant 6004 | Lititz, PA | 6/28/16 | GT's | Gingerberry | 7/25/16 | 2625C*B0B | 4 | 8.7 | 7/12/16 |
| Sprouts 2950 Baseline Rd | Boulder, CO | 6/28/16 | GT's | Gingerberry | 8/7/16 | 0826*B5B | 4 | 11.0 | 7/12/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Hibiscus Ginger | 8/12/16 | 1326C*A8B | 2 | 9.4 | 7/12/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Lavender Love | 8/6/16 | 0726**A9B | 2 | 8.9 | 7/12/16 |
| Vons #2096 | Ventura, CA | 5/12/16 | GT's | Multigreen | 6/12/16 | 1324 *A7B | 2 | 10.2 | 6/7/16 |
| Fresh Market | Carmel IN | 5/3/16 | GT's | Multigreen | 6/13/16 | 1424C*A2B | 2 | 6.9 | 5/27/16 |
| Fresh Thyme | Indianapolis IN | 5/3/16 | GT's | Multigreen | 6/13/16 | 1424C*A2B | 2 | 7.0 | 5/27/16 |
| Publix 1012 W Main St | Inverness FL | 6/28/16 | GT's | Multigreen | 8/13/16 | 1426**A8B | 2 | 9.4 | 7/12/16 |
| Vons #2096 | Ventura, CA | 5/12/16 | GT's | Original | 7/20/16 | 2124**E5B | 2 | 8.8 | 6/7/16 |
| Sprouts 2950 Baseline Rd | Boulder, CO | 6/28/16 | GT's | Original | 8/30/16 | 0266**F1B | 2 | 8.9 | 7/12/16 |
| Vons #2096 | Ventura, CA | 6/28/16 | GT's | Original | 8/28/16 | 3025**A3B | 2 | 8.9 | 7/7/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Original | 7/26/16 | 2724*F1B | 2 | 9.0 | 7/12/16 |
| Fresh Market | Carmel IN | 5/3/16 | GT's | Trilogy | 6/19/16 | 2024**C8B | 2 | 6.7 | 5/27/16 |
| Vons #2096 | Ventura, CA | 5/12/16 | GT's | Trilogy | 6/19/16 | 2124**C2B | 2 | 8.6 | 6/7/16 |
| Fresh Thyme #207 | Carmel IN | 6/28/16 | GT's | Trilogy | 8/1/16 | 0226*C4B | 2 | 9.1 | 7/12/16 |
| Giant 6004 | Lititz, PA | 6/28/16 | GT's | Trilogy | 8/1/16 | 0226*D1B | 2 | 10.0 | 7/12/16 |
| Vons #2096 | Ventura, CA | 6/28/16 | GT's | Trilogy | 8/14/16 | 1526**F3B | 2 | 11.0 | 7/7/16 |

29

**February 2019 Sugars Analysis**

77.     I purchased 29 bottles of GT's Kombucha on February 20, 2019 in Carmel, Indiana—from Whole Foods at 146th Street and Clay Terrace, from Earth Fare on South Rangeline Road, and from Market District at 116th St. and Illinois St.

78.     Because the samples tested in the February 2019 study were the same as the ones analyzed for alcohol, I employed all the same procedures and precautions related to sample purchasing, storage, transportation and testing described previously in this report. Covance analyzed the samples between February 21 and 25, 2019, with results reported on February 25 and 26, 2019.

79.     Covance analyzed the kombucha samples for total sugars by HPLC, according to method AOAC Official Method 982.14. This method is widely applicable for total sugars in foods and beverages, and is one of the high performance liquid chromatography (HPLC) based methods for sugars that is considered reliable because it is specific for the type of sugar, and is sensitive at low concentrations typically found in beverages. As a result, this method is recognized by FDA and other regulatory authorities for testing of total sugars in a range of foods and beverages.

**Sugars Results from February 2019 Analysis**

80.     Test results on the 29 samples of GT's Kombucha in February 2019 using the Covance method resulted in an average of 9.2 grams of total sugars per 8 oz. serving, versus an average of 7 grams of sugars listed on the label (see following table). On average, the sugar in GT's exceeded the label claim by 33%. The range of sugars detected was 7.6-11.1 g/serving, compared to 6-10 g/serving listed on the label.

30

| Bottle # | Sample Name | Lot # | Enjoy By | Lab Sample # | Total Sugars (g/serving) | Sugars Labeled (g/serving) | Total Sugars (% Above Label) |
|---|---|---|---|---|---|---|---|
| 1 | GTs Cayennade | 0721C2EQ1 | 4/7/19 | 8177173 | 9.3 | 8 | 16% |
| 2 | GTs Cayennade | 0721C2EQ1 | 4/7/19 | 8177174 | 9.4 | 8 | 17% |
| 3 | GTs Cranberry | 1021H2ES1 | 4/10/19 | 8177185 | 10.1 | 8 | 26% |
| 4 | GTs Cranberry | 1021H2ES1 | 4/10/19 | 8177184 | 9.9 | 8 | 23% |
| 5 | GTs Cranberry | 2921H1ED2 | 4/9/19 | 8177172 | 8.6 | 8 | 7% |
| 6 | GTs Gingerade | 0421B1EL1 | 4/4/19 | 8177181 | 8.6 | 6 | 43% |
| 7 | GTs Gingerade | 1232B1EL2 | 3/12/19 | 8177176 | 7.9 | 6 | 32% |
| 8 | GTs Gingerade | 1232B1EL2 | 3/12/19 | 8177175 | 7.9 | 6 | 31% |
| 9 | GTs Gingerade | 1421C1EL2 | 4/14/19 | 8177168 | 7.6 | 6 | 26% |
| 10 | GTs Gingerade | 1421C1EL2 | 4/14/19 | 8177169 | 7.7 | 6 | 28% |
| 11 | GTs Gingerberry | 2921H2EM2 | 4/9/19 | 8177177 | 9.6 | 6 | 59% |
| 12 | GTs Gingerberry | 2921H2EM2 | 4/9/19 | 8177178 | 9.7 | 6 | 61% |
| 13 | GTs Guava | 1021B1EK1 | 3/18/19 | 8177183 | 10.0 | 8 | 24% |
| 14 | GTs Guava | 2921C1EH2 | 4/6/19 | 8177182 | 10.0 | 8 | 24% |
| 15 | GTs Guava | 3121H1EG3 | 4/8/19 | 8177163 | 10.1 | 8 | 26% |
| 16 | GTs Multigreens | 1521B1ES1 | 3/23/19 | 8177180 | 9.6 | 8 | 19% |
| 17 | GTs Multigreens | 1521B1ES1 | 3/23/19 | 8177179 | 9.5 | 8 | 19% |
| 18 | GTs Original | 1021B1EI1 | 4/10/19 | 8177170 | 9.1 | 6 | 52% |
| 19 | GTs Original | 1021B1EI1 | 4/10/19 | 8177171 | 9.4 | 6 | 56% |
| 20 | GTs Original | 1021B1EI2 | 4/10/19 | 8177188 | 9.1 | 6 | 51% |
| 21 | GTs Original | 1021B1EI2 | 4/10/19 | 8177187 | 9.6 | 6 | 59% |
| 22 | GTs Original | 1021B1EI2 | 4/10/19 | 8177186 | 8.8 | 6 | 47% |
| 23 | GTs Original | 1021B1EI2 | 4/10/19 | 8177189 | 8.9 | 6 | 48% |
| 24 | GTs Trilogy | 3021H2EJ1 | 4/10/19 | 8177165 | 8.4 | 6 | 40% |
| 25 | GTs Trilogy | 3021H2EJ1 | 4/10/19 | 8177164 | 8.6 | 6 | 43% |
| 26 | GTs Turmeric | 1421H1EL1 | 3/22/19 | 8177161 | 8.5 | 6 | 42% |
| 27 | GTs Watermelon | 1721B1ET1 | 3/25/19 | 8177167 | 11.1 | 9 | 23% |
| 28 | GTs Watermelon | 1721B1ET1 | 3/25/19 | 8177166 | 10.9 | 9 | 21% |
| 29 | GTs Mango | 2921C1EF2 | 4/6/19 | 8177162 | 10.5 | 10 | 4% |

81.     The amount of total sugars per serving reported in the February 2019 round of testing were similar to the amounts from previous testing in 2016. Considering the suitability of the analytical method, and the relative consistency in results over time, I believe these results to be reliable and accurate.

**Kombucha Sugars in Context of Sugared Beverages**

82.     Some useful context: under the old FDA nutrition labeling requirements, and also based on the mean sugar content found in the February 2019 study, an 8 oz. serving size of GT's provides the same amount of sugar in 2.8 oz. of Coca Cola, or approximately 1/4 can. However, on May 20, 2016, FDA announced nutrition labeling guidelines requiring foods that contain 1 to 2 servings must be labeled to contain one serving, on or before January 1, 2020 for firms with $10

31

million of more in annual sales[5]. Under the new FDA labeling rules that will apply to these manufacturers on January 1, 2020, a consumer who drinks an entire bottle (one serving) of GT's Watermelon Kombucha, lab sample 8177166 is consuming 22 grams of added sugar per serving. The amount of added sugar in the GT's Watermelon provides 88 calories, and represents 44% of the 50 gram recommended maximum daily value for added sugars, based on a 2,000 calorie diet. This amount of added sugar is equivalent to 6.8 oz. of Coca Cola, more than half of a standard 12 oz. can.

83.     When combining the sugars and alcohol content under the serving size requirements, the calorie count per serving is calculated much higher than is currently reported on the label. For example, a bottle of GT's Cranberry, lab sample 8177172 contains 17 grams of sugar and 5 grams of alcohol, which provides more than 100 calories per bottle. This exceeds the 30 calories per serving currently listed on the label.

84.     As a result of my thoughtful review and evaluation of sugars analysis, selection of AOAC Official Methods in recognized laboratories for testing, and the testing of 60 GT's Kombucha samples from multiple retailers and locations, and the consistency of the sugars results in GT's Kombucha using these methods over a period of more than three years, I consider the alcohol results reported in my studies here to be highly credible and reliable.

---

[5] FDA, "Changes to the Nutrition Facts Label". Source: https://www.fda.gov/Food/GuidanceRegulation/ucm385663.htm accessed March 1, 2019

32

I declare under penalty of perjury under the laws of the United States of America and the state of Texas, that the foregoing is true and correct and that this Declaration was executed on May 20, 2019 at Carmel, Indiana.

Blake Ebersole

33



# EXHIBIT 1

Case 2:17-cv-07959-FMO-JSS   Document 156-3   Filed 10/15/19   Page 96 of 255   Page ID #:4008

# EXHIBIT 1 - PART A

eurofins
**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2406859-0** |
| **Report Date:** | **25-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Original** | **Eurofins Sample:** | **8177171** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El1 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 4.7 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 8.3 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 19 g/Serving Size |
| **Density *** | |
| Density | 1.015 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.31 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**                                **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                         **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**



**Report Number:** 2406859-0

**Report Date:** 25-Feb-2019

**Report Status:** Final

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

Ebersole Decl. - Page 1093

**Report Date:** 26-Feb-2019

**Report Status:** Final

**eurofins**
**Food Integrity & Innovation**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GTs Guava** | Eurofins Sample: | **8177182** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 2921C1EH2 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 6.4 g/Serving Size |
| Glucose | 5.9 g/Serving Size |
| Fructose | 7.6 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density *** | |
| Density | 1.016 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.11 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**                                                                 **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                                  **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                                                   **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   4:22 pm                               Page 1 of 2



## Food Integrity & Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* **This analysis or component is not ISO accredited.**

Printed:   26-Feb-2019   4:22 pm

**eurofins** | **Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2407760-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Sample Name:** | **GTs Guava** | **Eurofins Sample:** | **8177183** |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1EK1 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 7.3 g/Serving Size |
| Glucose | 5.4 g/Serving Size |
| Fructose | 7.2 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density \*** | |
| Density | 1.017 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.20 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1096



| | |
|---|---|
| **Report Number:** | **2407760-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

**Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.**

**These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.**

---

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1097

**Report Date:**   26-Feb-2019

**Report Status:**   Final

**eurofins**
Food Integrity
& Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GTs Cranberry** | Eurofins Sample: | **8177184** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021H2ES1 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3 g/Serving Size |
| Glucose | 8.4 g/Serving Size |
| Fructose | 8.3 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density \*** | |
| Density | 1.017 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.03 % |

| Method References | Testing Location |
|---|---|

**Density (DENSITY_S)**                                              Food Integrity Innovation-Madison

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                          Food Integrity Innovation-Madison

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                                    Food Integrity Innovation-Madison

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   4:22 pm                        Page 1 of 2

Ebersole Decl. - Page 1098



| | Report Number: | 2407761-0 |
| --- | --- | --- |
| | Report Date: | 26-Feb-2019 |
| | Report Status: | Final |

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
| --- | --- |

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* **This analysis or component is not ISO accredited.**
Printed: 26-Feb-2019 4:22 pm                     Page 2 of 2

![eurofins logo] **eurofins**

**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2407762-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Cranberry** | **Eurofins Sample:** | **8177185** |

| | | | |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021H2ES1 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 4 g/Serving Size |
| Glucose | 8.2 g/Serving Size |
| Fructose | 8.0 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density *** | |
| Density | 1.017 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.04 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**                                                                 **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                              **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                                                  **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   4:22 pm                          Page 1 of 2

Ebersole Decl. - Page 1100



| | |
|---|---|
| | **Report Number:** 2407762-0 |
| | **Report Date:** 26-Feb-2019 |
| | **Report Status:** Final |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

**Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.**

**These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.**

---

**\* This analysis or component is not ISO accredited.**

**eurofins**

Food Integrity
& Innovation

**Report Number:** 2407763-0

**Report Date:** 26-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Original** | **Eurofins Sample:** | **8177186** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El2 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 4.6 g/Serving Size |
| Glucose | 5.1 g/Serving Size |
| Fructose | 7.9 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 18 g/Serving Size |
| **Density *** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.44 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**　　　　　　　　　　　　　　　　　　**Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**　　　　　　**Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL　(2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**　　　　　　　　　　　　**Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

Printed: 26-Feb-2019  4:23 pm　　　　　　　　　Page 1 of 2

Ebersole Decl. - Page 1102

Case 2:19-cv-07935-FMO-GSS Document 153-3 Filed 10/15/19 Page 94 of 351 Page ID #:4020



## Food Integrity & Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* **This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1103

**eurofins**
Food Integrity
& Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Original | Eurofins Sample: | 8177187 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El2 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 8.4 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 19 g/Serving Size |
| **Density *** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.32 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**  **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**  **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL   (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**  **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

***This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   4:23 pm              Page 1 of 2

Ebersole Decl. - Page 1104



**Food Integrity & Innovation**

| Report Number: | 2407764-0 |
|---|---|
| Report Date: | 26-Feb-2019 |
| Report Status: | Final |

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* This analysis or component is not ISO accredited.

Report Number:    2407765-0
Report Date:    26-Feb-2019
Report Status:    Final

**eurofins**
Food Integrity
& Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Original | Eurofins Sample: | 8177188 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El2 | **Online Order** | 20 |
| | Sample 3 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 0.9 g/Serving Size |
| Glucose | 7.6 g/Serving Size |
| Fructose | 9.6 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 18 g/Serving Size |
| **Density *** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.38 % |

| Method References | Testing Location |
|---|---|
| **Density (DENSITY_S)** | **Food Integrity Innovation-Madison** |

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

| | |
|---|---|
| **Residual Ethanol in Kombucha (ETME_KB_S)** | **Food Integrity Innovation-Madison** |

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

| | |
|---|---|
| **Sugar Profile by HPLC (SGLC_S)** | **Food Integrity Innovation-Madison** |

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:    26-Feb-2019   4:22 pm                    Page 1 of 2

Ebersole Decl. - Page 1106



**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2407765-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* This analysis or component is not ISO accredited.

eurofins
**Food Integrity & Innovation**

Report Number:   2407860-0
Report Date:   **26-Feb-2019**
Report Status:   **Final**

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GTs Gingerade** | Eurofins Sample: | **8177181** |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 0421B1EL1 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 8.4 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 17 g/Serving Size |
| **Density *** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.21 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**                                                 **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                            **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL     (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                                       **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   5:01 pm                     Page 1 of 2

Ebersole Decl. - Page 1108

**Report Number:** **2407860-0**

**Report Date:** **26-Feb-2019**

**Report Status:** **Final**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| | |

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**



2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

* **This analysis or component is not ISO accredited.**

**Report Number:** 2407766-0

**Report Date:** 26-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Original | Eurofins Sample: | 8177189 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El2 | **Online Order** | 20 |
| | Sample 4 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 0.8 g/Serving Size |
| Glucose | 7.5 g/Serving Size |
| Fructose | 9.4 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 18 g/Serving Size |
| **Density *** | |
| Density | 1.013 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.36 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**  **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**  **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL   (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**  **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   4:22 pm                    Page 1 of 2

Ebersole Decl. - Page 1110

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* **This analysis or component is not ISO accredited.**

Case 3:19-cv-00594-FMO-CSS Document 150-3 Filed 10/15/19 Page 163 of 903 Page ID #:4023

## eurofins
### Food Integrity & Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Gingerberry | Eurofins Sample: | 8177178 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 2921H2EM2 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 7.3 g/Serving Size |
| Fructose | 10 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density *** | |
| Density | 1.016 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.61 % |

| Method References | Testing Location |
|---|---|

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1112

| | Report Number: | **2407857-0** |
|---|---|---|
| | **Report Date:** | **26-Feb-2019** |
| | **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 |  <br>2918.01 |

**Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.**

**These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.**

---

Ebersole Decl. - Page 1113

**eurofins**

**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2407858-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Multigreens** | **Eurofins Sample:** | **8177179** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1521B1ES1 Sample 1 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5.8 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 7.5 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 19 g/Serving Size |
| **Density \*** | |
| Density | 1.016 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 0.809 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**  —  **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**  —  **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL   (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**  —  **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1114

**Report Number:** **2407858-0**

**Report Date:** **26-Feb-2019**

**Report Status:** **Final**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**



2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* This analysis or component is not ISO accredited.

Printed: 26-Feb-2019  5:01 pm

Ebersole Decl. - Page 1115

Case 3:19-cv-03589-FMO-CSS  Document 150-3  Filed 10/13/23  Page 167 of 903 Page ID #:4033

eurofins | **Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2407859-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Multigreens** | **Eurofins Sample:** | **8177180** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1521B1ES1 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5.6 g/Serving Size |
| Glucose | 5.8 g/Serving Size |
| Fructose | 7.7 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 19 g/Serving Size |
| **Density *** | |
| Density | 1.016 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 0.820 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**  —  **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**  —  **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL   (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**  —  **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1116

**eurofins** | Food Integrity & Innovation

| | |
|---|---|
| **Report Number:** | **2407859-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

**Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.**

**These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.**

---

\* **This analysis or component is not ISO accredited.**

**eurofins**

**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2407860-0** |
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Gingerade** | **Eurofins Sample:** | **8177181** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 0421B1EL1 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 8.4 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 17 g/Serving Size |
| **Density *** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.21 % |

## Method References

**Testing Location**

**Density (DENSITY_S)**

**Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**

**Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**

**Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

***This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1118

eurofins | **Food Integrity & Innovation**

Report Number: **2407860-0**

Report Date: **26-Feb-2019**

Report Status: **Final**

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. 3301 Kinsman Blvd Madison WI 53704 800-675-8375 |   2918.01 |

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* **This analysis or component is not ISO accredited.**

Printed: 26-Feb-2019 5:01 pm

**eurofins**
Food Integrity
& Innovation

Report Number: **2407854-0**

Report Date: **26-Feb-2019**

Report Status: **Final**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Gingerade | Eurofins Sample: | 8177175 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1232B1EL2 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | <0.5 g/Serving Size |
| Glucose | 6.8 g/Serving Size |
| Fructose | 8.9 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 16 g/Serving Size |
| **Density \*** | |
| Density | 1.011 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.51 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1120

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

* **This analysis or component is not ISO accredited.**

Printed:    26-Feb-2019   5:01 pm

Page 2 of 2

Case 2:19-cv-03519-FMO-GJS Document 150-3 Filed 10/27/20 Page 174 of 903 Page ID #:4039

**eurofins**

Food Integrity
& Innovation

| | |
|---|---|
| **Report Date:** | **26-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Gingerberry** | **Eurofins Sample:** | **8177177** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 2921H2EM2 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 7.1 g/Serving Size |
| Fructose | 10 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density \*** | |
| Density | 1.016 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.65 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**      **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**      **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL   (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**      **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed: 26-Feb-2019 5:01 pm          Page 1 of 2

| | **Report Number:** | **2407856-0** |
|---|---|---|
| | **Report Date:** | **26-Feb-2019** |
| | **Report Status:** | **Final** |

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* This analysis or component is not ISO accredited.

Printed:   26-Feb-2019   5:01 pm                    Page 2 of 2

**eurofins** | Food Integrity & Innovation

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Gingerade | Eurofins Sample: | 8177176 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1232B1EL2 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | <0.5 g/Serving Size |
| Glucose | 6.9 g/Serving Size |
| Fructose | 8.9 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 16 g/Serving Size |
| **Density \*** | |
| Density | 1.012 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.53 % |

| Method References | Testing Location |
|---|---|

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

Printed: 26-Feb-2019 5:01 pm                Page 1 of 2

**Report Number:** **2407855-0**

**Report Date:** **26-Feb-2019**

**Report Status:** **Final**

# eurofins

**Food Integrity & Innovation**

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|

**Food Integrity Innovation-Madison** | **Edward Ladwig - Director**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* **This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1125

eurofins
Food Integrity
& Innovation

**Report Number:** 2407763-0

**Report Date:** 26-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Original | Eurofins Sample: | 8177186 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El2 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 4.6 g/Serving Size |
| Glucose | 5.1 g/Serving Size |
| Fructose | 7.9 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 18 g/Serving Size |
| **Density *** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.44 % |

| Method References | Testing Location |
|---|---|
| **Density (DENSITY_S)** | **Food Integrity Innovation-Madison** |

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

| | |
|---|---|
| **Residual Ethanol in Kombucha (ETME_KB_S)** | **Food Integrity Innovation-Madison** |

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

| | |
|---|---|
| **Sugar Profile by HPLC (SGLC_S)** | **Food Integrity Innovation-Madison** |

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   26-Feb-2019   4:23 pm

Page 1 of 2

Ebersole Decl. - Page 1126

**Report Number:** 2407763-0

**Report Date:** 26-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* **This analysis or component is not ISO accredited.**

Report Number: 2407764-0

Report Date: 26-Feb-2019

Report Status: Final

**eurofins**

Food Integrity
& Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Original | | Eurofins Sample: | 8177187 |
|---|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1El2 | | **Online Order** | 20 |
| | Sample 2 | | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 8.4 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 19 g/Serving Size |
| **Density \*** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.32 % |

## Method References | Testing Location

**Density (DENSITY_S)** | **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** | **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** | **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1128

Report Number:  **2407764-0**

Report Date:     **26-Feb-2019**

Report Status:          **Final**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* This analysis or component is not ISO accredited.
Printed:   26-Feb-2019   4:23 pm                    Page 2 of 2

Ebersole Decl. - Page 1129

**eurofins** | Food Integrity & Innovation

**Report Date:** **26-Feb-2019**

**Report Status:** **Final**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Cranberry | Eurofins Sample: | 8177184 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021H2ES1 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3 g/Serving Size |
| Glucose | 8.4 g/Serving Size |
| Fructose | 8.3 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density *** | |
| Density | 1.017 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.03 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**                                                      **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                                  **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                                            **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 | |



2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

* This analysis or component is not ISO accredited.

Ebersole Decl. - Page 1131

**Report Number:** 2407762-0

**Report Date:** 26-Feb-2019

**Report Status:** Final

**eurofins**

**Food Integrity & Innovation**

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GTs Cranberry** | Eurofins Sample: | **8177185** |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021H2ES1 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 4 g/Serving Size |
| Glucose | 8.2 g/Serving Size |
| Fructose | 8.0 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density *** | |
| Density | 1.017 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.04 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL   (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

**Report Number:** 2407762-0

**Report Date:** 26-Feb-2019

**Report Status:** Final

**eurofins**

**Food Integrity & Innovation**

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* This analysis or component is not ISO accredited.

Ebersole Decl. - Page 1133

**Report Number:** 2406849-0

**Report Date:** 25-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Tumeric | Eurofins Sample: | 8177161 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1421H1EL1 | **Online Order** | 20 |
| | 3.22.19 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 1 g/Serving Size |
| Glucose | 6.7 g/Serving Size |
| Fructose | 9.5 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 17 g/Serving Size |
| **Density \*** | |
| Density | 1.014 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.37 % |

| Method References | Testing Location |
|---|---|

**Density (DENSITY_S)** — Food Integrity Innovation-Madison

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — Food Integrity Innovation-Madison

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — Food Integrity Innovation-Madison

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

Printed:   25-Feb-2019   9:31 pm

Ebersole Decl. - Page 1134

**Report Number:** 2406849-0

**Report Date:** 25-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* **This analysis or component is not ISO accredited.**

**eurofins**

**Food Integrity & Innovation**

**Report Number:** 2406851-0

**Report Date:** 25-Feb-2019

**Report Status:** Final

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Guava | Eurofins Sample: | 8177163 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 3121H1EG3 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5.1 g/Serving Size |
| Glucose | 6.9 g/Serving Size |
| Fructose | 8.1 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 20 g/Serving Size |
| **Density *** | |
| Density | 1.018 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.05 % |

| Method References | Testing Location |
|---|---|
| **Density (DENSITY_S)** | **Food Integrity Innovation-Madison** |

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

| | |
|---|---|
| **Residual Ethanol in Kombucha (ETME_KB_S)** | **Food Integrity Innovation-Madison** |

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

| | |
|---|---|
| **Sugar Profile by HPLC (SGLC_S)** | **Food Integrity Innovation-Madison** |

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1136

**eurofins**

**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2406851-0** |
| **Report Date:** | **25-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1137

Case 2:19-cv-00594-FMO-CSS   Document 23-1   Filed 10/15/19   Page 1138 of 903 Page
ID #:139

**eurofins** | Food Integrity & Innovation

**Report Number:** 2406852-0
**Report Date:** 25-Feb-2019
**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Trilogy | Eurofins Sample: | 8177164 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 3021H2EJ1 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3 g/Serving Size |
| Glucose | 5.4 g/Serving Size |
| Fructose | 8.8 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 17 g/Serving Size |
| **Density *** | |
| Density | 1.016 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.76 % |

## Method References

**Testing Location**

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**



## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* **This analysis or component is not ISO accredited.**

**Report Number:** 2406853-0
**Report Date:** 25-Feb-2019
**Report Status:** Final

## eurofins
### Food Integrity & Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GTs Trilogy** | **Eurofins Sample:** | **8177165** |
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 3021H2EJ1 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3 g/Serving Size |
| Glucose | 5.2 g/Serving Size |
| Fructose | 8.6 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 17 g/Serving Size |
| **Density *** | |
| Density | 1.015 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.85 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)**                                                      **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)**                                 **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)**                                           **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   25-Feb-2019   9:31 pm                          Page 1 of 2

**Report Number:** 2406853-0
**Report Date:** 25-Feb-2019
**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375



2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* This analysis or component is not ISO accredited.
Printed: 25-Feb-2019  9:31 pm

Page 2 of 2

Ebersole Decl. - Page 1141

**eurofins**

Food Integrity
& Innovation

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GTs Watermelon** | Eurofins Sample: | **8177166** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1721B1ET1 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5.0 g/Serving Size |
| Glucose | 6.9 g/Serving Size |
| Fructose | 9.9 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 22 g/Serving Size |
| **Density *** | |
| Density | 1.019 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 0.641 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)** — Food Integrity Innovation-Madison

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — Food Integrity Innovation-Madison

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — Food Integrity Innovation-Madison

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:   25-Feb-2019   9:31 pm

Ebersole Decl. - Page 1142

**Report Number:** 2406854-0

**Report Date:** 25-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* This analysis or component is not ISO accredited.

Printed:    25-Feb-2019   9:31 pm

**eurofins**

Food Integrity
& Innovation

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GTs Watermelon** | Eurofins Sample: | **8177167** |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1721B1ET1 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 5.1 g/Serving Size |
| Glucose | 7.0 g/Serving Size |
| Fructose | 10 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 22 g/Serving Size |
| **Density *** | |
| Density | 1.019 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 0.640 % |

| Method References | Testing Location |
|---|---|
| **Density (DENSITY_S)** | **Food Integrity Innovation-Madison** |

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

| | |
|---|---|
| **Residual Ethanol in Kombucha (ETME_KB_S)** | **Food Integrity Innovation-Madison** |

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

| | |
|---|---|
| **Sugar Profile by HPLC (SGLC_S)** | **Food Integrity Innovation-Madison** |

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:    25-Feb-2019    9:31 pm                                    Page 1 of 2

Ebersole Decl. - Page 1144

Report Number: 2406855-0

Report Date: 25-Feb-2019

Report Status: Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 | |

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

\* This analysis or component is not ISO accredited.

Ebersole Decl. - Page 1145

**eurofins**

Food Integrity
& Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Gingerade | | Eurofins Sample: | 8177168 |
|---|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | | **Login Date** | 21-Feb-2019 |
| **Description** | 1421C1EL2 | | **Online Order** | 20 |
| | Sample 1 | | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 5.5 g/Serving Size |
| Fructose | 7.6 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 15 g/Serving Size |
| **Density \*** | |
| Density | 1.012 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.35 % |

| Method References | Testing Location |
|---|---|
| **Density (DENSITY_S)** | **Food Integrity Innovation-Madison** |

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

| **Residual Ethanol in Kombucha (ETME_KB_S)** | **Food Integrity Innovation-Madison** |
|---|---|

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

| **Sugar Profile by HPLC (SGLC_S)** | **Food Integrity Innovation-Madison** |
|---|---|

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**
Printed:    25-Feb-2019   9:31 pm                          Page 1 of 2

Report Number: 2406856-0

Report Date: 25-Feb-2019

Report Status: Final

## Certificate of Analysis

# NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| | |

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

Ebersole Decl. - Page 1147

eurofins
Food Integrity
& Innovation

**Report Number:** 2406857-0
**Report Date:** 25-Feb-2019
**Report Status:** Final

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Gingerade | Eurofins Sample: | 8177169 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1421C1EL2 | **Online Order** | 20 |
| | Sample 2 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 5.6 g/Serving Size |
| Fructose | 7.7 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 15 g/Serving Size |
| **Density *** | |
| Density | 1.012 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.36 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)** — Food Integrity Innovation-Madison

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — Food Integrity Innovation-Madison

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL  (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — Food Integrity Innovation-Madison

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**
Printed:  25-Feb-2019  9:31 pm                    Page 1 of 2

Ebersole Decl. - Page 1148

**eurofins** | Food Integrity & Innovation

| | |
|---|---|
| **Report Number:** | **2406857-0** |
| **Report Date:** | **25-Feb-2019** |
| **Report Status:** | **Final** |

## Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |
| Eurofins Food Chemistry Testing US, Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

**Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.**

**These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.**

---

**\* This analysis or component is not ISO accredited.**

Case 2:19-cv-01040-FMO-CSS Document 150-3 Filed 10/16/19 Page 201 of 903 Page ID #:4067

**eurofins**
Food Integrity & Innovation

| | | |
|---|---|---|
| | **Report Number:** | **2406858-0** |
| | **Report Date:** | **25-Feb-2019** |
| | **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Original | Eurofins Sample: | 8177170 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 1021B1EI1 | **Online Order** | 20 |
| | Sample 1 | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 4 g/Serving Size |
| Glucose | 5.7 g/Serving Size |
| Fructose | 8.5 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 18 g/Serving Size |
| **Density \*** | |
| Density | 1.015 g/mL |
| **Residual Ethanol in Kombucha \*** | |
| Ethanol v/v | 1.38 % |

| **Method References** | **Testing Location** |
|---|---|

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

---

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1150

**eurofins** | Food Integrity & Innovation

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Testing Location(s) | Released on Behalf of Eurofins by |
|---|---|
| **Food Integrity Innovation-Madison** | **Edward Ladwig - Director** |

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

***

* **This analysis or component is not ISO accredited.**
Printed: 25-Feb-2019 9:31 pm

**eurofins**

Food Integrity & Innovation

**Report Number:** 2406860-0

**Report Date:** 25-Feb-2019

**Report Status:** Final

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GTs Cranberry | Eurofins Sample: | 8177172 |
|---|---|---|---|
| **Project ID** | NATUREP_SC-20190221-0002 | **Receipt Date** | 21-Feb-2019 |
| **PO Number** | Charge – Visa | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 16 fl oz | **Login Date** | 21-Feb-2019 |
| **Description** | 2921H1ED2 | **Online Order** | 20 |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 8.0 g/Serving Size |
| Fructose | 7.1 g/Serving Size |
| Maltose | <0.5 g/Serving Size |
| Lactose | <0.5 g/Serving Size |
| Total Sugar | 17 g/Serving Size |
| **Density *** | |
| Density | 1.015 g/mL |
| **Residual Ethanol in Kombucha *** | |
| Ethanol v/v | 1.34 % |

## Method References

**Testing Location**

**Density (DENSITY_S)** — **Food Integrity Innovation-Madison**

AOAC Official Method 988.06 Specific Gravity of Beer and Wort Digital Density Meter method (modified).

Mettler Toledo Densito 30PX operating instructions

**Residual Ethanol in Kombucha (ETME_KB_S)** — **Food Integrity Innovation-Madison**

AOAC Method 2016.12, Official Methods of Analysis of AOAC INTERNATIONAL    (2016).

Anthony, Robert M.; Sutheimer, Craig A.; Sunshine, Irving, Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography, Journal of Analytical Toxicology, Volume 4, Number 1, January 1980, pp. 43-45 (modified).

**Sugar Profile by HPLC (SGLC_S)** — **Food Integrity Innovation-Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

**\* This analysis or component is not ISO accredited.**

Ebersole Decl. - Page 1152

 

**eurofins**
**Food Integrity & Innovation**

| | |
|---|---|
| **Report Number:** | **2406860-0** |
| **Report Date:** | **25-Feb-2019** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## NaturPro Scientific

10541 Brookview Dr
Carmel Indiana 46032 United States

---

| **Testing Location(s)** | **Released on Behalf of Eurofins by** |
|---|---|
| | |

**Food Integrity Innovation-Madison**

Eurofins Food Chemistry Testing US, Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

**Edward Ladwig - Director**

2918.01

Eurofins Food Integrity and Innovation accepts all liability for work conducted as of 01 Aug 2018.

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Eurofins.

---

* This analysis or component is not ISO accredited.

Case 2:19-cv-09201-FMO-CSS   Document 23-1   Filed 02/27/26   Page 44 of 85   Page ID #:1145

# EXHIBIT 1 - PART B

Ebersole Decl. - Page 1154

**COVANCE.**

**Report Number:** 1544540-0

**Report Date:** 07-Jul-2016

**Report Status:** Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Gingerade** | **Covance Sample:** | **5160244** |
| **Project ID** | AMIN_TA_UP-20160701-0001 | **Receipt Date** | 01-Jul-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0726*D1B 8/6/16 (Stated 2g / 30 Cal) 10.8°C | **Storage Condition** | 5 (+/- 3) degrees Celsius |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.7 g/Serving Size |
| Fructose | 4.2 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.9 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.020 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.35 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. 3301 Kinsman Blvd Madison WI 53704 800-675-8375 | |

 

2918.01

***** This analysis is not ISO accredited.**

Printed: 07-Jul-2016 11:42 am                    Page 1 of 2

Ebersole Decl. - Page 1155

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

Ebersole Decl. - Page 1156

# COVANCE

| | | Report Number: | 15445410 |
|---|---|---|---|
| | | **Report Date:** | 07-Jul-2016 |
| | | **Report Status:** | **Final** |

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Sample Name:** | **GT Trilogy** | **Covance Sample:** | **516-245** |
|---|---|---|---|
| Project ID | AMIN_TA_UP-20160701-0001 | **Receipt Date** | 01-Jul-2016 |
| Lot Number | CVD | **Receipt Condition** | Cold on cold packs or Ice Packs |
| Sample Serving Size | 8 fl oz | **Login Date** | 01-Jul-2016 |
| Description | 1526**/3B 8(14(16 Stated 2) (30 Cal. 10°8JC | **Storage Condition** | 5 C (- 3. degrees Celsius) |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2.4 g (Serving) Size |
| Fructose | 3.7 g (Serving) Size |
| Dextrose | 5.4 g (Serving) Size |
| Maltose | <0.2 g (Serving) Size |
| Lactose | <0.2 g (Serving) Size |
| Total Sugar | 11 g (Serving) Size |
| **Specific Gravity** | |
| Density | 1.022 g (mL |
| **Residual Ethanol and Methanol *** | |
| %Ethanol v/v | 1.55 % |

## Method References | Testing Location

**Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories Madison**

%Ethanol(Methanol by headspace with FID/ID°

**Specific Gravity (SPGV_S:15)** | **Covance Laboratories Madison**

NIST Handbook 133 - Checking the Net Contents of Packaged Foods, 2015 Edition (Modified.

**Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th ed°, AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005., Official Method 982.14° (Modified.

## Testing Location(s) | Released on Behalf of Covance by

**Covance Laboratories Madison** | **Lori Ross (Associate Director**

Covance Laboratories Inc°
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2R18°01

* **This analysis is not ISO accredited.**
Printed: 07-Jul-2016 11:42 am | Page 1 of 2

Ebersole Decl. - Page 1157

**COVANCE.**

Report Number: 15445410

Report Date: - 7 Jul - 16

Report Status: Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items testez. This certificate of analysis shall not be reprozucez, except in its entirety, without the written approdal of Codance.

* This analysis is not jSI accrezitez.
Printed: 07-uW-2016 11:42 am

Pa) e 2 of 2

# COVANCE.

**Report Number:** 1544860-0

**Report Date:** 07-Jul-2016

**Report Status:** Final

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Original** | **Covance Sample:** | **5160246** |

| | | | |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0001 | **Receipt Date** | 01-°Jl-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on u et IVe or IVe PaVks |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-°Jl-2016 |
| **Description** | 3025**A3B 8/28/16 Stated 2( / 30 Calg 10)8.C | **Storage Condition** | 5 c+/- 3gde( rees CelsiJs |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| SJWose | 1 ( /Servin( Size |
| GlJWose | 3)1 ( /Servin( Size |
| FrJWose | 4)7 ( /Servin( Size |
| Maltose | <0)2 ( /Servin( Size |
| LaWose | <0)2 ( /Servin( Size |
| Total SJ( ar | 8)9 ( /Servin( Size |
| **Specific Gravity** | |
| Density | 1)019 ( /mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1)58 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by HeadspaVe with GC-FID) | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - CheVkin( the Net Contents of PaVka( ed Goods, 2015 Edition dModifiedg | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| OffiVial Methods of Analysis of AOAC INTERNATIONAL 18th Ed), AOAC INTERNATIONAL, GaithersbJr( , MD, USA, c2005g OffiVial Method 982)14) dModifiedg | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| CovanVe Laboratories InVY 3301 Kinsman Blvd Madison u I 53704 800-675-8375 | |

 

2918)01

---

\* This analysis is not ISO accredited.

# COVANCE.

Report Number:     1544860-0

Report Date:       07-Jul-2016

Report Status:          Final

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

* This analysis is not ISO accredited.

Printed:   07-°Jl-2016   3:31 pm

Pa( e 2 of 2

Case 2:17-cv-07535-PMG-GJS Document 150-3 Filed 10/15/19 Page 1 of 2 Page ID #:4078

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GT Trilogy | Covance Sample: | 5162280 |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0226*D1B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/1/16 | | |
| | 6.1°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 3.1 g/Serving Size |
| Fructose | 5.1 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 10 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.022 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.80 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 | |

 

2918.01

* This analysis is not ISO accredited.

Printed: 12-Jul-2016 5:02 pm

Ebersole Decl. - Page 1161

Report Number:    1548357-0
Report Date:      12-Jul-2016
Report Status:    Final

# COVANCE.

## Certificate of Analysis

# Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

Ebersole Decl. - Page 1162

# COVANCE.

**Report Number:** 1548367-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GT Gingerade** | Covance Sample: | **5162383** |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0626**E2B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 08/05/16 | | |
| | 5.5°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.7 g/Serving Size |
| Fructose | 4.5 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.9 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.018 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.56 % |

## Method References — Testing Location

**Residual Ethanol and Methanol (ETME_S:9)** — **Covance Laboratories - Madison**

Ethanol/Methanol by Headspace with GC-FID.

**Specific Gravity (SPGP_S:15)** — **Covance Laboratories - Madison**

NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified)

**Sugar Profile by HPLC (SGLC_S:13)** — **Covance Laboratories - Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

## Testing Location(s) — Released on Behalf of Covance by

**Covance Laboratories - Madison** — **Lori Ross - Associate Director**

Covance Laboratories Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

**\* This analysis is not ISO accredited.**

Printed: 12-Jul-2016 5:02 pm                    Page 1 of 2

**COVANCE.**

Report Number:   1548367-0

Report Date:   12-Jul-2016

Report Status:   Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

**\* This analysis is not ISO accredited.**

Printed:    12-Jul-2016   5:02 pm

Ebersole Decl. - Page 1164

# COVANCE.

**Report Number:** 1548365-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Original** | **Covance Sample:** | **5162381** |
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0266**FB | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 08/31/16 | | |
| | 5.5°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 1 g/Serving Size |
| Glucose | 2.9 g/Serving Size |
| Fructose | 4.5 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.9 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.014 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.60 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 | |

 

2918.01

* This analysis is not ISO accredited.
Printed:   12-Jul-2016  5:02 pm                    Page 1 of 2

Case 2:17-cv-01335-WBS-GGH Document 23-1 Filed 10/15/19 Page 217 of 903 Page D #:4083

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

Ebersole Decl. - Page 1166

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GT Hibiscus Ginger | Covance Sample: | 5162294 |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 1326C*ABB | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 08/12/16 | | |
| | 6.2°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3.4 g/Serving Size |
| Glucose | 2.4 g/Serving Size |
| Fructose | 3.6 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 9.4 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.023 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.10 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

***This analysis is not ISO accredited.**

Printed: 12-Jul-2016  5:02 pm

Page 1 of 2

Ebersole Decl. - Page 1167

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

Ebersole Decl. - Page 1168

**Certificate of Analysis**

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Gingerade** | **Covance Sample:** | **5162293** |

| | | | |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 1326**F3B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 08/12/16 | | |
| | 6.2°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2.9 g/Serving Size |
| Glucose | 2.6 g/Serving Size |
| Fructose | 3.9 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 9.4 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.018 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.09 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

---

\* This analysis is not ISO accredited.

Printed: 12-Jul-2016 5:02 pm                    Page 1 of 2

COVANCE.

| | |
|---|---|
| **Report Number:** | **1548363-0** |
| **Report Date:** | **12-Jul-2016** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

* This analysis is not ISO accredited.
Printed:   12-Jul-2016  5:02 pm

Page 2 of 2

Ebersole Decl. - Page 1170

**COVANCE.**

| | |
|---|---|
| **Report Number:** | **1548377-0** |
| **Report Date:** | **12-Jul-2016** |
| **Report Status:** | **Final** |

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Gingerade** | **Covance Sample:** | **5162500** |
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0826*D1B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/7/16 | | |
| | 5.1°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.7 g/Serving Size |
| Fructose | 4.2 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.7 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.027 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.43 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

---

\* This analysis is not ISO accredited.
Printed: 12-Jul-2016  5:03 pm

Ebersole Decl. - Page 1171

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

* This analysis is not ISO accredited.

Printed:    12-Jul-2016  5:03 pm

Ebersole Decl. - Page 1172

Case 2:17-cv-07335-PMO-GUS Document 136-3 Filed 10/15/19 Page 224 of 903 Page ID #:4090

![Covance logo]

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Original** | **Covance Sample:** | **5162503** |
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 2724*F1B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 7/26/16 | | |
| | 5.1°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 0.6 g/Serving Size |
| Glucose | 3.5 g/Serving Size |
| Fructose | 5.2 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 9.0 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.030 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.44 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 | |

 

2918.01

**\* This analysis is not ISO accredited.**

Ebersole Decl. - Page 1173

COVANCE.

| | |
|---|---|
| **Report Number:** | **1548380-0** |
| **Report Date:** | **12-Jul-2016** |
| **Report Status:** | **Final** |

## Certificate of Analysis

Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

\* **This analysis is not ISO accredited.**

Printed:    12-Jul-2016  5:03 pm

Ebersole Decl. - Page 1174

**Report Number:** 1548378-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Gingerade** | **Covance Sample:** | **5162501** |
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0826*D6B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/7/16 | | |
| | 5.1°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.5 g/Serving Size |
| Fructose | 4.1 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.3 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.028 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.49 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc.<br>3301 Kinsman Blvd<br>Madison WI 53704<br>800-675-8375 | |

 

2918.01

---

\* This analysis is not ISO accredited.

Printed: 12-Jul-2016  5:03 pm

Page 1 of 2

![COVANCE logo]

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

Ebersole Decl. - Page 1176

Case 2:17-cv-07532-JMA-GDS   Document 33-1   Filed 10/15/19   Page 228 of 903 PageID #: 4094

# Covance.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GT Gingerberry | Covance Sample: | 5162282 |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 2625C*B0B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 7/25/16 | | |
| | 6.1°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 0.4 g/Serving Size |
| Glucose | 3.0 g/Serving Size |
| Fructose | 5.3 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.7 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.017 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.89 % |

## Method References                                                          Testing Location

**Residual Ethanol and Methanol (ETME_S:9)**                 **Covance Laboratories - Madison**

Ethanol/Methanol by Headspace with GC-FID.

**Specific Gravity (SPGP_S:15)**                                        **Covance Laboratories - Madison**

NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified)

**Sugar Profile by HPLC (SGLC_S:13)**                                **Covance Laboratories - Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

## Testing Location(s)                                             Released on Behalf of Covance by

**Covance Laboratories - Madison**                                      **Lori Ross - Associate Director**

Covance Laboratories Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

**\* This analysis is not ISO accredited.**
Printed:    12-Jul-2016   5:01 pm                          Page 1 of 2

Ebersole Decl. - Page 1177

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

Ebersole Decl. - Page 1178

**COVANCE.**

**Report Number:** 1544540-0

**Report Date:** 07-Jul-2016

**Report Status:** Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GT Gingerade** | | **Covance Sample:** | **5160244** |
|---|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0001 | | **Receipt Date** | 01-Jul-2016 |
| **PO Number** | CVD | | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | | **Login Date** | 01-Jul-2016 |
| **Description** | 0726*D1B 8/6/16 (Stated 2g / 30 Cal) 10.8°C | | **Storage Condition** | 5 (+/- 3) degrees Celsius |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.7 g/Serving Size |
| Fructose | 4.2 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.9 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.020 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.35 % |

## Method References

**Testing Location**

**Residual Ethanol and Methanol (ETME_S:9)**

**Covance Laboratories - Madison**

Ethanol/Methanol by Headspace with GC-FID.

**Specific Gravity (SPGP_S:15)**

**Covance Laboratories - Madison**

NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified)

**Sugar Profile by HPLC (SGLC_S:13)**

**Covance Laboratories - Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

## Testing Location(s)

**Released on Behalf of Covance by**

**Covance Laboratories - Madison**

**Lori Ross - Associate Director**

Covance Laboratories Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

* This analysis is not ISO accredited.

Printed:   07-Jul-2016  11:42 am

Page 1 of 2

**Report Number:** 1544540-0

**Report Date:** 07-Jul-2016

**Report Status:** Final

## Certificate of Analysis

### Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

Ebersole Decl. - Page 1180

# COVANCE.

Report Number: **1544541-0**

Report Date: **07-Jul-2016**

Report Status: **Final**

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Trilogy** | **Covance Sample:** | **5160245** |

| | | | |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0001 | **Receipt Date** | 01-Jul-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 1526**F3B 8/14/16 | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | (Stated 2g / 30 Cal) | | |
| | 10.8°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2.4 g/Serving Size |
| Glucose | 3.7 g/Serving Size |
| Fructose | 5.4 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 11 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.022 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.55 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375 | |

 

2918.01

---

**\* This analysis is not ISO accredited.**

Printed: 07-Jul-2016 11:42 am          Page 1 of 2

Ebersole Decl. - Page 1181

**COVANCE**

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

\* This analysis is not ISO accredited.

Printed:    07-Jul-2016  11:42 am

Page 2 of 2

Ebersole Decl. - Page 1182

# COVANCE.

## Certificate of Analysis

**Amin Talati & Upadhye, LLC**

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | GT Original | Covance Sample: | 5160246 |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0001 | **Receipt Date** | 01-Jul-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 3025**A3B 8/28/16 Stated 2g / 30 Cal) 10.8°C | **Storage Condition** | 5 (+/- 3) degrees Celsius |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 1 g/Serving Size |
| Glucose | 3.1 g/Serving Size |
| Fructose | 4.7 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.9 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.019 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.58 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. 3301 Kinsman Blvd Madison WI 53704 800-675-8375 | |



2918.01

**\* This analysis is not ISO accredited.**

Printed: 07-Jul-2016  3:31 pm                 Page 1 of 2

Ebersole Decl. - Page 1183

Case 2:17-cv-07933-FMO-GJS Document 150-3 Filed 10/15/19 Page 17 of 35 Page ID #:4101

# COVANCE

## Certificate of Analysis

# Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

Ebersole Decl. - Page 1184

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GT Lavender** | Covance Sample: | **5162292** |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0726**A9B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/6/16 | | |
| | 6.2°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.7 g/Serving Size |
| Fructose | 4.1 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.9 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.018 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.37 % |

| **Method References** | **Testing Location** |
|---|---|

**Residual Ethanol and Methanol (ETME_S:9)**     **Covance Laboratories - Madison**

Ethanol/Methanol by Headspace with GC-FID.

**Specific Gravity (SPGP_S:15)**     **Covance Laboratories - Madison**

NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified)

**Sugar Profile by HPLC (SGLC_S:13)**     **Covance Laboratories - Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|

**Covance Laboratories - Madison**     **Lori Ross - Associate Director**

Covance Laboratories Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

---

**\* This analysis is not ISO accredited.**
Printed:    12-Jul-2016  5:01 pm                     Page 1 of 2

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

* This analysis is not ISO accredited.

Printed:    12-Jul-2016  5:01 pm

Ebersole Decl. - Page 1186

# COVANCE.

**Report Number:** 1548361-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Name: | **GT Multi-Green** | Covance Sample: | **5162291** |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 1426*A8B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/13/16 | | |
| | 6.2°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.9 g/Serving Size |
| Fructose | 4.5 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 9.4 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.018 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.41 % |

| Method References | Testing Location |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| Testing Location(s) | Released on Behalf of Covance by |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

**\* This analysis is not ISO accredited.**
Printed: 12-Jul-2016 5:01 pm    Page 1 of 2

Case 2:17-cv-07533-FMO-GJS Document 150-3 Filed 10/15/19 Page 239 of 903 Page ID #:4105

**COVANCE.**

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

\* This analysis is not ISO accredited.
Printed: 12-Jul-2016 5:01 pm

Page 2 of 2

Ebersole Decl. - Page 1188

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Cranberry** | **Covance Sample:** | **5162290** |

| | | | |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0626**A9B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/5/16 | | |
| | 6.2°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 3.0 g/Serving Size |
| Glucose | 3.4 g/Serving Size |
| Fructose | 4.2 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 10 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.021 g/mL |
| **Residual Ethanol and Methanol \*** | |
| Ethanol v/v | 1.12 % |

| **Method References** | **Testing Location** |
|---|---|

**Residual Ethanol and Methanol (ETME_S:9)** — **Covance Laboratories - Madison**

Ethanol/Methanol by Headspace with GC-FID.

**Specific Gravity (SPGP_S:15)** — **Covance Laboratories - Madison**

NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified)

**Sugar Profile by HPLC (SGLC_S:13)** — **Covance Laboratories - Madison**

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC
INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified)

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|

**Covance Laboratories - Madison** — **Lori Ross - Associate Director**

Covance Laboratories Inc.
3301 Kinsman Blvd
Madison WI 53704
800-675-8375

 

2918.01

\* This analysis is not ISO accredited.

Printed: 12-Jul-2016 5:01 pm

Ebersole Decl. - Page 1189

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

Ebersole Decl. - Page 1190

**Report Number:** 1548358-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

**COVANCE.**

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Gingerade** | **Covance Sample:** | **5162281** |
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on Wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 0826*D9B | **Storage Condition** | 5 (+/- 3) degrees Celsius |
| | 8/7/16 | | |
| | 6.1°C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 2 g/Serving Size |
| Glucose | 2.3 g/Serving Size |
| Fructose | 3.8 g/Serving Size |
| Maltose | <0.2 g/Serving Size |
| Lactose | <0.2 g/Serving Size |
| Total Sugar | 8.2 g/Serving Size |
| **Specific Gravity** | |
| Density | 1.015 g/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.43 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | **Covance Laboratories - Madison** |
| Ethanol/Methanol by Headspace with GC-FID. | |
| **Specific Gravity (SPGP_S:15)** | **Covance Laboratories - Madison** |
| NIST Handbook 133 - Checking the Net Contents of Packaged Goods, 2015 Edition (Modified) | |
| **Sugar Profile by HPLC (SGLC_S:13)** | **Covance Laboratories - Madison** |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed., AOAC INTERNATIONAL, Gaithersburg, MD, USA, (2005), Official Method 982.14. (Modified) | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories - Madison** | **Lori Ross - Associate Director** |
| Covance Laboratories Inc. | |
| 3301 Kinsman Blvd | |
| Madison WI 53704 | |
| 800-675-8375 | |

 

2918.01

***This analysis is not ISO accredited.**

Ebersole Decl. - Page 1191

**Report Number:** 1548358-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

* This analysis is not ISO accredited.

Printed:   12-Jul-2016   5:02 pm

Ebersole Decl. - Page 1192

# COVANCE

**Report Number:** 1548358-0

**Report Date:** 12-Jul-2016

**Report Status:** Final

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| | | | |
|---|---|---|---|
| **Sample Name:** | **GT Gingerade** | **Covance Sample:** | **5162281** |
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-.°n-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on J et lue or lue Pauks |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-.°l-2016 |
| **Description** | 0826*D/ B | **Storage Condition** | 5 W(- 3+deGrees Celsi°s |
| | 8(7(16 | | |
| | 6g1)C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| S°urose | 2 G(ServinGSize |
| Fl°uose | 2g3 G(ServinGSize |
| <r°utose | 3g3 G(ServinGSize |
| Maltose | 90g2 G(ServinGSize |
| Lautose | 90g2 G(ServinGSize |
| Total S°Gar | 8g2 G(ServinGSize |
| **Specific Gravity** | |
| Density | 1g015 G(mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v(v | 1g43 % |

## Method References

**Testing Location**

**Residual Ethanol and Methanol (ETME_S:9)**

Ethanol(Methanol by Headspaue with F C-<IDg

**Covance Laboratories - Madison**

**Specific Gravity (SPGP_S:15)**

NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed F oods, 2015 Edition Wlodified+

**Covance Laboratories - Madison**

**Sugar Profile by HPLC (SGLC_S:13)**

Offiuial Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC
INTERNATIONAL, F aithersb°rG, MD, USA, V2005+; Offiuial Method / 82g14gWlodified+

**Covance Laboratories - Madison**

## Testing Location(s)

**Released on Behalf of Covance by**

**Covance Laboratories - Madison**

**Lori Ross - Associate Director**

Covanue Laboratories Inug
3301 Kinsman Blvd
Madison J I 53704
800-675-8375



2/ 18g1

***** This analysis is not ISO accredited.**
Printed: 12-.°l-2016 5:02 pm

PaGe 1 of 2

Ebersole Decl. - Page 1193

Case 2:16-cv-05490-JMA-AYS Document 103-1 Filed 10/27/17 Page 65 of 904 PageID #: 4185

COVANCE.

## Certificate of Analysis

Amin Talati & Upadhye, LLC

10541 Brookview Dr

Carmel Indiana 46032 United States

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

* This analysis is not ISO accredited.

Printed: 12-. °l-2016 5:02 pm

Ebersole Decl. - Page 1194

Case 2:12-cv-07593-FMO-GJS Document 33-1 Filed 10/27/16 Page 18 of 20 Page ID #:412

# COVANCE.

| | peNort umb : erD | 154835-0R |
|---|---|---|
| | peNort 2 ateD | 1J06m10JR1S |
| | peNort FtatmsD | Ginal |

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Fab Nle uab eD | T g T inder: erry | Covance Fab NleD | 51SJJ8J |
|---|---|---|---|
| Project I2 | AMIN_TA_UP-20160701-0002 | peceiNt 2 ate | 30-). n-2016 |
| PO umb : er | CVD | peceiNt ConLition | Cold on ° et IJe or IJe PaJks |
| Fab Nle Fervind Fize | 8 fl oz | Hodin 2 ate | 01-). I-2016 |
| 2 escriNtion | 2625C*B0B 7/25/16 6(1gC | Ftorade ConLition | 5 uW- 3cde+rees Celsi. s |

| Analysis | pesmlt |
|---|---|
| **Fmdar Profile : y EPHC** | |
| S. Jrose | 0(4 +/Servin+ Size |
| Gl. Jose | 3(0 +/Servin+ Size |
| Fr. Jtose | 5(3 +/Servin+ Size |
| Maltose | <0(2 +/Servin+ Size |
| LaJtose | <0(2 +/Servin+ Size |
| Total S. +ar | 8(7 +/Servin+ Size |
| **FNecific T ravity** | |
| Density | 1(017 +/mL |
| **pesiLmal htManol anL * etManol (** | |
| Ethanol v/v | 1(89 % |

| * etMoL peferences | gestind Hocation |
|---|---|
| **pesiLmal htManol anL * etManol _hg* h9FD )** | Covance Ha: oratories 0* aLison |
| Ethanol/Methanol by HeadspaJe with GC-FID( | |
| **FNecific T ravity _FPT P9FDl5)** | Covance Ha: oratories 0* aLison |
| NIST Handbook 133 - CheJkin+ the Net Contents of PaJka+ed Goods, 2015 Edition uModifiedc | |
| **Fmdar Profile : y EPHC _FTHC9FDl3)** | Covance Ha: oratories 0* aLison |
| OffiJial Methods of Analysis of AOAC INTERNATIONAL 18th Ed(, AOAC INTERNATIONAL, Gaithersb. r+, MD, USA, u2005c, OffiJial Method 982(14( uModifiedc | |

| gestind Hocation_s) | peleaseL on BeMalf of Covance : y |
|---|---|
| **Covance Ha: oratories 0* aLison** | **Hori poss 0Associate 2 irector** |
| CovanJe Laboratories InJ( 3301 Kinsman Blvd Madison ° I 53704 800-675-8375 |  |

2918(01

( gMs analysis is not IFO accreLiteL.

Ebersole Decl. - Page 1195



# COVANCE.

peNort umb: erD    154835-0R

peNort 2 ateD    1J06m10UR1S

peNort FtatmsD    Ginal

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

gMese resmlts aNNIy only to tMe iteb s testeL.  gMs certificate of analysis sMall not : e reNroLmceL, exceNt in its entirety, witMomt tMe written aNNroval of Covance.

Ebersole Decl. - Page 1196

# COVANCE.

| | |
|---|---|
| peNort umb: erD | 15483-0R0 |
| peNort 2 ateD | 1JRmRJ01- |
| peNort StatmsD | Final |

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sab Nle uab eD | GT Cran: erry | Cogance Sab NleD | 51- JJd0 |
|---|---|---|---|
| vroRect j2 | AMIN_TA_UP-20160701-0002 | peceiNt 2 ate | 30-. ° n-2016 |
| vl umb : er | CVD | peceiNt ConLition | Cold on J et lue or lue Pauks |
| Sab Nle SerginO Size | 8 fl oz | HoOin 2 ate | 01-. ° I-2016 |
| 2 escriNtion | 0626**A/ B | StoraOe ConLition | 5 W(- 3+deGrees Celsi° s |
| | 8(5(16 | | |
| | 6@)C | | |

| Analysis | pesmlt |
|---|---|
| SmOar vrofile : y EvHC | |
| S° urose | 3g0 G(ServinG Size |
| Fl° uose | 3g4 G(ServinG Size |
| <r° utose | 4g2 G(ServinG Size |
| Maltose | 90g2 G(ServinG Size |
| Lautose | 90g2 G(ServinG Size |
| Total S° Gar | 10 G(ServinG Size |
| SNecific Gragity | |
| Density | 1g021 G(mL |
| pesiLmal htManol anL * etManol ( | |
| Ethanol v(v | 1g12 % |

| * etMoL peferences | TestinO Hocation |
|---|---|
| pesiLmal htManol anL * etManol _hT* h9SDl) | Cogance Ha: oratories R* aLison |
| Ethanol(Methanol by Headspaue with F C-<IDg | |
| SNecific Gragity _Sv Gv9SDl5) | Cogance Ha: oratories R* aLison |
| NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed F oods, 2015 Edition WlodifieL+ | |
| SmOar vrofile : y EvHC _SGHC9SDl3) | Cogance Ha: oratories R* aLison |
| Offiuial Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC INTERNATIONAL, F aithersb° rG, MD, USA, V2005+; Offiuial Method / 82g14gWlodified+ | |

| TestinO Hocation _s) | peleaseL on BeMalf of Cogance : y |
|---|---|
| Cogance Ha: oratories R* aLison | Hori poss RAssociate 2 irector |
| Covanue Laboratories Inug 3301 Kinsman Blvd Madison J I 53704 800-675-8375 |   |

2/ 18g01

( TMs analysis is not jSl accreLiteL.
Printed:   12-. ° I-2016  5:01 pm                              PaGe 1 of 2



# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

TMese resmlts aNNly only to tMe iteb s testeL.  TMs certificate of analysis sMall not : e reNroLmceL, exceNt in its entirety, witMomt tMe written aNNrogal of Cogance.

( TMs analysis is not jSI  accreLiteL.

Printed:   12-. ° I-2016   5:01 pm                    PaGe 2 of 2

# COVANCE.

| | | |
|---|---|---|
| | Report Number | 15483-10R |
| | Report Date | 16-JUN-1 |
| | Report Status | Final |

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sample Label ID | GT Multi Green | Covance Sample ID | 51-JJv1 |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-JUN-2016 |
| **PO Number** | CVD | **Receipt Condition** | Cold on wet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Exp Date** | 01-JUL-2016 |
| **Description** | 1426*A8B | **Storage Condition** | 5 +/- 3 degrees Celsius |
| | 8/13/16 | | |
| | 6(2gC | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| S. Jrose | 2 +/Serving Size |
| Fl. Jose | 2(G+/Serving Size |
| <r. Jtose | 4(5 +/Serving Size |
| Maltose | 90(2 +/Serving Size |
| LaJtose | 90(2 +/Serving Size |
| Total S. +ar | G(4 +/Serving Size |
| **Specific Gravity** | |
| Density | 1(018 +/mL |
| **Residual Methanol and Ethanol (** | |
| Ethanol v/v | 1(41 % |

## Method References | Testing Location

**Residual Methanol and Ethanol _MTg M9SDv)** | Covance Laboratories Madison

Ethanol/Methanol by Headspace with FIC-<ID(

**Specific Gravity _SPGP9SD15)** | Covance Laboratories Madison

NIST Handbook 133 - Checking the Net Contents of Packaged Foods, 2015 Edition (Modified(

**Sugar Profile by HPLC _SGEC9SD3)** | Covance Laboratories Madison

Official Methods of Analysis of AOAC INTERNATIONAL 18th Ed(, AOAC
INTERNATIONAL, Faithersburg, MD, USA, (2005(, Official Method G32(14( (Modified(

## Testing Location_s) | Released on Behalf of Covance by

**Covance Laboratories Madison** | **Lori Goss, Associate Director**

CovanJe Laboratories InJ(
3301 Kinsman Blvd
Madison WI 53704
800-675-8375



2G18(01

---

**( This analysis is not ISO accredited.**
Printed: 12-JUL-2016 5:01 pm

Page 1 of 2

Ebersole Decl. - Page 1199



# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested. This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

Ebersole Decl. - Page 1200

Case 2:12-cv-07533-PMG-GJS Document 156-3 Filed 10/15/19 Page 252 of 903 Page ID #:4192

**COVANCE.**

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sa: ule ma: e2 | GT gadenver | Codance Sa: ule2 | 51-00P0 |
|---|---|---|---|
| j rolect O | AMIN_TA_UP-20160701-0002 | Neceiut Jate | 30-.°n-2016 |
| j z mb: Der | CVD | Neceiut Convition | Cold on Jet lue or lue Pauks |
| Sa: ule SerdinL SiHe | 8 fl oz | goLin Jate | 01-.°I-2016 |
| Jescriution | 0726**A/B | StoraLe Convition | 5 W/(-3+deGrees Celsi°s |
|  | 8(6(16 |  |  |
|  | 6g2)C |  |  |

| Analysis | Nesblt |
|---|---|
| **SbLar j rofile Dy Ej gC** |  |
| S°urose | 2 G(ServinG Size |
| Fl°uose | 2g7 G(ServinG Size |
| <r°utose | 4g1 G(ServinG Size |
| Maltose | 90g2 G(ServinG Size |
| Lautose | 90g2 G(ServinG Size |
| Total S°Gar | 8g G(ServinG Size |
| **Suecific Gradity** |  |
| Density | 1g018 G(mL |
| **Nesivbal htManol anv * etManol (** |  |
| Ethanol v(v | 1g37 % |

| * etMov Neferences | TestinL gocation |
|---|---|
| **Nesivbal htManol anv * etManol _hT* h9S2P)** | Codance gaDoratories R* avison |
| Ethanol(Methanol by Headspaue with F C-<IDg |  |
| **Suecific Gradity _Sj Gj 9S215)** | Codance gaDoratories R* avison |
| NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed F oods, 2015 Edition Wlodified+ |  |
| **SbLar j rofile Dy Ej gC _SGgC9S213)** | Codance gaDoratories R* avison |
| Offiuial Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC INTERNATIONAL, F aithersb°rG, MD, USA, W2005+ Offiuial Method / 82g14gWlodified+ |  |

| TestinL gocation_s) | Neleasev on BeMalf of Codance Dy |
|---|---|
| **Codance gaDoratories R* avison** | **gori Noss RAssociate J irector** |
| Covanue Laboratories Inug |  |
| 3301 Kinsman Blvd |  |
| Madison J I 53704 |  |
| 800-675-8375 |  |

 

2/18g01

---

( TMs analysis is not Gsz accrevitev.

Ebersole Decl. - Page 1201



# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

TMese resblts auuly only to tMe ite: s testev. TMs certificate of analysis sMall not De reurovbcev, exceut in its entirety, witMobt tMe written auurodal of Codance.

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sab Nle uab eD | GT Gingerade | Covance Sab NleD | 51-JJP3 |
|---|---|---|---|
| j rolect C2 | AMIN_TA_UP-20160701-0002 | peceiNt 2ate | 30-.°n-2016 |
| j z umb:er | CVD | peceiNt Condition | Cold on J et lue or lue Pauks |
| Sab Nle Serving SiLe | 8 fl oz | Hogin 2ate | 01-.°I-2016 |
| 2escriNtion | 1326**/3B 08(12(16 6g2)C | Storage Condition | 5 W(- 3+deGrees Celsi°s |

| Analysis | pesmlt |
|---|---|
| **Smgar j rofile : y Ej HC** | |
| S°urose | 2gF G(ServinGSize |
| < l°uose | 2g6 G(ServinGSize |
| / r°utose | 3gF G(ServinGSize |
| Maltose | 90g2 G(ServinGSize |
| Lautose | 90g2 G(ServinGSize |
| Total S°Gar | Fg4 G(ServinGSize |
| **SNecific Gravity** | |
| Density | 1g018 G(mL |
| **pesidmal htManol and * etManol (** | |
| Ethanol v(v | 1g0F % |

| * etMod peferences | Testing Hocation |
|---|---|
| **pesidmal htManol and * etManol _hT* h9SDP)** | Covance Ha: oratories 0* adison |
| Ethanol(Methanol by Headspaue with < C-/ IDg | |
| **SNecific Gravity _Sj Gj 9SDI5)** | Covance Ha: oratories 0* adison |
| NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed < oods, 2015 Edition Wlodified+ | |
| **Smgar j rofile : y Ej HC _SGHC9SDI3)** | Covance Ha: oratories 0* adison |
| Offiuial Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC INTERNATIONAL, < aithersb°rG, MD, USA, V2005+; Offiuial Method F82g14gWlodified+ | |

| Testing Hocation_s) | peleased on BeMalf of Covance : y |
|---|---|
| **Covance Ha: oratories 0* adison** | **Hori poss 0Associate 2irector** |

Covanue Laboratories Inug
3301 Kinsman Blvd
Madison J I 53704
800-675-8375

 

2F18g01

---

( TMs analysis is not Gsz accredited.
Printed: 12-.°I-2016 5:02 pm      PaGe 1 of 2

Case 2:15-cv-01595-TMC-GUS Document 156-3 Filed 10/15/19 Page 1 of 2 Page ID #:4121



# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

TMese resmlts aNNly only to tMe iteb s tested.  TMs certificate of analysis sMall not : e reNrodmced, exceNt in its entirety, witMomt tMe written aNNroval of Covance.

Ebersole Decl. - Page 1204

**COVANCE.**

|  |  |
|---|---|
| peNort umb:erD | 15483-40R |
| peNort 2ateD | 1J06m0UR1- |
| peNort StatmsD | Final |

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sab Nle uab eD | GT g i: iscms Ginder | Covance Sab NleD | 51- JJP4 |
|---|---|---|---|
| j rolect Q2 | AMIN_TA_UP-20160701-0002 | peceiNt 2ate | 30-). n-2016 |
| j z umb : er | CVD | peceiNt ConHition | Cold on ° et IJe or IJe PaJks |
| Sab Nle Servind SiLe | 8 fl oz | Eodin 2ate | 01-). l-2016 |
| 2escriNtion | 1326C*ABB | Storade ConHition | 5 uV- 3cde+rees Celsi. s |
|  | 08/12/16 |  |  |
|  | 6(2gC |  |  |

| Analysis | pesmt |
|---|---|
| **Smdar j rofile : y gj EC** |  |
| S. Jrose | 3(4 +/Servin+ Size |
| Gl. Jose | 2(4 +/Servin+ Size |
| Fr. Jtose | 3(6 +/Servin+ Size |
| Maltose | <0(2 +/Servin+ Size |
| LaJtose | <0(2 +/Servin+ Size |
| Total S. +ar | 9(4 +/Servin+ Size |
| **SNecific Gravity** |  |
| Density | 1(023 +/mL |
| **pesiHmal htManol anH * etManol (** |  |
| Ethanol v/v | 1(10 % |

| * etMoH peferences | Testind Eocation |
|---|---|
| **pesiHmal htManol anH * etManol _hT* h9SDP)** | **Covance Ea: oratories 0* aHison** |
| Ethanol/Methanol by HeadspaJe with GC-FID( |  |
| **SNecific Gravity _Sj Gj 9SDl5)** | **Covance Ea: oratories 0* aHison** |
| NIST Handbook 133 - CheJkin+ the Net Contents of PaJka+ed Goods, 2015 Edition uModifiedc |  |
| **Smdar j rofile : y gj EC _SGEC9SDl3)** | **Covance Ea: oratories 0* aHison** |
| OffiJial Methods of Analysis of AOAC INTERNATIONAL 18th Ed(, AOAC INTERNATIONAL, Gaithersb. r+, MD, USA, u2005c, OffiJial Method 982(14( uModifiedc |  |

| Testind Eocation_s) | peleaseH on BeMalf of Covance : y |
|---|---|
| **Covance Ea: oratories 0* aHison** | **Eori poss 0Associate 2irector** |
| CovanJe Laboratories InJ( |  |
| 3301 Kinsman Blvd |  |
| Madison ° I 53704 |  |
| 800-675-8375 |  |

 

2918(01

---

( TMs analysis is not Gsz accreHiteH.

Printed:   12-). l-2016   5:02 pm                   Pa+e 1 of 2

Ebersole Decl. - Page 1205

Case 2:12-cv-01593-RMG-JDS Document 150-3 Filed 10/15/19 Page 1 of 2 Page ID #:4123



# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

TMese resmlts aNNly only to tMe iteb s testeH.  TMs certificate of analysis sMall not : e reNroHmceH, exceNt in its entirety, witMomt tMe written aNNroval of Covance.

peNort umb: er   15483-50R
peNort 2 ate   1J06m0JR1-
peNort Statms   Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Sab Nle uab eD | GT g ridinal | Covance Sab NleD | 51-J381 |
|---|---|---|---|
| Project I2 | AMIN_TA_UP-20160701-0002 | peceiNt 2 ate | 30-.°n-2016 |
| Pg umb: er | CVD | peceiNt Conzition | Cold on J et lue or lue Pauks |
| Sab Nle Servind SiQe | 8 fl oz | Lodin 2 ate | 01-.°I-2016 |
| 2escriNtion | 0266**/ B | Storade Conzition | 5 W(- 3+deGrees Celsi°s |
| | 08(31(16 | | |
| | 5ç5)C | | |

| Analysis | pesmlt |
|---|---|
| **Smdar Profile : y HPLC** | |
| S°urose | 1 G(ServinGSize |
| < l°uose | 2çF G(ServinGSize |
| / r°utose | 4ç5 G(ServinGSize |
| Maltose | 90ç2 G(ServinGSize |
| Lautose | 90ç2 G(ServinGSize |
| Total S°Gar | 8çF G(ServinGSize |
| **SNecific Gravity** | |
| Density | 1ç014 G(mL |
| **pesizmal Ethanol anz Methanol *** | |
| Ethanol v(v | 1ç60 % |

| Methoz peferences | Testind Location |
|---|---|
| **pesizmal Ethanol anz Methanol (ETME_SD9)** | Covance La: oratories 0Mazison |
| Ethanol(Methanol by Headspaue with < C-/ IDg | |
| **SNecific Gravity (SPGP_SD15)** | Covance La: oratories 0Mazison |
| NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed < oods, 2015 Edition WModified+ | |
| **Smdar Profile : y HPLC (SGLC_SD13)** | Covance La: oratories 0Mazison |
| Offiuial Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC INTERNATIONAL, < aithersb°rG MD, USA, W2005+ Offiuial Method F82ç14gWModified+ | |

| Testind Location(s) | peleasez on Behalf of Covance : y |
|---|---|
| **Covance La: oratories 0Mazison** | **Lori poss 0Associate 2irector** |
| Covanue Laboratories Inug | |
| 3301 Kinsman Blvd |  |
| Madison J I 53704 | |
| 800-675-8375 | 2F18ç01 |

**\* This analysis is not ISg accrezitez.**

Printed:   12-.°I-2016   5:02 pm                     PaGe 1 of 2



| | |
|---|---|
| peNort umb erD | 15483- 50R |
| peNort 2 ateD | 1J06m10JR1- |
| peNort StatmsD | Final |

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These resmlts aNNly only to the iteb s testez.  This certificate of analysis shall not : e reNrozmcez, exceNt in its entirety, withomt the written aNNroval of Covance.

---

Ebersole Decl. - Page 1208

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Fa: ule ma: e7 | T OT ingerave | CoPance Fa: ule7 | 5102686 |
|---|---|---|---|
| j rolect zJ | AMIN_TA_UP-20160701-0002 | Neceiut J ate | 30-. °n-2016 |
| j d mb: Der | CVD | Neceiut Convition | Cold on J et lue or lue Pauks |
| Fa: ule FerPing FiLe | 8 fl oz | Hogin J ate | 01-. °I-2016 |
| J escriution | 0626**/ 2B | Ftorage Convition | 5 W(- 3+deGrees Celsi°s |
| | 08(05(16 | | |
| | 5ʂ)C | | |

| Analysis | Nesblt |
|---|---|
| **Fbgar j rofile Dy Ej HC** | |
| S°urose | 2 G(ServinG Size |
| Fl°uose | 2ʒ7 G(ServinG Size |
| <r°utose | 4ʂ5 G(ServinG Size |
| Maltose | 90ʒ2 G(ServinG Size |
| Lautose | 90ʒ2 G(ServinG Size |
| Total S°Gar | 8ʒ%G(ServinG Size |
| **Fuecific T raPity** | |
| Density | 1ʒ018 G(mL |
| **Nesivbal htManol anv * etManol (** | |
| / thanol v(v | 1ʂ6 E |

## * etMov Neferences

| | Oesting Hocation |
|---|---|
| **Nesivbal htManol anv * etManol _hO* h9F7) 3** | CoPance HaDoratories R* avison |
| / thanol(Methanol by Headspaue with F C-<IDg | |
| **Fuecific T raPity _Fj T j 9F7153** | CoPance HaDoratories R* avison |
| NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed F oods, 2015 / dition Wlodifiedᐩ | |
| **Fbgar j rofile Dy Ej HC _FT HC9F7163** | CoPance HaDoratories R* avison |
| Offiuial Methods of Analysis of AOAC INT/ RNATIONAL 18th / dg AOAC INT/ RNATIONAL, F aithersb°rG, MD, USA, W2005ᐩ; Offiuial Method %32ʒ14gWlodifiedᐩ | |

## Oesting Hocation_s3

| | Neleasev on BeMalf of CoPance Dy |
|---|---|
| **CoPance HaDoratories R* avison** | **Hori Noss RAssociate J irector** |
| Covanue Laboratories Inug | |
| 3301 Kinsman Blvd | |
| Madison J I 53704 | |
| 800-675-8375 | |

 

2%18ʒ01

( OMs analysis is not ẑF d accrevitev.

Ebersole Decl. - Page 1209



# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

OMese resblts auuly only to tMe ite: s testev. OMs certificate of analysis sMall not De reurovbcev, exceut in its entirety, witMobt tMe written auuroPal of CoPance.

---

Case 2:16-cv-07535-FMO-GJS   Document 56-3   Filed 10/15/19   Page 262 of 903   Page ID #:4128

# COVANCE.

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Fab Nle uab eD | T OT ingerave | CoPance Fab NleD | 51SJ5RR |
|---|---|---|---|
| j rolect z7 | AMIN_TA_UP-20160701-0002 | peceiNt 7 ate | 30-). n-2016 |
| j d umb : er | CVD | peceiNt Convition | Cold on ° et IJe or IJe PaJks |
| Fab Nle FerPing FiLe | 8 fl oz | Hogin 7 ate | 01-). l-2016 |
| 7 escriNtion | 0826*D1B | Ftorage Convition | 5 uW- 3cde+rees Celsi. s |
|  | 8/7/16 |  |  |
|  | 5(1gC |  |  |

| Analysis | pesmlt |
|---|---|
| **Fmgar j rofile : y Ej HC** |  |
| S. Jrose | 2 +/Servin+ Size |
| Gl. Jose | 2(7 +/Servin+ Size |
| Fr. Jtose | 4(2 +/Servin+ Size |
| Maltose | <0(2 +/Servin+ Size |
| LaJtose | <0(2 +/Servin+ Size |
| Total S. +ar | 8(7 +/Servin+ Size |
| **FNecific T raPity** |  |
| Density | 1(027 +/mL |
| **pesivmal htManol anv * etManol (** |  |
| %thanol v/v | 1(43 9 |

| * etMov peferences | Oesting Hocation |
|---|---|
| **pesivmal htManol anv * etManol _hO* h9FD)3** | CoPance Ha: oratories - * avison |
| %thanol/Methanol Ey b eadspaJe with GC-FID( |  |
| **FNecific T raPity _Fj T j 9FDI53** | CoPance Ha: oratories - * avison |
| NIST b andEook 133 - CheJkin+ the Net Contents of PaJka+ed Goods, 2015 %dition uModifiedc |  |
| **Fmgar j rofile : y Ej HC _FT HC9FDI63** | CoPance Ha: oratories - * avison |
| HffiJial Methods of Analysis of AHAC INT%ONATIHNAL 18th %d(, AHAC INT%ONATIHNAL, GaithersE. r+, MD, USA, u2005c, HffiJial Method R82(14( uModifiedc |  |

| Oesting Hocation_s3 | peleasev on BeMalf of CoPance : y |
|---|---|
| **CoPance Ha: oratories - * avison** | **Hori poss - Associate 7 irector** |
| CovanJe LaEoratories InJ( |  |
| 3301 Kinsman Blvd |  |
| Madison ° l 53704 |  |
| 800-675-8375 |  |

 

2R18(01

---

( OMs analysis is not zFd accrevitev.

Printed:   12-). l-2016   5:03 pm       Pa+e 1 of 2

# COVANCE

| | |
|---|---|
| peNort umb: erD | 1548600-R |
| peNort 7 ateD | 1J-2ml-JR1S |
| peNort FtatmsD | Ginal |

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

OMese resmlts aNNly only to tMe iteb s testev. OMs certificate of analysis sMall not : e reNrovmcev, exceNt in its entirety, witMomt tMe written aNNroPal of CoPance.

---

( OMs analysis is not zFd accrevitev.
Printed: 12-). l-2016 5:03 pm

Pa+e 2 of 2

# COVANCE.

peNort umb: erD    1548608-R

peNort 7 ateD    1J-2m-JR1S

peNort FtatmsD    Ginal

## Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Fab Nle uab eD | T OT ingerave | CoPance Fab NleD | 51SJ5R1 |
|---|---|---|---|
| j rolect z7 | AMIN_TA_UP-20160701-0002 | peceiNt 7 ate | 30-). n-2016 |
| j d umb : er | CVD | peceiNt Convition | Cold on ° et IJe or IJe PaJks |
| Fab Nle FerPing FiLe | 8 fl oz | Hogin 7 ate | 01-). l-2016 |
| 7 escriNtion | 0826*D6B | Ftorage Convition | 5 uW- 3cde+rees Celsi. s |
|  | 8/7/16 |  |  |
|  | 5(1gC |  |  |

| Analysis | pesmt |
|---|---|
| **Fmgar j rofile : y Ej HC** | |
| S. Jrose | 2 +/Servin+ Size |
| Gl. Jose | 2(5 +/Servin+ Size |
| Fr. Jtose | 4(1 +/Servin+ Size |
| Maltose | <0(2 +/Servin+ Size |
| LaJtose | <0(2 +/Servin+ Size |
| Total S. +ar | 8(3 +/Servin+ Size |
| **FNecific T raPity** | |
| Density | 1(028 +/mL |
| **pesivmal htManol anv * etManol (** | |
| Ethanol v/v | 1(49 % |

| * etMov peferences | Oesting Hocation |
|---|---|
| **pesivmal htManol anv * etManol _hO* h9F) 3** | **CoPance Ha: oratories - * avison** |
| Ethanol/Methanol by HeadspaJe with GC-FID( | |
| **FNecific T raPity _Fj T j 9F 53** | **CoPance Ha: oratories - * avison** |
| NIST Handbook 133 - CheJkin+ the Net Contents of PaJka+ed Goods, 2015 Edition uModifiedc | |
| **Fmgar j rofile : y Ej HC _FT HC9F 63** | **CoPance Ha: oratories - * avison** |
| OffiJial Methods of Analysis of AOAC INTERNATIONAL 18th Ed(, AOAC INTERNATIONAL, Gaithersb. r+, MD, USA, u2005c, OffiJial Method 982(14( uModifiedc | |

| Oesting Hocation_s3 | peleasev on BeMalf of CoPance : y |
|---|---|
| **CoPance Ha: oratories - * avison** | **Hori poss - Associate 7 irector** |
| CovanJe Laboratories InJ(<br>3301 Kinsman Blvd<br>Madison ° I 53704<br>800-675-8375 | |

 

2918(01

( OMs analysis is not zFd accrevitev.
Printed: 12-). l-2016 5:03 pm

Pa+e 1 of 2

Ebersole Decl. - Page 1213

**COVANCE.**

peNort unb: erD    1548608-R

peNort 7 ateꞂ    1J-2ꞀI-JR1S

peNort FtatꞀsꞂ    Ginal

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr

Carmel Indiana 46032 United States

OꞀese resꞀlts aNNly only to tꞀe iteb s testeꞂ. OꞀs certificate of analysis sꞀall not : e reNrovꞀceꞂ, exceNt in its entirety, witꞀoꞀt tꞀe written aNNroPal of CoPance.

( OꞀs analysis is not ꝣFd accreviteꝟ.

Printed:   12-) . I-2016   5:03 pm        Pa+e 2 of 2

Neuort mb: Der7    154860- Rp
Neuort J ate7    12RSblR2p1F
Neuort Gtatbs7    Tinal

**COVANCE.**

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| Ga: ule ma: e7 | Og grilovy | CoPance Ga: ule7 | 51F25p2 |
|---|---|---|---|
| j rolect zJ | AMIN_TA_UP-20160701-0002 | Neceiut J ate | 30-). n-2016 |
| j d mb: Der | CVD | Neceiut ConHition | Cold on ° et IJe or IJe PaJks |
| Ga: ule GerPinv GiLe | 8 fl oz | Eovin J ate | 01-). l-2016 |
| J escriution | 0226*C4B | Gtorave ConHition | 5 uW- 3cde+rees Celsi. s |
| | 8/1/16 | | |
| | 5(1gC | | |

| Analysis | Nesblt |
|---|---|
| **Gbvar j rofile Dy hj EC** | |
| S. Jrose | 2 +/Servin+ Size |
| Gl. Jose | 2(5 +/Servin+ Size |
| Fr. Jtose | 4(7 +/Servin+ Size |
| Maltose | <0(2 +/Servin+ Size |
| LaJtose | <0(2 +/Servin+ Size |
| Total S. +ar | 9(1 +/Servin+ Size |
| **Guecific OraPity** | |
| Density | 1(037 +/mL |
| **NesiHbal Mt* anol anH ( et* anol _** | |
| Ethanol v/v | 2(54 % |

| ( et* oH Neferences | gestinv Eocation |
|---|---|
| **NesiHbal Mt* anol anH ( et* anol 9Mg( M) G7-3** | **CoPance EaDoratories R( aHison** |
| Ethanol/Methanol by HeadspaJe with GC-FID( | |
| **Guecific OraPity 9Gj Oj ) G7153** | **CoPance EaDoratories R( aHison** |
| NIST Handbook 133 - CheJkin+ the Net Contents of PaJka+ed Goods, 2015 Edition uModifiedc | |
| **Gbvar j rofile Dy hj EC 9GOEC) G7163** | **CoPance EaDoratories R( aHison** |
| OffiJial Methods of Analysis of AOAC INTERNATIONAL 18th Ed(, AOAC INTERNATIONAL, Gaithersb. r+, MD, USA, u2005c, OffiJial Method 982(14( uModifiedc | |

| gestinv Eocation9s3 | NeleaseH on Be* alf of CoPance Dy |
|---|---|
| **CoPance EaDoratories R( aHison** | **Eori Noss RAssociate J irector** |
| CovanJe Laboratories InJ( | |
| 3301 Kinsman Blvd | |
| Madison ° I 53704 | |
| 800-675-8375 | |

 

2918(01

---

**_g* is analysis is not zGd accreHiteH.**

Printed:    12-). l-2016   5:03 pm

Pa+e 1 of 2



COVANCE.

Neuort mb: Derr  154860- Rp

Neuort Jate7  12RSblR2p1F

Neuort Gtatbs7  Tinal

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

**g\* ese resblts auuly only to t\* e ite:  s testeH.  g\* is certificate of analysis s\* all not De reuroHbceH, exceut in its entirety, wit\* obt t\* e written auuroPal of CoPance.**

Ebersole Decl. - Page 1216

Case C:19-3-26492-8M3C-TSR Document 156-1 Filed 10/27/18 Page 289 Page ID #:134
Case 2:17-cv-07535-PMG-GJS Document 156-1 Filed 10/15/19 Page 289 Page ID #:208

# COVANCE.

| | |
|---|---|
| **Report Number:** | **154838-0** |
| **Report Date:** | **12-Jul-2016** |
| **Report Status:** | **Final** |

## Certificate of Analysis

### Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

| **Sample Name:** | **GT griginal** | **Covance Sample:** | **51625-3** |
|---|---|---|---|
| **Project ID** | AMIN_TA_UP-20160701-0002 | **Receipt Date** | 30-Jun-2016 |
| **Pkg Number** | CVD | **Receipt Condition** | Cold on Jet Ice or Ice Packs |
| **Sample Serving Size** | 8 fl oz | **Login Date** | 01-Jul-2016 |
| **Description** | 2724*/1B | **Storage Condition** | 5 W/(-3+degrees Celsius |
| | 7/26/16 | | |
| | 5gt)C | | |

| Analysis | Result |
|---|---|
| **Sugar Profile by HPLC** | |
| Sucrose | 0.6 G/Serving Size |
| Fructose | 3.5 G/Serving Size |
| Glucose | 5.2 G/Serving Size |
| Maltose | <0.2 G/Serving Size |
| Lactose | <0.2 G/Serving Size |
| Total Sugar | 9.0 G/Serving Size |
| **Specific Gravity** | |
| Density | 1.030 G/mL |
| **Residual Ethanol and Methanol *** | |
| Ethanol v/v | 1.44 % |

| **Method References** | **Testing Location** |
|---|---|
| **Residual Ethanol and Methanol (ETME_S:9)** | Covance Laboratories Madison |
| Ethanol/Methanol by Headspace with FID-GLD | |
| **Specific Gravity (SPGP_S:15)** | Covance Laboratories Madison |
| NIST Handbook 133 - Checking the Net Contents of Packaged Foods, 2015 Edition Modified+ | |
| **Sugar Profile by HPLC (SGLC_S:13)** | Covance Laboratories Madison |
| Official Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC INTERNATIONAL, Faithersburg, MD, USA, V2005; Official Method 982.14 Modified+ | |

| **Testing Location(s)** | **Released on Behalf of Covance by** |
|---|---|
| **Covance Laboratories Madison** | **Lori Ross Associate Director** |
| Covance Laboratories Inug | |
| 3301 Kinsman Blvd | |
| Madison J I 53704 | |
| 800-675-8375 | |

 

2918-01

---

**\* This analysis is not ISg accredited.**
Printed: 12-Jul-2016 5:03 pm                     Page 1 of 2

Ebersole Decl. - Page 1217

Report Number:   154838- 0

Report Date:     12-Jul- 16

Report Status:   Final

# Certificate of Analysis

## Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

These results apply only to the items tested.  This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Covance.

---

Ebersole Decl. - Page 1218

# COVANCE.

## Certificate of Analysis

peNort umb: erD    15483-30R
peNort 2 ate[    1J06m10SR1-
peNort FtatmsD    Ginal
FmNerceTes D    1548J-50R

**Amin Talati & Upadhye, LLC**

10541 Brookview Dr
Carmel Indiana 46032 United States

| Fab Nle uab eD | g d v riPinal | Coj ance Fab NleD | 51-SJ81 |
|---|---|---|---|
| I ro@ct z2 | AMIN_TA_UP-20160701-0002 | peceiNt 2 ate | 30-.°n-2016 |
| I v umb: er | CVD | peceiNt ConTition | Cold on J et lue or lue Pauks |
| Fab Nle Ferj inP FiLe | 8 fl oz | HoPin 2 ate | 01-.°I-2016 |
| 2escriNtion | 0266**/ 1B | FtoraPe ConTition | 5 W(- 3+deGrees Celsi°s |
|  | 08(31(16 |  |  |
|  | 5ç5)C |  |  |

| Analysis | pesmlt |
|---|---|
| **FmPar I rofile : y El HC** |  |
| S°urose | 1 G(ServinGSize |
| <l°uose | 2çF G(ServinGSize |
| /r°utose | 4ç5 G(ServinGSize |
| Maltose | 90ç2 G(ServinGSize |
| Lautose | 90ç2 G(ServinGSize |
| Total S°Gar | 8çF G(ServinGSize |
| **FNecific g raj ity** |  |
| Density | 1ç014 G(mL |
| **pesiTmal htManol anT * etManol (** |  |
| Ethanol v(v | 1ç60 % |

| * etMoT peferences | destinP Hocation |
|---|---|
| **pesiTmal htManol anT * etManol _hd* h9FD)** | Coj ance Ha: oratories 0* aTison |
| Ethanol(Methanol by Headspaue with < C-/ IDg |  |
| **FNecific g raj ity _FI g I 9FDl5)** | Coj ance Ha: oratories 0* aTison |
| NIST Handbook 133 - CheukinGthe Net Contents of PaukaGed < oods, 2015 Edition WModified+ |  |
| **FmPar I rofile : y El HC _Fg HC9FDlJ)** | Coj ance Ha: oratories 0* aTison |
| Offiuial Methods of Analysis of AOAC INTERNATIONAL 18th Edg AOAC INTERNATIONAL, < aithersb°rG, MD, USA, W2005; Offiuial Method F82g14gWModified+ |  |

| destinP Hocation_s) | peleaseT on BeMalf of Coj ance : y |
|---|---|
| **Coj ance Ha: oratories 0* aTison** | **Hori poss 0Associate 2irector** |

Covanue Laboratories Inug
3301 Kinsman Blvd
Madison J I 53704
800-675-8375

 

2F18g01

**( dMs analysis is not ₂Fv accreTiteT.**
Printed:   13-.°I-2016   1:11 pm          PaGe 1 of 2

Ebersole Decl. - Page 1219

**COVANCE.**

peNort umb erD    15483-30R

peNort 2 ateD    1J06m10SR1-

peNort FtatmsD    Ginal

FmNerceTes D    1548J-50R

# Certificate of Analysis

Amin Talati & Upadhye, LLC

10541 Brookview Dr
Carmel Indiana 46032 United States

dMese resmlts aNNly only to tMe iteb s testeT.  dMs certificate of analysis sMall not : e reNroTmceT, exceNt in its entirety, witMomt tMe written aNNroj al of Coj ance.

( dMs analysis is not zFv  accreTiteT.
Printed:    13-. ° I-2016   1:11 pm                          PaGe 2 of 2

# EXHIBIT 2

Exhibit 2: Images of GT's samples tested in February 2019





Temperature check of refrigerator where GT's was purchased on February 20, 2019



Inspection of GT's samples





















Ebersole Decl. - Page 1235





Case 2:17-cv-07533-FMO-GJS   Document 23-1   Filed 10/27/16   Page 289 of 903   Page ID #:229







Ebersole Decl. - Page 1240







Ebersole Decl. - Page 1243





Ebersole Decl. - Page 1245



































Ebersole Decl. - Page 1262



# EXHIBIT 3

Exhibit 2: Images from testing of GT's Kombucha in 2016.



Temperature check of store shelf where GT's was purchased



Shelf location where GT's was purchased



Shelf location where GT's was purchased



Temperature check of GT's products in refrigerated shelf

Ebersole Decl. - Page 1268



December 15, 2015 at 10:47:00 AM

Above: Temperature check of samples during packaging



Above: Temperature check of samples before shipping

Ebersole Decl. - Page 1270



December 15, 2015 at 11:13:23 AM

GT's Gingerade sent for testing, December 15, 2015



GT's Original sent for testing December 15, 2015



Receipt of samples purchased for initial testing



Temperature check of store refrigerator where GT's was purchased on January 11, 2016



Store shelf where GT's was purchased, January 11, 2016

GT's Gingerade sent to laboratory for testing



Temperature check of refrigerator with samples for verification study



Receipts of samples used for verification study



Temperature check of shipper with samples ready for sending to lab



February 29, 2016 at 11:53:54 AM

Temperature check of samples in cold storage



February 29, 2016 at 12:11:21 PM

GT's samples used for method verification

Ebersole Decl. - Page 1280



Temperature check of verification reference samples in cold storage



April 9, 2016 at 2:07:39 PM

Certified reference materials used in verification



April 9, 2016 at 2:06:30 PM

Certified beer reference materials used in method verification



Shelf of purchase for validation study materials



Shelf of purchase for validation study materials



May 3, 2016 at 1:55:31 PM

Temperature check of refrigerated storage fo study materials



Shelf of purchase for study materials, June 28, 2016



Shelf of purchase for study samples, June 28, 2016



Temperature check of study samples to be shipped to lab, June 28, 2016



Temperature check (38.1 F) of store refrigerator where study materials were obtained, June 28, 2016



GT Gingerade sent to lab for testing, June 29 2016



GT Gingerade sent to lab for testing, June 29 2016



Temperature check of samples during summer, taken before shipping samples to laboratory



GT Original sent to lab for testing, June 29 2016



GT Original sent to lab for testing, June 29 2016



GT Original sent to lab for testing, June 29 2016

Ebersole Decl. - Page 1296



June 29, 2016 at 1:54:01 PM

Ebersole Decl. - Page 1297



GT Original sent to lab for testing, June 29 2016



GT Trilogy sent for testing June 29, 2016



July 13, 2016 at 3:06:39 PM

Temperature check of retained samples in cold storage during summer

# EXHIBIT 4

# Blake Ebersole

C.V.

Blake Ebersole, B.S., M.B.A. is President of NaturPro Scientific LLC, a scientific and regulatory consulting firm offering a combined 30+ years of experience in the development and production of a wide range of natural products for foods and dietary supplements. Blake contributes to quality assurance and product development for firms of all sizes, and has managed supply chains for dietary ingredients meeting the most stringent quality requirements. Blake is a contributor to dietary supplement, food and cannabis industry regulatory efforts, and participates on a number of active committees and expert panels, including the American Herbal Products Association, ASTM International and AOAC International.

## Professional Experience:

### Quality Management:
- Performed Good Manufacturing Practices audits for dozens of dietary supplement, food, ingredient and drug firms under 21 CFR 117, CFR 111 and CFR 211.
- Developed multiple "360-degree" Quality Management Systems (QMS) from scratch based on ISO 9000 and GMP standards meeting requirements of F50 food, supplement and pharmaceutical customers, leading to significant improvements in all quality KPI
- Led standards development and certification of overseas agricultural and botanical extract manufacturing operations in India under GMP (21 CFR 111), USDA Organic, Non-GMO Project, Good Agricultural Practices, Fairtrade programs
- Led development, optimization and validation of dozens of natural product analytical methods according to AOAC, USP, ICH, GLP and other compendia guidelines
- Audited in-house and independent analytical laboratories according to ISO 17025 requirements
- Supported industry effort to develop standardized specifications and defect action levels for dozens of ingredients

### Legal and Regulatory Affairs:
- Serve on technical and expert review panels for standards-setting organizations AHPA, ASTM & AOAC International
- Corporate legal counsel liaison and lead expert on FDA DSHEA dietary supplement regulations including GMP, product safety, product labeling and claims substantiation
- Led intellectual property (patent and trademark) research, submission and licensing on 3+ patents, 10+ patent applications, 20+ trademarks and copyrights
- Led and coordinated regulatory document submissions, including IND, NDI, GRAS and product registrations to US FDA, EU (EFSA), Australia TGA, Health Canada, KFDA, Japan FOSHU
- Generated, reviewed and negotiated legal agreements such as confidentiality, research, supply, quality, licensing and MOU

### R&D and Product Development:
- Directed a $10+ million natural products research program, supporting study design and data analysis
- Coauthor/advisor on 100+ scientific studies: human clinical, preclinical, analytical chemistry and toxicology
- Inventor and/or executor on 10+ patents covering products with $100+ million in sales
- Led manufacturing scale-up from concept to commercial scale for dozens of natural products
- Led licensing and product development on patented solid-lipid particle formulation (Longvida® Optimized Curcumin)
- Scientific liaison and research collaborator with numerous physicians and scientists across various disciplines

### Technical Sales and Marketing:
- Lead brand strategy & management for 15+ proprietary branded products sold as ingredients and consumer products
- Sales lead for proprietary products to Fortune 500 and global customers, resulting in millions in revenue
- Authored or contributed to 60+ trade press articles
- Lead technical support for thousands of communications with press, scientist, physician, B2B and consumers

1

# Blake Ebersole

C.V.

- Generated marketing content; including sales sheets, website content, sales presentations, training sessions, webinars, press releases, and technical dossiers
- Lead marketing and sales strategy and manage projects for B2C start-ups; generate successful online content for B2C

## Medical Cannabis

- Currently serve on ASTM International D37, U.S. Hemp Roundtable and American Herbal Products Association (AHPA) Cannabis Committees
- Supported the development of operating standards and wrote standard operating procedures (SOP) for Good Manufacturing Practices (GMP) for cannabis standards-setting organization
- Currently serve as regulatory and quality assurance consultant for hemp industry and trade organizations
- Founding member of technical standards committee for U.S. Hemp Roundtable
- Coordinated initial R&D, production, quality assurance and regulatory affairs for a cannabis startup with operations in Washington, Colorado and Nevada
- Assisted in development of cannabis license applications in New York, Florida, California, Colorado and Louisiana
- Established analytical testing standards and guidelines for potency and purity of cannabis products
- Audited cannabis analytical laboratory data according to ISO 17025 standards
- Developed in-house formulas, materials lists, manufacturing processes, manufacturing records and operational guidelines for cannabis extract and finished product production
- Developed R&D for and commercial processes for small- and large-scale extraction and purification

## Leadership

- Serve as principal liaison to trade associations and standards-setting agencies such as AOAC, USP, AHPA and others
- Planned and implemented numerous corporate-level strategic and tactical plans, processes and policies that improved performance in research, quality, supply chain, sales/marketing, finance and legal departments
- Managed projects and budgets for research, marketing, legal and quality departments
- Department supervisor with 5+ direct reports, experienced in HR practices and requirements
- Led training sessions for corporate, sales/marketing and quality departments

## Diplomas:

| | | |
|---|---|---|
| 2010 | **Masters, Business Administration** | ***Butler University*** Indianapolis, IN, USA |
| 2000 | **Bachelor of Science,** Forensic Chemistry (ACS) | ***West Chester University*** West Chester, PA, USA |

## Positions held:

| | |
|---|---|
| 2015-present | ***President and Founder,*** NaturPro Scientific LLC, Carmel, IN |
| 2016-2017 | ***Contributing Writer***, **HerbClip,** American Botanical Council, Austin |
| 2015-2017 | ***Co-Founder,*** Identification of Dietary Ingredients (IDDI) |
| 2014-2015 | ***NIH/NCCAM Grant Advisor,*** "Botanicals and Drug Interactions", University of Rhode Island |
| 2013 | ***International Association for Dental Research (IADR) Grant Co-investigator***: **"**Topical curcumin administration to gingival tissue as potential treatment for periodontal disease"*,* Stony Brook University |
| 2012-2018 | ***Contributing Writer,*** *Natural Products Insider* |
| 2012-2013 | ***Founder and Editor,*** *Verdemedica: Journal of Botanical Product Science and Quality* |
| 2012-2015 | ***NIH Grant Advisor,*** "Efficacy of *Withania somnifera* Compounds on Breast Cancer", Emory University |

2

# Blake Ebersole

C.V.

| 2006-2015 | **_Technical Director_**, Verdure Sciences, Noblesville, IN |
| 2005-2006 | **_Marketing Coordinator_**, Geni Herbs, Noblesville, IN |
| 2002-2004 | **_Co-Founder_**, www.RainbowLight.net, Etters, PA |
| 2001-2002 | **_Teacher_**, Honolulu School District, Hawai'i |
| 2000 | **_Analytical Chemist_**, Pennsylvania Equine Toxicology and Research Laboratory, West Chester, PA, USA |

## Training & Honors:

- **FDA Foreign Supplier Verification Program,** FSPCA, 2018
- **FDA Preventive Controls Qualified Individual**, FSPCA, 2018
- **AOAC Expert Review Panel Award,** for Method Development of Ethanol in Kombucha, 2017
- **Supplement Industry Star Award**, *Supplyside West/Informa*, 2015 & 2016
- **Supply Chain Transparency Award,** *Nutraingredients-USA* for PLT360, 2016 (Client contracted)
- **Dietary Supplement Good Manufacturing Practices, 21 CFR 111**, American Herbal Products Association, 2010
- **Dietary Supplement Health Claim Substantiation,** American Herbal Products Association, 2006
- **Chemistry Seminar**, West Chester University, 2000: *Pharmacology and binding of ligands at the serotonin receptor*
- **Honors Merit Scholarship**, West Chester University, 1996-1997

## Professional Organizations and Committees:

- *AOAC International,* Professional Member*,* Expert Review Panel, Ethanol in Kombucha, 2015-present
- *International Society of Sports Nutrition,* Member, 2018
- *U.S. Hemp Roundtable*, Technical Committee, 2017-present
- *ASTM International,* D37 Committee Member, 2017-present
- *American Herbal Products Association*, Associate Member and Committee Member: Labs, Analytical Methods and Standards Committee, Cannabis Committee, 2015-present
- *Supplement Safety and Compliance Initiative*, Working Group Member**,** 2016-2017
- *State of Colorado Marijuana Enforcement Division,* Pesticides Testing Working Group, 2016-2017

## Peer-reviewed Publications:

1. Determination of ethanol content in kombucha products by gas chromatography with flame ionization detection: a multilaboratory study, Liu Y, Chan M, **Ebersole B**, Sy H, Brown PN. Journal of AOAC 2018 Sep 18 doi:10.5740/jaoacint.18-0190
2. Single laboratory validation of a GC-FID method for ethanol in kombucha, **Ebersole B**, Eckert M, Schmidt R, Chan M, Brown P. 2017 Journal of AOAC, doi: 10.5740/jaoacint.16-0404
3. Curcumin Has Mixed Effects on Oxidative Stress in Patients with Nonmetastatic Prostate Cancer following Radiation Therapy, **Ebersole B.** *HerbClips*™, American Botanical Council, September 2017
4. Aromatherapy Using Lavender Oil or Linalyl Acetate Modestly Improves Pain Relief in Patients with Colorectal Cancer following Post-surgery Catheter Removal, **Ebersole B.** *HerbClips*™, American Botanical Council, September 2017
5. Loquat Leaf Extract without Additional Exercise Does Not Increase Muscle Mass in Healthy Adults, **Ebersole B.** *HerbClips*™, American Botanical Council, August 2017
6. Meta-analysis Provides Update of Aromatherapy for Depression, **Ebersole B.** *HerbClips*™, American Botanical Council, August 2017
7. Petitgrain Oil Aromatherapy Reduces Markers of Stress and Modestly Improves Performance in Simulated Workplace Environment, **Ebersole B.** *HerbClips*™, American Botanical Council, August 2017

3

# Blake Ebersole

C.V.

8. Bromelain Improves Facial Swelling following Oral Surgery, **Ebersole B.** *HerbClips*™, American Botanical Council, July 2017

9. Single Serving of Montmorency Tart Cherry Concentrate Improves Cerebral Blood Flow, but Not Cognitive Function, **Ebersole B.** *HerbClips*™, American Botanical Council, August 2017

10. Kale Reduces Postprandial Spikes of Plasma Glucose in Healthy Japanese Adults, **Ebersole B.** *HerbClips*™, American Botanical Council, July 2017

11. A Two-week, Pilot Study on the Reduction of Irritable Bowel Syndrome Symptoms with Atrantíl®, **Ebersole B.** *HerbClips*™, American Botanical Council, July 2017

12. Hibiscus Water Extract Demonstrates Significant Antioxidant Effects in Patients with Marfan Syndrome, **Ebersole B.** *HerbClips*™, American Botanical Council, June 2017

13. Weight Reduction with Meratrim® Botanical Extract Combination in Overweight Humans—A Randomized, Controlled Trial, **Ebersole B.** *HerbClips*™, American Botanical Council, June 2017

14. Standardized Cranberry Extract, Cranpac™, Reduces Bacterial Adhesion in Patients with Recurrent Urinary Tract Infection, **Ebersole B.** *HerbClips*™, American Botanical Council, May 2017

15. Efficacy of a Fruit and Vegetable Powder Supplement for Menopausal Symptoms in Women, **Ebersole B.** *HerbClips*™, American Botanical Council, May 2017

16. Efficacy of Coenzyme Q10 and Tea Tree Oil for Chronic Periodontitis, **Ebersole B.** *HerbClips*™, American Botanical Council, May 2017

17. Standardized Ginger Extract May Reduce Adverse Events from Tuberculosis Drugs, **Ebersole B.** *HerbClips*™, American Botanical Council, April 2017

18. Review of Contact Dermatitis Associated with Tea Tree Oil Exposure, **Ebersole B.** *HerbClips*™, American Botanical Council, June 2017

19. Efficacy of a Diet Program on Body Weight in Overweight Americans: Open-Label Human Study. **Ebersole B.** March 2017. Technical Report, self-published on client website.

20. Pilot Studies on the Efficacy of a Diet Program on Body Weight in Overweight and Obese South Africans, **Ebersole B.** March 2017. Technical Report, self-published on client website.

21. Analysis of Sugars in Kombucha Tea by High Performance Liquid Chromatography, **Ebersole B.** Technical Report, October 2016. DOI: 10.13140/RG.2.2.24141.23522

22. **Ebersole B,** Hingorani L. Stable solid lipid particle composition for improved bioavailability of lipophilic compounds for age-related diseases. PCT Application WO/2016/077454. Assigned.

23. AOAC International *First Action Official Method* 2016.12, Determination of Ethanol in Kombucha. **Ebersole B.**

24. AOAC Standard Method Performance Requirements 2016.001. *Journal of AOAC*, (2016) 99(4), 1120-1121

25. Bitter melon extract attenuating hepatic steatosis may be mediated by FGF21 and AMPK/Sirt1 signaling in mice. Yu Y, Zhang XH, **Ebersole B,** Ribnicky D, Wang ZQ. *Scientific Reports (Nature)*. 2013 Nov 5;3:3142. doi: 10.1038/srep03142.

26. Optimization and validation of ursolic acid by HPLC in *Ocimum sanctum*. Shah J, Patel S, **Ebersole B**, Hingorani L. *Planta Medica* 2012 DOI: 10.1055/s-0032-1321177

27. Acute human pharmacokinetics of a lipid-dissolved turmeric extract, Shah J, Patel S, **Ebersole B**, Hingorani L. *Planta Medica* 2012 DOI: 10.1055/s-0032-1320664

28. Sustained cognitive effects and safety of HPLC-standardized *Bacopa monnieri* extract: A randomized, placebo controlled clinical trial. Hingorani L, Patel S, **Ebersole B**. *Planta Medica* 2012; DOI: 10.1055/s-0032-1320681

## Scientific Presentations:

1. Safety, tolerability and nutrient status after consuming a total meal replacement beverage for 30 days: a randomized, controlled pilot study in healthy adults. **Ebersole B**. *International Society for Sports Nutrition Annual Meeting*, June 7, 2018.

2. Single Laboratory Validation of Ethanol in Kombucha by Gas Chromatography with Flame Ionization Detection. **Ebersole, B**. *AOAC International Annual Meeting*, September 2016.

3. Ethanol analysis of kombucha products with gas chromatography. **Ebersole B**, *Institute of Food Technologists Annual Meeting*, 2016.

# Blake Ebersole
C.V.

4. Acute human pharmacokinetics of a lipid-dissolved turmeric extract. Shah J, Patel S, **Ebersole B**, Hingorani L. *2012 International Congress on Natural Products Research*, New York, NY. July 31, 2012. Planta Med 2012; 78 - PH5 DOI: 10.1055/s-0032-1320664

5. High-throughput screening program for commercial single-herb extracts. Hingorani L, Seeram NP, **Ebersole B**. *2012 International Congress on Natural Products Research*, New York, NY. July 31, 2012. Planta Med 2012; 78 - PF85 DOI: 10.1055/s-0032-1320632

6. Optimization and validation of ursolic acid by HPLC in *Ocimum sanctum*. Hingorani L, **Ebersole B,** Patel S. *2012 International Congress on Natural Products Research*, New York, NY. July 31, 2012.

7. Orthogonal validation of analytical and quality systems for botanical products. Hingorani L, Patel S, Darji B, **Ebersole B**. *2012 International Congress on Natural Products Research*, New York, NY. July 31, 2012. Planta Med 2012; 78 - PJ156 DOI: 10.1055/s-0032-1321316

8. Sustained cognitive effects and safety of HPLC-standardized *Bacopa monnieri* extract: a randomized, placebo-controlled trial. Hingorani L, Patel S, **Ebersole B**. *2012 International Congress on Natural Products Research*, New York, NY. July 31, 2012.

9. Bitter melon extract enhances insulin sensitivity by modulating FGF21 signaling in high-fat diet fed mice. Wang ZQ, Yu Y, Zhang XH, Li H, Qin J, **Ebersole B**, Cefalu WT. 7th *International Conference for Functional Foods in the Prevention and Management of Metabolic Syndrome*, Southern Methodist University, Dallas, TX, USA, December 3-4, 2010.


## Invited Presentations:

1. "Current Issues for Food Analysis", Department of Nutrition and Food Science, Texas A&M University, October 25, 2017
2. "An Overview of the Food and Supplement Regulatory Climate", Department of Nutrition and Food Science, Texas A&M University, March 16, 2017
3. "Identity Testing and Method Validation for Botanicals", *Supplyside West*, October 5, 2016.
4. "Emerging Regulatory and Labeling Issues for Dietary Supplements and Foods", Department of Nutrition and Food Science, Texas A&M University, September 5, 2016.
5. "Natural Products Research for Neurodegenerative Diseases", NIH/NINDS, Bethesda, MD, March 3, 2015.
6. "Optimized Curcumin and the Aging Brain", Amway/Nutrilite, October 29, 2014.
7. "Curcumin Advancements: The Aging Brain with Longvida® Curcumin", Douglas Labs, April 23, 2014.
8. "Longvida: The Brain Curcumin". *Vitafoods International Conference*, Geneva, Switzerland, May 24, 2012.
9. "100% Ingredient Identity". *SupplySide Marketplace Good Manufacturing Practices Workshop*, NY, NY, May 8, 2012.
10. "Nutraceuticals: An Overview". Department of Nutrition and Food Science, Texas A&M University, April 6, 2012.
11. "Fortification of Polyphenols into Functional Foods". *Prepared Foods R&D Applications Seminar*, Chicago, IL, USA, August 3, 2011.
12. "Science-based Curcumin", *16th International Food Ingredients and Additives (IFIA) Conference*, Tokyo Japan, May 19, 2011.
13. "Bioavailability of Botanical Supplements: Challenges and Opportunities". Department of Nutrition and Food Science, Texas A&M University, March 31, 2011.
14. "Foods Designed for Health, Functional Foods, and Nutraceuticals". Department of Nutrition and Food Science, Texas A&M University, March 20, 2008.
15. "Overview of Research-Validated Pomegranate: Focus on Prostate Health". *US Too Prostate Cancer Group Patient Education Symposium,* Chicago, IL, USA, November 2, 2007.
16. "Science-based Nutrition: Finding the Right Pomegranate". *US Too Prostate Cancer Group Regional Meeting*, Chicago, IL, USA, July 24, 2007.

Ebersole Decl. - Page 1306

# Blake Ebersole

C.V.

## Articles and Trade Publications:

1. A List of Scientific Publications on Natural Products, including Food, Medicine and Dietary Supplements, with a focus on Quality Management Systems, including Good Agricultural, Collection and Manufacturing Practices, Ebersole B. 2017, Self-published.
2. Historical Food and Supplement Adulterant List, Ebersole B. 2017, Self-published.
3. Press Release, "Botanical Liaisons and NaturPro Scientific Complete Independent Authentication of Rhodiolife® *Rhodiola rosea* L. Ingredient", October 2017
4. Article, "Emerging Heart Health Ingredients", *Natural Products Insider,* August 2017
5. Article, "Making a Quilt from the Regulatory Patchwork," *Natural Products Insider*, July 2017
6. Article, "Create Claims with Confidence", Natural Products Insider, June 2017
7. Article, "New Research on Ingredients for Joint Pain", *Natural Products Insider,* March 2017
8. Quoted in "Kombucha Study Raises Sugar Content Questions", BevNET, November 2016
9. Article, "Beyond Non-GMO for Supplements", *Natural Products Insider,* November 2016
10. Article, "Two Identity Testing Requirements: References and Rigor", *Natural Products Insider,* October 2016
11. Article, "New Omega-3 Technologies Emerging", *Natural Products Insider,* October 2016
12. Article, "Probiotic Questions from the Gut," *Natural Products Insider,* May/June 2016
13. Article, "GNC, FDA Aim Alignment of U.S. with Global Standards", *Natural Products Insider,* March 2016
14. Article, "Modernization of the Supplement Industry", *Natural Products Insider,* January 2016
15. Article, "Eight Steps to Developing Research Relationships", *Natural Products Insider,* December 2015
16. Article, "Supplier Verification Key to New Rules," *Natural Products Insider*, December 2015
17. Article, "Where the Cannabis Market is Going", *Natural Products Insider*, October 2015
18. Article, "Dosing and Quality Obstacles to Cannabis Adoption", *Supplement Perspectives*, October 2015
19. Article, "Welcome to the Gut Jungle", *Natural Products Insider*, August 2015
20. Article, "How to Design a Clinical Study", *Supplement Perspectives*, June 2015
21. Article, "Best Way to My Heart? Through the Gut", *Natural Products Insider*, June 2015
22. Article, "Immunity and Inflammation: Inseparable", *Supplement Perspectives*, June 2015
23. Article, "Capsaicin and Cannabis: The Hot and Cool of Joint Care", *Supplement Perspectives*, April 2015
24. Article, "How to Create Natural Product IP", *Supplement Perspectives*, March 19, 2015
25. Article, "The Athlete's Frenemy: Inflammation", *Supplement Perspectives*, February 2015
26. Article, "Extracts: More than a Cup of Tea", *Natural Products Insider*, February 2015
27. Article, "Certifications are Fine, But…", *Natural Products Insider*, January 2015
28. Article, "Supplement Trends of 2014 and the Future", *Natural Products Insider*, December 2014
29. Article, "Traceability: What's the Point?" *Natural Products Insider*, November 2014
30. Article, "R&D: The Key Disciplines", *Supplement Perspectives*, November 2014
31. Article, "Dose Delivery: Oil into Water", *Natural Products Insider,* August 2014
32. Article, "Advances in Brain Health Research", *Natural Products Insider*, July 2014
33. Article, "Next-Gen Blood Sugar Management", *Natural Products Insider*, June 2014
34. Article, "Emerging Carotenoid Research", *Natural Products Insider*, April 2014
35. Special Issue, "Beyond Lutein", *Natural Products Insider*, April 2014
36. Article, "Sci-Fi, QC and Botanicals", *Natural Products Insider*, March 2014
37. Article, "Dose Delivery, Old & New", *Natural Products Insider*, March 2014
38. Article, "Beyond the Test Tube: Superfruit Science", *Natural Products Insider*, Feb 2014
39. Article, "Joint Health: Alternative Now Mainstream", *Natural Products Insider,* Feb 2014
40. Article, "Advancement Depends on Going Back to Basics", *Natural Products Insider*, Dec 2013
41. Article, "Consume Your Political News Frequently--and Calmly", *Natural Products Insider*, November 2013
42. Article, "The Eyes Are the Window to Our Health", *Natural Products Insider*, October 2013
43. Article, "Weighting to Lose", *SupplySide Community,* October 2012
44. Article, "Eyes Wide Open: Eye Health Supplements", *Natural Products Insider*, August 2013
45. Article, "The Gut-Brain Axis", *Natural Products Insider*, August 2013
46. Article, "Five Great Apps for Supplement Science", *Natural Products Insider*, July 2013
47. Article, "Scientific Validity Keys for Supplement GMPs", *Natural Products Insider*, June 2013
48. Article, "Ingredient Spotlight: Pomegranate", *Nutritional Outlook*, May 2013

6

# Blake Ebersole

C.V.

49. Article, "Sports Supplements: OK for Kids?", *Natural Products Insider,* May 2013
50. Article, "Your Trade Show Physical and Mental Health Checklist", *Natural Products Insider,* April 2013
51. Article, "Tips for Hiring the Right Contract Ingredient Manufacturer", *Natural Products Insider,* March 2013
52. Article, "Politics, Religion and Organic Farming", *Natural Products Insider,* February 2013
53. Article, "The Eyes Are the Window to.. Our Health", *Natural Products Insider,* January 2013
54. Article, "Silver Linings in Omega-3 Research", *Natural Products Insider,* December 2012
55. Article, "Why Antioxidants Are Useful", *Natural Products Insider,* November 2012
56. Article, "Weighting to Lose", *Natural Products Insider,* October 2012
57. Article, "The Bugs Are Taking Over", *SupplySide Community,* September 2012
58. Quoted in "Encouraging Natural Bone Health", *Natural Practitioner,* July/August 2012
59. Quoted in "Boosting the Brain", *Nutrition Industry Executive,* July/August 2012
60. Article, "The Research Says It All: Omegas Do a Body Good", *SupplySide Community,* August 2012
61. Article, "Ensuring Purity for Prenatal Supplements," *SupplySide Community,* July 2012
62. Article, "Are You in the 59 Percent?", *SupplySide Community,* May 2012
63. Article, "The Omnivore's Inflammatory Dilemma", *SupplySide Community,* April 2012
64. Article, "New Frontiers in Digestive Health", *SupplySide Community,* March 2012
65. Article, "Ch-ch changes in Senior Supplements", *SupplySide Community,* February 2012

# EXHIBIT 5

Ebersole Decl. - Page 1309

# Verification of a Method for Measuring Ethanol in Kombucha by Gas Chromatography with Flame Ionization Detection

*With Supplementary Data:*

# Round-Robin Study on Ethanol Content in Commercial Kombucha Samples and Certified Reference Materials

## DRAFT REPORT, CONFIDENTIAL

Prepared by: Blake Ebersole, NaturPro Scientific LLC

Study performed at:
Covance Laboratories Inc.
3301 Kinsman Blvd
Madison, WI 53704-2523

Covance Study No. 8336-188

April 22, 2016

1

**Table of Contents**


**Verification of a Method for Quantifying Ethanol in Commercial Kombucha**

**Introduction**
**Conclusions**
**Experimental Design and Results**
    Analytical Conditions
    Sample Materials
    Reference Standard Materials
    Calculations
    System Suitability
    Procedure and Results
    Certified Reference Material Evaluation
    Statistical Evaluation
    Control of Bias
**Appendix A (Figures and Tables)**
    Representative Chromatograms
    Linearity
    Precision
    Accuracy
    Recovery
**Appendix B**
    Deviations, Sample Disposition, Record Retention


*Supplementary Data:* **Multi-Lab Study on Ethanol Content in Commercial Kombucha Samples and Certified Reference Materials**

**Introduction**
**Objectives**
**Methods**
**Results**
Recovery of CRM
    Commercial Sample Evaluation
    and Spiked References
**Discussion**

2

## INTRODUCTION

Kombucha is often marketed as a non-alcoholic beverage, which, according to TTB regulations, requires that it contain an alcohol content of less than 0.50%. The objective of this study was to examine the potential of gas chromatography with flame ionization detection (GC-FID) as a standard method for quantifying ethanol content in kombucha. The Covance method "MP-ETME" commonly used for complex mixtures containing low levels of ethanol, including foods, beverages and botanical materials, was utilized in this study.

The commercial test sample selected was a ginger-flavored kombucha available in the U.S. which had been previously screened for alcohol content and suitability for such studies. Reference materials included pure ethanol, 1-propanol as internal standard, certified reference materials (ethanol-water and beer), and a control kombucha found to be of similar composition to the commercial kombucha samples. Spiked reference materials were produced by adding a known amount of ethanol to either water or the control kombucha.

The study was initiated on March 2016 and completed in April 2016. The laboratory selected to run the analysis was Covance Laboratories, Madison Wisconsin.

A preliminary investigation in which multiple laboratories assessed the ethanol content in a number of commercial and spiked samples, as well as certified reference materials (CRM) was also performed. Data from the multiple lab "round robin" investigation is provided as a Supplement to this report.

## CONCLUSIONS

Based on the analytical results obtained in this study, Covance method MP-ETME, which is also commonly used for foods, beverages and botanical materials, is appropriate for the quantification of ethanol in kombucha. The study method was found to be accurate and precise, meeting the Standard Method Performance Requirements (SMPR) established by the AOAC kombucha working group in 2015-2016.

In this study, no indication of interferences from co-eluting peaks or other interferences was observed.

The limit of detection and limit of quantitation for the method were 0.015% ABV, below the typical ethanol content of commercial kombucha products based on preliminary analyses. Method linearity was shown as represented by the correlation coefficient, r, of the calibration curve which was greater than 0.9996.

Using the Covance headspace GC-FID method, the commercial kombucha sample was found to contain 1.61% alcohol by volume (ABV) with a relative standard deviation of +/- 0.06%.

Method precision, measured by the relative standard deviation (RSD) across different days, instruments and technicians, was < 4%, meeting the AOAC method performance requirement of <6%.

Recovery for lab-spiked control kombucha samples ranged from 98.3 to 104.2% across spike levels of 0.13%, 1.3% and 3.3% ABV.

Recovery for lab-blinded Certified Reference Materials (CRM) was 101-104% for sealed CRM and 94-104% for both sealed and repackaged CRM, across spike levels of 0.1267%, 0.505% and 2.53% ABV.

3

Ebersole Decl. - Page 1312

## EXPERIMENTAL DESIGN AND RESULTS

**Results:**
The study was conducted during March 2016. The method meets the draft AOAC SMPR (Version 4, December 9, 2015) for ethanol in kombucha. See figures. All data are presented in units of alcohol by volume (%ABV) under the definition in AOAC SMPR, unless otherwise specified.

**Methodology**
The Covance headspace GC-FID method (method MP-ETME, Version 1, effective date: April 9, 2010) was verified in this study based on the AOAC Guidelines for Single Laboratory Validation of Chemical Methods for Dietary Supplements and Botanicals.

Briefly, samples are heated and agitated in a 20-mL headspace vial. A portion of the headspace is injected into a gas chromatograph (GC) with a flame ionization detector (FID) on a DB-WAXetr GC column. Quantitation is performed using a 6-point calibration curve generated by a weighted (1/concentration) least squares linear regression analysis.

**Apparatus:**
- Analytical balance
- J&W DB-WAXetrcolumn, 0.53 mm x 30 m, 2µm df
- Headspace vials and magnetic Teflon-lined caps, 20-mL
  - Screw-top vials (Restek, part # 23082)
  - Crimp top vials (Restek, part # 24685)
- Combi-PAL headspace autosampler
- Agilent 7890 GC system with flame ionization detector

**Headspace conditions:**

- Incubation temperature: 80°C
- Syringe temperature: 85°C
- Heating time: 15-20 minutes

**Gas Chromatograph conditions**

- Column: J&W DB-WAXetr
- Film thickness: 2 to 5 um
- Temperature: Initial 40°C for 10 minutes
- Rate: 25°C/minute to 240°C, hold 240°C for 1 minute
- Run Time: 20 minutes
- Detector: flame ionization
- Detector temperature: 250°C
- Injector temperature: 150°C
- Carrier gas: He, 7 mL/min

4

- Hydrogen flow: 40 mL/min
- Air flow: 400 mL/min
- Makeup flow: 40 mL/min
- Makeup gas: Nitrogen
- Injection volume: 2,000 uL

## SAMPLE MATERIALS

### Characterization

**Commercial Kombucha:** Based on preliminary analysis of commercial kombucha products, the test sample was selected as a commercial kombucha, which based on preliminary analysis, and visual, chemical and label appearances was considered to be representative of many other kombucha products on the market. The sample was representative of kombucha products containing ethanol, solid matter, organic acids and carbon dioxide. Spices and flavors containing essential oils, like ginger root (one of the most popular kombucha flavors), have also been purported to interfere with analysis of volatiles. Acetic acid has also been associated with interference of some alcohol methods. Therefore, a ginger-flavored kombucha with labeled amount of acetic acid, GT's Gingerade, was selected.

The composition of the sample was evaluated in a nutritional analysis (see below).  Kombucha is generally stated as a fermented beverage containing water, tea, sugar, yeast and bacteria, organic acids (such as acetic and gluconic acids), dissolved carbon dioxide and ethanol.

### Verification Material:

The commercial kombucha sample was purchased from a grocery store in Carmel Indiana on February 16, 2016. The sample was transported under cold conditions to the laboratory using validated coolers and temperature monitors (TempTale 4, Sensitech).

| Reference # | Identification | Lot Number | Purity | Stability | Storage |
|---|---|---|---|---|---|
| 1 | GT's Gingerade (Ginger flavor) | 2621*C4B, Covance sample 4814442 | "non-alcoholic", ethanol content not labeled, product previously tested to contain >1.0% ethanol | Tested on or before expiration date (March 25, 2016) | In a chamber set to maintain 5 ±3 deg C. |

5

**Test sample stability**

The commercial kombucha sample was kept under refrigerated temperatures in an unopened bottle with an intact manufacturer's seal, prior to testing before "expiration/best by" date. Preliminary studies on commercial spiked samples suggested that ethanol had acceptable recovery after spiking, handling and transportation (see Supplementary Data).

**Control Kombucha**: An ethanol-free reference sample of control kombucha was analyzed for nutritional composition. See below table.

| Nutritional Composition (per 8 oz serving) | Label: GT's Gingerade | Result: GT's Gingerade | Result: Control Kombucha (Ref #3) |
|---|---|---|---|
| **Ethanol** | "This product contains a trace amount of ethanol." | 1.61% | <0.015% |
| **Specific gravity (g/mL) @ 20C** | not listed | 1.02% | 1.00% |
| **Moisture (%)** | not listed | 96.5 | 97.1 |
| **Calories** | 30 | 33 | 27 |
| **Calories from Fat** | 0 | <2.4 | <2.4 |
| **Cholesterol (mg/g)** | 0 | <0.24 | <0.24 |
| **Carbohydrates (g)** | 7 | 7.8 | 6.4 |
| **Total Sugar (g)** | 2 | 7.8 | 5.4 |
| **Sucrose (g)** | not listed | 0.5 | 5.4 |
| **Glucose (g)** | not listed | 2.8 | <0.1% |
| **Fructose (g)** | not listed | 4.5 | <0.1% |
| **Protein (g)** | 0 | 0.4 | 0.4 |
| **Vitamin C (mg/g)** | not listed | <1.0 | <1.0 |
| **Vitamin A (IU/g)** | not listed | <1 | <1 |
| **Calcium (mg)** | not listed | 1 | 20 |
| **Iron (mg)** | not listed | <0.2 | <0.2 |
| **Sodium (mg)** | 10 | 6 | 38 |
| **Acetic acid (mg)** | 15 | 608 | 1225 |
| **Citric acid (mg)** | not listed | 213 | <118 |

6

**Storage, Processing and Transportation Conditions**

**Commercial Kombucha:**
1. Samples were purchased by NaturPro Scientific at grocery stores in Carmel, Indiana in February 2016.
2. All temperatures starting with the store shelf to lab storage were recorded with time-stamped photographs of infrared thermometer readings of samples.
3. After purchase, samples were transferred from refrigerator shelf to PolarTech validated insulated carton shipper with 1.5" thick refrigerant packs, and temperature monitors TempTale 4, Sensitech)
4. The shippers were sealed immediately after purchase and transported overnight by FedEx to the laboratory in a box marked "Please refrigerate upon receipt". Labs were notified of storage requirements before receiving.
5. The laboratory storage chamber was set to maintain 5±3° C.
6. During sample processing, the laboratory was requested to not permit samples to remain outside of refrigerated conditions for more than two hours.
7. During sample processing, kombucha materials were transferred based on weight, not volume, to account for dissolved gases.

**Reference Standard Materials:**

**Standard preparation**

See below table. The internal standard 1-propanol (Reference #2) was used as an internal standard, since it is commonly used for analysis of residual solvents like ethanol in food, beverages and biological fluids like blood. 1-Propanol was spiked into the commercial kombucha sample (Ref #1), and separately into the standard solution (Lab-grade water spiked with Ref #4) at the same concentration. The area response ratio of the ethanol to the 1-propanol was used to normalize changes in injection volumes or detector response over time.

Before preparation, commercial and control kombucha reference samples (#1 and 3) were allowed to warm to room temperature in ambient conditions before opening. The samples were then weighed and transferred to headspace vials or dilution glassware. Specific gravity was measured from a separate aliquot of the same sample.

To prepare spiked samples, pure ethanol was transferred volumetrically by the lab into a pre-weighed amount of kombucha reference sample.

Certified Reference Materials (Ref# 7, 8 and 9) were tested by the lab with the expected (certified) content blinded to the lab. Samples (intact glass ampoules) were received by NaturPro from the certifying agency (LGC, Cerilliant or NIST). Labels were removed from the ampoules and attached into the lab notebook. Unique identifier codes concealing the certifier code were assigned to the samples, to blind the laboratory to the expected amount.

**Standard stability**

Calibration standards prepared by the lab from dilutions of ethanol in water for calibration wereused on the date of preparation only, based on standard laboratory procedure. Stability of other reference standards was based

7

on manufacturer's COA or label information.  Stability of non-lab spiked samples was not tested since all samples were kept refrigerated, and were tested within one week of preparation.

Preliminary studies on control and commercial kombucha samples (Ref #5 spiked into Ref #3, blinded by NaturPro) showed that ethanol had acceptable recovery after spiking, transportation and resampling into another container (See Supplementary Data).

**Reference Standard Materials:**

The following reference materials were used in the study.

| Reference # | Identification | Lot Number | Purity | Stability | Storage |
|---|---|---|---|---|---|
| 2 | 1-Propanol, Sigma #34871 | SHBF0634V | 99.98% | July 2018 | Not specified |
| 3 | Control Kombucha (KeVita Inc) (ethanol-free, non-carbonated) | 01206-1, Covance sample 4814443 | <0.015% ethanol.  Total acids 1.15%, Brix 3.0, pH 3.0 as per manufacturer. | Not specified | In a chamber set to maintain 5 ±3 deg C. |
| 4 | Ethanol (Reference standard, absolute (200 proof), Sigma-Aldrich # 459836) | SHBG7349V | 99.97% | Not specified | Closed original container, room temp |
| 5 | Ethanol (Reference standard, absolute (200 proof), Sigma-Aldrich # 459836) | SHBG4976V | >99.5% | Not specified | Closed original container, room temp |
| 6 | Ethanol-water Certified Reference Material, NIST # 2894 | Not applicable | 0.10084% ±0.00083% certified mass fraction | valid until 30 April 2023 | Refrigerate (do not freeze) |

8

| 7 | Ethanol-water Certified Reference Material, Cerilliant E-031 | FN06181501, | 100 mg/dL, (0.1267% ABV @ 20C) | exp June 2020 | Refrigerate (do not freeze) |
|---|---|---|---|---|---|
| 8 | Beer Certified Reference Material, LGC BCR-651 | 000149, 000150, 000189, 000191 | 0.505 +/- 0.006 % ABV | valid until April 1, 2017 | Approx 4 deg C. Room temp before opening. Do not freeze. |
| 9 | Ethanol-water Certified Reference Material, NIST 2897a | Not applicable | 2% nominal mass fraction (2.53% +/- | | Refrigerate (do not freeze) |

## Calculations

A calibration curve was generated based on the response ratio of ethanol and the internal standard. The level of ethanol in the matrix was determined by calculating the response ratio of ethanol to the internal standard, then back-calculating from the calibration curve the concentration of the alcohol in the headspace that was analyzed. Then, dividing that result by the sample mass and multiplying by the final volume gave the result in the sample as provided.

Analyte (ug/g) = C x V / m

Analyte (% ABV) = Analyte (ug/g) x SG(E) / SG(K) / 10,000

**where:**

C = concentration from calibration curve (ug/mL)
V = final volume (mL)
m = sample mass (g)
SG(E) = specific gravity of ethanol (0.789 @ 20°C)
SG(K) = specific gravity of kombucha (1.02 @ 20°C)

References certified by mass fraction were converted to % ABV using the specific gravity of ethanol at 20°C of 0.789 g/mL.

## System Suitability

9

## Quality Assurance

Blanks were injected after the standards at the beginning of the sequence to assess analyte carry-over within the instrument. Recovery samples were prepared on at least 10% of all samples in a batch by spiking a sample with a known volume of stock standard. Duplicates were run at the discretion of the analyst.

This work was performed in compliance with Covance standard operating procedures (SOPs) and general documentation requirements of ISO 17025. Although method validations do not fall under the scope of Good Laboratory Practice (GLPs), GLP's were used as guidance where necessary and practical. In many cases, this study sought to meet many of the testing validation requirements under GLP's and AOAC guidances.

## Acceptance criteria

90-110% recovery was required for this study, based on the limits specified in the AOAC SMPR. The minimum requirements for routine use of the method include three standard points with concentrations bracketing the expected sample concentration, and correlation coefficient greater than or equal to 0.99. In this study, calibration curves with at least six different concentrations (excluding the blank) were analyzed at the beginning of each validation analysis run except on Day 1, where calibration samples were evenly interspersed throughout the run.

## Method references

Anthony, Sutheimer and Sunshine, <u>Acetaldehyde, Methanol and Ethanol Analysis by Headspace Gas Chromatography</u>, Journal of Analytical Toxicology, Vol 4, Number 1, January 1980 43-45

AOAC Guidelines for Single Laboratory Validation of Chemical Methods for Dietary Supplements and Botanicals

AOAC Standard Method Performance Requirements, 2012

## Procedure and Results

Procedures followed many of the AOAC guidelines for single laboratory validation. Two different technicians on two different instruments on two different days evaluated the same sets of samples for precision, accuracy and reliability, as well as repeatability and reproducibility in a separate lab.

## Identity of Ethanol

The identity of the ethanol was confirmed. The retention time of reference standards agreed with method requirements, with ethanol eluting at approximately 8.5 minutes and 1-propanol eluting at 12.3 minutes.

## Specificity

Specificity was found to be acceptable based on the following.
- An injection of 1-propanol as internal standard (Ref #2) was run with every ethanol spike. Relative retention times and AUC between ethanol and 1-propanol remained stable during the study.
- Routine blanks were run on each day and after calibration runs to ensure no carryover.

10

- An ethanol-free control kombucha  (Ref #3) was also analyzed for absence of ethanol, and lack of interference.  On one run, three replicates of the control kombucha were analyzed by GC-FID and found to contain no detectable ethanol.

No interfering peaks were found in any of the analyses (See Figure 1, Chromatograms)

## Limit of Detection (LOD)

The LOD was defined as the concentration of the lowest working standard with a signal-to-noise ratio equal to or exceeding 10:1.  Therefore, the LOD was determined to be 0.0150% ABV.

## Limit of Quantitation (LOQ)

The LOQ for this method was previously defined as 10 ppm.  Since determining a LOD of 10ppm required a relatively higher sample mass, and the analytical range of interest for kombucha was 0.1-3% ABV. The LOQ was considered to be 0.0150% ABV for this study, the same as the LOD.

## Linearity

In this study, calibration curves with at least six different concentrations of ethanol (Reference #4) in aqueous (purified water) standards were analyzed at the beginning of each analysis run, with the exception of Day 1.

On Day 1, a single set of standards were interspersed evenly throughout the analytical run to control for potential replicate error.  A minimum of two standard points at each concentration were analyzed for every run.

The linearity of the interspersed and consecutive standards had an acceptable linear regression (r > 0.9996). The method was acceptable since the standard curve had a correlation coefficient (r) of greater than or equal to 0.995 and the individual back-calculated standard concentrations were within ±15% (±20% for LOQ) of nominal.  All samples were diluted within the range of the standard curve.  See Table 1 for results.

## Precision

Precision was determined by analyzing six replicates of one lot of GT's Gingerade commercial kombucha (Ref #1) over a minimum of two days, including one day with a second analyst on a different instrument using a different type of headspace vial (12 total replicates).

The method was considered acceptable since the mean concentration of each day had a relative standard deviation (RSD) of less than or equal to 4%.  Method reproducibility for this method was below the 6% established under the AOAC SMPR's for ethanol in kombucha.  See Table 2.

## Accuracy

Accuracy was determined by testing duplicates at each of three spike levels of pure ethanol (Reference #4 spiked into control kombucha (Reference #3) over three days (totaling 18 total replicates).  The spike levels were 0.13, 1.3, and 3.3% ABV.

Percent recovery ranged from 98.3 to 104.2%. The accuracy was considered acceptable since the means of each spike level were between 90% to 110%.  This method is accurate for the quantification of ethanol in kombucha at concentrations between 0.13 to 3.3% ABV. See Table 3.

11

## Change of vial type

Aside from different operators and instruments from Day 1 to Day 2, the only other difference in experimental conditions was the type of headspace vial used. The headspace vial is important in order to ensure proper partitioning into the headspace occurs with no leakage.

Screw cap vials used during routine testing were used on Day 1, and crimp cap vials were utilized on Day 2. The purpose of using different vials was to determine whether the type of headspace vial used led to any differences in results. No discernible differences in interday means was found, although the precision from using the crimp cap was lower than the precision using the screw cap.

## Certified Reference Material (CRM) evaluation

Although it was not required by the SLV protocol, testing of certified reference materials (ethanol-water, Ref #6) was initiated by the lab, and performed on Day 1 and Day 2. Percent recovery ranged from 97.1 to 99.2%. See Table 4.

Additional testing of CRM's (Reference #7, 8 and 9) was initiated by NaturPro Scientific (NP) to enable proper lab blinding of expected concentrations (See Table 5). NP sent five samples of each reference via priority overnight shipping according to the following plan: one unopened glass ampoule, and four additional 1mL vials that were relabeled in sequential order, and coded to conceal the certified concentration of ethanol. Resampling into vials was used to determine if an additional handling step impacted the accuracy of the method. After results were reported, the certified purity of the samples were reported by NP to the lab to contain 0.13% ABV (ethanol-water, Cerilliant), 0.505% ABV (beer, LGC) and 2.53% ABV (ethanol-water, NIST). References certified by mass fraction were converted to % ABV using the specific gravity of ethanol at 20 degrees Celsius of 0.789 g/mL.

Recovery of ethanol from all spiked samples was found to be acceptable. For the unopened ampoules, recovery was 101, 104, and 102% for Ref # 7, 8 and 9, respectively. Including only the resampled CRM's, the recovery and %RSD was 91% and 5% for Ref #8 and 94% and 4% for Ref #9. Including all CRM (unopened plus resampled) the recovery and %RSD was 94% and 7% for Ref #8 and 95% and 5% for Ref #9. These were all considered acceptable since average recovery was between 90 and 110% and % RSD values were roughly similar to those established by AOAC Method Performance Requirements

## Statistical evaluation

Quantitation was performed using a 6-point calibration curve generated by a weighted (1/concentration) least squares linear regression analysis. Other statistical tools used include percent recovery, standard deviation (SD), intraday percent relative SD (Repeatability RSD, (RSD(r)), and percent relative SD (Reproducibility RSD, RSD(R)).

## Control of bias

All samples were treated in a similar manner during analysis to minimize assay bias. All samples were stored and processed according to NaturPro instructions.

12

Blake Ebersole, President of NaturPro Scientific LLC, an independent consulting firm, designed and commissioned the study, purchased and transported samples, interpreted all results, and generated reports. No restrictions on data publication or other conflicts of interest exist. This study had financial support from KeVita Inc. NaturPro has no financial interest or ownership of KeVita or vice versa. KeVita had no influence on study execution, analysis or reporting.

13

APPENDIX

**Table 1**
**Linearity**
(From Calibration Curve Dilutions of Reference #3)

| Day | Correlation Coefficient (r) |
|-----|:---------------------------:|
| 1 | 0.999999 |
| 2 | 0.999967 |
| 3 | 0.999722 |

14

**Table 2**

**Precision** (Reference #1, GT's Gingerade)

| | Results (%ABV) |
|---|---|
| Replicate | **Day 1** |
| 1 | 1.5860 |
| 2 | 1.5885 |
| 3 | 1.5937 |
| 4 | 1.6154 |
| 5 | 1.5967 |
| 6 | 1.6102 |
| Mean | 1.60 |
| SD | 0.119 |
| RSD(r) (%) | 0.743 |

| | **Day 2** |
|---|---|
| 1 | 1.6830 |
| 2 | 1.6048 |
| 3 | 1.4589 |
| 4 | 1.6444 |
| 5 | 1.6345 |
| 6 | 1.7181 |
| Mean | 1.62 |
| SD | 0.0900 |
| RSD(r) (%) | 5.542 |

| | |
|---|---|
| Overall Mean | 1.61 |
| Overall SD | 0.0626 |
| **Overall RSD RSD(R) (%)** | **3.888** |

15

Ebersole Decl. - Page 1324

SD  Standard deviation
RSD  Relative standard deviation
RSD(r) Repeatability (same-day RSD)
RSD(R) Reproducibility (intermediate RSD)

<div align="center">

**Table 3**
**Accuracy**
(Spike recovery of Ref #4 into Ref #3)

</div>

| Day | Results | | |
| --- | --- | --- | --- |
| | 0.13% | 1.3% | 3.3% |
| 1 | 98.3 | 99.7 | 99.9 |
| | 99.9 | 99.5 | 99.1 |
| 2 | 99.7 | 99.5 | 98.4 |
| | 100.4 | 99.6 | 99.2 |
| 3 | 103.2 | 100.0 | 102.5 |
| | 96.2 | 104.2 | 103.4 |
| Mean | 99.6 | 100.4 | 100.4 |
| **RSD(R) (%)** | **2.33** | **1.84** | **2.03** |

16

**Table 4**
**Recovery of Certified Reference Material (Reference #6)**
(Lab Unblinded to Certified Concentration)

| Day | Percent Recovery) |
|---|---|
| 1 | 98.0 |
|   | 99.2 |
| 2 | 98.5 |
|   | 97.1 |

**Table 5**
**Recovery of Certified Reference Material (Reference #7, 8 and 9)**
(Lab Blinded to Certified Concentration)

| Ethanol in Kombucha | | | | | | |
|---|---|---|---|---|---|---|
| **Recovery of Ethanol from Certified Reference Materials** | **April 2016** | | | | | |
| **Product** | **Composition** | **Lot#** | **Exp** | **Certified Concentration %ABV** | **Lab Result** | **Percent Recovery** |
| **Certified Reference Material** (Cerilliant E-031) 1.2mL Ampoule **(Ref #7)** | Ethanol-water | FN06181501 (Internal code ending in 06181501) | June 2020 | **0.1267%** +/- 0.0011% | 0.131, 0.127, 0.129, 0.127, 0.126% ABV | **101%** |
| **Certified Reference Material** (LGC BCR-651) 10mL Ampoule **(Ref #8)** | Beer | 000149, 000150, 000189 (Internal code B1-B5) | April 1, 2017 | **0.505%**+/- 0.006% | 0.526, 0.455, 0.490, 0.439, 0.463% ABV | **104%*** |

17

| Certified Reference Material (NIST 2897a) 10mL Ampoule (Ref #9) | Ethanol-water | Not specified (Internal code E1-E5) | April 30, 2025 | 2.53%+/- 0.057% | 2.59, 2.34, 2.50, 2.29, 2.34% ABV | 102%* |
|---|---|---|---|---|---|---|

*Recovery of unopened ampoule. Including resampled vials, Ref #8 recovery was 94% (range 87-104%) and Ref #9 recovery was 95% (range 90-102%)

18

**APPENDIX**

PROTOCOL DEVIATION

| Protocol | Actual Procedure |
|---|---|
| **EXPERIMENTAL DESIGN. Linearity.** The Linearity section of the protocol requires that a standard curve with at least six different concentrations be analyzed at the beginning of each analysis run. | The linearity determination on Day 1 was interspersed throughout the analytical run, and not run simultaneously to control for replicate bias. |

This deviation supports the integrity or quality of the study.

## DISPOSITION OF TEST SAMPLES

Remaining unused test samples, matrices, or reference standards may be kept as retained samples under proper storage conditions by Covance or NaturPro.

## RECORD RETENTION

The raw data, including documentation, study protocol, final report, and study correspondence, resulting from this study will be retained in the Covance archives for at least 1 year from the date of report finalization.

19

**Supplementary Data**


**Multi-Lab Study on Ethanol Content in**
**Commercial Kombucha Samples and Certified Reference Materials**

**Introduction**

A multi-lab study was performed prior to and after method verification of a GC-FID method commonly used for food, beverages and drugs. The study, conducted between December 2015 and April 2016, tested various types of materials (commercial kombucha products, 'placebo' control kombucha reference materials spiked with ethanol, and certified reference materials (CRM).

In this study, 11 lots of commercial kombucha were tested at a total of four laboratories totaling 74 analytical runs. Laboratory #1 tested each sample in duplicate, and Lab #2 and #3 tested each sample once. Lab #4, running NIR alcoholizer and distillation, tested some samples. See data in Table 2 in this Supplementary Data section.

The study was initiated in response to regulatory compliance concerns raised by the kombucha industry and regulators regarding observed alcohol levels above the legal limit, in addition to differences in lab results for ethanol content. Although published validated methods relevant specifically to kombucha are absent, several methods are commonly used based on gas chromatography (GC).

Kombucha tea products contain a number of constituents common with other fermented products, but there are some differences in composition. Many kombucha products claim to contain living micro-organisms called SCOBY (symbiotic community of bacteria and yeast) which appears as solids, part settled sediment and part floating mass (known as the 'mushroom'). In these products, ethanol, carbon dioxide and organic acids are produced and consumed by the SCOBY during fermentation that can continue after bottling. Other ingredients typically found in kombucha include tea (*Camellia spp*), sugars, plant extracts and flavors.

Same-sample results from NIR, distillation and GC-FID suggested a general agreement of the quantifiable ethanol across methods and labs (See Table 2 under Supplementary Data). NIR and distillation could become valid screening or field tests for kombucha products, especially those containing higher amounts of alcohol.

Testing of Certified Reference Materials found recovery for the method used by Lab #1 to be within the AOAC SMPR requirements of 90-110%. Recovery of ethanol in spiked samples was also determined to be within acceptable ranges for the GC-FID method used by Lab #2.

20

**Objectives:**

NaturPro Scientific, LLC (NPS) independently conducted this study, mainly as a preliminary survey of analytical laboratories offering ethanol testing for kombucha. This study was done in advance of laboratory selection for single laboratory validation (SLV) for the quantification of ethanol in kombucha in units of alcohol by volume (% ABV). The following were key objectives of the preliminary study:

- To determine to a preliminary extent whether acceptable precision on same-sample duplicates was reported by labs
- To determine to a preliminary extent if ethanol concentrations above the legal limit of 0.5% ABV in commercial products previously reported by kombucha manufacturers and labs could be independently replicated.
- To determine to a preliminary extent whether further method optimization may be required before performing validation; and to determine an appropriate analytical range for the validation.
- To determine to a preliminary extent whether there may be general agreement in results on the same samples tested by different labs and methods.

After an initial round of testing done in December 2015 to January 2016, spiking studies were conducted in March 2016 to determine whether laboratories were able to accurately recover known amounts of pure ethanol that was added to both commercial kombucha and ethanol-free control kombucha materials at concentrations across the analytical range of kombucha products, generally 0.1 to 3% ABV.

to a preliminary extent.

**Methods:**

**Preliminary study**

Analytical methods for ethanol quantification were reviewed. Specifically, GC-FID was considered generally robust and appropriate. GC-MS was also selected due to its ability to measure ethanol and use in environmental monitoring. Lab selection for testing of commercial materials was based on an initial survey of laboratories offering kombucha ethanol testing.

Analysis of test and control samples were conducted by the select labs using multiple methods. With the exception of the spiked samples, all samples were purchased and sent in unopened bottles with original seals. All samples were tested before their expiration date. All samples were purchased, transported and stored in cold conditions using validated cold-transport shippers (Polartech). A temperature monitor (TempTale 4, Sensitech) recorded changes in temperature during shipping. All samples were sent overnight and received by the lab the following day. Temperatures of samples did not exceed general limits set for cold storage of refrigerated/perishable samples. A list of samples is found in Table 2 (Supp).

The headspace GC-FID method used by Laboratory #1 (Covance, Madison, WI) is detailed in the section previous to this section. A GC-MS method used by Covance was also employed.

The GC-FID method used by Laboratory #2 (ETS Laboratories, St. Helena, CA) is commonly used for testing alcohol in beer, wine and vinegar. The laboratory references AOAC 983.13, Final Action 1988, JAOAC 66, 1152 (1983). The reference standard cited is 99.5% ACS reagent grade (Sigma).

The GC-MS method used by Laboratory #3 (Cornerstone Laboratories, Memphis, TN) is used for EPA testing of a panel of hazardous waste contaminants at trace levels, including ethanol. The laboratory references the

21

following methods: EPA Headspace Method 5030B, EPA Method 624 Purgeables, Part 136, Title 40 and EPA Method 8260B, SW-846.

| Lab # | Instrument | Method Reference |
|---|---|---|
| 1 (Covance) | GC-FID Headspace and GC-MS Headspace | MP-ETME (Anthony et al JAT 1980, AOAC , GC-FID); RESO (GC-MS) |
| 2 (ETS) | GC-FID Headspace | AOAC 983.13 (GC-FID) |
| 3 (Cornerstone) | GC-MS Headspace | EPA 624 Part 136, Title 40, EPA 8260B, SW-846 |
| 4 (BDAS) | Distillation and NIR | Traditional; TTB |

**Data Analysis**
Appropriate statistical analysis were conducted with Microsoft Excel to include mean and relative standard deviation. All labs reported results in % alcohol by volume (ABV) except for Lab #1 reporting in ABW. For this lab, ABW was converted to ABV assuming a specific gravity of 1.00 g/mL across all products, based on measured range of specific gravity of 1.00-1.02 g/mL at 20° Celsius measured for various kombucha products. With respect to the overall findings, small potential variations in specific gravity did not impact overall results

**Data Management**
All reports of raw data are on file and available on request.

**Materials selection:**
Materials were selected from an initial survey of six retail locations in Carmel, Indiana. Multiple flavors from multiple manufacturers were selected.

**Commercial Kombucha Handling Precautions:**
1. Samples purchased by NaturPro at grocery stores in Carmel, Indiana in December 2015 to March 2016
2. All temperatures starting with the store shelf to lab storage were recorded with time-stamped photographs of infrared thermometer readings of samples
3. After purchase, samples were transferred from refrigerator shelf to PolarTech validated insulated carton shipper with 1.5" thick refrigerant packs, and temperature monitors TempTale 4, Sensitech)
4. The shippers were sealed immediately after purchase and transported overnight by FedEx to the laboratory in a box marked "Please refrigerate upon receipt". Labs were notified of storage requirements before receiving.
5. The laboratory storage chamber was set to maintain 5±3deg C.
6. During sample processing, the laboratory was requested to not permit samples to remain outside of refrigerated conditions for more than two hours.

22

7. During sample processing, kombucha materials were transferred based on weight, not volume, to account for dissolved gases.

Samples were shipped via priority overnight with instructions to refrigerate samples (do not freeze).

**Reference Standard Materials:**

The following reference samples were used in the study:

| Reference # | Identification | Lot Number | Purity | Stability | Storage |
|---|---|---|---|---|---|
| 2 | 1-Propanol, Sigma #34871 | SHBF0634V | 99.98% | July 2018 | Not specified |
| 3 | Control Kombucha (KeVitaInc) (ethanol-free, non-carbonated) | 01206-1, Covance sample 4814443 | <0.015% ethanol. Total acids 1.15%, Brix 3.0, pH 3.0 as per manufacturer. | Not specified | In a chamber set to maintain 5 ±3 deg C. |
| 4 | Ethanol (Reference standard, 200 proof, Sigma-Aldrich # 459836) | SHBG7349V | 99.97% | Not specified | Closed original container, room temp |
| 5 | Ethanol (Reference standard, 200 proof, Sigma-Aldrich # 459836) | SHBG4976V | >99.5% | Not specified | Closed original container, room temp |
| 6 | Ethanol-water Certified Reference Material, NIST # 2894 | — | 0.10084% ±0.00083% certified mass fraction | valid until 30 April 2023 | Refrigerate (do not freeze) |
| 7 | Ethanol-water Certified Reference Material, Cerilliant E-031 | FN06181501, | 100 mg/dL, (0.1267% ABV @ 20C) | exp June 2020 | Refrigerate (do not freeze) |

23

Ebersole Decl. - Page 1332

| 8 | Beer Certified Reference Material, LGC BCR-651 | 000149, 000150, 000189, 000191 | 0.505 +/- 0.006 % ABV | valid until April 1, 2017 | Approx 4 deg C. Room temp before opening. Do not freeze. |
| 9 | Ethanol-water Certified Reference Material, NIST 2897a | — | 2% nominal mass fraction (2.53% +/- | | Refrigerate (do not freeze) |

**Spiked Reference Materials**

A composite of three lots of ginger-flavored kombucha (same product used for the SLV) expiring within the same two days (March 25-26) was removed from refrigeration and immediately inverted gently 10 times to disperse solids, allowed to settle for a few seconds, and then opened. The compositing procedure was intended to correct for intermediate manufacturing and storage differences that might be expected to cause differences among same-product composition.  Equal amounts of each bottle were slowly poured into a 1000mL glass beaker which was gently swirled to mix. Then, 100mL kombucha was slowly drawn into a 100mL volumetric pipet (Wilmad).  Spiked samples of 0, 250 and 500 microliters of ethanol (200 proof, Sigma (Ref#4) was slowly dispensed into each beaker using ScilogixMicropette certified accurate within the nearest 0.23%. These samples were gently swirled for ten seconds, and then each poured into 15mL glass vials with screw cap foil seals.  The samples were then immediately stored in the refrigerator.

A control kombucha (Ref #3) confirmed ethanol-free (<0.015% ABV) donated by KeVita Inc. was spiked with 0, 500 and 1500 microliters of ethanol per 100mL kombucha, using the same method just described.

**Certified Reference Material testing**

Testing of CRM's (Reference #7, 8 and 9) was performed. For Reference #7, five unopened glass vials containing 0.1267 +/- 0.0011% ABV (certified by Cerilliant) were sent to each lab.

For References #8 and #9, five samples of each reference (except four for Lab #2) were prepared according to the following plan: one unopened glass ampoule, and an additional ampoule opened at room temperature and immediately poured into four 1mL amber glass vials and sealed with standard screw caps.

All samples were relabeled in sequential order with codes (E1-E5, B1-B5) to conceal the certified expected value of ethanol.  All vials were filled approximately 4mm from the lip of the vial, to allow for some headspace. The transfer into new vials, the relatively small (~1mL) sample size, and the headspace were added as potential confounders to results.  This resampling procedure was intended to determine whether transfer to another container before shipping resulted in recoveries different than for the unopened ampoule.

Samples were shipped via priority overnight with instructions to refrigerate samples (do not freeze).

**<u>Results</u>**

24

## Certified Reference Material (CRM) Evaluation

Testing of Certified Reference Materials found method recovery from Covance (Lab #1) to be within the requirements of 90-110%.

Additional testing of CRM's (Reference #7, 8 and 9) at three labs, including the verification lab, was initiated by NaturPro (See Table 1 (Supp)). NaturPro sent five samples of each reference to Lab #1 and #3, and four to Lab #2 via priority overnight shipping according to the following plan: one unopened glass ampoule, and four (or three for Lab #2) additional 1mL vials. All samples were relabeled in sequential order and coded to conceal the certified concentration of ethanol. Resampling into vials was performed to determine if an additional sample transfer step impacted the accuracy of the method.

After results were reported, the certified purity of the samples were reported by NaturPro to the labs to contain 0.13% ABV (ethanol-water, Cerilliant), 0.505% ABV (beer, LGC) and 2.53% ABV (ethanol-water, NIST). (References certified by mass fraction were converted to % ABV using the specific gravity of ethanol at 20° Celsius of 0.789 g/mL.)

All recovery values for the CRMs were found to be within acceptable ranges. For Lab #1, the recovery from unopened ampoules was 101, 104, and 102% for Ref # 7, 8 and 9, respectively. The recovery and %RSD of only resampled CRMs was 91% and 5% for Ref #8 and 94% and 4% for Ref #9. Recovery and %RSD of all CRM (unopened and resampled) was 94% and 7% for Ref #8 and 95% and 5% for Ref #9. These were all considered acceptable since average recovery was between 90 and 110%, and % RSD values were roughly similar to those established by AOAC Method Performance Requirements.

Lab #2 reported 0.11, 0.11, 0.11, 0.11, and 0.11% on unopened ampoules of Ref #7, certified to contain 0.127% ABV. Due to the reporting of the same replicated value to two significant figures, no statistical analysis was done. Including all of the same CRM (unopened plus resampled) the recovery and %RSD was 93% and 2% for Ref #8 and 98% and 2% for Ref #9. These were all considered acceptable since average recovery was between 90 and 110%, and % RSD values were below those established by AOAC SMPR.

Lab #3 reported an average recovery of 96% with an RSD of 9% for Ref #7. Lab #3 reported a wide range of conflicting values for certified references Ref# 8 and Ref #9 which was not resolved with retesting. The results for these samples is not contained in this report.

### Table 1 (Supp). Recovery of Certified Reference Material
(Reference #7, 8 and 9) with Labs Blinded to Certified Concentration

| Product | Composition | Lot# | Expiry Date | Certified %ABV | Lab #1 (GC-FID) (Validated method) | Lab #2 (GC-FID | Lab #3 (GC-MS) |
|---|---|---|---|---|---|---|---|
| Certified Reference Material (Cerilliant E-031) Ampoule | Ethanol-water | FN06181501 | June 2020 | **0.1267%**+/- 0.0011% | 0.131, 0.127, 0.129, 0.127, 0.126% | 0.11, 0.11, 0.11, 0.11, 0.11% | 0.120, 0.140, 0.120, 0.115, 0.115% |

25

Ebersole Decl. - Page 1334

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Certified Reference Material (LGC BCR-651) Ampoule | Beer | 000149, 000150, 000189, 000191 | April 1, 2017 | **0.505 %**+/-0.006 % | 0.526, 0.455, 0.490, 0.439, 0.463% | 0.48, 0.47, 0.47, 0.46 % | FAIL |
| Certified Reference Material (NIST 2897a) Ampoule | Ethanol-water | Not specified | April 30, 2025 | **2.53 %**+/-0.057 % | 2.59, 2.34, 2.50, 2.29, 2.34% | 2.53, 2.45, 2.53, 2.49% | FAIL |

## Commercial Sample Evaluation and Spiking Studies

### Laboratory selection for SLV

See Table 2 in Supplementary Data (below). Results reported by Lab #1 using GC-FID method MP-ETME on duplicates of commercial samples indicated a high precision. Acceptable recovery of spiked 'control' kombucha samples indicate accuracy of the method. Based on these initial indicators of reliability, the lab's routine use of this method for the past several years, and previous verifications conducted with this method on other matrices, this method and lab was selected to undergo further study of the method without further optimization required.

### Estimated content of commercial samples

Several samples of commercial kombucha samples tested contained greater than 1% alcohol by volume (ABV), consistent with previous laboratory and manufacturer reports. The ethanol content of commercial kombucha samples reported using the GC-FID method was 0.114% to 1.46% ABV.  All samples were confirmed to meet all storage requirements, specifically cold chain control throughout the sampling process.  All samples were tested before the expiration date marked on the bottle.

### Inter-lab agreement on same-lot samples

Lab #1 running GC-FID and GC-MS, and Lab #2 running GC-FID reported generally consistent results on same-lot samples. On control kombucha spike recovery samples, Lab #1 and #2 both using GC-FID reported acceptable recoveries. Lab #3 recovered levels lower than the expected amount in spiked reference samples, and did not recover the certified amount of ethanol in the samples. Therefore, data from lab #3 is not reported here.

**Table 2 (Supp). Analysis and Recovery of Ethanol from Commercial and Reference Materials**
(Reference #7, 8 and 9) with Labs Blinded to Certified Concentration

| Ethanol in Kombucha | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Results from Pre-validation Study | | | | Mar 1 | Dec 15 | Dec 15 | Mar 1 | Jan 11 | Jan 11 |

26

| Product | Lot# | Expiry/Best by | Expected Value from Spike | Lab #1 (GC-FID) | Lab #1 (GC-FID) | Lab #1 (GC-MS) | Lab #2 (GC-FID) | Lab #4 NIR Alcoholizer | Lab #4 Distillation |
|---|---|---|---|---|---|---|---|---|---|
| GT Gingerade | 1831**BBB | 1/17/16 | NA | | 1.45, 1.46% | 1.42%, 1.38 | | | |
| GT Original | 2230**D2B | 1/20/16 | NA | | 1.34, 1.36% | 1.41%, 1.45% | | | |
| GT Citrus | 1831**B7B | 1/17/16 | NA | | | | | 1.36% | 1.27% |
| GT Trilogy | 0232C*A7B | 1/31/16 | NA | | | | | 1.51% | |
| Commercial kombucha | 5/23/16-8 | 5/23/16 | NA | | | | | | |
| Commercial kombucha | 5370606 | 4/30/16 | NA | | 1.23, 1.21% | 1.21, 1.19% | | | |
| Commercial kombucha | FEB2016L112 | 2/1/16 | NA | | | | | 0.11% | 0.08% |
| Commercial kombucha | MAR2716E306 | 3/27/16 | NA | | 0.263, 0.253% | 0.275, 0.271% | | | |
| Commercial kombucha | APR2016L351 | 4/20/16 | NA | | 0.236, 0.232% | 0.251, 0.244% | | | |
| Commercial kombucha | 2621**C4B | 3/25/16 | NA | **1.61%** | | | 1.44% | | |
| Spiked Commercial kombucha* | 02292B | 3/25/2016 | | **1.432%** | | | 1.37% | | |
| Spiked Commercial kombucha | 02292A | 3/25/2016 | 1.68%* | **1.658%** | | | 1.61% | | |
| Spiked Commercial kombucha | 02292C | 3/25/2016 | 1.93%* | **1.922%** | | | 1.86% | | |
| Control (ethanol-free kombucha) | 02291A | NA | 0% | **<0.015%** | | | <0.05% | | |
| Control (ethanol-free kombucha) | 02291C | NA | 0.500% | **0.692%** | | | | | |
| Control (ethanol-free kombucha) | 02291B | NA | 1.500% | **1.47%** | | | 1.43% | | |

*Baseline for spike addition of 0.250 or 0.500% to the unspiked sample, Lot 02292B (1.432%)
Data points combined in the same cell are split duplicated of the same sample.

27

Ebersole Decl. - Page 1336

Case 2:19-cv-00928-BHMCGDSIR Document20-1 Filed 18/27/19 Page 888 of 1032 Page ID #:4234
Case 2:17-cv-07533-PMG-GJS Document 150-3 Filed 10/15/19 Page 282 of 299 Page ID #:328

Blank cells = not tested

Ebersole Decl. - Page 1337

# EXHIBIT 6

ResearchGate

See discussions, stats, and author profiles for this publication at: https://www.researchgate.net/publication/314074199

# Analysis of Sugars in Kombucha Tea by High Performance Liquid Chromatography

**Technical Report** · October 2016

DOI: 10.13140/RG.2.2.24141.23522

CITATIONS
0

READS
1,116

1 author:

Blake Ebersole
NaturPro Scientific LLC
**13** PUBLICATIONS   **14** CITATIONS

SEE PROFILE

Some of the authors of this publication are also working on these related projects:

Good manufacturing practices for botanicals used for medicinal purposes View project

Chemical analysis and quality control parameters for kombucha tea View project

All content following this page was uploaded by Blake Ebersole on 26 February 2017.

The user has requested enhancement of the downloaded file.

Ebersole Decl. - Page 1339

# Analysis of Sugars in Kombucha Tea
# by High Performance Liquid Chromatography

**Blake Ebersole**

President, NaturPro Scientific, LLC

blake@npscientific.com

October 31, 2016

## INTRODUCTION

Kombucha is defined as a beverage resulting from the fermentation of tea (*Camellia sinensis*) leaves, sugar and other ingredients. The kombucha fermentation culture is known as SCOBY, short for "symbiotic culture of bacteria and yeast". During fermentation, sugar is consumed by the culture, which produces ethanol, organic acids and carbon dioxide.

During a previous study which analyzed the ethanol content of various kombucha products, the sugar content was found to be higher than the expected value listed on the product label. This study was conducted to determine to a preliminary extent the amount of total sugars in kombucha products commonly sold by retailers in the U.S.

## METHODS

In the study, 88 bottles of commercial kombucha from eight manufacturers were tested using established HPLC methods for total sugars in foods.

| Laboratory | Method Cited | Number of Samples |
|:---:|:---:|:---:|
| 1 | AOAC 982.14 | 59 |
| 2 | AOAC 980.13 | 26 |
| 3 | AOAC 977.20 | 3 |
| | TOTAL | 88 |

HPLC methods were selected that were referenced to AOAC Official Methods commonly used for complex food mixtures. For all methods, total sugars were calculated as the sum of glucose, fructose, sucrose, lactose and maltose. Three nutritional chemistry laboratories in the U.S. owned by firms with total estimated market cap of $45 billion were used for the analysis. Laboratories were selected based on expertise with food analysis and participation in developing standard methods for sugars in foods and beverages. Multiple laboratories were employed in order to determine potential differences between labs.

Methods were selected from Official Methods of Analysis from AOAC International. The primary differences among the methods were the extraction and filtration steps used to remove potential interferences such as fats, fiber and proteins. AOAC 982.14 was developed for analysis of sugars in pre-sweetened cereals, and includes extraction and filtration steps. AOAC 977.20 is intended for separation of sugars in honey, and includes only filtration of the sample prior to analysis. AOAC 980.13 is intended for the analysis of sugars in milk chocolate, and also involves extraction and filtration steps to remove potential interferences. All labs were blinded to each other's methods and results prior to analysis.

2

Ebersole Decl. - Page 1341

Sugar alcohols were also screened in manufacturer products using USDA and AOAC methods.

Materials selection was based on an informal survey of manufacturers and products available at regional or national chain retailers in Carmel, Indiana. Products which contained higher levels of sugars than expected in the first round of testing were selected to undergo additional testing at multiple laboratories. The products studied in the additional testing were obtained from different retail locations in Indiana, California, Colorado, Pennsylvania and Florida within 100 miles of a major metropolitan area. One objective of materials and laboratory selection was to minimize the possibility that differences among laboratory test methods or retailer distribution and storage practices could impact study findings.

All samples were purchased and tested before the expiration date listed on product labels. All samples were verified to be purchased and stored under refrigerated conditions from time of purchase, with the manufacturer's seal kept intact until broken by the laboratory. Laboratories were instructed to store all samples under refrigeration. During sample processing, the laboratory was requested to not permit samples to remain outside of refrigerated conditions for more than two hours.

Data shown is presented in grams of total sugars per 8 fl. oz serving. The serving size of all products tested was 8 fl. oz.

Statistical analysis (mean, standard deviation and Wilcoxon signed-rank test (two-tailed)) were performed using Microsoft Excel and NCSS 11. Expected values for each product were taken as the label claim for sugars listed in the Nutrition Facts panel. Where applicable, the study criteria for meeting the expected value included a tolerance no greater than 20% above label claim. Data from two samples from two additional manufacturers is listed in the data table, but was excluded from manufacturer-specific statistical analysis (Tables 1 and 2) due to n=1 for each.

Sugars were reported by laboratories in percentage values or grams per 8 oz. serving. All laboratory results are reported with the same number of significant figures listed in laboratory reports. Original laboratory reports are available on request.

**RESULTS**

All sample handling instructions were confirmed by the laboratories, and all analyses were confirmed to meet laboratory system suitability requirements.

The range of differences for laboratory values was between -18% and 450% greater than the expected values listed on the product label (See Data Table in Appendix). Products from five out of eight manufacturers contained higher levels of sugars than expected, with products from two manufacturers containing an average of 291% and 311% more sugars than the expected value (Table 1).

3



**Figure 1. Distribution of difference between expected and laboratory value for total sugars in 88 commercial kombucha samples.** Percent difference was calculated for each sample for laboratory value over the expected value. Each bar on x-axis represents one sample.

Laboratory values were compared to expected values after grouping by manufacturer (Table 1). For all manufacturers, a range of 6.7-13.0 grams of sugars per serving was found. Samples made by Manufacturers A and B had the largest discrepancies, with sugar content 311% and 291% higher than the expected value, respectively.

| Manufacturer | Expected Value | | Laboratory Value | | | Mean % Above Expected | p-value |
|---|---|---|---|---|---|---|---|
| (sample size) | Mean | S.D. | Mean | S.D. | Range | % | |
| A (31) | 2.3 | 0.7 | 8.8 | 1.0 | 6.7-11 | 311% | <0.001 |
| B (21) | 2.4 | 0.5 | 9.3 | 1.3 | 6.9-11 | 291% | <0.001 |
| C (11) | 7.3 | 0.6 | 9.9 | 1.7 | 7.8-12 | 37% | 0.004 |
| D (9) | 8.0 | 0 | 7.7 | 0.3 | 7.2-8.3 | -4% | 0.03 |
| E (3) | 9.0 | 0 | 7.9 | 0.9 | 7.4-8.9 | -12% | 0.17 |
| F (5) | 5.0 | 0.0 | 8.4 | 0.9 | 7.5-9.4 | 68% | 0.06 |
| G (4) | 4.2 | 1.5 | 9.2 | 0.8 | 8.4-10 | 147% | 0.10 |
| H (2) | 11.0 | 0.0 | 12.5 | 0.7 | 12-13 | 14% | 0.37 |
| **Total (86)** | **4.2** | **2.7** | **9.0** | **1.4** | **6.7-13** | **198%** | **<0.001** |

4

**Table 1. Comparison of expected and laboratory values.** Means and ranges given in grams per serving. Mean difference was calculated as the percent difference of the laboratory value over the expected value. Wilcoxon signed-rank test (two-tailed) was used to determine the p-value between label and laboratory values for kombucha products.

The frequency of meeting expected values for total sugars (no more than 20% above label) per manufacturer was evaluated (Table 2). Four of eight manufacturers reported here had no products meeting expected values for sugars, while three manufacturers met expected values for all products tested. Overall, 26% of all products tested met expected values for total sugars.

| Manufacturer | Met Expected Value | Did Not Meet Expected Value | Total | % Met Expected Value |
|---|---|---|---|---|
| | n | n | n | % |
| A | 0 | 31 | 31 | **0%** |
| B | 0 | 21 | 21 | **0%** |
| C | 4 | 7 | 11 | **36%** |
| D | 9 | 0 | 9 | **100%** |
| E | 3 | 0 | 3 | **100%** |
| F | 0 | 5 | 5 | **0%** |
| G | 0 | 4 | 4 | **0%** |
| H | 2 | 0 | 2 | **100%** |
| **TOTAL** | **18** | **68** | **86** | **26%** |

**Table 2. Frequency of kombucha samples meeting sugars label claim.**
Products meeting/not meeting the expected value were defined as those containing no more than 20% greater sugars than listed on the product label.

Within the study, separate batches of samples from Manufacturer "A" were sent to multiple laboratories at different times. These labs reported similar differences between laboratory and expected values for the products tested (Table 3). Because the laboratories did not test all of the same materials, some differences between lab results was expected. However, both labs independently found the set of samples tested to be significantly above the expected value.

| | n | Expected Value | | Laboratory Value | | Mean % Above Expected | p-value |
|---|---|---|---|---|---|---|---|
| | | Mean | S.D. | Mean | S.D | | |
| Lab #1 | 19 | 2.2 | 0.6 | 9.3 | 0.8 | 337% | 0.0001 |
| Lab #2 | 11 | 2.4 | 0.8 | 7.9 | 1.0 | 262% | 0.004 |
| Lab #3 | 1 | 2 | NA | 9 | NA | 350% | NA |

**Table 3. Comparison of expected and laboratory values** for products from Manufacturer A tested at multiple laboratories using different HPLC methods. Mean difference between expected and laboratory value was

5

calculated as a percentage over label claim. S.D. = standard deviation. NA = not applicable due to insufficient 'n'.

To determine within-lab method precision to a preliminary extent, two bottles of the same manufacturing lot from seven kombucha products were analyzed for sugars by two labs (Table 4). Duplicate results were generally within 5% of each other, suggesting acceptable levels of precision were met.

| Expected Value (g/serving) | Duplicate Result | Laboratory |
|---|---|---|
| 9 | 8.0, 8.0 | 1 |
| 2 | 9.9, 9.9 | 1 |
| 2 | 8.7, 8.3 | 1 |
| 5 | 9.4, 9.3 | 2 |
| 2 | 7.0, 6.9 | 2 |
| 2 | 8.1, 7.9 | 2 |
| 2 | 7.9, 7.7 | 2 |

**Table 4. Duplicate results of total sugars** on different bottles from the same manufacturer product and lot number.

Although sugar alcohols are not commonly thought to be produced during kombucha fermentation, there is a possibility for sugar alcohols to potentially interfere with total sugars results. Six representative samples were analyzed for sugar alcohols by Laboratory #1 (Table 5). One sample containing sorbitol slightly greater than the limit of quantitation was re-tested in triplicate to confirm its presence. The level of sorbitol detected is not expected to interfere with total sugars results at the scale observed in this study.

| | Units | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|---|
| Sorbitol | g / 100g | <0.0500 | **0.0616** | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Mannitol | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Maltitol | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Erythritol | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Xylitol | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Lactitol | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Isomalt GPS | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| Isomalt GPM | g / 100g | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 | <0.0500 |
| **Total sugar alcohols** | g / 100g | **<0.0500** | **0.0616** | **<0.0500** | **<0.0500** | **<0.0500** | **<0.0500** |

**Table 5. Sugar alcohols content of six selected kombucha products from four manufacturers.**

It is possible that changes in sugar content may occur over the shelf life of products undergoing active fermentation. Although this study did not include shelf life studies, a simple linear regression was used to determine to a preliminary extent whether the amount of shelf life remaining may be related to the amount of sugar content (Table 6). However, no significant

6

Ebersole Decl. - Page 1345

correlation between remaining shelf life and sugars content was observed ($r^2 = 0.015$, p=0.27).



**Table 6. Total sugar content of all kombucha samples versus days until expiry.**
Simple linear regression was performed. No significant correlation was observed between laboratory values of sugar content and remaining shelf life.

## DISCUSSION

The rapid success of kombucha in the U.S. has coincided with questions of product consistency and quality. For example, the production of low levels of ethanol during fermentation has made kombucha a target of regulatory discussion in the United States.  In this study, products from five of eight manufacturers contained higher than expected levels of sugars, i.e., greater than 20% of label on the average.

Sugars in foods and beverages, including fermented beverages like beer, wine and vinegar have been adequately tested for decades using the same or similar HPLC methodology used in this study. In this study, duplicate samples run consecutively of the same manufacturing lots appeared to show an acceptable precision. Also, similar results obtained on the same products prepared with different extraction procedures at different labs suggest that differences in sample preparation before analysis do not impact results for kombucha.

Sugar alcohols may appear on the same chromatograms as sugars, and previous reports have suggested some possibility for interference. Based on the data reported here, sugar alcohols are not present in kombucha at levels that would be expected to substantially affect sugars results.

The purpose of this study was not to determine changes in sugar content of kombucha during shelf life. However, it has been suggested that the composition of 'live' fermented products

7

Ebersole Decl. - Page 1346

may change over the shelf life. Although systematic time-course data on the same samples was not performed in this study, a simple linear regression analysis based on the measured laboratory value versus remaining shelf life showed no significant correlation ($r^2$=0.015, p=0.27). More studies should be done to determine whether there are discernible changes in the sugar content over the duration of product shelf life.

A number of controls were employed in this study to control for potential variations in sample source, transportation and storage, preparation, composition and laboratory methodology. This included the use of multiple laboratories, methods, sample sources, and testing dates. All data and calibrations met laboratory suitability requirements. Upon review of selected sample and standard chromatograms, no interfering peaks were observed. Multiple laboratories performed the analysis using accepted AOAC methodologies, and variation in extraction steps among the methods did not appear to impact results.

This study did not intend to provide a systematic analysis of all kombucha products on the market. Because products from manufacturers with greater than expected sugars in the initial round of testing were selected for additional confirmation testing, this data in its aggregate has limited usefulness as a reliable overall indicator of sugar content in commercial kombucha products.

The primary conclusions from this study include that: 1) the majority of the kombucha products tested contained higher than expected levels of sugars (greater than 20% of label) on the average; and 2) testing for sugars in kombucha by HPLC appears to meet acceptable levels of precision and accuracy.

Acknowledgments: This study was financially supported by KeVita Inc.

REFERENCES

1. AOAC 982.14 Glucose, Fructose, Sucrose and Maltose in Presweetened Cereals
2. AOAC 980.13 Fructose, Glucose, Lactose, Maltose and Sucrose in Milk Chocolate
3. AOAC 977.20 Separation of Sugars in Honey
4. Chen C. and Liu B.Y. Changes in major components of tea fungus metabolites during prolonged fermentation. (2000) J Appl. Microbiol. 89;834-839
5. Ebersole B, Schmidt R, Eckert M. Single laboratory validation of ethanol in kombucha. (2016) J. AOAC, Submitted manuscript.
6. Lopez EF, Gomez EF. Simultaneous determination of the major organic acids, sugars, glycerol and ethanol by HPLC in grape musts and white wines. (1996). J Chrom Sci. 34:
7. Markov S. L., Cvetkovic D.D., Velicanski A.S. The availability of a lactose medium for tea fungus culture and kombucha fermentation. (2012) Arch. Biol. Sci. Belgrade 64(4);1439-1447
8. Nummer BA. Kombucha brewing under the Food and Drug Administration model Food Code: risk analysis and processing guidance. (2013) J Environ Health. 76(4):8-11.

8

9. Reiss J. Influence of different sugars on the metabolism of the tea fungus (1994); Z. Lebensm. Unters. Forsch. 198:258-261

10. Sanarico D, Motta S, Bertolini L, Antonelli LA. HPLC Determination of organic acids in traditional balsamic vinegar of Reggio Emilia. (2006). J. Liq. Chrom. Rel. Tech. 26(13):2177-2187

11. Sievers M, Lanini C., Weber A., Schuler-Schmid U., Teuber M. Microbiology and fermentation balance in a kombucha beverage obtained from a tea fungus fermentation. (1995). System. Appl. Microbiol. 18;590-594

12. Wang W, Tang S, Zhu X. Determination of sugars in vinegar by HPLC and difference analysis. (2014) Food Sci Tech. 7:300-303

9

## Sugars in Kombucha - Data Table

| Store | Store Location | Purchase Date | Manufacturer | Flavor | Lot Code | Enjoy by | Report Date | Label Value (g/serving) | Laboratory Result (g/serving) | Sugars (% of Label Value) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Inverness, FL | 6/28/2016 | A | 1 | 1 | 8/5/2016 | 7/12/2016 | 2 | 10 | 400% |
| 3 | Boulder, CO | 6/28/2016 | A | 2 | 2 | 8/5/2016 | 7/12/2016 | 2 | 8.9 | 345% |
| 4 | Ventura, CA | 6/28/2016 | A | 2 | 3 | 8/6/2016 | 7/7/2016 | 2 | 8.9 | 345% |
| 5 | Carmel, IN | 6/28/2016 | A | 2 | 4 | 8/7/2016 | 7/12/2016 | 2 | 8.7 | 335% |
| 5 | Carmel, IN | 6/28/2016 | A | 2 | 5 | 8/7/2016 | 7/12/2016 | 2 | 8.3 | 315% |
| 6 | Lititz, PA | 6/28/2016 | A | 2 | 6 | 8/7/2016 | 7/12/2016 | 2 | 8.2 | 310% |
| 7 | Indianapolis, IN | 5/3/2016 | A | 2 | 7 | 6/11/2016 | 5/27/2016 | 2 | 8.14 | 307% |
| 7 | Indianapolis, IN | 5/3/2016 | A | 2 | 7 | 6/11/2016 | 5/27/2016 | 2 | 7.9 | 295% |
| 1 | Inverness, FL | 6/28/2016 | A | 2 | 8 | 8/12/2016 | 7/12/2016 | 2 | 9.4 | 370% |
| 2 | Carmel, IN | 4/4/2016 | A | 2 | 9 | 5/14/2016 | 4/11/2016 | 2 | 9.1 | 355% |
| 2 | Carmel, IN | 4/4/2016 | A | 2 | 9 | 5/14/2016 | 4/21/2016 | 2 | 9.0 | 350% |
| 4 | Ventura, CA | 5/12/2016 | A | 2 | 10 | 6/17/2016 | 6/3/2016 | 2 | 7.47 | 274% |
| 9 | Carmel, IN | 5/3/2016 | A | 3 | 11 | 6/3/2016 | 5/27/2016 | 4 | 7.95 | 99% |
| 9 | Carmel, IN | 5/3/2016 | A | 3 | 11 | 6/3/2016 | 5/27/2016 | 4 | 7.76 | 94% |
| 8 | Boulder, CO | 6/28/2016 | A | 3 | 12 | 8/7/2016 | 7/12/2016 | 4 | 11 | 175% |
| 6 | Lititz, PA | 6/28/2016 | A | 3 | 13 | 7/25/2016 | 7/12/2016 | 4 | 8.7 | 118% |
| 1 | Inverness, FL | 6/28/2016 | A | 4 | 14 | 8/12/2016 | 7/12/2016 | 2 | 9.4 | 370% |
| 1 | Inverness, FL | 6/28/2016 | A | 5 | 15 | 8/6/2016 | 7/12/2016 | 2 | 8.9 | 345% |
| 4 | Ventura, CA | 5/12/2016 | A | 6 | 16 | 6/12/2016 | 6/3/2016 | 2 | 10.18 | 409% |
| 7 | Indianapolis, IN | 5/3/2016 | A | 6 | 17 | 6/13/2016 | 5/27/2016 | 2 | 7.03 | 252% |
| 9 | Carmel, IN | 5/3/2016 | A | 6 | 17 | 6/13/2016 | 5/27/2016 | 2 | 6.91 | 246% |
| 1 | Inverness, FL | 6/28/2016 | A | 6 | 18 | 8/13/2016 | 7/12/2016 | 2 | 9.4 | 370% |
| 8 | Boulder, CO | 6/28/2016 | A | 7 | 19 | 8/31/2016 | 7/12/2016 | 2 | 8.9 | 345% |
| 4 | Ventura, CA | 5/12/2016 | A | 7 | 20 | 7/20/2016 | 6/3/2016 | 2 | 8.80 | 340% |
| 9 | Carmel, IN | 6/28/2016 | A | 7 | 21 | 7/26/2016 | 7/12/2016 | 2 | 9.0 | 350% |
| 4 | Ventura, CA | 6/28/2016 | A | 7 | 22 | 8/28/2016 | 7/7/2016 | 2 | 8.9 | 345% |
| 9 | Carmel, IN | 6/28/2016 | A | 8 | 23 | 8/1/2016 | 7/12/2016 | 2 | 9.1 | 355% |
| 6 | Lititz, PA | 6/28/2016 | A | 8 | 24 | 8/1/2016 | 7/12/2016 | 2 | 10 | 400% |
| 4 | Ventura, CA | 6/28/2016 | A | 8 | 25 | 8/14/2016 | 7/7/2016 | 2 | 11 | 450% |
| 10 | Carmel, IN | 5/3/2016 | A | 8 | 26 | 6/19/2016 | 5/27/2016 | 2 | 6.74 | 237% |
| 4 | Ventura, CA | 5/12/2016 | A | 8 | 27 | 6/19/2016 | 6/3/2016 | 2 | 8.56 | 328% |
| 9 | Carmel, IN | 6/28/2016 | B | 9 | 28 | 9/21/2016 | 7/12/2016 | 2 | 9.9 | 395% |
| 11 | Oxnard, CA | 6/28/2016 | B | 9 | 28 | 9/21/2016 | 7/7/2016 | 2 | 9.9 | 395% |
| 11 | Oxnard, CA | 6/28/2016 | B | 10 | 29 | 10/23/2016 | 7/7/2016 | 3 | 9.9 | 230% |
| 11 | Oxnard, CA | 6/28/2016 | B | 11 | 30 | 8/10/2016 | 7/7/2016 | 2 | 9.2 | 360% |
| 9 | Carmel, IN | 6/28/2016 | B | 12 | 31 | 11/24/2016 | 7/12/2016 | 2 | 7.2 | 260% |
| 4 | Ventura, CA | 6/28/2016 | B | 12 | 32 | 11/14/2016 | 7/7/2016 | 2 | 7.7 | 285% |
| 11 | Oxnard, CA | 6/28/2016 | B | 12 | 33 | 12/21/2016 | 7/28/2016 | 2 | 9.64 | 382% |
| 2 | Carmel, IN | 4/4/2016 | B | 13 | 34 | 6/21/2016 | 4/21/2016 | 2 | 6.9 | 245% |
| 11 | Oxnard, CA | 6/28/2016 | B | 13 | 35 | 12/7/2016 | 7/28/2016 | 2 | 7.14 | 257% |
| 9 | Carmel, IN | 6/28/2016 | B | 13 | 36 | 12/17/2016 | 7/12/2016 | 2 | 8.0 | 300% |
| 4 | Ventura, CA | 6/28/2016 | B | 13 | 36 | 12/17/2016 | 7/7/2016 | 2 | 8.0 | 300% |
| 11 | Oxnard, CA | 6/28/2016 | B | 14 | 37 | 10/1/2016 | 7/7/2016 | 3 | 9.6 | 220% |
| 11 | Oxnard, CA | 6/28/2016 | B | 15 | 38 | 11/25/2016 | 7/7/2016 | 2 | 10 | 400% |
| 3 | Boulder, CO | 6/28/2016 | B | 15 | 39 | 9/17/2016 | 7/12/2016 | 2 | 9.4 | 370% |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11 | Oxnard, CA | 6/28/2016 | B | 16 | 40 | 10/20/2016 | 7/28/2016 | 3 | 10.8 | 260% |
| 9 | Carmel, IN | 6/28/2016 | B | 16 | 41 | 8/11/2016 | 7/12/2016 | 3 | 9.9 | 230% |
| 3 | Boulder, CO | 6/28/2016 | B | 16 | 42 | 9/23/2016 | 7/12/2016 | 3 | 11 | 267% |
| 11 | Oxnard, CA | 6/28/2016 | B | 17 | 43 | 10/2/2016 | 7/28/2016 | 3 | 10.6 | 253% |
| 4 | Ventura, CA | 6/28/2016 | B | 17 | 44 | 10/6/2016 | 7/7/2016 | 3 | 10 | 233% |
| 11 | Oxnard, CA | 6/28/2016 | B | 18 | 45 | 10/3/2016 | 7/7/2016 | 3 | 8.9 | 197% |
| 11 | Oxnard, CA | 6/28/2016 | B | 19 | 46 | 9/19/2016 | 7/7/2016 | 3 | 11 | 267% |
| 4 | Ventura, CA | 6/28/2016 | C | 20 | 47 | 8/12/2016 | 7/7/2016 | 7 | 12 | 71% |
| 4 | Ventura, CA | 5/12/2016 | C | 20 | 47 | 8/12/2016 | 6/7/2016 | 7 | 10.98 | 57% |
| 4 | Ventura, CA | 5/12/2016 | C | 21 | 48 | 10/19/2016 | 6/7/2016 | 6 | 8.72 | 45% |
| 4 | Ventura, CA | 5/12/2016 | C | 22 | 49 | 8/18/2016 | 6/7/2016 | 7 | 11.05 | 58% |
| 4 | Ventura, CA | 5/12/2016 | C | 23 | 50 | 10/4/2016 | 6/7/2016 | 7 | 11.49 | 64% |
| 4 | Ventura, CA | 6/28/2016 | C | 24 | 51 | 7/25/2016 | 7/7/2016 | 7 | 8.1 | 16% |
| 4 | Ventura, CA | 5/12/2016 | C | 24 | 51 | 7/25/2016 | 6/7/2016 | 7 | 7.83 | 12% |
| 4 | Ventura, CA | 5/12/2016 | C | 25 | 52 | 9/29/2016 | 6/7/2016 | 8 | 12.04 | 51% |
| 4 | Ventura, CA | 5/12/2016 | C | 26 | 53 | 10/10/2016 | 6/7/2016 | 8 | 8.23 | 3% |
| 4 | Ventura, CA | 6/28/2016 | C | 26 | 54 | 11/2/2016 | 7/7/2016 | 8 | 8.4 | 5% |
| 12 | Boulder, CO | 6/28/2016 | C | 26 | 55 | 12/17/2016 | 7/12/2016 | 8 | 9.9 | 24% |
| 11 | Oxnard, CA | 7/13/2016 | D | 27 | 56 | 11/9/2016 | 7/18/2016 | 8 | 7.5 | -6% |
| 11 | Oxnard, CA | 7/13/2016 | D | 28 | 57 | 11/9/2016 | 7/18/2016 | 8 | 7.7 | -4% |
| 2 | Carmel, IN | 7/13/2016 | D | 29 | 58 | 11/24/2016 | 7/18/2016 | 8 | 7.5 | -6% |
| 4 | Ventura, CA | 7/13/2016 | D | 29 | 59 | 10/29/2016 | 7/18/2016 | 8 | 7.2 | -10% |
| 4 | Ventura, CA | 7/13/2016 | D | 30 | 60 | 11/25/2016 | 7/18/2016 | 8 | 7.7 | -4% |
| 11 | Oxnard, CA | 7/13/2016 | D | 31 | 61 | 11/10/2016 | 7/18/2016 | 8 | 8.0 | 0% |
| 2 | Carmel, IN | 7/13/2016 | D | 32 | 61 | 11/25/2016 | 7/18/2016 | 8 | 7.7 | -4% |
| 4 | Ventura, CA | 7/13/2016 | D | 33 | 63 | 10/28/2016 | 7/18/2016 | 8 | 7.5 | -6% |
| 4 | Ventura, CA | 7/13/2016 | D | 34 | 64 | 10/28/2016 | 7/18/2016 | 8 | 8.3 | 4% |
| 6 | Lititz, PA | 6/28/2016 | E | 35 | 65 | 10/8/2016 | 7/12/2016 | 9 | 7.4 | -18% |
| 9 | Carmel, IN | 6/28/2016 | E | 36 | 66 | 10/13/2016 | 7/12/2016 | 9 | 8.9 | -1% |
| 6 | Lititz, PA | 6/28/2016 | E | 37 | 67 | 11/5/2016 | 7/12/2016 | 9 | 7.4 | -18% |
| 12 | Lancaster, PA | 6/28/2016 | F | 38 | 68 | 9/29/2016 | 7/12/2016 | 11 | 13 | 18% |
| 12 | Lancaster, PA | 6/28/2016 | F | 39 | 69 | 8/12/2016 | 7/12/2016 | 11 | 12 | 9% |
| 4 | Ventura, CA | 6/28/2016 | G | 40 | 70 | 10/5/2016 | 7/7/2016 | 2 | 8.4 | 320% |
| 4 | Ventura, CA | 6/28/2016 | G | 41 | 71 | 8/14/2016 | 7/7/2016 | 5 | 10 | 100% |
| 4 | Ventura, CA | 6/28/2016 | G | 42 | 72 | 9/12/2016 | 7/7/2016 | 5 | 9.7 | 94% |
| 4 | Ventura, CA | 6/28/2016 | G | 43 | 73 | 8/27/2016 | 7/7/2016 | 5 | 8.7 | 74% |
| 2 | Carmel, IN | 6/28/2016 | H | 44 | 74 | 1/5/2017 | 7/12/2016 | 5 | 7.5 | 50% |
| 13 | Boulder, CO | 6/28/2016 | H | 44 | 75 | 11/4/2016 | 7/12/2016 | 5 | 7.5 | 50% |
| 9 | Carmel, IN | 5/3/2016 | H | 45 | 76 | 10/10/2016 | 6/3/2016 | 5 | 9.4 | 88% |
| 9 | Carmel, IN | 5/3/2016 | H | 45 | 76 | 10/10/2016 | 6/3/2016 | 5 | 9.3 | 86% |
| 4 | Ventura, CA | 5/3/2016 | H | 46 | 77 | 12/8/2016 | 6/3/2016 | 5 | 8.4 | 68% |
| 9 | Carmel, IN | 4/4/2016 | I | 47 | 78 | 9/4/2016 | 4/21/2016 | 4 | 4.7 | 18% |
| 4 | Ventura, CA | 5/12/2016 | J | 48 | 79 | 9/5/2016 | 6/7/2016 | 11 | 10.91 | -1% |

Ebersole Decl. - Page 1350

# EXHIBIT 7

Kombucha Dog
1815 Main Street
Los Angeles, CA 90031

Page 1 of 3

| | | Analysis Performed at: |
| --- | --- | --- |
| Work Order # : | W2017-12-12-041 | Enartis Vinquiry |
| Sample (s) Received: | December 12, 2017 | 7795 Bell Road |
| Report Printed: | December 14, 2017 | Windsor, CA  95492 |

## Analysis Report

| | | | | Date Analyzed |
| --- | --- | --- | --- | --- |
| **AH30015** | GT'S Synergy Guava Goddess 500 | | | |
| | Alcohol | 1.05 %V/V | GC* | 12/13/17 |
| **AH30016** | GT'S KombuchaGingerade 501 | | | |
| | Alcohol | 1.13 %V/V | GC* | 12/13/17 |
| **AH30017** | GT'S Synergy Passionberry Bliss 502 | | | |
| | Alcohol | 1.09 %V/V | GC* | 12/13/17 |
| **AH30018** | GT'S Synergy Raspberry Chia 503 | | | |
| | Alcohol | 0.73 %V/V | GC* | 12/13/17 |
| **AH30019** | GT'S Synergy Cosmic Cranberry 504 | | | |
| | Alcohol | 0.95 %V/V | GC* | 12/13/17 |
| **AH30020** | GT'S Synergy Trilogy 505 | | | |
| | Alcohol | 0.90 %V/V | GC* | 12/13/17 |
| **AH30021** | GT'S Kombucha Tantric Tumeric 506 | | | |
| | Alcohol | 1.03 %V/V | GC* | 12/13/17 |
| **AH30022** | GT'S Synergy Mystic Mango 507 | | | |
| | Alcohol | 0.95 %V/V | GC* | 12/13/17 |
| **AH30023** | GT'S Kombucha Original 508 | | | |
| | Alcohol | 1.48 %V/V | GC* | 12/13/17 |

Ebersole Decl. - Page 1352

| Work Order # : | W2017-12-12-041 | Analysis Report (cont.) | | Page 2 of 3 | |
|---|---|---|---|---|---|
| AH30024 cont. | | | | | Date Analyzed |
| AH30024 | GT'S Synergy Gingerberry 509 Alcohol | 1.12 %V/V | GC* | | 12/13/17 |
| AH30025 | GT'S Kombucha Koffee 510 Alcohol | 0.93 %V/V | GC* | | 12/13/17 |
| AH30026 | GT'S Synergy Strawberry Serenity 600 Alcohol | 1.10 %V/V | GC* | | 12/13/17 |
| AH30027 | GT'S Kombucha Living in Gratitude 601 Alcohol | 0.63 %V/V | GC* | | 12/13/17 |
| AH30028 | GT'S Kombucha Cayennade 602 Alcohol | 1.06 %V/V | GC* | | 12/13/17 |
| AH30029 | GT'S Kombucha Lemonade 603 Alcohol | 1.07 %V/V | GC* | | 12/13/17 |
| AH30030 | GT'S Synergy Ginger Chai 604 Alcohol | 0.60 %V/V | GC* | | 12/13/17 |
| AH30031 | GT'S Kombucha Heart Beet 605 Alcohol | 0.68 %V/V | GC* | | 12/13/17 |
| AH30032 | GT'S Kombucha Multi-Green 606 Alcohol | 0.69 %V/V | GC* | | 12/13/17 |
| AH30033 | GT'S Kombucha Lavender Love 607 Alcohol | 0.75 %V/V | GC* | | 12/13/17 |

Ebersole Decl. - Page 1353

Case 2:17-cv-07933-FMO-GUS Document 158-3 Filed 10/15/19 Page 405 of 903 Page ID #:345



| | | | | | |
|---|---|---|---|---|---|
| **AH30034 cont.** | | | | | Date Analyzed |
| **AH30034** | GT'S Kombucha Hibiscus Ginger 608 | | | | |
| | Alcohol | 1.04 %V/V | GC* | | 12/13/17 |
| **AH30035** | GT'S Cocokefir Pure 609 | | | | |
| | Alcohol | 0.19 %V/V | GC* | | 12/13/17 |



**for Enartis USA**

**TTB Certified Laboratory**

For information on the individual authorizing this analysis report, please visit our website.  The results in this report relate only to sample(s) as submitted.  This report shall not be reproduced except in full, without the written approval of Enartis USA. This report is intended only for the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under the law.  If the reader of this report is not the intended recipient or is not the person responsible for delivering this report to the intended party, please note that any dissemination, distribution, or copying of this report is strictly prohibited.  If you have received this report in error, please notify us immediately by telephone and return the original report to us at the

**www.enartis.com**

| **MAIN BRANCH** | **NAPA VALLEY BRANCH** | **SANTA MARIA BRANCH** | **PASO ROBLES BRANCH** |
|---|---|---|---|
| 7795 BELL ROAD | 1282 VIDOVICH AVENUE, SUITE C | 2717 AVIATION WAY, SUITE 100 | 1850 RAMADA DRIVE |
| WINDSOR | ST. HELENA | SANTA MARIA | PASO ROBLES |
| CA 95492 | CA 94574 | CA 93455 | CA 93446 |
| TEL: 707 838 6312 | TEL: 707 967 0290 | TEL: 805 922 6321 | TEL: 805 591 3321 |

Ebersole Decl. - Page 1354

**EXHIBIT 3**

# BURSOR & FISHER

## P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA  94596
www.bursor.com

YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
ykrivoshey@bursor.com

September 13, 2019

*Via Certified Mail - Return Receipt Requested*

C T Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

GT's Living Foods, LLC
4415 Bandini Blvd
Vernon, CA 90058

GT's Living Foods, LLC
4646 Hampton St
Vernon, CA 90058

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Adriana Digennaro, Jenna Leder, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) and Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, distribution, and/or sale of GT's Enlightened kombucha and Enlightened Synergy kombucha beverages ("Kombucha Beverages").  Your Kombucha Beverages contain significantly more alcohol than the .5 percent alcohol-by-volume threshold permitted for non-alcoholic beverages by federal and state law.  In fact, recent testing by a TTB accredited laboratory shows that Your Kombucha Beverages contain significantly more alcohol than allowed by the .5 percent standard.  Further, Your Kombucha Beverages do not bear the alcohol warning mandated by 27 C.F.R. § 16, and are sold to minors and other unsuspecting consumers without an adequate warning regarding the high alcohol content of the beverages.

**BURSOR&FISHER**
P.A.

Further, the labels of Your Kombucha Beverages understate the amount of sugar present in the beverages.

Ms. Digennaro and Ms. Leder purchased Your Kombucha Beverages based on the belief that they are non-alcoholic beverages, as they did not contain the 27 C.F.R. § 16 warning and no identification was required to purchase the beverages. They would not have purchased Your Kombucha Beverages had they known, and had You properly disclosed, that Your Kombucha Beverages are alcoholic beverages.

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel GT's Kombucha and Synergy; (2) issue an immediate recall on any GT's Kombucha and Synergy products bearing misbranded labels; and (3) make full restitution to all purchasers of GT's Kombucha and Synergy of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for GT's Kombucha and Synergy;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of GT's Kombucha and Synergy;

3. All documents concerning the advertisement, marketing, or sale of GT's Kombucha and Synergy; and

4. All communications with customers concerning complaints or comments concerning GT's Kombucha and Synergy.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey

Case 3:26-cv-00036-DSR    Document 23-1 Filed 02/02/26 Page 409 of 903 Page

**EXHIBIT 4**

# BURSOR & FISHER
P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
ykrivoshey@bursor.com

October 3, 2019

**_Via Certified Mail - Return Receipt Requested_**

C T Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

GT's Living Foods, LLC
4415 Bandini Blvd
Vernon, CA 90058

GT's Living Foods, LLC
4646 Hampton St
Vernon, CA 90058

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Erin Weiler and Delaney Sharpe, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) and Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, distribution, and/or sale of GT's Enlightened kombucha and Enlightened Synergy kombucha beverages ("Kombucha Beverages"). Your Kombucha Beverages contain significantly more alcohol than the .5 percent alcohol-by-volume threshold permitted for non-alcoholic beverages by federal and state law. In fact, recent testing by a TTB accredited laboratory shows that Your Kombucha Beverages contain significantly more alcohol than allowed by the .5 percent standard. Further, Your Kombucha Beverages do not bear the alcohol warning mandated by 27 C.F.R. § 16, and are sold to minors and other unsuspecting consumers without an adequate warning regarding the high alcohol content of the beverages.

**BURSOR&FISHER**
P.A.

Further, the labels of Your Kombucha Beverages understate the amount of sugar present in the beverages.

Ms. Weiler and Ms. Sharpe purchased Your Kombucha Beverages based on the belief that they are non-alcoholic beverages, as they did not contain the 27 C.F.R. § 16 warning and no identification was required to purchase the beverages. They would not have purchased Your Kombucha Beverages had they known, and had You properly disclosed, that Your Kombucha Beverages are alcoholic beverages.

Indeed, Ms. Sharpe is under the age of 21 and, by law, would not have been able to purchase Your Kombucha Beverages had they been appropriately labeled.

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel GT's Kombucha and Synergy; (2) issue an immediate recall on any GT's Kombucha and Synergy products bearing misbranded labels; and (3) make full restitution to all purchasers of GT's Kombucha and Synergy of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for GT's Kombucha and Synergy;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of GT's Kombucha and Synergy;

3. All documents concerning the advertisement, marketing, or sale of GT's Kombucha and Synergy; and

4. All communications with customers concerning complaints or comments concerning GT's Kombucha and Synergy.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro, on behalf of themselves and all others similarly situated, | CASE NUMBER: |
|---|---|
| Plaintiff(s) | |
| v. | NOTICE OF APPEARANCE OR WITHDRAWAL OF COUNSEL |
| Defendant(s) | |

## INSTRUCTIONS

*Appearance of Counsel,*

To add an attorney or to enter an appearance as new counsel for an existing party, complete Section II. For a new appearance, complete Sections I and II.

*Withdrawal of Counsel,*

To withdraw from the case.

**Note:** *In situations not covered above, attorneys seeking to withdraw from a case must first obtain permission from the Court. In such circumstances, attorneys should complete and file a "Request for Approval of Substitution or Withdrawal of Counsel" (Form G-01) rather than this "Notice of Appearance or Withdrawal of Counsel" (Form G-123). See Form G-01 for further information.*

## SECTION I - IDENTIFYING INFORMATION

*Please complete the following information for the attorney you wish to add or remove (if removing an attorney, provide the information as it currently appears on the docket; if appearing pro hac vice, enter "PHV" in the field for "CA Bar Number"):*

## SECTION II - TO ADD AN ATTORNEY TO THE DOCKET

*Please select one of the following options:*

☐ The attorney listed above has already appeared as counsel of record in this case and should have been added to the docket. The date of the attorney's first appearance in this case: _____ .

☐ The filing of this form constitutes the first appearance in this case of the attorney listed above. Other members of this attorney's firm or agency have previously appeared in the case.

☒ The filing of this form constitutes the first appearance in this case of the attorney listed above. No other members of this attorney's firm or agency have previously appeared in the case.

☐ By order of the court dated _____ in case number _____ (see attached copy), the attorney listed above may appear in this case without applying for admission to practice *pro hac vice*.

☐ This case was transferred to this district by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 from the _____ District of _____, where it was assigned case number _____. The attorney listed above is counsel of record in this case in the transferee district, and is permitted by the rules of the JPML to continue to represent his or her client in this district without applying for admission to practice *pro hac vice* and without the appointment of local counsel.

☐ On _____, the attorney listed above was granted permission to appear in this case *pro hac vice* before the Bankruptcy Court, and L.Bankr.R. 8 authorizes the continuation of that representation in this case before the District Court.

*In addition, if this is a criminal case, please check the applicable box below. The attorney listed above is:*

☐ USAO   ☐ FPDO   ☐ CJA Appointment   ☐ Pro Bono   ☐ Retained

## SECTION III - TO REMOVE AN ATTORNEY FROM THE DOCKET

***Notices of Electronic Filing will be terminated***. *Please select one of the following options:*

☐ The attorney named above has already been relieved by the Court as counsel of record in this case and should have been removed from the docket. Date of the order relieving this attorney: _____.

☐ Please remove the attorney named above from the docket of this case; at least one member of the firm or agency named above, and at least one member of the Bar of this Court, will continue to serve as counsel of record for the party or parties indicated.

*(Note: if you are removing yourself from the docket of this case as a result of separating from a firm or agency, you should consult Local Rules 5-4.8.1 and 83-2.4 and Form G-06 ("Notice of Change of Attorney Business or Contact Information"), concerning your obligations to notify the Clerk and parties of changes in your business or contact information.)*

☐ The represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing. Date party was dismissed: _____.

☐ The attorney named above was appointed on appeal and the appeal has been adjudicated. Date the mandate was filed: _____.

## SECTION IV - SIGNATURE

I request that the Clerk update the docket as indicated above.

Date: July 18, 2024 _____

Signature: /s/ Simon Franzini _____

Name: Simon Franzini _____

# EXHIBIT 5

Name and address:

Gabriel Doble
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFF(S)<br>v.<br><br>GT's Living Foods, LLC,<br><br>DEFENDANT(S) | CASE NUMBER:<br><br>2:19-cv-10920-FMO-GJS<br><br>NOTICE OF APPEARANCE OR WITHDRAWAL OF COUNSEL |

### INSTRUCTIONS

*Appearance of Counsel*:

Attorneys may use this form to enter an appearance in a case, or to update the docket of a case to reflect a prior appearance. To do so, complete Sections I, II, and IV of this form, then file and serve the form in the case. (Using an attorney's CM/ECF login and password to file this form will expedite the addition of that attorney to the docket as counsel of record.)

*Withdrawal of Counsel*:

This form may be used to terminate an attorney's status as counsel of record for a party in three situations: (1) the attorney being terminated has already been relieved by the Court, but the docket does not yet reflect that fact; (2) at least one member of the attorney's firm or agency will continue to represent that party and the withdrawing attorney is not the only member of the Bar of this Court representing that party; or (3) the represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing. For any of these situations, complete Sections I, III, and IV of this form, then file and serve the form in the case.

**Note:** *In situations not covered above, attorneys seeking to withdraw from a case must first obtain permission from the Court. In such circumstances, attorneys should complete and file a "Request for Approval of Substitution or Withdrawal of Counsel" (Form G-01) rather than this "Notice of Appearance or Withdrawal of Counsel" (Form G-123). See Form G-01 for further information.*

### SECTION I - IDENTIFYING INFORMATION

*Please complete the following information for the attorney you wish to add or remove (if removing an attorney, provide the information as it <u>currently</u> appears on the docket; if appearing pro hac vice, enter "PHV" in the field for "CA Bar Number"):*

Name: Gabriel Doble                                                CA Bar Number: 335335

Firm or agency: Dovel & Luner LLP

Address: 201 Santa Monica Blvd., Suite 600, Santa Monica, CA, 90401

Telephone Number: 310-656-7066                    Fax Number: (310) 656-7069

Email: gabe@dovel.com

Counsel of record for the following party or parties: Plaintiffs Delaney Sharpe and Adriana DiGennaro

---

## SECTION II - TO ADD AN ATTORNEY TO THE DOCKET

*Please select one of the following options:*

☐   The attorney listed above has already appeared as counsel of record in this case and should have been added to the docket. The date of the attorney's first appearance in this case: _____ .

☒   The filing of this form constitutes the first appearance in this case of the attorney listed above. Other members of this attorney's firm or agency have previously appeared in the case.

☐   The filing of this form constitutes the first appearance in this case of the attorney listed above. No other members of this attorney's firm or agency have previously appeared in the case.

☐   By order of the court dated _____ in case number _____ (see attached copy), the attorney listed above may appear in this case without applying for admission to practice *pro hac vice*.

☐   This case was transferred to this district by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 from the _____ District of _____, where it was assigned case number _____. The attorney listed above is counsel of record in this case in the transferee district, and is permitted by the rules of the JPML to continue to represent his or her client in this district without applying for admission to practice *pro hac vice* and without the appointment of local counsel.

☐   On _____, the attorney listed above was granted permission to appear in this case *pro hac vice* before the Bankruptcy Court, and L.Bankr.R. 8 authorizes the continuation of that representation in this case before the District Court.

*In addition, if this is a criminal case, please check the applicable box below. The attorney listed above is:*

☐ USAO    ☐ FPDO    ☐ CJA Appointment    ☐ Pro Bono    ☐ Retained

## SECTION III - TO REMOVE AN ATTORNEY FROM THE DOCKET

*Notices of Electronic Filing will be terminated. Please select one of the following options:*

☐   The attorney named above has already been relieved by the Court as counsel of record in this case and should have been removed from the docket. Date of the order relieving this attorney: _____ .

☐   Please remove the attorney named above from the docket of this case; at least one member of the firm or agency named above, and at least one member of the Bar of this Court, will continue to serve as counsel of record for the party or parties indicated.
*(Note: if you are removing yourself from the docket of this case as a result of separating from a firm or agency, you should consult Local Rules 5-4.8.1 and 83-2.4 and Form G-06 ("Notice of Change of Attorney Business or Contact Information"), concerning your obligations to notify the Clerk and parties of changes in your business or contact information.)*

☐   The represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing. Date party was dismissed: _____ .

☐   The attorney named above was appointed on appeal and the appeal has been adjudicated. Date the mandate was filed: _____ .

## SECTION IV - SIGNATURE

I request that the Clerk update the docket as indicated above.

Date: July 18, 2024 _____

Signature: /s/ Gabriel Doble _____

Name: Gabriel Doble _____

# EXHIBIT 6

Name and address:
Stephen Andrews
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro, on behalf of themselves and all others similarly situated,

PLAINTIFF(S)

v.

GT's Living Foods, LLC,

DEFENDANT(S)

CASE NUMBER:

2:19-cv-10920-FMO-GJS

### NOTICE OF APPEARANCE OR
### WITHDRAWAL OF COUNSEL

### INSTRUCTIONS

*Appearance of Counsel*:

Attorneys may use this form to enter an appearance in a case, or to update the docket of a case to reflect a prior appearance. To do so, complete Sections I, II, and IV of this form, then file and serve the form in the case. (Using an attorney's CM/ECF login and password to file this form will expedite the addition of that attorney to the docket as counsel of record.)

*Withdrawal of Counsel*:

This form may be used to terminate an attorney's status as counsel of record for a party in three situations: (1) the attorney being terminated has already been relieved by the Court, but the docket does not yet reflect that fact; (2) at least one member of the attorney's firm or agency will continue to represent that party and the withdrawing attorney is not the only member of the Bar of this Court representing that party; or (3) the represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing. For any of these situations, complete Sections I, III, and IV of this form, then file and serve the form in the case.

**Note**: *In situations not covered above, attorneys seeking to withdraw from a case must first obtain permission from the Court. In such circumstances, attorneys should complete and file a "Request for Approval of Substitution or Withdrawal of Counsel" (Form G-01) rather than this "Notice of Appearance or Withdrawal of Counsel" (Form G-123). See Form G-01 for further information.*

### SECTION I - IDENTIFYING INFORMATION

*Please complete the following information for the attorney you wish to add or remove (if removing an attorney, provide the information as it currently appears on the docket; if appearing pro hac vice, enter "PHV" in the field for "CA Bar Number"):*

Name: Stephen Andrews          CA Bar Number: 354327

Firm or agency: Dovel & Luner LLP

Address: 201 Santa Monica Blvd., Suite 600, Santa Monica, CA, 90401

Telephone Number: 310-656-7066          Fax Number: (310) 656-7069

Email: stephen@dovel.com

Counsel of record for the following party or parties: Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro

## SECTION II - TO ADD AN ATTORNEY TO THE DOCKET

*Please select one of the following options:*

☐ The attorney listed above has already appeared as counsel of record in this case and should have been added to the docket. The date of the attorney's first appearance in this case: _____ .

☒ The filing of this form constitutes the first appearance in this case of the attorney listed above. Other members of this attorney's firm or agency have previously appeared in the case.

☐ The filing of this form constitutes the first appearance in this case of the attorney listed above. No other members of this attorney's firm or agency have previously appeared in the case.

☐ By order of the court dated _____ in case number _____ (see attached copy), the attorney listed above may appear in this case without applying for admission to practice *pro hac vice*.

☐ This case was transferred to this district by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 from the _____ District of _____, where it was assigned case number _____. The attorney listed above is counsel of record in this case in the transferee district, and is permitted by the rules of the JPML to continue to represent his or her client in this district without applying for admission to practice *pro hac vice* and without the appointment of local counsel.

☐ On _____, the attorney listed above was granted permission to appear in this case *pro hac vice* before the Bankruptcy Court, and L.Bankr.R. 8 authorizes the continuation of that representation in this case before the District Court.

*In addition, if this is a criminal case, please check the applicable box below. The attorney listed above is:*

☐ USAO ☐ FPDO ☐ CJA Appointment ☐ Pro Bono ☐ Retained

## SECTION III - TO REMOVE AN ATTORNEY FROM THE DOCKET

***Notices of Electronic Filing will be terminated***. *Please select one of the following options:*

☐ The attorney named above has already been relieved by the Court as counsel of record in this case and should have been removed from the docket. Date of the order relieving this attorney: _____.

☐ Please remove the attorney named above from the docket of this case; at least one member of the firm or agency named above, and at least one member of the Bar of this Court, will continue to serve as counsel of record for the party or parties indicated.

*(Note: if you are removing yourself from the docket of this case as a result of separating from a firm or agency, you should consult Local Rules 5-4.8.1 and 83-2.4 and Form G-06 ("Notice of Change of Attorney Business or Contact Information"), concerning your obligations to notify the Clerk and parties of changes in your business or contact information.)*

☐ The represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing. Date party was dismissed: _____.

☐ The attorney named above was appointed on appeal and the appeal has been adjudicated. Date the mandate was filed: _____.

## SECTION IV - SIGNATURE

I request that the Clerk update the docket as indicated above.

Date: July 22, 2024

Signature: /s/ Stephen Andrews

Name: Stephen Andrews

# EXHIBIT 7

**DOVEL & LUNER, LLP**
Simon Franzini (SBN 287631)
simon@dovel.com
Gabriel Doble (SBN 335335)
gabe@dovel.com
Stephen D. Andrews (SBN 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, and ADRIANA DIGENNARO, on behalf of themselves and all others similarly situated, | Case No. 2:19-cv-10920-FMO-GJS |
| *Plaintiffs*, | **JOINT STIPULATION RE: EXTENDING BRIEFING OF THE PARTIES' MOTIONS AND RESCHEDULING HEARINGS** |
| v. | Hon. Fernando M. Olguin |
| GT'S LIVING FOODS, LLC, | |
| *Defendant*. | |

Pursuant to the Court's Standing Order and Local Rule 7-1, Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro ("Plaintiffs") and Defendant GT's Living Foods, LLC ("Defendant") (collectively, the "Parties"), by and through their respective counsel, hereby agree and stipulate as follows:

WHEREAS, on July 22, 2024, the Court ordered Defendant to file its Motion for Judgment on the Pleadings and Plaintiffs to file their Motion to Amend by August 7, 2024 (ECF No. 133);

WHEREAS, a hearing on both motions is set for September 5, 2024 (ECF Nos. 149, 150);

WHEREAS, by operation of Local Rule 7-3, oppositions for both motions are due on August 21, 2024;

WHEREAS, the Parties have a number of conflicts in the next few weeks, and two different attorneys-of-record at Dovel & Luner, LLP have long-planned vacations scheduled between now and August 21, 2024;

WHEREAS, Plaintiffs' former counsel (Bursor & Fischer, P.A. and Smith Krivoshey, PC) has begun to withdraw from this case (ECF Nos. 136-37, 139-44);

WHEREAS, Plaintiffs' new counsel (Dovel & Luner, LLP) has only recently substituted into this case and received former counsel's files, and Dovel & Luner, LLP needs time to familiarize itself with the details of the case and other related cases;

WHEREAS, the Parties mutually agree to extend the briefing schedule on their respective motions and reschedule the hearing date for those motions; and

WHEREAS, no prior request to expand the briefing deadlines or reschedule the hearings has been made.

NOW THEREFORE, pursuant to Local Rule 7-1 and the Court's Standing Order, the Parties stipulate, subject to the Court's approval, as follows:

1.  Opposition briefs on the Parties' respective motions shall be due by September 5, 2024;

2.  Reply briefs on the Parties' respective motions shall be due by September 26,

Joint Stipulation                    1                    Case No. 2:19-cv-10920-FMO-GJS

2024; and

3. The September 5, 2024 hearing date regarding the Parties' motion is vacated and rescheduled for October 10, 2024 at 10:00 a.m.

Dated: August 9, 2024

By: /s/ *Simon Franzini*
DOVEL & LUNER, LLP
Simon Franzini (SBN 287631)
simon@dovel.com
Gabriel Doble (SBN 335335)
gabe@dovel.com
Stephen D. Andrews (SBN 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

ZIMMERMAN REED LLP
Jeff Westerman (SBN 94559)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
E-Mail: Jeff.Westerman@zimmreed.com

*Attorneys for Plaintiffs*

Dated: August 9, 2024

By: /s/ *Jacob M. Harper*
DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
JHarper@dwt.com
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

*Attorneys for Defendant GT's Living Foods, LLC*

Joint Stipulation                                   2                    Case No. 2:19-cv-10920-FMO-GJS

## **Local Rule 5-4.3.4(a)(2)(i) Certification**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer of this document attests that concurrence in the filing has been obtained from each of the other signatories.


                                          */s/ Simon Franzini*
                                          Simon Franzini

# EXHIBIT 8

**DOVEL & LUNER, LLP**
Simon Franzini (SBN 287631)
simon@dovel.com
Gabriel Doble (SBN 335335)
gabe@dovel.com
Stephen D. Andrews (SBN 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, and ADRIANA DIGENNARO, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> *Defendant*. | Case No. 2:19-cv-10920-FMO-GJS <br><br> **Plaintiffs' Notice of Motion and Motion for Leave to File Second Amended Complaint** <br><br> Hearing Date: September 5, 2024 <br> Time: 10:00 a.m. <br> Dept: Courtroom 6D <br><br> Hon. Fernando M. Olguin |

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 5, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard, Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro move the Court for leave to file a Second Amended Complaint.

The hearing will occur at: United States Courthouse, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012 before the Honorable Fernando M. Olguin. This motion is based upon this Notice of Motion and Motion, accompanying Memorandum, exhibits, and any oral arguments presented at the hearing.

Pursuant to Section IV(B)(2) of Judge Fernando M. Olguin's Initial Standing Order, Plaintiffs identifies the following page and line numbers and wording of any proposed changes or additions of material to the Complaint in the below chart:

| Page | Line-Number(s) | Change |
|------|----------------|--------|
| Cover Page | 1-10 | Addition of Simon Franzini, Gabriel Z. Doble, and Stephen Andrews as counsel. |
| Cover Page | 12-18 | Removal of L. Timothy Fisher, Yeremey O. Krivoshey, and Scott A. Bursor as counsel. |
| Cover Page | 23-5 | Addition of Amit Patel, Lauren Schmidt, and Christopher Nunez as named plaintiffs. |
| Cover Page | 24 | Updating title to "Second Amended complaint." |
| 1 | 1-2 | Addition of Amit Patel, Lauren Schmidt, and Christopher Nunez to listed Plaintiffs. |
| 3 | 3 | Corrected spelling of "Enlightened." |
| 3 | 25 | Updated timeframe of Plaintiff Leder's product purchases to reflect seven years. |
| 4 | 4, 18, 21 | Corrected spelling of "Enlightened" and "experienced" |
| 5 | 4 | Updated timeframe of Plaintiff Weiler's product purchases to reflect seven years. |
| 5 | 10 | Corrected spelling of "Enlightened" |
| 6 | 4 | Updated timeframe of Plaintiff Sharpe's product purchases to reflect six years. |

i

| 7 | 10-27 | Plaintiff Amit Patel's facts and description inserted. |
| 8 | 1-6 | Plaintiff Amit Patel's facts and description inserted. |
| 8 | 7-27 | Plaintiff Christopher Nunez's facts and description inserted. |
| 9 | 1-18 | Plaintiff Christopher Nunez's facts and description inserted. |
| 9 | 19-27 | Plaintiff Lauren Schmidt's facts and description inserted. |
| 10 | 1-17 | Plaintiff Lauren Schmidt's facts and description inserted. |
| 11 | 7 | Addition of Schmidt to list of Plaintiffs that reside in a state different from the state of Defendant. |
| 14 | 14 | Corrected misspelling of "Older" |
| 15 | 16, 20 | Corrected misspelling of "Kombucha" |
| 20 | 18 | Corrected misspelling of "are" |
| 28 | 13 | Addition of Patel and Nunez as representatives of the California Subclass. |
| 28 | 16 | Addition of Schmidt and Nunez as representatives of the New York Subclass. |
| 28 | 19 | Addition of Nunez as a representative of the Under 21 Subclass. |
| 30 | 22 | Addition of Patel and Nunez as representatives of the California Subclass for Plaintiffs' Consumer Legal Remedies Act ("CLRA") claim. |
| 30 | 24-25 | Addition of Nunez as a representative of the Under 21 Subclass Plaintiffs' CLRA claim. |
| 33 | 25 | Addition of Patel and Nunez as representatives of the California Subclass for Plaintiffs' California Unfair Competition Law ("UCL") Claim. |
| 34 | 1 | Addition of Nunez as a representative of the Under 21 Subclass for Plaintiffs' UCL claim. |
| 36 | 16 | Addition of Patel and Nunez as representatives of the California Subclass for Plaintiffs' California False Advertising Law ("FAL") Claim. |

ii

Plaintiffs' Motion for Leave
to File Second Amended Complaint

Case No. 2:19-cv-10920-FMO-GJS

| 36 | 18 | Addition of Nunez as a representative of the Under 21 Subclass for Plaintiffs' FAL claim. |
|---|---|---|
| 38 | 26 | Addition of Schmidt as a listed plaintiff for Plaintiffs' New York General Business Law § 349. |
| 39 | 1 | Addition of Schmidt and Nunez as representatives of the New York Subclass for Plaintiffs' New York General Business Law § 349 Claim. |
| 40 | 22 | Addition of Schmidt and Nunez to listed representative Plaintiffs for New York Subclass. |
| 40 | 25 | Addition of Schmidt and Nunez to listed representative Plaintiffs for New York Subclass. |
| 45 | 9-10 | Addition of Patel and Nunez to Plaintiff's prayer for relief for the California Subclass. |
| 45 | 14-15 | Addition of Schmidt and Nunez to Plaintiff's prayer for relief for the New York Subclass. |
| 45 | 19-20 | Addition of Nunez to Plaintiff's prayer for relief for Under 21 Subclass. |
| 46 | 12 | Updated date. |
| 46-47 | 46:13-47:13 | Removal of L. Timothy Fisher, Yeremey O. Krivoshey, Scott A. Bursor, Jeff Westerman, and Ken Remson as counsel.<br><br>Addition of Dovel & Luner as counsel. |

Dated: August 7, 2024

By: /s/ *Simon Franzini*
DOVEL & LUNER, LLP
Simon Franzini (SBN 287631)
simon@dovel.com
Gabriel Doble (SBN 335335)
gabe@dovel.com
Stephen D. Andrews (SBN 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

iii

Plaintiffs' Motion for Leave
to File Second Amended Complaint

Case No. 2:19-cv-10920-FMO-GJS

ZIMMERMAN REED LLP
Jeff Westerman (SBN 94559)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
E-Mail: Jeff.Westerman@zimmreed.com

*Attorneys for Plaintiffs*

iv

| Plaintiffs' Motion for Leave to File Second Amended Complaint | Case No. 2:19-cv-10920-FMO-GJS |

# Table of Contents

I.     Introduction...........................................................................................................1

II.    Argument. ...........................................................................................................1

       A.      There is good cause to amend the complaint under Rule 16.............................1

       B.      Defendant cannot overcome the presumption that amendment must be allowed under Rule 15........................................................................................4

III.   Conclusion .........................................................................................................6

## Memorandum of Points and Authorities

### I.    Introduction.

In this putative class action, Plaintiffs challenge Defendant's sale of kombucha beverages as "non-alcoholic," when in fact they contain more than the legal limit of alcohol. On June 21, 2024, the Court denied Plaintiffs' motion for class certification without prejudice. Dkt. # 129. The Court expressed concern over Plaintiffs' then-current (now-former) counsel's ability to adequately represent the class in light of that counsel's involvement in a previous class action— *Retta v. Millennium Products, Inc.*, Case No. 15-CV-1801 (PSG) (C.D. Cal.)—against the same defendant.  Dkt. # 129 at 1-2. Although the Court made clear that "the majority of [its] concerns relate[d] to counsel," the Court also questioned whether the named plaintiffs would be adequate class representatives because, as a result of also being class members in the *Retta* action, they "would be subject to unique defenses." *Id.* at 2 n.3.

Immediately after the Court's order, Plaintiffs began seeking new counsel, and Plaintiffs' former counsel began the process of withdrawing from this case. Within a month, Plaintiffs retained new counsel—who was not involved in *Retta* and not previously involved in this action—and Plaintiffs' new counsel filed notices of appearance. Plaintiffs now move to amend the Complaint to add three additional named plaintiffs, who were not *Retta* class members. Plaintiffs maintain that the current named Plaintiffs are adequate class representatives for this action, despite previously being members of the *Retta* class. Nevertheless, Plaintiffs believe that it is in the best interests of the class to put forward class representatives who are not *Retta* class members in addition to ones who are. This will address any concerns that class members who were not also *Retta* class members are adequately represented. This constitutes good cause for amendment.

### II.    Argument.

#### A.    There is good cause to amend the complaint under Rule 16.

A party may amend a pleading after the deadline has passed "for good cause and

Plaintiffs' Motion for Leave
to File Second Amended Complaint

Case No. 2:19-cv-10920-FMO-GJS

with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

When a party diligently seeks an amendment after the presiding court identifies a potential deficiency with a complaint, the "good cause" standard is satisfied. The Ninth Circuit has held that a district court properly permits a party to amend its pleading when "the tenor of the case change[s] significantly" in light of a court order, and "this event, rather than any bad faith or dilatory purpose, motivate[s] [the] request" to amend. *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011). Accordingly, courts find that good cause exists for "amendments . . . aimed at remedying the deficiencies identified by the Court," so long as the movant "was diligent once the need for amendment became apparent." *Anderson v. United States*, 2019 U.S. Dist. LEXIS 65517, at *3 (W.D. Wash. Apr. 17, 2019).

For example, in *Anderson*, the court permitted a defendant to amend his answer when he "promptly filed [a] motion to amend" after "the Court found many of his affirmative defenses and counterclaims deficient." *Id.* As another example, good cause existed to amend plaintiff's complaint because plaintiff "diligently moved for leave to amend after receiving this Court's order explaining that its complaint and its barebones request for leave to amend were deficient." *Smoketree Holding LLC v. Apke*, 2024 U.S. Dist. LEXIS 32030, at *3 (D. Ariz. Feb. 23, 2024). And courts across the country have found good cause for amendments in similar circumstances. *See, e.g.*, *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 2002 U.S. Dist. LEXIS 20163, at *16 (D. Minn. Oct. 7, 2002) (finding good cause for amendment where plaintiffs were diligent in amending to add class representatives after the court had determined that ten of the eleven class representatives were time barred).

Here, Plaintiffs' proposed amendments are directly aimed at addressing the Court's potential concerns about the adequacy of the current named Plaintiffs to serve as class representatives. The Court's order on class certification—not any bad faith or

2

Plaintiffs' Motion for Leave                                    Case No. 2:19-cv-10920-FMO-GJS
to File Second Amended Complaint

dilatory purpose—motivates these amendments. Moreover, Plaintiffs acted diligently after receiving the Court's order. They immediately sought new counsel who was not involved in the *Retta* action.  And once new counsel was retained, Plaintiffs promptly sought to add the new plaintiffs, who were not *Retta* class members because they did not purchase Defendant's products during the *Retta* class period.[1] Thus, good cause exists because Plaintiffs acted diligently in light of the Court's order.

Allowing amendment here also serves Rule 16's purpose "to get cases decided on the merits of issues that are truly meritorious and in dispute." *Kirby v. McMenamins Inc.*, 2023 U.S. Dist. LEXIS 125674, at *11 (W.D. Wash. July 19, 2023) (quoting *In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006)). Where there are factors that may "impede [a named plaintiff's] ability to represent a class," "add[ing] named plaintiffs" serves to "better address" the core question of whether the defendant "violate[d] the law." *Id.* at *11-12. Plaintiffs seek to add new representatives so that this case is best situated to address the core merits question at issue here: whether Defendant sells alcoholic drinks disguised as non-alcoholic drinks.

Moreover, allowing amendment also serves Rule 16's purpose "to manage the cases . . . 'efficiently and effectively,' not to enforce deadlines 'mindlessly' or for no good reason." *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2021 U.S. Dist. LEXIS 250481, at *12 (C.D. Cal. Feb. 16, 2021) (quoting *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005)). There is currently no trial date set. Thus, granting leave to amend will not "significantly delay the trial," and therefore "there is no good reason to refuse an extension." *Id.* On the other hand, if the new plaintiffs are not permitted to join this class action, they may be forced to file an entirely separate class action alleging the same facts against the same defendant. This would achieve the same result, but in a much more circuitous and inefficient manner than simply adding them to this action. Thus, "failing to allow [the addition of] new parties at this point would

[1] The *Retta* class period was March 11, 2011 to February 26, 2017. *Retta*, 2017 WL 5479637, at *3 (C.D. Cal. 2017).

3

Plaintiffs' Motion for Leave
to File Second Amended Complaint                    Case No. 2:19-cv-10920-FMO-GJS

merely require the filing of a new case and would waste the resources of both of the parties and the judiciary." *Krause-Pettai v. Unilever United States, Inc.*, 2022 U.S. Dist. LEXIS 114560, at *9 (S.D. Cal. June 28, 2022). "The policies favoring judicial economy suggest that these parties and matters should be litigated in a single action, rather than in multiple actions." *Id.*

## B. Defendant cannot overcome the presumption that amendment must be allowed under Rule 15.

After a plaintiff demonstrates good cause under Rule 16(b), then courts consider whether the requested amendment of the complaint is proper under Rule 15(a). *See Johnson*, 975 F.2d at 607-09. Under Rule 15(a), a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). "[T]here exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* at 1052. To overcome this presumption, the nonmoving party must show "prejudice, or a strong showing of any of the remaining *Foman* factors." *Id.* at 1052.[2]

Here, Defendant cannot show prejudice. As "[t]he party opposing amendment," Defendant "bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). The Court has yet to set a pretrial conference or trial date. *See* Scheduling Order (Dkt. # 24) at 18. "[T]he Ninth Circuit has noted that prejudice is especially unlikely where, as in this case, no trial date has been set." *Wilkins-Jones v. Cty. of Alameda*, 2011 U.S. Dist. LEXIS 92904, at *34 (N.D. Cal. Aug. 19, 2011) (citing *DCD Programs*, 833 F.2d at 187-88). Plus, the vast bulk of discovery has already been completed. The addition of new named Plaintiffs will not require Plaintiffs to obtain any new discovery from Defendant. Nor will their addition force Defendant to conduct

---

[2] The *Foman* factors are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital*, 316 F.3d at 1052.

4

Plaintiffs' Motion for Leave                                  Case No. 2:19-cv-10920-FMO-GJS
to File Second Amended Complaint

additional expert discovery. Instead, any new discovery will be limited to ascertaining whether the new named Plaintiffs are adequate class representatives, which can be accomplished efficiently in a matter of weeks.[3] Anyway, "the prospect of some additional discovery does not translate into unfair prejudice to the defendant." *Hazdovac v. Mercedes-Benz USA, LLC*, 2022 U.S. Dist. LEXIS 7110, at *8 (N.D. Cal. Jan. 13, 2022). And courts across the country have found "even if [the defendant] needs to depose each of the new class representatives and review documents related to their claims in the context of this litigation, four depositions and relatively limited document review hardly seems an undue burden." *In re Lutheran Bhd.*, 2002 U.S. Dist. LEXIS 20163, at *16; *Thurston v. Progressive Cas. Ins. Co.*, 2024 U.S. Dist. LEXIS 114030, at *6 (D. Me. June 28, 2024) ("[New named plaintiffs'] addition to the case will not require a total restart of fact discovery but rather a brief reopening to investigate their individual claims.").

Nor can Defendant make a showing (much less a strong one) that any of the remaining *Forman* factors weigh against amendment. As just described, any delay introduced by the amendment would be minimal, and more than warranted to ensure that the proposed class is adequately represented. There was no bad faith or dilatory motive on Plaintiffs' part: Plaintiffs promptly sought leave to amend as soon as the Court identified a potential problem with the existing class representatives; and they are seeking amendment for a legitimate reason (to ensure that the interests of all class members are adequately protected). There have not been any prior attempts to cure the potential deficiencies the Court identified with the existing named Plaintiffs as class representatives. And amendment would not be futile, as it would result in the addition of proposed class representatives who are not *Retta* class members and thus cannot possibly be subject to the concern the Court articulated in its class certification order.

Finally, the Court "must be guided by the underlying purpose of Rule 15—to

---

[3] If the amendment is permitted, the proposed new Plaintiffs will respond to the same discovery already served on the existing Plaintiffs on an expedited basis and promptly make themselves available for deposition.

Plaintiffs' Motion for Leave                                              Case No. 2:19-cv-10920-FMO-GJS
to File Second Amended Complaint

facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted). As described above, allowing the addition of new named plaintiffs will facilitate a decision on the merits and will avoid the judicial inefficiencies that would accompany having to file an entirely separate proceeding on behalf of new plaintiffs to represent proposed class members who are not *Retta* class members.

**III.    Conclusion.**

The Court should grant Plaintiffs' motion to amend the complaint.

Dated: August 7, 2024                    Respectfully submitted,

By: */s/ Simon Franzini*
DOVEL & LUNER, LLP
Simon Franzini (SBN 287631)
simon@dovel.com
Gabriel Doble (SBN 335335)
gabe@dovel.com
Stephen D. Andrews (SBN 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

ZIMMERMAN REED LLP
Jeff Westerman (SBN 94559)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
E-Mail: Jeff.Westerman@zimmreed.com

*Attorneys for Plaintiffs*

Plaintiffs' Motion for Leave                    Case No. 2:19-cv-10920-FMO-GJS
to File Second Amended Complaint

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certify that this brief contains 1,892 words, which complies with the word limit of L.R. 11-6-1.

Dated: August 7, 2024

Respectfully submitted,

By: /s/ *Simon Franzini*
DOVEL & LUNER, LLP
Simon Franzini (SBN 287631)
simon@dovel.com
Gabriel Doble (SBN 335335)
gabe@dovel.com
Stephen D. Andrews (SBN 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

ZIMMERMAN REED LLP
Jeff Westerman (SBN 94559)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
E-Mail: Jeff.Westerman@zimmreed.com

*Attorneys for Plaintiffs*

7

Plaintiffs' Motion for Leave
to File Second Amended Complaint

Case No. 2:19-cv-10920-FMO-GJS

# EXHIBIT 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorney Present for Plaintiffs: | Attorney Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:**      **(In Chambers) Order Re: Pending Motion [171]**

Having reviewed all the briefing filed with respect to defendant GT's Living Foods, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint and for Judgment on the Pleadings (Dkt. 171, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**[1]

On December 27, 2019, Delaney Sharpe ("Sharpe"), Erin Weiler ("Weiler"), Jenna Leder ("Leder"), and Adriana DiGennaro ("DiGennaro") filed this putative class action against GT's Living Foods, LLC ("GTLF" or "defendant"), (see Dkt. 1, Complaint), and subsequently filed a First Amended Complaint ("FAC") asserting claims for: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (4) violation of New York's Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law §§ 349, et seq.; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) fraud; and (8) unjust enrichment. (See Dkt. 29, FAC at ¶¶ 74-138).

This action arises from allegations that defendant falsely labels its "Enlightened Kombucha" line of beverages as non-alcoholic when, in fact, the subject beverage[2] contains more than .5 percent alcohol by volume, exceeding the legal limit for non-alcoholic beverages. (See Dkt. 29,

---

[1] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

[2] The Enlightened Kombucha line refers to every flavor of GTLF's Enlightened Synergy and Enlightened Kombucha beverages. (See Dkt. 29, FAC at ¶ 1 n. 1). For purposes of the pending Motion, the court will at times simply refer to the product as "defendant's kombucha."

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, <u>et</u> <u>al.</u> v. GT's Living Foods, LLC** | | |

FAC at ¶¶ 1-2). In addition, plaintiffs allege that GTLF "greatly understates by omission the sugar content of its Enlightened Kombucha beverages on the products' labels, making consumers believe the beverages are healthier than they really are." (<u>Id.</u> at ¶ 2). According to plaintiffs, the "undeclared high sugar content of [GTLF's] Enlightened Kombucha beverages contributes to the continued fermentation of the beverages after bottling" which "causes the Enlightened Kombucha line to cross the .5 percent alcohol by volume threshold set for non-alcoholic beverages." (<u>Id.</u>).

In June 2024, the court denied plaintiffs' motion for class certification without prejudice primarily due to procedural issues. (<u>See</u> Dkt. 129, Court's Order of June 21, 2024, at 1). But the court also expressed concern regarding the adequacy of named plaintiffs and proposed class counsel given the settlement in a previously filed class action against defendant – <u>Retta v. Millennium Products, Inc.</u>, CV 15-1801 PSG ("<u>Retta</u> Action"). (<u>See</u> <u>id.</u> at 2-5). On August 22, 2017, Judge Gutierrez (Ret.) granted final approval of the settlement in that case. <u>See</u> <u>Retta v. Millennium Products, Inc.</u>, 2017 WL 5479637, *10 (C.D. Cal. 2017).

In its order denying class certification, the court explained that the <u>Retta</u> Action involved the same allegations regarding the alcohol and sugar levels in defendant's kombucha, asserted the same claims for relief under California and New York law, and was filed by the same attorneys that filed the instant action, <u>i.e.</u>, Bursor & Fisher ("Bursor"). (<u>See</u> Dkt. 129, Court's Order of June 21, 2024, at 2). The court noted that Bursor had made representations to the <u>Retta</u> court regarding the settlement terms that appeared to undermine the instant action and Bursor's ability to "'fairly and adequately represent the interests of the class[,]' [] <u>i.e.</u>, to vigorously and effectively litigate the present action." (<u>See</u> <u>id.</u>) (quoting Fed. R. Civ. P. 23(g)(B)). In response to court's order denying class certification, Bursor withdrew and new counsel appeared. (<u>See</u> Dkt. 130, 131, 134, 141-144). To address the concerns raised by the court, plaintiffs, via new counsel, sought leave to file a Second Amended Complaint ("SAC") to add three new named plaintiffs who were not <u>Retta</u> class members. (<u>See</u> Dkt. 150, Plaintiffs' Motion for Leave to File SAC at 1). The court granted plaintiffs' motion, (<u>see</u> Dkt. 167, Court's Order of December 17, 2024, at 2), and on December 17, 2024, plaintiffs filed the SAC, which added the new named plaintiffs: Amit Patel ("Patel"), Christopher Nunez ("Nunez"), and Lauren Schmidt ("Schmidt") (collectively "Patel plaintiffs"). (<u>See</u> Dkt. 168, SAC at ¶¶ 17-24). Other than the allegations specific to the Patel plaintiffs, the SAC does not materially differ from the FAC. (<u>Compare</u> Dkt. 29, FAC, <u>with</u> Dkt. 168, SAC); (<u>see</u>, <u>generally</u>, Dkt. 150-3, Pls.' Exh. 2, Redlined SAC). Now pending is defendant's Motion, by which defendant seeks dismissal of the action based on lack of jurisdiction and for failure to state a claim.

## **LEGAL STANDARD**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[3] Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when

---

[3] Here, defendant filed its Answer on February 12, 2021. (<u>See</u> Dkt. 54, Answer).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). The court must accept all facts in the complaint as true, and construe them in the light most favorable to the non-moving party. See Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog[,]" because the motions are "functionally identical[.]" Dworkin v. Hustler Mag., Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

As with a Rule 12(b) motion to dismiss, a Rule 12(c) motion should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted). "Specific facts are not necessary; the [complaint] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); see Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. See Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by, Neitze v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989); 2 Moore's Federal Practice § 12.34[4][b] ("Dismissal under Rule 12(b)(6) . . . is also appropriate when a successful affirmative defense or other bar to relief on the claim is conclusively established on the face of the complaint.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

**DISCUSSION**

I.   RETTA SETTLEMENT.

Defendant contends that the court lacks jurisdiction over the initial plaintiffs – Sharpe, Weiler, Leder, and DiGennaro (collectively "Sharpe plaintiffs") – because they were Retta class members and are therefore covered by the settlement in that case. (See Dkt. 171, Motion at 7-11). The court agrees. The Retta court "retain[ed] exclusive jurisdiction over Defendant[] and the Settlement Class Members for all matters relating to this litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this Order." Retta, 2017 WL 5479637, at *19. In denying plaintiffs' motion for class certification, this court found that the Sharpe "plaintiffs are challenging the [same] alcohol warning label [that their prior counsel, Bursor,] . . . negotiated in Retta." (See Dkt. 129, Court's Order of June 21, 2024, at 3). Indeed, the court noted that the Retta plaintiffs "touted the settlement's 'expansive injunctive relief,' which included 'a warning on its labels that 'the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]'" (Id. at 2-3). In other words, it appears that the Sharpe plaintiffs are improperly seeking to enforce or challenge the Retta Settlement. (See Dkt. 129, Court's Order of June 21, 2024, at 3) (finding that the Sharpe "plaintiffs are challenging the alcohol warning label they negotiated in Retta"). Thus, for the reasons set forth in the Court's Order of June 21, 2024 (Dkt. 129), the court finds that the Sharpe plaintiffs should be dismissed from this action.[4]

However, GTLF's contention that the Patel plaintiffs' claims should also be dismissed for similar reasons, (see Dkt. 171, Motion at 11-12), is without merit. The Patel plaintiffs were not Retta class members, and are not bound by the settlement in that case. See Asghari v. Volkswagen Grp. of America, Inc., 2015 WL 12732462, *38 (C.D. Cal. 2015) ("Non-class members are not bound by the settlement; their rights and interests are not impacted by the release of claims."). Contrary to defendant's contention, (Dkt. 171, Motion at 11), it cannot be said that the Patel plaintiffs are "in privity with the Retta plaintiffs" since they were not Retta class members and because their claims did not arise until after the Retta settlement. That is, they did not begin

---

[4] Plaintiffs' contention that this action is not implicated by Retta because the claims here involve "subsequent conduct," (see Dkt. 173, Plaintiffs' Opposition to Defendant's Motion ("Opp.") at 4), is unpersuasive because the gist of the SAC is that the label on defendant's kombucha is inadequate. But this is the label that was negotiated in the Retta settlement and touted to the Retta court in seeking approval of the settlement. In any event, even if the court declined to dismiss the Sharpe plaintiffs, the court would be unable to approve them as class representatives for the reasons set forth in the court's order denying class certification, i.e., they would be inadequate under Rule 23(a)(3)-(4) as they would be subject to unique defenses. (See Dkt. 129, Court's Order of June 21, 2024, at 2 & n. 3)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

purchasing and drinking defendant's kombucha until after the close of the <u>Retta</u> class period.[5]

II.      JUDGMENT ON THE PLEADINGS.

Defendant contends that plaintiffs' claims fail on the merits because the "labels are not deceptive." (<u>See</u> Dkt. 171, Motion at 18).  It argues that no reasonable consumer could be misled as to alcohol content "since each Enlightened Kombucha label includes a clear warning that the product contains alcohol – a warning Judge Gutierrez held sufficient as a matter of law[.]"  (<u>Id.</u> at 20).  It further argues that courts in the Ninth Circuit "consistently dismiss comparable claims when the product label actually discloses the allegedly omitted information."  (<u>Id.</u>).  Defendant's arguments are unpersuasive.

The product label added to defendant's kombucha states: "[T]he products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]"  <u>Retta</u>, 2017 WL 5479637, at *2.  But the SAC does not take issue with the fact that defendant's kombucha contains alcohol per se.  (<u>See</u>, <u>generally</u>, Dkt. 168, SAC).  Rather, plaintiffs allege that defendant's kombucha "contain[s] 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages[,]" (<u>id.</u> at ¶ 1), and because it has greater than .5 percent alcohol by volume, (<u>see</u> <u>id.</u> at ¶¶ 33, 47-54), it is required to, but does not, include the mandatory Surgeon General warning required for alcoholic beverages. (<u>See</u> <u>id.</u> at ¶¶ 36, 60).  According to plaintiffs, because "alcoholic beverages are illegal to consume while driving, illegal to purchase by or for minors, illegal to consume by minors, and subject to numerous other restrictions that non-alcoholic beverages are not[,] . . . whether [d]efendant's kombucha qualifies as alcoholic (0.5% or more alcohol) or non-alcoholic (less than 0.5% alcohol) has serious legal implications for consumers of those beverages." (Dkt. 173, Opp. at 16-17); (<u>see</u> Dkt. 168, SAC at ¶ 64).  That no reasonable consumer could be misled to believe that defendant's kombucha contains some alcohol is different from saying that no reasonable consumer could be misled to believe that defendant's kombucha is an alcoholic beverage containing more than 0.5% alcohol by volume.

---

[5]  Defendant cites <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency</u>, 322 F.3d 1064, 1084 n. 18 (9th Cir. 2003) for the proposition that <u>Retta</u> binds non-class members who are in privity with class members. (<u>See</u> Dkt. 171, Motion at 11).  <u>Tahoe-Sierra</u> is inapposite.  As an initial matter, the case did not involve a class action and the issue of non-class members.  Instead, the court was dealing with successive suits by an association representing its members.  <u>See</u> <u>Tahoe-Sierra</u>, 322 F.3d at 1084.  The court explained that the plaintiff association "should not be able to evade preclusion continually by averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members." <u>Id.</u> (internal quotation marks omitted); <u>see</u> <u>also</u> <u>id.</u> at 1082 ("One of the relationships that has been deemed 'sufficiently close' to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members.").  <u>Retta</u> involved individual consumer plaintiffs and class members, not an association and its members.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

Finally, defendant contends that the sugar-related claims are expressly preempted by the Federal Food, Drug, and Cosmetics Act ("FDCA") because the "claims are based on an alleged 15% excess of sugar beyond what is indicated on the label," which falls within the applicable safe-harbor provision. (See Dkt. 171, Motion at 21-22). It points out that FDA regulations permit "a 20% margin of error for nutrient disclosures." (Id.) (citing 21 C.F.R. § 101.9(g)(5)). However, the court agrees with plaintiffs that the SAC's allegations can reasonably be read to encompass claims that defendant's kombucha contains 20% more sugar than listed on the labels, particularly since the SAC cites a study reporting that "54 out of 60 GT's Kombucha contained sugar content more than 20% higher than the claimed amount on the label." (Dkt. 168, SAC at ¶ 15); (Dkt. 168-2, Exh. 2, Declaration of Blake Ebersole at ¶ 15).

**CONCLUSION**

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis**.

Based on the foregoing, IT IS ORDERED THAT defendant's Motion **(Document No. 171)** is **granted in part and denied in part**. The Motion is granted as to plaintiffs Sharpe, Weiler, Leder, and DiGennaro who are dismissed with prejudice. The Motion is denied in all other respects.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

# EXHIBIT 10

Case 2:19-cv-10920-FMO-GJS   Document 230   Filed 10/23/25   Page 1 of 1 Page ID
#:15375

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **October 23, 2025** |
|---|---|---|---|

| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** |
|---|---|

---

| Present: The Honorable | Fernando M. Olguin, United States District Judge |
|---|---|

| Vanessa Figueroa | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorney Present for Plaintiffs: | Attorney Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order Re: Further Proceedings**

Having reviewed the docket in this action, IT IS ORDERED THAT:

1.  Any remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **December 29, 2025**.

2.  Any renewed motion for class certification shall be filed no later than **February 27, 2026**, and noticed for hearing regularly under the Local Rules.[1]  Any untimely or non-conforming motion will be denied.  *The motion for class certification shall comply with the requirements set forth in the Court's Order Re: Motions for Class Certification issued March 20, 2020 (Dkt. 26).*

3.   The court will set dates and deadlines for summary judgment,[2] trial, the pretrial conference, and the parties' pretrial filings after the resolution of the motion for class certification.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

---

[1]  Any challenge to expert testimony pursuant to Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S.Ct. 2786 (1993), or Federal Rules of Evidence 702-704, must be done within the joint brief, or in a separate motion that is filed at the same time the joint brief is filed.

[2]  Each party is allowed only one potentially dispositive motion.

CV-90 (06/04)          **CIVIL MINUTES - GENERAL**          Page 1 of 1

# EXHIBIT 11

Jacob M. Harper (SBN 259463)
    *jacobharper@dwt.com*
Heather F. Canner (SBN 292837)
    *heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
    *josepheliemeyers@dwt.com*
Peter K. Bae (SBN 329158)
    *peterbae@dwt.com*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant
GT's Living Foods, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GT'S LIVING FOODS, LLC, <br><br> Defendant. | Case No. 2:19-cv-10920-FMO-GJS <br><br> Assigned to the Hon. Fernando M. Olguín <br><br> **ORDER GRANTING STIPULATED REQUEST [184] TO FURTHER AMEND DISCOVERY DEADLINE** <br><br><br> Complaint Filed: December 27, 2019 <br> SAC Filed: December 17, 2024 <br> Trial Date: Not Set |

# ORDER

Having considered the Stipulated Request to Further Amend Discovery Deadline, and for good cause shown, the Court ORDERS that its prior scheduling order (Dkt. 183) shall be modified as follows:

1.  Any remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**.

2.  Depositions of the newly added named plaintiffs shall take at the following places, dates, and times:

**Christopher Nunez:**   January 8, 2026, at 10:00 a.m.Pacific
Los Angeles office of Davis Wright Tremaine, LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071

**Lauren Schmidt:**   January 14, 2026, at 10:00 a.m. Eastern
New York City office of Davis Wright Tremaine, LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104

**Amit Patel:**   January 16, 2026, at 10:00 a.m. Pacific
Los Angeles office of Davis Wright Tremaine, LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071

**IT IS SO ORDERED.**

Dated: <u>December 23, 2025</u>

<u>          /s/          </u>
THE HON. FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE

ORDER GRANTING STIPULATED
REQUEST TO AMEND DEADLINE

1

# EXHIBIT 12

DAVIS WRIGHT TREMAINE LLP
   Jacob M. Harper (SBN 259463)
   *jacobharper@dwt.com*
   Heather F. Canner (SBN 292837)
   *heathercanner@dwt.com*
   Joseph Elie-Meyers (SBN 325183)
   *josepheliemeyers@dwt.com*
   Peter K. Bae (SBN 329158)
   *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>      vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>                              Defendant. | Case No. 2:19-cv-10920-FMO-GJS<br><br>**DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF LAUREN SCHMIDT, SET ONE** |

PROPOUNDING PARTY:    Defendant GT's Living Foods, LLC

RESPONDING PARTY:    Plaintiff Lauren Schmidt

SET NUMBER:    One

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant GT's Living Foods, LLC ("GT's") requests that Plaintiff Lauren Schmidt respond and produce documents responsive to the following Requests for Production ("Requests"), no later than thirty (30) days after service, at the law firm of Davis Wright Tremaine LLP, 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071, for the purpose of inspection and/or copying by GT's or its counsel.

## DEFINITIONS

A.      "PLAINTIFF," "YOU," and "YOUR" as used herein means Plaintiff Lauren Schmidt, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on her behalf.

B.      "GT'S" or "DEFENDANT" as used herein means Defendant GT's Living Foods, LLC and its representatives, officers, employees, managers, attorneys, and other agents.

C.      "PRODUCT" or "PRODUCTS" as used herein means DEFENDANT'S Enlightened Kombucha and Enlightened Synergy beverage products identified in the operative COMPLAINT, including all flavors and varieties.

D.      "PROMOTIONAL MATERIALS" as used herein means any COMMUNICATION created, displayed, distributed, posted, or otherwise disseminated by DEFENDANT that advertises, describes, labels, or otherwise promotes the PRODUCT(S), including, but not limited to: product labels, in-store displays, retailer webpages and product listings, social media posts or ads, press releases, and other promotional content.

E.      "COMMUNICATION" or COMMUNICATIONS" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct

1

messaging in applications, and other computer-generated messages, and instant and text messages.

F.    "ALCOHOL CLAIMS" means any statement, representation, omission, or implication in PROMOTIONAL MATERIALS or other COMMUNICATIONS that (a) refers to, describes, or implies the PRODUCT'S alcohol content; (b) addresses the PRODUCT'S regulatory status as an alcoholic versus non-alcoholic beverage; (c) warns or allegedly fails to warn about alcohol-related risks; or (d) otherwise communicates information about fermentation or alcohol generation after bottling.

G.    "SUGAR CLAIMS" means any statement, representation, omission, or implication in PROMOTIONAL MATERIALS or other COMMUNICATIONS that refers to, describes, or implies the PRODUCT'S sugar content or sweetness.

H.    "PERSON" or "PERSONS" as used herein means and includes all natural persons, partnerships, joint ventures, and every other form of legally recognized entity, including but not limited to corporations.

I.    "DOCUMENT" or "DOCUMENTS" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.  A copy or duplicate of a DOCUMENT which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate DOCUMENT within the meaning of this term.  DOCUMENTS include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other COMMUNICATIONS.

2

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

J.      "RELATE", "RELATED", or "RELATING" as used herein means and include constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, regarding, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.

K.      "COMPLAINT" as used herein means the Second Amended Complaint captioned *Patel et al. v. GT's Living Foods LLC*, which was filed on December 17, 2024, Case No. 2:19-cv-10920-FMO-GJS.

L.      "RETTA ACTION" as used herein means the litigation in *Retta v. Millennium Products, Inc.*, Case No. CV 15-1801 PSG, presided over by United States District Judge Philip S. Gutierrez in the Central District of California.

M.      "RELEVANT TIME PERIOD" as used herein means February 28, 2017,  through the present.

N.      The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of the request.

O.      The terms "all," "any," "each," and "every" encompass any and all of the matter discussed.

P.      The use of singular form includes plural, and vice versa.

Q.      The use of present tense includes past tense, and vice versa.

## INSTRUCTIONS

1.      All requested Documents must be produced in their entirety, with all attachments and enclosures.

2.      In responding to each Request, You are to conduct a reasonable search and diligent inquiry for and produce each and every Document in Your possession,

3

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

custody, or control.  If no such Documents exist, please state that fact in Your response and detail the search you undertook to locate such records.

3.    Documents attached to each other should not be separated.

4.    Each Document should be produced in such fashion as to identify the location where the Documents are stored and whether they were found within the possession of Plaintiff or another natural person.

5.    Documents originating in paper form shall be copied as they are kept in the normal course of business, and any titles, labels, or other descriptions on any box, folder, binder, file cabinet, or other container shall be copied as well. Documents originating in paper format should be scanned as images at the time of copying, with optical character recognition ("OCR").  Scanned images shall be produced in the same load format as electronically stored information, as set forth below.

6.    Documents shall be produced with a Concordance-style load file (.dat) along with extracted text and single-page image files (TIFF/JPG). For Documents whose native format is MS Excel, MS Access, other database formats, audio/video, or any other file type that cannot be converted to TIFF, the original native files should be produced in addition to a single-page TIFF placeholder. To the extent possible, each file should be accompanied with one corresponding text file. The text files should be produced separately, and not included in the load files.

7.    With respect to any DOCUMENT responsive to these Requests that YOU contend YOU are not required to produce because of an alleged privilege, describe each such DOCUMENT withheld from production by (1) giving the date of the DOCUMENT, (2) identifying the authors and recipients of the DOCUMENT (including PERSONS receiving copies), (3) identifying any attorneys or other PERSONS who YOU contend trigger the stated privilege, (4) providing a brief description of the subject matter of the DOCUMENT sufficient to determine the

4

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

applicability of the stated privilege and (5) stating the privilege asserted and any statute which YOU contend supports YOUR assertion of the privilege.

8.    If You consider any Request or portion of a Request objectionable, state the specific ground for the objection.  If that objection applies to only a portion or portions of the Request, answer to the fullest extent possible the portions to which You have raised no objection.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR purchases of the PRODUCT during the RELEVANT TIME PERIOD, including but not limited to receipts and bank statements reflecting such purchase.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS and COMMUNICATIONS that RELATE to where YOU purchased the PRODUCT(S), including from online personal grocery shipping services (e.g., Instacart, DoorDash, Uber Eats, Postmates, GrubHub, Amazon Flex, Caviar, Shipt, Favor, and ChowNow), or brick-and-mortar retail stores, during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS and COMMUNICATIONS RELATING to when YOU purchased the PRODUCT during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS and COMMUNICATIONS RELATING to any PROMOTIONAL MATERIALS YOU relied upon in making YOUR purchase of the PRODUCT during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 5:**

All labels, packaging, advertisements, and other PROMOTIONAL MATERIALS for the PRODUCT, including photographs, pictures, or other copies, during the RELEVANT TIME PERIOD.

5

representative(s) and any other members of the proposed class you seek to represent, regarding GT'S.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that evidence, refer to, or RELATE to any COMMUNICATION that YOU or YOUR attorney(s) or other representative(s) made or received RELATING to GT'S or the PRODUCT at issue in the COMPLAINT, on any publicly accessible medium, including without limitation, Internet websites, social networking sites, news groups, chat rooms, and online services (such as Facebook, Instagram, Twitter, or LinkedIn).

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS and COMMUNICATIONS that RELATE to the manner in which YOU became a party to this action, including, but not limited to advertisements or news articles, solicitations, emails, notices, or correspondence to which YOU responded and YOUR response.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 79 of YOUR COMPLAINT that "[t]he claims of the named Plaintiffs are typical of the claims of the Class."

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent … and they intend to prosecute this action vigorously."

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "[t]he interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 81 of YOUR COMPLAINT that "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. . . . Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues."

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING to actual or potential conflicts of interest YOU may have with putative or purported class members that make up the alleged class as pled in YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and COMMUNICATIONS RELATING to any representations, agreements, promises or assurances YOU received about any monetary recovery YOU might receive as a result of YOUR participation as a plaintiff in this lawsuit.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

8

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that GT'S "has passed off millions of bottles of its wildly successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages."

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that "the purported distinction between the 'Classic' and 'Enlightened' lines is a sham designed to confuse the public and government regulators."

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 2 of YOUR COMPLAINT that "the undeclared high sugar content of Defendant's Enlightened Kombucha beverages contributes to the continued fermentation of the beverages after bottling."

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 37 of YOUR COMPLAINT that "Defendant actively

9

sober (she did not knowingly consume alcohol) in 2021, and she relied on kombucha products as an alternative to alcohol. She would not have risked breaking her sobriety by purchasing Enlightened Kombucha had she known that it contained spiked levels of alcohol."

DATED: November 13, 2025

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
HEATHER F. CANNER
JOSEPH ELIE-MEYERS
PETER K. BAE

By: _____
          Jacob M. Harper
     Attorneys for Defendant
     GT's Living Foods, LLC

14

<u>PROOF OF SERVICE</u>

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On November 13, 2025, I served the foregoing document(s) described as: **DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF LAUREN SCHMIDT, SET ONE,** by placing a **true copy** of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com

___ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

_X_ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **michaelmyers@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on November 13, 2025, at Los Angeles, California.

☐    State      I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X    Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

|  | */s/ Michael Myers* |
| --- | --- |
| Michael Myers | Signature |

15

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF LAUREN SCHMIDT, SET ONE

# EXHIBIT 13

DAVIS WRIGHT TREMAINE LLP
  Jacob M. Harper (SBN 259463)
  *jacobharper@dwt.com*
  Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
  Joseph Elie-Meyers (SBN 325183)
  *josepheliemeyers@dwt.com*
  Peter K. Bae (SBN 329158)
  *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> GT'S LIVING FOODS, LLC, <br><br> Defendant. | Case No. 2:19-cv-10920-FMO-GJS <br><br> **DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE** |

PROPOUNDING PARTY:    Defendant GT's Living Foods, LLC

RESPONDING PARTY:    Plaintiff Christopher Nunez

SET NUMBER:    One

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant GT's Living Foods, LLC ("GT's") requests that Plaintiff Christopher Nunez respond and produce documents responsive to the following Requests for Production ("Requests"), no later than thirty (30) days after service, at the law firm of Davis Wright Tremaine LLP, 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071, for the purpose of inspection and/or copying by GT's or its counsel.

## DEFINITIONS

A.      "PLAINTIFF," "YOU," and "YOUR" as used herein means Plaintiff Christopher Nunez, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on his behalf.

B.      "GT'S" or "DEFENDANT" as used herein means Defendant GT's Living Foods, LLC and its representatives, officers, employees, managers, attorneys, and other agents.

C.      "PRODUCT" or "PRODUCTS" as used herein means DEFENDANT'S Enlightened Kombucha and Enlightened Synergy beverage products identified in the operative COMPLAINT, including all flavors and varieties.

D.      "PROMOTIONAL MATERIALS" as used herein means any COMMUNICATION created, displayed, distributed, posted, or otherwise disseminated by DEFENDANT that advertises, describes, labels, or otherwise promotes the PRODUCT(S), including, but not limited to: product labels, in-store displays, retailer webpages and product listings, social media posts or ads, press releases, and other promotional content.

E.      "COMMUNICATION" or COMMUNICATIONS" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct

1

messaging in applications, and other computer-generated messages, and instant and text messages.

F.    "ALCOHOL CLAIMS" means any statement, representation, omission, or implication in PROMOTIONAL MATERIALS or other COMMUNICATIONS that (a) refers to, describes, or implies the PRODUCT'S alcohol content; (b) addresses the PRODUCT'S regulatory status as an alcoholic versus non-alcoholic beverage; (c) warns or allegedly fails to warn about alcohol-related risks; or (d) otherwise communicates information about fermentation or alcohol generation after bottling.

G.    "SUGAR CLAIMS" means any statement, representation, omission, or implication in PROMOTIONAL MATERIALS or other COMMUNICATIONS that refers to, describes, or implies the PRODUCT'S sugar content or sweetness.

H.    "PERSON" or "PERSONS" as used herein means and includes all natural persons, partnerships, joint ventures, and every other form of legally recognized entity, including but not limited to corporations.

I.    "DOCUMENT" or "DOCUMENTS" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.  A copy or duplicate of a DOCUMENT which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate DOCUMENT within the meaning of this term.  DOCUMENTS include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other COMMUNICATIONS.

2

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

J.    "RELATE", "RELATED", or "RELATING" as used herein means and include constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, regarding, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.

K.    "COMPLAINT" as used herein means the Second Amended Complaint captioned *Patel et al. v. GT's Living Foods LLC*, which was filed on December 17, 2024, Case No. 2:19-cv-10920-FMO-GJS.

L.    "RETTA ACTION" as used herein means the litigation in *Retta v. Millennium Products, Inc.*, Case No. CV 15-1801 PSG, presided over by United States District Judge Philip S. Gutierrez in the Central District of California.

M.    "RELEVANT TIME PERIOD" as used herein means February 28, 2017, through the present.

N.    The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of the request.

O.    The terms "all," "any," "each," and "every" encompass any and all of the matter discussed.

P.    The use of singular form includes plural, and vice versa.

Q.    The use of present tense includes past tense, and vice versa.

## INSTRUCTIONS

1.    All requested Documents must be produced in their entirety, with all attachments and enclosures.

2.    In responding to each Request, You are to conduct a reasonable search and diligent inquiry for and produce each and every Document in Your possession,

3

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

custody, or control.  If no such Documents exist, please state that fact in Your response and detail the search you undertook to locate such records.

3.    Documents attached to each other should not be separated.

4.    Each Document should be produced in such fashion as to identify the location where the Documents are stored and whether they were found within the possession of Plaintiff or another natural person.

5.    Documents originating in paper form shall be copied as they are kept in the normal course of business, and any titles, labels, or other descriptions on any box, folder, binder, file cabinet, or other container shall be copied as well. Documents originating in paper format should be scanned as images at the time of copying, with optical character recognition ("OCR").  Scanned images shall be produced in the same load format as electronically stored information, as set forth below.

6.    Documents shall be produced with a Concordance-style load file (.dat) along with extracted text and single-page image files (TIFF/JPG). For Documents whose native format is MS Excel, MS Access, other database formats, audio/video, or any other file type that cannot be converted to TIFF, the original native files should be produced in addition to a single-page TIFF placeholder. To the extent possible, each file should be accompanied with one corresponding text file. The text files should be produced separately, and not included in the load files.

7.    With respect to any DOCUMENT responsive to these Requests that YOU contend YOU are not required to produce because of an alleged privilege, describe each such DOCUMENT withheld from production by (1) giving the date of the DOCUMENT, (2) identifying the authors and recipients of the DOCUMENT (including PERSONS receiving copies), (3) identifying any attorneys or other PERSONS who YOU contend trigger the stated privilege, (4) providing a brief description of the subject matter of the DOCUMENT sufficient to determine the

4

applicability of the stated privilege and (5) stating the privilege asserted and any statute which YOU contend supports YOUR assertion of the privilege.

8.    If You consider any Request or portion of a Request objectionable, state the specific ground for the objection.  If that objection applies to only a portion or portions of the Request, answer to the fullest extent possible the portions to which You have raised no objection.

### REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR purchases of the PRODUCT during the RELEVANT TIME PERIOD, including but not limited to receipts and bank statements reflecting such purchase.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS and COMMUNICATIONS that RELATE to where YOU purchased the PRODUCT(S), including from online personal grocery shipping services (e.g., Instacart, DoorDash, Uber Eats, Postmates, GrubHub, Amazon Flex, Caviar, Shipt, Favor, and ChowNow), or brick-and-mortar retail stores, during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS and COMMUNICATIONS RELATING to when YOU purchased the PRODUCT during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS and COMMUNICATIONS RELATING to any PROMOTIONAL MATERIALS YOU relied upon in making YOUR purchase of the PRODUCT during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 5:**

All labels, packaging, advertisements, and other PROMOTIONAL MATERIALS for the PRODUCT, including photographs, pictures, or other copies, during the RELEVANT TIME PERIOD.

5

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

representative(s) and any other members of the proposed class you seek to represent, regarding GT'S.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that evidence, refer to, or RELATE to any COMMUNICATION that YOU or YOUR attorney(s) or other representative(s) made or received RELATING to GT'S or the PRODUCT at issue in the COMPLAINT, on any publicly accessible medium, including without limitation, Internet websites, social networking sites, news groups, chat rooms, and online services (such as Facebook, Instagram, Twitter, or LinkedIn).

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS and COMMUNICATIONS that RELATE to the manner in which YOU became a party to this action, including, but not limited to advertisements or news articles, solicitations, emails, notices, or correspondence to which YOU responded and YOUR response.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 79 of YOUR COMPLAINT that "[t]he claims of the named Plaintiffs are typical of the claims of the Class."

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent … and they intend to prosecute this action vigorously."

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

7

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 81 of YOUR COMPLAINT that "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. . . . Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues."

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING to actual or potential conflicts of interest YOU may have with putative or purported class members that make up the alleged class as pled in YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and COMMUNICATIONS RELATING to any representations, agreements, promises or assurances YOU received about any monetary recovery YOU might receive as a result of YOUR participation as a plaintiff in this lawsuit.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

8

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

ii.   who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

iii.  whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

iv.   the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that GT'S "has passed off millions of bottles of its wildly successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages."

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that "the purported distinction between the 'Classic' and 'Enlightened' lines is a sham designed to confuse the public and government regulators."

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 2 of YOUR COMPLAINT that "the undeclared high sugar content of Defendant's Enlightened Kombucha beverages contributes to the continued fermentation of the beverages after bottling."

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 37 of YOUR COMPLAINT that "Defendant actively

9

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 20 of YOUR COMPLAINT that "Plaintiff Nunez was under the age of 21 (and over the age of 18) when he purchased Enlightened Kombucha, and he was under 21 years of age as of the date of the filing of the original Complaint."

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 20 of YOUR COMPLAINT that "[a]t the time of the relevant purchases, Plaintiff Nunez could not lawfully purchase alcoholic beverages and, accordingly, would not have purchased Enlightened Kombucha had he known that it is an alcoholic beverage."

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 21 of YOUR COMPLAINT that "Plaintiff Nunez continues to purchase kombucha products, although he does not currently purchase Enlightened Kombucha beverages, and he intends on continuing purchasing kombucha products in the future."

DATED: November 13, 2025

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
HEATHER F. CANNER
JOSEPH ELIE-MEYERS
PETER K. BAE

By:_____
Jacob M. Harper
Attorneys for Defendant
GT's Living Foods, LLC

14

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On November 13, 2025, I served the foregoing document(s) described as: **DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE,** by placing a **true copy** of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com

____ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **michaelmyers@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on November 13, 2025, at Los Angeles, California.

☐     State      I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X      Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

|  | |
|---|---|
| Michael Myers | */s/ Michael Myers* |
|  | Signature |

15

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE

# EXHIBIT 14

DAVIS WRIGHT TREMAINE LLP
   Jacob M. Harper (SBN 259463)
   *jacobharper@dwt.com*
   Heather F. Canner (SBN 292837)
   *heathercanner@dwt.com*
   Joseph Elie-Meyers (SBN 325183)
   *josepheliemeyers@dwt.com*
   Peter K. Bae (SBN 329158)
   *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GT'S LIVING FOODS, LLC, <br><br> Defendant. | Case No. 2:19-cv-10920-FMO-GJS <br><br> **DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF AMIT PATEL, SET ONE** |

PROPOUNDING PARTY:     Defendant GT's Living Foods, LLC

RESPONDING PARTY:      Plaintiff Amit Patel

SET NUMBER:            One

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant GT's Living Foods, LLC ("GT's") requests that Plaintiff Amit Patel respond and produce documents responsive to the following Requests for Production ("Requests"), no later than thirty (30) days after service, at the law firm of Davis Wright Tremaine LLP, 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071, for the purpose of inspection and/or copying by GT's or its counsel.

## **DEFINITIONS**

A. "PLAINTIFF," "YOU," and "YOUR" as used herein means Plaintiff Amit Patel, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on his behalf.

B. "GT'S" or "DEFENDANT" as used herein means Defendant GT's Living Foods, LLC and its representatives, officers, employees, managers, attorneys, and other agents.

C. "PRODUCT" or "PRODUCTS" as used herein means DEFENDANT'S Enlightened Kombucha and Enlightened Synergy beverage products identified in the operative COMPLAINT, including all flavors and varieties.

D. "PROMOTIONAL MATERIALS" as used herein means any COMMUNICATION created, displayed, distributed, posted, or otherwise disseminated by DEFENDANT that advertises, describes, labels, or otherwise promotes the PRODUCT(S), including, but not limited to: product labels, in-store displays, retailer webpages and product listings, social media posts or ads, press releases, and other promotional content.

E. "COMMUNICATION" or COMMUNICATIONS" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

messaging in applications, and other computer-generated messages, and instant and text messages.

F.    "ALCOHOL CLAIMS" means any statement, representation, omission, or implication in PROMOTIONAL MATERIALS or other COMMUNICATIONS that (a) refers to, describes, or implies the PRODUCT'S alcohol content; (b) addresses the PRODUCT'S regulatory status as an alcoholic versus non-alcoholic beverage; (c) warns or allegedly fails to warn about alcohol-related risks; or (d) otherwise communicates information about fermentation or alcohol generation after bottling.

G.    "SUGAR CLAIMS" means any statement, representation, omission, or implication in PROMOTIONAL MATERIALS or other COMMUNICATIONS that refers to, describes, or implies the PRODUCT'S sugar content or sweetness.

H.    "PERSON" or "PERSONS" as used herein means and includes all natural persons, partnerships, joint ventures, and every other form of legally recognized entity, including but not limited to corporations.

I.    "DOCUMENT" or "DOCUMENTS" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.  A copy or duplicate of a DOCUMENT which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate DOCUMENT within the meaning of this term.  DOCUMENTS include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other COMMUNICATIONS.

2

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

J.      "RELATE", "RELATED", or "RELATING" as used herein means and include constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, regarding, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.

K.      "COMPLAINT" as used herein means the Second Amended Complaint captioned *Patel et al. v. GT's Living Foods LLC*, which was filed on December 17, 2024, Case No. 2:19-cv-10920-FMO-GJS.

L.      "RETTA ACTION" as used herein means the litigation in *Retta v. Millennium Products, Inc.*, Case No. CV 15-1801 PSG, presided over by United States District Judge Philip S. Gutierrez in the Central District of California.

M.      "RELEVANT TIME PERIOD" as used herein means February 28, 2017,  through the present.

N.      The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of the request.

O.      The terms "all," "any," "each," and "every" encompass any and all of the matter discussed.

P.      The use of singular form includes plural, and vice versa.

Q.      The use of present tense includes past tense, and vice versa.

### INSTRUCTIONS

1.      All requested Documents must be produced in their entirety, with all attachments and enclosures.

2.      In responding to each Request, You are to conduct a reasonable search and diligent inquiry for and produce each and every Document in Your possession,

3

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

custody, or control.  If no such Documents exist, please state that fact in Your response and detail the search you undertook to locate such records.

3.    Documents attached to each other should not be separated.

4.    Each Document should be produced in such fashion as to identify the location where the Documents are stored and whether they were found within the possession of Plaintiff or another natural person.

5.    Documents originating in paper form shall be copied as they are kept in the normal course of business, and any titles, labels, or other descriptions on any box, folder, binder, file cabinet, or other container shall be copied as well. Documents originating in paper format should be scanned as images at the time of copying, with optical character recognition ("OCR").  Scanned images shall be produced in the same load format as electronically stored information, as set forth below.

6.    Documents shall be produced with a Concordance-style load file (.dat) along with extracted text and single-page image files (TIFF/JPG). For Documents whose native format is MS Excel, MS Access, other database formats, audio/video, or any other file type that cannot be converted to TIFF, the original native files should be produced in addition to a single-page TIFF placeholder. To the extent possible, each file should be accompanied with one corresponding text file. The text files should be produced separately, and not included in the load files.

7.    With respect to any DOCUMENT responsive to these Requests that YOU contend YOU are not required to produce because of an alleged privilege, describe each such DOCUMENT withheld from production by (1) giving the date of the DOCUMENT, (2) identifying the authors and recipients of the DOCUMENT (including PERSONS receiving copies), (3) identifying any attorneys or other PERSONS who YOU contend trigger the stated privilege, (4) providing a brief description of the subject matter of the DOCUMENT sufficient to determine the

4

applicability of the stated privilege and (5) stating the privilege asserted and any statute which YOU contend supports YOUR assertion of the privilege.

8.     If You consider any Request or portion of a Request objectionable, state the specific ground for the objection.  If that objection applies to only a portion or portions of the Request, answer to the fullest extent possible the portions to which You have raised no objection.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR purchases of the PRODUCT during the RELEVANT TIME PERIOD, including but not limited to receipts and bank statements reflecting such purchase.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS and COMMUNICATIONS that RELATE to where YOU purchased the PRODUCT(S), including from online personal grocery shipping services (e.g., Instacart, DoorDash, Uber Eats, Postmates, GrubHub, Amazon Flex, Caviar, Shipt, Favor, and ChowNow), or brick-and-mortar retail stores, during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS and COMMUNICATIONS RELATING to when YOU purchased the PRODUCT during the RELEVANT TIME PERIOD.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS and COMMUNICATIONS RELATING to any PROMOTIONAL MATERIALS YOU relied upon in making YOUR purchase of the PRODUCT during the RELEVANT TIME PERIOD.

5

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS, including without limitation correspondence, notes of telephone conversations and electronic mail, that reflect, refer, or RELATE to any COMMUNICATION, written or oral, between YOU or YOUR attorney(s) or other representative(s) and any other members of the proposed class you seek to represent, regarding GT'S.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that evidence, refer to, or RELATE to any COMMUNICATION that YOU or YOUR attorney(s) or other representative(s) made or received RELATING to GT'S or the PRODUCT at issue in the COMPLAINT, on any publicly accessible medium, including without limitation, Internet websites, social networking sites, news groups, chat rooms, and online services (such as Facebook, Instagram, Twitter, or LinkedIn).

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS and COMMUNICATIONS that RELATE to the manner in which YOU became a party to this action, including, but not limited to advertisements or news articles, solicitations, emails, notices, or correspondence to which YOU responded and YOUR response.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 79 of YOUR COMPLAINT that "[t]he claims of the named Plaintiffs are typical of the claims of the Class."

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests

7

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

of the Class members they seek to represent … and they intend to prosecute this action vigorously."

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "[t]he interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 81 of YOUR COMPLAINT that "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. . . . Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues."

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING to actual or potential conflicts of interest YOU may have with putative or purported class members that make up the alleged class as pled in YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and COMMUNICATIONS RELATING to any representations, agreements, promises or assurances YOU received about any monetary recovery YOU might receive as a result of YOUR participation as a plaintiff in this lawsuit.

8

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

    i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

    ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

    iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

    iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that GT'S "has passed off millions of bottles of its wildly successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages."

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that "the purported distinction

9

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

they contained significant levels of alcohol and were considered alcoholic beverages."

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 17 of YOUR COMPLAINT that "Plaintiff Patel is a health-conscious individual and would not have purchased Enlighted Kombucha had he known that the products mischaracterized the level of sugar in the bottles."

DATED: November 13, 2025

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
HEATHER F. CANNER
JOSEPH ELIE-MEYERS
PETER K. BAE

By: _____
         Jacob M. Harper
    Attorneys for Defendant
    GT's Living Foods, LLC

14

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On November 13, 2025, I served the foregoing document(s) described as: **DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF AMIT PATEL, SET ONE,** by placing a **true copy** of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com

_____ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **michaelmyers@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on November 13, 2025, at Los Angeles, California.

☐  State      I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X  Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| Michael Myers | */s/ Michael Myers* |
|---|---|
| Michael Myers | Signature |

15

DEFENDANT'S REQUESTS FOR PRODUCTION
TO PLAINTIFF AMIT PATEL, SET ONE

# EXHIBIT 15

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,

  *Plaintiffs*,

v.

GT'S LIVING FOODS, LLC.,

  *Defendant*.

Case No. 2:19-cv-10920-FMO-DSR

**PLAINTIFF LAUREN SCHMIDT'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF LAUREN SCHMIDT, SET ONE**

Plaintiff Schmidt's Responses and
Objections to Defendant's
Requests for Production, Set 1

Case No. 2:19-cv-10920-FMO-DSR

Plaintiff Lauren Schmidt ("Plaintiff") hereby responds to Defendant GT's Living Foods, LLC's ("Defendant" or "GT's") Requests for Production, Set One, as follows:

**PRELIMINARY STATEMENT**

Plaintiff responds to these requests based upon the investigation conducted thus far. Accordingly, these responses are based upon information now known and presently available to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the requests for production. It is anticipated that further discovery, independent investigation, and legal research and analysis could supply additional facts, add meaning to the known facts, as well as establish entirely new factual contentions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact or facts which Plaintiff may recall later. Plaintiff accordingly reserves the right to supplement Plaintiff's responses should additional responsive, non-privileged documents and/or information be located and change all answers herein as additional facts are ascertained, analysis is made, and legal research is completed.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with instructions that exceed those requirements. Pursuant to the Federal Rules of Civil Procedure and applicable law, when Plaintiff agrees to produce documents, Plaintiff will only produce documents in her possession, custody or control and that can be located after a reasonable search. Plaintiff's agreement to produce responsive documents does not mean that any responsive documents exist.

Where Plaintiff agrees to produce documents, Plaintiff will produce documents within her possession, custody, or control that were located after a reasonably diligent search within two weeks of serving these written responses.

Plaintiff Schmidt's Responses and Objections to Defendant's Requests for Production, Set 1      1      Case No. 2:19-cv-10920-FMO-DSR

## **GENERAL OBJECTIONS**

Plaintiff Lauren Schmidt ("Plaintiff") incorporates by reference the following general objections and responses to each of the requests for production, whether or not stated as a specific objection to each request.

1.     In responding to Defendant's requests for production, Plaintiff does not concede that any of the documents provided are relevant or material to the subject matter of this litigation, reasonably calculated to lead to the discovery of admissible evidence, or proportional to the needs of the case. Plaintiff reserves the right to object to the admissibility at trial, or at any other stage of the litigation, of any of the information or documents produced in response to Defendant's requests for production.

2.     Plaintiff objects to Defendant's requests for production to the extent that they purport to impose any obligations upon Plaintiff beyond the obligations imposed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and/or any applicable Local Rules or other court order.

3.     Plaintiff generally objects to the requests for production on the grounds that the requests, individually and taken as a whole, are overbroad, unduly burdensome, oppressive, and seek to impose broader response obligations on Plaintiff than those imposed by the Federal Rules of Civil Procedure.

4.     Plaintiff further objects to Defendant's requests for production to the extent that the documents sought: (a) contain privileged attorney client communications; (b) constitute protected attorney work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions, or legal theories of any attorney for or other representative of Plaintiff; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "privileged documents or information"). Plaintiff does not intend to provide any privileged documents or information. Any disclosure of privileged documents or information in these responses is inadvertent and shall not be

Plaintiff Schmidt's Responses and                2                Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

deemed waiver of any applicable privileges or protections, and Plaintiff requests that any such information be discarded and disregarded promptly.

5.     Plaintiff further objects to Defendant's requests for production on the grounds and to the extent that they seek documents that are irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or not proportional to the needs of the case.

6.     Plaintiff further objects to the requests on the grounds and to the extent that they call for legal conclusions or assume or appear to assume that any fact or event is true. By responding to any such discovery request, Plaintiff does not concede the accuracy or any such conclusion or assumption.

7.     Plaintiff further objects to Defendant's requests on the grounds and to the extent that they are vague, ambiguous, and lacking particularity.

8.     Plaintiff further objects to Defendant's requests on the ground and to the extent that they are not limited to the time period relevant to this litigation.

9.     Plaintiff further objects to Defendant's requests on the ground and to the extent that they call for the production of documents that are equally available to Defendant or are in Defendant's possession. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

10.     Plaintiff further objects to Defendant's requests on the grounds and to the extent that they are cumulative or duplicative of other requests and/or to the extent that they seek information obtainable from other more convenient and less burdensome or expensive sources, including public sources.

11.     Plaintiff objects to the "DEFINITIONS" on the grounds that they are vague, ambiguous, and overbroad and seek to change the ordinary meaning of the terms and phrases they define. Plaintiff interprets these terms and phrases according to their common meaning and usage. Plaintiff also objects to the extent the definitions call for

Plaintiff Schmidt's Responses and          3          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

premature disclosure of expert opinion, call for legal conclusions, or seek privilege or work-product confidential information.

12. Plaintiff further objects to the definition of the terms "DOCUMENT," "DOCUMENTS," "COMMUNICATION," and "COMMUNICATIONS" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession or seek privileged information. Plaintiff responds to these requests solely on Plaintiff's behalf and will only produce documents in Plaintiff's possession, custody, or control.

13. Plaintiff objects to the definition of the terms "PLAINTIFF," "YOU," and "YOUR" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession, custody, or control.

14. Plaintiff objects to the definition of the terms "RELATE(S)" and "RELATING" because they are overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the terms seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the term is not limited to the time period relevant to this litigation.

15. Plaintiff further objects to the definition of the term "PROMOTIONAL MATERIALS" because it is overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the term seeks information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the term is not limited to the time period relevant to this litigation.

16. Plaintiff further objects to the definition of the terms "ALCOHOL CLAIMS" and "SUGAR CLAIMS" because they are overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the terms seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the terms are not limited to the time period relevant to this litigation.

Plaintiff Schmidt's Responses and           4           Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

located after a reasonably diligent search, if any. Plaintiff will not produce attorney advertising, documents or communications to or from her attorneys, or attorney work product.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS and COMMUNICATIONS that RELATE to the manner in which YOU became a party to this action, including, but not limited to advertisements or news articles, solicitations, emails, notices, or correspondence to which YOU responded and YOUR response.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATE to" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 79 of YOUR COMPLAINT that "[t]he claims of the named Plaintiffs are typical of the claims of the Class."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client

Plaintiff Schmidt's Responses and            16            Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this lawsuit by any party. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search and that have not previously been produced, filed, or otherwise exchanged in this lawsuit by another party, if any. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent … and they intend to prosecute this action vigorously."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this

Plaintiff Schmidt's Responses and Objections to Defendant's Requests for Production, Set 1          17          Case No. 2:19-cv-10920-FMO-DSR

lawsuit by any party. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search and that have not previously been produced, filed, or otherwise exchanged in this lawsuit by another party, if any. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

Plaintiff Schmidt's Responses and          18          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "[t]he interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 81 of YOUR COMPLAINT that "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. . . . Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and

Plaintiff Schmidt's Responses and              19              Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING to actual or potential conflicts of interest YOU may have with putative or purported class members that make up the alleged class as pled in YOUR COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not

Plaintiff Schmidt's Responses and          20          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

produce any documents or communications to or from her attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and COMMUNICATIONS RELATING to any representations, agreements, promises or assurances YOU received about any monetary recovery YOU might receive as a result of YOUR participation as a plaintiff in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff further objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to this request as unintelligible with respect to "COMMUNICATIONS RELATING the terms by which … ." Plaintiff will interpret this phrase as "COMMUNICATIONS RELATING to the terms by which … ." Plaintiff further objects to the term "RELATING" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the

Plaintiff Schmidt's Responses and     21     Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

    i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

    ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

    iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

    iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as duplicative of Request for Production No. 21. Plaintiff further objects to this request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around August 2, 2024.

Plaintiff Schmidt's Responses and     22     Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

Plaintiff's retention agreement with her lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning *Sharpe* Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel & Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that GT'S "has passed off millions of bottles of its wildly successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this

Plaintiff Schmidt's Responses and Objections to Defendant's Requests for Production, Set 1                    23                    Case No. 2:19-cv-10920-FMO-DSR

kombucha PRODUCTS that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product.

Dated: December 15, 2025

By: */s/ Martin Brenner*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiff Schmidt's Responses and     45     Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 15, 2025, I served the foregoing document(s) described as PLAINTIFF LAUREN SCHMIDT'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF LAUREN SCHMIDT, SET ONE on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)          *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                    *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]     (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2025, at Santa Monica, California.

_____
Rachel Ong

Proof of Service

# EXHIBIT 16

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> *Defendant.* | Case No. 2:19-cv-10920-FMO-DSR <br><br> **PLAINTIFF CHRISTOPHER NUNEZ'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE** |

Plaintiff Nunez's Responses and                    Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

Plaintiff Christopher Nunez ("Plaintiff") hereby responds to Defendant GT's Living Foods, LLC's ("Defendant" or "GT's") Requests for Production, Set One, as follows:

## PRELIMINARY STATEMENT

Plaintiff responds to these requests based upon the investigation conducted thus far. Accordingly, these responses are based upon information now known and presently available to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the requests for production. It is anticipated that further discovery, independent investigation, and legal research and analysis could supply additional facts, add meaning to the known facts, as well as establish entirely new factual contentions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact or facts which Plaintiff may recall later. Plaintiff accordingly reserves the right to supplement Plaintiff's responses should additional responsive, non-privileged documents and/or information be located and change all answers herein as additional facts are ascertained, analysis is made, and legal research is completed.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with instructions that exceed those requirements. Pursuant to the Federal Rules of Civil Procedure and applicable law, when Plaintiff agrees to produce documents, Plaintiff will only produce documents in his possession, custody or control and that can be located after a reasonable search. Plaintiff's agreement to produce responsive documents does not mean that any responsive documents exist.

Where Plaintiff agrees to produce documents, Plaintiff will produce documents within his possession, custody, or control that were located after a reasonably diligent search within two weeks of serving these written responses.

Plaintiff Nunez's Responses and          1          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

## GENERAL OBJECTIONS

Plaintiff Christopher Nunez ("Plaintiff") incorporates by reference the following general objections and responses to each of the requests for production, whether or not stated as a specific objection to each request.

1.     In responding to Defendant's requests for production, Plaintiff does not concede that any of the documents provided are relevant or material to the subject matter of this litigation, reasonably calculated to lead to the discovery of admissible evidence, or proportional to the needs of the case. Plaintiff reserves the right to object to the admissibility at trial, or at any other stage of the litigation, of any of the information or documents produced in response to Defendant's requests for production.

2.     Plaintiff objects to Defendant's requests for production to the extent that they purport to impose any obligations upon Plaintiff beyond the obligations imposed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and/or any applicable Local Rules or other court order.

3.     Plaintiff generally objects to the requests for production on the grounds that the requests, individually and taken as a whole, are overbroad, unduly burdensome, oppressive, and seek to impose broader response obligations on Plaintiff than those imposed by the Federal Rules of Civil Procedure.

4.     Plaintiff further objects to Defendant's requests for production to the extent that the documents sought: (a) contain privileged attorney client communications; (b) constitute protected attorney work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions, or legal theories of any attorney for or other representative of Plaintiff; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "privileged documents or information"). Plaintiff does not intend to provide any privileged documents or information. Any disclosure of privileged documents or information in these responses is inadvert and shall not be

Plaintiff Nunez's Responses and            2            Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

deemed waiver of any applicable privileges or protections, and Plaintiff requests that any such information be discarded and disregarded promptly.

5. Plaintiff further objects to Defendant's requests for production on the grounds and to the extent that they seek documents that are irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or not proportional to the needs of the case.

6. Plaintiff further objects to the requests on the grounds and to the extent that they call for legal conclusions or assume or appear to assume that any fact or event is true. By responding to any such discovery request, Plaintiff does not concede the accuracy or any such conclusion or assumption.

7. Plaintiff further objects to Defendant's requests on the grounds and to the extent that they are vague, ambiguous, and lacking particularity.

8. Plaintiff further objects to Defendant's requests on the ground and to the extent that they are not limited to the time period relevant to this litigation.

9. Plaintiff further objects to Defendant's requests on the ground and to the extent that they call for the production of documents that are equally available to Defendant or are in Defendant's possession. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

10. Plaintiff further objects to Defendant's requests on the grounds and to the extent that they are cumulative or duplicative of other requests and/or to the extent that they seek information obtainable from other more convenient and less burdensome or expensive sources, including public sources.

11. Plaintiff objects to the "DEFINITIONS" on the grounds that they are vague, ambiguous, and overbroad and seek to change the ordinary meaning of the terms and phrases they define. Plaintiff interprets these terms and phrases according to their common meaning and usage. Plaintiff also objects to the extent the definitions call for

Plaintiff Nunez's Responses and                    3                    Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

premature disclosure of expert opinion, call for legal conclusions, or seek privilege or work-product confidential information.

12.    Plaintiff further objects to the definition of the terms "DOCUMENT," "DOCUMENTS," "COMMUNICATION," and "COMMUNICATIONS" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession or seek privileged information. Plaintiff responds to these requests solely on Plaintiff's behalf and will only produce documents in Plaintiff's possession, custody, or control.

13.    Plaintiff objects to the definition of the terms "PLAINTIFF," "YOU," and "YOUR" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession, custody, or control.

14.    Plaintiff objects to the definition of the terms "RELATE(S)" and "RELATING" because they are overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the terms seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the term is not limited to the time period relevant to this litigation.

15.    Plaintiff further objects to the definition of the term "PROMOTIONAL MATERIALS" because it is overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the term seeks information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the term is not limited to the time period relevant to this litigation.

16.    Plaintiff further objects to the definition of the terms "ALCOHOL CLAIMS" and "SUGAR CLAIMS" because they are overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the terms seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the terms are not limited to the time period relevant to this litigation.

Plaintiff Nunez's Responses and              4              Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this lawsuit by any party. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search and that have not previously been produced, filed, or otherwise exchanged in this lawsuit by another party, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent … and they intend to prosecute this action vigorously."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1

17

Case No. 2:19-cv-10920-FMO-DSR

lawsuit by any party. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search and that have not previously been produced, filed, or otherwise exchanged in this lawsuit by another party, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1

18

Case No. 2:19-cv-10920-FMO-DSR

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "[t]he interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 81 of YOUR COMPLAINT that "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. . . . Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1      19      Case No. 2:19-cv-10920-FMO-DSR

ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING to actual or potential conflicts of interest YOU may have with putative or purported class members that make up the alleged class as pled in YOUR COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1          20          Case No. 2:19-cv-10920-FMO-DSR

produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and COMMUNICATIONS RELATING to any representations, agreements, promises or assurances YOU received about any monetary recovery YOU might receive as a result of YOUR participation as a plaintiff in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff further objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to this request as unintelligible with respect to "COMMUNICATIONS RELATING the terms by which … ." Plaintiff will interpret this phrase as "COMMUNICATIONS RELATING to the terms by which … ." Plaintiff further objects to the term "RELATING" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1      21      Case No. 2:19-cv-10920-FMO-DSR

attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

  i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

  ii.   who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

  iii.  whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

  iv.   the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as duplicative of Request for Production No. 21. Plaintiff further objects to this request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around July 13, 2024.

Plaintiff Nunez's Responses and                    22              Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

Plaintiff's retention agreement with his lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning *Sharpe* Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel & Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that GT'S "has passed off millions of bottles of its wildly successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1          23          Case No. 2:19-cv-10920-FMO-DSR

documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it seeks documents protected by Plaintiff's right to privacy. Plaintiff objects to this request as duplicative of Request for Production No. 8.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

Dated: December 15, 2025

By: */s/ Martin Brenner*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiff Nunez's Responses and Objections to Defendant's Requests for Production, Set 1

47

Case No. 2:19-cv-10920-FMO-DSR

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 15, 2025, I served the foregoing document(s) described as PLAINTIFF CHRISTOPHER NUNEZ'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)                    *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                             *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2025, at Santa Monica, California.

_____
Rachel Ong

Proof of Service

# EXHIBIT 17

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> *Defendant*. | Case No. 2:19-cv-10920-FMO-DSR <br><br> **PLAINTIFF AMIT PATEL'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF AMIT PATEL, SET ONE** |

Plaintiff Patel's Responses and
Objections to Defendant's
Requests for Production, Set 1

Case No. 2:19-cv-10920-FMO-DSR

Plaintiff Amit Patel ("Plaintiff") hereby responds to Defendant GT's Living Foods, LLC's ("Defendant" or "GT's") Requests for Production, Set One, as follows:

## **PRELIMINARY STATEMENT**

Plaintiff responds to these requests based upon the investigation conducted thus far. Accordingly, these responses are based upon information now known and presently available to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the requests for production. It is anticipated that further discovery, independent investigation, and legal research and analysis could supply additional facts, add meaning to the known facts, as well as establish entirely new factual contentions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact or facts which Plaintiff may recall later. Plaintiff accordingly reserves the right to supplement Plaintiff's responses should additional responsive, non-privileged documents and/or information be located and change all answers herein as additional facts are ascertained, analysis is made, and legal research is completed.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with instructions that exceed those requirements. Pursuant to the Federal Rules of Civil Procedure and applicable law, when Plaintiff agrees to produce documents, Plaintiff will only produce documents in his possession, custody or control and that can be located after a reasonable search. Plaintiff's agreement to produce responsive documents does not mean that any responsive documents exist.

Where Plaintiff agrees to produce documents, Plaintiff will produce documents within his possession, custody, or control that were located after a reasonably diligent search within two weeks of serving these written responses.

Plaintiff Patel's Responses and Objections to Defendant's Requests for Production, Set 1       1       Case No. 2:19-cv-10920-FMO-DSR

# GENERAL OBJECTIONS

Plaintiff incorporates by reference the following general objections and responses to each of the requests for production, whether or not stated as a specific objection to each request.

1. In responding to Defendant's requests for production, Plaintiff does not concede that any of the documents provided are relevant or material to the subject matter of this litigation, reasonably calculated to lead to the discovery of admissible evidence, or proportional to the needs of the case. Plaintiff reserves the right to object to the admissibility at trial, or at any other stage of the litigation, of any of the information or documents produced in response to Defendant's requests for production.

2. Plaintiff objects to Defendant's requests for production to the extent that they purport to impose any obligations upon Plaintiff beyond the obligations imposed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and/or any applicable Local Rules or other court order.

3. Plaintiff generally objects to the requests for production on the grounds that the requests, individually and taken as a whole, are overbroad, unduly burdensome, oppressive, and seek to impose broader response obligations on Plaintiff than those imposed by the Federal Rules of Civil Procedure.

4. Plaintiff further objects to Defendant's requests for production to the extent that the documents sought: (a) contain privileged attorney client communications; (b) constitute protected attorney work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions, or legal theories of any attorney for or other representative of Plaintiff; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "privileged documents or information"). Plaintiff does not intend to provide any privileged documents or information. Any disclosure of privileged documents or information in these responses is inadvertent and shall not be

Plaintiff Patel's Responses and Objections to Defendant's Requests for Production, Set 1      2      Case No. 2:19-cv-10920-FMO-DSR

deemed waiver of any applicable privileges or protections, and Plaintiff requests that any such information be discarded and disregarded promptly.

5.    Plaintiff further objects to Defendant's requests for production on the grounds and to the extent that they seek documents that are irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or not proportional to the needs of the case.

6.    Plaintiff further objects to the requests on the grounds and to the extent that they call for legal conclusions or assume or appear to assume that any fact or event is true. By responding to any such discovery request, Plaintiff does not concede the accuracy or any such conclusion or assumption.

7.    Plaintiff further objects to Defendant's requests on the grounds and to the extent that they are vague, ambiguous, and lacking particularity.

8.    Plaintiff further objects to Defendant's requests on the ground and to the extent that they are not limited to the time period relevant to this litigation.

9.    Plaintiff further objects to Defendant's requests on the ground and to the extent that they call for the production of documents that are equally available to Defendant or are in Defendant's possession. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

10.    Plaintiff further objects to Defendant's requests on the grounds and to the extent that they are cumulative or duplicative of other requests and/or to the extent that they seek information obtainable from other more convenient and less burdensome or expensive sources, including public sources.

11.    Plaintiff objects to the "DEFINITIONS" on the grounds that they are vague, ambiguous, and overbroad and seek to change the ordinary meaning of the terms and phrases they define. Plaintiff interprets these terms and phrases according to their common meaning and usage. Plaintiff also objects to the extent the definitions call for

Plaintiff Patel's Responses and    3    Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

premature disclosure of expert opinion, call for legal conclusions, or seek privilege or work-product confidential information.

12.    Plaintiff further objects to the definition of the terms "DOCUMENT," "DOCUMENTS," "COMMUNICATION," and "COMMUNICATIONS" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession or seek privileged information. Plaintiff responds to these requests solely on Plaintiff's behalf and will only produce documents in Plaintiff's possession, custody, or control.

13.    Plaintiff objects to the definition of the terms "PLAINTIFF," "YOU," and "YOUR" to the extent they seek to impose the obligation on Plaintiff to produce documents not in Plaintiff's possession, custody, or control.

14.    Plaintiff objects to the definition of the terms "RELATE(S)" and "RELATING" because they are overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the terms seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the term is not limited to the time period relevant to this litigation.

15.    Plaintiff further objects to the definition of the term "PROMOTIONAL MATERIALS" because it is overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the term seeks information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the term is not limited to the time period relevant to this litigation.

16.    Plaintiff further objects to the definition of the terms "ALCOHOL CLAIMS" and "SUGAR CLAIMS" because they are overbroad and unduly burdensome. Plaintiff further objects on the ground and to the extent that the terms seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence, and because the terms are not limited to the time period relevant to this litigation.

Plaintiff Patel's Responses and                4                Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this lawsuit by any party. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search and that have not previously been produced, filed, or otherwise exchanged in this lawsuit by another party, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent … and they intend to prosecute this action vigorously."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this

Plaintiff Patel's Responses and Objections to Defendant's Requests for Production, Set 1          17          Case No. 2:19-cv-10920-FMO-DSR

lawsuit by any party. Plaintiff will not reproduce documents that have already been produced, filed, or otherwise exchanged in this litigation.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents and communications in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search and that have not previously been produced, filed, or otherwise exchanged in this lawsuit by another party, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "Plaintiffs … have retained competent counsel[.]"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

Plaintiff Patel's Responses and Objections to Defendant's Requests for Production, Set 1      18      Case No. 2:19-cv-10920-FMO-DSR

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 80 of YOUR COMPLAINT that "[t]he interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 81 of YOUR COMPLAINT that "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. . . . Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and

Plaintiff Patel's Responses and    19    Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING to actual or potential conflicts of interest YOU may have with putative or purported class members that make up the alleged class as pled in YOUR COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff will produce non-privileged, responsive documents in Plaintiff's possession, custody, or control that can be located after a reasonably diligent search, if any. Plaintiff will not

Plaintiff Patel's Responses and        20        Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

==produce any documents or communications to or from his attorneys or attorney work product.==

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and COMMUNICATIONS RELATING to any representations, agreements, promises or assurances YOU received about any monetary recovery YOU might receive as a result of YOUR participation as a plaintiff in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff further objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to this request as unintelligible with respect to "COMMUNICATIONS RELATING the terms by which … ." Plaintiff will interpret this phrase as "COMMUNICATIONS RELATING to the terms by which … ." Plaintiff further objects to the term "RELATING" as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the

Plaintiff Patel's Responses and          21          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

    i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

    ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

    iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

    iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as duplicative of Request for Production No. 21. Plaintiff further objects to this request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around July 16, 2024.

Plaintiff Patel's Responses and       22       Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Requests for Production, Set 1

Plaintiff's retention agreement with his lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning *Sharpe* Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel & Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR allegation in Paragraph 1 of YOUR COMPLAINT that GT'S "has passed off millions of bottles of its wildly successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the term "RELATING to" as overbroad, vague, and ambiguous. Plaintiff further objects to this request to the extent it calls for documents not within Plaintiff's possession, custody, or control. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it purports to require the production of documents previously produced, filed, or otherwise exchanged in this

Plaintiff Patel's Responses and Objections to Defendant's Requests for Production, Set 1

23

Case No. 2:19-cv-10920-FMO-DSR

and not proportional to the needs of the case. Plaintiff further objects that this request lacks reasonable particularity such that Plaintiff does not understand what documents are being requested. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to the request to the extent it seeks documents protected by Plaintiff's right to privacy.

Dated: December 15, 2025

By: /s/ Martin Brenner
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiff Patel's Responses and Objections to Defendant's Requests for Production, Set 1

44

Case No. 2:19-cv-10920-FMO-DSR

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 15, 2025, I served the foregoing document(s) described as PLAINTIFF AMIT PATEL'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S REQUESTS FOR PRODUCTION TO PLAINTIFF AMIT PATEL, SET ONE on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)          *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                   *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2025, at Santa Monica, California.

_____
Rachel Ong

Proof of Service

# EXHIBIT 18

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL &f LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>　　　　*Plaintiffs*,<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>　　　　*Defendant*. | Case No. 2:19-cv-10920-FMO-DSR<br><br>**PLAINTIFF LAUREN SCHMIDT'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S INTERROGATORIES TO PLAINTIFF LAUREN SCHMIDT, SET ONE** |

Plaintiff Schmidt's Responses and                    Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

Plaintiff Lauren Schmidt ("Plaintiff") hereby responds to Defendant GT's Living Foods, LLC's ("Defendant" or "GT's") Interrogatories, Set One, as follows:

## PRELIMINARY STATEMENT

Plaintiff responds to these interrogatories based upon the investigation conducted thus far. Accordingly, these responses are based upon information now known and presently available to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the interrogatories. It is anticipated that further discovery, independent investigation, and legal research and analysis could supply additional facts, add meaning to the known facts, as well as establish entirely new factual contentions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact or facts which Plaintiff may recall later. Plaintiff accordingly reserves the right to supplement Plaintiff's responses should additional responsive, non-privileged documents and/or information be located and change all answers herein as additional facts are ascertained, analysis is made, and legal research is completed.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with instructions that exceed those requirements.

## GENERAL OBJECTIONS

Plaintiff incorporates by reference the following general objections and responses to each interrogatory, whether or not stated as a specific objection to each interrogatory.

1.    In responding to Defendant's Interrogatories, Plaintiff does not concede that any of the information provided is relevant or material to the subject matter of this litigation, reasonably calculated to lead to the discovery of admissible evidence, or is proportional to the needs of the case. Plaintiff reserves the right to object to the

Plaintiff Schmidt's Responses and            1            Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

**INTERROGATORY NO. 21:**

DESCRIBE in detail the circumstances under which YOU first had contact with a PERSON(S) regarding this Action, including the identity of the PERSON(S) with whom you first had contact with regarding this Action.

**Response to Interrogatory No. 21:**

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff further objects that the interrogatory is compound. Plaintiff further objects to the interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant. Plaintiff further objects that the interrogatory seeks information protected by the attorney-client privilege and attorney work product doctrine.

Subject to the above objections, Plaintiff responds as follows: Plaintiff's first contact regarding this action was with an employee of Dovel & Luner, LLP on or around August 1, 2024.

**INTERROGATORY NO. 22:**

DESCRIBE any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

    i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

    ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

    iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

    iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

Plaintiff Schmidt's Responses and Objections to Defendant's Interrogatories, Set 1     24     Case No. 2:19-cv-10920-FMO-DSR

Docusign Envelope ID: E18D4198-08F4-40F2-85F0-6639E0FA3DF4

**Response to Interrogatory No. 22:**

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff further objects that the interrogatory is compound. Plaintiff treats this as two interrogatories. Plaintiff further objects to this interrogatory as overbroad because the request seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. Plaintiff further objects that this interrogatory seeks information protected by the attorney-client privilege and attorney work product doctrine. Plaintiff further objects to the interrogatory to the extent it seeks information related to any other lawsuit.

Subject to the above objections, Plaintiff responds as follows: On or around August 2, 2024, Plaintiff entered into an attorney-client privileged retention agreement with Dovel & Luner, LLP.

Plaintiff further responds that on or around July 9, 2024, Dovel & Luner, LLP entered into a Joint Prosecution Agreement for this matter with Smith Krivoshey PC, Bursor & Fisher, P.A., and Zimmerman Reed LLP and Westerman Law Corp. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs will produce a copy of this Joint Prosecution Agreement.

Plaintiff further responds that on or around July 16, 2024, Dovel & Luner, LLP entered into a subsequent Agreement Concerning *Sharpe* Litigation with Smith Krivoshey PC, Bursor & Fisher, P.A., and Zimmerman Reed LLP and Westerman Law Corp. This July 16 Agreement specifically superseded the prior Joint Prosecution Agreement. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs will produce a copy of this Agreement Concerning *Sharpe* Litigation.

Dated: December 12, 2025

By: */s/ Martin Brenner*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com

Plaintiff Schmidt's Responses and Objections to Defendant's Interrogatories, Set 1

25

Case No. 2:19-cv-10920-FMO-DSR

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiff Schmidt's Responses and
Objections to Defendant's
Interrogatories, Set 1

26

Case No. 2:19-cv-10920-FMO-DSR

## **Verification**

I am Lauren Schmidt, Plaintiff in the above-captioned case. Subject to any inadvertent errors and reserving the right to make changes in the answers if it appears at any time that errors or omissions have been made, I verify that the factual information contained in Plaintiff Lauren Schmidt's Responses and Objections to Defendant GT's Living Foods, LLC's Interrogatories to Plaintiff Lauren Schmidt, Set One are true and correct to the best of my knowledge and belief, to the extent I am permitted to view answers based upon materials under any protective order in this case. I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Dated: ___12/14/2025___

Signed by:

Signature: ___Lauren Schmidt___
2A0D7D0E09E54C3...

Plaintiff Schmidt's Responses and          27          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 15, 2025, I served the foregoing document(s) described as PLAINTIFF LAUREN SCHMIDT'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S INTERROGATORIES TO PLAINTIFF LAUREN SCHMIDT, SET ONE on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)          *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                   *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2025, at Santa Monica, California.

_____
Rachel Ong

# EXHIBIT 19

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>*Defendant.* | Case No. 2:19-cv-10920-FMO-DSR<br><br>**PLAINTIFF CHRISTOPHER NUNEZ'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S INTERROGATORIES TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE** |

Plaintiff Nunez's Responses and
Objections to Defendant's
Interrogatories, Set 1

Case No. 2:19-cv-10920-FMO-DSR

Plaintiff Christopher Nunez ("Plaintiff") hereby responds to Defendant GT's Living Foods, LLC's ("Defendant" or "GT's") Interrogatories, Set One, as follows:

## PRELIMINARY STATEMENT

Plaintiff responds to these interrogatories based upon the investigation conducted thus far. Accordingly, these responses are based upon information now known and presently available to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the interrogatories. It is anticipated that further discovery, independent investigation, and legal research and analysis could supply additional facts, add meaning to the known facts, as well as establish entirely new factual contentions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact or facts which Plaintiff may recall later. Plaintiff accordingly reserves the right to supplement Plaintiff's responses should additional responsive, non-privileged documents and/or information be located and change all answers herein as additional facts are ascertained, analysis is made, and legal research is completed.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with instructions that exceed those requirements.

## GENERAL OBJECTIONS

Plaintiff incorporates by reference the following general objections and responses to each interrogatory, whether or not stated as a specific objection to each interrogatory.

1. In responding to Defendant's Interrogatories, Plaintiff does not concede that any of the information provided is relevant or material to the subject matter of this litigation, reasonably calculated to lead to the discovery of admissible evidence, or is proportional to the needs of the case. Plaintiff reserves the right to object to the

Plaintiff Nunez's Responses and Objections to Defendant's Interrogatories, Set 1          1          Case No. 2:19-cv-10920-FMO-DSR

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff further objects that the interrogatory is compound. Plaintiff further objects to the interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant. Plaintiff further objects that the interrogatory seeks information protected by the attorney-client privilege and attorney work product doctrine.

Subject to the above objections, Plaintiff responds as follows: Plaintiff's first contact regarding this action was with an employee of Dovel & Luner, LLP on or around July 3, 2024.

**INTERROGATORY NO. 22:**

DESCRIBE any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

    i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

    ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

    iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

    iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**Response to Interrogatory No. 22:**

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff further objects that the interrogatory is compound. Plaintiff treats this as two interrogatories. Plaintiff further objects to this interrogatory as overbroad because the request seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. Plaintiff further objects that this interrogatory seeks information

Plaintiff Nunez's Responses and         26        Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

protected by the attorney-client privilege and attorney work product doctrine. Plaintiff further objects to the interrogatory to the extent it seeks information related to any other lawsuit.

Subject to the above objections, Plaintiff responds as follows: On or around July 13, 2024, Plaintiff entered into an attorney-client privileged retention agreement with Dovel & Luner, LLP.

Plaintiff further responds that on or around July 9, 2024, Dovel & Luner, LLP entered into a Joint Prosecution Agreement for this matter with Smith Krivoshey PC, Bursor & Fisher, P.A., and Zimmerman Reed LLP and Westerman Law Corp. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs will produce a copy of this Joint Prosecution Agreement.

Plaintiff further responds that on or around July 16, 2024, Dovel & Luner, LLP entered into a subsequent Agreement Concerning *Sharpe* Litigation with Smith Krivoshey PC, Bursor & Fisher, P.A., and Zimmerman Reed LLP and Westerman Law Corp. This July 16 Agreement specifically superseded the prior Joint Prosecution Agreement. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs will produce a copy of this Agreement Concerning *Sharpe* Litigation.

Dated: December 12, 2025

By: */s/ Martin Brenner*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiff Nunez's Responses and Objections to Defendant's Interrogatories, Set 1          27          Case No. 2:19-cv-10920-FMO-DSR

**Verification**

I am Christopher Nunez, Plaintiff in the above-captioned case. Subject to any inadvertent errors and reserving the right to make changes in the answers if it appears at any time that errors or omissions have been made, I verify that the factual information contained in Plaintiff Christopher Nunez's Responses and Objections to Defendant GT's Living Foods, LLC's Interrogatories to Plaintiff Christopher Nunez, Set One are true and correct to the best of my knowledge and belief, to the extent I am permitted to view answers based upon materials under any protective order in this case. I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Dated: ___12/12/2025___

Signed by:

Signature: ___Christopher Nunez___

Plaintiff Nunez's Responses and          28          Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 15, 2025, I served the foregoing document(s) described as PLAINTIFF CHRISTOPHER NUNEZ'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S INTERROGATORIES TO PLAINTIFF CHRISTOPHER NUNEZ, SET ONE on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)        *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                  *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2025, at Santa Monica, California.

_____
Rachel Ong

Proof of Service

# EXHIBIT 20

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> *Defendant.* | Case No. 2:19-cv-10920-FMO-DSR <br><br> **PLAINTIFF AMIT PATEL'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S INTERROGATORIES TO PLAINTIFF AMIT PATEL, SET ONE** |

Plaintiff Patel's Responses and                    Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

Plaintiff Amit Patel ("Plaintiff") hereby responds to Defendant GT's Living Foods, LLC's ("Defendant" or "GT's") Interrogatories, Set One, as follows:

## PRELIMINARY STATEMENT

Plaintiff responds to these interrogatories based upon the investigation conducted thus far. Accordingly, these responses are based upon information now known and presently available to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the interrogatories. It is anticipated that further discovery, independent investigation, and legal research and analysis could supply additional facts, add meaning to the known facts, as well as establish entirely new factual contentions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact or facts which Plaintiff may recall later. Plaintiff accordingly reserves the right to supplement Plaintiff's responses should additional responsive, non-privileged documents and/or information be located and change all answers herein as additional facts are ascertained, analysis is made, and legal research is completed.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with instructions that exceed those requirements.

## GENERAL OBJECTIONS

Plaintiff incorporates by reference the following general objections and responses to each interrogatory, whether or not stated as a specific objection to each interrogatory.

1.    In responding to Defendant's Interrogatories, Plaintiff does not concede that any of the information provided is relevant or material to the subject matter of this litigation, reasonably calculated to lead to the discovery of admissible evidence, or is proportional to the needs of the case. Plaintiff reserves the right to object to the

Plaintiff Patel's Responses and            1            Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

**INTERROGATORY NO. 21:**

DESCRIBE in detail the circumstances under which YOU first had contact with a PERSON(S) regarding this Action, including the identity of the PERSON(S) with whom you first had contact with regarding this Action.

**Response to Interrogatory No. 21:**

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff further objects that the interrogatory is compound. Plaintiff further objects to the interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant. Plaintiff further objects that the interrogatory seeks information protected by the attorney-client privilege and attorney work product doctrine.

Subject to the above objections, Plaintiff responds as follows: Plaintiff's first contact regarding this action was with an employee of Dovel & Luner, LLP on or around July 16, 2024.

**INTERROGATORY NO. 22:**

DESCRIBE any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

    i.    the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

    ii.    who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

    iii.    whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

    iv.    the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

Plaintiff Patel's Responses and Objections to Defendant's Interrogatories, Set 1      25      Case No. 2:19-cv-10920-FMO-DSR

**Response to Interrogatory No. 22:**

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff further objects that the interrogatory is compound. Plaintiff treats this as two interrogatories. Plaintiff further objects to this interrogatory as overbroad because the request seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. Plaintiff further objects that this interrogatory seeks information protected by the attorney-client privilege and attorney work product doctrine. Plaintiff further objects to the interrogatory to the extent it seeks information related to any other lawsuit.

Subject to the above objections, Plaintiff responds as follows: On or around July 16, 2024, Plaintiff entered into an attorney-client privileged retention agreement with Dovel & Luner, LLP.

Plaintiff further responds that on or around July 9, 2024, Dovel & Luner, LLP entered into a Joint Prosecution Agreement for this matter with Smith Krivoshey PC, Bursor & Fisher, P.A., and Zimmerman Reed LLP and Westerman Law Corp. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs will produce a copy of this Joint Prosecution Agreement.

Plaintiff further responds that on or around July 16, 2024, Dovel & Luner, LLP entered into a subsequent Agreement Concerning *Sharpe* Litigation with Smith Krivoshey PC, Bursor & Fisher, P.A., and Zimmerman Reed LLP and Westerman Law Corp. This July 16 Agreement specifically superseded the prior Joint Prosecution Agreement. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs will produce a copy of this Agreement Concerning *Sharpe* Litigation.

Dated: December 14, 2025

By: */s/ Martin Brenner*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com

Plaintiff Patel's Responses and Objections to Defendant's Interrogatories, Set 1

26

Case No. 2:19-cv-10920-FMO-DSR

Docusign Envelope ID: 3B87AB07-BAAF-4169-B41F-8BFEC4E84865

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiff Patel's Responses and
Objections to Defendant's
Interrogatories, Set 1

27

Case No. 2:19-cv-10920-FMO-DSR

**<u>Verification</u>**

I am Amit Patel, Plaintiff in the above-captioned case. Subject to any inadvertent errors and reserving the right to make changes in the answers if it appears at any time that errors or omissions have been made, I verify that the factual information contained in Plaintiff Amit Patel's Responses and Objections to Defendant GT's Living Foods, LLC's Interrogatories to Plaintiff Amit Patel, Set One are true and correct to the best of my knowledge and belief, to the extent I am permitted to view answers based upon materials under any protective order in this case. I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Dated: _____ 12/14/2025

Signature: _____

DocuSigned by:

Amit Patel

3FD112DB678B45D...

Plaintiff Patel's Responses and            28            Case No. 2:19-cv-10920-FMO-DSR
Objections to Defendant's
Interrogatories, Set 1

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 15, 2025, I served the foregoing document(s) described as PLAINTIFF AMIT PATEL'S RESPONSES AND OBJECTIONS TO DEFENDANT GT'S LIVING FOODS, LLC'S INTERROGATORIES TO PLAINTIFF AMIT PATEL, SET ONE on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)              *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                       *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2025, at Santa Monica, California.

_Rachel Ong_
Rachel Ong

Proof of Service

# EXHIBIT 21

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,

     *Plaintiffs*,

v.

GT'S LIVING FOODS, LLC.,

     *Defendant*.

Case No. 2:19-cv-10920-FMO-DSR

**PLAINTIFFS AMIT PATEL, LAUREN SCHMIDT, AND CHRISTOPHER NUNEZ'S FIRST SET OF INTERROGATORIES (1)**

---

Plaintiffs' First Set of Interrogatories      Case No. 2:19-cv-10920-FMO-DSR

Plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez request that Defendant respond to the following interrogatories within 30 days. *See* Fed. R. Civ. P. 26, 33.

## DEFINITIONS

1.    The term "DEFENDANT" shall mean GT'S LIVING FOODS, LLC, including ANY person or entity acting on their behalf including ANY agents, employees, or other representatives.

2.    The terms "YOU" and "YOUR" shall mean DEFENDANT, as defined above.

3.    "Named Plaintiff(s)" means Amit Patel, Christopher Nunez, and/or Lauren Schmidt.

4.    "*Retta* Action Settlement Class" means the settlement class approved by the court in *Retta v. Millenium Products, Inc.*, Case No. CV 15-1801 PSG in the United States District Court for the Central District of California.

5.    Undefined terms have their plain and ordinary meaning in the context of the relevant request.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

If you contend that any Named Plaintiff was a member of the *Retta* Action Settlement Class, identify and describe all facts that support that contention.

Dated: December 22, 2025

By: */s/ Martin Brenner*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

Plaintiffs' First Set of Interrogatories        1        Case No. 2:19-cv-10920-FMO-DSR

*Attorneys for Plaintiffs*

Plaintiffs' First Set of Interrogatories          2                Case No. 2:19-cv-10920-FMO-DSR

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action.  My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 22, 2025, I served the foregoing document(s) described as PLAINTIFFS AMIT PATEL, LAUREN SCHMIDT, AND CHRISTOPHER NUNEZ'S FIRST SET OF INTERROGATORIES on all interested parties in this action as follows:

Jacob M. Harper (SBN 259463)          *Attorneys for Defendant GT's Living Foods,*
jacobharper@dwt.com                    *LLC*
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission.  I caused the documents to be sent to the persons at the email addresses above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 22, 2025, at Santa Monica, California.

_____
Rachel Ong

Proof of Service

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> *Defendant*. | Case No. 2:19-cv-10920-FMO-DSR <br><br> **PLAINTIFFS AMIT PATEL, LAUREN SCHMIDT, AND CHRISTOPHER NUNEZ'S FIRST SET OF REQUESTS FOR PRODUCTION (1-2)** |

Plaintiffs' First Set of Requests
for Production

Case No. 2:19-cv-10920-FMO-DSR

Defendant GT's Living Foods, LLC must respond to the following requests for production within 30 days. *See* Fed. R. Civ. P. 26, 34. Documents should be produced electronically to counsel of record in PDF format, with quality of at least 300 DPI. Documents that are kept in color in the normal course of business should be produced in color. Excel and PowerPoint files should be produced as natives.

## DEFINITIONS

1. The term "DEFENDANT" shall mean GT'S LIVING FOODS, LLC, including ANY person or entity acting on their behalf including ANY agents, employees, or other representatives.

2. The terms "YOU" and "YOUR" shall mean DEFENDANT, as defined above.

3. "Named Plaintiff(s)" means Amit Patel, Christopher Nunez, and/or Lauren Schmidt.

4. "*Retta* Action Settlement Class" means the settlement class approved by the court in *Retta v. Millenium Products, Inc.*, Case No. CV 15-1801 PSG in the United States District Court for the Central District of California.

5. "Document" means "documents or electronically stored information" as used in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and includes communications. A draft or non-identical copy is a separate document.

6. Undefined terms have their plain and ordinary meaning in the context of the relevant request.

## REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

Each document concerning any of the Named Plaintiffs in this action.

**REQUEST FOR PRODUCTION NO. 2:**

If you contend that any of the Named Plaintiffs were members of the *Retta* Action Settlement Class, each document that mentions, references, relates to, or otherwise concerns that contention.

Plaintiffs' First Set of Requests          1          Case No. 2:19-cv-10920-FMO-DSR
for Production

Dated: December 22, 2025

By: /s/ Martin Brenner
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiffs' First Set of Requests for Production

2

Case No. 2:19-cv-10920-FMO-DSR

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to the within action. My business address is 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401.

On December 22, 2025, I served the foregoing document(s) described as PLAINTIFFS AMIT PATEL, LAUREN SCHMIDT, AND CHRISTOPHER NUNEZ'S FIRST SET OF REQUESTS FOR PRODUCTION on all interested parties in this action as follows:

| | |
|---|---|
| Jacob M. Harper (SBN 259463)<br>jacobharper@dwt.com<br>Heather F. Canner (SBN 292837)<br>heathercanner@dwt.com<br>Joseph Elie-Meyers (SBN 325183)<br>josepheliemeyers@dwt.com<br>Peter K. Bae (SBN 329158)<br>peterbae@dwt.com<br>DAVIS WRIGHT TREMAINE LLP<br>350 South Grand Avenue, 27th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 633-6800<br>Fax: (213) 633-6899 | *Attorneys for Defendant GT's Living Foods, LLC* |

**[X]    (VIA ELECTRONIC SERVICE):** I served the document(s) listed above electronically via email or electronic transmission. I caused the documents to be sent to the persons at the email addresses above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 22, 2025, at Santa Monica, California.

_____
Rachel Ong

Proof of Service

# EXHIBIT 22
# Filed Provisionally Under Seal

# EXHIBIT 23
# Filed Provisionally
# Under Seal

# EXHIBIT 24

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

AMIT PATEL, LAUREN SCHMIDT,
and CHRISTOPHER NUNEZ, on
Behalf of Themselves and
All Others Similarly
Situated,

      Plaintiffs,

vs.

CASE NO.
2:19-cv-10920-FMO-GJS

GTS LIVING FOODS, LLC,

      Defendant.

_____

HIGHLY CONFIDENTIAL

VIDEO DEPOSITION OF CHRISTOPHER NUNEZ

January 8, 2026

10:07 a.m.

Los Angeles, California

Reported By:

Brandi R. Celestino

CSR No. 13640

Page 1

HIGHLY CONFIDENTIAL

January 8, 2026

IRVINE, CALIFORNIA

THURSDAY, JANUARY 8, 2026, 10:07 A.M.

THE VIDEOGRAPHER:  Good morning.  We are going on the record at 10:07 a.m.  Today's date is January 8, 2026.  This is media Unit 1 of the video-recorded deposition of Christopher Nunez in the matter of Amit Patel vs. GT's Living Foods, LLC, filed in the United States District Court for the Central District of California in the Western Division.  The case number is 219CK10920FM0GJS.  This deposition is taking place at 350 South Grand Avenue on the 27th Floor in Los Angeles, California 90071.

My name is Jamal Judkins, representing Veritext, and I'm the videographer.  I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel, please voice identify yourselves and state whom you represent.

MR. HARPER:  Good morning.  Jacob Harper, Davis Wright Tremaine representing GT's Living Foods.

MR. ELIE-MEYERS:  Joseph Elie-Meyers from Davis Wright Tremaine also representing GT's Living Foods.

Page 6

MR. BRENNER:  Martin Brenner of Dovel & Luner  10:08:41
representing the Plaintiffs and Mr. Nunez.  10:08:43

THE VIDEOGRAPHER:  Will the court reporter  10:08:47
administer the oath to the witness, and counsel may  10:08:49
proceed.  10:08:53

COURT REPORTER:  Hi.  My name is  10:08:53
Brandi Celestino, Certified Shorthand Reporter
No. 13640, and I'm certified in the State of
California.

10:09:08

CHRISTOPHER NUNEZ,  10:09:08
having been first duly sworn, was examined and  10:09:08
testified as follows:  10:09:08

10:09:08

EXAMINATION  10:09:08

BY MR. HARPER:  10:09:09

Q   Good morning, Mr. Nunez.  10:09:09

A   Good morning.  10:09:11

Q   Can you spell your name for the record,  10:09:13
please.  10:09:14

A   Yes.  C-h-r-i-s-t-o-p-h-e-r.  And last name  10:09:15
Nunez, N-u-n-e-z.  10:09:21

Q   Do you have a middle name?  10:09:23

A   Yes.  Jesus, J-e-s-u-s.  10:09:24

Q   What is your date of birth?  10:09:27

Page 7

HIGHLY CONFIDENTIAL

January 8, 2026

Q    How about the image?  Was it a different image or the same?

A    I don't really recall the image.

Q    Do you know -- sorry.  I don't know if this was clear.

Where did you see this ad?

A    On Instagram.

Q    And is this the ad or an equivalent -- another bad question.  Sorry.  Strike all that.

The ad that you clicked on, on Instagram, did it look like this image?

MR. BRENNER:  Objection.  Asked and answered.

Go ahead.

THE WITNESS:  I think that the advertisement I saw was similar to this.  I don't recall if this was the exact same ad that I saw, but the same premise of have you purchased GT's Synergy Kombucha at this date range?  If so, you may be entitled to the ad.

That's what I remember from the ad, and that's what I remember clicking on.

BY MR. HARPER:

Q    Do you know who posted this ad?

A    I don't recall, no.

Q    Was it -- does the law firm Smith Krivoshey sound familiar to you?

Page 80

A    It doesn't particularly sound familiar to me, but I know that this case passed through a couple of different firms.  There have been different firms that have handled this case, but I'm not too familiar with what the past firms' names were.

Q    What lawyers have you been in communication with about this case since you became a -- well, since you clicked on the ad?

A    The first lawyers I came into contact with were whoever posted the ad, I don't remember the name of the firm.  And from there, I know that it passed through a couple of different firms.

Again, not remembering the names entirely, but the ones that I had most extensive communication with -- the firm that I've had the most extensive communication with was Dovel, and that's been more recently.  Again, from late 2024 or -- sorry.  I would have to think a little bit more about the date, but most recently, it has been Dovel, and that's been the main communication up to that date.

Q    Other than Dovel attorneys, are there other attorneys since 2024 that you've been in communication with on behalf of the other plaintiffs with you in this case?

MR. BRENNER:  Objection.  Calls for

Page 81

there starting with "Consumer advocates"?    13:25:08

A    It sounds familiar, yes.    13:25:12

Q    Familiar in what way?    13:25:16

A    In that I believe I have read a statement    13:25:18
like that in the past.  I wouldn't be able to    13:25:23
delineate if the first time I read this was when I    13:25:26
clicked on the ad, or if it was later on when I became    13:25:29
more involved in the case.    13:25:33

Q    Who's "Consumer advocates"?    13:25:36

A    I'm not too sure who consumer advocates is.    13:25:38
I think I took that to be a general term for advocates    13:25:42
acting on behalf of the consumers in this case, of    13:25:47
GT's Kombucha products.    13:25:51

Q    So you understand consumer advocates is just    13:26:04
general advocates?  Not a particular company or group    13:26:07
or something?    13:26:11

A    I believe it's possible that it could be, but    13:26:11
I'm personally not familiar with a group consumer    13:26:14
advocates.  I don't recall any communication with a    13:26:18
group consumer advocates.  No.    13:26:20

Q    Did you -- okay.    13:26:25

After you clicked on the ad -- let's say    13:26:29
between the time you clicked on the ad and the time    13:26:32
that -- no.  Strike that.    13:26:34

Did you sign a retainer agreement in this    13:26:40

Page 84

case?

A    I believe so, yes.

Q    Between the time that you clicked on the ad for joining a lawsuit like this one here, and signing the retainer agreement, how long was that period?

A    I don't recall the time period exactly, but if I had to make an estimate, it probably would be about maybe a week to a month after clicking on the ad.

Q    Okay.

And what did that process entail?  Like, what were the steps between you clicking the ad and signing the retainer agreement?

A    I believe I got an email requesting some additional information, a form that was asking things about when I made purchases.  If I had any receipts.  And then from there, I was to sign the retainer agreement and maybe a couple other documents.

But, again, I'm not too sure of the specifics of those documents or, you know, the exact questions that were on that form.

Q    Who were those documents and communications with?

A    They were to the -- you know, the firm that I would assume posted the ad.  If it was Dovel and Luner

Page 85

at the time, it would have been to them.    13:28:08

But, again, I don't remember the name of the    13:28:10
firm at the time that I clicked the ad, or the name of    13:28:12
the firm that I was communicating with after I clicked    13:28:15
the ad and they had followed up.    13:28:17

Q    When was the first time that you spoke to    13:29:30
Martin Brenner?    13:29:33

A    Let's see.  Again, I'm kind of estimating on    13:29:36
the exact date here, but I believe it would have been    13:29:40
perhaps mid 2025.    13:29:47

But, again, that's a pretty rough estimate.    13:29:50

Q    Why do you think it was mid-2025?    13:29:57

A    I know definitely it was a communication with    13:29:59
them late 2025, and that's when it was more extensive    13:30:01
back and forth.  More details about this was the    13:30:06
extent of the case and what it means to be a class    13:30:10
representative.  But when exactly those conversations    13:30:14
started with Martin, I don't quite remember, but I    13:30:16
know it must have been before that point.    13:30:19

Q    How about Simon Franzini?  Does that sound    13:30:25
familiar?    13:30:30

A    It does not sound familiar to me, no.    13:30:31

Q    How about Rick Lyon?  Does that name sound    13:30:36
familiar?    13:30:39

A    No.    13:30:39

Page 86

Q    Other than Martin Brenner, what are other names of other attorneys that you've worked with at Dovel Luner?    13:30:45 13:30:52 13:30:55

A    My main point person has been Martin Brenner. There was someone else, but I do not remember their name.  It was another man working at Dovel Luner.    13:30:57 13:31:01 13:31:05

Q    Was it Yeremey Krivoshey?    13:31:10

A    I don't believe so, no.    13:31:14

Q    Was it David Wasserman?    13:31:16

A    I don't think so.    13:31:20

Q    Were you promised anything when you decided to join the class action against GT's Living Foods?    13:31:45 13:31:50

A    No.    13:31:58

MR. BRENNER:  Objection.  Vague.    13:31:59

THE WITNESS:  No.  No promises were made.    13:32:01

MR. HARPER:  I'm going to mark as Exhibit 11.    13:32:27 13:32:45

(Exhibit 11 marked.)    13:32:45

BY MR. HARPER:    13:32:46

Q    Do you recognize this document?    13:32:46

A    This does look familiar, yes.    13:33:05

Q    What is this document?    13:33:06

MR. BRENNER:  Objection.  California.    13:33:12

THE WITNESS:  To my understanding, it's an agreement of law firms to work together in this case    13:33:16 13:33:19

Page 87

Q   Have you seen this document before?

A   I believe so, yes.

Q   When did you see it?

A   If I had to estimate, perhaps like late 2024, early 2025.   Again, I'm not certain of this date.

Q   Did you sign a copy of this?

A   I believe I did so, yes.

Q   Can you turn to page 2, please.

So the first paragraph starting with "if the parties receive additional funds" down to -- well, just review this page, and then I'll ask you some questions about it.

Actually, what I'll have you do for completion, read the entire document, but I want you to pay particular attention to "cost reimbursement of attorneys fees" on page 1 through the end of that section at the top of page 3.

A   Okay.  Okay.  I reviewed it.

Q   What do you understand this section to address?

A   To my understanding -- again, I'm not a lawyer so I'm not -- probably not interpreting it exactly correctly, but it has to do with how

Page 88

compensation will be divided up between the law firms    13:36:08
and the counsel.  And depending on certain situations,    13:36:10
how those percentages would differ.    13:36:15

Q    By counsel, you mean Dovel Luner and the    13:36:20
other law firms that are listed in this agreement;    13:36:24
correct?    13:36:27

A    Yes, I believe so.  I'm not entirely certain    13:36:27
how I fit into which category, but I -- I think my    13:36:33
understanding is I'm also a part of this as well.    13:36:37

Q    Well, at the end, on page 5, it has a client    13:36:40
approval.  It says "I have read and understood and    13:36:48
consent to the terms of this agreement," I assume    13:36:50
that's the section that you signed, correct, as the    13:36:53
client?    13:36:55

A    Correct.    13:36:56

Q    Now, the other counsel that refers -- I'm    13:36:58
looking now at page 1 of Exhibit 11.  That would    13:37:01
include Smith Krivoshey; correct?    13:37:05

A    Yes.    13:37:09

Q    And Bursor & Fisher; correct?    13:37:09

A    Yes.    13:37:11

Q    And Zimmerman Reed; correct?    13:37:11

A    Yes.    13:37:13

Q    And Wasserman Law Group; correct?    13:37:14

A    Yes.    13:37:17

Page 89

Q    So back to page 2.  Sorry for the back and forth.

So this section lists a series of allocations of funds between Dovel on the one hand, and those other law firms on the other, depending on the stage of the case; correct?

A    Correct.  To my understanding, yes.

Q    Do these allocations still exist to this day?

MR. BRENNER:  Calls for speculation.  Calls for a legal conclusion.

Go ahead.

THE WITNESS:  Yeah, I'm not entirely sure if there's been updates to the agreement or if these specific allocations still hold.  I'm not too familiar with the current state of those allocations, no.

BY MR. HARPER:

Q    Do you have any reason to think that they don't still hold?

A    I don't have any reason to believe that they differ from what's been presented here.

Q    Do you understand your duties as class representative to include supervising class counseling?

A    I'm not sure I understand what that means.

Q    Do you supervise class counsel in your

Page 90

THE WITNESS:  No.  I do not supervise in that    13:39:32
capacity either.    13:39:33
BY MR. HARPER:    13:39:36
    Q    Do you have any oversight whatsoever over the    13:39:36
lawyers in this lawsuit?    13:39:39
        MR. BRENNER:  Objection.  Vague as to    13:39:41
oversight.    13:39:43
        THE WITNESS:  No, I do not have any oversight    13:39:43
in regards to any of the lawyers or firms as mentioned    13:39:45
in this document.    13:39:49
BY MR. HARPER:    13:39:51
    Q    Do you know who the lawyers are in this    13:39:51
lawsuit other than Martin Brenner?    13:39:53
    A    Martin Brenner is who I associate with Dovel    13:40:00
and acts on their behalf.  I'm not familiar on a name    13:40:03
basis of the other lawyers who are involved.  No.    13:40:07
        MR. HARPER:  I'm going to hand you what we'll    13:40:44
mark as Exhibit 12.    13:40:46
        (Exhibit 12 marked.)    13:40:49
BY MR. HARPER:    13:41:00
    Q    Take a minute to review it.    13:41:00
    A    I reviewed it.    13:41:32
    Q    Okay.  Have you seen this document before?    13:41:48
    A    It looks familiar, yes.    13:41:51
    Q    Have you signed this document?    13:41:53

Page 92

HIGHLY CONFIDENTIAL

January 8, 2026

A    I have reason to believe so, yes.    13:41:56

Q    Can you tell me generally what this document is?    13:41:58    13:41:59

A    I believe, to my understanding, this document is a notice stating that Dovel will be taking on -- will be taking over as lead counsel for this case.    13:42:00    13:42:03    13:42:07

Q    Do you see anything in this document that says that the other law firms, including Smith Krivoshey, will no longer have any share of any proceeds from any class settlement or award to the class in this case?    13:42:10    13:42:15    13:42:18    13:42:24    13:42:31

MR. BRENNER:    Object to form.    Calls for a legal conclusion.    13:42:33    13:42:36

Before you answer, review the document.    13:42:39

THE WITNESS:    I'm prefacing by saying I'm not a lawyer and I'm not sure if I'm interpreting this document correctly, but it looks like, to my understanding, that the material cost incurred by -- will be borne and paid by Dovel.    13:43:14    13:43:17    13:43:20    13:43:23    13:43:26

I do see that Zimmerman has been included as co-counsel, and stayed on the case for continued litigation.    I'm not sure if that means that they also are entitled to a part of the compensation after the fact.    Again, that might just be previous document that's went more into detail about what that    13:43:30    13:43:33    13:43:37    13:43:40    13:43:43    13:43:47

Page 93

negotiation looks like.    13:43:51

But, again, I'm not super familiar with that    13:43:53

nitty-gritty detail.    13:43:56

BY MR. HARPER:    13:43:57

Q    Let's go to the top where is says -- the very    13:43:57

first paragraph where it starts with "First    13:44:00

agreement."    13:44:03

Do you see that?    13:44:04

A    Yes.    13:44:05

Q    And then the second sentence, it says "it is    13:44:05

between Dovel and Luner on the one hand, and Smith    13:44:10

Krivoshey PC, Bursor & Fisher PA, Zimmerman Reed LLP,    13:44:17

and Wasserman Law Group relating to its efforts before    13:44:23

Zimmerman came into the case."    13:44:28

And then it says "the parties of this    13:44:30

agreement will be collectively referred to as the    13:44:32

parties."    13:44:35

Do you see that?    13:44:36

A    I do.    13:44:36

Q    Do you understand all of those firms, Dovel,    13:44:37

Smith and Krivoshey, Bursor & Fisher, Zimmerman Reed,    13:44:40

Wassermann Law Group to be the parties that's referred    13:44:44

to in this agreement?    13:44:50

A    I do understand that, yes.    13:44:52

Q    Go down to -- under attorneys' fees and    13:44:53

Page 94

costs."

A    Okay.

Q    And just read that section through the rest of it at the top of page 2.

Read it to yourself.

A    Okay.

Q    In that section regarding attorneys' fees and costs, is there anything rescinding or otherwise altering the fee allocation as between Dovel and Luner on the one hand and the other law firms, from the prior exhibit?

MR. BRENNER:  Jacob, to be clear, you're just talking about this section?

MR. HARPER:  Yes.

MR. BRENNER:  Okay.  Calls for a legal conclusion.

Go ahead.

THE WITNESS:  It is a little bit hard for me to interpret, but I believe that the -- what this is essentially getting at is each of these parties has the ability to seek an award of cost or fees that they incurred.  So Dovel and all the other law firms listed.  And that previous agreements among Bursor Fisher and Smith Krivoshey remain in effect.

BY MR. HARPER:

Page 95

Q    And is there anything else in this document    13:46:43
that's Exhibit 12 that we're just looking at here that    13:46:45
changes the fee allocation schedule as between Dovel    13:46:52
and the other law firms?    13:46:56

MR. BRENNER:    Calls for a legal conclusion.    13:46:59

Go ahead.    After you review the document.    13:47:01

THE WITNESS:    To my understanding, other than    13:47:09
what was already previously discussed, no.    13:47:10

BY MR. HARPER:    13:47:54

Q    What evidence do you have that your first    13:47:54
purchase of GT's Living Foods Kombucha first took    13:47:58
place in 2020?    13:48:02

A    I remember drinking it consistently during    13:48:03
the COVID-19 pandemic, during the lockdown, which I    13:48:05
know started in March of 2020.    13:48:09

Again, I don't have the exact date of when I    13:48:11
made my first purchase memorized, but I can reasonably    13:48:13
assume that it was in early 2020, around the start of    13:48:17
the COVID-19 pandemic lockdown that I made my first    13:48:23
purchase.    13:48:28

Q    Other than your -- other than your reasonable    13:48:30
assumption, as you just said, about taking -- your    13:48:35
first purchase taking place in early 2020 of GT's    13:48:40
Living Foods Kombucha, are you certain that it    13:48:44
wasn't -- that your first purchase wasn't before    13:48:47

Page 96

HIGHLY CONFIDENTIAL

January 8, 2026

STATE OF CALIFORNIA    )

                       )

COUNTY OF LOS ANGELES  )


     I, Brandi Celestino, a Certified Shorthand Reporter, do hereby certify:


     That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

     That said proceedings were taken before me at the time and place therein set forth and were taken down remotely by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

     I further certify that I am neither counsel for, nor related to, any party to said proceedings, not in any way interested in the outcome thereof.

     In witness whereof, I have hereunto subscribed my name.


Dated:  January 8, 2026



*Brandi Celestino*

Brandi Celestino


Page 163

# EXHIBIT 25

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

---------------------------------x

AMIT PATEL, LAUREN SCHMIDT,

and CHRISTOPHER NUNEZ, on

Behalf of Themselves and All

Others Similarly Situated,

   Plaintiffs,

  Vs. Case No. 2:19-cv-10920-FMO-GJS

GT'S LIVING FOODS, LLC,

   Defendant.

---------------------------------x

    HIGHLY CONFIDENTIAL

  Videotape Deposition of Lauren

Schmidt taken by Defendants pursuant to

Notice, taken on January 14, 2026

beginning at 10:13 a.m., held at the

offices of Davis Wright Tremaine, LLP,

1251 Avenue of the Americas, New York,

New York 10020, before Maureen Ratto, a

Registered Professional Reporter,

Certified Court Reporter and Notary

Public.

Page 1

VIDEOGRAPHER:  We are going on the record.  The time on the video monitor is 10:13 a.m. on January 14, 2026.

This is Media Unit 1 of the video-recorded deposition of Lauren Schmidt taken by counsel for the defendant in the matter of Amit Patel, et al versus GT's Living Food LLC.

This case is filed in the United States District Court for the Central District of California, Western Division.

My name is Deverell Write representing Veritext Legal Solutions.  The court reporter is Maureen Ratto from Veritext Legal Solutions.

At this time will counsel state their appearances?

MR. ELIE-MEYERS:  My name is Joseph Elie-Meyers.  I'm counsel for GT's Living Food from Davis Wright & Tremaine.

Page 3

MR. BRENNER:  Martin Brenner    10:14:33
from Dovel & Luner, counsel for    10:14:34
plaintiffs.    10:14:36

VIDEOGRAPHER:  Will the    10:14:38
reporter please swear in the    10:14:39
witness?    10:14:40

* * *    10:14:48

L A U R E N  S C H M I D T, having been    10:14:48
first duly sworn according to law by    10:14:48
the Officer, testifies as follows:    10:14:48

DIRECT EXAMINATION BY MR. ELIE-MEYERS:    10:14:49

Q.    Good morning.    10:14:49

A.    Good morning.    10:14:51

Q.    Would you please state your    10:14:52
name and spell it?    10:14:54

A.    Lauren Schmidt, L-a-u-r-e-n,    10:14:55
S-c-h-m-i-d as in David, t as in Tom.    10:15:01

Q.    Have you ever used any other    10:15:08
last name besides Schmidt?    10:15:09

A.    No.    10:15:11

Q.    Have you ever used the name    10:15:11
last name Etta, E-t-t-a, on social media?    10:15:13

A.    Yes.    10:15:17

Q.    I'm going to hand you what the    10:15:17
court reporter is going to mark as 1.    10:15:41

Page 4

(Schmidt Exhibit 6, Joint                    11:37:36
Prosecution Agreement, Bates                 11:37:36
PLAINTIFFS0000042 was received and           11:37:36
marked on this date for                      11:37:36
identification.)                             11:37:58

Q.    I'm handing you what the court         11:37:58
reporter is marking Exhibit 6. Do you        11:37:59
recognize this document?                     11:38:20

A.    Vaguely.                               11:38:21

Q.    Have you seen this document            11:38:38
before?                                      11:38:39

A.    I believe so.                          11:38:40

Q.    Do you have any understanding          11:38:45
of what this document sets out?              11:38:59

A.    It's regarding the attorneys'          11:39:04
fees.                                        11:39:14

Q.    I want to direct your                  11:39:14
attention to the first paragraph of the      11:39:15
first page. Let me know once you've had a    11:39:19
chance to review that paragraph.             11:39:22

(Deponent reviews the                        11:39:22
document.)                                   11:39:26

A.    Yes. Okay.                             11:39:26

Q.    Do you recognize the name of           11:39:44
the law firm Smith Krivoshey, PC?            11:39:45

Page 63

A.    It's not familiar to me.    11:39:49

Q.    Have you had any contact with    11:39:53
an attorney from Smith Krivoshey, PC?    11:39:56

A.    Not to my knowledge.    11:39:59

Q.    Do you recognize the name of    11:40:00
the law firm Bursor & Fisher, PA?    11:40:02

A.    No.    11:40:07

Q.    Have you ever had any contact    11:40:07
with an attorney from that law firm?    11:40:08

A.    Not to my knowledge.    11:40:10

Q.    And do you recognize the law    11:40:11
firm Zimmerman Reed, PC?    11:40:13

A.    Other than you saying their    11:40:15
name.    11:40:17

Q.    So you've never had any    11:40:17
contact with anyone from Zimmerman --    11:40:19

A.    Correct.    11:40:20

Q.    What about Westerman Law    11:40:20
Corp., do you recognize that law firm    11:40:23
name?    11:40:25

A.    No.    11:40:25

Q.    Have you had any contact, to    11:40:26
your knowledge, with anyone attorney from    11:40:28
Westerman Law Corp.?    11:40:30

A.    No.    11:40:32

Page 64

Q.    I'll direct your attention to    11:40:33
page 2. Please review the first paragraph    11:40:39
and the bullet points that follow. Let me    11:40:48
know when you've reviewed that.    11:40:52

A.    Okay.    11:40:54

Q.    In your own words, what do you    11:41:03
understand this portion of the agreement    11:41:06
to set out?    11:41:08

A.    It is a fee structure, and I'm    11:41:09
not an attorney so I couldn't tell you --    11:41:15
I could tell you broadly, it's a fee    11:41:19
structure.    11:41:24

Q.    Do you understand this to    11:41:24
describe the ways in which your counsel    11:41:25
will split any proceeds of this lawsuit    11:41:27
with other law firms?    11:41:28

A.    Yes.    11:41:31

Q.    And do you understand that    11:41:31
your law firm Dovel & Luner will get a    11:41:35
larger percentage of the proceeds of this    11:41:39
lawsuit, if any, depending on when this    11:41:40
case settles --    11:41:43

MR. BRENNER:  Objection,    11:41:45
misstates facts. Go ahead.    11:41:45

Q.    -- if it settles or is    11:41:48

Page 65

resolved?    11:41:49

A.    I'm sorry. Can you repeat the question?    11:41:50 / 11:41:53

Q.    Do you understand that your law firm Dovel will get more money if this lawsuit is resolved in your favor later in the litigation?    11:41:53 / 11:41:53 / 11:41:57 / 11:41:59

MR. BRENNER:  Objection, misstates facts, calls for a legal conclusion.  Go ahead.    11:42:00 / 11:42:01 / 11:42:04

A.    I am not an attorney. I'm not sure if I'm interpreting this correctly. I do not know.    11:42:04 / 11:42:06 / 11:42:14

Q.    Have you reviewed this document before?    11:42:15 / 11:42:16

A.    Yes, it is ringing a bell.    11:42:17

Q.    I want to direct your attention to the last page of this document. Does that say "Client approval" at the top?    11:42:19 / 11:42:20 / 11:42:22 / 11:42:33

A.    It does.    11:42:34

Q.    And does it have a space for client name and client signature?    11:42:34 / 11:42:37

A.    Yes.    11:42:38

Q.    Do you recall if you signed    11:42:38

Page 66

January 14, 2026

this document at any point?                          11:42:39

A.    I do not recall but -- I do          11:42:41
not recall. I defer to my attorney.                  11:42:45

Q.    You don't know if you signed        11:42:57
this and sent it back to your attorney?              11:43:00

MR. BRENNER:   Asked and            11:43:01
answered. Go ahead.                                  11:43:02

A.    I do not recall.                     11:43:04

(Schmidt Exhibit 7, Agreement
Concerning Sharpe Litigation, Bates
PLAINTIFFS0000047 was received and
marked on this date for
identification.)

Q.    I'm going to hand you what's        11:43:31
been marked as Exhibit 7 by the court                11:43:32
reporter.                                            11:43:49

Do you recognize this              11:44:10
document?                                            11:44:10

A.    Vaguely, but I think because        11:44:11
it is very similar to the other document.            11:44:12

Q.    On the first page it says it's      11:44:15
an agreement regarding the Sharpe                    11:44:23
litigation?                                          11:44:25

A.    Yes.                                 11:44:25

Q.    Do you have any understanding       11:44:26

Page 67

of what this document sets out?    11:44:31

A.    It looks, again, to be regarding attorneys' fees and costs.    11:44:34    11:44:40

Q.    I just want to direct your attention to the last page of this document. Does that say "Client approval" at the top?    11:44:43    11:44:52    11:44:53    11:44:59

A.    Yes.    11:44:59

Q.    Is there space for your client name and a client signature?    11:45:00    11:45:01

A.    Yes.    11:45:03

Q.    Do you recall if you signed this document?    11:45:03    11:45:05

A.    I do not recall. I defer to my attorney.    11:45:06    11:45:09

Q.    Do you know if this document supercedes or cancels the prior Joint Prosecution Agreement that we discussed a few minutes ago?    11:45:09    11:45:19    11:45:24    11:45:25

MR. BRENNER:    Calls for a legal conclusion. Go ahead.    11:45:26    11:45:27

A.    I'm not an attorney. I do not know.    11:45:28    11:45:30

Q.    I'm just asking for your understanding.    11:45:30    11:45:31

Page 68

Do you have any understanding if this cancels the prior Joint Prosecution Agreement or supercedes it?

A.    I do not know.

Q.    In preparing for this deposition today, did you review Exhibit 6, the Joint Prosecution Agreement?

A.    I do not know if it's a specific document or not. They're blending together.

Q.    In preparing for this deposition today, did you review Exhibit 7, which is the agreement concerning the Sharpe litigation?

A.    I do not recall.

Q.    Sitting here today, do you have any understanding of your law firm, Dovel & Luner's relationship with the law firms that are listed in these two agreements?

MR. BRENNER:  Vague. Go ahead.

A.    At a high level.  But, again, I'm not an attorney. I believe some of these attorneys were involved well before I was involved in the case when Dovel &

Page 69

Luner took it over.                                    11:47:01

Q.    I'm going to hand you what the         11:47:11
court reporter is marking as Exhibit 8.       11:47:50

       (Schmidt Exhibit 8, copy of            11:47:50
    legal advertisement re: GT                11:47:50
    Enlightened or Synergy Kombucha was       11:47:50
    received and marked on this date          11:47:50
    for identification.)                      11:48:00

Q.    Do you recognize this              11:48:00
document?                                      11:48:03

A.    Yes, I believe so. It looks --     11:48:04
yes.                                           11:48:12

Q.    What is it?                        11:48:13

A.    I think there was something        11:48:14
similar on Instagram that I clicked on        11:48:16
the link for, this class action.              11:48:21

Q.    What caused you to click on        11:48:26
the link when you saw it on Instagram?        11:48:29

A.    The dates, the fact that the       11:48:31
Synergy Kombucha by GT's Living Foods or      11:48:40
Synergy Kombucha that I had purchased         11:48:45
between those dates may have had alcohol      11:48:47
in them beyond the legal limit and I was      11:48:50
avoiding alcohol at that time.                11:48:53

Q.    And when you saw this              11:48:57

Page 70

MR. BRENNER:  Asked and    11:52:18
answered, vague. Go ahead.    11:52:19

A.    I do not have a dollar value.    11:52:21
I rely on the attorneys and experts to    11:52:24
identify.    11:52:27

Q.    Sitting here today, is it your    11:52:30
understanding that you're seeking any    11:52:33
damages, other than a full refund of the    11:52:35
projects you purchased in this lawsuit?    11:52:39

A.    Can you repeat that?    11:52:41

Q.    I can, yes.    11:52:42
Sitting here today, do you    11:52:44
have any understanding of the damages --    11:52:44
if you are seeking to recover any damages    11:52:46
other than a full refund of the products    11:52:48
that you purchased?    11:52:50

MR. BRENNER:  Object to form,    11:52:51
asked and answered. Go ahead.    11:52:53

A.    I defer to my attorneys. I    11:52:56
don't know specifics of what is being    11:53:01
sought after.    11:53:02

Q.    Have you signed an engagement    11:53:05
letter or other retainer agreement with    11:53:15
your attorneys?    11:53:17

A.    Yes.    11:53:18

Page 74

C E R T I F I C A T E

I, MAUREEN M. RATTO, a Registered Professional Reporter, do hereby certify that prior to the commencement of the examination, LAUREN SCHMIDT was sworn by me to testify the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

Date: 1/28/2026

_Maureen Ratto_

MAUREEN M. RATTO, RPR

License No. 817125

Veritext Legal Solutions

calendar-abi@veritext.com 818-551-7300          www.veritext.com

# EXHIBIT 26

HIGHLY CONFIDENTIAL
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION


AMIT PATEL, LAUREN SCHMIDT,    )
and CHRISTOPHER NUNEZ, on      )
Behalf of Themselves and All   )
Others Similarly Situated,     )
                               )
                Plaintiffs,    )
                               )
        vs.                    )    Case No.:
                               )    2:19-cv-10920-FMO-GJS
GT's LIVING FOODS, LLC,        )
                               )
                Defendant.     )
                               )
_____)




DEPOSITION OF
AMIT JYOTINDRA PATEL
LOS ANGELES, CALIFORNIA
JANUARY 16, 2026
HIGHLY CONFIDENTIAL






REPORTED BY:    ELIZABETH TORSTENBO, CSR NO. 9048, RPR
FILE NO.:       7727662

                                                   Page 1

January 16, 2026

HIGHLY CONFIDENTIAL

Los Angeles, California, Friday, January 16, 2026          09:57:58

9:58 a.m.          09:57:58

09:57:58

THE VIDEOGRAPHER:  Good morning.  We're on the record.  The time is 9:58 a.m. Pacific Standard Time. Today is January 16th, 2026.          09:58:18 09:58:19 09:58:24

My name is Jonathan Hernandez.  I'm a video technician with Veritext Legal Solutions, located in Los Angeles, California.  We are recording these proceedings at 350 South Grand Avenue, Los Angeles, California.  This is the video deposition of Amit Patel in the action entitled Amit Patel, et al., vs. GT's Living Foods, LLC, et al.  This deposition is being taken on behalf of the defendant.  The case number is 2:19-cv-10920-FMO-GJS.

Now, would you all please identify yourself and who you represent, starting with the noticing attorney.

MR. HARPER:  Jacob Harper for defendant.

MR. MURPHET:  Felix Murphet for defendant.

MR. BRENNER:  Martin Brenner for plaintiffs.

THE VIDEOGRAPHER:  Thank you.

Now, would the court reporter please introduce yourself and administer the oath to the witness, and then counsel may begin.

Page 6

January 16, 2026

HIGHLY CONFIDENTIAL

THE REPORTER:  My name is Elizabeth Torstenbo, California Certified Shorthand Reporter No. 9048.

AMIT JYOTINDRA PATEL, having been administered an oath, was examined and testified as follows:

EXAMINATION

BY MR. HARPER:

Q.    All set?

Good morning, Mr. Patel.  Please state your full name for the record.

A.    Amit Jyotindra Patel.

Q.    Can you please spell that?

A.    A-m-i-t.  Middle name is J-y-o-t-i-n-d-r-a.  Last name is Patel, P-a-t-e-l.

Q.    What's your date of birth?

A.    March 25, 1985.

Q.    What's your current -- well, are you currently employed?

A.    I am.

Q.    And what is your employer's name?

A.    First Pacific Advisors LP.

Q.    Oh, before I get into that, what's your address?

Page 7

Veritext Legal Solutions
calendar-abi@veritext.com 818-551-7300     www.veritext.com

January 16, 2026

HIGHLY CONFIDENTIAL

You were an absent class member in those?    12:00:45

MR. BRENNER:  Calls for a legal conclusion.    12:00:50

Calls for speculation.    12:00:51

THE WITNESS:  I don't know the specific    12:00:53

terminology, but I wasn't a named member.    12:00:54

BY MR. HARPER:    12:00:58

Q.    Okay.  What are the names of your lawyers    12:00:58

in this case?    12:01:21

A.    The law firm is colloquially what we refer    12:01:24

to as Dovel.    12:01:28

Q.    Are there other law firms that are    12:01:34

representing the class in this case?    12:01:37

A.    No.    12:01:38

Q.    Who are the lawyers at Dovel that are your    12:01:42

lawyers in this action?    12:01:46

A.    So Martin Brennan [sic].  And then,    12:01:47

previously I had spoken to Stephen Andrews, who is no    12:01:50

longer at the firm.    12:01:55

Q.    Are there any other lawyers that you've    12:01:58

spoken to at Dovel?    12:02:00

A.    Yes.  One woman that was doing the intake.    12:02:02

Q.    Do you know that woman's name?    12:02:05

A.    I don't recall her name, specifically.    12:02:07

Q.    How many times since July of 2024 have you    12:02:12

spoken to individual -- to lawyers at Dovel?    12:02:17

Page 72

HIGHLY CONFIDENTIAL

January 16, 2026

HIGHLY CONFIDENTIAL

A.   I don't have a specific number.   12:02:31

Q.   Do you have a general recollection of how many?   12:02:33 12:02:36

A.   Yes.   12:02:37

Q.   What would that general recollection be?   12:02:38

A.   So likely three calls with Stephen and, then four, perhaps five calls with Martin.   12:02:42 12:02:47

Q.   So this is a good time for me to go into a couple other rules of the road even though we're a couple of hours in deposition.   12:02:55 12:02:57 12:03:00

You're doing a good job in terms of the letting me talk and I'm letting you talk and making a clear record.  And also, there have been a few times where I've had a question and then Martin has objected and then you've had a chance to respond.  And you've rightly responded, and that's been good.   12:03:01 12:03:05 12:03:07 12:03:14 12:03:18 12:03:23

The one time in a deposition where you should not answer a question is when your attorney tells you not to answer a question.  And that context will appear almost exclusively if there is a question that touches on what's called attorney-client privilege.   12:03:28 12:03:32 12:03:36 12:03:41 12:03:45 12:03:47

Do you know what attorney-client privilege is?   12:03:48 12:03:49

A.   At a high level, yes.   12:03:50

Page 73

January 16, 2026

HIGHLY CONFIDENTIAL

think you answered a slightly different question from 13:24:49

what I asked.  So I'm going to ask the reporter to ask 13:24:52

it one more time. 13:24:54

(Record read.) 13:25:09

THE WITNESS:  So in my text messages, I didn't 13:25:23

search.  In my emails, I reviewed a document related to 13:25:26

those. 13:25:32

BY MR. HARPER: 13:25:32

Q.    Other than reviewing a document related to 13:25:32

this, did you do anything else to search your emails 13:25:35

for documents responsive to Request for Production 13:25:39

No. 22? 13:25:45

A.    No. 13:25:46

Q.    And was it that retention agreement that 13:25:50

you've previously referenced? 13:25:52

A.    That's right. 13:25:54

Q.    Okay. 13:25:57

Do you see page -- I'm sorry.  On line 15 13:25:58

of page 22, do you recognize the word -- the term -- do 13:26:03

you recognize the law firm Smith, Krivoshey? 13:26:10

A.    Not in specific. 13:26:17

Q.    Do you recognize it in general? 13:26:22

A.    I believe previously there were other law 13:26:24

firms associated with this case, but now it's solely 13:26:27

Dovel. 13:26:30

Page 95

January 16, 2026

HIGHLY CONFIDENTIAL

Q.    Other than search for the term "kombucha," the term "GT's," search for receipts, and pull the retention agreement you previously discussed, did you do anything else to search for any of the documents in Requests for Production 1 through 47?

MR. BRENNER:  Asked and answered.  Misstates testimony.

Go ahead.

THE WITNESS:  I don't believe I did anything other than those items.

BY MR. HARPER:

Q.    Okay.  And did your -- did you have your counsel look through your emails?

A.    No.  I did it myself.

Q.    Okay.

We'll mark as Exhibit 4 the next document.

(Deposition Exhibit 4 was marked.)

BY MR. HARPER:

Q.    Let me know when you've had a chance to review this.

A.    Okay.

Q.    Do you recognize this document?

A.    I do.

Q.    When was the last time you saw this document?

Page 97

January 16, 2026

HIGHLY CONFIDENTIAL

A.    Some time ago.  I believe early in engaging with the claims in the summer of 2024.

Q.    You haven't seen it since then?

A.    I don't recall, specifically.  I know of it.  I haven't specifically reviewed it since then.

Q.    Is this the retention agreement that you referenced when we were talking about documents that you've pulled specifically in reference to RFP 21?

A.    I believe this would be part of it, but I'm not totally confident.

Q.    Okay.  Can you turn to the last page, where it says "Client Approval."  Do you see it?

A.    Yes.

Q.    Did you sign a version of this that -- under the "Client Approval" where it says "Client Signature"?

A.    I don't particularly recall.

Q.    Is there any other document through which you would have --

A.    So --

MR. BRENNER:  Wait.  There is no question pending.

BY MR. HARPER:

Q.    Well, go ahead and say what you were going to say.

Page 98

January 16, 2026

HIGHLY CONFIDENTIAL

Q.    Okay.  Do you understand who current counsel is as it's stated in those bullet points on page 2?     13:40:21  13:40:37  13:40:42

A.    Yes.  It's defined in the first paragraph of the agreement.     13:40:47  13:40:49

Q.    Okay.  And does that include a firm called Smith, Krivoshey?     13:40:51  13:40:55

A.    Yes, according to the first paragraph.     13:40:57

Q.    And does it also include a firm called Bursor and Fisher?     13:41:00  13:41:02

A.    Yes.     13:41:03

Q.    Okay.  So back on page 2, do you understand this at least here to reflect that there's a -- a scale of different allocations of fee awards as between Dovel on the one hand and those other counsel, including Smith, Krivoshey and Bursor and Fisher, on the other hand throughout the course of litigation?     13:41:04  13:41:10  13:41:12  13:41:20  13:41:25  13:41:29

A.    Yes, I do.     13:41:32

Q.    Okay.  Do you have any reason to believe that those allocations have differed in any way up to this point?     13:41:36  13:41:37  13:41:46

A.    I have no reason to believe they have differed.     13:41:48  13:41:50

Q.    Okay.     13:41:50

A.    Well -- so let me -- let me say this.  I     13:41:53

Page 102

January 16, 2026

HIGHLY CONFIDENTIAL

don't -- as a plaintiff, I don't particularly have an     13:41:56

interest in how counsel conducts its business.  So I     13:42:01

don't have particular attention here other than     13:42:06

counsel, between them, is negotiating an agreement.  I     13:42:08

know they're acting in the plaintiffs' favor.  So I'm     13:42:14

not particularly reviewing any of these documents in     13:42:18

detail.     13:42:21

Q.    What are your obligations to supervise     13:42:25

counsel in your position as a putative class     13:42:27

representative?     13:42:32

A.    Sorry.  Repeat the question.     13:42:37

(record read.)     13:42:47

THE WITNESS:  One, to pursue justice for the     13:42:49

claims -- the alcohol claim, the sugar claim.  And two,     13:42:52

to seek damages.     13:42:56

BY MR. HARPER:     13:42:58

Q.    Okay.  I'm asking something slightly     13:42:58

different.  I'm asking about your -- what are your     13:43:00

duties to supervise the class counsel, not just your     13:43:03

duties to sort of generally oversee the class, but what     13:43:08

are your duties to supervise class counsel in your     13:43:11

capacity as the class representative who's purporting     13:43:15

to represent however many class members are out there?     13:43:19

MR. BRENNER:  Object to form.     13:43:22

Go ahead.     13:43:23

Page 103

HIGHLY CONFIDENTIAL

can identify it.

Q.    Would that include potential conflicts of interest?

A.    Yes, that could be a concern.

Q.    How would you define a "conflict of interest"?

A.    In general or in specific to this?

Q.    Specific to this.

A.    And when I say, "This," meaning the joint -- this agreement?

Q.    Sure.

A.    No, that wasn't -- that wasn't meant to make this an example.  It was a question if the question is specific to this.

Q.    Okay.  Can you give me an example, in general, of a conflict of interest that you were referring to?

A.    No, not with any great confidence. Because I'm not legal -- trained in a legal aspect. But as a lay person, I can observe and -- what constitutes a conflict of interest.  I don't have a specific knowledge of, in the legal realm, what a specific conflict of interest would be.  But if I did observe one, I could potentially figure it out.

MR. HARPER:  I'm going to mark as Exhibit 5 the

Page 105

HIGHLY CONFIDENTIAL

next document.                                              13:47:18

(Deposition Exhibit 5 was marked.)                 13:47:29

BY MR. HARPER:                                             13:47:29

Q.    Let me know when you've had a chance to       13:47:29
review.                                                    13:47:31

A.    Okay.                                          13:50:12

Q.    Can you turn to the last page, where it       13:50:13
says "Client Approval" on page 4 of Exhibit 5.            13:50:15

A.    Okay.                                          13:50:25

Q.    Did you sign a copy of this Client            13:50:26
Approval?                                                  13:50:29

A.    It's showing blank here.                       13:50:36

Q.    Right.  But that wasn't my question.  My      13:50:38
question is did you sign a version of this?               13:50:40

A.    I believe I did.                               13:50:43

Q.    Okay.  And why didn't you produce it?         13:50:45

MR. BRENNER:  Jacob, if the question is why         13:50:48
didn't he produce a communication between him and         13:50:50
counsel, that seems like something you and I should       13:50:52
discuss and not appropriate for this deposition.          13:50:55

You can answer if you know.                   13:50:58

THE WITNESS:  Why didn't I produce it was the       13:51:04
question?                                                 13:51:06

I'm sorry.  Repeat the question, please.      13:51:06

(Record read.)                                13:51:14

Page 106

January 16, 2026

HIGHLY CONFIDENTIAL

THE WITNESS:  It didn't show up in the searches that I mentioned previously.

BY MR. HARPER:

Q.    Okay.  Aside from the Joint Prosecution Agreement that's Exhibit 4 and the Agreement Concerning Sharpe Litigation that's Exhibit 5, did you sign any other documents in the form of a retention agreement between yourself and class counsel for this matter?

A.    Yes, I believe so.

Q.    Okay.  Did that not appear in your searches?

A.    That would be the only reason that it didn't show up in the searches, that I searched for "kombucha" and "GT's" and it wasn't there.

Q.    Okay.  How many documents -- how many other retention agreement documents did you sign pertaining to retention that were not produced?

A.    How many?

Q.    Yeah.

A.    I would need to -- I don't have knowledge of that specific number.

Q.    Is it more than one additional document?

A.    Can you repeat the question, please?  Not the previous one but the one before that.

(Record read.)

Page 107

Veritext Legal Solutions
calendar-abi@veritext.com 818-551-7300        www.veritext.com

HIGHLY CONFIDENTIAL

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [X] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

DATED: JANUARY 23, 2026

_____

ELIZABETH TORSTENBO, RPR

CSR No. 9048

Page 163

# EXHIBIT 27A

Jacob M. Harper (Cal. Bar No. 259463)
jacobharper@dwt.com
Heather F. Canner (Cal. Bar No. 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (Cal. Bar No. 325183)
josepheliemeyers@dwt.com
Peter K. Bae (Cal. Bar No. 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
GT's Living Foods, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,

Plaintiff,

vs.

GT'S LIVING FOODS, LLC,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:19-cv-10920-FMO-GJS

**DEFENDANT GT'S LIVING FOODS, LLC'S NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS**

NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant GT's Living Foods, LLC (GT's) will serve the attached Subpoenas to Testify at a Deposition in a Civil Action on the following deponents:

- Dovel and Luner LLP (see **Exhibit 1**).  Dovel and Luner LLP's deposition will be conducted on February 12, 2026, at the law offices of Davis Wright Tremaine LLP, 350 S. Grand Avenue, Floor 27, Los Angeles, CA 90071.  *A remote option will be provided for all participants.*

- Yeremey O. Krivoshey (see **Exhibit 2**).  Mr. Krivoshey's deposition will be conducted at 10:00 a.m. on February 10, 2026, at the law offices of Davis Wright Tremaine LLP, 350 S. Grand Avenue, Floor 27, Los Angeles, CA 90071.  *A remote option will be provided for all participants.*

- Bursor and Fisher PA (see **Exhibit 3**).  Bursor and Fisher PA's deposition will be conducted at 10:00 a.m. on February 11, 2026, at the law offices of Davis Wright Tremaine LLP, 350 S. Grand Avenue, Floor 27, Los Angeles, CA 90071.  *A remote option will be provided for all participants.*

- Ahdoot and Wolfson, PC (see **Exhibit 4**).  Ahdoot and Wolfson, PC's deposition will be conducted at 10:00 a.m. on February 20, 2026, at the law offices of Davis Wright Tremaine LLP, 350 S. Grand Avenue, Floor 27, Los Angeles, CA 90071.  *A remote option will be provided for all participants.*

The above deponents are directed to produce and permit inspection and copying of the documents and/or objects specified in Attachment A to each Subpoena at the respective time of each deposition.  The deposition will be taken before a court reporter, or other person authorized by law to administer oaths, and will be recorded by stenographic and audiovisual means.  The deposition may also

1

NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

be recorded by instant visual display using real-time transcription software.  The deposition will be subject to continuance or adjournment from time to time or place to place until completed.

The deposition shall be taken for purposes of discovery, trial, and for any other purpose permitted under the Federal Rules of Civil Procedure. GT's reserves the right to amend or supplement this Notice.  This reservation of rights survives any deposition taken pursuant to this Notice, should the discovery sought not be produced in time to be addressed at any scheduled deposition.

DATED: January 29, 2026                    DAVIS WRIGHT TREMAINE LLP


By:___/s/ Jacob M. Harper_____
          Jacob M. Harper

*Attorneys for Defendant*
*GT's Living Foods, LLC*

2

NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS

# EXHIBIT 1

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated, *Plaintiff* | ) ) ) ) |
| v. | ) Civil Action No. 2:19-cv-10920-FMO-DSR ) |
| GT'S LIVING FOODS, LLC, *Defendant* | ) ) ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Dovel and Luner LLP, 201 Santa Monica Boulevard, Suite 600, Santa Monica, CA 90401
*(Name of person to whom this subpoena is directed)*

☒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:<br>Davis Wright Tremaine LLP, 350 South Grand Avenue, 27th Floor, Los Angeles, California 90071<br>*Remote option to be provided to all participants* | Date and Time:<br>February 12, 2026 at 10:00 a.m. |
|---|---|

The deposition will be recorded by this method:  videographically and stenographically via a certified court reporter

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
       **See Attachment A**

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: January 29, 2026

       CLERK OF COURT

                                             OR

_____           /s/ Jacob M. Harper
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant GT's Living Foods, LLC                                    , who issues or requests this subpoena, are:

Jacob M. Harper, Davis Wright Tremaine LLP, 350 S. Grand Avenue, 27th Floor, Los Angeles, CA 90071

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:19-cv-10920-FMO-DSR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ;or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**
**TO SUBPOENA TO TESTIFY AT A DEPOSITION**

## DOCUMENT REQUESTS

1. All Communications between You and Prior Counsel related to this Action.

   (For purposes of this Request, the following definitions apply:

   - "**You**" and "**Your**" means Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

   - "**Prior Counsel**" means former counsel that represented any of the named plaintiffs, including the dismissed named plaintiffs, and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.) at any time prior to August 7, 2024, including but not limited to Smith Krivoshey PC, Bursor and Fisher P.A., and Ahdoot and Wolfson PC, including all attorneys and staff working at those firms, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on their behalf.

   - "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

   - "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.)

2. All Documents exchanged with and Communications between You and Prior Counsel Relating to any agreements governing representation of the putative class or Named Plaintiffs in the Action, including, but not limited to, joint prosecution agreements, agreements regarding sharing and payment of costs, agreements related to cost reimbursement and attorney's fees, agreements regarding litigation funding, and agreements governing decision making and disputes between counsel.

   (For purposes of this Request, the following definitions apply:

   - "**Document(s)**" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.   A copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate document within the meaning of this term.   Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other Communications.

   - "**You**" and "**Your**" means Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

- "**Prior Counsel**" means former counsel that represented any of the named plaintiffs, including the dismissed named plaintiffs, and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.) at any time prior to August 7, 2024, including but not limited to Smith Krivoshey PC, Bursor and Fisher P.A., and Ahdoot and Wolfson PC, including all attorneys and staff working at those firms, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on their behalf.

- "**Named Plaintiffs**" means all past and present named plaintiffs in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez.

- "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

- "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.

- The terms "**Related to**" or "**Relating to**" means and includes constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, relating to, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.)

# EXHIBIT 2

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
CENTRAL DISTRICT OF CALIFORNIA

AMIT PATEL, LAUREN SCHMIDT,
and CHRISTOPHER NUNEZ, on Behalf of
Themselves and All Others Similarly Situated,

*Plaintiff*

v.

GT'S LIVING FOODS, LLC,

*Defendant*

)
)
)
)
)
)
)
)
)

Civil Action No. 2:19-cv-10920-FMO-DSR

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Yeremey O. Krivoshey
Smith Krivoshey, PC, 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108

*(Name of person to whom this subpoena is directed)*

☒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:<br>Davis Wright Tremaine LLP, 50 California Street,<br>Suite 2300, San Francisco, California 94111<br>*Remote option to be provided to all participants* | Date and Time:<br>February 10, 2026 at 10:00 a.m. |
|---|---|

The deposition will be recorded by this method: videographically and stenographically via a certified court reporter

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
        **See Attachment A**

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: January 29, 2026

                    *CLERK OF COURT*

                                        OR

_____                    */s/* Jacob M. Harper
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant GT's Living Foods, LLC _____, who issues or requests this subpoena, are:

Jacob M. Harper, Davis Wright Tremaine LLP, 350 S. Grand Avenue, 27th Floor, Los Angeles, CA 90071

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:19-cv-10920-FMO-DSR

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

    I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ;or

    ☐ I returned the subpoena unexecuted because: _____

_____ .

    Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

    I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**
**TO SUBPOENA TO TESTIFY AT A DEPOSITION**

**DOCUMENT REQUESTS**

1.  All Communications between You and Current Counsel related to this Action.

    (For purposes of this Request, the following definitions apply:

    - "**You**" and "**Your**" means Yeremey O. Krivoshey, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on his behalf.

    - "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

    - "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

    - "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.)

2.  All Documents exchanged with and Communications between You and Current Counsel Relating to any agreements governing representation of the putative class or Named Plaintiffs in the Action, including, but not limited to, joint prosecution agreements, agreements regarding sharing and payment of costs, agreements related to cost reimbursement and attorney's fees, agreements regarding litigation funding, and agreements governing decision making and disputes between counsel.

    (For purposes of this Request, the following definitions apply:

    - "**Document(s)**" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.   A copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate document within the meaning of this term.   Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other Communications.

    - "**You**" and "**Your**" means Yeremey O. Krivoshey, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on his behalf.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

- "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

- "**Named Plaintiffs**" means all past and present named plaintiffs in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez.

- "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

- "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.

- The terms "**Related to**" or "**Relating to**" means and includes constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, relating to, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.)

# EXHIBIT 3

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated, <br> *Plaintiff* <br> v. <br><br> GT'S LIVING FOODS, LLC, <br> *Defendant* | ) ) ) ) ) Civil Action No. 2:19-cv-10920-FMO-DSR ) ) ) ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Bursor and Fisher PA, 1990 North California Blvd., 9th Floor, Walnut Creek, CA 94596
*(Name of person to whom this subpoena is directed)*

☒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: <br> Davis Wright Tremaine LLP, 50 California Street, Suite 2300, San Francisco, California 94111 <br> *Remote option to be provided to all participants* | Date and Time: <br> February 11, 2026 at 10:00 a.m. |
|---|---|

The deposition will be recorded by this method: videographically and stenographically via a certified court reporter

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
**See Attachment A**

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: January 29, 2026

CLERK OF COURT

OR

|  |  |
|---|---|
| _____ <br> *Signature of Clerk or Deputy Clerk* | */s/* Jacob M. Harper <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant GT's Living Foods, LLC, who issues or requests this subpoena, are:

Jacob M. Harper, Davis Wright Tremaine LLP, 350 S. Grand Avenue, 27th Floor, Los Angeles, CA 90071

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:19-cv-10920-FMO-DSR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ;or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**
**TO SUBPOENA TO TESTIFY AT A DEPOSITION**

## DOCUMENT REQUESTS

1.  All Communications between You and Current Counsel related to this Action.

    (For purposes of this Request, the following definitions apply:

    - "**You**" and "**Your**" means Bursor and Fisher PA, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

    - "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

    - "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

    - "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.)

2.  All Documents exchanged with and Communications between You and Current Counsel Relating to any agreements governing representation of the putative class or Named Plaintiffs in the Action, including, but not limited to, joint prosecution agreements, agreements regarding sharing and payment of costs, agreements related to cost reimbursement and attorney's fees, agreements regarding litigation funding, and agreements governing decision making and disputes between counsel.

    (For purposes of this Request, the following definitions apply:

    - "**Document(s)**" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.   A copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate document within the meaning of this term.   Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other Communications.

    - "**You**" and "**Your**" means Bursor and Fisher PA, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

- "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, em-ployees, and agents acting on its behalf.

- "**Named Plaintiffs**" means all past and present named plaintiffs in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez.

- "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

- "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.

- The terms "**Related to**" or "**Relating to**" means and includes constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, relating to, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.)

# EXHIBIT 4

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br>*Plaintiff*<br><br>v.<br><br>GT'S LIVING FOODS, LLC,<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 2:19-cv-10920-FMO-DSR<br>)<br>)<br>) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Ahdoot and Wolfson, PC, 2600 West Olive Ave, Suite 500, Burbank, CA 91505
*(Name of person to whom this subpoena is directed)*

☒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:<br>Davis Wright Tremaine LLP, 350 South Grand Avenue, 27th Floor, Los Angeles, California 90071<br>*Remote option to be provided to all participants* | Date and Time:<br>February 20, 2026 at 10:00 a.m. |
|---|---|

The deposition will be recorded by this method: videographically and stenographically via a certified court reporter

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
         **See Attachment A**

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: January 29, 2026

CLERK OF COURT

                                                                                 OR

_____                    /s/ Jacob M. Harper
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant GT's Living Foods, LLC                    , who issues or requests this subpoena, are:

Jacob M. Harper, Davis Wright Tremaine LLP, 350 S. Grand Avenue, 27th Floor, Los Angeles, CA 90071

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:19-cv-10920-FMO-DSR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ;or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**
**TO SUBPOENA TO TESTIFY AT A DEPOSITION**

**<u>DOCUMENT REQUESTS</u>**

1. All Communications between You and Current Counsel related to this Action.

   (For purposes of this Request, the following definitions apply:

   - "**You**" and "**Your**" means Ahdoot and Wolfson, PC, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

   - "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

   - "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

   - "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.)

2. All Documents exchanged with and Communications between You and Current Counsel Relating to any agreements governing representation of the putative class or Named Plaintiffs in the Action, including, but not limited to, joint prosecution agreements, agreements regarding sharing and payment of costs, agreements related to cost reimbursement and attorney's fees, agreements regarding litigation funding, and agreements governing decision making and disputes between counsel.

   (For purposes of this Request, the following definitions apply:

   - "**Document(s)**" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure. A copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate document within the meaning of this term. Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other Communications.

   - "**You**" and "**Your**" means Ahdoot and Wolfson, PC, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

- "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

- "**Named Plaintiffs**" means all past and present named plaintiffs in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez.

- "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

- "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.

- The terms "**Related to**" or "**Relating to**" means and includes constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, relating to, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.)

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 350 South Grand Avenue, 27th Floor, Los Angeles, CA  90071.

On January 29, 2026, I served the document described as **DEFENDANT GT'S LIVING FOODS, LLC'S NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS** upon the interested parties in this action addressed as follows:

| | |
|---|---|
| Simon Carlo Franzini<br>Gabriel Zachiah Doble<br>Richard E. Lyon, III<br>Martin Brenner<br>**DOVEL & LUNER, LLP**<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, California 90401<br>Telephone: (310) 656-7066<br>Email: simon@dovel.com<br>Email: gabe@dovel.com<br>Email: rick@dovel.com<br>Email: martin@dovel.com | *Attorneys for Plaintiffs* |

 X  (VIA U.S. MAIL)  I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service.  I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

____ (VIA PERSONAL SERVICE) I caused the above-named documents to be served on all other parties to this action by requesting that a messenger from GLOBAL NETWORK LEGAL SUPPORT deliver true copies of the above-named documents enclosed in sealed envelopes.

<div align="center">3</div>

NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS

_X_ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address nichelegoitia@dwt.com, at 350 South Grand Avenue, 27th Floor, Los Angeles, CA.

____ (VIA OVERNIGHT DELIVERY) by placing a true copy or original in a separate envelope for each addressee named above, with the name and address of the person served shown above on the envelope, sealing the envelope and placing it for collection and delivery by FEDERAL EXPRESS with delivery fees paid or provided for in accordance with ordinary business practices.

Executed on January 29, 2026, Los Angeles, California.

_X_ Federal  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Nichele M. Goitia

4

NOTICE OF SUBPOENAS TO TESTIFY AT DEPOSITIONS

# EXHIBIT 27B

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br>*Plaintiff*<br><br>v.<br><br>GT'S LIVING FOODS, LLC,<br>*Defendant* | )<br>)<br>)<br>)<br>)   Civil Action No. 2:19-cv-10920-FMO-DSR<br>)<br>)<br>)<br>) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Yeremey O. Krivoshey
Smith Krivoshey, PC - c/o Northwest Registered Agent, Inc., 2108 N. St. # N, Sacramento, CA 95816-5712

*(Name of person to whom this subpoena is directed)*

☒  Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:<br>Davis Wright Tremaine LLP<br>50 California Street, Suite 2300 San Francisco, CA 94111<br>*Remote option to be provided to all participants* | Date and Time:<br>February 18, 2026 at 10:00 a.m. |
|---|---|

The deposition will be recorded by this method:  videographically and stenographically via a certified court reporter

☒  *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
        **See Attachment A**

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: February 4, 2026

        *CLERK OF COURT*

                                  OR

| | |
|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | */s/* Jacob M. Harper<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Defendant GT's Living Foods, LLC _____ , who issues or requests this subpoena, are:

Jacob M. Harper, Davis Wright Tremaine LLP, 350 S. Grand Avenue, 27ᵗʰ Floor, Los Angeles, CA 90071

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:19-cv-10920-FMO-DSR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ;or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**
**TO SUBPOENA TO TESTIFY AT A DEPOSITION**

**<u>DOCUMENT REQUESTS</u>**

1.  All Communications between You and Current Counsel related to this Action.

    (For purposes of this Request, the following definitions apply:

    - "**You**" and "**Your**" means Smith Krivoshey PC, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

    - "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

    - "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

    - "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.)

2.  All Documents exchanged with and Communications between You and Current Counsel Relating to any agreements governing representation of the putative class or Named Plaintiffs in the Action, including, but not limited to, joint prosecution agreements, agreements regarding sharing and payment of costs, agreements related to cost reimbursement and attorney's fees, agreements regarding litigation funding, and agreements governing decision making and disputes between counsel.

    (For purposes of this Request, the following definitions apply:

    - "**Document(s)**" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.   A copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings, and any preliminary versions, draft or revision of the foregoing is a separate document within the meaning of this term.   Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, text, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, financial report, accounting report, work papers, drafts, facsimile, index, chart, graph, index, computer disk, or any other written, printed, typed, filmed, or graphic matter however produced or reproduced, and any other Communications.

    - "**You**" and "**Your**" means Smith Krivoshey PC, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

- "**Current Counsel**" means Dovel and Luner LLP, current counsel representing the named plaintiffs and putative class in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including all attorneys and staff working at Dovel and Luner LLP, and where appropriate in the context, all representatives, managers, attorneys, employees, and agents acting on its behalf.

- "**Named Plaintiffs**" means all past and present named plaintiffs in the action *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), including Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez.

- "**Communication**(s)" as used herein means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and includes without limitation, meetings, personal conferences, telephone conferences, voicemail messages, memoranda, notes, letters, electronic mail, texts, social media posts, direct messaging in applications, and other computer-generated messages, and instant and text messages.

- "**Action**" means the pending lawsuit in *Sharpe et al. v. GT's Living Foods*, 2:19-cv-10920 (C.D. Cal.), United States District Judge Fernando M. Olguin presiding.

- The terms "**Related to**" or "**Relating to**" means and includes constituting, containing, embodying, evidencing, reflecting, identifying, incorporating, alluding to, responding to, connected with, commenting on, with respect to, in connection with, arising from, about, relating to, discussing, showing, describing, mentioning, analyzing, or in any way pertaining to, whether the reference or relationship provides support for, or contradicts, any alleged fact or conclusion that is the object of such reference or relationship.)

| Attorney or Party without Attorney: | | FOR COURT USE ONLY |
|---|---|---|
| Jacob M. Harper<br>Davis Wright Tremaine LLP<br>350 S. Grand Ave – 27th Floor<br>Los Angeles, CA 90071 | E-MAIL ADDRESS (Optional): | |
| TELEPHONE No.: (213) 633-6800    FAX No. (Optional): (213) 633-6899 | | |
| Attorney for: Defendant | Ref No. or File No.:<br>123411-2 | |

Insert name of Court, and Judicial District and Branch Court:
UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA

Plaintiff: AMIT PATEL, LAUREN SCHMIDT

Defendant: GT'S LIVING FOODS, LLC

| **PROOF OF SERVICE** | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER:<br>2:19-cv-10920-FMO-DSR |
|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION
**I SERVED COPIES** OF THE FOLLOWING DOCUMENTS:

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

PARTY SERVED: **Smith Krivoshey, PC / Yeremey O. Krivoshey**

PERSON SERVED: **Ahsley Dawn - Authorized to Accept**

DATE & TIME OF DELIVERY: **2/4/2026**
**2:33 PM**

ADDRESS, CITY, AND STATE: **Northwest Registered Agent, Inc.,**
**2108 N. St. # N,**
**SACRAMENTO, CA 95816**

MANNER OF SERVICE:
Personal Service - By personally delivering copies.

Fee for Service: $ .00
    County: Sacramento
    Registration No.: 2025-070
    Apex Legal Services
    611 Wilshire Boulevard, Ste 700
    Los Angeles, CA 90017
    (213) 488-1500
    Ref: 123411-2

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on February 6, 2026.

Signature: _T. Ayers_
Trevor Ayers

**PROOF OF SERVICE**

982(a)(23)[New July 1, 1987]                                                                 Order#: 64356/General

# EXHIBIT 28

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*Attorneys for Non-Parties Yeremey O.*
*Krivoshey and Smith Krivoshey, PC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>         v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>                              Defendant. | Misc Case No.<br><br>(Case No. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**NOTICE OF MOTION AND MOTION OF NON-PARTIES YEREMEY O. KRIVOSHEY AND SMITH KRIVOSHEY, P.C. TO QUASH DEPOSITION SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:<br>Time:<br>Courtroom:<br><br>Judge: |

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that non-party law firm Smith Krivoshey, P.C. and Yeremey Krivoshey in his individual capacity hereby move this Court pursuant to Federal Rule of Civil Procedure 45(d)(3) for an order quashing the subpoena ("Subpoena") issued by Defendant and served on Smith Krivoshey, PC on February 4, 2026, which seeks corporate testimony and/or Mr. Krivoshey's testimony in this matter. The Court will set the hearing date on this motion.

Fact discovery in this matter closed last year, the subpoena is procedurally defective, and Defendant has not met its high burden of establishing that the testimony of former counsel in this case is permissible.

This motion is based upon the attached Memorandum of Points and Authorities; the supporting declarations; the complete files and records in this action, and such oral argument and other documents as may be received by this Court at any hearing on this motion.

Dated: February 11, 2026                Respectfully submitted,

                                         /s/    Yeremey Krivoshey

                                        **SMITH KRIVOSHEY, PC**
                                        Yeremey O. Krivoshey
                                        (State Bar No. 295032)
                                        28 Geary Street Suite 650 #1507
                                        San Francisco, CA 94108
                                        Phone: 415-839-7000
                                        E-Mail: yeremey@skclassactions.com

                                        **SMITH KRIVOSHEY, PC**
                                        Joel D. Smith (State Bar No. 244902)
                                        867 Boylston Street, 5th Floor, Ste. 1520
                                        Boston, MA 02116
                                        Phone: 617-377-7404
                                        E-Mail: joel@skclassactions.com

---

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

1

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTS | 3 |
| | A. Background Regarding the *Patel et al v. GT's Living Foods, LLC* Litigation | 3 |
| | B. Smith Krivoshey P.C.'s Approximately 5-Month Long Involvement In This Case | 4 |
| | C. Fact Discovery Closed In April 2021, Except For "Limited Discovery As To Newly Added Named Plaintiffs" | 6 |
| | D. The Subpoena Has Never Been Served On Mr. Krivoshey | 7 |
| | E. The February 4, 2026 Subpoena Seeks Testimony And Privileged Documents That Are Equally Available To Parties In The Litigation And That Have Already Been Provided | 9 |
| | F. Defendant Did Not Provide Notice Of The Subpoena To The Parties In The Litigation | 12 |
| | G. The Subpoena Does Not Provide Sufficient Time To Comply | 13 |
| | H. Defendant Did Not Pay Required Fees | 13 |
| | I. The Subpoena Is Unduly Burdensome | 14 |
| III. | ARGUMENT | 14 |
| | A. The Subpoena Is Procedurally Defective | 14 |
| | 1. The Subpoena Was Never Served On Mr. Krivoshey | 14 |
| | 2. Defendant Never Tendered Fees | 16 |
| | 3. Defendant Did Not Provide Notice To The Parties | 17 |
| | 4. The Subpoena Violates The Court's Scheduling Order | 17 |
| | 5. The Subpoena Fails To Specify The Witness And Identifies No Topics For Examination | 17 |
| | B. Defendant Does Not Meet The Standard For Allowing Depositions Of Current Or Former Opposing Counsel | 18 |
| IV. | CONCLUSION | 21 |

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Fed. Of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott,*
277 F.R.D. 474 (S.D. Fla. 2011) ...........................................................................18, 19

*Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.,*
2016 WL 5469257 (E.D. Cal. Sept. 29, 2016) ..........................................................14

*CF & I Steel Corp v. Mitsui & Co.,*
713 F.2d 494 (9th Cir. 1983) ....................................................................................16

*D'Amico v. N & D Restaurants, LLC,*
2025 WL 3158124 (C.D. Cal. Sept. 24, 2025)..........................................................16

*Duong v. Groundhog Enters., Inc.,*
2020 WL 2041939 (C.D. Cal. Feb. 28, 2020)...........................................................20

*Effinger v. Ancient Organics LLC,*
2024 WL 3643395 (N.D. Cal. Aug. 2, 2024)............................................................13

*Friends of Riverside Airport, LLC v. Dep't of the Army,*
2021 WL 401209 (C.D. Cal. Jan. 14, 2021) .......................................................18, 19

*Fujikura Ltd. v. Finisar Corp.,*
2015 WL 5782351 (N.D. Cal. Oct. 5, 2015)..................................................15, 16, 17

*Handel v. Rhoe,*
2015 WL 6127271 (S.D. Cal. Oct. 16, 2015) ...........................................................17

*In re Subpoena Issued to Dennis Friedman,*
350 F.3d 65 (2d Cir. 2003)........................................................................................19

*j2 Global, Inc. v. Fax87.Com,*
2014 WL 462832 (C.D. Cal. Feb. 5, 2014)..........................................................15, 16

*Jenkins v. City of Los Angeles,*
2025 WL 2019789 (C.D. Cal. Jan. 6, 2025) .............................................................17

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992).....................................................................................17

*LA Printex Indus., Inc. v. VF Corp.,*
2014 WL 12587037 (C.D. Cal. Jan. 14, 2014) ....................................................18, 20

*LionHead Glob. No 2, LLC v. Todd Reed, Inc.*,
2020 WL 10692515 (C.D. Cal. Dec. 14, 2020) ..........................................................................18

*Mirana v. Battery TaiShing Corp.*,
2009 WL 290459 (N.D. Cal. Feb. 5, 2009) ................................................................................17

*Monster Energy Co v. Vital Pharm, Inc.*,
2020 WL 2405295 (C.D. Cal. Mar. 10, 2020) .................................................................18, 19, 20

*Pochiro v. Prudential Ins. Co. of Am.*,
827 F.2d 1246 (9th Cir.1987)......................................................................................................16

*Produce v. Cal. Harvest Healthy Foods Ranch Market*,
2012 WL 259575 (N.D. Cal. Jan. 27, 2012) ...............................................................................15

*Scott v. Keller*,
2010 WL 1267772 (E.D. Cal. March 31, 2010)...........................................................................17

*Shelton v. Am. Motors Corp.*,
805 F.2d 1323 (8th Cir. 1986)......................................................................................................19

*Wallis v. Centennial Ins. Co.*,
2013 WL 434441 (E.D. Cal. Feb. 1, 2013) ................................................................................16

**Statutes**

28 U.S.C. § 1821(b)...........................................................................................................................13

Cal. Civ. Proc. Code § 415.20(b) ....................................................................................................15

**Rules**

Cal. Rule of Professional Conduct 3-700(A)(2) ................................................................................5

Fed. R. Civ. P. 7(b)(1) ......................................................................................................................17

Fed. R. Civ. P. 30(b)(6) ...............................................................................................................18, 20

Fed. R. Civ. P. 45 ................................................................................................................15, 16, 17

Fed. R. Civ. P. 45(b)(1) ...............................................................................................................14, 16

Fed. R. Civ. P. 45(d)(3) ................................................................................................................1, 14

**Other Authorities**

9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) ...................................................................................15

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

iii

## I.    Introduction

Non-parties Yeremey O. Krivoshey and the law firm Smith Krivoshey, PC seek the Court's assistance to quash a subpoena in a case they withdrew from in 2024. A year and a half following their withdrawal from *Patel et al. v. GT's Living Foods, LLC,* Case No. 2:19-cv-10920-FMO-DSR (C.D. Cal.), Defendant GT's Living Foods has served a subpoena on Mr. Krivoshey and apparently Mr. Krivoshey's law firm, Smith Krivoshey, PC seeking all communications between Mr. Krivoshey/Smith Krivoshey, P.C., and current counsel for plaintiffs in that matter, Dovel & Luner LLP. The subpoena is an abuse of the discovery process, has been served solely for harassment, and should be quashed due to a myriad procedural and substantive defects.

Mr. Krivoshey, then with the law firm Bursor & Fisher, P.A., was counsel for plaintiffs in *Patel* between the inception of the case in December 2019 and August 2024. *Patel* is a putative class action concerning the alleged unlawful sale of kombucha (fermented tea) beverages. At least while Mr. Krivoshey was involved, the litigation was extremely contentious. Fact discovery closed in April 2021, and the parties finished briefing class certification in August 2021.  Judge Fernando M. Olguin ultimately issued an order denying Plaintiffs' motion for class certification without prejudice on June 21, 2024. In the class certification order, Judge Olguin raised potential adequacy and typicality issues affecting Bursor & Fisher stemming from its settlement of a different class action concerning GT's Kombucha products in 2017. Judge Olguin ultimately never issued a formal ruling on any of the Rule 23(a) (including adequacy of counsel) or 23(b) factors, instead asking that those issues be further address in a renewed motion for class certification.

In February 2024, shortly before Judge Olguin's class certification ruling, Mr. Krivoshey left Bursor & Fisher, P.A. and founded the law firm Smith Krivoshey, PC. Mr. Krivoshey, Smith Krivoshey PC, and Bursor & Fisher, P.A. remained counsel of record after Mr. Krivoshey's departure. However, immediately following Judge Olguin's class certification ruling, the plaintiffs set out to find additional counsel, ultimately retaining Dovel & Luner in mid-July 2024. Within weeks of Dovel & Luner's retention and appearance, in early August 2024, Mr. Krivoshey, Smith Krivoshey, PC and Bursor & Fisher, P.A. withdrew from the case. Dovel & Luner stayed on as lead

counsel following the withdrawals. In total, Smith Krivoshey, PC was counsel of record only from February until August 2024.

Before withdrawing, in July 2024, Smith Krivoshey, PC executed two successive agreements governing the litigation with Dovel & Luner, with the second agreement superseding the first agreement. The operative agreement states that Smith Krivoshey, PC would withdraw, that they would provide the litigation file to Dovel & Luner, that they would have no responsibility for costs going forward, that Dovel & Luner would be sole lead counsel, and that Smith Krivoshey would have no role. Smith Krivoshey preserved the right to seek fees and costs for their time in the case, subject to Court approval, if there were ever a recovery. Both of these agreements have been turned over to Defendant.

When Mr. Krivoshey and Smith Krivoshey were in the process of withdrawing, Defendant made several pointed comments to the effect that they could "not believe" that Mr. Krivoshey would actually withdraw and not control the case from the background. Mr. Krivoshey assured them that he would not, and held true to his word. Neither Mr. Krivoshey nor Smith Krivoshey have a continuing role in the litigation following their withdrawal and assisting Dovel & Luner with the transition. It appears that Defendant has retained this belief that Mr. Krivoshey has not truly "withdrawn," a year and a half after his withdrawal.

One of the many problems for Defendant is that fact discovery has closed, other than limited discovery concerning the named Plaintiffs, which shall be completed by March 5, 2026. It appears that Defendant has resorted to scorched-earth tactics in anticipation of the close of this limited discovery, blatantly serving subpoenas in violation of the case management order limiting discovery to the named Plaintiffs. Since January 29, 2026, Defendant has attempted to serve subpoenas on 1) Mr. Krivoshey at his personal residence in Louisville, Kentucky, 2) Mr. Krivoshey through the registered agent of the Smith Krivoshey, PC law firm in Sacramento, California, 3) Bursor & Fisher, P.A., 4) Dovel & Luner, and 5) Ahdoot and Wolfson, PC, another law firm representing the current Plaintiffs in the litigation. All of the subpoenas seek identical information – they seek all communications between the law firms concerning the litigation, and seek any putative secret

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

2

agreements between the law firms. As discussed above, all agreements between the law firms have already been produced. There are no "secret" deals. The subpoenas rest on pure speculation.

The subpoena suffers from a host of procedural and substantive problems, each of which is independently sufficient to quash the subpoena. The subpoena has never been served on Mr. Krivoshey. Defendant did not provide notice to the other parties in the litigation prior to service (or, apparently, after service). Defendant did not tender fees for appearance at the deposition. The subpoena does not list any topics for deposition. The deposition is directed at Mr. Krivoshey, but seeks documents from Smith Krivoshey, PC, the law firm. The subpoena exclusively seeks information and documents protected by attorney client privilege and the work product doctrine. And, as noted above, the subpoena violates the scheduling order in the *Patel* case because fact discovery closed years ago.

The subpoena also seeks documents that are fully available to Plaintiffs in the action through their present law firm, Dovel & Luner. By definition, communications between Smith Krivoshey, PC and any agreements between the two firms, are equally available to Dovel & Luner. At the meet and confer call concerning this motion, Defendant could not identify a single document or piece of information possessed by Smith Krivoshey, PC or Mr. Krivoshey that is not in the possession of Dovel & Luner and the Plaintiffs in the litigation. Nor could Defendant identify any agreement between Dovel & Luner and Smith Krivoshey that has not already been produced. What else, then, could Defendant even be looking for? Defendant refused to say.

## II.    Facts

### A.    Background Regarding the *Patel et al v. GT's Living Foods, LLC* Litigation

The *Patel et al. v. GT's Living Foods, LLC* action was filed in December 2019 by Plaintiffs Sharpe, DiGennaro, Leder, Weiler by the Bursor & Fisher, P.A. and Westerman Law Corp. law firms. *See Patel,* C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS, ECF No. 1. The case was filed as a putative class action concerning Defendant's allegedly misleading and unlawful sale of kombucha (a type of fermented tea) beverages. The parties completed all fact and expert discovery, with fact discovery

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

3

formally closing on April 30, 2021 and expert discovery closing on August 2, 2021. ECF No. 62.[1] The parties finishing briefing class certification in August 2021. ECF Nos. 62 103, 104. The matter was largely inactive until the court issued a decision on the pending motion for class certification. Judge Fernando M. Olguin issued an order denying Plaintiffs' motion for class certification without prejudice on June 21, 2024. ECF No. 129. For the most part, did not reach the merits of class certification, but instead was focused on putative concerns from Bursor & Fisher's involvement in a prior settlement concerning similar claims against Defendant and the potential that the claims of the Plaintiffs (Sharpe, DiGennaro, Leder, and Weiler) may be foreclosed because they were absent class members in the prior litigation. *Id*. The district court never found that either Plaintiffs, Bursor & Fisher, or any individual counsel were inadequate, but did request that any subsequent motion for class certification address adequacy concerns raised by the Court. *Id*., at 6.

**B.  Smith Krivoshey P.C.'s Approximately 5-Month Long Involvement In This Case**

Smith Krivoshey's founding partners – Yeremey Krivoshey and Joel Smith – were partners at Bursor & Fisher, P.A. when the *Patel* matter was first filed. Krivoshey Decl., ¶ 2. Mr. Krivoshey represented former Plaintiffs Sharpe, DiGennaro, Leder, Weiler in this case while he was a partner at Bursor & Fisher. *Id.* In late February 2024, Mr. Krivoshey and Mr. Smith left Bursor & Fisher to start their own firm. *Id.* ¶ 3. Yeremey Krivoshey filed a notice of change of firm affiliation and remained an attorney of record in the case for approximately five months more. *Id.*; *see also* ECF Nos. 125, 128. As discussed above, just four months after Mr. Krivoshey's move to Smith Krivoshey, the Court issued its class certification order in June 2024. *Id.* ¶ 4; *see also* ECF No. 129.

Immediately following the Court's class certification ruling, Plaintiffs Sharpe, DiGennaro, Leder, and Weiler began searching for additional or substitute counsel to address the Court's concerns. *Id.* ¶ 4. Less than a month after the Court's class certification ruling, Plaintiffs Sharpe, DiGennaro, Leder, and Weiler retained counsel at Dovel & Luner LLP, who promptly appeared on the docket on July 18, 2024. *Id.*; *see also* ECF Nos. 130, 131.

---

[1] "ECF" references here are to the docket in the *Patel* matter.

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

4

Two days before Dovel & Luner LLP filed their notices of appearance, on July 16, 2024, Smith Krivoshey executed a written agreement with Dovel & Luner that: (a) superseded an earlier Joint Prosecution Agreement dated July 9, 2024; (b) memorialized that Dovel & Luner would be responsible for all aspects of the litigation in this matter and act as lead counsel, with the Zimmerman firm remaining as counsel of record; (c) provided that Smith Krivoshey and Bursor & Fisher would withdraw from the litigation and transfer all necessary case files to Dovel & Luner for continued litigation, (d) provided that any future costs would be borne and paid solely by Dovel & Luner, and (e) provided that in the event of a class recovery, Smith Krivoshey could seek court approval for fees for the law firm's time working on the matter, and only in an amount to be determined by the Court. *Id.* ¶ 5. The agreement had no "clear sailing" agreement or any other agreement between Smith Krivoshey and Dovel & Luner concerning fees. *Id*.

Smith Krivoshey has been informed that the July 9, 2024 and July 16, 2024 agreements between Smith Krivoshey and Dovel & Luner were produced in this matter by Dovel & Luner. *Id.* ¶ 6.

On August 6, 2024, Bursor & Fisher and Smith Krivoshey withdrew from the matter and were replaced by the law firm of Dovel & Luner. *See* ECF Nos. 130-31, 134, 136-37, 139-40. The Court approved the substitution of counsel on August 7, 2024. ECF Nos. 141-144.

After withdrawing from this matter in August 2024, nobody at Smith Krivoshey, including Mr. Krivoshey, has been involved in managing or consulting on the litigation in this matter, either publicly or behind the scenes. Krivoshey Decl., ¶ 8. Nobody at Smith Krivoshey has reviewed or had any insight concerning draft briefs, has participated in or had any insight concerning potential resolution or settlement, or participated in any decision making. *Id.* As required by the July 16, 2024 JPA and the ethical rules, Mr. Krivoshey has had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel. *See* Cal. Rule of Professional Conduct 3-700(A)(2); ABA Rule 1.16; Krivoshey Decl. ¶ 9.

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

5

### C. Fact Discovery Closed In April 2021, Except For "Limited Discovery As To Newly Added Named Plaintiffs"

As discussed above, fact discovery closed on April 30, 2021. ECF No. 62. On August 7, 2024, after Smith Krivoshey sought to withdraw, Dovel & Luner filed a motion to amend the complaint to add additional, new putative class representatives. ECF No. 150. On December 17, 2024, Judge Olguin granted the request. ECF No. 167. Dovel & Luner then filed an amended complaint that same day, adding Plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez. ECF No. 168. On September 30, 2025, Judge Olguin granted and denied in part Defendant's motion to dismiss the new complaint. ECF No. 178. Judge Olguin granted the motion to dismiss as to Plaintiffs Sharpe, Weiler, Leder, and DiGennaro, meaning that the only parties Mr. Krivoshey or Smith Krivoshey had ever represented in this litigation were no longer parties in the litigation as of September 30, 2025. *Id.*

Because fact discovery had formally closed the prior year, on April 30, 2021, Judge Olguin issued an order on October 23, 2025 allowing discovery "related solely to the newly added named plaintiffs" to be completed by December 29, 2025. ECF No. 180. All other discovery remained closed. The parties then filed stipulations for brief extension, and Judge Olguin extended this limited discovery concerning the "newly named Plaintiffs" *Id*. In November 2025 Defendant made the first of two extension requests, and when it did so, it acknowledged that the then-operative December 29 deadline was "***for limited discovery as to the newly added named Plaintiffs***." ECF No. at 1:11-12 (emphasis added). Defendant did not state that it intended to subpoena third parties and did not ask the Court to expand the scope of the "limited discovery" to cover third party subpoenas. The Court later approved the stipulation, extending the discovery deadline to January 29, 2026, but again stating that discovery would "relate[] solely to the newly added named plaintiffs." ECF No. 183.

On December 18, 2025, the parties filed a second request to extend the discovery deadline, this time to March 5, 2026, and once again, only for the purpose of "complet[ing] remaining discovery related to the newly added plaintiffs." ECF No. 184 at 1:7. Defendant did not ask for leave to serve subpoenas on third parties and emphasized that it had been "diligent" and "moved expeditiously to timely complete discovery." ECF No. at 2:1, 8. On December 23, 2025, the Court

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

6

granted the stipulation, once again stating, "[a]ny remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**," and specifying the dates, times, and places for each remaining deposition. ECF No. 185 (bold in original).

### D. The Subpoena Has Never Been Served On Mr. Krivoshey

Between February 2, 2026 and February 4, 2026, Defendant sent a process server to Mr. Krivoshey's personal residence in Louisville, Kentucky in what Mr. Krivoshey was later told by Defendant's counsel was an attempt to serve him with a subpoena in a personal capacity. Krivoshey Decl., ¶ 11. Mr. Krivoshey was never aware that the process server was at his house while the process server was there. *Id.* ¶ 12. The process server did not leave the subpoena at Mr. Krivoshey's residence, or otherwise provide the subpoena to any other person that then delivered the subpoena to Mr. Krivoshey. *Id*. On the meet and confer call regarding this motion, Defendant's counsel confirmed that the process server attempted to serve Mr. Krivoshey at his personal residence in Louisville, and confirmed that service was never completed. *Id.* However, Defendant's counsel refused to provide a copy of the subpoena that was attempted to be served, refused to say whether the subpoena has been withdrawn, refused to specify the listed date for compliance, and refused to say whether Defendant was still in the process of trying to serve the subpoena. *Id.* Defendant's counsel instructed Mr. Krivoshey to contact Dovel & Luner if he wanted to see the subpoena. Dovel & Luner then emailed the subpoena to Mr. Krivoshey on February 9, 2024, which is the first time Mr. Krivoshey had ever seen it. *Id.* ¶ 14. Mr. Krivoshey did not accept service via email. *Id*.

The subpoena that Defendant tried to serve on Mr. Krivoshey in Louisville, KY is made out "To: Yeremey Krivoshey Smith Krivoshey, PC 28 Geary Street, Suite 650 # 1507, San Francisco, CA 94108." *Id.* ¶¶ 15-16 and Exhibit A(2). The listed date of compliance was February 10, 2026. *Id*. There are no listed topics for the deposition. *Id*. The subpoena also has a request for production of documents, which defines "You" as "Yeremey O. Krivoshey." *Id*. Defendant has never told Mr. Krivoshey or Smith Krivoshey, PC whether the listed February 10, 2026 occurred, or was cancelled, despite repeated requests during the meet and confer on this motion. *Id.* ¶ 16.

On February 4, 2026, it appears that Defendant also tried to serve Mr. Krivoshey personally through Smith Krivoshey, PC's registered agent of process in California. Smith Krivoshey. PC's registered agent, Northwest Registered Agent, Inc., located in Sacramento, California, was served with a subpoena on February 4, 2026. *Id.* ¶ 17. Smith Krivoshey's only registered business address in California is 28 Geary Street, Suite 650 # 1507, San Francisco, CA 94108.

The subpoena served on Smith Krivoshey, PC's registered agent on February 4, 2026 states it is directed "To: Yeremey O. Krivoshey Smith Krivoshey, PC 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108." *Id.* ¶ 18 and Exhibit B. This is word for word identical to the subpoena Defendant attempted to serve on Mr. Krivoshey in Louisville, KY, as discussed above. The subpoena again identifies no topics of examination, as required for corporate deposition subpoenas. However, unlike the subpoena Defendant attempted to serve in Louisville, Kentucky at Mr. Krivoshey's personal residence, the subpoena served on Smith Krivoshey's registered agent defines "You" in the attached requests for production as "Smith Krivoshey, PC."

***During the meet and confer on this motion, Defendant's counsel explicitly clarified that the subpoena is intended for Yeremey Krivoshey, as an individual, and not for Smith Krivoshey, PC, the law firm.*** *Id.* ¶ 20. Mr. Krivoshey immediately instructed Defendant's counsel that he does not accept service through Smith Krivoshey, PC's California registered agent, and that he has not been personally served. *Id.* ¶ 21. Defendant's counsel, however, reiterated Defendant's position that service on Mr. Krivoshey in his individual capacity is effective through service on Smith Krivoshey, PC's California registered agent. *Id.*

Though Mr. Krivoshey is a California attorney, Mr. Krivoshey lives and works full time on a remote basis in Louisville, Kentucky. *Id.* ¶ 22. Mr. Krivoshey does not vote in California and does not own, rent, or lease any property in California. *Id.* Mr. Krivoshey has not resided in California since 2022. *Id.* The 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108 address is a virtual address Smith Krivoshey uses to accept and process mail and litigation documents. Mr. Krivoshey has never personally been to 28 Geary Street, Ste. 650 No. 1507, San

Francisco, CA 94108, or to the location Smith Krivoshey, PC's agent for service of process was served. *Id.* ¶ 22.

Smith Krivoshey, PC is not Mr. Krivoshey's alter ego. *Id.* ¶ 23. Smith Krivoshey, PC observes all required corporate formalities. *Id*. Smith Krivoshey, PC is jointly owned by Joel Smith and Yeremey Krivoshey. *Id*. All litigation files, including any files regarding this litigation, are strictly held within Smith Krivoshey, PC's files. Mr. Krivoshey does not keep any litigation files concerning this litigation in his personal capacity outside of Smith Krivoshey, PC's files. *Id*. All email correspondence concerning this litigation has always been conducted solely through a Smith Krivoshey, PC's email account, and not Mr. Krivoshey's personal email account. *Id*.

### E. The February 4, 2026 Subpoena Seeks Testimony And Privileged Documents That Are Equally Available To Parties In The Litigation And That Have Already Been Provided

The attached document requests seek 1) "All Communications between [Smith Krivoshey, PC] and [Dovel & Luner] related to this Action" and 2) "All Documents exchanged with and Communications between [Smith Krivoshey, PC] and [Dovel & Luner] Relating to any agreements governing representation of the putative class or Named Plaintiffs in the Action, including, but not limited to, joint prosecution agreements, agreements regarding sharing and payment of costs, agreements related to cost reimbursement and attorney's fees, agreements regarding litigation funding, and agreements governing decision making and disputes between counsel." Exhibit B to Krivoshey Decl.

There are many defects with these requests:

First, Defendant clarified that the subpoena is directed at Mr. Krivoshey in his personal capacity, but apparently seeks documents and information solely in possession of the law firm Smith Krivoshey. Again, any communications or agreements between Smith Krivoshey, PC and Dovel Luner are the property and in control of Smith Krivoshey, not Mr. Krivoshey personally.

Second, the requests seek attorney client privileged information and work product. The requests seek "all communications" between the Smith Krivoshey, PC and Dovel Luner law firms. As discussed above, Dovel & Luner appeared in the litigation on July 18, 2024, while Smith

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

Krivoshey withdrawal was approved by the Court on August 7, 2024. Smith Krivoshey assisted Dovel Luner with onboarding and transitioning on the case, including providing Dovel Luner with the entire litigation file. *See, e.g., Collaboration Props., Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 476 (N.D. Cal. Oct. 13, 2004) ("The documents at issue are communications between Polycom and its former *litigation* counsel; such communications lie at the core of what is protected by the attorney-client privilege.") (emphasis in original); Am. Bar Association Rule 1.6(20) ("The duty of confidentiality continues after the client-lawyer relationship has terminated."); *Id.*, Rule 1.16 ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as … allowing time for employment of other counsel, surrendering papers and property to which the client is entitled"). There has been no suggestion that these privileges were somehow waived.

Third, every document and all information sought through the subpoena seeks information and documents available to Dovel & Luner, who represent actual *parties* in the litigation. By definition, the subpoena seeks information solely between Yeremey Krivoshey or Smith Krivoshey *and Dovel & Luner*. For instance, all communications between Smith Krivoshey and Dovel & Luner would be in the possession of Dovel & Luner to the same extent it is available to Smith Krivoshey. Any agreements between Smith Krivoshey and Dovel & Luner are, by definition, also in the possession of Dovel & Luner. And, as discussed above, all agreements between Dovel & Luner have already been produced to Defendant.

Further, Defendant has also subpoenaed Dovel & Luner seeking this identical information. Krivoshey Decl, ¶ 15, Ex. A. The information requested from Dovel & Luner appears word-for-word identical to the information requested from Smith Krivoshey. *Compare* Exs. 1 and 2 to Krivoshey Decl. Exs. A; Ex. B. During the meet and confer call corning this motion, Mr. Krivoshey *repeatedly* asked counsel for Defendant whether Defendant knew of a single document or any information that may be in the possession of Smith Krivoshey but not in the possession of Dovel & Luer. Krivoshey Decl, ¶ 41. Defendant's counsel at first refused to answer, but upon persistent questioning conceded that it was not aware of any such document or information at this time. *Id.*

---

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

10

Instead, Defendant represented that Defendant noticed the subpoenas such that the date for Dovel & Luner's deposition would precede the deposition for Mr. Krivoshey. *Id.* ¶¶ 40-41. According to Defendant, the depositions were noticed in such a manner so that if it came out in Dovel & Luner's deposition that they may not contain some documents or information that they believe is possessed by Smith Krivoshey, Defendant would then be able to obtain this missing information from Smith Krivoshey at the purportedly subsequently scheduled deposition. *Id.* This justification is false.

As seen in the January 29, 2026 Notice of Subpoenas, Defendant scheduled the time of compliance and dates of depositions in the following order:

February 10, 2026: deposition of Yeremey Krivoshey[2]

February 11, 2026: deposition of Bursor & Fisher

February 12, 2026: deposition of Dovel & Luner

February 20, 2026: deposition of Ahdoot and Wolfson, PC[3]

Exhibits 1-4 to Krivoshey Decl. Ex. A. In other words, Defendant intentionally scheduled the depositions such that former counsel – Yeremey Krivoshey and Bursor & Fisher – would be deposed *first*, prior to active counsel representing a party in the case.

The subpoena served on February 4, 2026 on Smith Krivoshey's registered agent lists the date of compliance and deposition for February 18, 2026. *See* Exhibit B to Krivoshey Decl. The meet and confer call regarding this motion occurred on February 9, 2026. Later that same day, Mr. Krivoshey learned from Dovel & Luner that the Dovel & Luner deposition had already been rescheduled for February 19, 2026 *prior to* the meet and confer call on this motion. Krivoshey Decl. ¶ 40. So, Defendant knew that Dovel & Luner was set to be deposed after the noticed date for Mr. Krivoshey's deposition, but misrepresented to counsel that Dovel & Luner's deposition would precede Mr. Krivoshey's deposition. *Id.* Defendant not only fabricated the justification for the

---

[2] This refers to the initial subpoena Defendant attempted to serve on Mr. Krivoshey at his residence in Louisville, KY.

[3] Ahdoot and Wolfson, PC is the new law firm of Jeff Westerman, previously of Westerman Law Corp (one of the original firms/attorneys representing the Plaintiffs in 2019). Mr. Westerman, now of Ahdoot and Wolfson, PC, remains counsel of record for the Plaintiff in the litigation.

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

deposition, but also misrepresented the sequence of deposition scheduling to mislead Mr. Krivoshey and Smith Krivoshey, PC. *Id.*

### F. Defendant Does Not Provide Notice Of The Subpoena To The Parties In The Litigation

When Smith Krivoshey contacted all parties to schedule a meet and confer regarding this motion, counsel for Plaintiffs (Dovel & Luner) stated that they had not received notice from Defendant concerning the subpoena to Smith Krivoshey, but had only received notice of a subpoena to Mr. Krivoshey personally. *See id.* ¶ 24, Ex. C. Counsel for all parties were copied on these emails. It appears that Defendant did not respond to Dovel & Luner's concerns via email. *Id.*

On the meet and confer call regarding this motion on February 9, 2026, Smith Krivoshey's attorneys asked whether Defendant had provided notice of the February 4, 2026 subpoena served on Smith Krivoshey, PC to Dovel & Luner. *Id.* ¶ 25. As discussed above, the initial subpoena that Defendant attempted to serve in Louisville, KY scheduled the deposition for February 10, 2026. Dovel & Luner received notice of that subpoena. The February 4, 2026 subpoena served on Smith Krivoshey, PC scheduled the deposition for February 18, 2026. On the meet and confer call, Defendant's counsel stated that they did not serve this new subpoena on Dovel & Luner. *Id.* ¶¶ 25-26. According to Defendant, the two subpoenas were in effect the same subpoena but with modified dates, and Defendant was not under an obligation to notify Dovel & Luner of the new date for the February 18, 2026 deposition because it previously provided Dovel & Luner with notice of the February 10, 2026 deposition. *Id.*

The two subpoenas are *not* the same. The subpoena that Defendant attempted to serve in Louisville, KY (of which Dovel & Luner received notice) defined "You" as Yeremey Krivoshey personally. The February 4, 2026 subpoena served on Smith Krivoshey's registered agent defined "You" as Smith Krivoshey, PC, and had a different date for the deposition: February 18 instead of February 10. To this date, it does not appear that Defendant has given the parties in the litigation formal notice of the February 4, 2026 subpoena served on Smith Krivoshey, PC. *Id.* ¶ 26.

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

12

### G. The Subpoena Does Not Provide Sufficient Time To Comply

The noticed deposition date was exactly 14 days after the date of service, February 18, 2026, at Davis Wright Tremaine's San Francisco office. Defendant's counsel knows and has worked with lawyers at Smith Krivoshey for many years and knows that Mr. Krivoshey does not live in California. Krivoshey Decl. ¶ 27. Indeed, Defendant simultaneously tried to serve Mr. Krivoshey at his residence in Louisville, KY. Defendant's counsel did not contact Mr. Krivoshey or anyone else at the law firm to discuss the subject of the subpoena, its timing, whether it was permissible under the case schedule, or whether Mr. Krivoshey or the law firm had any information that was not already available from the Plaintiffs or their counsel. *Id.* at ¶ 28. During the meet and confer, Defendant's counsel acknowledged that they had never contacted Plaintiff's counsel about coordinating the deposition.

In 2024, Defendant's counsel was admonished by another District Court for engaging in similar conduct. *See Effinger v. Ancient Organics LLC*, 2024 WL 3643395 at *1 (N.D. Cal. Aug. 2, 2024) ("Defendant's attempted service appears aimed at avoiding effective notice given that Defense counsel avoided making service by electronic means….Worse still, Defendant did not coordinate with Plaintiffs' counsel prior to issuing the deposition notices, and Defense counsel did not contact Plaintiffs' counsel about the missed depositions until the week after they were supposed to take place. None of this conduct reveals a meaningful effort to schedule and complete depositions, and it falls short of the effective notice required by Rule 5").

### H. Defendant Did Not Pay Required Fees

Rule 45(b)(1) requires that if a subpoena requires a person's attendance, the process server shall tender "the fees for 1 day's attendance and the mileage allowed by law." 28 U.S.C. § 1821(b) specifies that attendance fees shall be $40 "per day for each day's attendance." According to Smith Krivoshey's registered agent, Defendant did not tender fees at the time of service. Krivoshey Decl. ¶ 29. Neither Smith Krivoshey nor Yeremey Krivoshey have otherwise received or been served with the required fees. *Id*.

### I. The Subpoena Is Unduly Burdensome

Smith Krivoshey and Dovel Luner have engaged as cocounsel or been involved in wholly several completely unrelated matters since at least March 2024, almost immediately after the launch of Smith Krivoshey. Krivoshey Decl. ¶ 30. Some of these matters have closed, while at least one other remains pending. *Id*. A preliminary search shows there are many hundreds of emails between attorneys and staff at the two law firms concerning the matters. *Id*. ¶ 31. It would be unduly burdensome for Smith Krivoshey (or Yeremey Krivoshey) to review, log, and search through these hundreds of communications to weed out potentially responsive documents related solely to the present litigation. *Id*. There is also no justification for the burden given that Dovel & Luner by definition also possesses the same communications and documents, and remains active in the ongoing litigation.

### III. Argument

A court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). "[M]ore generally, the court can quash the subpoena if it is invalid or procedurally defective." *Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc*., 2016 WL 5469257, at *1 (E.D. Cal. Sept. 29, 2016). As discussed below, there are numerous independent reasons to quash this subpoena.

#### A. The Subpoena Is Procedurally Defective

##### 1. The Subpoena Was Never Served On Mr. Krivoshey

Though the language of the subpoena is ambiguous, Defendant stated during the parties meet and confer call that the subpoena is directed at Yeremey Krivoshey individually, and not Smith Krivoshey, PC, the law firm. Krivoshey Decl. ¶ 20. However, it is undisputed that Mr. Krivoshey has never been served. The subpoena should be quashed on this basis alone.

Rule 45(b)(1) provides, in relevant part, that "[s]erving a subpoena requires delivering a copy to the named person[.]" "The majority of courts understand 'delivering' to require personal service

of the subpoena." *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at \*5 (N.D. Cal. Oct. 5, 2015). "Thus, contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness and unlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice." *Id.* (cleaned up, quotations omitted). While a "minority" of courts may allow substitute service, none was requested or obtained in this litigation. *See id.*; Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) ("However, courts that do permit alternative forms of service, notably those in the Second Circuit, typically require that the alternative service be authorized by a court prior to service").

As discussed above, Mr. Krivoshey was never served personally. Though Defendant apparently sent a process server to Mr. Krivoshey's personal residence in Louisville, KY, service was never completed. Defendant then pivoted and served the registered agent of Smith Krivoshey, PC in California, which is not the subject of the subpoena according to Defendant.

Service under Rule 45 is far stricter than service under Rule 4 and Rule 5, which allows for alternative service in a broad range of contexts. *See Fujikura Ltd.*, 2015 WL 5782351, at \*5 (discussing service pursuant to Rule 45); *Produce v. Cal. Harvest Healthy Foods Ranch Market*, 2012 WL 259575, at \*2-4 (N.D. Cal. Jan. 27, 2012) (discussing when a summons may be served by alternative means under Cal. Civ. Proc. Code § 415.20(b) and Rule 4(e)(1)); Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) (discussing that service is more strict under Rule 45 than Rule 4). Unlike Rule 4, which may permit service at an individual's workplace under some circumstances, Rule 45 explicitly requires that the individual being subpoenaed receive service *personally*. *See gen. Fujikura Ltd.*, 2015 WL 5782351, at \*6 (stating that Rule 4 caselaw for alternative service does not apply to Rule 45 subpoenas because Rule 45 requirements are more strict).

It appears that Defendant believes it is proper to serve Mr. Krivoshey personally through the registered agent for his law firm, Smith Krivoshey, PC. But Smith Krivoshey, PC is not Mr. Krivoshey's alter ego. *See, e.g., j2 Global, Inc. v. Fax87.Com*, 2014 WL 462832, at \*3 (C.D. Cal. Feb. 5, 2014) ("Service on a defendant's alter ego may constitute service on defendant himself. However, in the instant Complaint, j2 has not made sufficient factual allegations to support an alter

ego theory.") (citation omitted). The mere fact that Mr. Krivoshey is a co-founder of Smith Krivoshey, PC does not mean that the firm is his alter ego or that service is proper through the law firm's agent. *See id*. at \*4 ("Here, j2 has alleged no relevant facts in support of its alter ego theory. Indeed, although the Complaint asserts that Fani and MJF are alter egos, the only supporting factual allegations are that 'Defendant Farjad Fani is the sole officer of Matt Johnson Finance, Inc. and purports to be the founder ofFax87.com.' These allegations are insufficient to plausibly support a finding that MJF and Fani are alter egos. Nor do they suggest that there is as-yet-undiscovered evidence that would support such a finding.") (citation omitted).

Courts have been clear that service of an agent or a representative of a corporation does not satisfy service on an owner of that corporation in their individual capacity. *See, e.g., D'Amico v. N & D Restaurants, LLC*, 2025 WL 3158124, at \*2-3 (C.D. Cal. Sept. 24, 2025) (noting that while service of subpoena on an employee at a business called 7-Eleven Corporation, An Mehboob Corporation, which was owned by Amad Mehboob, may be proper service as to the corporation, it is not proper service under Rule 45 as to Mr. Mehboob in his individual capacity); *Fujikura Ltd*., 2015 WL 5782351, at \*5-7 (holding that under Rule 45, service of subsidiary not effective as service on the parent corporation, even where the subsidiary may be considered the parent's "general manager" and service under Rule 4 would be proper).

Nor is the fact that Mr. Krivoshey represented by Smith Krivoshey, PC for the purposes of this motion suggest that notice is effective by service on his attorneys. *Pochiro v. Prudential Ins. Co. of Am*., 827 F.2d 1246, 1248–49 (9th Cir.1987) (service on attorney under Rule 4 is insufficient unless attorney had actual authority from client to accept service on client's behalf).

### 2.      Defendant Never Tendered Fees

Defendant never tender fees required by Rule 45(b)(1). Krivoshey Decl., ¶ 29. "A failure to tender fees at the time of service invalidates the subpoena and the deposition testimony will not be compelled." *Wallis v. Centennial Ins. Co*., 2013 WL 434441, at \*4 (E.D. Cal. Feb. 1, 2013) (quashing deposition subpoena where plaintiff failed to tender requisite witness fees until after service (citation omitted); *see also CF & I Steel Corp v. Mitsui & Co*., 713 F.2d 494, 495 (9th Cir. 1983) (finding tender of fees 34 days after service and one week after notice of deficiency could not

cure defect); *Mirana v. Battery TaiShing Corp.*, No. C 08-80142 MISC. JF (RS), 2009 WL 290459, at *1 (N.D. Cal. Feb. 5, 2009) (quashing subpoena for failure to tender witness fees upon service).

### 3. Defendant Did Not Provide Notice To The Parties

"Rule 45 requires that a subpoena calling for the production of documents be served on each party before it is served on the third party." *Fujikura Ltd.*, 2015 WL 5782351, at *4. As discussed above, there is evidence that Defendant did not provide notice of the February 4, 2026 subpoena served on Smith Krivoshey, PC's registered agent to current counsel for Plaintiffs.

### 4. The Subpoena Violates The Court's Scheduling Order

A scheduling order "is the heart of case management," and once it is entered, it "controls the course of the action unless the court modifies it." *Jenkins v. City of Los Angeles*, 2025 WL 2019789, at *2 (C.D. Cal. Jan. 6, 2025) (internal quotation and citations omitted). A scheduling order "may be modified only for good cause," and the "good cause" standard "'primarily considers the diligence of the party seeking the amendment.'" *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). A noticed motion is required to alter a case schedule. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion"); *Handel v. Rhoe*, 2015 WL 6127271 at *3 (S.D. Cal. Oct. 16, 2015) (failure to move to amend the scheduling order is "adequate grounds" to deny relief from that order).

Here, as shown in Section II.B, Defendant acknowledges that discovery is "limited discovery as to the newly added named Plaintiffs," and it never sought leave from the Court to expand those limitations to third party subpoenas. Nor can Defendant legitimately argue that there is "good cause" for an exception here, and in any event, such an argument for altering the case schedule must be made to the court in *Patel*.

### 5. The Subpoena Fails To Specify The Witness And Identifies No Topics For Examination

The subpoena form requires the serving party to identify "the name of [the] person two whom this subpoena is directed." *See* Exhibit 1 to Krivoshey Decl. Failure to clearly identify the recipient of a discovery request renders such a request unenforceable. *See Scott v. Keller*, 2010 WL 1267772 at *1-2 (E.D. Cal. March 31, 2010) (denying motion to compel because "it

---

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

17

was unclear to whom these requests were directed"). Here, it is unclear whether the subpoena purports to be directed at Mr. Krivoshey or his law firm, because both are identified in the "To" line. And while Defendant's counsel represented orally that the intent was to serve Mr. Krivoshey, that does not cure the defect. Defendant may change its position and argue that the subpoena is really directed at the law firm as a way to solve the fact that it failed to personally serve Mr. Krivoshey.

Further, if the intention was to serve the law firm, Rule 30(b)(6) states that in a "notice *or subpoena*," a party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The subpoena form AO 88A includes a field where topics should be identified when a party seeks to depose a corporation, or parties may alternatively include them in an attachment. *See* Exhibit 1 at 1. Defendant's subpoena includes no topics of examination. *See id.*

### B. Defendant Does Not Meet The Standard For Allowing Depositions Of Current Or Former Opposing Counsel

Numerous courts in this District have held that "depositions of an opposing party's attorney of record are generally disfavored and should be permitted only in limited circumstances." *E.g.*, *LA Printex Indus., Inc. v. VF Corp.*, 2014 WL 12587037, at *3 (C.D. Cal. Jan. 14, 2014) (internal quotation omitted).[4] This rule applies equally when—as here—a party seeks to depose "the former counsel of the opposing party." *See Monster Energy Co v. Vital Pharm, Inc.*, 2020 WL 2405295 at *7 (C.D. Cal. Mar. 10, 2020) (quashing subpoena directed at former counsel). Discovery from counsel is disfavored due to "its potential disruptive effect on the attorney-client relationship and the adversarial process." *Id.* at *6. "'A client's fear that counsel may be deposed could chill a client's candor with counsel. Similarly, attorneys who fear they might eventually be deposed about their knowledge of documents or facts connected with a case 'may lead attorneys to shield themselves from relevant facts, thereby resulting in less effective representation.'" *Id.* (quoting *Am. Fed. Of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 479 (S.D. Fla. 2011)).

---

[4] *See also*, *e.g.*, *LionHead Glob. No 2, LLC v. Todd Reed, Inc.*, 2020 WL 10692515, at *1 (C.D. Cal. Dec. 14, 2020) (citing and following *LA Printex*); *Friends of Riverside Airport, LLC v. Dep't of the Army*, 2021 WL 401209, at *3 (C.D. Cal. Jan. 14, 2021) ("depositions of 'opposing counsel' are disfavored…").

Courts in this District apply one of two different tests for determining whether a party may depose an opposing party's counsel, although "[p]ractically speaking, the two approaches are only slightly different." *Id.* at *8 (internal quotation omitted). Under the *Shelton* standard, "the party seeking to depose opposing counsel must show that: "'(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Id.* at *7 (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Alternatively, the *Friedman* test "considers all the relevant facts and circumstances, including the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* (cleaned up; explaining *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003)). Both standards support the motion to quash here.

Defendant cannot satisfy a single prong under the *Shelton* test, (1) there are other means to obtain the information other than deposing Mr. Krivoshey (or his law firm), (2) the information sought is privileged, and (3) the information is not crucial to the preparation of the case. As discussed above, all available documents and information, to the extent relevant at all, are also in the possession of Dovel & Luner and Plaintiffs in the pending litigation. *See*, *e.g.*, *Friends of Riverside Airport*, 2021 WL 401209, at *4 (granting motion to quash deposition subpoena of attorney because "other means exist to obtain the information sought"). Defendant was not able to identify a single document or any information that may be in the possession of Mr. Krivoshey or Smith Krivoshey, PC that is not available or in possession of Dovel & Luner.

The information is clearly privileged – it seeks all communications amongst litigation counsel, including communications while both sets of counsel were counsel of record and for communications whereby Smith Krivoshey, PC transferred the case file to Dovel & Luner upon their withdrawal. The only agreements between Dovel & Luner and Smith Krivoshey have already been produced. After withdrawal, Smith Krivoshey, PC was not involved in the litigation, and Defendant has presented no evidence that it was.

---

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

19

The information also is not crucial to the preparation of the case. If it were, Defendant would not have waited to seek it until weeks before the close of the fact discovery deadline, and would have sought leave to open discovery beyond the named Plaintiffs. *See LA Printex*, 2014 WL 12587037 at *3 (faulting Defendant for waiting until the "imminent close of discovery" to seek an attorney's deposition). Indeed, in 2024, Defendant's counsel told Mr. Krivoshey that he does not believe that Mr. Krivoshey would just "walk away" from this case, and that he suspected that Mr. Krivoshey would remain in this case behind the scenes. Krivoshey Decl., ¶ 32. The suspicion was never founded, but Defendant has had a year and a half to explore that issue.

Defendant also cannot satisfy the *Friedman* test. Smith Krivoshey has not been involved in the litigation in any capacity after their withdrawal beyond transferring the case file to Dovel & Luner and assisting with the transition. The operative JPA between Smith Krivoshey and Dovel & Luner is explicit that Dovel & Luner is sole lead counsel, that Smith Krivoshey has no role, and that all future costs are to be borne solely by Dovel & Luner. Defendant's speculation of Smith Krivoshey's involvement behind the scenes after their withdrawal, or some secret "side deal" between the firms is just that: pure speculation. *See Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *10 (C.D. Cal. Feb. 28, 2020) (sanctions where subpoena was based on "nothing more than speculation"). Further, Defendant does not have leave to pursue this subpoena as discovery is closed (other than the named Plaintiffs' depositions). And, the potential for encountering privilege and work product issues is extreme – every document and all information sought through the subpoena are privileged and subject to work product protection.

To the extent Defendant seeks additional non-privileged information not available from Plaintiffs or their counsel, Defendant has not disclosed what the nature of that information is in the subpoena, and Mr. Krivoshey and Smith Krivoshey, PC are not aware of any. Putting aside the failure to comply with Rule 30(b)(6), Defendant cannot meet its burden of showing that any other information it may be seeking is "crucial to the preparation of the case" when it fails to disclose what that information is. *See Monster Energy*, 2020 WL 2405295 at *13 (granting motion to quash because the subpoenaing party failed to show the information sought was crucial).

NON-PARTY MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

20

## IV. Conclusion

The Court should quash this subpoena. Given Defendant's egregious abuse of the discovery process, gamesmanship, misrepresentations during the meet and confer process, and utter lack of professionalism, Mr. Krivoshey and Smith Krivoshey, PC also asks that the Court admonish Defendant and their counsel. Mr. Krivoshey and Smith Krivoshey, PC will also seek fees and/or other sanctions via separate motion.

Dated: February 11, 2026

Respectfully submitted,

/s/    Yeremey Krivoshey

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Non-Parties Yeremey O.*
*Krivoshey and Smith Krivoshey, PC*

# EXHIBIT 29

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> Defendant. | Mis. Case No.  3:26-mc-80036 <br><br> (CASE NO. 2:19-cv-10920-FMO-GJS Pending in the Central District of California) <br><br> **NOTICE OF MOTION AND MOTION TO SHORTEN TIME ON THE HEARING AND DECISION ON THE MOTION TO QUASH FILED BY NON-PARTIES YEREMEY O. KRIVOSHEY AND SMITH KRIVOSHEY, P.C.** |

NON-PARTY MOTION TO SHORTEN TIME;
CASE NO. 3:26-mc-80036

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. (the "Non-Parties") hereby move the United District Court for the Northern District of California pursuant to Local Rule 6-3, for an order shortening the time to hear and decide the Non-Parties' Motion To Quash Filed By Non-Parties Yeremey O. Krivoshey And Smith Krivoshey, P.C. The Court will set the hearing date on this motion.

This Motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, the supporting Declaration of Yeremey Krivoshey, all other papers in this proceeding, and such oral argument as may be heard by the Court.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should shorten the time to hear and decide the Non-Parties' Motion To Quash Filed By Non-Parties Yeremey O. Krivoshey And Smith Krivoshey, P.C, such that a decision may be rendered by Tuesday, February 17, 2026.

Dated: February 11, 2026                    Respectfully submitted,

   /s/    Yeremey O. Krivoshey

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

NON-PARTY MOTION TO SHORTEN TIME;
CASE NO. 3:26-mc-80036                                                         1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Non-parties Yeremey O. Krivoshey and the law firm of Smith Krivoshey, P.C. (collectively, the "Non-Parties") have filed in this Court a motion to quash a subpoena for deposition testimony and documents issued by the Defendant in *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS ("*Patel*"). Defendant nonetheless intends to proceed with Mr. Krivoshey's deposition in San Francisco and take his non-appearance on February 18, 2026, even though: (a) Mr. Krivoshey lives in Kentucky and has not been personally served; (b) fact discovery in *Patel* closed nearly five years ago, with a limited exception for newly added plaintiffs;[1] and (c) the Plaintiffs in *Patel* have all the information that Defendant seeks from the Non-Parties. The Non-Parties ask the Court to shorten time and grant the motion on or before **Tuesday, February 17, 2026**.

A brief timeline of events that created the need for this motion follows. The subpoena was delivered on February 4, 2026, to Smith Krivoshey P.C.'s California agent for service of process. Krivoshey Decl., ¶ 3. It set the deposition date exactly fourteen days later, February 18, 2026, and set the location in San Francisco. *Id.* Defendant's counsel has known Mr. Krivoshey and other attorneys at Smith Krivoshey for several years, and knows that Mr. Krivoshey lives in Louisville, Kentucky. *Id.* ¶ 4. However, Defendant's counsel never contacted Mr. Krivoshey or anyone else at Smith Krivoshey P.C. in advance to discuss the need for the deposition, scheduling, or travel. *Id.* ¶ 5.

Joel Smith of Smith Krivoshey P.C. received notification from the law firm's agent for service of process on Thursday, February 5, 2026. *Id.* ¶ 6. It was unclear whether the subpoena was directed at Mr. Krivoshey personally or to the law firm, because both are identified in the "To" line of the subpoena form, and the document requests define "You" and "Your" to primarily mean the law firm. *Id.* ¶ 7. The following day, Friday, February 6, 2026, Mr. Smith asked counsel for Defendant to schedule a meet and confer call about the subpoena. *Id.* ¶ 8. A lengthy meet and

---

[1] *Patel*, ECF No. 185 (Order stating that "[a]ny remaining discovery (***related solely to the newly added named plaintiffs***) shall be completed by March 5, 2026.")(emphasis added); *see also Patel*, ECF No. 181 at 1:11-12 (Defendant's counsel acknowledging that discovery was "limited" to "the newly added named Plaintiffs").

confer call occurred on the next business day, Monday, February 9, 2026. During the call, counsel for Defendant stated that the subpoena was intended to be directed at Mr. Krivoshey personally, and took the position that personal service was unnecessary because Mr. Krivoshey's name is in the name of the law firm. *Id.* ¶ 9. The Non-Parties then researched and drafted the motion to quash, and filed it on February 11, 2026. *Id.* ¶ 10. They also served written objections to the subpoena, and notified counsel for Defendant that Mr. Krivoshey will not be travelling from Louisville to appear at the deposition on February 18, 2026. *Id.* ¶ 13. In short, the Non-Parties did everything they were supposed to do to object to the subpoena as promptly as reasonably possible.

Defendant will not agree to move the February 18, 2026 compliance date unless and until the Plaintiffs in *Patel* stipulate to reopen fact discovery in *Patel*. *Id.* ¶¶ 11-12. The Non-Parties here have no control or say over that issue. The Non-Parties also understand Defendant's position is that the filing of the motion to quash does not relieve the Non-Parties of their duty to appear on the February 18, 2026, deposition, unless the motion is also heard and *granted* before that date. *Id.* ¶ 14. As shown above, Defendant's conduct has ensured that such an outcome is impossible by a normally noticed motion.

The proposition that serving objections and filing a timely motion to quash are insufficient to relieve Non-Parties' duty to appear on February 18, 2026 is incorrect. *See In re Herz*, 2026 WL 18785 at *2 (N.D. Cal. Jan. 2, 2026) (explaining a deposition subpoena recipient may avoid compliance if "he *files* a motion to quash … before the date set for compliance") (emphasis added); *North Am. Co. for Life & Health Ins. v. Philpot*, 2010 WL 4917065 at *2 (S.D. Cal. Nov. 24, 2010) (rejecting argument that the "motion to quash is untimely because it was not granted before the date set for compliance"); *Elliot v. Mission Trust Servs., LLC*, 2015 WL 1567901 at *6-7 (N.D. Ill. Apr. 7, 2015) (granting motion to quash and issuing sanctions against subpoenaing party six months after the noticed compliance date). Otherwise, a subpoenaing party could force a non-party to appear for a deposition simply by setting the compliance date too early to obtain relief from the court, even if—as is the case here—the subpoena was never properly served and fact discovery is closed. That is inconsistent with the principle that "non-parties subject to discovery requests deserve extra protection from the courts." *Shopify (USA), Inc. v. Express*

*Mobile, Inc.*, 2019 WL 5893235 at *2 (N.D. Cal. Nov. 12, 2019) (*citing*, *e.g.*, *United States v. C.B.S.*, 666 F.2d 364, 371-72 (9th Cir. 1982)). Nonetheless, to address Defendant's position and to build a record that the Non-Parties have taken all reasonable steps to obtain relief as promptly as possible, they ask the Court to grant the motion to quash on or before Tuesday, February 17, 2026.

Dated:  February 11, 2026

Respectfully submitted,

  /s/    Yeremey O. Krivoshey

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

# EXHIBIT 30

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>GT'S LIVING FOODS, LLC.<br><br>　　　　　　Defendant. | Case No.: 2:19-cv-10920-FMO-DSR<br><br>**DECLARATION OF L. TIMOTHY FISHER REGARDING NON-PARTY BURSOR & FISHER P.A.'S THIRD PARTY SUBPOENA** |

DECLARATION OF L. TIMOTHY FISHER

I, L. Timothy Fisher, declare as follows:

1.    I am a partner in the law firm Bursor & Fisher, P.A.  I have personal knowledge of the matters set forth herein, and if called upon to do so, would and could testify competently thereto.

2.    My firm was counsel for Plaintiffs in this matter when it was filed in 2019.

3.    This matter was primarily handled by my partner Yeremey O. Krivoshey during the time that my firm was involved in the case.

4.    In February 2024, Mr. Krivoshey left my firm and joined Smith Krivoshey, P.C.

5.    In June 2024, the Court issued its ruling denying Plaintiffs' motion for class certification without prejudice.  ECF No. 129.  Following the Court's ruling, Plaintiffs retained Dovel & Luner LLP to represent them in the *Patel* matter.

6.    Dovel & Luner LLP entered its appearance for Plaintiffs on July 18, 2024.  ECF Nos. 130 and 131.

7.    In connection with Dovel & Luner appearing in this matter, Bursor & Fisher and Smith Krivoshey executed a joint prosecution agreement with Dovel & Luner that (a) superseded an earlier joint prosecution agreement dated July 9, 2024; (b) memorialized that Dovel & Luner would be responsible for all aspects of the litigation in this matter and act as lead counsel, with Zimmerman Reed LLP remaining as counsel of record; (c) provided that Smith Krivoshey and Bursor & Fisher would withdraw from the litigation and transfer all necessary case files to Dovel & Luner for continued litigation, (d) provided that any future costs would be borne and paid solely by Dovel & Luner, and (e) provided that in the event of a class recovery, Bursor & Fisher could seek court approval for fees for my firm's time working on the matter, and only in an amount to be determined by the Court. The agreement had no "clear sailing" agreement or any other agreement between

my firm, Smith Krivoshey and/or Dovel & Luner concerning fees.

8.    On August 6, 2024, Bursor & Fisher and Smith Krivoshey withdrew from the matter and were replaced by the law firm of Dovel & Luner.  *See* ECF Nos. 130-31, 134, 136-37, 139-40.  The Court approved the substitution of counsel on August 7, 2024.  ECF Nos. 141-144.

9.    After withdrawing from this matter in August 2024, nobody at Bursor & Fisher, including myself, has been involved in managing or consulting on the litigation in this matter, either publicly or behind the scenes.  I have not reviewed or had any insight concerning draft briefs, participated in or had any insight concerning potential resolution or settlement, or participated in any decision making, and I have no reason to believe that anyone else at Bursor & Fisher has either.

10.    As required by the July 16, 2024 joint prosecution agreement and the ethical rules, I have had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel.

11.    There are no secret "side deals" between me or my law firm and Dovel & Luner regarding this matter.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed in Walnut Creek, California, on February 19, 2026.

_____
L. Timothy Fisher

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,

     *Plaintiffs*,

v.

GT'S LIVING FOODS, LLC.,

     *Defendant*.

Case No. 2:19-cv-10920-FMO-DSRx

**DECLARATION OF SIMON FRANZINI**

Hon. Fernando M. Olguin
Magistrate Judge Daniel S. Roberts

I, Simon Franzini, declare as follows:

1.     I am a partner in Dovel & Luner, LLP ("Dovel & Luner") and a member of the California bar. I make this declaration in connection with a subpoena served on Dovel & Luner in the above-captioned action on or around January 29, 2026 (the "Dovel & Luner subpoena"). This declaration is accurate to the best of my knowledge, and I have personal knowledge of the facts stated below.

2.     I represent the Plaintiffs, Amit Patel, Lauren Schmidt, and Christopher Nunez (collectively, "Plaintiffs"), in the above-captioned action.

3.     On or around July 9, 2024, my firm, Dovel & Luner, entered an agreement with the Smith Krivoshey, PC ("Smith Krivoshey"), Bursor & Fisher, P.A. ("Bursor"), Zimmerman Reed LLP ("Zimmerman") and Westerman Law Corp ("Westerman") law firms regarding the above-captioned action ("First Agreement"). That agreement was produced by Plaintiffs in the litigation on or around December 23, 2025.

4.     On or around July 16, 2024, Dovel & Luner entered a second agreement with Smith Krivoshey, Bursor, Zimmerman, and Westerman ("Second Agreement") regarding the above-captioned action. The July 16, 2024, agreement states that it "specifically supersedes any prior agreements" between the parties to that agreement. That agreement was produced by Plaintiffs in the litigation on or around December 23, 2025, too.

5.     There are no other agreements—other than the First Agreement and the Second Agreement—between Dovel & Luner, LLP, on the one hand, and Bursor and/or Smith Krivoshey, on the other, regarding the prosecution of the above-captioned action.

6.     On or around August 14, 2024, Smith Krivoshey and Bursor withdrew from the above-captioned action.

7.     Since the date of their respective withdrawals, neither Smith Krivoshey nor Bursor:

      a.  directed or supervised the litigation of the above-captioned action, or had any authority with respect to case decision making or case strategy

Declaration of Simon Franzini                    1          Case No. 2:19-cv-10920-FMO-DSRx

in that action;

    b.  drafted, or edited, or reviewed or commented on drafts of, any pleading, brief, or other case document in the above-captioned action;

    c.  to the best of Dovel & Luner's knowledge, had any consultations with Plaintiffs with respect to the above-captioned action.

8.    Defendant has represented and agreed that, upon receiving a declaration from Dovel & Luner that includes the representations above: (a) the Dovel & Luner subpoena would be withdrawn; (b) it would not issue any subsequent subpoenas to Dovel & Luner relating to the topics covered by the Dovel & Luner subpoena, and (c) it will not issue any other subpoenas to Dovel & Luner in connection with the motion for class certification in the above-captioned matter currently due on March 2, 2026.  In agreeing to provide this declaration to Defendant, Dovel & Luner has been and is relying on those representations and agreements.

9.    Nothing in this declaration is intended to be or should be construed as a waiver of any privilege or immunity. And, Dovel & Luner reserves all objections to and rights with respect to the issuance of the Dovel & Luner subpoena.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Dated: February 19, 2026

*/s/ Simon Franzini*
Dovel & Luner, LLP
By: Simon Franzini
Title: Partner

Declaration of Simon Franzini      2      Case No. 2:19-cv-10920-FMO-DSRx

# EXHIBIT 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMIT PATEL, et al.,

          Plaintiffs,

    v.

GT'S LIVING FOODS, LLC,

          Defendant.

Case No.  26-mc-80036-TSH

**ORDER DENYING MOTION TO SHORTEN TIME AND SETTING HEARING RE: MOTION TO QUASH**

Re: Dkt. Nos. 1, 2

Non-parties Yeremey O. Krivoshey and the law firm of Smith Krivoshey, P.C. have filed a motion to quash a subpoena for deposition testimony and documents issued by GT's Living Foods, LLC, the defendant in *Patel et al. v. GT's Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS.  ECF No. 1.  The non-parties also move to shorten time and grant the motion on or before February 17, 2026, which is one day before GT's intends to proceed with Mr. Krivoshey's deposition in San Francisco.  ECF No. 2.  The Court **DENIES** the motion to shorten time.  Briefing shall be in compliance with Civil Local Rule 7.  The Court shall conduct a hearing on the motion to quash on March 19, 2026 at 10:00 a.m. by Zoom video conference.  The webinar link and instructions are located at https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/.  **IT IS ORDERED** that Mr. Krivoshey's deposition shall not proceed pending the Court's resolution of the motion to quash.  The deposition may not be rescheduled or conducted absent further order of the Court.

    **IT IS SO ORDERED.**

Dated: February 12, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

# EXHIBIT 32

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*Attorneys for Non-Parties Yeremey O.
Krivoshey and Smith Krivoshey, PC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated,<br><br>      Plaintiffs,<br>  v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>      Defendant. | Misc Case No.<br><br>(Case No. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**DECLARATION OF YEREMEY KRIVOSHEY IN SUPPORT OF MOTION OF NON-PARTIES YEREMEY O. KRIVOSHEY AND SMITH KRIVOSHEY, P.C. TO QUASH DEPOSITION SUBPOENA**<br><br>Date:<br>Time:<br>Courtroom:<br><br>Judge: |

KRIVOSHEY DECL. ISO NON-PARTY MOTION TO QUASH SUBPOENA

I, Yeremey O. Krivoshey, declare as follows:

1.      I am member of the bar of this Court, and a partner at Smith Krivoshey, PC.  I have personal knowledge of the matters set forth herein, and if called upon to do so, would and could testify competently thereto.  I offer this declaration in support of the Motion of Non-Parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. to Quash Deposition Subpoena.

### After Withdrawing from this Case, Smith Krivoshey Has Had No Role In Managing Or Directing The Litigation On Behalf Of Plaintiffs In Patel

2.      When the *Patel* matter was filed, Smith Krivoshey's founding partners –Joel Smith and I– were partners at Bursor & Fisher, P.A. I represented former Plaintiffs Sharpe, DiGennaro, Leder, Weiler in the *Patel* case while I was a partner at Bursor & Fisher.

3.      In late February 2024, Mr. Smith and I left Bursor & Fisher to start our own firm. I filed a notice of change of firm affiliation and remained an attorney of record in the case for approximately five months more.

4.      Four months after my move to Smith Krivoshey, the Court issued its class certification order in June 2024. Dkt. 129. Immediately following the Court's class certification ruling, Plaintiffs Sharpe, DiGennaro, Leder, and Weiler began searching for additional or substitute counsel to address the Court's concerns. Less than a month after the Court's class certification ruling, Plaintiffs Sharpe, DiGennaro, Leder, and Weiler retained counsel at Dovel & Luner LLP, who promptly appeared on the docket on July 18, 2024.

5.      Two days before Dovel & Luner LLP filed their notices of appearance, on July 16, 2024, Smith Krivoshey executed a written agreement with Dovel & Luner that: (a) superseded an earlier Joint Prosecution Agreement dated July 9, 2024; (b) memorialized that Dovel & Luner would be responsible for all aspects of the litigation in this matter and act as lead counsel, with the Zimmerman firm remaining as counsel of record; (c) provided that Smith Krivoshey and Bursor & Fisher would withdraw from the litigation and transfer all necessary case files to Dovel & Luner for continued litigation, (d) provided that any future costs would be borne and paid solely by Dovel & Luner, and (e) provided that in the event of a class recovery, Smith Krivoshey could seek court approval for fees for the law firm's time working on the matter, and only in an amount

to be determined by the Court. The agreement had no "clear sailing" agreement or any other agreement between Smith Krivoshey and Dovel & Luner concerning fees.

6. I have been informed and believe that the July 9, 2024 and July 16, 2024 agreements between Smith Krivoshey and Dovel & Luner were produced in this matter by Dovel & Luner.

7. On August 6, 2024, Bursor & Fisher and Smith Krivoshey withdrew from the matter and were replaced by the law firm of Dovel & Luner. *See* Dkts. 130-31, 134, 136-37, 139-40. The Court approved the substitution of counsel on August 7, 2024. ECF Nos. 141-144.

8. After withdrawing from this matter in August 2024, nobody at Smith Krivoshey, including myself, has been involved in managing or consulting on the litigation in this matter, either publicly or behind the scenes. I have not reviewed or had any insight concerning draft briefs, participated in or had any insight concerning potential resolution or settlement, or participated in any decision making, and I have no reason to believe that anyone else at Smith Krivoshey has either.

9. As required by the July 16, 2024 JPA and the ethical rules, I have had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel.

10. There are no secret "side deals" between me or my law firm and Dovel & Luner regarding this matter.

### *Facts Concerning Non-Service Of The Subpoena*

11. Between February 2, 2026 and February 4, 2026, Defendant sent a process server to my home in Louisville, Kentucky.

12. I was never aware that the process server was at my house while the process server was there. The process server did not leave the subpoena at my residence, or otherwise provide the subpoena to any other person that then delivered the subpoena to me.

13. During the meet and confer call regarding this motion, counsel for Defendant explained that this was an attempt to serve me with a subpoena in a personal capacity, and confirmed that service was never completed. However, Defendant's counsel refused to provide a

KRIVOSHEY DECL. ISO NON-PARTY MOTION TO QUASH SUBPOENA

2

copy of the subpoena that was attempted to be served, refused to say whether the subpoena has been withdrawn, refused to specify the listed date for compliance, and refused to say whether Defendant was still in the process of trying to serve the subpoena.

14. Defendant's counsel instructed me to contact Dovel & Luner if I wanted to see the subpoena. Dovel & Luner then emailed the subpoena to me on February 9, 2024, which is the first time I had ever seen it. I did not accept service via email.

15. Attached as **Exhibit A** is the January 29, 2029 Defendant GT's Living Foods, LLC's Notice of Subpoenas to Testify at Depositions in the *Patel* matter. Attached to Exhibit A are four noticed subpoenas. **Exhibit 1** to Exhibit A appears to be the subpoena Defendant served on Dovel and Luner LLP. **Exhibit 2** to Exhibit A appears to be a subpoena Defendant tried (but failed) to serve on me personally in Louisville, KY. **Exhibit 3** to Exhibit A appears to be the subpoena served on Bursor & Fisher, P.A. **Exhibit 4** to Exhibit A appears to be the subpoena served on Ahdoot and Wolfson, PC.

16. Exhibit 2 to Exhibit A is what I understand to be a true and correct copy of the subpoena that Defendant tried to serve on me in Louisville, Kentucky. It is made out "To: Yeremey Krivoshey Smith Krivoshey, PC 28 Geary Street, Suite 650 # 1507, San Francisco, CA 94108." The listed date of compliance was February 10, 2026. There are no listed topics for the deposition. The subpoena also has a request for production of documents, which defines "You" as "Yeremey O. Krivoshey." Defendant has never told me or Smith Krivoshey, PC whether the listed February 10, 2026 deposition occurred, or was cancelled, despite repeated requests during the meet and confer on this motion.

17. On February 4, 2026, it appears that Defendant also tried to serve me personally through Smith Krivoshey, PC's registered agent of process in California. Smith Krivoshey, PC's registered agent, Northwest Registered Agent, Inc., located in Sacramento, California, was served with a subpoena on February 4, 2026. Smith Krivoshey's only registered business address in California is 28 Geary Street, Suite 650 # 1507, San Francisco, CA 94108.

18. Attached as **Exhibit B** is a true and correct copy of the subpoena served on Smith Krivoshey, PC's registered agent on February 4, 2026. It states it is directed "To: Yeremey O.

KRIVOSHEY DECL. ISO NON-PARTY MOTION TO QUASH SUBPOENA

3

Krivoshey Smith Krivoshey, PC 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108." The words "Smith Krivoshey, PC" are highlighted, but I do not know whether the highlighting is original, or was applied there by Smith Krivoshey, PC's registered agent. This subpoena is word for word identical to the subpoena Defendant attempted to serve on me in Louisville, Kentucky, as discussed above.

19. The subpoena attached as Exhibit B again identifies no topics of examination, as required for corporate deposition subpoenas. However, unlike the subpoena Defendant attempted to serve at my personal residence, the subpoena served on Smith Krivoshey's registered agent defines "You" in the attached requests for production as "Smith Krivoshey, PC."

20. During the meet and confer on this motion, Defendant's counsel explicitly clarified that the subpoena attached as Exhibit B is intended for me, as an individual, and not for Smith Krivoshey, PC, the law firm.

21. In response, I immediately instructed Defendant's counsel that I do not accept service through Smith Krivoshey, PC's California registered agent, and that I have not been personally served. Defendant's counsel, however, reiterated its position that service on me in my individual capacity is effective through service on Smith Krivoshey, PC's California registered agent.

22. Although I am licensed to practice law in California, I live and work full time on a remote basis in Louisville, Kentucky. I do not vote in California and do not own, rent, or lease any property in California. I have not resided in California since 2022. The 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108 address is a virtual address Smith Krivoshey uses to accept and process mail and litigation documents. I have never personally been to 28 Geary Street, Ste. 650 No. 1507, San Francisco, CA 94108, or to the location Smith Krivoshey, PC's agent for service of process was served.

23. Smith Krivoshey, PC is not my alter ego. Smith Krivoshey, PC observes all required corporate formalities. Smith Krivoshey, PC is jointly owned by Joel Smith and Yeremey Krivoshey. All litigation files, including any files regarding this litigation, are strictly held within Smith Krivoshey, PC's files. I do not keep any litigation files concerning this litigation in my

KRIVOSHEY DECL. ISO NON-PARTY MOTION TO QUASH SUBPOENA

4

personal capacity outside of Smith Krivoshey, PC's files. All email correspondence concerning this litigation has always been conducted solely through Smith Krivoshey, PC's email account, and not my personal email account.

### *Other Defects Concerning The Subpoena*

24. After Smith Krivoshey received the subpoena attached as Exhibit B, Joel Smith contacted counsel for Defendant to request a meet and confer regarding the subpoena, and cc'd counsel for Plaintiffs. Counsel for Plaintiffs (Dovel & Luner) stated that they had not received notice from Defendant concerning the subpoena to Smith Krivoshey, but had only received notice of a subpoena to Mr. Krivoshey personally. As far as I am aware, Defendant did not respond to Dovel & Luner's concerns via email. A true and correct copy of the email from Dovel & Luner concerning this issue is attached as **Exhibit C**.

25. On the meet and confer call regarding this motion on February 9, 2026, Mr. Smith asked whether Defendant had provided notice of the February 4, 2026 subpoena served on Smith Krivoshey, PC to Dovel & Luner. Defendant's counsel stated that they did not serve this new subpoena on Dovel & Luner. According to Defendant's counsel, the two subpoenas were in effect the same subpoena but with modified dates, and Defendant was not under an obligation to notify Dovel & Luner of the new date for the February 18, 2026 deposition because it previously provided Dovel & Luner with notice of the February 10, 2026 deposition.

26. As of the date of this declaration, I am unaware of any information that Defendant served formal notice on Plaintiffs concerning the February 18, 2026, deposition date.

27. Defendant's counsel knows and has worked with me and other lawyers at Smith Krivoshey for many years and knows that I do not live in California.

28. Prior to attempting to serve the subpoena at my home and later sending the subpoena to the law firm's agent for service of process, Defendant's counsel did not contact me or anyone else at the law firm to discuss the subject of the subpoena, its timing, whether it was permissible under the case schedule, or whether I or anyone else at the law firm had any information that was not already available from the Plaintiffs or their counsel.

29. On February 11, 2026, Joel Smith informed me that he contacted the law firm's

registered agent to see if fees had been tendered with the subpoena that the agent had received. Our agent confirmed on that day that no fees had been tendered with the subpoena.

30. Smith Krivoshey and Dovel Luner have engaged as cocounsel or been involved in several completely unrelated matters since at least March 2024, almost immediately after the launch of Smith Krivoshey. Some of these matters have closed, while at least one other remains pending.

31. A preliminary search shows there are many hundreds of emails between attorneys and staff at the two law firms concerning the matters. *Id*. It would be unduly burdensome for Smith Krivoshey (or me) to review, log, and search through these hundreds of communications to weed out potentially responsive documents related solely to the present litigation.

32. In 2024, Defendant's counsel told me that they do not believe that I would just "walk away" from this case, and that they suspected that I would remain in this case behind the scenes.

### *The Meet and Confer Concerning The Subpoena*

33. The meet and confer that preceded this motion occurred on February 9, 2026, at 2 pm ET. The call lasted approximately 24 minutes.

34. I attended the call with Joel D. Smith.

35. Joseph Elie-Myers attended the call on behalf of the Defendant.

36. The parties discussed numerous issues during the call, including service of the subpoena, whether fact discovery remained open when the subpoena was served, the timing of the subpoena, the nature of the information sought and whether that information could be obtained from the parties in this matter, whether Dovel & Luner has already provided some or all of the requested information and documents, why counsel did not contact us to discuss the need for the subpoena or the time or place of the subpoena before serving it, whether Defendant served more than one subpoena on Mr. Krivoshey, and potential sanctions arising from the subpoena.

37. My understanding after the conclusion of the call was that Defendant would not

withdraw the subpoena and would not modify the noticed subpoena date of February 18, 2026.

38. The following information concerning what transpired during meet and confer was written down on February 9, 2026, during and shortly after the meet and confer call described in the section above.

39. During the call, Mr. Smith asked Mr. Elie-Myers when fact discovery closed in the case, which is obviously relevant to whether the subpoena is timely or was otherwise properly served. Mr. Elie-Myers responded March 5, 2026. Mr. Smith then pressed Mr. Elie-Myers "whether there was anything else he wanted to say about that date?" Mr. Elie-Myers responded "no." Later in the call, Mr. Smith asked Mr. Elie-Myers why he had not disclosed that fact discovery is limited to newly added Plaintiffs when Mr. Smith had previously asked him about the close of fact discovery. Mr. Elie-Myers responded that he considered that fact to be "not relevant," but did not explain the basis for that position.

40. During the call, Mr. Smith asked Mr. Elie-Myers whether Mr. Krivoshey's deposition was scheduled to occur before or after the deposition of Plaintiffs' counsel. After Mr. Elie-Myers objected that this information was irrelevant, Mr. Smith explained that it was relevant to whether the information Defendant is seeking from me or my firm could be obtained from Plaintiffs or their counsel. Mr. Elie-Myers responded that he needed to check his records and was quiet for approximately 60 seconds. He then responded that Dovel & Luner's deposition was noticed first and set to proceed prior to the noticed date for my deposition. About a half hour after the call, I learned that this answer was false, because Dovel & Luner's deposition had already been rescheduled to a date *after* the date of the subpoena I and my firm had received.

41. During the call, I *repeatedly* asked Mr. Elie-Myers what documents Defendant believed I or my firm have that Plaintiffs or their counsel do not have. Mr. Elie-Myers either could not or would not identify any specific document. After the call, counsel for Dovel & Luner provided a copy of the subpoena Defendant had served on that law firm (specifically, I was provided with Exhibit A, above), which shows that Defendant is seeking the same documents from Plaintiffs' counsel that it is seeking from me and my firm. *See* Exhibit A, at

Exs. 1-4. Mr. Elie-Myers also stated that because Dovel & Luner's deposition was set to proceed before my deposition, Defendant would be in a better position to know what information, if any, I may possess that Dovel & Luner does not possess. As discussed above, however, that justification is false, as Dovel & Luner's deposition is scheduled to occur *after* my deposition.

42.     The subpoena purports to require the production of any agreements between my firm and Dovel & Luner concerning this matter. During the call, Mr. Smith asked if Defendant had already received any responsive agreements from Dovel & Luner, such that production of the agreements in response to Defendant's subpoena would be unnecessary. Mr. Elie-Myers stated that he declined to answer that question.

43.     During the call, Mr. Elie-Myers stated that Defendant had first tried to serve the subpoena on me at my home in Louisville, Kentucky, and then served a new subpoena with a new date at my law firm's agent for service of process. Mr. Smith asked if Defendant believed that the original subpoena was still operative, such that Defendant purported to serve two depositions notices for two different dates. I also asked the date of the original subpoena. Mr. Elie-Myers stated that he declined to answer those questions.

44.     During the call, Mr. Smith asked Mr. Elie-Myers if Defendant believed that Mr. Krivoshey continued to work on this matter behind the scenes, or whether there was an undisclosed agreement between Smith Krivoshey and Dovel & Luner concerning this matter. This question was relevant to the standard for deposing current and former counsel because it pertains to whether the information sought is crucial to the case. Mr. Elie-Myers stated that he declined to answer that question.

45.     During the call, Mr. Smith also asked Mr. Elie-Myers why the subpoena had not been served earlier in the case. Mr. Elie-Myers stated that he declined to answer that question.

46.     During the call, Mr. Smith asked Mr. Elie-Myers why counsel for Defendant had not called or emailed me to discuss the need for the subpoena or the time or place of the subpoena. Mr. Elie-Myers stated that he declined to answer that question.

47.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed in Louisville, Kentucky, on February 11,

KRIVOSHEY DECL. ISO NON-PARTY MOTION TO QUASH SUBPOENA

8

2026.

_____
Yeremey O. Krivoshey

# EXHIBIT 33

Jacob M. Harper (Cal. Bar No. 259463)
    jacobharper@dwt.com
Heather F. Canner (Cal. Bar No. 292837)
    heathercanner@dwt.com
Joseph Elie-Meyers (Cal. Bar No. 325183)
    josepheliemeyers@dwt.com
Peter K. Bae (Cal. Bar No. 329158)
    peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
GT's Living Foods, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br><br>                          Plaintiffs,<br><br>        vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>                          Defendant. | Misc. Case. No. 3:26-mc-80036<br><br>(Case No. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**NOTICE OF WITHDRAWAL OF SUBPOENA AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Declaration of Joseph Elie-Meyers Filed Concurrently]* |

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant GT's Living Foods, LLC ("Defendant") hereby gives notice of withdrawal of the subpoena for deposition testimony and documents served on Yeremey Krivoshey, of Smith Krivoshey PC, in relation to the matter *Patel et al. v. GT's Living Foods, LLC,* Case No. 2:19-cv-10920-FMO-DSR (C.D. Cal.). Consistent with this Court's February 12, 2026 Order Denying Motion to Shorten Time and Setting Hearing Re: Motion To Quash (Dkt. 5), any return date for this subpoena is hereby vacated.

This Notice of Withdrawal of Subpoena is supported by the attached memorandum of law and accompanying declaration of Joseph Elie-Meyers, Esq.

DATED: February 19, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Peter K. Bae

By: */s/ Joseph Elie-Meyers*
    Joseph Elie-Meyers

*Attorneys for Defendant*
*GT's Living Foods, LLC*

1

NOTICE OF WITHDRAWAL OF SUBPOENA

## <u>MEMORANDUM IN SUPPORT OF NOTICE OF WITHDRAWAL</u>

Defendant-Respondent GT's Living Foods, LLC ("GT's") hereby gives notice of withdrawal of the subpoena for deposition testimony and documents issued by GT's and served on Yeremey Krivoshey, of Smith Krivoshey, PC ("Movant") in relation to the matter *Patel et al. v. GT's Living Foods, LLC,* Case No. 2:19-cv-10920-FMO-DSR (C.D. Cal.), which is the subject of the pending motion to quash before this Court (the Subpoena). Withdrawal of the Subpoena renders Movant's motion to quash moot, as "there is nothing left to quash." *Bryant v. Shaeffer*, No. 1:11-CV-00444-AWI, 2015 WL 545934, at *3 (E.D. Cal. Feb. 10, 2015); *see also Lau v. Mayorkas*, No. 21-CV-04756-TLT, 2024 WL 5700970, at *2 (N.D. Cal. Sept. 11, 2024) (withdrawal of subpoena moots pending motion to quash); *Cameroon Ass'n of Victims of Ambazonia Terrorism Inc. v. Ambazonia Found. Inc.*, No. CV 20-1115-PA (ASX), 2020 WL 13248961, at *2 (C.D. Cal. May 19, 2020) ("[W]ithdrawal of the subpoena . . . renders the motion to quash . . . moot.").

GT's served Mr. Krivoshey with the Subpoena to seek information related to a pre-existing issue with the adequacy of class counsel that resulted in the denial of class certification and Mr. Krivoshey's withdrawal as counsel from the underlying litigation.  *See Patel*, ECF No. 129; Elie-Meyers Decl. ¶ 13, Ex. 3 (Order Denying Class Certification). After discovery disclosures in *Patel* suggested the ongoing involvement of prior class counsel, potentially infecting the adequacy of current class counsel, GT's contemporaneously served Mr. Krivoshey and other prior counsel for the putative *Patel* class, as well as current class counsel, substantially similar subpoenas. While other subpoenaed parties engaged in good faith negotiations in an attempt to narrow the scope of the subpoenas, resulting in the anticipated withdrawal of those subpoenas without recourse to motion practice, Mr. Krivoshey refused to engage in any such negotiations.

Notwithstanding his refusal to negotiate, Mr. Krivoshey's declaration submitted in support of the pending Motion to Quash provides a sworn statement

<div align="center">2</div>

NOTICE OF WITHDRAWAL OF SUBPOENA

describing the nature of his relationship with current class counsel, including that "nobody at Smith Krivoshey, including myself, has been involved in managing or consulting on the litigation in [*Patel*], either publicly or behind the scenes." Dkt. 1-1 at 3, ¶ 8. The filing of this declaration, which set out largely the same information that GT's sought to obtain by way of subpoena, made the pending Subpoena unnecessary, so on February 17, 2026, GT's gave notice to Mr. Krivoshey that the Subpoena is withdrawn.

GT's now gives notice to the Court of the withdrawal of Subpoena, which renders moot Mr. Krivoshey's pending Motion to Quash. GT's also submits this memorandum to provide the Court with additional context regarding the service and withdrawal of the Subpoena.

## BACKGROUND

### A. Movant Withdraws as Counsel in *Patel* in Light of Prior Inconsistent Positions

Movant Yeremy Krivoshey is former counsel in *Patel*, an ongoing class action in the Central District of California. Mr. Krivoshey withdrew as counsel in *Patel* after the court held that his prior, inconsistent representations in a nearly identical class action likely rendered him inadequate as *Patel* class counsel. *Patel*, ECF No. 129; Elie-Meyers Decl. Ex. 3 (Class Cert. Order). GT's served the now-withdrawn Subpoena as part of its efforts to obtain information regarding Mr. Krivoshey's ongoing involvement in the *Patel* litigation, if any, including any profit sharing agreements with current counsel.

In *Patel*, the district court denied Plaintiffs' motion for class certification, which was prepared and signed by Mr. Krivoshey. *See Patel*, ECF Nos. 99-1 at 54; 129. In denying Plaintiffs' motion for class certification, the court expressed concern regarding the adequacy of named plaintiffs and proposed class counsel, including Mr. Krivoshey. Class Cert. Order at 1. That was because prior *Patel* counsel, including Mr. Krivoshey, were also counsel in a previous, nearly identical class

3

NOTICE OF WITHDRAWAL OF SUBPOENA

action lawsuit against GT's, *Retta v. Millennium Products, Inc.*, 2:15-CV-1801-PSG (C.D. Cal.), which involved the *same* allegations about alcohol and sugar content in the *same* GT's kombucha products and was filed by the *same* attorneys who filed this action. *Id.* at 2.

Prior counsel settled the *Retta* class action for $8.25 million and injunctive relief requiring GT's to implement an alcohol warning label as well as an alcohol and sugar content testing regime, both of which remain in place for all disputed Kombucha products in the *Patel* action. Class Cert. Order at 2, 5; <u>Retta v. Millennium Prods., Inc.</u>, No. CV15-1801 PSG AJWX, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017). To obtain approval of that settlement, prior counsel made representations on behalf of the *Retta* class that were contrary to their position in the *Patel* action—namely, that the label disclosure provided "precisely the injunctive relief sought in the Complaint" and provided "adequate protections to minors going forward." Class Cert. Order at 3. In denying class certification, the *Patel* Court held this undermined counsel's ability to fairly and adequately represent this putative class. *Id.* at 1–2.

After the district court denied class certification, Plaintiffs' Counsel, including Mr. Krivoshey, as well as counsel from Bursor & Fisher and Ahdoot and Wolfson, PC withdrew and were replaced by counsel from Dovel & Luner LLP. *Patel*, ECF Nos. 134, 136–137, 139–144, 152–153, 156–160. Plaintiffs were granted leave to amend to add new plaintiffs Patel, Schmidt, and Nunez, who became the only plaintiffs in the action. *Patel*, ECF No. 150.

Upon GT's motion, *Patel*, ECF No. 171, the Court dismissed with prejudice plaintiffs Sharpe, Weiler, Leder, and DiGennaro because, as *Retta* class members, they were jurisdictionally barred from collaterally challenging the terms of the *Retta* settlement. *Patel*, ECF No. 178 at 4–5.

4

NOTICE OF WITHDRAWAL OF SUBPOENA

**B.  Discovery Is Reopened in *Patel* and Evidence of Mr. Krivoshey's Possible Ongoing Involvement in *Patel* Is Disclosed**

On October 23, 2025, the *Patel* court ordered that "[a]ny remaining discovery (related solely to the newly added named plaintiffs) shall be completed by December 29, 2025." *Patel*, ECF No. 180. That discovery deadline was later continued by joint stipulation to March 5, 2025, to allow for depositions of the newly-added named plaintiffs. *Patel*, ECF No. 185.

During the course of reopened discovery, Plaintiffs produced documents suggesting an ongoing relationship between current Plaintiffs' counsel and former plaintiffs' counsel, including Mr. Krivoshey. Elie-Meyers Decl. ¶ 2. These documents included a fee-sharing arrangements between current counsel and former counsel (including Mr. Krivoshey), as well as a sliding-scale profit-sharing arrangement. *Id.*

**C.  GT's Serves Subpoenas After Reasonable Attempts to Gather Information From Parties**

After becoming aware of agreements between former- and current *Patel* counsel, GT's attempted to seek further information through deposition testimony and requests for further information from current counsel, but was unable to obtain complete information regarding the nature of the relationship between former and current counsel. Elie-Meyers Decl. ¶ 3.

GT's subsequently served on *Patel* plaintiffs notices of subpoenas, Dkt.1-2, and then attempted to serve subpoenas for deposition testimony and document productions on former *Patel* counsel including, *inter alia*, Mr. Krivoshey, Dkt.1-3. Elie-Meyers Decl. ¶¶ 4–6.

GT's made numerous attempts to serve Mr. Krivoshey in person. Elie-Meyers Decl. ¶¶ 5-7. Only after those attempts failed, and in light of the approaching March 5, 2026, discovery cut-off in *Patel*, did GT's attempt to serve Mr. Krivoshey at the registered agent of Smith Krivoshey, PC, which GT's understands to be owned and

5

NOTICE OF WITHDRAWAL OF SUBPOENA

operated by Mr. Krivoshey. *Id.* ¶ 8. Service was effectuated on the registered agent on February 4, 2026, *Id.* ¶ 8 and Ex. 1 (Proof of Service)

### D. Mr. Krivoshey Refuses to Confer Regarding Attempts to Limit Subpoena or Modify Timing for Compliance

On February 9, 2026, the parties met and conferred regarding the pending Subpoena. Elie-Meyers Decl. ¶ 9. Present on the call were Mr. Krivoshey, Joel Smith, and Joseph Elie-Meyers (for GT's). *Id.* During the conferral, counsel for GT's repeatedly offered to discuss limiting the scope of the subpoena and/or extending the time for compliance with the subpoena to allow additional time to negotiate the scope of the subpoena. *Id.* Mr. Krivoshey and Mr. Smith repeatedly declined to entertain any effort to limit the scope or modify the date for compliance with the subpoena in furtherance of such negotiations. *Id.*

### E. Mr. Krivoshey Moves to Quash and GT's Gives Notice of Withdrawal of Subpoena

On February 11, 2026, Mr. Krivoshey filed the instant Motion to Quash. Dkt. 1. In support of the Motion, Mr. Krivoshey submitted a signed declaration in which he described the nature of his involvement in the *Patel* litigation and averred that, after formally withdrawing from the *Patel* litigation in August 2024, neither Mr. Krivoshey nor anyone else as Smith Krivoshey LLP "has been involved in managing or consulting on the litigation in [*Patel*], either publicly or behind the scene." Dkt. 1-1 ¶ 8 (Krivoshey Decl.). Mr. Krivoshey further averred that he has "had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel," and that "[t]here are no secret 'side deals' between me or my law firm and Dovel & Luner regarding this matter." *Id.* ¶¶ 9, 10. Finally, Mr. Krivoshey's declaration provided additional averments regarding the nature of the joint prosecution agreements with Dovel & Luner, including that those agreements provided for fees "only in an amount to be determined by the Court" and without reference to any other agreement concerning fees. *Id.* ¶ 5.

6

NOTICE OF WITHDRAWAL OF SUBPOENA

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

On February 17, 2026, GT's gave notice to Mr. Krivoshey of the withdrawal of the Subpoena in light of this declaration, which set out, in sum and substance, the information GT's sought to obtain through the Subpoena. Elie-Meyers Decl. ¶ 10 and Ex. 2. GT's further advised Mr. Krivoshey that other parties to the litigation have agreed in pre-motion conferrals to provide substantially similar declarations in lieu of deposition testimony or document productions. *Id.*

## ARGUMENT

GT's served Mr. Krivoshey with the subject Subpoena as part of its reasonable efforts to obtain further information regarding any ongoing relationship between withdrawn *Patel* counsel and current *Patel* counsel. After Mr. Krivoshey provided a sworn declaration providing precisely the information that GT's sought to obtain through the subpoena, GT's withdrew the subpoena as unnecessary in light of that declaration. Elie-Meyers Decl. ¶¶ 9, 10. Had Mr. Krivoshey been willing to confer in an attempt to narrow the scope of the subpoena, motion practice before this Court may not have been necessary. This is illustrated by the fact that, as a result of ongoing conferral efforts, as of the date of this filing no other party has moved to quash the subpoenas noticed to *Patel* counsel on January 29, 2026. *See* Dkt. 1-2; Elie-Meyers Decl. ¶¶ 11, 12.

As described above, on January 29, 2026, GT's provided notice to *Patel* counsel of its intent to serve current and former counsel with deposition and document subpoenas. Dkt. 1-2. These subpoenas sought information directly relevant to the *Patel* litigation, including to the adequacy of named Plaintiffs and their counsel, Dovel & Luner. In denying Plaintiffs' first motion for class certification, the *Patel* court held that prior counsel had made prior representations that "call[ed] into question the ability of [class counsel] to 'fairly and adequately represent the interests of the class,'" including inconsistent representations about the adequacy of alcohol and sugar content labels that prior counsel *themselves* negotiated in the nearly-identical prior lawsuit, *Retta v. Millennium Products, Inc.,*

7

NOTICE OF WITHDRAWAL OF SUBPOENA

2:15-CV-1801-PSG. Class Cert Order at 2–3. The Court also noted inconsistencies in counsels' positions in *Retta* regarding the adequacy of testing and the nature of plaintiffs' damages model, and the positions they had taken in the *Patel* litigation. *Id.* at 4. The court observed that "[p]utting aside the fact that the alcohol warning label [counsel] negotiated has been used by defendant since the Retta settlement, it appears that plaintiffs simply aren't satisfied with the injunctive relief they negotiated and had approved by the <u>Retta</u> Court." *Id.* at 5.

Mr. Krivoshey and other counsel shortly thereafter withdrew from the litigation and were replaced by counsel from Dovel & Luner LLP. ECF Nos. 134, 136–148, 152–153, 156–160.  However, the disclosure of Joint Prosecution Agreements between Mr. Krivoshey (and other former counsel) and current counsel from Dovel & Luner gave rise to concerns about the ongoing involvement of prior counsel in the present litigation—including whether former counsel was continuing to play an active role in the litigation, for potential financial benefit, notwithstanding their prior inconsistent statements in the *Retta* litigation. After exhausting its attempts to seek further information from named Plaintiffs through depositions, GT's served notice and subpoenas on Dovel & Luner, Mr. Krivoshey, Bursor & Fisher, and Adhoot and Wolfson, PC. Dkt. 1-2; Elie-Meyers Decl. ¶ 4.

No other respondent has moved to quash, in part because of productive negotiations regarding the scope and timing of subpoena compliance that have, to this point, also made depositions and document production unnecessary. Elie-Meyers Decl. ¶¶ 11, 12. Unlike other counsel, Mr. Krivoshey refused to entertain any attempt to limit the scope or timing of the depositions and document productions sought via the Subpoena. *Id.* ¶ 9.

Notwithstanding Mr. Krivoshey's refusal to negotiate, his Declaration in Support of the Motion to Quash provides, in sum and substance, all of the information GT's sought to obtain via subpoena. This includes, critically, Mr. Krivoshey's sworn statements that he has not played an active role in the *Patel*

8

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

litigation since he withdrew as *Patel* counsel and is not entitled by contract to obtain financial benefit from this litigation other than by a separate motion for fees. Dkt. 1-1 ¶¶ 2-10. Because this declaration rendered the pending subpoena unnecessary, GT's withdrew it.

The withdrawal of the Subpoena at issue renders Mr. Krivoshey's pending motion Moot, as "there is nothing left to quash." *Bryant*, 2015 WL 545934, at *3. *See also Lau*, 2024 WL 5700970, at *2, *Cameroon*, 2020 WL 13248961, at *2; *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2024 WL 3416644, at *4 (N.D. Cal. July 14, 2024).

## **CONCLUSION**

Because GT's has withdrawn the subject Subpoena, Mr. Krivoshey's pending Motion to Quash is moot.

DATED: February 19, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Peter K. Bae

By: */s/ Joseph Elie-Meyers*
    Joseph Elie-Meyers

*Attorneys for Defendant*
*GT's Living Foods, LLC*

9

NOTICE OF WITHDRAWAL OF SUBPOENA

# EXHIBIT 34

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> Defendant. | Mis. Case No.  3:26-mc-80036-TSH <br><br> (CASE NO. 2:19-cv-10920-FMO-GJS Pending in the Central District of California) <br><br> **NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANT GT'S LIVING FOODS, LLC, DAVIS, WRIGHT, TREMAINE, AND ATTORNEYS JACOB HARPER AND JOSEPH ELIE-MEYERS.** <br><br> Date:  April 2, 2026 <br> Time: 10:00 a.m. <br> Judge: Hon. Thomas S. Hixon |

NON-PARTY MOTION FOR SANCTIONS; CASE NO. 3:26-mc-80036

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2026, at 10:00 a.m., before the Honorable Thomas S. Hixon of the United States District Court for the Northern District of California, Courtroom E, 15th Floor, San Francisco Courthouse, non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. (the "Non-Parties") will, and hereby do, move for an order issuing sanctions on Defendant GT's Living Foods, LLC, the law firm of Davis, Wright, Tremaine, and attorneys Jacob Harper and Joseph Elie-Meyers.

This Motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, the supporting Declaration of Yeremey Krivoshey, all other papers in this proceeding, and such oral argument as may be heard by the Court.

<div align="center"><b>STATEMENT OF ISSUES TO BE DECIDED</b></div>

Whether the Court should sanction Defendant GT's Living Foods, LLC, the law firm of Davis, Wright, Tremaine, and attorneys Jacob Harper and Joseph Elie-Meyers for discovery abuse concerning their subpoena to the Non-Parties issued in connection with *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS ("*Patel*"), in the form of monetary sanctions, and requiring attorneys Harper and Elie-Meyers to either present or attend CLE, or any alternative form of sanction the Court determines is warranted.

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | TIMELINE OF RELEVANT FACTS | 3 |

A. December 2019 – December 2025: The Procedural Background Of *Patel* Leading Up To The Current Dispute ........................ 3

    1. The Non-Parties' Prior Involvement In *Patel* And The Close Of Discovery In 2021 ........................ 3

    2. The Non-Parties' Withdrawal From The *Patel* Matter In 2024 ........................ 3

    3. The December 2025 Order Re-Opening "Limited Discovery" Concerning New Plaintiffs in *Patel* ........................ 5

    4. December 2025 - January 2026: Defendant Obtains All Responsive Agreements And The *Patel* Plaintiffs Testify About The Non-Parties' Lack Of Involvement In The Matter ........................ 5

B. January 29, 2026: Defendant's First Subpoena To The Non-Parties ........................ 8

C. February 4, 2026: Defendant's Second Subpoena To The Non-Parties ........................ 9

D. February 6, 2026: The Non-Parties Learn That Defendant Failed To Provide Notice Of The Second Subpoena ........................ 10

E. February 9, 2026: Defendant's Counsel Makes A Series Of False Statements And Omissions During The Meet And Confer Call ........................ 10

F. February 10, 2026: Defendant Refuses To Continue Or Vacate The Deposition Date While Effectively Admitting That Discovery Is Closed ........................ 13

G. February 11, 2025: Defendant's Counsel's Pretextual Statements Concerning The Reason For And Timing Of The Subpoena ........................ 13

H. February 18, 2025: Defendant Admits That The Prior Justification For The Subpoena Was False And That They Were Always Seeking Information Available From The *Patel* Plaintiffs ........................ 15

III. ARGUMENT ........................ 16

A. Sanctions Are Warranted Under Four Applicable Legal Standards ........................ 16

B. The Record Supports Sanctions Here ........................ 18

C. Under *Duong*, The Last-Minute Withdrawal Of The Subpoena Does Not Moot The Motion For Sanctions ........................ 21

D. The Court Should Award Sanctions To Compensate For The Misconduct In This Case And To Deter Future Misconduct ...............................22

    1. The Court Should Require Defendant's Counsel To Present CLE, Or At A Bare Minimum, Attend CLE In Person ...........................22

    2. The Court Should Award Fees And Order Supplemental Briefing On The Appropriate Amount .......................................................23

IV. CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. BNSF Railway Co.*,
  681 F. Supp. 3d 899 (S.D. Iowa 2023)...............................................................................20

*Bergeron v. Northwest Publications Inc.*,
  165 F.R.D 518 (D. Mn. Apr. 24, 1996)...............................................................................23

*Blixseth v. Yellowstone Mountain Club, LLC*,
  796 F.3d 1004 (9th Cir. 2015)............................................................................................18

*Blixseth v. Yellowstone Mountain Club, LLC*,
  854 F.3d 626 (9th Cir. 2017)..............................................................................................23

*California v. The Kroger Co.*,
  2024 WL 4453267 (C.D. Cal. Oct. 9, 2024) ......................................................................21

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..............................................................................................................18

*Claypole v. Cnty. of Monterey*,
  2016 WL 145557 (N.D. Cal. Jan. 12, 2016) ......................................................................20

*D'Amico v. N & D Restaurants, LLC*,
  2025 WL 3158124 (C.D. Cal. Sept. 24, 2025).....................................................................19

*Davila v. Roblen, LLC*,
  2026 WL 323134 (D. Conn. Feb. 6, 2026) ....................................................................2, 22

*Davis v. Los Angeles West Travelodge*,
  2010 WL 623657 (C.D. Cal. Feb. 3, 2010).........................................................................23

*Diversified Funding Grp., LLC v. Hendon*,
  2018 WL 1870029 (C.D. Cal. Jan. 4, 2018) ......................................................................18

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
  2020 WL 6290374 (N.D. Cal. Oct. 27, 2020).....................................................................22

*Duong v. Groundhog Enters., Inc.*,
  2020 WL 2041939 (C.D. Cal. Feb. 28, 2020)...................................................17, 18, 19, 21

*Effinger v. Ancient Organics LLC*,
  2024 WL 3643395 (N.D. Cal. Aug. 2, 2024)................................................................11, 21

*Equal Emp. Opportunity Comm'n v. Dillon Co.*,
  2010 WL 4134696 (D. Colo. Oct. 12, 2010) ...............................................................21

*Eugster v. Washington State Bar, Ass 'n 1933*,
  716 F. App'x 645 (9th Cir. 2018) ...............................................................16

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001)...............................................................18

*Fujikura Ltd. v. Finisar Corp.*,
  2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ...............................................................19

*Golikov v. Walmart*,
  2025 WL 3760635 (C.D. Cal. Dec. 19, 2025) ...............................................................24

*Hawkins v. Kroger Co.*,
  2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) ...............................................................21

*Hawkins v. Kroger Co.*,
  2020 WL 1952832 (S.D. Cal. Apr. 23, 2020) ...............................................................21, 23

*Hawkins v. Kroger Co.*,
  2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ...............................................................2, 3, 21, 23

*Haynes v. City & County of San Francisco*,
  688 F.3d 984 (9th Cir. 2012)...............................................................22

*In re Keegan Mgmt.* Co.,
  78 F.3d 431 (9th Cir. 1996)...............................................................18

*In re Vialet*,
  460 Fed. Appx. 30 (2d Cir. 2012) ...............................................................23

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
  2025 WL 917110 (N.D. Cal. Mar. 26, 2025) ...............................................................20

*Koji IP, LLC v. Renesas Electronics Am., Inc.*,
  2025 WL 980796 (N.D. Cal. Mar. 31, 2025) ...............................................................23

*Last v. M-I*,
  2022 WL 3012206 (C.D. Cal. May 19, 2022) ...............................................................24

*Legal Voice v. Stormans Inc.*,
  738 F.3d 1178 (9th Cir. 2013)...............................................................17, 18

*Mata v. Avianca, Inc.*,
  678 F. Supp. 3d 443 (S.D.N.Y. June 22, 2023) ...............................................................23

*Mount Hope Church v. Bash Back!*,
  705 F.3d 418 (9th Cir. 2012)...................................................................................16, 17, 18

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546, (1986) ...............................................................................................................24

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
  2022 WL 2199029 (C.D. Cal. Feb. 9, 2022) ...........................................................................17

*Salmon v. CRST Expedited, Inc.*,
  2016 WL 3945362 (N.D. Okla. July 19, 2016)....................................................................2, 22

*Scott v. Keller*,
  2010 WL 1267772 (E.D. Cal. March 31, 2010)........................................................................19

*US v. CBS*,
  666 F.2d 364 (9th Cir. 1982).....................................................................................................17

*User Profile Litig.*,
  655 F. Supp. 3d 899 (N.D. Cal. 2023) ........................................................................18, 22, 23

**Statutes**

28 U.S.C. § 1927 ..............................................................................................................17, 18

**Rules**

Fed. R. Civ. P. 30(b)(6) .........................................................................................................19

Fed. R. Civ. P. 45(d)(1) .............................................................................................17, 18, 19

<div align="center">**MEMORANDUM OF POINTS AND AUTHORITIES**</div>

## I.      Introduction

After the close of discovery in *Patel et al. v. GT'S Living Foods, LLC*, C.D. Cal. Case No. 2:19-cv-10920-FMO-GJS ("*Patel*"), the Defendant subpoenaed every law firm that had ever represented any plaintiffs in that six-year long case. Non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. (the "Non-Parties") moved to quash and filed a motion to shorten time when Defendant refused to vacate or continue the noticed deposition date. At 1 a.m. on February 18, 2026, the noticed compliance date, Defendant withdrew the subpoena, claiming that it had obtained what it wanted by forcing the Non-Parties to move to quash, even though Defendant already had the evidence it was purportedly searching for before serving the subpoena.

The Non-Parties seek an order issuing sanctions against Defendant and its counsel. The Non-Parties do not take this motion lightly, but the record of misconduct here is significant, and there is a long judicial record of litigation abuse by Defendant's counsel. Some of the more troubling behavior concerning the subpoena is briefly summarized here:

- ✓ ***Serving A Subpoena After Close of Discovery And Then Lying About It***: Discovery in *Patel* closed five years ago, except for limited discovery concerning certain newly added plaintiffs. Defendant's counsel lied about this fact during the meet and confer call. Serving a subpoena after the close of discovery is enough to warrant sanctions; lying about that fact is indefensible.

- ✓ ***Refusing To Continue the February 18 Deposition Date After Acknowledging Discovery Is Closed***: Defendant refused to continue or vacate the February 18, 2026, deposition date unless the Plaintiffs in *Patel* agreed to re-open full discovery. This shows that Defendant knew the subpoena was untimely and outside the scope of the limited fact discovery allowed in *Patel*.

- ✓ ***Violating Civility and Professionalism Guidelines In Scheduling.*** Defendant's counsel knows that Mr. Krivoshey lives in Kentucky. Instead of contacting him to discuss the need for the deposition, its timing, or the need for travel, they quietly sent a process server to his home in Kentucky, and then to the law firm's agent for service of process without

providing notice to *Patel* parties. Then, as noted above, they refused to change the noticed deposition date and purported to require his appearance in California on short notice.

✓ ***Seeking Evidence Available From The Parties And Their Counsel***: Rule 45 requires, at a minimum, that a party attempt to seek discovery from the opposing party before burdening third parties. The evidence shows that Defendant attempted to stage the Non-Parties' depositions first, and then tried to hide that fact during the meet and confer call. Likewise, the only documents that Defendant sought from the Non-Parties were either already in Defendant's position, or available from the *Patel* Plaintiffs or their counsel. Defendant's counsel could not identify a single document Defendant believed the Non-Parties had that Defendant did not already have or could not get from the *Patel* counsel.

At least five other federal judges—including in this District—have criticized or sanctioned Defendant's counsel for "gamesmanship," "bad faith," frivolous filings, and ginning up bogus sanction motions on false pretenses. *E.g.*, *Hawkins v. Kroger Co.*, 2020 WL 6150040 at *2-4 (S.D. Cal. Oct. 20, 2020). Two judges commented that counsel appears to take the threat of monetary sanctions as an acceptable risk of bad behavior, and to this day, Defendant's lead counsel touts his "unorthodox tactics" to prospective clients. *See id.* at *4 (describing "the apparent inadequacy of simply issuing monetary sanctions"); *see also* Ex. K (attorney web bio page).[1]

Judicial intervention is necessary to deter future misconduct and make it clear that what transpired here is not acceptable. The Non-Parties therefore ask that in addition to monetary sanctions, the Court order Defendant's counsel to prepare and present a CLE on ethics and discovery practice on Lawline.com, at a local Bar Association, or another other public forum. There is ample authority for the Court to issue that form of sanction. *See*, *e.g.*, *Davila v. Roblen, LLC*, 2026 WL 323134, at *3 (D. Conn. Feb. 6, 2026); *Salmon v. CRST Expedited, Inc.*, 2016 WL 3945362, at *1-4 (N.D. Okla. July 19, 2016). Alternatively, in *Hawkins*, Magistrate Judge Godard ordered Defendant's counsel to attend eight hours of CLE in person, not inclusive of any CLE requirements already imposed by any state bar. Although District Judge Miller reluctantly overruled that sanction (but not

---

[1] Exhibits in this memorandum are attached to the supporting Declaration of Yeremey O. Krivoshey.

the monetary sanction), he did so only because the issue had not been sufficiently briefed. *See Hawkins*, 2020 WL 6150040 at *10. That will not be a problem here.

## II. Timeline Of Relevant Facts

### A. December 2019 – December 2025: The Procedural Background Of *Patel* Leading Up To The Current Dispute

#### 1. The Non-Parties' Prior Involvement In *Patel* And The Close Of Discovery In 2021

*Patel* was a putative class action filed on December 27, 2019, by the four original Plaintiffs (who were later dismissed) and represented by Bursor & Fisher, P.A. and Westerman Law Corp. *See Patel* ECF No. 1.[2] At the time, Yeremey Krivoshey was the partner at Bursor & Fisher who was primarily responsible for handling the *Patel* matter (at the time, the "*Sharpe* matter"). Krivoshey Decl., ¶ 2. Fact discovery closed in April 2021, expert discovery closed in August 2021, and briefing on the motion for class certification closed shortly afterwards. *Id.* at ¶ 3. In late February 2024, while the parties were waiting for a decision on class certification, Mr. Krivoshey left Bursor & Fisher to start his own firm, Smith Krivoshey, P.C., but he remained an attorney of record in the case with his new law firm. *Id.* at ¶ 4.

#### 2. The Non-Parties' Withdrawal From The *Patel* Matter In 2024

In June 2024, the district court denied the motion for class certification without prejudice due to a concern about Bursor & Fisher's involvement in a prior settlement concerning similar claims against Defendant, and the potential that the claims of the original four *Sharpe* Plaintiffs may be foreclosed by the prior settlement. *Patel* ECF No. 129. The district court ordered that any later motion for class certification address adequacy concerns related to the prior settlement. *Id.*, at 6. The law firm Dovel & Luner LLP then appeared as new counsel, and Bursor & Fisher, Smith Krivoshey, and Yeremey Krivoshey withdrew from the matter. The Court approved the substitution of counsel on August 7, 2024. *Patel* ECF Nos. 141-144.

*Before* serving the subpoena at issue here, in December 2025, Defendant obtained in

---

[2] "*Patel* ECF" refers to docket entries in the underlying *Patel* matter in the Central District of California.

discovery in *Patel* two agreements, a July 9, 2024 agreement and a July 16, 2024 agreement, between Smith Krivoshey and Dovel & Luner.

The July 9, 2024, agreement anticipated that Dovel & Luner would be sole lead counsel in *Patel* but Non-Parties would stay on as counsel of record and work, if at all, at Dovel & Luner's direction. Krivoshey Decl. ¶ 7. The July 9, 2024, agreement also included a proposed fee split in the case of a recovery of fees. *Id*. Nonetheless, just a week later, this agreement explicitly became null and void through the terms of the July 16, 2024, agreement. *Id*. The July 16, 2024, agreement states that it "**constitutes the entire agreement between the [law firms] regarding the foregoing subject matter, whether oral or written, and specifically supersedes any prior agreements between them**." *Id*. (bolding added).

The July 16, 2024 agreement memorialized that Dovel & Luner would take control over the litigation in *Patel*, serve as sole lead counsel, and bear all future costs of litigation, require Smith Krivoshey to transfer the case files to Dovel & Luner, and that Smith Krivoshey would be entitled to no fees for its time working on the matter other than any that might be approved by the Court upon application by Smith Krivoshey. Krivoshey Decl., ¶ 7; Ex. O (Brenner Decl.) at ¶¶ 17, 18; *id*. Ex S (Joint Stipulation Pursuant to Local Rule 37 for Defendant's Motion to Compel), at 28:8-14. The July 16, 2024 agreement explicitly stated that "Smith Krivoshey and Bursor **will withdraw**." *Id*. (bolding added). The agreement contained no "clear sailing" agreement between Smith Krivoshey and Dovel & Luner as to what Smith Krivoshey could potentially ask the Court in an application for fees. *Id*. Indeed, Dovel & Luner retains discretion to oppose any request for fees. *Id*.

During the transition period around late July or August 2024, Jacob Harper, lead counsel for Defendant, stated that he did not believe that Mr. Krivoshey would ever just "walk away" from the case and accused him of planning to manage the case from behind the scenes. Krivoshey Decl., ¶ 11. Mr. Krivoshey assured Mr. Harper that his speculation was unfounded and mistaken, and that Mr. Krivoshey would truly withdraw as represented. *Id*. As promised, and as required pursuant to the terms of the July 16, 2024 agreement, the Non-Parties withdrew from the matter and were not involved in the matter at all afterwards, apart from transferring case files and materials to Dovel & Luner and briefly assisting with the transition. *Id.* at ¶¶ 8-10. As discussed below, the *Patel* plaintiffs

confirmed in their January 2025 depositions that they had no contact with the Non-Parties.

### 3. The December 2025 Order Re-Opening "Limited Discovery" Concerning New Plaintiffs in *Patel*

On December 17, 2024, and with prior approval from the district court, an amended complaint was filed in the *Patel* matter, which included three new plaintiffs. *Patel* ECF No. 167-68. Ten months later, the district court granted in part and denied in part Defendant's motion to dismiss the amended complaint. The court dismissed the claims of the original *Sharpe* plaintiffs in the case, who were the only parties that the Non-Parties here had ever represented. *Patel* ECF No. 178.

In October 2025, the *Patel* court also re-opened discovery "related solely to the newly added named plaintiffs" to be completed by December 29, 2025. *Patel* ECF No. 180. In November 2025, Defendant made the first of two extension requests, acknowledging at the time that the then-operative December 29 deadline was "***for limited discovery as to the newly added named Plaintiffs***." Ex. L at 1:11-12 (emphasis added). The Court later approved the stipulation, extending the discovery deadline to January 29, 2026, but again stating that discovery would "relate[] solely to the newly added named plaintiffs." *Patel* ECF No. 183.

On December 18, 2025, the parties filed a second request to extend the discovery deadline, this time to March 5, 2026, for the sole purpose of "complet[ing] remaining discovery related to the newly added plaintiffs." Ex. M, at 1:7. Defendant did not ask for leave to serve subpoenas on third parties and emphasized that it had been "diligent" and "moved expeditiously to timely complete discovery." *Id*. at 2:1, 8. On December 23, 2025, the Court granted the stipulation, once again stating, "[a]ny remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**." Ex. N, *Patel* ECF No. 185 (bold in original).

### 4. December 2025 - January 2026: Defendant Obtains All Responsive Agreements And The *Patel* Plaintiffs Testify About The Non-Parties' Lack Of Involvement In The Matter

On November 13, 2025, Defendant served the *Patel* Plaintiffs with a document request seeking any fee sharing and joint prosecution agreements between current and former counsel in the action. *See* Ex. S (Stipulation) at 3:23. The request specifically sought "the fee sharing arrangement by or among Dovel & Luner, LLP" and Non-Party law firm Smith Krivoshey as well as several other

law firms. *Id.*, at 30:2-13. On December 23, 2025, the *Patel* Plaintiffs produced all responsive agreements with Smith Krivoshey discussed above. *Id.*, Ex. O (Brenner Decl.) at ¶¶ 4, 17-18. These were the same agreements that Defendant's requested in their subpoenas to the Non-Parties.

The three remaining Plaintiffs in *Patel* were deposed between January 8 and January 16, 2026. Ex. T (Joseph Eli-Meyers Decl.) ¶ 11. Defendant's counsel asked the *Patel* plaintiffs about any agreements between the Non-Parties and Dovel & Luner, whether the July 16, 2024 agreement supersedes the July 9, 2024 agreement, and any communications those plaintiffs may have had with Non-Parties, including Mr. Krivoshey specifically. *See* Exs. P-R (*Patel* plaintiff deposition transcripts). The following exchanges are illustrative:

> Q.     Have you heard of Bursor & Fisher?
>
> A.     I have – I'll say the same. I have no specific knowledge of any of the law firms outside of Dovel.

Ex. P at 96:6-9 (Patel deposition).

> Q.     Other than me and your attorneys at Dovel & Luner, have you spoken with any other attorneys from any other law firms about this litigation?
>
> A.     I do not – to my knowledge, no.
>
> …
>
> Q.     [Introduced July 9, 2024 agreement and asks] Do you have any understanding of what this document sets out?
>
> A.     It's regarding the attorneys' fees.
>
> …
>
> Q,     Do you recognize the name of the law firm Smith Krivoshey, PC?
>
> A.     It's not familiar to me.
>
> Q.     Have you had any contact with an attorney from Smith Krivoshey, PC?
>
> A.     Not to my knowledge.
>
> Q.     Do you recognize the name of the law firm Bursor & Fisher, PA?

A. No.

Q. Have you ever had any contact with an attorney from that law firm?

A. Not to my knowledge.

…

Q. [Introduced July 16, 2024 agreement and asks] Do you recognize this document?

A. Vaguely, but I think because it is very similar to the other document.

Q. On the first page it says it's an agreement regarding the Sharpe litigation?

A. Yes.

Q. Do you have any understanding of what this document sets out?

A. It looks, again, to be regarding attorneys' fees and costs.

…

Q. Do you know if this document supercedes or cancels the prior Joint Prosecution Agreement that we discussed a few minutes ago?

[Objection]

A. I'm not an attorney. I do not know.

…

Q. Sitting here today, do you have any understanding of your law firm, Dovel & Luner's relationship with the law firms that are listed in these two agreements?

[Objection]

A. At a high level. But again, I'm not an attorney. I believe some of these attorneys were involved well before I was involved in the case when Dovel & Luner took it over.

Ex. Q at 62-69 (Schmidt deposition).

Q. Other than Martin Brenner, what are other names of other attorneys that you've worked with at Dovel Luner?

A. My main point person has been Martin Brenner. There was someone else, but

I do not remember their name. It was another man working at Dovel Luner.

Q. Was it Yeremey Krivoshey?

A. I don't believe so, no.

…

Q. Do you recognize this document?

A. This does look familiar, yes.

Q. What is this document?

[Objection]

A. To my understanding, it's an agreement of law firms to work together in this case against GT's.

…

Q. Can you tell me generally what this document is?

A. I believe, to my understanding, this document is a notice stating that Dovel will be taking on – will be taking over as lead counsel for this case.

Q. Do you see anything in this document that says that the other law firms, including Smith Krivoshey, will no longer have any share of any proceeds from any class settlement or award to the class in this case?

[Objection]

A. I'm prefacing by saying I'm not a lawyer and I'm not sure if I'm interpreting this document correctly, but it looks like, to my understanding, that the material cost incurred by – will be borne and paid by Dovel.

Ex. R at 87:1-8, 87:20-88:1, 93:2-19 (Nunez deposition).

In short, by January 16, 2026, Defendant had all the agreements between Dovel & Luner and the Non-Parties, Defendant had deposed every plaintiff in *Patel* about the agreements, and Defendant had specifically questioned the *Patel* plaintiffs about any putative interactions they had with Non-Parties and Smith Krivoshey, PC and Yeremey Krivoshey in particular. All of this evidence pointed in the same direction: the Non-Parties were not involved with the *Patel* matter after they withdrew.

## B. January 29, 2026: Defendant's First Subpoena To The Non-Parties

On January 29, 2026, Defendant served the Plaintiffs in the *Patel* action a Notice of

Subpoenas to Testify at Depositions, which included three deposition and document subpoenas on the law firms of Dovel & Luner, Bursor & Fisher, PA, and Ahdoot & Woolfson. Ex. A. A fourth subpoena identified both Non-Parties Yeremey Krivoshey and Smith Krivoshey in the "To" line of the subpoena. *See id.* It was the only subpoena to identify a specific individual attorney as a witness. The depositions were sequenced so that the Non-Parties' deposition was scheduled to occur *first*, on February 10, 2026, in Los Angeles. Bursor & Fisher's deposition was scheduled to occur on February 11; Dovel & Luner's, on February 12; and Ahdoot & Wolfson's,[3] on February 20. *See id.*

Counsel for Defendant knows that Mr. Krivoshey lives in Kentucky because they arranged for a process server to attempt service of the subpoena at his home. Counsel for Defendant never contacted Mr. Krivoshey to discuss the need for a subpoena, its scheduling, the need for travel, or to discuss what documents, if any, the Non-Parties have that cannot be obtained from the plaintiffs in *Patel* or their counsel. Krivoshey Decl., ¶ 20. The process server never served Mr. Krivoshey at his home. *Id.* at ¶ 13.

### C. February 4, 2026: Defendant's Second Subpoena To The Non-Parties

On February 4, 2026, a new subpoena was served on Smith Krivoshey P.C.'s California agent for service of process (hereinafter, "the second subpoena"). Krivoshey Decl., ¶ 16. On the February 9, 2026, meet and confer call, Non-Parties asked Mr. Elie-Meyers why he thought he could serve Mr. Krivoshey, who lives and works in Louisville, in a personal capacity through a registered agent of the firm in California. *Id.* at ¶ 38. Mr. Elie-Meyers had no response other than a remark that Mr. Krivoshey's name is part of the firm name and that he owns Smith Krivoshey, PC. *Id.* As shown in the Non-Parties' motion to quash, there is no legal support for that position.

Unlike the first subpoena, the deposition date on the second subpoena was set for February 18, 2026, and was to occur in San Francisco rather than Los Angeles. *See* Ex. B. As with the first subpoena, the second subpoena identified both Mr. Krivoshey and the law firm Smith Krivoshey in the "To" line, making it unclear who the intended deponent was. The subpoena included a document request seeking "all communications" between the Non-Parties and Dovel & Luner regarding the

---

[3] Jeff Westerman of Westerman Law Corp. was one of the attorneys who represented the plaintiffs when the matter was first filed. He later transferred to the law firm Ahdoot & Wolfson.

*Patel* matter, and all documents and communications exchanged between the two law firms related to any agreements such as joint prosecution agreements or fee sharing agreements. *See id*. Identical document requests were included with the subpoena to Dovel & Luner. *See* Ex. A.

As with the first subpoena, Defense counsel did not contact the Non-Parties to discuss the need for a subpoena, its timing, the need for travel, or to discuss what documents the Non-Parties have that cannot be obtained from the plaintiffs in *Patel* or their counsel. Krivoshey Decl., ¶ 19.

**D.      February 6, 2026: The Non-Parties Learn That Defendant Failed To Provide Notice Of The Second Subpoena**

On Friday, February 6, 2026, the Non-Parties asked counsel for Defendant to schedule a meet and confer call about the second subpoena. Krivoshey Decl., ¶ 21. He included counsel for the *Patel* Plaintiffs on the email. *Id.* Counsel for the *Patel* Plaintiffs then responded that they had not been given notice of the new subpoena. *See* Ex. C. Counsel for Defendant never responded to the email, and as explained in the section that follows, later took the position that Defendant was not required to provide notice to the *Patel* plaintiffs of the second subpoena.

**E.      February 9, 2026: Defendant's Counsel Makes A Series Of False Statements And Omissions During The Meet And Confer Call**

On February 9, 2026, the Non-Parties had a lengthy meet-and-confer call with counsel for Defendant concerning the subpoenas. Attorney Joseph Elie-Meyers attended the call on behalf of the Defendant. Six things happened on that call that further support the conclusion that the subpoena was served for improper purposes.

*First*, during the call, Mr. Smith of Smith Krivoshey asked when fact discovery closed in the *Patel* case, which is obviously relevant to whether the subpoena is timely. Krivoshey Decl., ¶ 30. Mr. Elie-Meyers responded March 5, 2026. *Id.* When pressed about "whether there was anything else he wanted to say about that date," Mr. Elie-Meyers responded "no." *Id.* Later in the call, Mr. Smith asked Mr. Elie-Meyers why he had not disclosed that fact discovery is closed except for discovery concerning the newly added Plaintiffs when previously asked about that subject. *Id.* Mr. Elie-Meyers responded that he considered that fact to be "not relevant." *Id.* He gave no explanation for that position. *Id.*

*Second*, during the call, Mr. Smith asked Mr. Elie-Meyers whether Mr. Krivoshey's deposition was scheduled to occur before or after the deposition of Plaintiffs' counsel, Dovel & Luner. Krivoshey Decl., ¶ 31. In response to Mr. Elie-Meyers' relevance objection, Mr. Smith explained that it was relevant to whether the information Defendant was seeking from the Non-Parties could be obtained from Plaintiffs or their counsel. *Id.* Mr. Elie-Meyers responded that he needed to check his records and was quiet for approximately 60 seconds. *Id.* He then responded that Dovel & Luner's deposition was noticed *before* the February 18 date set in the second subpoena to Mr. Krivoshey or his law firm. *Id.* This answer was apparently based on the February 12 deposition date in the subpoena that had been served on Dovel & Luner. *See* Ex. A.

However, approximately a half-hour after the February 9, 2026, meet and confer call, the Non-Parties learned from Dovel & Luner that its February 12 deposition had already been rescheduled to a date *after* February 18, 2026, when the meet and confer call with Mr. Elie-Meyers occurred. Krivoshey Decl., ¶ 31. In other words, after serving the second deposition on the Non-Parties, Defendant re-arranged the sequence of depositions so that the Non-Parties' depositions would still occur before the deposition of the *Patel* Plaintiffs' counsel, and then made false statements to hide that fact.

*Third*, as of February 9, 2026, the Non-Parties had not yet seen the first subpoena. Based on a 2024 decision by District Judge Martinez-Olguin criticizing Defendant's counsel's for avoiding "effective notice" of discovery requests and then seeking sanctions, the Non-Parties were concerned that Defendant and its counsel may later claim that the Non-Parties had failed to appear for the first subpoena, despite the fact that it had never been served. *See Effinger v. Ancient Organics LLC*, 2024 WL 3643395 at *1 (N.D. Cal. Aug. 2, 2024) (explaining Defendant's counsel appeared to avoid "effective notice" before moving for sanctions on the opposing party). Accordingly, on the February 9, 2026, call, the Non-Parties asked Mr. Elie-Meyers (a) the date of the deposition in the first subpoena, (b) whether the deposition had occurred or was still scheduled, and (c) whether Defendant's position was that the Non-Parties had been served and failed to appear at the deposition in the first subpoena. Krivoshey Decl., ¶ 32. Mr. Elie-Meyers refused to answer those questions, and stated that if the Non-Parties wanted a copy of the original subpoena, they should ask Dovel & Luner

to provide a copy. *Id.*

*Fourth*, the document request included with the subpoena to the Non-Parties is identical to the document request in the subpoena served on the *Patel* Plaintiffs' current counsel, Dovel & Luner. *See* Exs. A and B. During the call, Mr. Krivoshey repeatedly asked Mr. Elie-Meyers what documents Defendant believed the Non-Parties have that Defendant does not already have or could not get from the *Patel* Plaintiffs. Mr. Elie-Meyers either could not or would not identify any document. Krivoshey Decl., ¶ 33. Mr. Elie-Meyers also stated that because Dovel & Luner's deposition was set to proceed before the Non-Parties' deposition, Defendant would be in a better position to know what information, if any, the Non-Parties may possess that Dovel & Luner does not possess. *Id.* at ¶ 34. As discussed above, however, that statement was false, because by that time, Dovel & Luner's deposition was scheduled to occur *after* the deposition of the Non-Parties here (*id.*), and the *Patel* Plaintiffs had already produced their documents to Defendant in December 2025. *See supra* Section A.4.

*Fifth*, during the call, Mr. Smith asked whether Defendant had provided the *Patel* Plaintiffs notice of the second subpoena, which purported to require the Non-Parties' testimony nine days later. Krivoshey Decl., ¶ 35. This question was prompted by *Patel* counsel's email objecting that no notice of the second subpoena had been provided. *See supra* Section D and Ex. C. Mr. Elie-Meyers stated that Defendant did not serve the *Patel* Plaintiffs with notice of the second subpoena, because in Defendant's view, the two subpoenas were in effect the same subpoena. Krivoshey Decl., ¶ 35. That later proved to be false: the first and second subpoenas had different dates for the depositions (February 10 as opposed to February 18), different locations for the depositions (Los Angeles as opposed to San Francisco), and different definitions of the party whose records were being sought in the document requests, identifying "Yeremey O. Krivoshey" as the "You" in the first subpoena Attachment A (the Document Requests), and "Smith Krivoshey" as the "You" in the second subpoena Attachment A (the Document Requests). *Compare* Exs. A and B.

*Sixth*, During the call, Mr. Smith asked if Defendant had already received any responsive agreements from Dovel & Luner, such that production of the agreements in response to Defendant's subpoena would be unnecessary. Krivoshey Decl., ¶ 36. Mr. Elie-Meyers refused to answer that

question. *Id.* As discussed above, Defendant in fact received all agreements between the firms in December 2025. *See supra* Section A.4.

### F. February 10, 2026: Defendant Refuses To Continue Or Vacate The Deposition Date While Effectively Admitting That Discovery Is Closed

On February 10, 2026, the Non-Parties contacted counsel for Defendant to notify them that the Non-Parties intended to move to shorten time on their motion to quash, and asked whether Defendant would either stipulate to the motion to shorten time, or alternatively, agree to vacate the February 18, 2026, compliance date until the Court rules on the motion to quash. Defendant responded as follows:

> We'd be happy to join a ***stipulated extension of the current discovery deadline*** to allow you the flexibility to file a normally noticed motion, and will seek Dovel & Luner's agreement to a stipulation to that effect. However, ***unless and until such a stipulation is entered, we cannot join a motion to shorten time, nor agree that the subpoena compliance date is vacated***. If opposing counsel agrees to such a stipulation, we are willing to consider rescheduling the deposition pending a ruling on the joint stipulated scheduling order.

Ex. D (emphasis added). There are two things that are relevant about this response. First, Defendant's attempt to negotiate an open-ended "extension of the current discovery deadline" shows that Defendant knew its subpoenas were untimely; otherwise, there would be no reason to make the Non-Parties' request contingent on extending the discovery deadline and re-opening third-party discovery. Second, Defendant refused to modify the February 18 deposition date, which had been unilaterally set by Defendant without any discussion with the Non-Parties. Defendant even refused to *shorten the time* on which the motion to quash could be heard, thereby insisting that the deposition proceed before a hearing on the pending motion to quash. Defendant would only agree to modify the deposition date if the *Patel* Plaintiffs agreed to extend the discovery deadline, which is something the Non-Parties had no control or say over. Krivoshey Decl., ¶ 43.

### G. February 11, 2025: Defendant's Counsel's Pretextual Statements Concerning The Reason For And Timing Of The Subpoena

In a February 11, 2025, email exchange, lead counsel for Defendant purported to justify the delay in serving the subpoenas by claiming they were prompted by testimony recently obtained by

the newly added plaintiffs during their depositions. Defendant's counsel wrote the email addressing *Patel* counsel. The email stated in relevant part as follows:

> With respect to timing, the issues giving rise to the need for these subpoenas on Dovel's co-counsel—none of the plaintiffs' signatures on counsel agreements you partially produced, the discovery of a third agreement (the retention agreement itself) that wasn't produced, the plaintiffs' lack of knowledge or supervision over the class counsel in this case, the troubling fee-sharing agreements at odds with the interests of the current class, and other things**--came to our attention only with the depositions of the three class representatives in January**. And I will remind you that you offered extremely late dates for these witnesses after we first noticed them in December to avoid exactly this kind of issue. The timing issue you raise is disingenuous and a problem of your creation, not ours.

> We will respond to the rest of your email separately but I'm raising this now because that point is so outrageously false that it deserves a response of its own.

Ex. E (emphasis added). Notably, the purported justification for the subpoenas pertains to the newly added named plaintiffs, none of whom were represented by the Non-Parties and who were added to the case *after* the Non-Parties' had withdrawn. Krivoshey Decl., ¶ 47. Further, none of the purported justifications is valid or applies to Non-Parties:

Justification 1: "none of the plaintiffs' signatures on counsel agreements you partially produced" – as discussed above, these agreements were produced in December 2025. The JPA agreements *bearing the signatures of Non-Parties* and Dovel & Luner were produced. Ex. O (Brenner Decl.), at ¶¶ 17, 18. *See also* Ex. P, at 12-29, 36-42 (*Patel* counsel explaining why the *Patel* plaintiffs' signatures were not produced). Whether or not they were signed by *Patel* plaintiffs, whom the Non-Parties have never represented and have never had any contact with, has nothing to do with Non-Parties. By the time Mr. Harper sent the above quoted email, he had already deposed the *Patel* plaintiffs and knew they had no dealings with Non-Parties. To the extent that the *Patel* plaintiffs' signatures exist, they would be in the possession of *Patel* counsel, not Non-Parties.

Justification 2: "the discovery of a third agreement (the retention agreement itself) that wasn't produced" – a retention agreement between *Patel* plaintiffs and *Patel* counsel has nothing to do with Non-Parties. *See also* Ex. P, at 12-29 (*Patel* counsel explaining why retention agreements were not produced). In his email, Mr. Harper cited no evidence suggesting that the *Patel* plaintiffs might have a retention agreement with Non-Parties.

Justification 3: "the plaintiffs' lack of knowledge or supervision over the class counsel in this case" – the *Patel* plaintiffs' supposed lack of knowledge or supervision over *Patel* counsel has nothing to do with Non-Parties, particularly when the Non-Parties never represented those plaintiffs.

Justification 4: "the troubling fee-sharing agreements at odds with the interests of the current class" – Mr. Harper admits in this statement that by this point he already had the JPA agreements between *Patel* counsel and Non-Parties. Any other information concerning the agreements or communications concerning the agreements (or the litigation more generally) could be obtained from *Patel* plaintiffs and their counsel. And, as discussed above, Mr. Harper knew that the July 16, 2024 agreement "specifically supersedes" the July 9, 2024 agreement, and that no "fee-sharing agreements" are in effect.

As detailed in Section H below, the following week, Defendant's counsel offered a completely different justification for the Non-Party subpoena, demonstrating that each of the excuses for the subpoenas given in the above-quoted email was false.

**H. February 18, 2025: Defendant Admits That The Prior Justification For The Subpoena Was False And That They Were Always Seeking Information Available From The *Patel* Plaintiffs**

At 1 a.m. Eastern time[4] on February 18, 2025, the subpoena's date of compliance, counsel for Defendant sent an email withdrawing the February 4, 2026, subpoena. Ex. F. The reason given for the withdrawal was as follows:

> Mr. Krivoshey provided sworn statements describing the history of his involvement in the *Patel* litigation and the nature of his relationship with current *Patel* counsel at Dovel & Luner LLP. *Id.*, paras. 2-10. Because that declaration set out, in sum and substance, the information GT's sought to obtain through the subpoena, and similar to what other subpoenaed parties have agreed in pre-motion conferrals to provide in lieu of deposition testimony or document productions, we are withdrawing GT's subpoena here.

*Id.* This statement directly contradicts the February 11, 2026, email from attorney Harper concerning the purported reasons for the subpoena. *See* Section G above. More importantly, however, it confirms that from the outset, Defendant always sought information that was available from the *Patel* Plaintiffs and their counsel. The subpoena was premised on an unsupported suspicion of the Non-Parties'

---

[4] Louisville, KY, where Mr. Krivoshey resides, is on Eastern time.

continued involvement in the *Patel* matter, despite the fact that by the time Defendant issued its subpoenas, it had already obtained a written agreement between the Non-Parties and Dovel & Luner and deposed the *Patel* plaintiffs showing that was not the case.

The justification is also inconsistent with what transpired on the February 9, 2026 meet and confer call concerning Non-Parties' motion to quash and for sanctions. As detailed in Section E above, Mr. Elie-Meyers refused to disclose the purpose of the deposition, did not request a declaration concerning the "nature" of Mr. Krivoshey's "relationship with current *Patel* counsel," and falsely represented that Defendant intended to get responsive information from the *Patel* counsel first.

### III. Argument

An award of sanctions is reviewed under a deferential abuse of discretion standard, and factual findings underlying the imposition of sanctions are reviewed for clear error. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012). If a court determines sanctions are warranted, it has broad discretion in fashioning an appropriate sanction to deter future misconduct. *See*, *e.g.*, *Eugster v. Washington State Bar Ass'n 1933*, 716 F. App'x 645, 646 (9th Cir. 2018). As set forth below, all applicable standards for issuing sanctions support the imposition of sanctions here— particularly given that Defendant served a subpoena when third-party fact discovery was closed, and sought information that Defendant either already had or could obtain from the opposing parties.

The Court can and should award fees. However, because a series of judicial decisions shows that monetary sanctions are no deterrent to Defendant's counsel, the Non-Parties also ask that, either in addition to or in lieu of monetary sanctions, the Court order Defendant's counsel to either present or attend CLE in person. As explained in Section D below, history shows that is the only form of sanction that has ever appeared to get counsel's attention.

### A. Sanctions Are Warranted Under Four Applicable Legal Standards

There are four separate and independent legal standards for sanctions that apply here. Broadly speaking, these standards generally permit sanctions where a party: (A) takes reckless legal positions that are contrary to the law (*i.e.*, by serving an invalid subpoena after the close of discovery; or by purporting to serve Mr. Krivoshey personally through the registered agent of his law firm in California); (B) acts in bad faith (*i.e.*, by refusing to vacate a subpoena compliance

---

date after admitting that discovery is closed; by lying during the meet and confer process; by not providing notice to *Patel* counsel with the second subpoena); and (C) by imposing undue burdens and engaging in harassment (*i.e.*, by seeking information from the Non-Parties that Defendant already obtained from the parties; by purporting require Mr. Krivoshey to travel on short notice for a unilaterally set deposition date). Satisfaction of just one of the following four standards would support sanctions here.

First, "recognizing the potential for abuse of … broad and liberal discovery, Rule 45 offers protections for nonparties who 'are powerless to control the scope of litigation and discovery.'" *Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *5 (C.D. Cal. Feb. 28, 2020) (quoting *US v. CBS*, 666 F.2d 364, 371 (9th Cir. 1982)). The party responsible for issuing a subpoena has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. *See* Fed. R. Civ. P. 45(d)(1). Courts "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* Under Ninth Circuit law, "[a] court may … impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

Second, "Rule 26(g)(1)(B) generally requires a party seeking discovery to act (1) consistently with the rule of existing law or with good reason to change the law; (2) not with improper purpose, such as harassing, delaying, or needlessly increasing the cost of litigation; and (3) reasonably, without imposing undue burden or expense when considering the needs of the case." *Doung*, 2020 WL 2041939 at *9. These requirements apply to subpoenas too. *See id.* at *9-10 (citing *Mount Hope Church*, 705 F.3d at 425 when issuing sanctions under Rule 26 for issuing an improper subpoena).

Third, 28 U.S.C. § 1927 provides that "[a]ny attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Section 1927 applies broadly to unnecessary filings and tactics once a lawsuit has begun." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 2199029, at *4 (C.D. Cal. Feb. 9, 2022) (*citing In re Keegan Mgmt.*

Co., 78 F.3d 431, 435 (9th Cir. 1996)). Sanctions under section 1927 are warranted by a finding of "subjective bad faith," which is "present when an attorney knowingly or recklessly raises a frivolous argument." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). In other words, "recklessness suffices for § 1927" sanctions. *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

Fourth, "[a] court may impose sanctions under its inherent powers when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924 (N.D. Cal. 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). "[T]he inherent power extends to a full range of litigation abuses," and fills the gap when other existing authorities fail to sufficiently support sanctions for abusive conduct. *Chambers*, 501 U.S. at 46.

### B. The Record Supports Sanctions Here

The factual record strongly supports the imposition of sanctions here, for four reasons. First, "a facially defective subpoena" is one of the "three possible grounds for sanctions." *Diversified Funding Grp., LLC v. Hendon*, 2018 WL 1870029, at *1 (C.D. Cal. Jan. 4, 2018), *aff'd*, 765 F. App'x 295 (9th Cir. 2019) (citing *Legal Voice*, 738 F.3d at 1185). This principle governs here because the subpoena was served outside the discovery period and in violation of the scheduling order in *Patel*. The fact that Defendant refused to vacate or even continue the February 18 deposition date, knowing that fact discovery was closed, is evidence of bad faith and recklessness, which also support sanctions under Rule 45(d)(1), Rule 26(g)(1)(B), § 1927, and the Court's inherent powers. *See*, *e.g.*, *Legal Voice.*, 738 F.3d at 1185 (addressing Rule 45); *Mount Hope Church*, 705 F.3d at 425 (addressing Rule 26); *Fink*, 239 F.3d at 993 (addressing § 1927); *Doung*, 2020 WL 2041939 at *9 (addressing Rules 26 and 45).

There also was a litany of additional defects with the second subpoena, including ambiguity about the subpoena recipient as a result of identifying Mr. Krivoshey and his law firm in the "To" line[5]; attempting without legal authority to serve Mr. Krivoshey personally through the law firm's

---

[5] *See Scott v. Keller*, 2010 WL 1267772 at *1-2 (E.D. Cal. March 31, 2010) (discovery requests unenforceable because "it was unclear to whom these requests were directed").

agent of service of process (assuming the subpoena was directed at him)[6]; failing to identify topics of examination as required under Fed. R. Civ. P. 30(b)(6) (assuming the subpoena was directed at the law firm); failure to tender required fees[7]; and failure to provide notice to the *Patel* parties.[8] *See gen.* Motion to Quash, Dkt. 1, at 7-21. In combination, these defects show a disregard for required procedures and are evidence of bad faith and recklessness.

Second, seeking documents or testimony available from the parties violates the duty under Rule 45 to take reasonable steps to avoid imposing undue burden on the person subject to the subpoena. *See* Fed. R. Civ. P. 45(d)(1). It also is improper for a party to serve a subpoena based on "speculation" that the subpoena recipient might have some, unidentified information unavailable from the opposing party. A party that does either of these two things is subject to sanctions. *See Duong*, 2020 WL 2041939, at *8-9. As explained above, here, (a) the document request with the second subpoena is identical to documents sought from the *Patel* plaintiffs' counsel, (b) Defendant refused to disclose that it already had all responsive agreements, and (c) Defendant's counsel was unable to identify a single document Defendant was seeking that it did not already have or could not get from the *Patel* Plaintiffs. Krivoshey Decl. ¶ 33 and Exs. A and B. Defendant's efforts to stage the depositions to ensure that Mr. Krivoshey would be deposed first also demonstrates an absence of any desire to determine whether the evidence Defendant hoped to obtain could be obtained by the *Patel* Plaintiffs or their counsel. Indeed, Defendant now concedes that it could, and did, obtain this information from Dovel & Luner. *See* Declaration of Joseph Elie-Meyers in Support of GT's Living Foods, LLC's Notice of Withdrawal of Subpoena, Dkt. 6-1 at ¶ 11 ("Dovel & Luner has agreed … to provide a sworn declaration describing the nature of its relationship with former counsel in the *Patel* litigation.").

Third, the Northern District of California Guidelines for Professional Conduct and Central District of California Civility and Professionalism Guidelines are in place for a reason, and violating

---

[6] *See, e.g., D'Amico v. N & D Restaurants, LLC*, 2025 WL 3158124, at *2-3 (C.D. Cal. Sept. 24, 2025).

[7] *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015).

[8] *Id*. at *4.

them can further support sanctions. *See*, *e.g.*, *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, 2025 WL 917110, at *17 (N.D. Cal. Mar. 26, 2025) (citing violations of N.D. Cal. Guidelines for Professional Conduct when ordering sanctions); *Claypole v. Cnty. of Monterey*, 2016 WL 145557, at *1 (N.D. Cal. Jan. 12, 2016) (same). Those guidelines require a basic-level of decency, like making "reasonable efforts" to schedule discovery by agreement, and not "arbitrarily or unreasonably" withholding consent to scheduling accommodations; or refraining from serving discovery in a manner calculated to impede the other party's ability to respond; or taking depositions or seeking documents only "where actually needed to learn facts or information;" or taking into account the "geographic limitations" of witnesses. N.D. Cal. Prof. Conduct Guidelines, §§ 3, 5, 9.

Here, the litany of problem behavior includes arbitrarily setting a deposition date on short notice, without prior notice to the witness or notice to the parties, and knowing it would require cross-country travel; only to obtain information that Defendant already had or could obtain from the parties; and then refusing to vacate or continue the noticed deposition date.

Fourth, courts can and should consider a party's or an attorney's prior history of misconduct when evaluating a motion for sanctions, because a pattern of problem behavior sheds light on whether an offending party or attorney acted in bad faith, and what sanctions, if any, are likely to lead to improved behavior. *See*, *e.g.*, *Koji IP*, 2025 WL 917110, at *6 (citing attorney's prior history of sanctions in other cases when granting motion for sanctions); *Anderson v. BNSF Railway Co.*, 681 F. Supp. 3d 899, 913 (S.D. Iowa 2023) (citing prior history of sanctions); *see also* American Bar Assoc. Model Rules for Lawyer Disciplinary Enforcement ("ABA Rules"), Rule 10(C)(3) and Commentary (permitting the consideration of any "aggravating or mitigating factors" and explaining that "aggravating" factors include prior misconduct).

There is a growing judicial record of defense counsel's improper litigation tactics. Four federal judges (that Non-Parties are aware of) have held that sanctions or fees were warranted for counsel's "gamesmanship," "bad faith" and objectively unreasonable filings, with two judges observing that counsel appeared to treat sanctions as an acceptable risk for improper litigation tactics. *See*, *e.g.*, *Hawkins v. Kroger Co.*, 2020 WL 6150040 at *2-4 (S.D. Cal. Oct. 20, 2020) (Miller, J.) (providing lengthy recitation of "gamesmanship" and "bad faith" by Defendant's counsel);

*California v. The Kroger Co.*, 2024 WL 4453267 at *3 (C.D. Cal. Oct. 9, 2024) (Staton, J.) (awarding fees for lack of "an objectively reasonable basis" for removal).[9] In addition, a fifth district judge—Judge Martinez-Olguin of this District—criticized Defendant's counsel for attempting to set up the opposing counsel for sanctions by serving paper copies of deposition notices "wedged into door handles like solicitations" or other means designed to be overlooked, instead of emailing them. *See Effinger*, 2024 WL 3643395 at *1. These decisions demonstrate that what transpired here was not the result of a momentary lapse of judgment in the heat of litigation, but instead, the result of reckless "unorthodox tactics." *See* Ex. K.

### C. Under *Duong*, The Last-Minute Withdrawal Of The Subpoena Does Not Moot The Motion For Sanctions

Defendant will argue that no sanctions are warranted because it withdrew the subpoena at 1 a.m. Eastern time, on the February 18 compliance date. That is wrong for two reasons. First, withdrawing an invalid subpoena does not excuse sanctionable conduct when the withdrawal is made after the recipient moves to quash, because by then, the damage is already done. *See Duong*, 2020 WL 2041939, at *5 ("The Court finds this thirteenth hour withdrawal to be 'too little too late,' and that such conduct is sanctionable"). As the court explained in *Duong*, even if withdrawing a subpoena renders a motion to quash moot (as Defendant contends here), that does not moot a related motion for sanctions. *See id.*; *see also Equal Emp. Opportunity Comm'n v. Dillon Co.,* 2010 WL 4134696, at *1 (D. Colo. Oct. 12, 2010) (awarding sanctions despite the defendant's withdrawal of the subpoena).

Second, Defendant's email withdrawing the subpoena contains a damaging admission that is further evidence of bad faith. The Non-Parties' motion to quash included a declaration describing their non-involvement in the *Patel* matter after withdrawing in 2024. Defendant suggested that the subpoena was no longer necessary due to this information. *See* Ex. F. The record shows, however, that by the time Defendant served its subpoena, it already had the testimony of the newly added plaintiffs' testimony, as well as agreements between the Non-Parties and Dovel & Luner, establishing

---

[9] *Hawkins v. Kroger Co.*, 2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) (Major, M.J.) (awarding monetary sanctions); *Hawkins v. Kroger Co.*, 2020 WL 1952832 (S.D. Cal. Apr. 23, 2020) (Goddard, M.J.) *overruled in part* 2020 WL 6150040.

---

the Non-Parties' lack of involvement. Indeed, the new plaintiffs were specifically asked about Mr. Krivoshey. So, the reason given for the withdrawal was a pretext to avoid sanctions after the Non-Parties put Defendant on notice that a motion for sanctions would be forthcoming during the February 9, 2026 meet and confer call and in the motion to quash that followed. *See* ECF No. 1, at 21:5-6.

### D. The Court Should Award Sanctions To Compensate For The Misconduct In This Case And To Deter Future Misconduct

The purpose of sanctions "may be to deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter." *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012). Here, the value of lost time Non-Parties incurred responding to the misconduct is "loose change" for a company like Defendant and a for a national law firm like Davis Wright Tremaine. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (noting that significant monetary sanctions were unlikely to provide a deterrent to the defendant and its national law firm). Therefore, much like what occurred in *Hawkins*, the Non-Parties ask the Court to impose a prospective sanction that is more likely to encourage improved behavior going forward, either in addition to or in lieu of monetary sanctions.

### 1. The Court Should Require Defendant's Counsel To Present CLE, Or At A Bare Minimum, Attend CLE In Person

"District courts wield significant discretion in determining appropriate sanctions." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 6290374, at *5 (N.D. Cal. Oct. 27, 2020) *aff'd sub nom. Nix v. Major League Baseball*, 2022 WL 4482455 (9th Cir. Sept. 27, 2022). This includes ordering offending attorneys to provide CLE or other presentations on subjects related to misconduct that led to sanctions. *See, e.g.*, *Salmon*, 2016 WL 3945362, at *1-4 (ordering monetary sanctions and requiring that plaintiff, a licensed legal intern that had "just opened a legal practice" lecture students at a local law school about the dangers of filing a lawsuit as a licensed legal intern or a new attorney); *Davila*, 2026 WL 323134, at *3 (ordering attorney to complete three hours of CLEs and "share his new knowledge regarding AI and legal practice with the Connecticut legal community in written form"); *cf. Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. June 22, 2023) (requiring counsel to provide sanctions order to their client and to each judge identified as the author of fake judicial opinions).

Alternatively, ordering counsel to attend CLE is also a common sanction, and in *Hawkins*, that sanction was initially imposed on Defendant's counsel here, but later overruled due to the lack of briefing on that issue. *See Hawkins*, 2020 WL 6150040 at *10. Just last year, Magistrate Judge Kang in this District ordered counsel to attend an in-person, California bar-approved CLE class that included an ethics component, where, like here, the offending attorney had a history of prior misconduct. *See Koji IP, LLC v. Renesas Electronics Am., Inc.*, 2025 WL 980796, at *19 (N.D. Cal. Mar. 31, 2025). Numerous other courts have imposed similar requirements when issuing sanctions. *See*, *e.g.*, *In re Vialet*, 460 Fed. Appx. 30, at *3 (2d Cir. 2012) (affirming sanction order requiring attendance at live CLE courses in addition to regular CLE courses required by all members of the New York bar); *Bergeron v. Northwest Publications Inc.*, 165 F.R.D 518, 523 (D. Mn. Apr. 24, 1996) (requiring counsel to complete a private course on the Federal Rules of Civil Procedure and the Local Rules to be taught by a professor at an accredited law school and that shall consist of at least 40 hours of individualized instruction); *Davis v. Los Angeles West Travelodge*, 2010 WL 623657, at *1 (C.D. Cal. Feb. 3, 2010) (ordering attorneys to attend twenty CLE hours in civility and professionalism and to complete thirty hours of volunteer work with a disability rights organization).

### 2. The Court Should Award Fees And Order Supplemental Briefing On The Appropriate Amount

When awarding compensatory fees as a sanction, the amount includes not only fees incurred in responding to the initial discovery abuse, but also, "fees and costs incurred in moving for sanctions." *In re Facebook*, 655 F. Supp. 3d at 936. "These fees and costs are a result of the misconduct—'were there no sanctionable conduct, there would have been no proceeding to impose sanctions, and no fees incurred in that proceeding.'" *Id*. (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017)). After a court estimates the amount of fees and costs incurred "because of" the misconduct, it then determines whether that amount is reasonable by looking to the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, (1986).

Here, Defendant and its counsel forced half of a small, four-attorney firm to put their other

matters to the side while they responded to a subpoena that should never have been served in the first place. Defendant was warned that this motion for sanctions would be forthcoming during the February 9, 2026, meet and confer call, and again in the motion to quash. *See* ECF No. 1, at 21:5-6. But just like what happened in *Hawkins*, Defendant and its counsel proceeded anyway.

Included with this motion are itemized time/billing records showing the amount of billable time consumed as of February 19, 2026, in responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions. The current number of hours spent is 78.9, and the lodestar is $78,327.50. However, this lodestar does not factor in time spent on subsequent tasks like filing and serving the motion, working on the reply, or attending the hearing for this motion. Accordingly, unless otherwise ordered by the Court, the Non-Parties will provide updated information with their reply brief and will request leave to file a further supplement after a hearing, if one occurs. *See*, *e.g.*, *Golikov v. Walmart*, 2025 WL 3760635 (C.D. Cal. Dec. 19, 2025) (deciding fees and costs in separate briefing after decision on sanctions); *Last v. M-I*, 2022 WL 3012206, at *3 (C.D. Cal. May 19, 2022) (allowing prevailing party to submit fees after resolution of motion to quash).

Finally, there is no legitimate dispute that the hourly rates are reasonable, because they are comparable to the rates that Defendant's own counsel charges. A comparison chart is provided below, and Defendant's counsel's rates were taken from a sworn declaration from Defendant's lead counsel dated November 17, 2025, which he described as "conservative" and below rates charged by attorneys working in comparable markets and areas of law (*see* Ex. I):

| Non-Party Attorneys (2026 Rates) | | Defendant's Counsel (2025 Rates) | |
|---|---|---|---|
| Attorney (years in practice) | Hourly Rate | Attorney (years in practice) | Hourly Rate |
| Joel Smith (19) | $1,125 | Jacob Harper (16) | $990 |
| Yeremey Krivoshey (13) | $950 | Joseph Elie-Meyers (6) | $800 |
| Brittany Scott (6) | $850 | | |

*See also* Krivoshey Decl. ¶¶ 58-59 (discussing their rates); Ex. U (firm resume).

## IV.    Conclusion

Defendant and its counsel violated a court order by serving a subpoena that never should have been served, seeking information Defendant already had. Then they doubled down by forcing the Non-Parties to move to quash. Then they tripled down by refusing to vacate or continue the February 18, 2026 compliance date, forcing the Non-Parties to move to shorten time. Defendant and its counsel tried to justify all this misconduct with a series of false and inconsistent statements. A meaningful correction from the Court is necessary to send a message that what transpired here is not acceptable.

Dated:  February 20, 2026                    Respectfully submitted,

                                    /s/    Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

# EXHIBIT 35

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
  *jharper@dwt.com*
Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
  *josepheliemeyers@dwt.com*
Peter K. Bae (SBN 329158)
  *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>Defendant. | Case. No. 3:26-mc-80036-TSH<br><br>(Case No. 2:19-cv-10920-FMO-DSR Pending in the Central District of California)<br><br>**OPPOSITION TO MOTION FOR SANCTIONS**<br><br>Date:　　　　April 2, 2026<br>Time:　　　　10:00 a.m.<br>Courtroom:　　E – 15th Floor<br><br>*[Motion to Consider Whether Another Party's Material Should Be Sealed; Declarations of Jacob M. Harper and Joseph Elie-Meyers; and [Proposed] Order Filed Concurrently]* |

OPPOSTION TO MOTION FOR SANCTIONS

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..........................................3

    A.    Mr. Krivoshey Negotiates Monetary Settlement and Injunctive Relief in *Retta*.......3

    B.    Mr. Krivoshey Files *Patel*, Then Withdraws as Counsel Due to *Retta* Conflicts......4

    C.    Mr. Krivoshey Files *Mukadam*, His *Third* Near-Identical Kombucha Case. ............4

    D.    *Patel* Plaintiffs Raise Issues About Mr. Krivoshey's Ongoing Involvement. ...........5

    E.    GT's Seeks Information About Mr. Krivoshey's Role From *Patel* Plaintiffs. ..........6

    F.    GT's Serves Subpoenas on Former *Patel* Counsel, Including Mr. Krivoshey. .........6

    G.    GT's Offers to Confer Regarding The Subpoena; Mr. Krivoshey Declines. ............7

    H.    GT's Also Attempts to Confer Regarding The Subpoena Over Email. ..............................................................................................8

    I.    Mr. Krivoshey Moves to Quash The Subpoena. .......................................................8

    J.    GT's Withdraws The Subpoena. ..............................................................................9

    K.    Mr. Krivoshey Files Motion for Sanctions. ............................................................9

III.   ARGUMENT .......................................................................................................9

    A.    Sanctions Are Not Warranted. ...............................................................................10

        1.    Narrowly Tailored Subpoenas Did Not Cause Undue Burden. ..................................................................................11

            a.    The Subpoena Is Narrowly Tailored to Seek Information Relevant to the New Plaintiffs in *Patel*. ..................... 11

            b.    GT's Sought Information from Plaintiffs and Plaintiffs' Counsel. .......................................................... 13

            c.    GT's Repeatedly Attempted to Confer with Mr. Krivoshey. ................................................................... 14

            d.    GT's Withdrew the Subpoena Before Compliance. ........................ 16

        2.    GT's Subpoena Was Consistent With Law. ...............................................18

            a.    The Subpoena Was Timely. ..........................................................18

            b.    The Subpoena Otherwise Substantially Complied with Rule 45..... 19

        3.    GT's Did Not Act in Bad Faith. ...............................................................20

i

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

a. Disagreements About Discovery Scope and Timing Are Not Misrepresentations. ................................ 21

b. GT's Counsel Acted Consistently With Professional Guidelines. .. 23

B. Mr. Krivoshey's Requested Sanctions Are Unsupported. ..................................... 24

IV. CONCLUSION ................................................................................................ 25

ii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

## TABLE OF AUTHORITIES

**CASES**

*AECOM Energy & Constr., Inc. v. Topolewski*,
2022 WL 595937 (C.D. Cal. Feb. 25, 2022) ...............................................................................24

*Aevoe Corp. v. AE Tech Co.*,
2013 WL 4714273 (D. Nev. Aug. 30, 2013) ...............................................................................20

*Alberts v. HCA Inc.*,
405 B.R. 498 (D.D.C. 2009) ........................................................................................................16

*Apple, Inc. v. Samsung Elecs. Co.*,
2013 WL 1942163 (N.D. Cal. May 9, 2013) ...............................................................................16

*Bonzani v. Shinseki*,
2014 WL 2521849 (E.D. Cal. June 14, 2014) .............................................................................23

*Briggs v. Yi*,
2024 WL 5456340 (D. Ala. May 1, 2024).............................................................................18, 19

*Cal. v. Kroger Co.*,
2024 WL 4453267 (C.D. Cal. Oct. 9, 2024)................................................................................25

*Claypole v. Cnty. of Monterey*,
2016 WL 145557 (N.D. Cal. July 12, 2016)................................................................................23

*Cryotech Int'l, Inc. v. Technifab Prods., Inc.*,
2009 WL 3021185 (N.D. Cal. Sept. 17, 2009) .................................................................17, 18, 20

*D'Amico v. N& D Rests., LLC*,
2025 WL 3158124 (C.D. Cal. Sept. 24, 2025) ............................................................................20

*Dang v. Sutter's Place, Inc.*,
2012 WL 2906109 (N.D. Cal. July 13, 2012)..............................................................................16

*Davila v. Roblen, LLC*,
2026 WL 323134 (D. Conn. Feb. 6, 2026) ..................................................................................24

*Dennis v. Good Deal Charlie, Inc.*,
2022 WL 62919 (S.D. Cal. Jan. 6, 2022).....................................................................................16

*Dodge v. FirstService Residential Ariz. LLC*,
2025 WL 3653164 (D. Ariz. Dec. 17, 2025) ...............................................................................24

*Duong v. Groundhog Enters., Inc.*,
2020 WL 2041939 (C.D. Cal. Feb. 28, 2020) .......................................................................17, 18

iii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Effinger v. Ancient Organics*,
   2025 WL 1489710 (N.D. Cal. May 23, 2025) ..........................................................................25

*Equal Emp. Opportunity Comm'n v. Dillon Co.*,
   2010 WL 4134696 (D. Colo. Oct. 12, 2010) ...........................................................................18

*Evox Prods. LLC v. Yahoo, Inc.*,
   2023 WL 6192716 (C.D. Cal. Aug. 8, 2023).............................................................................15

*Ferguson v. Smith*,
   2023 WL 8868815 (D. Or. Dec. 22, 2023) ...............................................................................15

*Fujikura Ltd v. Finisar Corp.*,
   2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) .......................................................................18, 20

*Gharavi v. Google LLC*,
   2026 WL 82256 (N.D. Cal. Jan. 12, 2026) ..........................................................................19, 25

*Golikov v. Walmart Inc.*,
   2025 WL 3190642 (C.D. Cal. Nov. 6, 2025)..............................................................................2

*Green v. Baca*,
   2005 WL 283361 (C.D. Cal. Jan. 31, 2005) .............................................................................20

*Hawkins v. Kroger Co.*,
   2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ...........................................................................25

*Hurd v. Boston Sci. Corp.*,
   2023 WL 3564783 (C.D. Cal. May 5, 2023) .............................................................................14

*In re Subpoena to VaughnPerling*,
   2019 WL 8012372 (C.D. Cal. Dec. 2, 2019) ...........................................................................19

*Issagholi v. McLaren Auto., Inc.*,
   2021 WL 4352297 (C.D. Cal. July 9, 2021)..............................................................................16

*Jones v. PGA TOUR, Inc.*,
   668 F. Supp. 3d 907 (N.D. Cal. 2023)......................................................................................20

*Katz v. Steyn*,
   2019 WL 13211069 (D. Nev. June 27, 2019)...........................................................................21

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
   2025 WL 917110 (N.D. Cal. Mar. 26, 2025).............................................................................23

*Langford et al. v. Walmart Inc.*,
   W.D. Ark. No. 5:25-cv-05228-TLB, ECF No. 12 ......................................................................1

*Legal Voice v. Stormans Inc.*,
   738 F.3d 1178 (9th Cir. 2013) ...........................................................................................passim

iv

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023) ......................................................................................25

*Mount Hope Church v. Bash Back!*,
705 F.3d 418 (9th Cir. 2012) ..............................................................................................passim

*Mukadam et al. v. GT's Living Foods*,
C.D. Cal. No. 2:23-cv-10514-ODW-SK, ECF No. 20 ...................................................1, 5, 25

*Mukadam v. GT's Living Foods LLC*,
No. 2:23-cv-10514 (C.D. Cal. Dec. 15, 2023), ECF No. 1.......................................................5

*OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*,
2023 WL 8473762 (S.D. Cal. Dec. 7, 2023) ..........................................................................11

*Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*,
2019 WL 4267764 (C.D. Cal. July 31, 2019)....................................................................19, 20

*Patel, et al. v. GT's Living Foods, LLC*,
C.D. Cal. No. 2:19-cv-10920-FMO-DSRx....................................................................passim

*Primus Auto Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) .................................................................................................21

*Retta v. Millennium Prods., Inc.*,
2017 WL 5479637 (C.D. Cal. Aug. 22, 2017)...........................................................................4

*Retta v. Millennium Prods., Inc.*,
C.D. Cal. No. 2:15-cv-01801-PSG-AJW...........................................................................passim

*Richmond v. Reefer Sys., Inc.*,
2020 WL 9074805 (C.D. Cal. Dec. 21, 2020) ........................................................................24

*Salmon v. CRST Expedited, Inc.*,
2016 WL 3945362 (N.D. Okla. July 19, 2016) .......................................................................25

*Santacruz v. Southbank Dairies, LLC*,
2016 WL 6997086 (W.D. Wash. Nov. 30, 2016) ....................................................................21

*Sci. Apps. & Rsch. Assoc.'s v. Zipline Int'l, Inc.*, 2024 WL 5011603 (N.D. Cal. Dec. 6,
2024) .............................................................................................................13, 15, 24, 25

*Scott v. Keller*,
2010 WL 1267772 (E.D. Cal. Mar. 31, 2010) ........................................................................19

*Snow Covered Cap., LLC v. Fonfa*,
2024 WL 3398343 (D. Nev. July 12, 2024) ............................................................................19

*Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*,
2012 WL 1191214 (D.N.J. Apr. 10, 2012) .............................................................................18

v

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

*Tennison v. City & Cnty. of San Francisco,*
    2005 WL 8160036 (N.D. Cal. Sept. 19, 2005) .........................................................................13

*The Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc.,*
    2015 WL 6167968 (N.D Cal. Oct. 21, 2015) ...........................................................................23

*Tiberi v. CIGNA Ins. Co.,*
    40 F.3d 110 (5th Cir. 1994) ....................................................................................................15

*United States v. Rico,*
    619 F. App'x 595 (9th Cir. 2015) ...............................................................................10, 21, 23

*Varlitskiy v. Cnty. of Riverside,*
    2022 WL 18284986 (C.D. Cal. Dec. 14, 2022) ......................................................................18

*Vondersaar v. Starbucks Corp.,*
    2013 WL 191546 (N.D. Cal. May 8, 2013) .............................................................................20

*Vysata v. Menowitz,*
    2019 WL 1578374 (C.D. Cal. Feb. 1, 2019) ...........................................................................23

*Wakefield v. Walt Disney Co.,*
    2007 WL 9724382 (C.D. Cal. May 10, 2007) ........................................................................20

*Zurich Am. Ins. Co. v. Sealink Ins. Serv. Corp.,*
    2018 WL 10561907 (C.D. Cal. Mar. 16, 2018) ......................................................................13

**RULES**

Fed. R. Civ. P.
    5(b)........................................................................................................................................20
    11 .......................................................................................................................................1, 25
    26(b)(1).................................................................................................................................11
    26(g).....................................................................................................................................10
    41(d).....................................................................................................................................14
    45 ..................................................................................................................................passim
    45(b)(1).................................................................................................................................20
    45(d)(1)...........................................................................................................................10, 25
    45(d)(1).................................................................................................................................10

LR 83-1.3 ....................................................................................................................................4

vi

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION FOR SANCTIONS

## I.    INTRODUCTION

Following his forced withdrawal from this case[1], his forced abandonment of a nearly identical copycat case[2], and yet another forced withdrawal from another case after he was served with a Rule 11 motion[3]—all of which was led by undersigned counsel—Yeremy O. Krivoshey has elected to use a baseless Motion for Sanctions (ECF No. 9, Motion) as a vehicle to air preexisting grievances with counsel and punish GT's Living Foods, LLC (GT's) for issuing a subpoena necessitated by Mr. Krivoshey's own conduct and the record in *Patel, et al. v. GT's Living Foods, LLC*, C.D. Cal. No. 2:19-cv-10920-FMO-DSRx. While the subpoena itself was lawfully issued, Mr. Krivoshey's Motion relies on untenable contortions of fact and law and is entirely meritless.

In *Patel*, Judge Fernando M. Olguin denied class certification primarily on the ground that the putative class counsel—Mr. Krivoshey—had improperly taken positions adverse to a *prior* class settlement asserting nearly identical claims that he had negotiated, *Retta v. Millennium Prods., Inc.*, C.D. Cal. No. 2:15-cv-01801-PSG-AJW. *See Patel*, ECF No. 129; Elie-Meyers Decl., Ex. 8 (Class Cert. Order). Judge Olguin found that Mr. Krivoshey's (and other counsel's) inconsistent representations "not only appear to undermine the instant action but also call into question the ability of [counsel] to 'fairly and adequately represent the interests of the class." *Id.* at 6. As a result, Judge Olguin found Mr. Krivoshey likely inadequate and denied class certification. Mr. Krivoshey and his prior firm, Bursor & Fisher, were forced to withdraw from *Patel*.

On October 23, 2025, Judge Olguin reopened discovery regarding the newly added plaintiffs so that they could bring a new class certification motion addressing the prior issues, including adequacy. During this discovery period, plaintiffs (now represented by Dovel & Luner) produced two internal agreements among current- and withdrawn counsel showing fee splitting arrangements. These agreements raised plausible concern that former counsel, including Mr. Krivoshey, continued to direct and stand to profit from the litigation——thereby perpetuating the adequacy issues raised by Judge Olguin. All remaining plaintiffs were deposed regarding the

---

[1] *Patel*, ECF Nos. 136, 137, 152, 155 (Krivoshey's requests to withdraw); Class Cert. Order.
[2] *Mukadam et al. v. GT's Living Foods*, C.D. Cal. No. 2:23-cv-10514-ODW-SK, ECF No. 20.
[3] *Langford et al. v. Walmart Inc.*, W.D. Ark. No. 5:25-cv-05228-TLB, ECF No. 12.

1

OPPOSITION TO MOTION FOR SANCTIONS

ambiguous fee split arrangement, and all testified that they did not know the arrangements with Mr. Krivoshey. With the relationships between counsel ambiguous and the lead plaintiffs unable to explain them, GT's took the logical and necessary next step of issuing subpoenas to Mr. Krivoshey and the other firms to seek information about their ongoing involvement in *Patel*, if any.

After giving notice to current *Patel* counsel, GT's diligently attempted to serve Mr. Krivoshey with the subpoena. GT's first attempted service at the address of Mr. Krivoshey's law firm, Smith Krivoshey PC. When that proved to be nothing more than a mailbox center, GT's attempted to serve Mr. Krivoshey three times at his home in Kentucky. When that also failed, GT's was able to serve a substantially identical subpoena (with a later compliance date to account for the passage of time) on Mr. Krivoshey through his firm's registered agent. Mr. Krivoshey—after refusing to meaningfully confer and stating his intention to seek sanctions from the outset—then submitted a sworn declaration with his motion to quash that supplied the precise information GT's sought. Having obtained the needed information, GT's promptly withdrew the subpoena.

Ignoring his own obstructionist behavior, Mr. Krivoshey now asks the Court to impose extraordinary sanctions based not on any actual burden, prejudice, or misconduct, but on his disagreement with GT's decision to test his unsworn representations through narrowly tailored discovery. But the Ninth Circuit has repeatedly warned against chilling vigorous advocacy through sanctions in good-faith discovery disputes such as this one. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Further, GT's was not required to rely on current and former counsel's unsworn representations about ongoing involvement in this lawsuit, and was entitled to seek sworn testimony or declarations to confirm that former counsel is no longer involved in *Patel*.[4]

Mr. Krivoshey's request for sanctions should be denied for several independent reasons.

*First*, there was no undue burden. GT's Subpoena was narrowly tailored, limited to documents and testimony relevant to potential conflicts of interest. Mr. Krivoshey refused to

---

[4] That is particularly the case here, where undersigned counsel recently obtained sanctions in the amount of $623,738 against the *Patel* plaintiffs' current counsel, Dovel & Luner, based on pleading a "false fact" constituting reckless failure to investigate. *Golikov v. Walmart Inc.*, 2025 WL 3190642, at *2 (C.D. Cal. Nov. 6, 2025).

2

OPPOSITION TO MOTION FOR SANCTIONS

discuss narrowing and threatened sanctions from the outset. Once he provided a sworn declaration addressing the issues raised, GT's withdrew the subpoena (long before any potential compliance date, due to Court's order vacating the subpoena until the March 19 hearing). Because Rule 45 focuses on the burden of compliance—and none occurred—sanctions are unwarranted.

*Second*, GT's Subpoena was issued in accordance with the law. The information sought by the subpoena fell squarely within reopened discovery; GT's properly served by first attempting personal service and then serving Mr. Krivoshey through his firm's registered agent; GT's provided advance notice to new plaintiffs' counsel; and GT's scheduled the deposition with sufficient time to respond. Minor, non-prejudicial defects do not support sanctions, and the subpoena substantially complied with Rule 45.

*Third*, Mr. Krivoshey's accusations of misrepresentation are actually just ordinary discovery disagreements. Whether GT's Subpoena fell within reopened discovery, or whether two materially identical subpoenas were "the same" are legal disagreements, not false statements. They do not approach the showing of bad faith required for sanctions.

*Last*, the requested sanctions are improper as a matter of law and equity. Rule 45 does not authorize fee-shifting for merely litigating a motion to quash, and Mr. Krivoshey incurred no compliance costs from a withdrawn subpoena.

For these reasons, and as set forth below, the Court should deny the Motion in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

GT's provides relevant context regarding Mr. Krivoshey's involvement with the *Patel* litigation, which necessitated the Subpoena.

### A.    Mr. Krivoshey Negotiates Monetary Settlement and Injunctive Relief in *Retta*.

Mr. Krivoshey, formerly of the law firm Bursor & Fisher, P.A. (Bursor), was prior counsel for plaintiffs Sharpe, Weiler, Leder, and DiGennaro, in *Patel*, an ongoing putative class action regarding GT's alcohol and sugar content labeling on GT's Synergy and Enlightened kombucha products (the Kombucha). As detailed below, Mr. Krivoshey withdrew as counsel in *Patel* after Judge Olguin denied class certification based, in part, on his role in *Retta*. *Patel*, ECF No. 129;

3

OPPOSITION TO MOTION FOR SANCTIONS

Elie-Meyers Decl., Ex. 8. As Judge Olguin explained: "The Retta Action involved the same allegations [as *Patel*] regarding the alcohol and sugar levels in defendant's kombucha, asserted the same claims for relief under California and New York law, and was filed by the same attorneys as in this action." Class Cert. Order 2. Mr. Krivoshey ultimately settled *Retta* in 2017 for $8.25 million and injunctive relief requiring GT's to implement an alcohol warning label as well as alcohol and sugar content testing regime, both of which remain in place for all disputed Kombucha products in the instant action. *Id.* at 2, 5 n.8; *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017).

**B.    Mr. Krivoshey Files *Patel*, Then Withdraws as Counsel Due to *Retta* Conflicts.**

On December 27, 2019, Mr. Krivoshey filed *Patel* on behalf of plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro (the original plaintiffs), "challeng[ing] the alcohol warning label they negotiated in Retta." Class Cert. Order 3. On June 21, 2024, Judge Olguin denied plaintiffs' motion for class certification, which was prepared and signed by Mr. Krivoshey. *See id.*; *Patel*, ECF No. 99-1 at 54. As Judge Olguin explained, "plaintiffs made several representations to the *Retta* Court that not only appear to undermine the instant action but also call into question the ability of Bursor to 'fairly and adequately represent the interests of the class,' … i.e., to vigorously and effectively litigate the present action." Class Cert. Order 2. Judge Olguin specifically noted that Bursor failed to file a "Notice of Related Case pursuant to Local Rule 83-1.3 as to the Retta Action at the time it filed this action." *Id.* at 6.

After more than five years of litigation, Mr. Krivoshey, as well as co-counsel from Bursor and Adhoot & Wolfson, were forced to withdraw as counsel of record for the *Patel* plaintiffs following the denial of class certification, and were replaced by counsel from Dovel & Luner LLP (Dovel). *Patel*, ECF Nos. 134, 136–137, 139–144, 152–153, 156–160.

**C.    Mr. Krivoshey Files *Mukadam*, His *Third* Near-Identical Kombucha Case.**

Prior to withdrawing from *Patel*, Mr. Krivoshey filed a third complaint against GT on December 15, 2023, alleging that the Kombucha lacks "appropriate warning[s] on the labels" to warn customers that the products contain some levels of alcohol. *Compare Mukadam v. GT's*

4

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Living Foods LLC,* No. 2:23-cv-10514 (C.D. Cal. Dec. 15, 2023), ECF No. 1 (*Mukadam* Compl.) ¶¶ 88, 123, 130, 141, 152, 163, 183 *with Patel*, ECF No. 1 (*Patel* Compl.) ¶¶ 54, 59, 79, 92, 104, 112. Although *Mukadam* is largely identical to *Retta*, Mr. Krivoshey failed to file a notice of related cases in *Mukadam* to *Retta*. Mr. Krivoshey voluntarily dismissed *Mukadam* on April 23, 2024. *Mukadam*, ECF No. 20.

**D.     *Patel* Plaintiffs Raise Issues About Mr. Krivoshey's Ongoing Involvement.**

On December 17, 2024, the *Patel* complaint was amended to add new plaintiffs Amit Patel, Lauren Schmidt, and Christopher Nunez (together, the new plaintiffs), while retaining the original plaintiffs. *Patel*, ECF No. 168. GT's moved to dismiss and for judgment on the pleadings in part because the doctrine of judicial estoppel bars plaintiffs' claims, which are directly contradictory to the position adopted by them and their counsel in the *Retta* settlement. *Patel*, ECF No. 171. On September 30, 2025, the *Patel* Court dismissed the original plaintiffs with prejudice, agreeing that they, as *Retta* class members, were jurisdictionally barred from collaterally challenging the terms of the *Retta* settlement. *Patel*, ECF No. 178 at 4–5.

On October 23, 2025, the *Patel* Court ordered that "[a]ny remaining discovery (related solely to the newly added named plaintiffs) shall be completed by December 29, 2025." *Patel*, ECF No. 180. The parties later continued that discovery deadline by joint stipulation to March 5, 2026, to allow time for follow on discovery and to reschedule all plaintiffs' depositions to dates after the end-of-year holidays. *Id.*, ECF No. 185.

On December 23, 2025, the new plaintiffs produced—for the first time—two agreements between current and former counsel (including Mr. Krivoshey): (1) the July 9, 2024 Joint Prosecution Agreement (JPA), and (2) July 16, 2024 Agreement Concerning *Sharpe* Litigation.

These two agreements provided ample cause for concern that Mr. Krivoshey and other withdrawn counsel continued to play a role or had an ongoing financial interest in the *Patel* action. As Mr. Krivoshey admits, despite the *Patel* Court raising concerns over Mr. Krivoshey's continued involvement in the June 2024 Class Certification Order, "[t]he July 9, 2024, agreement anticipated that Dovel would be sole lead counsel in *Patel* but [Mr. Krivoshey and his law firm Smith

5

OPPOSITION TO MOTION FOR SANCTIONS

Krivoshey] would stay on as counsel of record and work, if at all, at Dover & Luner's direction" and "included a proposed fee split in the case of a recovery of fees." ECF No. 9-1, Declaration of Yeremey Krivoshey (Krivoshey Decl.) ¶ 7. Further, the July 16, 2024 agreement provided that Mr. Krivoshey and Bursor would withdraw from *Patel* subject to the Court's approval, and only after the Class Representatives consent to this agreement. Elie-Meyers Decl., Ex. 1 at 6. Not only is the term Class Representatives undefined, but the client approval signature page on the produced agreement is also blank. *Id.* The agreement also preserves former counsel's right to seek costs or fees by proposing any basis for recovery in the event of a class settlement or judgment. *Id*.

**E.      GT's Seeks Information About Mr. Krivoshey's Role From *Patel* Plaintiffs.**

GT's first attempted to probe the new plaintiffs' knowledge of former counsel's potential involvement with *Patel*. During his January 8, 2026 deposition, Mr. Nunez testified he had seen one of the agreements around "late 2024" and believed he signed it, but could not state whether the fee allocations are still in place, or whether he has "any oversight" over class counsel or other lawyers named in the agreements. Elie-Meyers Decl., Ex. 3. In her January 14 deposition, Ms. Schmidt said she remembered seeing the agreements too, but could not recall if she had signed either. Elie-Meyers Decl., Ex. 4. In his January 16 deposition, Mr. Patel said he saw the two agreements "in the summer of 2024," but did not "particularly recall" whether he had signed the JPA and did not "have knowledge of th[e] specific number of retention agreements he had signed related to this matter." Elie-Meyers Decl., Ex. 2.

**F.      GT's Serves Subpoenas on Former *Patel* Counsel, Including Mr. Krivoshey.**

After exhausting discovery avenues with the *Patel* plaintiffs regarding their knowledge of former counsel's involvement, GT's sought answers from counsel themselves.

On January 29, 2026, GT's served its Notice of Subpoena upon the new plaintiffs, which indicated that GT's would schedule four depositions of former and current *Patel* counsel. ECF No. 9-2 (Notice). The Notice attached a subpoena to Mr. Krivoshey noticing his deposition for February 10. *Id.* at Ex. 2. Between January 29 and February 4, GT's made four attempts to

6

OPPOSITION TO MOTION FOR SANCTIONS

personally serve the subpoena upon Mr. Krivoshey at his law firm address and residence in Kentucky. Elie-Meyers Decl. ¶ 5–8.

Only after those attempts failed—and in light of the approaching March 5 discovery cut-off—did GT's prepare another materially identical Subpoena for Mr. Krivoshey for service upon the registered agent of Smith Krivoshey, PC, which GT's understands to be owned and operated by Mr. Krivoshey. Elie-Meyers Decl. ¶ 9 & ECF No. 9-3 (Subpoena). GT's Subpoena noticed Mr. Krivoshey's deposition further out—February 18—to provide additional time for compliance. Elie-Meyers Decl. ¶ 9. This Subpoena was identical to the earlier subpoena, but the Subpoena's Attachment A defined "You" as Smith Krivoshey PC instead of Mr. Krivoshey due to an administrative error. *Id.*; *compare* ECF No. 9-2 at Ex. 2 *with* ECF No. 9-3. On February 4, GT's Subpoena was served on Smith Krivoshey's registered agent. Elie-Meyers Decl., Ex. 6 (POS).

GT's Subpoena sought narrowly tailored documents to clarify Mr. Krivoshey's relationship to the new plaintiffs' counsel, including whether he had any ongoing involvement in *Patel*. Specifically, the Subpoena requested two categories of documents: (1) communications between Mr. Krivoshey and Dovel regarding *Patel*; and (2) documents and communications relating to any agreements governing representation of putative class or the new plaintiffs in *Patel*. ECF No. 9-3 at Attachment A.

**G.      GT's Offers to Confer Regarding The Subpoena; Mr. Krivoshey Declines.**

On February 9, 2026, counsel for the parties met and conferred regarding the Subpoena. Elie-Meyers Decl. ¶ 11. Present on the call were Mr. Krivoshey, Joel Smith, and Joseph Elie-Meyers (for GT's). *Id.* During the conferral, Mr. Elie-Meyers repeatedly offered to discuss limiting the scope of the Subpoena, or to extend the time for compliance to allow additional time to negotiate the scope of the Subpoena. *Id.* ¶ 12. Mr. Krivoshey and Mr. Smith declined to discuss limiting the scope of the Subpoena or modifying the date for compliance in furtherance of such negotiations. *Id.* Instead, they threatened to move for sanctions from the start. *Id.* ¶¶ 11–12.

While Mr. Krivoshey rebuffed GT's conferral efforts, Mr. Elie-Meyers met and conferred with Bursor on February 9 and 17, and Dovel on February 4 and 13. Elie-Meyers Decl. ¶ 17. As a

7

OPPOSITION TO MOTION FOR SANCTIONS

result of those discussions, GT's agreed to continue those firms' compliance dates to allow further negotiations of the subpoenas' scope, and ultimately, avoided the need for either office to be deposed or produce documents. *Id*. ¶ 18.

### H. GT's Also Attempts to Confer Regarding The Subpoena Over Email.

On February 10, 2026, Mr. Elie-Meyers emailed Mr. Smith that GT's was "willing to consider rescheduling the deposition," subject to Dovel's agreement to a stipulation extending the current fast-approaching discovery deadline. Elie-Meyers Decl. ¶ 15; ECF No. 9-5. On February 11, Mr. Harper confirmed that GT's Subpoena sought to clarify whether former counsel (including Mr. Krivoshey) continued to play a role in *Patel*—issues which arose from the joint prosecution and fee-shifting agreements that the new plaintiffs partially produced, their lack of knowledge in depositions regarding their relationships with former and current counsel, and their fee-sharing agreements at odds with the interests of the current class, which only came to light following the new plaintiffs' depositions in January 2026. ECF No. 9-6.

### I. Mr. Krivoshey Moves to Quash The Subpoena.

On February 11, 2026, Mr. Krivoshey filed a Motion to Quash the Subpoena and to Shorten Time. ECF Nos. 1, 2. In support of the motion, Mr. Krivoshey submitted a sworn declaration for the first time describing the nature of his involvement in *Patel* after his withdrawal as counsel. ECF No. 1-1. Mr. Krivoshey avers that after formally withdrawing from *Patel* in August 2024, neither he nor anyone else at Smith Krivoshey "has been involved in managing or consulting on the litigation in [*Patel*], either publicly or behind the scene." *Id*. ¶ 8. He claims he has "had no role in the litigation aside from transferring the case files to Dovel & Luner and assisting with the transition of new counsel," and that "[t]here are no secret 'side deals' between [him] or [his] law firm and Dovel & Luner regarding this matter." *Id.* ¶¶ 9, 10. He maintains that the joint prosecution agreements with Dovel provide for fees "only in an amount to be determined by the Court," without reference to any other agreement concerning fees. *Id.* ¶ 5.

On February 12, the Court denied Mr. Krivoshey's Motion to Shorten Time, set a hearing on his Motion to Quash for March 19, and ordered that "Mr. Krivoshey's deposition shall not

8

OPPOSITION TO MOTION FOR SANCTIONS

proceed pending the Court's resolution of the motion to quash." ECF No. 5.

### J. GT's Withdraws The Subpoena.

On February 17, 2026, Mr. Elie-Meyers notified Mr. Krivoshey that GT's would withdraw its Subpoena given that his declaration set out, in sum and substance, the information GT's sought to obtain through the Subpoena. Elie-Meyers Decl. ¶ 16 & Ex. 7; ECF No. 6. Mr. Elie-Meyers also advised Mr. Krivoshey that other parties to the litigation agreed in pre-motion conferrals to provide substantially similar declarations in lieu of depositions or documents. *Id.*

### K. Mr. Krivoshey Files Motion for Sanctions.

On February 20, 2026, Mr. Krivoshey filed his Motion seeking sanctions based on GT's decision to pursue discovery relating to his involvement in *Patel*. ECF No. 9. The Motion maintains that GT's basis for the Subpoena—joint-prosecution and fee-related agreements produced by new plaintiffs—was "pretextual," pointing to GT's later withdrawal after subpoenaed counsel provided *sworn* declarations denying continued involvement. The Motion further asserts the Subpoena was untimely, despite being issued during reopened discovery about newly admitted plaintiffs. It alleges bad faith based on disputed accounts of meet-and-confer discussions, deposition sequencing among non-parties, and GT's efforts to effect service or provide notice. Ultimately, Mr. Krivoshey's Motion reframes a good-faith discovery dispute as accusations of "lying" and "harassment," while conceding that no deposition occurred, no documents were produced, and the Subpoena was withdrawn before any compliance.

## III. ARGUMENT

Mr. Krivoshey's Motion should be denied in its entirety. As explained below, sanctions are unwarranted because Mr. Krivoshey did not suffer any undue burden, GT's issued its Subpoena in accordance with the law, and GT's did not act in bad faith. The requested sanctions themselves are inappropriate because Rule 45 does not authorize sanctions for costs to contest a subpoena, and an award would not be just under the circumstances in any event.

9

OPPOSITION TO MOTION FOR SANCTIONS

## A. Sanctions Are Not Warranted.

Rule 45(d)(1) provides "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1) encapsulates the discovery principles stated in Rule 26(g), which requires parties seeking discovery to act (1) reasonably without imposing undue burden or expense considering the needs of the case; (2) consistently with the law; and (3) without bad faith. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012); *Legal Voice*, 738 F.3d at 1185 (absent "bad faith," "improper purpose" or conduct "inconsistent with existing law," sanctions are inappropriate).

"The scope of permissible sanctions under Rule 45[(d)(1)] should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends." *Mount Hope*, 705 F.3d at 429–30. "Not every overbroad subpoena is an occasion for sanctions; [the Ninth Circuit] ha[s stated] that in general, sanctions should be reserved for the rare and exceptional case." *United States v. Rico*, 619 F. App'x 595, 601 (9th Cir. 2015).

Similarly, the Ninth Circuit has stated that sanctions for issuance of a subpoena under Section 1927 and the Court's inherent authority requires "bad faith," e.g., "recklessness plus something more," like "intent to harass, or frivolousness":

> [A] court's inherent power must be utilized with caution and restraint, although it can be used when counsel's actions are in 'bad faith' or are 'tantamount to bad faith.' Imposition of sanctions under § 1927 requires similar, if slightly different, determinations. The statute indicates that actions that multiply the proceedings must be both unreasonable and vexatious, and we have also stated that recklessness alone will not suffice. What is required is recklessness plus something more—for example knowledge, intent to harass, or frivolousness.

*Id*. (reversing sanctions based on overbroad subpoena issued to counsel).

Sanctions are not warranted because (1) Mr. Krivoshey did not suffer any burden, let alone any undue burden; (2) the Subpoena was issued in accordance with the law, including Rule 45; and (3) GT's did not act in bad faith in issuing the Subpoena.

10

OPPOSITION TO MOTION FOR SANCTIONS

**1. Narrowly Tailored Subpoenas Did Not Cause Undue Burden.**

The Subpoena did not impose an undue burden upon Mr. Krivoshey. "Rule 45 places more emphasis on the recipient's burden than on the issuer's motives." *Mount Hope*, 70 F.3d at 428–29. Sanctions are not appropriate where a subpoena is "narrowly tailored and d[oes] not at all pose an undue burden on" the nonparty. *Id.* at 429. Such is the case here. GT's Subpoena was narrowly tailored to seek information about the new plaintiffs; GT's tried to (but did not) obtain the information sought from the new plaintiffs; Mr. Krivoshey stonewalled GT's attempts to confer on the Subpoena; and GT's ultimately withdrew the Subpoena.

**a. The Subpoena Is Narrowly Tailored to Seek Information Relevant to the New Plaintiffs in *Patel.***

Mr. Krivoshey does not meaningfully dispute that the narrowly tailored Subpoena seeks information relevant to the new plaintiffs in *Patel*. Discovery obtained through a subpoena is governed by the same standards applicable to party discovery. Fed. R. Civ. P. 45 advisory committee note to 1970 amendment. Rule 26(b)(1) provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts thus decline to impose sanctions based on subpoenas that are reasonably tailored to explore issues relevant to the litigation. *See OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*, 2023 WL 8473762, at *5 (S.D. Cal. Dec. 7, 2023) (no sanctions where subpoena was tailored to determine whether nonparty disclosed confidential information).

As repeatedly explained to Mr. Krivoshey, GT's issued the Subpoena to probe his potentially continued involvement in the *Patel* litigation. Elie-Meyers Decl. ¶ 2. It is undisputed that Mr. Krivoshey's continued involvement would be problematic because: (1) the *Patel* Court denied class certification on adequacy grounds because former counsel (including Mr. Krivoshey) "were challenging the alcohol warning label they negotiated in *Retta*"; (2) Mr. Krivoshey failed to disclose *Retta* when initiating *Patel*; and (3) he withdrew from *Patel* after five years of litigation and the Court raised concerns about his representation. *See* Class Cert. Order 2; *Patel*, ECF Nos. 136, 137, 152, 155 (Krivoshey's requests to withdraw).

11

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Mr. Krivoshey's continued involvement was put directly at issue by the new plaintiffs' production of incomplete versions of joint prosecution and fee-shifting agreements implicating his possible ongoing involvement in *Patel*. Both agreements specifically preserved former counsel's (including Mr. Krivoshey's) right to seek fees in the event of settlement. Elie-Meyers Decl., Ex. 1 at 3, 6–7. In addition, the agreements require the signature of undefined Class Representatives before Mr. Krivoshey's law firm and Bursor would withdraw from *Patel*, yet no client signatures were produced. *Id.* at 6, 9. And although the new plaintiffs testified that they had seen the agreements before joining *Patel*, at least two could not testify as to whether they signed the agreements, and all three could not testify as to whether Mr. Krivoshey had any involvement or financial interest in *Patel*. Elie-Meyers Decl., Exs. 2–4. The new plaintiffs' inability to explain these issues—which raise obvious conflict-of-interest concerns—directly impinges upon their (in)adequacy to represent the class. *Patel*, ECF No. 171 at 7–8. GT's therefore reasonably and in good faith sought to clarify these issues through discovery from former and current counsel.

Considering the foregoing, GT's Subpoena sought two narrow categories of documents: (1) communications between Mr. Krivoshey and Dovel related to *Patel*; and (2) documents and communications relating to any agreements governing representation of the *Patel* putative class or plaintiffs. ECF No. 9-3 at Attachment A.

Mr. Krivoshey fails to show that GT's Subpoena was unjustified. Mot. 14–15. To start, he maintains GT's had "no evidence" suggesting that the *Patel* plaintiffs have a retention agreement with former counsel. *Id.* at 14. He also claims the new plaintiffs' "lack of knowledge or supervision over the class counsel" is irrelevant because he never represented them. *Id.* at 15. These assertions ignore that the Subpoena was *not* about whether Mr. Krivoshey continued to represent the new plaintiffs, but whether he retained a financial interest in *Patel* or was driving the litigation from behind-the-scenes without these plaintiffs' knowledge. In addition, he asserts that whether new plaintiffs signed the agreements has "nothing to do" with him, Mot. 14, but those agreements explicitly require signatures of undefined Class Representatives to be effective. Elie-Meyer Decl., Ex. 1 at 1, 6. And those signed agreements *still* have not been produced. *See Patel*,

12

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

ECF No. 191. Finally, he argues GT's counsel should have known "'no-fee sharing agreements' are in effect" because the second agreement broadly stated it "supersedes" unidentified prior agreements. Mot. 15. But a party issuing a subpoena "need not accept such representation[s] at face value"; instead, "it is entitled to obtain information [so it] can verify" those assertions. *Zurich Am. Ins. Co. v. Sealink Ins. Serv. Corp.*, 2018 WL 10561907, at *1 (C.D. Cal. Mar. 16, 2018); *see also Tennison v. City & Cnty. of San Francisco*, 2005 WL 8160036, at *2 (N.D. Cal. Sept. 19, 2005) (compelling nonparty to produce documents and ordering that if nonparty "determines that there are no responsive documents to the subpoena, [it] shall so state in a declaration"). In any event, Mr. Krivoshey's proffered interpretation of contractual language fails to establish who is driving the litigation or whether former counsel retains financial interest in *Patel* outside of those agreements.

### b. GT's Sought Information from Plaintiffs and Plaintiffs' Counsel.

Mr. Krivoshey's sole undue burden argument is that GT's could have obtained the same information from the (1) *Patel* plaintiffs, whom he asserts already produced "responsive" documents, or (2) *Patel* plaintiffs' current counsel. Mot. 19. Neither assertion holds water.

*First*, GT's could not obtain the requested information from the plaintiffs alone. Rule 45 sanctions are not warranted where, as here, a subpoena reflects "normal advocacy." *Sci. Apps. & Rsch. Assoc.'s v. Zipline Int'l, Inc.*, 2024 WL 5011603, at *2 (N.D. Cal. Dec. 6, 2024) ("[O]verbreadth may sometimes be the result from normal advocacy, which we have said should not give rise to sanctions") (quoting *Mount Hope*, 705 F.3d at 429). In relevant part, courts decline to issue sanctions on a subpoenaing party who first attempts to obtain relevant information from the parties. *See id.* (sanctions not warranted where defendant sought documents from party after serving third-party subpoena). GT's Subpoena requested communications or documents exchanged between former and present counsel, which the new plaintiffs would not possess. ECF No. 9-3 at Attachment A. Mr. Krivoshey is therefore incorrect to suggest that GT's did not identify what "documents" it could not seek from the new plaintiffs. Mot. 19. Further, he completely ignores that the Subpoena sought *his* testimony *in addition* to documents. In addition, the limited agreements

13

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

that the new plaintiffs partially produced prompted—rather than resolved—questions regarding their former counsel's involvement. Elie-Meyers Decl., Ex. 1. GT's attempted to explore these issues at the plaintiffs' depositions, but they did not recall signing the agreements, could not explain their terms, and lacked knowledge about former counsel's role or financial interests. Elie-Meyers Decl., Exs. 2–4. Those evidentiary gaps justified targeted discovery from former and current counsel themselves.

*Second*, GT's sought the same information from the *Patel* plaintiffs' former and current counsel, including Dovel, all of whom were equally positioned as *non-parties* to the action. "It is well-settled that counsel for a party is a non-party," and Rule 45 provides the "exclusive" method of discovery on non-parties. *Hurd v. Boston Sci. Corp.*, 2023 WL 3564783, at *2 (C.D. Cal. May 5, 2023) (denying motion to quash deposition subpoena of counsel because he functioned as a fact witness). Here, GT's issued identical subpoenas to both former and current counsel, so the order of depositions was immaterial. *See* Mot. 19. Specifically, GT's requested that nonparties Dovel and Bursor provide sworn declarations describing their relationship with former counsel in the *Patel* litigation after Mr. Krivoshey submitted his own declaration stating the same. *See* ECF No. 6-1 ¶ 11. Unlike Mr. Krivoshey, however, Dovel and Bursor conferred in good faith with GT's regarding the subpoena, so their depositions were postponed as a result. Elie-Meyers Decl. ¶¶ 17–18. Ultimately, both Dovel and Bursor agreed to provide sworn declarations. *Id.* In any event, duplicative efforts alone do not justify sanctions. *See Legal Voice*, 738 F.3d at 1185–86 (affirming denial of Rule 41(d) sanctions; "a second attempt to compel discovery of internal communications after the first request was denied is not so egregious [for] a finding of bad faith").

In short, GT's pursued reasonable, targeted discovery to fill evidentiary gaps left by the new plaintiffs, and Mr. Krivoshey identifies no authority or facts supporting sanctions for GT's exercise of its right to obtain discovery among nonparties.

### c. GT's Repeatedly Attempted to Confer with Mr. Krivoshey.

GT's attempted to confer about the Subpoena with Mr. Krivoshey, to no avail, precluding his undue burden claims.

14

OPPOSITION TO MOTION FOR SANCTIONS

Courts do not find undue burden where a subpoenaing party attempts to confer with the subpoenaed party. *See Mount Hope*, 705 F.3d at 427 (citing *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (reversing Rule 45 sanctions award based on issuing party's "sufficient good faith efforts to negotiate reasonable parameters on the subpoena")); *Evox Prods. LLC v. Yahoo, Inc.*, 2023 WL 6192716, at *4 (C.D. Cal. Aug. 8, 2023) ("The Court declines to award costs or fees [because the issuant] narrowly tailored its subpoena request after conferring"). Courts have specifically declined sanctions where issuing "counsel took reasonable steps to avoid imposing an undue burden … by offering to extend the deadline to comply." *Ferguson v. Smith*, 2023 WL 8868815, at *2 (D. Or. Dec. 22, 2023).

Here, too, GT's counsel took several measures to avoid undue burden to Mr. Krivoshey, including: (1) on February 9, when Mr. Elie-Meyers met with Mr. Krivoshey and offered to discuss narrowing the Subpoena to continue the date of compliance; (2) on February 10, when Mr. Elie-Meyers offered to extend the Subpoena's compliance deadline to allow Mr. Krivoshey to move to quash, subject to the *Patel* plaintiffs' current counsel's agreement to extend the approaching March 5 discovery deadline; and (3) on February 11, when Mr. Harper explained GT's need for the Subpoena in writing. Elie-Meyers Decl. ¶¶ 9–10; ECF Nos. 9-5, 9-6. For his part, Mr. Krivoshey rebuffed GT's attempts to negotiate the Subpoena, insisting from the outset that he would not negotiate compliance and intended to move to quash and for sanctions. *Id.* ¶ 12. He freely admits that he threatened sanctions at his first and only meet and confer call with counsel for GT's. Mot. 22. By contrast, Bursor and Dovel negotiated the scope of the subpoenas with GT's, so GT's postponed compliance dates during those discussions, and ultimately, neither law firm was required to produce documents or sit for a deposition. Elie-Meyers Decl. ¶¶ 17–18.

Mr. Krivoshey's failure to communicate in good faith militates against undue burden. *See Sci. Apps.*, 2024 WL 5011603, at *3 (declining sanctions where "both parties' counsel were actively communicating in good-faith regarding potential meet-and-confers and [subpoenaed party] declined to have a final meet-and-confer" before motion to compel). As Judge Paul S. Grewal of the Northern District of California observed:

15

> Transparency and collaboration is essential to meaningful, cost-effective discovery. Google's attempt to stand outside of these tenets because of its thirdparty [sic] status is unpersuasive. Although it should not be required to "subsidize" litigation to which it is not a party, it confuses undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. ***Third-party status does not confer a right to obfuscation and obstinacy.***

*Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (emphasis added). Neither Rule 45, Section 1927, nor a court's inherent authority provides a basis for sanctions where GT's repeatedly sought to avoid burden, only to be met with Mr. Krivoshey's obstinacy.

### d. GT's Withdrew the Subpoena Before Compliance.

GT's withdrew the Subpoena as soon as it obtained the information it was seeking—sworn testimony confirming that former counsel had no ongoing involvement or financial interest in *Patel*—which does not support a finding of undue burden. ECF No. 6.

Courts decline to issue sanctions simply because a subpoena proves unnecessary. *Mount Hope*, 705 F.3d at 429 ("Sanctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost in the end."); *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009) ("[T]he mere fact … that a disputed subpoena is ultimately deemed unwarranted does not standing, alone, demand sanctions."). This is because courts "interpret[] 'undue burden' as the burden associated with compliance," and "the burdens of complying … are the ones that count." *Mount Hope*, 705 F.3d at 427. And contrary to Mr. Krivoshey's assertions, courts routinely refuse to impose sanctions where a party withdraws a subpoena following a motion to quash, or even "refus[es] to withdraw [a] subpoena" at all. *Issagholi v. McLaren Auto., Inc.*, 2021 WL 4352297, at *2 (C.D. Cal. July 9, 2021) (declining to impose sanctions); *Dang v. Sutter's Place, Inc.*, 2012 WL 2906109, at *2–3 (N.D. Cal. July 13, 2012) (same; party "met and conferred in good faith" and withdrew subpoena after motion to quash). The same principle applies even where courts grant motions to quash or deny a motion to compel. *Legal Voice*, 738 F.3d at 1185 ("Merely losing a motion to compel does not expose a party to Rule 45 sanctions."); *Dennis v. Good Deal Charlie, Inc.*, 2022 WL 62919, at *7 (S.D. Cal.

16

OPPOSITION TO MOTION FOR SANCTIONS

Jan. 6, 2022) (declining to impose sanctions after quashing subpoena). Withdrawal of a subpoena supports efforts to avoid undue burden, not a finding of bad faith. *Cryotech Int'l, Inc. v. Technifab Prods., Inc.*, 2009 WL 3021185, at *3 (N.D. Cal. Sept. 17, 2009) (finding a "tactical decision to withdraw the subpoenas" did not evidence bad faith).

Mr. Krivoshey could have avoided filing his motion to quash if he met and conferred in good faith. Still, he complains that GT's withdrawal of the Subpoena does not matter because "the damage is already done," *i.e.*, because he chose to move to quash rather than confer with GT's on the Subpoena. Mot. 21. But the Ninth Circuit has held "the mere need to respond to an opponent's advocacy in our civil justice system should [not] be viewed as unduly burdensome when legal arguments are advanced in good faith." *Mount Hope*, 705 F.3d at 429.

Mr. Krivoshey also claims GT's withdrawal was a "pretext to avoid sanctions." Mot. 22. His assertion is unfounded and incorrect. The Subpoena only became unnecessary after subpoenaed counsel—including Mr. Krivoshey—agreed to provide sworn declarations affirming former counsel's lack of involvement with *Patel*. Elie-Meyers Decl. ¶ 16. This is confirmed by the fact that GT's withdrew its subpoenas to the other non-parties, who agreed in pre-motion conferrals to provide substantially similar declarations in lieu of depositions or documents. *Id.*

Mr. Krivoshey's claim that GT's withdrew the Subpoena at the "eleventh hour" is both blatantly disingenuous and belied by the record. Mot. 21. On February 12, the Court ordered that Mr. Krivoshey's deposition would not take place until after the March 19 hearing. Thus, when GT's withdrew the Subpoena on February 17, the February 18 deposition date had already been vacated by order of the Court. ECF No. 5. GT's informed Mr. Krivoshey that it would withdraw the Subpoena on February 17, with the understanding that the Court had already vacated the deposition. Elie-Meyers Decl. ¶ 16.

Mr. Krivoshey relies on two inapposite cases to argue "withdrawal does not moot sanctions." Mot. 21–22. In *Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *2–4 (C.D. Cal. Feb. 28, 2020), the *plaintiff* issued a third-party subpoena "before engaging in any party discovery," which sought years' worth of documents regarding 134 entities that were not relevant

17

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

to his claims. Unlike Mr. Krivoshey, the nonparty attempted to narrow the subpoena with plaintiff over the course of three months. *Id.* at *3. Yet, the plaintiff only withdrew when threatened with sanctions, not when he obtained the information he sought, as GT's did. *Id.* at *4. And *Equal Emp. Opportunity Comm'n v. Dillon Co.*, 2010 WL 4134696, at *1 (D. Colo. Oct. 12, 2010) involved counsel who repeatedly violated court orders regarding service of subpoenas, including even after a motion to quash was filed. Both *Duong* and *Dillon* are distinguishable and neither supports the imposition of sanctions here.

### 2. GT's Subpoena Was Consistent With Law.

In addition, GT's Subpoena was timely and legally proper, which does not support sanctions. Courts routinely deny sanctions based on procedural defects with a subpoena absent bad faith or prejudice. *Cryotech Int'l.*, 2009 WL 3021185, at *2 (declining to issue sanctions where subpoena defect was "not intentional" and did not prejudice counsel); *Briggs v. Yi*, 2024 WL 5456340, at *5 (D. Ala. May 1, 2024) (declining to impose sanctions); *Fujikura Ltd v. Finisar Corp.*, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015) (same); *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, 2012 WL 1191214, at *6 (D.N.J. Apr. 10, 2012) (no sanctions for facially defective subpoena where movant failed to show "egregious behavior or repeated violations of Rule 45"). This Court should do the same.

### a. The Subpoena Was Timely.

Mr. Krivoshey incorrectly claims the Subpoena was "untimely and outside the scope of … fact discovery allowed in *Patel*." Mot. 1. To the contrary, discovery was open at the time GT's served the Subpoena, and would still have been open on the compliance dates. Courts allow third-party discovery during reopened discovery when tied to permitted subjects. *See Varlitskiy v. Cnty. of Riverside*, 2022 WL 18284986, at *4 (C.D. Cal. Dec. 14, 2022) (subpoenas did not violate order reopening discovery as to specific defendants where subpoena related to defendants).

Here, discovery as to the *Patel* plaintiffs reopened in October 2025, and remained open through March 5, 2026. *Patel*, ECF Nos. 180, 185. GT's Subpoena was directly related to the new plaintiffs—it sought to clarify who is directing, or has a financial interest in, the representation of

18

OPPOSITION TO MOTION FOR SANCTIONS

new class plaintiffs. These issues also bear directly on the new plaintiffs' adequacy to represent the class, including their knowledge of potential conflicts with the class and management of the case.

### b. The Subpoena Otherwise Substantially Complied with Rule 45.

Mr. Krivoshey complains about alleged "additional defects" about the Subpoena's target, service, notice, and fees, none of which supports sanctions. Mot. 18.

***Subject of Subpoena.*** Mr. Krivoshey asserts that it is unclear if the Subpoena was directed to him or his law firm. Mot. 18. That claim is belied by the record. Both subpoenas are materially identical and addressed to Mr. Krivoshey by name. *Compare* ECF No. 9-2 at Ex. 2 *with* 9-3 at 1; ECF No. 9-3 at Attachment A. He also admits Mr. Elie-Meyers "explicitly clarified that the [Subpoenas were] intended for [Mr. Krivoshey], as an individual, not for Smith Krivoshey." Krivoshey Decl. ¶ 38. This cured any ambiguity, and Mr. Krivoshey cites no authority that such an administrative error warrants sanctions.[5] Mot. 18 n.5 (citing *Scott v. Keller*, 2010 WL 1267772, at *1–2 (E.D. Cal. Mar. 31, 2010) (addressing discovery requests, not subpoena, and declining to issue sanctions)); *see also Gharavi v. Google LLC*, 2026 WL 82256, at *7 (N.D. Cal. Jan. 12, 2026) (defense counsel's "harmless error that [did] not impact the outcome of the parties' motions" was "not in bad faith."); *Briggs*, 2024 WL 5456340, at *5 (no sanctions where "evidence does not show [an error in a deposition subpoena was made] in bad faith").

***Service.*** "Rule 45 contains no language that specifically requires personal service upon the individual nonparty deponent." *Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, 2019 WL 4267764, at *5 (C.D. Cal. July 31, 2019). Rather, service is sufficient if reasonably designed to ensure actual receipt. *Id.* Here, GT's repeatedly attempted personal service on Mr. Krivoshey, and served his firm's registered agent only after those efforts failed. Elie-Meyers Decl. ¶¶ 5–9. Courts uphold substituted service where, as here, the nonparty had actual notice and sufficient time to object. *See, e.g.*, *In re Subpoena to VaughnPerling*, 2019 WL 8012372, at *4 (C.D. Cal. Dec. 2,

---

[5] Mr. Krivoshey maintains if the Subpoena was directed at his firm, GT's failed to provide 30(b)(6) topics, which is not sanctionable per se. *See Snow Covered Cap., LLC v. Fonfa*, 2024 WL 3398343, at *1–3 (D. Nev. July 12, 2024) (declining to impose § 1927 sanctions where plaintiff did not provide 30(b)(6) topics).

19

OPPOSITION TO MOTION FOR SANCTIONS

2019) (declining to find subpoena procedurally defective where nonparty "demonstrated actual knowledge of the subpoena" and issuing party attempted personal service); *Pac. Coast Surgical Ctr.*, 2019 WL 4267764, at *5 (service proper where subpoena served on another attorney at nonparty's office building); *Green v. Baca*, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005) (service sufficient where plaintiff left subpoena "at the various witnesses' offices pursuant to Rule 5(b)"). The single case Mr. Krivoshey cites in support—where service was made on a store clerk, not a registered agent—did not impose sanctions. Mot. 19 n.6 (citing *D'Amico v. N& D Rests., LLC*, 2025 WL 3158124, at *2–3 (C.D. Cal. Sept. 24, 2025)).

*Notice.* GT's provided sufficient notice to the *Patel* parties, attaching a subpoena materially identical to the one served. *See* ECF Nos. 9-2 at 1 & Ex. 2; 9-3. Mr. Krivoshey's own caselaw confirms that sanctions, let alone quashing a subpoena, are not warranted "'when opposing counsel have notice and sufficient time to object, [because] they are not prejudiced by a violation of Rule 45 notice requirement.'" *Fujikura*, 2015 WL 5782351, at *4 (quoting *Vondersaar v. Starbucks Corp.*, 2013 WL 191546, at *2 (N.D. Cal. May 8, 2013) (declining to impose sanctions or "quash the subpoena solely on the grounds that it violated Rule 45(b)(1)'s prior notice requirement")); *accord Cryotech Int'l.*, 2009 WL 3021185, at *2 (pursuant to inherent authority).

*Witness Fees.* Courts routinely decline to impose sanctions based on absence of witness fees alone. *See Wakefield v. Walt Disney Co.*, 2007 WL 9724382, at *1–2 (C.D. Cal. May 10, 2007) (no sanctions for failure to tender fees); *Aevoe Corp. v. AE Tech Co.*, 2013 WL 4714273, at *1–2 (D. Nev. Aug. 30, 2013) (same). And the proper remedy for omitted fees is re-service, which here, proved unnecessary because GT's withdrew the Subpoena. *See Jones v. PGA TOUR, Inc.*, 668, F. Supp. 3d 907, 928 (N.D. Cal. 2023) (ordering re-service of subpoenas with fees).

In sum, GT's Subpoena substantially complied with Rule 45, caused no prejudice to Mr. Krivoshey's ability to object, and reflects reasonable efforts to obtain discovery.

### 3. GT's Did Not Act in Bad Faith.

Mr. Krivoshey's asserts GT's counsel acted in bad faith and acted uncivilly during the meet and confer process. That accusation fails as a matter of fact and law. The bad faith requirement for

20

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

sanctions "sets a high threshold," *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Mere disagreement or zealous advocacy is not enough. *See Legal Voice*, 738 F.3d at 1178 (sanctions should not be so broad as to chill or deter vigorous advocacy); *Rico*, 619 F. App'x at 602 (acknowledging "need to protect everyone's right to vigorous, effective advocacy by counsel"). Here, the record shows GT's did not act in bad faith because the Subpoena was properly subject to reopened discovery, and its counsel acted in accordance with civility requirements.

### a. Disagreements About Discovery Scope and Timing Are Not Misrepresentations.

At most, the record reflects good-faith disagreement about discovery scope, sequencing, and relevance—not misrepresentation, deception, or other bad faith conduct required for sanctions under Rule 45, Section 1927, or the Court's inherent authority. *See Mount Hope*, 705 F.3d at 427 (good faith subpoena seeking privileged information not sanctionable under Rule 45); *Rico*, 619 F. App'x at 602 (overbreadth alone did not warrant sanctions under Section 1927 or inherent authority). Courts decline to impose sanctions where, as here, the record shows litigation disagreements rather than intentional misconduct. *See Santacruz v. Southbank Dairies, LLC*, 2016 WL 6997086, at *3 (W.D. Wash. Nov. 30, 2016) (declining to issue sanctions based on "insufficient evidence that the subpoena was issued solely in bad faith"); *Katz v. Steyn*, 2019 WL 13211069, at *2 (D. Nev. June 27, 2019) ("Plaintiff's subpoena to [the nonparty] was not issued in bad faith and does not warrant an award of sanctions."). Such is the case here.

Mr. Krivoshey's quibbles about the discovery deadline, sequencing of depositions, and the identity and purpose of the Subpoena lack merit:

***Discovery Deadline.*** Mr. Krivoshey claims GT's counsel "lied" about the close of discovery during the February 9 meet and confer. Mot. 10. Not so. GT's attorney accurately stated that discovery closed on March 5. Elie-Meyers Decl. ¶ 13. Whether the discovery sought by the Subpoena within the reopened discovery period relates to the newly added named plaintiffs is a legal disagreement, not a factual misrepresentation. Advancing a reasonable interpretation of the scope of discovery does not constitute bad faith. *See Legal Voice*, 738 F.3d at 1186 (reasonable

21

OPPOSITION TO MOTION FOR SANCTIONS

interpretation of discovery order not bad faith).

*Subpoena Sequence.* Mr. Krivoshey incorrectly claims GT's counsel misrepresented the order of depositions which, in any event, is irrelevant. Mot. 11, 12. During the February 9 call, under aggressive questioning from Messrs. Krivoshey and Smith, GT's counsel reviewed the January 29 Notice, and accurately informed counsel that Dovel's deposition had been noticed for February 12. Elie-Meyers Decl. ¶ 12; ECF Nos. 9-2, 9-3. By February 9, Dovel's deposition had been rescheduled as part of ongoing meet and confer efforts, Elie-Meyers Decl. ¶ 17, not to "re-arrange the sequence of depositions so that [Mr. Krivoshey's] would still occur before" Dovel's, Mot. 12. While Mr. Elie-Meyers neglected to mention that Dovel's noticed deposition date had been postponed to allow for further negotiation between the parties, he did not place particular importance on this issue, because he understood that GT's was not obligated to depose one nonparty before another, that compliance dates were in flux due to ongoing negotiations, and that the order of depositions did not affect the propriety of the Subpoena. Elie-Meyers Decl. ¶ 14. At another point during the conferral, after Mr. Krivoshey repeatedly asked which documents he possessed that Dovel did not, counsel responded that GT's could not know the answer to that question without deposing Dovel. *Id.* Again, Mr. Elie-Meyers did not believe this issue was relevant to the propriety of the subpoena, because both Dovel and Mr. Krivoshey are non-parties. *Id.* At no point did Mr. Elie-Meyers affirmatively represent that Mr. Krivoshey's deposition would actually occur after Dovel's deposition—nor would he have, given that compliance dates were in flux at the time. *Id.*

*Nature of First Subpoena.* Mr. Krivoshey claims GT's misrepresented that the subpoena attached to the Notice and the later-served Subpoena were "in effect the same." Mot. 12. He is incorrect. Both subpoenas sought identical testimony and documents, listed the same place of compliance (San Francisco and remote), and differed only in deposition date and an administrative error in the definition of "You." *Compare* ECF No. 9-2 at Ex. 2 *with* 9-3. GT's counsel also stated that it considered the later-served Subpoena with the February 18 date as the operative subpoena. Elie-Meyers Decl. ¶ 10.

22

OPPOSITION TO MOTION FOR SANCTIONS

***Purpose of Subpoena.*** Mr. Krivoshey contends GT's counsel offered shifting, "pretextual" justifications for the Subpoena. Mot. 13–14. Not so. From the start, GT's explained that its Subpoena sought to clarify concerns arising from the: (1) joint prosecution and fee agreements first produced in December 2025; (2) new plaintiffs' inability, during sworn depositions, to explain whether they had signed or knew of former counsel's involvement or financial interest in *Patel*; and (3) implications of those facts for adequacy and potential conflicts of interest. GT's provided these same justifications throughout the course of this dispute. *Compare* ECF No. 9-6 *with* ECF No. 6-1. The fact GT's later withdrew the Subpoena after receiving sworn declarations from counsel attesting to the issues above *confirms*, not undermines, its consistent rationale.

### b. GT's Counsel Acted Consistently With Professional Guidelines.

Mr. Krivoshey argues GT's counsel violated civility and professionalism guidelines by failing to contact him prior to issuing the Subpoena, and refusing to vacate or further continue the deposition date. Mot. 8–9, 20. He misstates both the rules and the record.

Civility guidelines do not prohibit issuing subpoenas or maintaining firm positions in discovery. GT's acted within the bounds of "normal advocacy."[6] *Mount Hope*, 705 F.3d at 429; *Rico*, 619 F. App'x at 602 (issuing subpoena to another attorney is not "inappropriate," nor is it "tantamount to bad faith, … reckless, or vexatious."). Rule 45 does not require a party to meet and confer with a nonparty *before* issuing a subpoena. *See Vysata v. Menowitz*, 2019 WL 1578374, at *2 (C.D. Cal. Feb. 1, 2019) (Rule 45 did not require "opportunity to meet and confer … or seek judicial relief before the subpoenas [are] served"). Moreover, "'[s]ervice of subpoenas at least ***10 days*** before the deposition or production is customary, but not mandatory,'" and "'Rule 45 specifically contemplates circumstances where the response time ***might be less***.'" *The Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc.*, 2015 WL 6167968, at *3 (N.D Cal. Oct. 21, 2015) (quoting *Bonzani v. Shinseki*, 2014 WL 2521849, at *4 (E.D. Cal. June 14, 2014))

---

[6] Mr. Krivoshey's inapposite authorities involve egregious breaches of professional conduct. *See Claypole v. Cnty. of Monterey*, 2016 WL 145557, at *4 (N.D. Cal. July 12, 2016) (sanctioning counsel's sexist remarks); *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, 2025 WL 917110, at *21 (N.D. Cal. Mar. 26, 2025) (unauthorized practice of law in at least "forty-six other cases").

23

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

(emphasis added). Here, GT's prepared the Subpoena promptly after the new plaintiffs' depositions failed to clarify the issues raised by the agreements, served the Subpoena on February 4, and noticed the deposition for February 18—***more than two weeks later***. Elie-Meyers Decl. ¶ 9.

Nor did GT's refuse to accommodate scheduling. To the contrary, after service of the originally noticed subpoenas failed, GT's unilaterally extended the deposition date to provide reasonable time for compliance. *Id.* Counsel for GT's offered to move the deposition date even further out to discuss narrowing the Subpoena, and in fact did reschedule deposition dates with other subpoenaed counsel. *Id.* ¶¶ 11–13, 15, 17. For his part, Mr. Krivoshey refused to comply with the Subpoena under any circumstances and immediately threatened sanctions. *Id.* ¶¶ 11–12; *see Richmond v. Reefer Sys., Inc.*, 2020 WL 9074805, at *5 (C.D. Cal. Dec. 21, 2020) (noting civility guidelines require conferral even if party believes such discussions are "unnecessary"). Moreover, GT's Subpoena expressly permitted a remote deposition, ECF No. 9-3, so Mr. Krivoshey's suggestion that he had to travel cross-country is again disingenuous—particularly where he is admitted in California and maintains a San Francisco office.

### B. Mr. Krivoshey's Requested Sanctions Are Unsupported.

As detailed above, "sanctions are unwarranted because an award would not be just under the circumstances." *Sci. Apps.*, 2024 WL 5011603, at *3 (denying third-party motion for fees in responding to subpoena). In particular, Mr. Krivoshey's caselaw confirms that "to sanction attorney conduct 'that is integrally related to the attorney's role as an advocate,'" "courts must first find that the attorney acted in bad faith," which is absent here. *Davila v. Roblen, LLC*, 2026 WL 323134, at *1 (D. Conn. Feb. 6, 2026). Yet, he asks the Court to (1) order GT's counsel to present or attend CLE, and (2) award fees and order supplemental briefing on the amount. Mot. 22–24.[7]

Mr. Krivoshey's requests lack merit. Courts decline to impose CLE sanctions where, as here, the challenged conduct "did not prejudice" the moving party. *Dodge v. FirstService Residential Ariz. LLC*, 2025 WL 3653164, at *3 (D. Ariz. Dec. 17, 2025). Compensatory

---

[7] Per standard practice in the Ninth Circuit, GT's will "provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs," as necessary. *AECOM Energy & Constr., Inc. v. Topolewski*, 2022 WL 595937, at *14 (C.D. Cal. Feb. 25, 2022).

24

OPPOSITION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

damages—"limited to … 'fees that party would not have incurred but for the bad faith,'" *Gharavi*, 2026 WL 82256, at \*3—are also improper. "[T]he Ninth Circuit has interpreted Rule 45(d)(1) sanctions as applying primarily to reimburse a non-party's costs incurred in *complying* with a subpoena, not merely *litigating* a motion to quash." *Sci. Apps.*, 2024 WL 5011603, at \*2. Because Mr. Krivoshey did not comply with the (withdrawn) Subpoena, it follows he could not have incurred any costs of compliance. Still, he seeks fees and costs spent "responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions." Mot. 24. He does not care to explain how "responding to the subpoena" is any different from moving to quash, shorten time, or for sanctions—which should not be compensated.[8] In sum, Mr. Krivoshey "incorrectly attempts to compel Rule 45 sanctions when Rule 45 sanctions are for costs to comply with a subpoena, not contest it." *Sci. Apps.*, 2024 WL 5011603, at \*3.

Mr. Krivoshey only offers opinions involving different circumstances that support *GT's* position. Mot. 20–24.[9] He refers to a motion to compel that was not granted due to a service issue (*id*. at 21), but ignores that Judge Martínez-Olguín denied class certification in that case based on lack of adequacy and other reasons—after which plaintiffs voluntarily dismissed their individual claims. *Effinger v. Ancient Organics*, 2025 WL 1489710 (N.D. Cal. May 23, 2025). *Cal. v. Kroger Co.*, 2024 WL 4453267, at \*3 (C.D. Cal. Oct. 9, 2024) concerns a good-faith dispute about removal jurisdiction, not discovery. And he admits the cited preliminary discovery order from a contentious case was overruled by the district court, after finding insufficient basis for asserting sanctions against counsel. *Hawkins v. Kroger* Co., 2020 WL 6150040, at \*10 (S.D. Cal. Oct. 20, 2020) ("[T]he sanctions … cannot stand."). None supports sanctions here.

### IV. CONCLUSION

For the reasons stated above, the Court should deny Mr. Krivoshey's Motion for Sanctions.

---

[8] Generously construed, only 1.3 hours ("Reviewed subpoena" and "Attention to … subpoena") out of a total 78.9 hours—***1.6%***—were billed complying with the Subpoena. ECF No. 9-8 at 2–3. The remaining hours concern Mr. Krivoshey's mooted motion to quash and unnecessary motion for sanctions.

[9] *See also Salmon v. CRST Expedited, Inc.*, 2016 WL 3945362, at \*2 (N.D. Okla. July 19, 2016) (Rule 11 sanctions for "filing frivolous claims"); *Mata v. Avianca*, Inc., 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (similar).

25

OPPOSITION TO MOTION FOR SANCTIONS

DATED: March 6, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Peter K. Bae

By: */s/ Jacob M. Harper*
 Jacob M. Harper

*Attorneys for Defendant*
*GT's Living Foods, LLC*

26

OPPOSITION TO MOTION FOR SANCTIONS

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On March 6, 2026, I served the foregoing document(s) described as: **OPPOSITION TO MOTION FOR SANCTIONS** by placing a true copy of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Gabriel Zachiah Doble
Richard E Lyon, III
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com
Email: gabe@dovel.com
Email: rick@dovel.com

__X__ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **annajimenez@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on March 6, 2026, at Los Angeles, California.

☐ State      I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X    Federal      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
Anna Jimenez

1

OPPOSITION TO MOTION FOR SANCTIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 36

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
  *jharper@dwt.com*
Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
  *josepheliemeyers@dwt.com*
Peter K. Bae (SBN 329158)
  *peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GT'S LIVING FOODS, LLC, <br><br> Defendant. | Case. No. 3:26-mc-80036-TSH <br><br> (Case No. 2:19-cv-10920-FMO-DSR Pending in the Central District of California) <br><br> **DECLARATION OF JACOB M. HARPER IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS** <br><br> *[Opposition; Motion to Consider Whether Another Party's Material Should Be Sealed; Declarations of Joseph Elie-Meyers; and [Proposed] Order Filed Concurrently]* |

HARPER DECLARATION IN SUPPORT OF
OPPOSTION TO MOTION FOR SANCTIONS

# DECLARATION OF JACOB M. HARPER

I, Jacob M. Harper, declare as follows:

1. I am a partner with the law firm of Davis Wright Tremaine LLP, lead counsel for GT's Living Foods, LLC (GT's) in the matter of *Patel et al. v. GT's Living Foods, LLC*, No. 2:19-cv-10920-FMO-DSR (C.D. Cal.) (*Patel*). I make this declaration in support of Non-Parties Davis Wright Tremaine LLP, Jacob M. Harper, and Joseph Elie-Meyers' Opposition to Motion for Sanctions (Opposition). I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify to them.

2. As stated in the concurrently-filed Opposition and Declaration of Joseph Elie-Meyers, GT's subpoenas—including the subpoena issued to Yeremy O. Krivoshey—were issued in *Patel* strictly for the needs of this litigation. In addition, GT's employed the least burdensome means of obtaining information sufficient to address its concerns regarding the ongoing involvement and financial interest of former counsel before issuing the subpoenas, including by eliciting information from the *Patel* plaintiffs at their depositions.

3. The actions above were taken at my direction solely in the interest of serving GT's, including addressing Judge Olguin's concerns with the adequacy issues presented by counsel's actions, *Patel*, ECF No. 129, and investigating whether those issues posed a continuing problem despite the change of counsel.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of March 2026, at Los Angeles, California.

_/s/ Jacob M. Harper_____
Jacob M. Harper

1

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

HARPER DECLARATION IN SUPPORT OF
OPPOSTION TO MOTION FOR SANCTIONS

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On March 6, 2026, I served the foregoing document(s) described as: **DECLARATION OF JACOB M. HARPER IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS** by placing a true copy of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

> Simon Carlo Franzini
> Gabriel Zachiah Doble
> Richard E Lyon, III
> Dovel and Luner LLP
> 201 Santa Monica Boulevard Suite 600
> Santa Monica, CA 90401
> Email: simon@dovel.com
> Email: gabe@dovel.com
> Email: rick@dovel.com

__X__ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **annajimenez@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on March 6, 2026, at Los Angeles, California.

☐     State     I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X     Federal     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
Anna Jimenez

---

1

HARPER DECLARATION IN SUPPORT OF
OPPOSTION TO MOTION FOR SANCTIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 37

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street, Ste. 650 # 1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>Defendant. | Mis. Case No. 3:26-mc-80036-TSH<br><br>(CASE NO. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT GT'S LIVING FOODS, DAVIS, WRIGHT, TREMAINE, AND ATTORNEYS JACOB HARPER AND JOSEPH ELIE-MEYERS.**<br><br>Date: April 2, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Thomas S. Hixson |

REPLY ISO NON-PARTY MOTION FOR SANCTIONS;
CASE NO. 3:26-mc-80036

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENTS.................................................1

II.  ARGUMENT ....................................................................................................................2

     A.   Statements In The Opposition Brief Further Support Sanctions ...............................2

          1.   The Opposition Brief Confirms That The Subpoena Was
               Based On Speculation That Contradicted The Evidence ..............................2

          2.   The Supporting Declaration Of Mr. Elie-Meyers Includes
               Damaging Admissions And Contradictory Statements.................................4

     B.   Defendant's Arguments Against Sanctions Lack Merit.............................................6

          1.   Defendant's Excuse For Not Seeking Discovery From The
               *Patel* Plaintiffs Lacks Merit...........................................................................6

          2.   Defendant's Excuse That There Was An "Ordinary Discovery
               Disagreement" About The Scope Of Discovery Lacks Merit.......................7

          3.   Defendant's Excuse That It "Offered To Extend The
               Subpoena's Compliance Deadline" Lacks Merit ..........................................9

          4.   Defendant's Excuse That The Subpoena "Substantially
               Complied" With Rule 45 Lacks Merit..........................................................9

          5.   Defendant's Excuse That Rule 45 Does Not Support
               Sanctions Lacks Merit ...............................................................................11

          6.   Defendant's Excuse That The Non-Parties Purportedly Failed
               To Negotiate In Good Faith Lacks Merit ....................................................11

III. ADDENDUM RESPONDING TO DEFENDANT'S MISSTATEMENTS
     CONCERNING PRIOR LITIGATION ..........................................................................12

IV.  CONCLUSION ..............................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BBK Tobacco & Foods, LLP v. Central Coast Agriculture, Inc.*,
2021 WL 5507167 (N.D. Cal. Nov. 21, 2021)............................................................................ 10, 11

*Bierk v. Tango Mobile, LLC*,
2021 WL 1837376 (N.D. Ill. May 7, 2021) ........................................................................................ 9

*Chima v. U.S. Dep't of Def.*,
23 F. App'x 721 (9th Cir. 2001) ..................................................................................................... 10

*City of Baton Rouge/Parish of E. Baton Rouge Dep't. of Finance v. Centroplex Centre
Convention Hotel, LLC*,
2022 WL 17682645 (M.D. La. Dec. 14, 2022)................................................................................. 9

*Doung v. Groundhog Enter's, Inc.*,
2020 WL 2041939 (C.D. Cal. Feb. 28, 2020).......................................................................... 2, 4, 11

*Hawkins v. Kroger Co.*,
2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ................................................................................... 7

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999)........................................................................................................... 6

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
660 F. Supp. 3d 840 (N.D. Cal. 2022) .............................................................................................. 3

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013)........................................................................................................... 9

*LegalZoom.com v. Rocket Lawyer Inc.*,
2015 WL 12832823 (N.D. Cal. Mar. 23, 2015) ................................................................................ 7

*Netlist, Inc. v. Montage Tech., Inc.*,
2023 WL 2940043 (N.D. Cal. Feb. 24, 2023)................................................................................. 10

*Oros v. Automattic, Inc.*,
2023 WL 7496223 (N.D. Cal. Oct. 4, 2023).................................................................................. 10

*Perez-Encinas v. AmerUs Life Ins. Co.*,
468 F. Supp. 2d 1127 (N.D. Cal. 2006) ............................................................................................ 3

*Pete v. Facebook Data Breach*,
2026 WL 32635 (N.D. Cal. Jan. 6, 2026) ...................................................................................... 11

*Rembrandt Patent Innovations v. Apple, Inc.*,
  2015 WL 4393581 (W.D. Tex. July 15, 2015) ...................................................................... 7

*Retta v. Millennium Prods., Inc.*,
  2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ................................................................ 13, 15

*Scientific Applications & Research Assocs. (SARA), Inc. v. Zipline Int'l., Inc.*,
  2024 WL 5011603 (N.D. Cal. Dec. 6, 2024) ...................................................................... 11

*Scott v. Ventura*,
  2025 WL 3473767 (N.D. Cal. Dec. 3, 2025) ...................................................................... 10

*Varlitskiy v. Cnty. of Riverside*,
  2022 WL 18284986 (C.D. Cal. Dec. 14, 2022) .................................................................... 8

*XTO Energy, Inc. v. ATD, LLC*,
  2016 WL 1730171 (D.N.M. Apr. 1, 2016) ........................................................................... 6

**Statutes**

28 U.S.C. § 1927 ........................................................................................................................ 11

**Rules**

Cal. Rule of Court 9.7(a) ............................................................................................................. 9

**Regulations**

27 C.F.R. § 16.21 ....................................................................................................................... 13

**Other Authorities**

9A *Fed. Prac. & Proc. Civ.* § 2454 (3d ed.) ............................................................................... 10

## I.  Introduction And Summary Of Arguments

Four things about the opposition brief confirm that corrective action by the Court is warranted here. First, and most importantly, Defendant cites no evidence that Mr. Krivoshey continued to be involved in the *Patel* matter after he withdrew from the matter in 2024—which was the entire basis for the subpoena. Instead, Defendant admits that the evidence showed Mr. Krivoshey's *lack* of involvement. Defendant chose not to take that evidence "at face value" because it contradicted an accusation that Defendant had first made against Mr. Krivoshey in 2024. That is reckless.

Second, throughout the opposition brief, Defendant denigrates Mr. Krivoshey and Dovel & Luner ("Dovel"), as if its accusations justify what happened here.[1] Defendant's counsel goes so far as to blame the Non-Parties for his *own* lack of candor during the meet and confer process, and then proceeds to make contradictory statements in his Declaration. *See* Decl. of Elie-Meyers, ¶ 12 (stating his view that "candid negotiations" were "all but futile"). When one cuts through the noise, however, there are numerous facts cited in the opening brief that Defendant does not dispute. Instead, Defendant offers a long series of excuses, often coupled with half-truths that are contradicted by the record. This is evidence of bad faith and recklessness.

Third, Defendant concedes that all information it sought from Non-Parties *was*, in fact, obtained from *Patel* counsel within a matter of days of asking *Patel* counsel for a declaration. Defendant had no basis for intentionally attempting to obtain this information from Non-Parties *first*, and then misleading Non-Parties about the order and timing of discovery.

Fourth, as set out in the March 10, 2026, Order in *Patel*, Defendant's arguments based on the scheduling order in *Patel* are baseless and contradicted by its own statements. *See* Ex. 1 to Smith Decl. ISO Reply Brief (*Patel* Dkt. 200). Magistrate Judge Roberts criticized Defendant for making arguments based on the scheduling order that it "knew" were wrong. *Id.*, at 5 (underlining in original); *see also id.* at 6 ("Defendant knows this"); *id.* at 4 ("Defendant argues that Plaintiff's timeliness argument is based on 'misplaced reliance on the District Court's March 20, 2020, Scheduling and

---

[1] Defendant's attacks on Mr. Krivoshey include several incorrect statements concerning the *Patel* matter and prior matters against the Defendant. Although those statements are irrelevant, this brief concludes with a short factual addendum correcting the record.

Case Management Order.' The Court does not see how reliance on the District Judge's Scheduling and Case Management Order can be 'misplaced.' A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (cleaned up).

## II.    Argument

### A.    Statements In The Opposition Brief Further Support Sanctions

#### 1.    The Opposition Brief Confirms That The Subpoena Was Based On Speculation That Contradicted The Evidence

Pursuing a subpoena based on "nothing more than speculation" and unsupported accusations warrants sanctions. *See Doung v. Groundhog Enter's, Inc.*, 2020 WL 2041939 at *10 (C.D. Cal. Feb. 28, 2020). Defendant's opposition confirms that is precisely what happened here.

Defendant states that the subpoena was necessary due to a "plausible concern" that Mr. Krivoshey "continued to direct and stand to profit from the litigation" in the *Patel* matter. Opp'n Brf., 1:19-24. Defendant then states that the *Patel* plaintiffs "raised issues" about Mr. Krivoshey's "ongoing involvement," as if to suggest that the subpoena to Mr. Krivoshey was prompted by new discovery obtained in the *Patel* matter. *Id.* at 5:6. That is false. For one thing, the *Patel* plaintiffs uniformly testified that they had no knowledge of Mr. Krivoshey's involvement, and Defendant does not contend otherwise. *See* Opp'n Brf., 6:10-19. For another, Defendant does not deny that it first raised its accusation against Mr. Krivoshey in 2024, and so the supposedly "plausible concern" arose long before the *Patel* plaintiffs appeared in the case. *Compare* Dkt. 9-1 ("Krivoshey Decl."), ¶ 11 (Dkt. 9-1) (describing accusation made in 2024) *with* Dkt. 10-1 (Harper Decl.), ¶¶ 1-3 (not denying Mr. Krivoshey's testimony concerning the 2024 accusation).

The only evidence Defendant cites are the two agreements described in the Non-Parties' opening brief, but those do not support Defendant's position either. As already disclosed in the opening brief, the first agreement executed in July 2024 included a fee-sharing agreement and contemplated the Non-Parties' continued involvement. Defendant admits, however, that *one week later*, the Non-Parties and Dovel signed a new agreement that "*broadly stated it superseded*" the first one. Opp'n Brf., 13:2 (addressing second contract; emphasis added); *accord* Krivoshey Decl., ¶ 7; *see also* Ex. 1 to Dkt. 10-2 ("Elie-Meyers Decl.") (attaching agreements). Defendant also does not

deny that the second agreement (a) expressly provided that Dovel "would take control over the litigation" and serve as "sole lead counsel"; and (b) permitted the Non-Parties to seek payment only via court approval. Krivoshey Decl., ¶ 7; *see also* second agreement attached as Ex. 1 to Elie-Meyers Decl. And, there is no dispute that Mr. Krivoshey withdrew from *Patel* shortly after executing the second agreement. *See id.* at ¶ 8; *Patel* Dkt. No. 141. Defendant cites no evidence that Mr. Krivoshey played *any* role thereafter. These facts were either already known to Defendant or available from the *Patel* plaintiffs, and they contradict the entire justification for the subpoena.

Defendant says it was not required to accept the terms of the second agreement "at face value" because it believes "Mr. Krivoshey's proffered interpretation of the contract" does not really answer "who is driving the litigation" or whether the Non-Parties have a financial interest outside the agreements. Opp'n Brf., 13:3-11. But contracts are interpreted according to their "plain terms,"[2] and "[c]ourts will not strain to create an ambiguity where none exists." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (applying California law). Defendant cites no extrinsic evidence that the second agreement is a sham, or that the parties interpreted the words to mean anything other than what they say. Just as the contract said, Mr. Krivoshey withdrew, while Dovel is sole lead counsel.

Defendant also claims that the agreements it obtained from the *Patel* plaintiffs were "incomplete versions," implying there are undisclosed sections or terms that "implicate" Mr. Krivoshey's "possible ongoing involvement in *Patel*." Opp'n Brf., 12:1-3. That is a misleading statement. To start, the only reason Defendant says the agreements were "incomplete" is that they were not signed by the *Patel* plaintiffs, who were not involved until four months *after* Mr. Krivoshey withdrew from the case. *See id.* at 6:12-19; 12:5-9, 25-27. But the evidence confirms Defendant *did* receive full copies of the agreements that had been signed by all counsel as of July 2024, before Mr. Krivoshey withdrew. *See* Ex. O to Krivoshey Decl., ¶¶ 17-18 (stating executed versions of the agreements had been produced); Ex. 1 to Elie-Meyers Decl. (attaching agreements).

Defendant also fails to disclose to the Court that when the dispute over the subpoena arose

_____

[2] *E.g. JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 660 F. Supp. 3d 840, 852 (N.D. Cal. 2022).

here, Defendant was *already* moving to compel "complete" signed versions of the agreements from the *Patel* plaintiffs. *See* Ex. S to Krivoshey Decl., 1:22-26 ("GT's now moves to compel the production of … the *executed* agreements (if they exist) between current- and former counsel governing the joint prosecution of this action and fee sharing and recovery") (emphasis in original) (Dkt. 9-20). So, even if the agreements were "incomplete," that does not justify Defendant's behavior because Defendant was already in the process of obtaining copies signed by the *Patel* plaintiffs. Defendant never explains why the Non-Parties might have copies of agreements signed by the *Patel* plaintiffs, but the *Patel* plaintiffs would not. And, as it turns out, Defendant's motion to compel was itself untimely and violated the scheduling order in *Patel*. Smith Decl., Ex. 1.

To sum up, the uncontroverted evidence shows that in 2024, and without any evidence, Defendant and its counsel first developed their theory about Mr. Krivoshey's supposed continued involvement in the *Patel* matter after he withdrew. They then pressed forward on their subpoena even though all evidence contradicted that theory. The record also shows that the sole justification for the subpoena given in Defendant's opposition brief (*i.e.*, the purportedly "incomplete" agreements) is a pretext. Sanctions are warranted under *Doung. See Doung*, 2020 WL 2041939 at *10.

### 2. The Supporting Declaration Of Mr. Elie-Meyers Includes Damaging Admissions And Contradictory Statements

The Non-Parties' opening brief discusses misrepresentations made by Mr. Elie-Meyers on the February 9, 2026, meet and confer call. Opening Brf., 10-13. Mr. Elie-Meyers admits or does not contest most of the salient facts. *Compare* Krivoshey Decl., ¶¶ 25-40, *with* Elie-Meyers Decl., ¶¶ 10-14. In framing his approach to the meet and confer call, Mr. Elie-Meyers believed that "candid negotiation[s] [were] all but futile." Elie-Meyers Decl., ¶ 12:17. Mr. Elie-Meyers was even purportedly concerned that Mr. Krivoshey may "impute to [Mr. Elie-Meyers] a lack of candor." *Id*. at ¶ 13:24-25.

In Paragraph 14 of his Declaration, Mr. Elie-Meyers makes two damaging statements that are evidence of lack of candor and bad faith. He admits that Non-Parties asked him which deposition was scheduled first, Mr. Krivoshey's or Dovel's. *Id.* ¶ 14. Mr. Elie-Meyers then admits that he "neglected to mention that Dovel's noticed deposition date" had been rescheduled to occur

after Mr. Krivoshey's deposition at the time of the call. *Id.* He attempts to justify this omission by stating that he informed the Non-Parties that the order of depositions was "irrelevant," which shows that the omission was not a mere oversight because it pertained to one of the main objections that the Non-Parties raised on the meet and confer call. *See id.*

Mr. Elie-Meyers also contradicts himself on this issue. One the one hand, he states under oath that he told the Non-Parties that he could not "definitively know" "which documents might be in [the Non-Parties'] possession that were not in the possession of Dovel" "until after Dovel's deposition." *Id.* Indeed, Mr. Elie-Meyers justified purportedly proceeding with Dovel first so that he "would be in a better position to know what, if any, [information Mr. Krivoshey] may possess that Dovel & Luner does not possess." Krivoshey Decl., ¶ 34. But on the other hand, he also admits in Paragraph 14 that he knew at the time that the Dovel "had subsequently been rescheduled as a result of meet-and-confer efforts," and so he knew that Defendant would not obtain documents from Dovel before Mr. Krivoshey's February 18, 2026 deposition. *Id.*

Mr. Elie-Meyers also says he believes the subpoena sought information within the boundaries of reopened discovery period, justifying his failure to tell Non-Parties that discovery was limited to the *Patel* plaintiffs only, and purportedly "accurately stat[ing] that discovery closed on March 5, 2026." Elie-Meyers Decl., ¶ 13. As is clear from Magistrate Judge Robert's recent ruling, however, by the time Defendant served the subpoenas, and at the time of the meet and confer call, Defendant "knew" that it was impossible to timely hear any disputes about discovery by the March 5, 2026 discovery cut-off. The Non-Parties' objections to the subpoena were not due until February 18, 2026, less than 21 days prior to March 5, 2026. A discovery motion must be made at least 21 days prior to a hearing on a motion to compel in the Central District of California, and 35 days prior to a hearing in the Northern District of California. Despite knowing that it was impossible to comply with the March 5, 2026 cut-off, Defendant still opposed Non-Parties' request to hear the motion to quash on shortened time, which would have allowed this Court to hear Non-Parties' concerns about the subpoena within the March 5, 2026 deadline. Instead, Defendant tried to have any disputes about the subpoena heard after the discovery cut-off.

**B.    Defendant's Arguments Against Sanctions Lack Merit**

**1.    Defendant's Excuse For Not Seeking Discovery From The *Patel* Plaintiffs Lacks Merit**

Apart from the agreements already addressed in Section A above, Defendant also subpoenaed the Non-Parties for every communication exchanged between them and Dovel (which would include the entire case file up to summer 2024), and Mr. Krivoshey's testimony concerning his role in the *Patel* matter.[3] Defendant says it was "not obligated" to seek that evidence from the *Patel* Plaintiffs first because they sought information that only the attorneys would have, and Dovel is a "non-party to the action." *See* Opp'n Brf., 14:8-13; 22:11-12; *see also id.* at 13:24 (stating that the subpoena "requested communications or documents exchanged between former and present counsel, which the new plaintiffs would not possess."). Hence, in Defendant's view, it was free to target Mr. Krivoshey *first*. That is meritless.

Any responsive documents or information in Dovel's possession concerning the *Patel* matter would be part of the *Patel* case file, and therefore, within the *Patel* plaintiff's custody and control. *See* Cal. R. Prof. Conduct 3-700(D)(1) (defining "client papers and property" as correspondence and other documents that are part of the case file); *In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999) ("Control is defined as the legal right to obtain documents upon demand."). Put another way, "[b]ecause a client has the right to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." *XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171 at *24 (D.N.M. Apr. 1, 2016) (collecting authorities; internal quotation and emphasis omitted).

The same principle holds true regarding Mr. Krivoshey's testimony, because an interrogatory or request for admission to the *Patel* plaintiffs asking whether Mr. Krivoshey continued to be involved the matter would have revealed the same information that Defendant sought via its subpoena. And Defendant admits that ultimately it *did* obtain the information it was seeking from *Patel* plaintiffs' counsel. *See* Opp'n Brf., 14:18 ("Dovel … agreed to provide sworn declarations").

---

[3] The putative subjects of the deposition were not disclosed in the subpoena or during the meet and confer call, but the Non-Parties base this statement on representations made in Defendant's opposition brief.

The record also shows that Defendant's statement that it "exhausted" relevant discovery from the *Patel* plaintiffs is not true. *See* Opp'n Brf., 6:21-22. Defendant admits in its opposition brief that it never asked Dovel to provide a sworn statement concerning Mr. Krivoshey's lack of involvement in *Patel* until *after* Non-Parties were forced to file the motion to quash. *See* Opp'n Brf., 14:13-15 ("GT's requested that nonparties Dovel and Bursor provide sworn declarations describing their relationship with former counsel in the *Patel* litigation *after Mr. Krivoshey submitted his own declaration stating the same.*") (emphasis added). Further, Defendant never tried to obtain communications between Non-Parties and Dovel from the *Patel* plaintiffs first. It also appears that Defendant never served an interrogatory, request for production, or request for admission asking about the Non-Parties' involvement, or lack thereof. Its motion to compel in *Patel* did not seek this information.

Finally, there is no real legal dispute that Defendant was required to make a genuine effort to obtain this information from the *Patel* plaintiffs. *See e.g.*, *LegalZoom.com v. Rocket Lawyer Inc.*, 2015 WL 12832823, at *2 (N.D. Cal. Mar. 23, 2015) ("LegalZoom has not specified the parameters of the 'gaps' that Google [the subpoenaed party] needs to fill"); *Rembrandt Patent Innovations v. Apple, Inc.*, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015) (holding subpoena issued to non-party is unduly burdensome "until and unless Petitioners can establish they are unable to obtain the requested information from the Respondent").

### 2. Defendant's Excuse That There Was An "Ordinary Discovery Disagreement" About The Scope Of Discovery Lacks Merit

Defendant states that its failure to disclose that the March 5, 2026, discovery deadline was limited to the newly added plaintiffs was the result of a "good-faith disagreement about discovery scope." Opp'n Brf., 21:9. Similar to Defendant's counsel's conduct in *Hawkins* and in *Patel*, it appears that Defendant is relying on a feigned ambiguity about whether the court-ordered deadline would extend to cover the subpoena at issue here. *Cf. Hawkins v. Kroger Co.*, 2020 WL 6150040 at *6-7 (S.D. Cal. Oct. 20, 2020) (rejecting argument by Defendant's counsel that it did not act in bad faith due to a purportedly ambiguous discovery deadline); Smith Decl., Ex. 1, *Patel*, Dkt. 200 (criticizing Defendant for making arguments about the scheduling order that it "knew" were wrong)

(underlining in original). There was no "good faith" disagreement about discovery scope here.

First, recall that it is undisputed that Defendant first raised its accusations about Mr. Krivoshey's supposed continued involvement in the *Patel* matter in 2024. *See* Krivoshey Decl., ¶ 11. The following year, when Defendant requested two extensions of the deadline for "limited" plaintiff discovery, Defendant never told the district court in *Patel* that it intended to seek any third-party discovery, much less serve subpoenas *on every counsel who ever represented current and former plaintiffs over the last six years*. Instead, Defendant repeatedly represented that the extensions were necessary to "take depositions of the newly-named Plaintiffs after allowing sufficient time for review the Plaintiffs' written discovery responses in advance of their depositions," to "review prior discovery productions" from the Plaintiffs, and to accommodate "Plaintiffs' unavailability during the week of Christmas." Ex. L to Krivoshey Decl., 2:27-1; 3:8 Dkt. 9-13); Ex. M to Krivoshey Decl., 1:12: 2:10-11 (Dkt. 9-14). Defendant either never intended the discovery extension to extend to former attorneys on the case, or it did not disclose that fact from the *Patel* court.

Second, Defendant contends that the subpoena fell within the scope of limited discovery because it is "directly related to the new plaintiffs" inasmuch as it sought to "clarify who is directing, or has a financial interest in, the representation of new class plaintiffs." Opp'n Brf., 18:27-19:1. But as shown in Section III.A above, there was no evidence requiring "clarification" about Mr. Krivoshey's lack of involvement with the new *Patel* plaintiffs. Defendant simply did not like the evidence it obtained because it did not support the accusation against Mr. Krivoshey that Defendant had made in 2024. In any event, all it took to obtain the clarity was a declaration from the *Patel* plaintiffs' counsel, which further shows that information sought was available from the parties all along. *See* Opp'n Brf., 9:5-7; 14:18 (describing declaration from Dovel).

The sole authority Defendant cites on this issue, *Varlitskiy v. Cnty. of Riverside*, 2022 WL 18284986, at *4 (C.D. Cal. Dec. 14, 2022), does not support Defendant's position. Unlike here, the subpoenaing party sought the testimony of a former defendant. The court explained that "at least one" of the current defendants indicated the information sought may be in the control of the former defendant, and that this was information that the plaintiff "lacked a full chance to obtain earlier." *Id.* at 4. Those are not the facts here.

### 3. Defendant's Excuse That It "Offered To Extend The Subpoena's Compliance Deadline" Lacks Merit

One of the factors supporting sanctions here is that Defendant refused to extend the February 18, 2026, subpoena compliance date, and refused to shorten the time on which the Non-Parties' motion to quash could be heard, thereby insisting that the deposition proceed before a hearing on the pending motion to quash. Defendant claims it "offered to extend the subpoena's compliance deadline," but also admits that the offer was contingent on "the *Patel* plaintiffs' current counsel's agreement to extend the approaching March 5 discovery deadline." Opp'n Brf., 15:14-15. Defendant does not explain how or why the Non-Parties would have any control over that issue. In turn, Defendant needed *Patel* counsel's consent because the subpoenas were served outside the limitations of the scheduling order in that case and were untimely. *See generally* Ex. 1 (order denying motion to compel).

Defendant also attempts to justify this behavior by suggesting that a notice period of 10-14 days is presumptively reasonable. *See* Opp'n Brf., 23:20-23. The 14-day period in Rule 45 is a general "benchmark for compliance,"[4] but it does not allow a noticing party to ignore basic courtesies required under state bar or judicial civility and professionalism guidelines. *See*, *e.g.*, Cal. Rule of Court 9.7(a); ABA Model Rule 3.4; N.D. Cal. Standing Order on Civility and Professionalism.

### 4. Defendant's Excuse That The Subpoena "Substantially Complied" With Rule 45 Lacks Merit

Defendant does not dispute that "a facially defective subpoena" is one of three grounds for sanctions. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). In their opening brief, the Non-Parties argued that the "combination" of defects concerning lack of notice, improper service, ambiguity about the recipient, and fees supported an inference of bad faith and recklessness, especially in light of other more serious problems concerning the failure to seek information from the *Patel* plaintiffs, the close of discovery, and the refusal to continue the compliance date. *See*

---

[4] *Bierk v. Tango Mobile, LLC*, 2021 WL 1837376 at *1 (N.D. Ill. May 7, 2021); *see also City of Baton Rouge/Parish of E. Baton Rouge Dep't. of Finance v. Centroplex Centre Convention Hotel, LLC*, 2022 WL 17682645 at *1 (M.D. La. Dec. 14, 2022) (explaining that what constitutes a reasonable time for compliance "depends on the circumstances" and that more than 14 days may be unreasonable).

Opening Brf., 18:24-19:5 (Dkt. 9). Defendant does not respond to that argument; instead, it parses out the procedural defects one-by-one, while ignoring the bigger picture issue raised in the Non-Parties' opening brief. Two of Defendant's arguments stand out as particularly meritless.

First, Defendant argues that even though the second subpoena was intended to be directed at Mr. Krivoshey personally, no personal service of the subpoena was necessary. That is wrong. "[M]ost district courts agree that 'delivering' requires personal service [of a subpoena]." *Netlist, Inc. v. Montage Tech., Inc.,* 2023 WL 2940043, at *2 (N.D. Cal. Feb. 24, 2023) (DeMarchi, J.); *see also, e.g.*, *Chima v. U.S. Dep't of Def.*, 23 F. App'x 721, 724 (9th Cir. 2001) (holding that service by mail rather than by personal service of subpoenas duces tecum on defense witnesses was improper); *Scott v. Ventura*, 2025 WL 3473767, at *1 (N.D. Cal. Dec. 3, 2025) (Gilliam, J.) ("personal service of a subpoena duces tecum is required"); *Oros v. Automattic, Inc.*, 2023 WL 7496223, at *1 (N.D. Cal. Oct. 4, 2023) (Cisneros, J.) ("serving a subpoena on a nonparty requires personal service"); Charles A. Wright & Arthur R. Miller, 9A *Fed. Prac. & Proc. Civ.* § 2454 (3d ed.) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required."); *accord, e.g.*, *BBK Tobacco & Foods, LLP v. Central Coast Agriculture, Inc.*, 2021 WL 5507167 at *3 (N.D. Cal. Nov. 21, 2021) (Ryu, J.). Given this authority, it was reckless for Defendant to attempt to force Mr. Krivoshey to appear on the February 18, 2026 compliance date without personally serving him, and to refuse to extend the date until the motion to quash could be resolved.

Second, Defendant admits it never gave notice to the *Patel* plaintiffs about the second subpoena it purported to serve on the Non-Parties. As an excuse, Defendant states that this second subpoena was "materially identical" to the first subpoena, except that the definition of "You" in the document requests was changed from Mr. Krivoshey to the law firm Smith Krivoshey P.C. Opp'n Brf., 7:4-10; 19:7-8; 20-9-10. That statement ignores that the two subpoenas also had different compliance dates. Defendant also claims that "[b]oth subpoenas … listed the same place of compliance (San Francisco and remote)." *Id*. at 22:23-24. That is yet another half-truth. The Notice of Subpoenas served on *Patel* counsel stated that "Mr. Krivoshey's deposition will be conducted at 10:00 a.m. on February 10, 2026, at the law offices of Davis Wright Tremaine LLP, 350 S. Grand Avenue, Floor 27, <u>Los Angeles</u>, CA 90081." Krivoshey Decl., Ex. A. So, while the subpoena itself

listed the place of compliance as San Francisco, the notice provided to *Patel* counsel listed Los Angeles. There is no "legal dispute" that the date and location of a subpoena are material.

### 5. Defendant's Excuse That Rule 45 Does Not Support Sanctions Lacks Merit

Citing just one decision, Defendant briefly argues that Rule 45(d)(1) sanctions apply "primarily" to the costs of complying with a subpoena, rather than litigating the motion to quash, motion to shorten time, and motion for sanctions. *See* Opp'n Brf., 25:2-4 (quoting *Scientific Applications & Research Assocs. (SARA), Inc. v. Zipline Int'l., Inc.*, 2024 WL 5011603 at \*2 (N.D. Cal. Dec. 6, 2024)). The same decision that Defendant cites, however, described an exception to that rule when "a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* at \*2. That is precisely the argument made in the Non-Parties' opening brief. *See* Opening Brief, 17:15-16. More importantly, however, Defendant does not respond to the Non-Parties' arguments that Rule 26(g)(1)(B), 28 U.S.C. § 1927, and the Court's inherent powers all furnish separate and independent authorities for sanctions. *See*, *e.g.*, *Doung*, 2020 WL 2041939 at \*9 (citing Rule 26 when issuing sanctions for an improper subpoena). By failing to respond, Defendant concedes these authorities govern here too, independently of Rule 45(d)(1). *See*, *e.g.*, *Pete v. Facebook Data Breach*, 2026 WL 32635 at \*2 (N.D. Cal. Jan. 6, 2026) (collecting authorities holding that failure to respond in an opposition brief constitutes waiver).

### 6. Defendant's Excuse That The Non-Parties Purportedly Failed To Negotiate In Good Faith Lacks Merit

Defendant argues that sanctions are not warranted "where a subpoenaing party attempts to confer with the subpoenaed party." Opp'n Brf., 15:1-2. It then adopts a blame-the-victim approach by accusing the Non-Parties (who requested the meet and confer in the first place) of failing to confer in good faith. *See e.g.*, *id.* at 7:21-24; 15:20. This position is rebutted by the record and admissions by Defendant in its brief and declaration.

To start, Defendant repeatedly accuses the Non-Parties of being unwilling to negotiate the "scope of the subpoena," and faults them for later submitting "a sworn declaration … that supplied the precise information that GT sought." Opp'n Brf., 7:21-24; 15:20. However, Defendant does

---

controvert Mr. Krivoshey's sworn, *specific* testimony that during the meet and confer call, Defendant's counsel refused to disclose (a) whether the purpose of the subpoena was to determine whether Mr. Krivoshey continued to work on the *Patel* matter; and (b) whether the *Patel* plaintiffs had already produced responsive agreements with Dovel. *Compare* Krivoshey Decl., ¶¶ 36-37 (describing counsel's refusal to answer those questions) *with* Elie-Meyers Decl. ¶¶ 11-14 (containing no denial) (Dkt. 10-2). As shown in Defendant's opposition brief, these turned out to be the core issues Defendant wanted to know about. This begs the obvious question: how exactly were the Non-Parties supposed to negotiate the "scope of the subpoena" when Defendant would not disclose what it wanted or what documents it already had?

In a similar vein, Defendant suggests that the Non-Parties could have avoided motion practice by agreeing to provide declarations, as Dovel and Bursor & Fisher ("Bursor") did. There is nothing in Mr. Elie-Meyer's declaration stating that he made such a proposal during the meet and confer with the Non-Parties, because it never happened. *See* Elie-Meyers Decl. ¶¶ 11-14. As noted above, Defendant admits elsewhere in its brief that the proposal for declarations was made only "*after* Mr. Krivoshey submitted his own declaration." Opp'n Brf., 14:13-15. By that time, Bursor was on the verge of filing its own motion to quash and Defendant was on notice that one or more motions for sanctions would likely follow.

**III.    Addendum Responding To Defendant's Misstatements Concerning Prior Litigation**

Though not relevant to Defendant's conduct here, Defendant assails Mr. Krivoshey's character for his purported conduct in *Patel* and other actions where Mr. Harper is counsel of record. *See gen*. Opp'n Brf., 1-4. According to Defendant, the subpoena was "necessitated by Mr. Krivoshey's own conduct … in *Patel*," without a single sentence explaining how Mr. Krivoshey's prior conduct has anything to do with the subpoena served years after his withdrawal. *Id*. at 1:7. Non-Parties offer a short summary of *Patel* and *Retta*.[5]

---

[5] Defendant also asserts that this sanctions motion serves "as a vehicle to air preexisting grievances with counsel," citing Mr. Krivoshey's purported "forced withdrawal from [the *Patel* case], his abandonment of a nearly identical copycat case, and yet another forced withdrawal from [*Langford et al. v. Walmart Inc*., W.D. Ark. No. 5:25-cv-05228-TLB] after he was served with a Rule 11 motion-*all of which was led by undersigned counsel-Yeremey O. Krivoshey*." Opp'n Brf. at 1 and 1 n. 3 (emphasis added). Apart from the fact that Mr. Krivoshey has no

---

While an associate at Bursor, Mr. Krivoshey was one of the counsel for plaintiffs in *Retta v. Millennium Prods., Inc.*, C.D. Cal. No. 2:15-cv-01801-PSG-AJW. In that case, the plaintiffs alleged that kombucha beverages manufactured by Millennium Products. Inc. contained undisclosed levels of alcohol above the legal limit – *i.e.*, above 0.5% alcohol by volume ("abv"). The case settled for $8.25 million in 2017, in addition to a requirement that Millennium add a statement to the label about putative alcohol content. The claims of class members were released through February 26, 2017. *See generally Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *2 (C.D. Cal. Aug. 22, 2017) (class period ends with date of notice, which occurred on February 26, 2017). Notably, the settlement did not require Millennium to add the "GOVERNMENT WARNING" required for beverages that contain more than 0.5% abv, or require Millennium's products to in fact remain below 0.5% abv. *See* 27 C.F.R. § 16.21. Thus, it was up to Millennium whether to manufacture beverages above 0.5% abv and label them as alcoholic beverages with the GOVERNMENT WARNING required by 27 C.F.R. § 16.21, or continue to market the beverages as *non-alcoholic* (*i.e.*, beverages containing less than 0.5% abv) and include only the watered-down "warning" required by the settlement. *See generally Retta*, 2017 WL 5479637, at *2 (discussing injunctive relief of settlement). Davis Wright, Tremaine and its attorneys Jacob Harper and Joseph Elie-Meyers were not involved in *Retta*.

In early 2017, Millennium reformulated the kombucha beverages that were at issue in *Retta*. *See Patel*, Dkt. 103, at 9. Kombucha products manufactured *after* the *Retta* settlement were not the same products at issue in *Retta*, at least formulaically. Defendant also changed its name, from Millennium Prods., Inc. to GT's Living Foods, LLC around that time.

In October 14, 2017, one of Defendant's competitors, Tortilla Factory, LLC, filed a Lanham Act case against GT's Living Foods, LLC on the basis that GT's Living Foods kombucha beverages were unlawful alcohol beverages exceeding the 0.5% abv threshold without the

---

"preexisting grievances," this statement is false and has no support in the record. Mr. Krivoshey is not on any pleadings in *Langford et al. v. Walmart Inc.*, W.D. Ark. No. 5:25-cv-05228-TLB, never made an appearance, and had no involvement. No Rule 11 letter in that case has ever been addressed to Mr. Krivoshey. And, as discussed below, Davis Wright Tremaine was not involved in *Retta* and did not appear in *Patel* until after Mr. Krivoshey's withdrawal.

required federal government warning. *Tortilla Factory, LLC v. GT's Living Foods, LLC*, Case No. 2:17-cv-07539-FMO-GJS (C.D. Cal.). The case proceeded to a bench trial before Judge Fernando M. Olguin. *See id.*, Dkt. 379 (Judge Olguin's Findings of Fact and Conclusions of Law). After the bench trial in June 2022, Judge Olguin found that Tortilla Factory's "evidence, including the testimony of its testing expert, Blake Ebersole, regarding the alcohol and sugar levels in GT's Enlightened products is credible and compelling. The lack of harm is what dooms plaintiff's case." *Id.*, Dkt. 379, at 8 n. 5. In other words, Judge Olguin was persuaded that GT's Living Foods' kombucha beverages exceeded the federal alcohol limits.

In 2019, two lawsuits over the alcohol levels in Defendant's products were filed, including a consumer class action filed on behalf of consumers by another, unrelated law firm, and by the Center for Environmental Health. *Zamora v. GT's Living Foods, LLC*, Case No. 19-05710 (Cal. Sup. Ct. Los Angeles); *Center for Environmental Health v. GT's Living Foods, LLC, et al.*, Case No. RG19047748 (Cal. Sup. Ct. Alameda Cty.). Neither Mr. Krivoshey nor his former law firm Bursor had any involvement with those cases. However, given the swell of litigation and renewed consumer interest in the issue, Bursor was later retained by new class members seeking to file a case. The pre-suit investigative testing showed that the newly formulated kombucha beverages were over the federal limit. Mr. Krivoshey's new clients filed the *Patel* case (then the *Sharpe* case) on December 27, 2019, while Mr. Krivoshey was still with Bursor. The putative classes in *Sharpe* were defined to begin with purchases made on February 28, 2017 and thereafter, after the close of the class period in *Retta* (where the class period ran through February 26, 2017).

Three days after filing *Sharpe*, Mr. Krivoshey filed a Notice of Related case, seeking for the matter to be related to *Tortilla Factory, LLC v. GT's Living Foods, LLC*, which, as discussed above, was then pending in the same district and concerned the same allegations of elevated alcohol levels in defendant's products. *Patel*, Dkt. 8. Judge Olguin, the judge overseeing *Tortilla Factory*, agreed that the cases were related, and the case was accordingly reassigned to Judge Olguin. *Id.*, Dkt. 10. Defendant did not object to the notice of related case, and never filed a notice of related case of its own. It seemed that relation to *Tortilla Factory* was more appropriate than to *Retta*, given that *Retta* was closed for two and half years by then, while *Tortilla Factory* was in

active litigation since October 2017. For *years* while *Sharpe* was pending, Defendant did not believe that the *Retta* case was relevant either, as it was not mentioned in the parties' Joint Rule 26(f) report, Defendant's motion to strike, Defendant's motion to dismiss, or Defendant's answer. *See Patel*, Dkts. 14, 23, 32, 54. The first time Defendant took the position that *Retta* had any impact on the *Sharpe* matter was in opposition to class certification, filed in August 2021. *See id.*, Dkt. 97-2.

The plaintiffs in *Sharpe* moved for certification of California and New York classes only. Mr. Krivoshey was concerned that the claims of class members from states outside California and New York may not be tolled while counsel waited for a ruling from Judge Olguin on class certification. Accordingly, plaintiffs who purchased the products in different states retained Bursor to file *Mukadam et al v. George Thomas Dave et al.*, Case No. 2:23-cv-10514 (C.D. Cal.), concerning largely the same allegations. The parties in *Mukadam* discussed potentially entering into a tolling agreement and staying the case while they waited for an order in *Sharpe*, but the case was ultimately dismissed without prejudice when no agreement was reached. Given the unfavorable class ruling in *Sharpe/Patel*, the case was not later refiled.

Judge Olguin denied class certification without prejudice on June 21, 2024. Mr. Krivoshey filed a request to withdraw on August 6, 2024, which was granted on August 7, 2024. *Id.*, Dkts. 137, 142. The first time Mr. Harper, or anyone from Davis Wright Tremaine LLP, appeared on the docket in *Patel* was August 7, 2024, effectively *after* Mr. Krivoshey had already withdrawn. *Id.*, Dkt. 145. Up to that point, Defendant was represented by O'Melveny and Meyers LLP, both in *Retta* and in *Sharpe/Patel*, though Mr. Krivoshey did discuss his withdrawal with Mr. Harper in July 2024 prior to Mr. Harper's formal appearance and assured him that he really would withdraw and have no role going forward.

## IV. Conclusion

The Court should grant the Non-Parties' motion for sanctions in full. If the Court decides to issue monetary sanctions either in addition to or in lieu of ordering CLE, the Non-Parties ask the Court to order supplemental briefing after the hearing. Time records reflecting work done after the opening brief are submitted with this reply brief.

Dated: March 13, 2026

Respectfully submitted,

    /s/     Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
28 Geary Street, Ste. 650 # 1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

# EXHIBIT 38

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

*(Counsel for Defendant listed on signature page)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>     *Plaintiffs,*<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>     *Defendant.* | Case No. 2:19-cv-10920-FMO-DSRx<br><br>**JOINT BRIEF ON PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing Date:** April 23, 2026<br>**Time:** 10:00 a.m.<br>**Courtroom:** 6D<br><br>Hon. Fernando M. Olguin |

# **Table of Contents**

I.       Plaintiffs: Introduction. ...........................................................................................1

II.      GT's: Introduction........................................................................................................2

III.     Plaintiffs: The proposed classes and subclasses. .........................................................3

IV.      The requirements of Rule 23(a)...................................................................................4

    A.      Plaintiffs: Numerosity is satisfied. ..............................................................4

    B.      GT's: Plaintiffs Do Not Satisfy Numerosity.............................................4

    C.      Plaintiffs: There are common questions of law and fact................................5

    D.      GT's: Plaintiffs fail to show common answers............................................5

    E.      Plaintiffs: Plaintiffs are typical.....................................................................5

    F.      GT's: Plaintiffs Are Atypical.........................................................................6

    G.      Plaintiffs: Plaintiffs and their counsel are adequate representatives. ...............6

    H.      GT's: Plaintiffs and counsel are not adequate representatives. ........................7

V.       The requirements of Rule 23(b)(3). ...........................................................................8

    A.      Predominance as to the central issues in the case. .......................................8

        1.      Plaintiffs: The central issues are capable of classwide resolution. .........8

        2.      GT's: Predominance (and commonality) bars class certification...........9

        3.      Plaintiffs: The Enlightened Kombucha labels were materially identical for all class members.................................................................9

        4.      GT's: No commonality or predominance as to deception..................10

        5.      Plaintiffs: That Enlightened Kombucha is an alcoholic beverage is subject to common proof. ...............................................12

        6.      GT's: Alcohol and sugar content cannot be shown by common proof, and individual inquiries predominate as to alcohol. ................14

        7.      Plaintiffs: Materiality and reliance are subject to common proof....... 17

8.    GT's: Materiality, reliance, and causation preclude certification......... 18

a.    No classwide materiality: alcohol omission. .......................................... 19

b.    No Classwide Materiality: Sugar Content ............................................. 21

B.    Predominance as to liability for each of Plaintiffs' claims.............................. 22

1.    Plaintiffs: Common questions predominate the "unlawful" California UCL claim.................................................................................... 22

2.    GT's: No predominance as to California unlawful UCL claims......... 22

3.    Plaintiffs: Common questions predominate the deception-based California UCL, FAL, and CLRA claims................................................. 23

4.    GT's: No predominance as to the UCL, FAL, and CLRA claims. ........................................................................................................ 24

5.    Plaintiffs: Common questions predominate the New York GBL claim...................................................................................................... 24

6.    GT's: Plaintiffs' fail commonality for the NY GBL claim. ................. 25

7.    Plaintiffs: Common issues predominate the implied warranty claim...................................................................................................... 26

8.    GT's: The implied warranty claim fails predominance. ...................... 26

9.    Plaintiffs: Common questions predominate common-law fraud........ 27

10.    GT's: Individual questions predominate common-law fraud. ............ 27

11.    Plaintiffs: Common questions predominate unjust enrichment. ........ 27

12.    GT's: Individual questions predominate unjust enrichment.............. 28

C.    Predominance as to damages. ......................................................................... 28

1.    Plaintiffs: Common questions predominate damages.......................... 28

2.    GT's: Plaintiffs cannot satisfy predominance through full refund. ................................................................................................... 28

3.    Plaintiffs: The viability of Plaintiffs' full-refund damages model is a merits question not addressed at class certification. ...................... 29

Joint Brief on Plaintiffs' Renewed                    ii          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

4.    GT's: Plaintiffs must satisfy *Comcast* and Rule 23(b)(3) now............... 29

5.    Plaintiffs: A full refund is available as actual damages. ........................ 30

6.    GT's: Full refund damages do not fit Plaintiffs' theory....................... 32

7.    Plaintiffs: A full refund is available as restitution because the fraud is in the selling of alcoholic beverages as non-alcoholic beverages.............................................................................................. 33

8.    GT's: Fraud-in-the-selling cases do not apply to Plaintiffs' claims. ................................................................................................ 36

9.    Plaintiffs: The illegality and danger of selling alcoholic beverages disguised as non-alcoholic beverages further supports a full refund.......................................................................................... 37

10.    GT's: Plaintiffs' legality argument cannot justify full refunds............. 38

11.    Plaintiffs: Full-refund damages can be measured classwide. ............... 41

12.    GT's: Plaintiffs' calculations fail under *Comcast*..................................... 42

13.    Plaintiffs: Restitutionary disgorgement independently supports class certification. ...................................................................... 42

14.    GT's: Reframing as "disgorgement" does not permit full refund. ...................................................................................... 43

15.    Plaintiffs: Statutory damages are available for Plaintiffs' New York GBL claim, and can be calculated classwide. ............................. 44

16.    GT's: Statutory damages are unavailable under the NY GBL. ........... 44

D.    Plaintiffs: *Retta* membership is not an individualized issue (or an issue at all); the Class definition excludes *Retta* class members................................ 45

E.    GT's: Individual inquiries into *Retta* class membership are fatal.................... 46

F.    Plaintiffs: A class action is the superior way to resolve this controversy.............................................................................................. 48

G.    GT's: Class action is not superior due to numerous individual issues........... 48

VI. Plaintiffs: Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class too. ................................................................................................ 48

VII. GT's: Certification of a 23(b)(2) injunction class is not warranted ........................... 50

VIII. Plaintiffs: Conclusion. ........................................................................................... 50

## Table of Authorities

**Cases**

*Abboud v. Circle K Stores Inc.*,
2025 WL 2800052 (D. Ariz. Sept. 30, 2025) ...................................................47

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ...................................................................19

*Alvarez v. NBTY, Inc.*,
331 F.R.D. 416 (S.D. Cal. 2019) ...................................................................30

*Amavizca v. Nutra Mfg., LLC*,
2021 U.S. Dist. LEXIS 36009 (C.D. Cal. Jan. 27, 2021)......................30, 31, 33

*Ambrosio v. Progressive Preferred Ins. Co.*,
154 F.4th 1107 (9th Cir. 2025) ............................................................... 17, 47

*Ang v. Bimbo Bakeries USA, Inc.*,
2018 U.S. Dist. LEXIS 149395 (N.D. Cal. Aug. 31, 2018) ...........32, 40, 44, 49

*Anti Police-Terror Project v. City of Oakland*,
2021 WL 4846958 (N.D. Cal. Oct. 18, 2021)...................................................48

*B.K. v. Snyder*,
922 F.3d 957 (9th Cir. 2019) .........................................................................49

*Bally v. State Farm Life Ins. Co.*,
335 F.R.D. 288 (N.D. Cal. 2020) ...................................................................28

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) .......................................................................22

*Beck-Ellman v. Kaz USA, Inc.*,
283 F.R.D. 558 (S.D. Cal. 2012) ............................................................. 26, 27

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) .............................................................15, 22, 28

*Black Lives Matter L.A. v. City of L.A.*,
113 F.4th 1249 (9th Cir. 2024) ............................................................... 5, 9, 12

Joint Brief on Plaintiffs' Renewed                  v          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Bowerman v. Field Asset Servs., Inc.*,
   60 F.4th 459 (9th Cir. 2023) ...............................................................................47

*Bradach v. Pharmavite, LLC*,
   735 F. App'x 251 (9th Cir. 2018) .......................................................................18

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) .................................................................. 40, 43

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ....................................................................... 45, 47

*Brown v. DirecTV, LLC*,
   562 F. Supp. 3d 590 (C.D. Cal. 2021) .................................................................46

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011)...........................................................................4

*Bruton v. Gerber Prods. Co.*,
   2018 WL 1009257 (N.D. Cal. Feb. 13, 2018)......................................................50

*Bush v. Rust-Oleum Corp.*,
   2024 U.S. Dist. LEXIS 20131 (N.D. Cal. Feb. 5, 2024) ......................................49

*Cadena v. Am. Honda Motor Co.*,
   2025 U.S. Dist. LEXIS 264956 (C.D. Cal. Dec. 3, 2025) ....................................12

*Capaci v. Sports Rsch. Corp.*,
   2022 U.S. Dist. LEXIS 72856 (C.D. Cal. Apr. 14, 2022).............................*passim*

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .....................................................................................*passim*

*Corbett v. PharmaCare U.S., Inc.*,
   2024 WL 1356220 (S.D. Cal. Mar. 29, 2024).......................................................40

*Debernardis v. IQ Formulations, LLC*,
   942 F.3d 1076 (11th Cir. 2019) ..................................................................... 37, 40

*Dickey v. Advanced Micro Devices, Inc.*,
   2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) .......................................43

*DZ Rsrv. v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024) ....................................................................... 17, 19

*Ebin v. Kangadis Food Inc.*,
    2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...................................................26

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .......................................................................27

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...............................................................................6

*Falcone v. Nestle USA, Inc.*,
    2026 U.S. App. LEXIS 555 (9th Cir. Jan. 9, 2026) ...................................*passim*

*Forcellati v. Hyland's, Inc.*,
    2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ............................. 23, 46

*FTC v. Figgie Int'l*,
    994 F.2d 595 (9th Cir. 1993) .................................................33, 34, 35, 36

*Golikov v. Walmart Inc.*,
    2025 WL 847342 (C.D. Cal. Feb. 27, 2025) ......................................................33

*Gottsdanker v. Cutter Labs.*,
    182 Cal. App. 2d 602 (1960) ..............................................................................26

*Grace v. Apple, Inc.*,
    328 F.R.D. 320 (N.D. Cal. 2018) .......................................................................28

*Grodzitsky v. Am. Honda Motor Co.*,
    2014 WL 718431 (C.D. Cal. Feb. 19, 2014) .....................................................15

*Grodzitsky v. Am. Honda Motor Co.*,
    957 F.3d 979 (9th Cir. 2020) .........................................................5, 10, 17, 42

*Gross v. Vilore Foods Co.*,
    2022 WL 1063085 (S.D. Cal. Apr. 8, 2022) ......................................... 10, 26, 27

*Guido v. L'Oreal, USA, Inc.*,
    2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) ....................24, 25, 44, 45

*Hadley v. Kellogg Sales Co.*,
    2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019) ...............................22

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) .............................................................10

Joint Brief on Plaintiffs' Renewed      vii      Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) ............................................................................. 46, 47

*Iglesias v. Ariz. Beverages USA, LLC*,
2025 WL 2714143 (N.D. Cal. Aug. 14, 2025) ..................................................... 50

*In re 5-Hour Energy*,
2017 WL 2559615 ............................................................................................ 21, 29

*In re Amla Litig.*,
282 F. Supp. 3d 751 (S.D.N.Y. 2017) ............................................................... 24, 26

*In re Apple iPhone Antitrust Litig.*,
2025 WL 3124160 (N.D. Cal. Oct. 27, 2025) ........................................................ 16

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018) .................................................................*passim*

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
2021 WL 3878654 (9th Cir. Aug. 31, 2021) ......................................................... 50

*In re Conagra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .......................................................................... 48

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd* 844 F.3d 1121 .................................... 27

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ............................................................................... 27

*In re Imp. Credit Indus., Inc. Sec. Litig.*,
252 F. Supp. 2d 1005 (C.D. Cal. 2003), *aff'd*, 145 F. App'x 218 (9th Cir. 2005) ............ 15

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ...................................................... 37, 38, 40

*In re Lenovo Adware Litig.*,
2018 WL 620145 (N.D. Cal. Jan. 30, 2018) .......................................................... 25

*In re Morning Song Bird Food Litig.*,
320 F.R.D. 540 (S.D. Cal. 2017) ...................................................................... 37, 39

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003) ...................................................................... 48

*In re POM Wonderful LLC,*
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................................................40

*In re Tobacco Cases II,*
240 Cal. App. 4th at 800 (2015) .................................................................................43

*In re Vioxx Class Cases,*
180 Cal. App. 4th 116 (2009) ............................................................................ 15, 36

*Ironshore Specialty Ins. Co. v. 23andMe, Inc.,*
2015 U.S. Dist. LEXIS 64145 (N.D. Cal. May 14, 2015) ..........................................30

*Jackson-Jones v. Epoch Everlasting Play, LLC,*
748 F. Supp. 3d 823 (C.D. Cal. 2024), *vacated on other grounds by* 2025 U.S. App. LEXIS
21288 (9th Cir. Aug. 20, 2025) ............................................................................ 37, 40

*Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.,*
281 F.R.D. 422 (C.D. Cal. 2012) ................................................................................27

*Jones v. ConAgra Foods, Inc.,*
2014 WL 2702726 (N.D. Cal. June 13, 2014) ......................................................... 6, 21

*Kayes v. Pac. Lumber Co.,*
51 F.3d 1449 (9th Cir. 1995) .......................................................................................8

*Keating v. Nordstrom, Inc.,*
2020 U.S. Dist. LEXIS 63124 (D. Alaska Apr. 10, 2020).......................................... 31, 33

*Keilholtz v. Lennox Hearth Prods.,*
268 F.R.D. 330 (N.D. Cal. 2010) ...............................................................................27

*Klein v. Dr. Ing. h.c.F. Porsche AG,*
2025 WL 2992172 (C.D. Cal. Oct. 22, 2025) ..............................................................19

*Kronenberg v. Allstate Ins. Co.,*
743 F. Supp. 3d 465 (E.D.N.Y. 2024).........................................................................25

*Kumar v. Salov N. Am. Corp.,*
2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016) .......................................... 17, 19

*Lambert v. Nutraceutical Corp.,*
870 F.3d 1170 (9th Cir. 2017) ....................................................................................30

*Lara v. First Nat'l Ins. Co. of Am.,*
25 F.4th 1134 (9th Cir. 2022) ...............................................................................*passim*

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) ......................................................................................42

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ...............................................................................48

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................50

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ....................................................................13, 28, 43, 44

*Makaeff v. Trump Univ., LLC*,
   309 F.R.D. 631 (S.D. Cal. 2015) ..........................................................................*passim*

*Marshall v. Hyundai Motor Am.*,
   334 F.R.D. 36 (S.D.N.Y. 2019) ..................................................................................25

*McCrary v. Elations Co., LLC*,
   2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ............................................45

*McMorrow v. Mondelēz Int'l, Inc.*,
   2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ...........................................44

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 11783673 (S.D. Cal. Nov. 18, 2016) ............................................... 32, 36

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 5107163 (S.D. Cal. May 12, 2016) ................................................. 33, 36

*Moore v. Mars Petcare US*,
   2024 WL 4336602 (N.D. Cal. Sept. 27, 2024) ..........................................................10

*Nacarino v. Chobani, LLC*,
   668 F. Supp. 3d 881 (N.D. Cal. 2022) ............................................................. 22, 23

*O'Connor v. Boeing N. Am., Inc.*,
   197 F.R.D. 404 (C.D. Cal. 2000) ...............................................................................48

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ...............................................................................*passim*

*Ono v. Head Racquet Sports USA, Inc.*,
   2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) .................................................... 20, 21

Joint Brief on Plaintiffs' Renewed     x     Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*,
   674 F. Supp. 3d 799 (C.D. Cal. 2023) ...................................................................21

*Pardini v. Unilever U.S., Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ...............................................................21

*Radcliffe v. Experian Info. Sols. Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ...............................................................................8

*Red v. Kraft Foods, Inc.*,
   2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) .....................................................43

*Retta v. Millennium Products, Inc.*,
   No. CV15-1801 (C.D. Cal.) .........................................................................*passim*

*Robalo LLC v. Taigh Ramey*,
   2012 U.S. Dist. LEXIS 89378 (E.D. Cal. June 26, 2012) ...................................30

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................8

*Roley v. Google LLC*,
   2020 WL 8675968 (N.D. Cal. July 20, 2020)......................................................27

*Samet v. P&G Co.*,
   2019 WL 13167115 (N.D. Cal. Jan. 15, 2019).....................................................40

*Sanderson v. Whoop, Inc.*,
   2025 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 7, 2025)................................ 31, 33

*Sapan v. Yelp, Inc.*,
   2021 WL 5302908 (N.D. Cal. Nov. 15, 2021)................................................ 47, 48

*Sateriale v. Rj Reynolds Tobacco Co.*,
   2014 U.S. Dist. LEXIS 176858 (C.D. Cal. Dec. 19, 2014) ................................42

*Shahinian v. Kimberly-Clark Corp.*,
   2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) ...................................................41

*Shanks v. Jarrow Formulas, Inc.*,
   2019 WL 4398506 (C.D. Cal. Aug. 27, 2019)......................................................18

*Shin v. Sanyo Foods Corp. of Am.*,
   348 F.R.D. 477 (C.D. Cal. 2025)........................................................27, 30, 32, 44

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ........................................................................47

*Small v. Allianz Life Ins. Co. of N. Am.*,
   122 F.4th 1182 (9th Cir. 2024) .......................................................................48

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) ..........................................................................24, 25, 26

*Smith v. Shahidi*,
   2026 U.S. Dist. LEXIS 493369 (C.D. Cal. Mar. 9, 2026) ......................................30

*Spann v. J.C. Penney Corp.*,
   2015 U.S. Dist. LEXIS 42545 (C.D. Cal. Mar. 23, 2015) ...........................................33, 42

*Stanley v. Novartis Pharms. Corp.*,
   11 F. Supp. 3d 987 (C.D. Cal. 2014)................................................................26

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ..................................................................18, 19

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) ....................................................................37, 39

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) ..............................................................35, 36, 37

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012)....................................................................23

*Tietsworth v. Sears, Roebuck & Co.*,
   2013 WL 1303100 (N.D. Cal. Mar. 28, 2013) ......................................................17

*Tortilla Factory, LLC v. GTs Living Foods, LLC*,
   2020 U.S. Dist. LEXIS 219851 (C.D. Cal. Sept. 11, 2020)........................................18, 19

*Townsend v. Moster Bev. Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) .............................................................19

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ........................................................................47

*Urena v. Earthgrains Dist., LLC*,
   2017 WL 4786106 (C.D. Cal. July 19, 2017) ...........................................................48

*Van v. LLR, Inc.,*
61 F.4th 1053 (9th Cir. 2023) ..................................................................................... 16, 17, 46

*Vizcarra v. Unilever U.S., Inc.,*
339 F.R.D. 530 (N.D. Cal. Oct. 27, 2021) ...................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ............................................................................................... 14, 29

*Walters v. Reno,*
145 F.3d 1032 (9th Cir. 1998) ....................................................................................49

*Werdebaugh v. Blue Diamond Growers,*
2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ...........................................45

*Yeend v. Akima Glob. Servs., LLC,*
2025 U.S. Dist. LEXIS 61354 (N.D.N.Y. Mar. 31, 2025) ...........................................27

*Zakaria v. Gerber Prods. Co.,*
755 F. App'x 623 (9th Cir. 2018) ...............................................................................32

*Zeiger v. WellPet LLC,*
526 F. Supp. 3d 652 (N.D. Cal. 2021)........................................................................40

*Zinser v. Accufix Rsch. Inst.,*
253 F.3d 1180 (9th Cir. 2001) ........................................................................... 9, 16, 48

**Statutes**

15 U.S.C. §§ 1261–1278........................................................................................................37

26 U.S.C.
§ 5051 ..........................................................................................................................37
§ 7201 ..........................................................................................................................37

Cal. Bus. & Prof. Code
§ 17204 .........................................................................................................................23
§ 25658(a).....................................................................................................................38

Cal. Civ. Code § 1780(a)(1).................................................................................................30

N.Y. Alco. Bev. Cont. Law § 65 ..........................................................................................38

N.Y. Gen. Bus. L. § 349(h)...................................................................................................44

Joint Brief on Plaintiffs' Renewed        xiii      Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

N.Y. Penal Law § 260.20(2).............................................................................................38

**Rules**

Fed. R. Civ. P. 23.....................................................................................................*passim*

Fed. R. Civ. P. 23(a) ........................................................................................ 4, 19, 21

Fed. R. Civ. P. 23(b)(2) ..............................................................................8, 48, 49, 50

Fed. R. Civ. P. 23(b)(3) ..............................................................................8, 29, 48, 49

Fed. R. Evid. 702 .............................................................................................................42

Fed. R. Evid. 703 .............................................................................................................42

Fed. R. Evid. 704 .............................................................................................................42

**Regulations**

21 C.F.R. § 101.9(g)(5) ...........................................................................................16

27 C.F.R. § 16.10 .....................................................................................................12

27 C.F.R. § 16.20 ............................................................................................... 22, 37

27 C.F.R. § 16.21 ...............................................................................11, 22, 38, 49

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions* §§ 12:2, 12:4 (5th ed. 2020)........................41

## I.      Plaintiffs: Introduction.

Defendant sells Enlightened Kombucha as a non-alcoholic beverage.  Its labels do not disclose that it contains more than 0.5% alcohol (the legal threshold for alcoholic beverages), do not state that consumers must be at least 21 to purchase it, and do not contain the government warning required for alcoholic beverages.  This is true of every bottle of Enlightened Kombucha sold.  Plaintiffs will show using common evidence (Dr. Spedding's testimony) that Enlightened Kombucha is actually an alcoholic beverage, because it contains more than 0.5% alcohol when sold at retail.  Reasonable consumers thought they were buying non-alcoholic beverages, but got alcoholic beverages.  Whether this is deceptive and material is evaluated under an objective, reasonable-consumer standard.  So all central issues in this case—what Defendant's labels conveyed, whether it was true, and materiality—are subject to common proof.  This is an ideal class action.

Plaintiffs also present several damages models stemming from Defendant's conduct and capable of classwide measurement.  New York purchasers are entitled to statutory damages of $50 per violation.  California purchasers are entitled to a full refund, for three different reasons.  First, full refunds are available as actual damages because reasonable consumers—who were shopping for non-alcoholic beverages at the time of purchase— would not have made the purchase had they known Enlightened Kombucha was an alcoholic beverage (i.e., they would have spent $0).  Second, full refunds are available as restitution because alcoholic beverages are fundamentally different products from non-alcoholic beverages, as recognized by consumers, the law, and Defendant (who sells a separate, intentionally alcoholic line of kombucha).  So Defendant's fraud in the selling of Enlightened Kombucha as a non-alcoholic beverage induced class members to purchase alcoholic beverages they otherwise would not have purchased.  Third, a full refund is appropriate because selling alcoholic beverages disguised as non-alcoholic beverages is illegal and inherently unfair.  And, as an alternative, Plaintiffs can prove restitutionary disgorgement on a classwide basis for California class members.

In addition, the Court should certify an injunction class to stop Defendant's

Joint Brief on Plaintiffs' Renewed                         1                 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

deception.  Defendant's labels not only disguise that Enlightened Kombucha is an alcoholic beverage; they also understate its sugar content.  A single injunction would provide relief to each class member for both deceptive practices: each class member could trust Defendant's alcohol and sugar representations going forward.

## II.    GT's: Introduction.

Rinse, recycle, repeat. New Plaintiffs' Motion rehashes the same arguments based on the same, now-outdated evidence. But they cannot escape the fatal defects of the last class certification motion. This starts with the fundamental premise of their Motion: they fail to show common proof the *entire* GT's Enlighted product line exceeds threshold alcohol and sugar limits for *over nine years.* Their evidence was inadequate last time; this time they have *no testing whatsoever* of a single bottle of Enlightened from the last five years. The only evidence available—GT's own testing ordered by *Retta*—shows all available Enlightened products have *no alcohol or sugar levels exceeding thresholds*, which destroys Plaintiffs' foundational assumptions for numerosity, commonality, predominance, and damages. Plaintiffs (and counsel) fail to satisfy almost every requirement of Rule 23, fail to address the Court's concerns from the last class certification denial, and entered into side deals with withdrawn counsel that make them inadequate.

<u>*Inadequacy*</u>. This action claims the labels former counsel negotiated and advocated for *Retta v. Millennium Products, Inc.*, No. CV15-1801 (C.D. Cal.) are now misleading and illegal. New counsel, Dovel & Luner LLP, fail to shake those conflicts, as their side agreements with former counsel bar them from opposing former counsel's fees in this action, even if against the class's interest. This is textbook inadequacy.

<u>*Commonality & Predominance*</u>. **Damages.** The Court previously indicated Plaintiffs' full refund damages model did not appear viable. Dkt. 129 at 6. Plaintiffs recycle the same failed arguments as before. But they are still required to account for the value received, rendering full refunds improper and barring certification. None of the theories they rehash—"actual damages," fraud in the selling, illegality, disgorgement—allow full refunds here. Each of these arguments relies on a misapplication or misstatement of the

Joint Brief on Plaintiffs' Renewed    2    Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

law. Without a proper damages model, *Comcast* bars certification.

**Falsity.** Plaintiffs purport to show a classwide method of testing alcohol and sugar content by pointing to the same sparse testing from their 2021 motion. But **Plaintiffs have not tested a single bottle in five years**. As before, their methodology falls short, as it does not account for variation in refrigeration or ingredients across the product lines, both of which affect alcohol and sugar content. Nor do they address other issues: they tested only 19 bottles of relevant products, and tested none of the many new products swept into this action. The only reliable testing in this case is GT's, and it shows essentially no elevated alcohol content for every product from 2017 until the present.

**Deception & Materiality**. Plaintiffs' own testimony directly undermines their only evidence of deception and materiality. Based solely on the expert report of Dr. Silverman, Plaintiffs' theories rely on the false assumption consumers ignore the disclosure on every Enlightened bottle stating it "has naturally occurring alcohol." But all three Plaintiffs *did* read the disclosure before purchasing. Silverman admits he cannot opine as to reasonable consumers that *do* read the disclosure, and that such readings would vary by consumer, meaning common proof does not exist. GT's survey evidence confirms as much, as it shows many consumers do not find the alcohol omission material.

**Retta *Class Members.*** *Retta* class membership is a complete defense to liability and will require fact-intensive individualized inquiries. Plaintiffs' own expert found that a significant percentage of potential class members *also* bought Enlightened during the *Retta* period. This means each class member will be required to demonstrate *both* that they purchased during the class period, and that they did *not* during the *Retta* period.

*Typicality.* Plaintiff Nunez, the sole representative of the class aged 18-21, is atypical and subject to unique defenses. Plaintiffs ask the court to assume no person under 21 would intentionally buy or consume beverages above 0.5% ABV, but that is not the case for Nunez, which raises atypical individualized materiality defenses.

*Injunction Class.* Plaintiffs lack standing to seek injunctive relief, requiring denial.

**III.    Plaintiffs: The proposed classes and subclasses.**

Joint Brief on Plaintiffs' Renewed                    3                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs request certification of the following classes and subclasses:

California Class: All persons who purchased Enlightened Kombucha in California between February 28, 2017, and the date that class notice is disseminated, and who did not purchase Enlightened Kombucha between March 11, 2011, and February 27, 2017 (the settlement class period in *Retta et al. v. Millennium Products, Inc.*, No. CV15-1801 (C.D. Cal.)).[1] The proposed class representatives are Amit Patel and Christopher Nunez.

California Underage Subclass: All members of the California Subclass who purchased Enlightened Kombucha while at least 18 and under 21 years of age. The proposed subclass representative is Christopher Nunez.

New York Class: All persons who purchased Enlightened Kombucha in New York between February 28, 2017, and the date that class notice is disseminated, and who did not purchase Enlightened Kombucha between March 11, 2011, and February 27, 2017 (the settlement class period in *Retta et al. v. Millennium Products, Inc.*, No. CV15-1801 (C.D. Cal.)). The proposed class representatives are Lauren Schmidt and Christopher Nunez.[2]

New York Underage Subclass: All members of the New York Subclass who purchased Enlightened Kombucha while at least 18 and under 21 years of age. The proposed subclass representative is Christopher Nunez.

**IV.  The requirements of Rule 23(a).**

**A.  Plaintiffs: Numerosity is satisfied.**

Defendant sold tens of millions of Enlightened Kombucha bottles during the class period. *E.g.*, Exs. 1-2 (Appx. 16-19) (wholesale numbers). This satisfies numerosity. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) (forty is enough).

**B.  GT's: Plaintiffs Do Not Satisfy Numerosity.**

Plaintiffs show, at most, 19 tested bottles contained excessive alcohol and sugar, and nothing competent as to any other bottle. *Infra* §§ V.A.6. That is not enough

---

[1] The Court ruled that it lacks jurisdiction over *Retta* class members. Dkt. 178 at 4.

[2] Mr. Nunez purchased Enlightened Kombucha, while underage, in both California and New York. Nunez Decl. (Appx. 7) ¶ 2.

Joint Brief on Plaintiffs' Renewed Motion for Class Certification

4

Case No. 2:19-cv-10920-FMO-DSRx

**C.     Plaintiffs: There are common questions of law and fact.**

Commonality requires only "a single significant question of law or fact." *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *13 (C.D. Cal. Apr. 14, 2022) (Olguin, J.) (quotation omitted).  This case presents numerous common issues of law and fact. These include whether Defendant's labels convey to reasonable consumers that Enlightened Kombucha is not an alcoholic beverage, whether Defendant's labels make representations and express warranties about the sugar levels, whether Enlightened Kombucha is an alcoholic beverage, whether it contains more sugar than represented, and the materiality of these facts to a reasonable consumer.  *See infra* §§ V.A-C.

**D.     GT's: Plaintiffs fail to show common answers.**

Plaintiffs misstate the commonality standard. They must "prove—not simply assert" commonality. *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1260 (9th Cir. 2024). "[I]t is not enough to merely raise common questions or issues to satisfy Rule 23," as Plaintiffs do above. *Id.* Rather, "plaintiffs must 'be prepared to prove'" "questions that are 'central to the validity' of the claims and capable of being resolved 'in one stroke,'" i.e., "on a class-wide basis," by a "preponderance of actual evidence." *Id.* at 1258-60. The court "must engage in a 'rigorous analysis' of commonality[.]" *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020). As discussed below (where Plaintiffs discuss their evidence), Plaintiffs cannot establish common methods to determine: (1) deception; (2) elevated alcohol and sugar levels; or (3) materiality, *infra* §§ V.A.4, .6, .8.

**E.     Plaintiffs: Plaintiffs are typical.**

Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *20 (quotation omitted).

Here, each class member's claims (including Plaintiffs') arise from the same course of events: Defendant's sales of kombucha containing more than 0.5% alcohol as a non-alcoholic beverage, and misrepresentations about sugar content.  And each class member will make the same legal arguments: that Defendant's misrepresentations and omissions

Joint Brief on Plaintiffs' Renewed Motion for Class Certification          5          Case No. 2:19-cv-10920-FMO-DSRx

were illegal, unfair, and deceptive to reasonable consumers.

In addition, Plaintiffs—like all proposed class members—were not *Retta* class members because they started buying Defendant's kombucha after February 27, 2017. Plaintiff Decls. (Appx. 1-9) ¶ 2; Ex. 3 (Appx. 21) (Patel Dep.) 55:24-56:10; Ex. 4 (Appx. 27) (Schmidt Dep.) 77:12-78:11, 79:6-18; Ex. 5 (Appx. 35) (Nunez Dep.) 96:10-97:10, 98:7-19, 145:15-146:10.  And Mr. Nunez—like the rest of the proposed underage subclasses—purchased Defendant's kombucha when he was between 18 and 21 (in both California and New York).  Nunez Decl. (Appx. 7) ¶ 2; Ex. 5 (Appx. 35) (Nunez Dep.) 155:12-156:13.

### F. GT's: Plaintiffs Are Atypical.

*First*, no Plaintiff has evidence they purchased any products with actually elevated levels of sugar or alcohol, meaning they are atypical. *Infra* § V.A.6. *Second*, Plaintiff Nunez's claims are atypical of the underage classes (the 18-21 class(es)), as he is subject to unique defenses. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Plaintiffs ask the Court to assume no person under 21 would intentionally buy or consume alcoholic beverages, but that is not the case for Nunez, which raises individualized materiality defenses and makes him atypical. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *7 (N.D. Cal. June 13, 2014). Nunez testified that even when he was under 21 (during the class period), he was a heavy and frequent drinker. Ex. 36 (App. 2026) (Nunez) 7:25–8:1, 50:21–52:19, 53:24-9. He consumed 3-5 drinks per event, up to 6-10 drinks per week, and admitted that when consuming beverages "the specific alcohol content was not important to" him. *Id.* 50:21–52:21; 53:24-9; 60:5-22.

### G. Plaintiffs: Plaintiffs and their counsel are adequate representatives.

Adequacy involves two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quotation omitted).  Neither Plaintiffs nor counsel have conflicts of interest with other class members, and they will vigorously

Joint Brief on Plaintiffs' Renewed                6                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

prosecute the case.  Plaintiff Decls. (Appx. 1-9) ¶ 3; Franzini Decl. (Appx. 10) ¶¶ 2-5.

The Court previously expressed adequacy concerns about plaintiffs and counsel who were involved in the *Retta* litigation.  Dkt. 129.  They are no longer part of this case.  This motion is brought by new plaintiffs and counsel who had nothing to do with *Retta*.  *See* Dkt. 178 at 4-5 (rejecting Defendant's *Retta* arguments as to the new Plaintiffs).  Prior *Retta* counsel withdrew and is no longer involved, and there is no fee-sharing agreement with prior counsel.  Dkt. 141-144; Ex. 6 (Appx. 48) (2/19/26 Franzini Decl.) ¶¶ 6-7.[3]

### H.  GT's: Plaintiffs and counsel are not adequate representatives.

New class counsel perpetuates the same adequacy concerns that led to former counsel's withdrawal, Dkt. 129 at 5-6, by entering a side deal that prevents them from opposing fees for former counsel, even if class interests require it—a direct conflict.

The Court previously raised concerns about former counsel's inconsistent representations to the *Retta* court regarding the adequacy of the Enlightened warning label at issue here. Dkt. 129 at 3. After former counsel withdrew, Dovel entered into side deals preserving former counsel's right to financially benefit from this litigation. The second deal (1) authorized former counsel to apply for fees or "propose any basis for recovery of fees" and (2) agreed that withdrawal of counsel "shall not preclude [their] rights to be compensated for work done," including "in *quantum meruit* if for some reason a proportionate division is not permitted by the Court." Ex. 8 (App. 58).

Dovel restricted its ability to represent the class. By agreeing former counsel may

---

[3] Before taking over this case, current counsel initially entered an agreement contemplating that they would work with prior counsel to prosecute this case, and share fees in proportion to their contributions. Ex. 7 (Appx. 52). But a week later—to fully eliminate the Court's adequacy concerns—current counsel and prior counsel entered a second agreement that "specifically supersede[d]" the prior agreement. Ex. 8 (Appx. 58) at 2. That second agreement, which remains in force, states that current counsel is fully responsible for representing Plaintiffs and the putative class, calls for prior counsel to withdraw, and does not provide for any fee sharing (instead, if prior counsel wishes to seek compensation for prior work, it must "apply to the Court for an award of costs or fees"). *Id.* at 1-2. Consistent with that agreement, prior counsel withdrew and has not been involved since. Dkt. 141-144; Ex. 6 (Appx. 48) (2/19/26 Franzini Decl.) ¶¶ 6-7.

Joint Brief on Plaintiffs' Renewed           7           Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

apply for fees and "shall not" be "preclude[d]" from compensation, Dovel tied its hands and will not be able to oppose any motion for fees from former counsel, even if in the interests of the class as a whole.[4] That creates divided loyalties and places them at odds with the putative class's interests, making them inadequate. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (class counsel "responsibility … does not permit even the appearance of divided loyalties of counsel."); *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1167-68 & n.6 (9th Cir. 2013) (agreement created divergent potential "independent conflict of interest because of the fee-sharing agreement" among counsel).

## V. The requirements of Rule 23(b)(3).[5]

### A. Predominance as to the central issues in the case.

#### 1. Plaintiffs: The central issues are capable of classwide resolution.

Predominance is satisfied when "one or more of the central issues in the action are common to the class and can be said to predominate." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *27 (quotation omitted). Common questions predominate when they are "more prevalent or important" than individual questions. *Id.* A district court cannot "decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022).

When addressing predominance, courts do not consider "whether the evidence in fact establishes that plaintiffs would win at trial." *Id.* at 667. Rather, the court is "limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution." *Id.* So "a district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and

---

[4] Dovel refuses to produce either (1) copies of side deals that contain Plaintiffs' acknowledgement signatures or (2) Plaintiffs' retainer agreements. Dkt. 191 at 3-4. In light of the concerns above, those agreements are necessary for the Court to analyze adequacy. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 957-60 (9th Cir. 2009).

[5] Plaintiffs seek to certify a Rule 23(b)(3) damages class only on the alcohol claims. The sugar claims are part of Plaintiffs' request for a Rule 23(b)(2) injunction class.

unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.*

Here, the central issues in this case are (1) the contents of Defendant's labels, and what they conveyed to a reasonable consumer; (2) whether Enlightened Kombucha contains more than 0.5% alcohol; and (3) whether the deceptive labeling would be material to a reasonable consumer. Each of these questions can be resolved classwide.

## 2. GT's: Predominance (and commonality) bars class certification.

Plaintiffs cannot satisfy commonality or predominance as to (1) deception, (2) falsity, (3) materiality, (4) damages, or (5) *Retta* class membership. "Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification." *Black Lives Matter*, 113 F. 4th at 1258. Courts "*must* consider the merits [of the claims] if they overlap with Rule 23 requirements." *Id.* at 1261 n.1. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense," certification should be denied. *Zinser v. Accufix Rsch. Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

## 3. Plaintiffs: The Enlightened Kombucha labels were materially identical for all class members.

Defendant's labeling was materially identical throughout the class period. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 366 (N.D. Cal. 2018) (predominance satisfied where "the representations on the product's packaging were substantially similar throughout the class period"). None of the labels disclosed that Enlightened Kombucha contains more than 0.5% alcohol, that it is classified as an alcoholic beverage, or that it is illegal for minors to purchase. Ex. 9 (Appx. 63) (Enlightened labels); Ex. 10 (Appx. 91) (GT Dave Dep.) 123:25-125:17. None of them included the government warning required for alcoholic beverages. Ex. 10 (Appx. 91) (GT Dave Dep.) 104:11-15. And they all contained the same tiny disclosure that kombucha "has naturally occurring alcohol." Ex. 11 (Appx. 107) at 12 (Interrogatory 8). As Defendant admits, "the label used for each of the flavors in its Enlightened/Synergy line of kombucha products (including those flavors newly introduced during the putative class period) has remained materially identical since February 28, 2017 with regard to the flavor-specific label's

Joint Brief on Plaintiffs' Renewed      9      Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

disclosure of the presence of alcohol and the amount of sugar in each serving." *Id.* at 11.

What these materially identical labels conveyed is "evaluated according to an objective 'reasonable consumer' standard." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1100 (N.D. Cal. 2018). Under this objective test, there is "no need to inquire into each class member's unique circumstances." *Id.* at 1101 (quotation omitted). So what Defendant's labels conveyed can be determined using common evidence about what a reasonable consumer—not any individual class member—would understand.

Plaintiffs have already put forward such common evidence, consisting of the labels themselves and expert testimony. Mr. Silverman opines that, based on Defendant's advertising, reasonable consumers would think that Enlightened Kombucha was not an alcoholic beverage. Ex. 12 (Appx. 129) (Silverman Rep.) ¶¶ 32, 34-48. This testimony, and the labels themselves, are common proof applicable to the entire class.

### 4. GT's: No commonality or predominance as to deception.

Plaintiffs cannot satisfy commonality or predominance as to deception for alcohol claims, or commonality for their sugar claims. "The question of likely deception … does not automatically translate into a class-wide question," as Plaintiffs suggest. *Moore v. Mars Petcare US*, 2024 WL 4336602, at *4 (N.D. Cal. Sept. 27, 2024).[6] In addition to classwide exposure, "Plaintiffs must point to common evidence that could establish the alleged misrepresentations' likelihood of deception on a classwide basis." *Gross v. Vilore Foods Co.*, 2022 WL 1063085, at *5 (S.D. Cal. Apr. 8, 2022). They fail to do so, requiring denial.

**ALCOHOL.** For alcohol, Plaintiffs rely entirely Silverman's report, which cannot withstand "rigorous analysis" or apply classwide. *Grodzitsky*, 957 F.3d at 986. Rather, Silverman's testimony confirms individualized inquiries predominate for deception.

Silverman improperly ignores Enlightened's alcohol disclosure altogether, based on his false assumption reasonable consumers do not read it. Ex. 12 (App. 129) ¶¶ 45, 62-69,

---

[6] Plaintiffs mistakenly cite to the materiality discussion (not deception) in *In re Arris*, 327 F.R.D. at 366, addressed below. Their other cited case, *Hadley*, 324 F. Supp. 3d at 1100, actually held class-wide exposure to a label statement *could not* be inferred.

Joint Brief on Plaintiffs' Renewed      10      Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

71. He contends consumers perceive "alcoholic" and "non-alcoholic" beverages as "black-and-white": "Usually, the indication of a non-alcoholic is the omission of anything that would say it's alcoholic." Ex. 40 (App. 2095) 21:12-22:4. He thus argues reasonable consumers see the omission of a federal warning to mean the product does not contain alcohol. Ex. 12 (App. 129) ¶ 50.  This cannot satisfy Plaintiffs' burden for several reasons.

*First*, all named plaintiffs *did* in fact read the alcohol disclosure before purchasing Enlightened, and so were aware it "has" alcohol and they should "not consume [it] if [they're] avoiding alcohol." Ex. 36 (Nunez) (App. 2026) 42:7-23; Ex. 35 (Patel) (App. 1997) 58:11-59:9, 122:5-124:1; Ex. 37 (Schmidt) (App. 2057) 140:18-142:18. Thus, some reasonable consumers *do* in fact read the statement.[7] Judge Gutierrez's holding that the alcohol disclosure is sufficient to notify consumers about alcohol content likewise precludes his classwide opinion. *Retta*, 2017 WL 5479637, at *8.

*Second*, Silverman's own reasoning shows his conclusions cannot apply classwide. While contending all consumers would miss the side label disclosure placement, Ex. 12 (App. 129) ¶¶ 64-65, he admits "some" consumers" do "turn the bottle to the side" to read the label. Ex. 40 (App. 2095) at 241:14-20; Ex. 12 ¶ 52. The federal warning likewise can appear on the side or even back label. 27 C.F.R. § 16.21; *e.g.*, Ex. 12 (App. 129) ¶ 66.

*Third*, for those consumers who *do* read the disclosure, Silverman's testimony offers no common proof of deception. He does not "know" how consumers understand it, let alone as compared to the federal warning, Ex. 40 (App. 2095) 94:21-95:7, 98:17-99:17. Rather, he testified consumers would understand it differently. *Id.* at 96:3-97:6 ("some" would understand there's a "small amount of alcohol," but "others might not"), 99:4-17 (understanding "depend[s] on … level of sophistication"). He testified "most consumers" do not know the minimum ABV for the federal warning and don't "think"

---

[7] Silverman did not interview kombucha drinkers, Ex. 40 (App. 2095) 43:23-25, look at consumer research on drinking preferences, *id.* 142:5-16, has no experience with kombucha advertising or marketing, *id.* 43:11-17, admitted it is "different" from other alcoholic beverages, *id.* 59:24-60:12, and conceded the Pabst example in his report was from 1987, *id.* 180:14-23. He should be excluded as set forth in GT's concurrent motion.

Joint Brief on Plaintiffs' Renewed            11            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

about "percentages." *Id.* at 21:12-22:4, 71:23-72:3, 73:3-74:2. This is a critical admission, because the federal warning also does not identify a specific amount of alcohol. *Id.* at 75:10-76:19.

**SUGAR.** Plaintiffs do not mention common proof of their sugar claims, and thus fail to meet their burden. *Black Lives Matter*, 113 F.4th at 1260 (plaintiffs must "prove— not just assert" commonality). To the extent they rely on the Silverman declaration, that fails too, for the reasons discussed for materiality, *infra* § V.A.8, and falsity, *infra* § V.A.6.

**5.      Plaintiffs: That Enlightened Kombucha is an alcoholic beverage is subject to common proof.**

An alcoholic beverage is "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption." 27 C.F.R. § 16.10.  Plaintiffs will show that Enlightened Kombucha is an alcoholic beverage using common proof: Dr. Spedding's opinion that "100% of Enlightened Kombucha sold in the United States since at least 2015 has contained more than 0.5 percent alcohol by volume at the retail level."  Ex. 13 (Appx. 192) (Spedding Rep.) ¶ 19.  This is common proof applicable to the entire class.

Dr. Spedding's opinion is "[b]ased on [his] own testing, and a review of the recent literature and studies concerning the alcohol content of Enlightened Kombucha." *Id.* ¶ 39.  He tested over 40 bottles of Enlightened Kombucha between 2015 and 2021. *Id.* ¶ 20.  These bottles were purchased at retail, refrigerated, and tested before their expiration dates. *Id.* ¶¶ 21-22.  "100 percent of the samples tested over the six year period were over the legal limit of 0.5 percent alcohol by volume for purported non-alcoholic." *Id.* ¶ 24.

Dr. Spedding's results are consistent with other testing.  His review showed that "all experts in the field that have tested the alcohol level of Enlightened Kombucha purchased from retail locations have uniformly found that the beverages contain more than 0.5 percent alcohol by volume." *Id.* ¶ 29; *see id.* ¶¶ 29-39; *Cadena v. Am. Honda Motor Co.*, 2025 U.S. Dist. LEXIS 264956, at *53 (C.D. Cal. Dec. 3, 2025) ("[I]t is not error for an expert to extrapolate opinions from data or information handed to him …."). Thus,

Joint Brief on Plaintiffs' Renewed              12              Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

"[w]ell over a hundred samples of Enlightened Kombucha tested over the last six years, purchased from different retail locations around the country, from different lot codes, tested using different methodologies by different laboratories and experts, have all come to the same conclusion: every Enlightened Kombucha at the retail level contains more than 0.5 percent alcohol by volume." Ex. 13 (Appx. 192) (Spedding Rep.) ¶ 39.

Dr. Spedding's testing and review of other studies—both of which show that 100% of Enlightened Kombucha tested at retail contained more than 0.5% alcohol—exceed the standards for class certification. Plaintiffs need not prove that "all or nearly all class members were *in fact injured.*" *Olean*, 31 F.4th at 680. Even "more than a de minimis number of uninjured class members" does not defeat predominance. *Id.* at 669; *see id.* at 680 (class certification proper despite argument that 28% of the class was uninjured). So Plaintiffs need not show that every bottle sold exceeded 0.5% alcohol. But they do.

Moreover, "the focus is on the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1028 (9th Cir. 2024) (cleaned up). Courts do not perform an "actual weighing, at class certification, of whether plaintiffs' evidence could sustain a jury verdict." *Id.* Here, Dr. Spedding's testing and his review of other studies are valid methods to prove that Enlightened Kombucha exceeds 0.5% alcohol when sold at retail. Whether his opinions are "probative as to all purchasers in the class … is a question of persuasiveness for the jury." *Olean*, 31 F.4th at 681 (quotation omitted).

Finally, Plaintiffs' evidence that 100% of Enlightened Kombucha tested *at the retail level* contained more than 0.5% alcohol is unrebutted. Retail is where Defendant makes the misrepresentations and omissions at issue to consumers and where consumers buy Enlightened Kombucha. So what matters is whether the representations and omissions were true at retail. But Defendant has never tested Enlightened Kombucha's alcohol level at retail, and its expert has no opinion about its alcohol level at retail. Ex. 10 (Appx. 91) (GT Dave Dep.) 229:24-230:7; Ex. 15 (Appx. 246) at 12 (RFA 11); Ex. 16 (Appx. 262) (McCarroll Dep.) 105:3-10. It was "not reasonable for GT's to rely on the testing results

Joint Brief on Plaintiffs' Renewed                13          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

from its commissioned labs if GT's wanted to know the actual alcohol by volume content of Enlightened Kombucha at retail." Ex. 14 (Appx. 229) (Spedding Rebuttal Rep.) ¶ 28. In any event, whether retail is the right time to test alcohol content is a merits issue that can be resolved classwide. So this dispute supports (rather than undermines) certification.

### 6. GT's: Alcohol and sugar content cannot be shown by common proof, and individual inquiries predominate as to alcohol.

In contrast to Plaintiffs' sparse and incomplete alcohol and sugar tests from over five years ago, GT's has produced extensive testing—as ordered by the *Retta* court—from the entire class period showing the products (a) uniformly test below 0.5% ABV and 120% sugar, and (b) vary between products and bottles depending on ingredients and storage. *Plaintiffs have not even tried to update their testing to account for changes to the product line in the five years since their last test.* Nor do they offer any reliable methodology for determining, on a classwide basis, the alcohol or sugar content of dozens of flavors of Enlightened sold in two states over an extended period. Even if they could, individualized inquiries as to whether class members purchased Kombucha bottles that *actually* had elevated alcohol or sugar preclude finding that class issues predominate.

### a. Alcohol and sugar content is not subject to common proof.

Plaintiffs' incomplete and flawed evidence offers no way to establish "in one stroke" that Enlightened had elevated alcohol or sugar "classwide." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). They can't show common falsity or Article III standing.

**Alcohol.** Plaintiffs' sole evidence is Dr. Spedding's report. Even if not excluded, he provides no common methodology that accounts for storage and ingredient variation across the product lines, nor can his sparse testing be extrapolated to suggest any classwide result. *First*, the testing is too limited. He tested 27 bottles from the class period, only 19 of which were from California and none from New York. Ex. 41 (App. 2165) (Spedding Dep.) 223:24-226:17; Ex. 44 (App. 2219) (McCarrol Reb.) 3-5.[8] *Second*,

---

[8] Spedding also tested 17 bottles from the *Retta* class period, which predate the formula changes to Enlightened. Dave 2026 Decl. (App. 898) ¶ 6. And while Spedding

Joint Brief on Plaintiffs' Renewed 14 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

the tests are too remote in time. The last was in 2021, many were of discontinued products, and he never tested the many other (at least 18) Enlightened products sold since that time. Dave 2026 Decl. (App. 898) ¶¶ 8-10. *Third*, his testing fails to account for Enlightened's dynamic nature. Spedding did not test the temperatures of his limited samples either at the point of sale or when they arrived at his lab. Ex. 44 (App. 2219) (McCarrol Reb.) 4, 5; Ex. 41 (App. 2165) (Spedding Dep.) 82:11-20, 198:3-20, 223:24-226:17, 224:18-20. *Fourth*, he was sloppy: the 19 California bottles (the only relevant samples) were shipped by former counsel in a single package; 7 were leaking on arrival; and he has no way of knowing if they were consistently refrigerated. Ex. 41 (App. 2165) (Spedding Dep.) 223:15-226:17.

These failures are critical: There is no way to evaluate alcohol content without testing each flavor and accounting for its refrigeration and storage.[9] Ex. 27 (App. 854) (McCarroll Rep.) 19-21, 25 n. 81; Ex. 44 (McCarroll Rebut.) 6-7. Certification requires showing the class was "actually exposed to the business practices at issue." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014); *see also Grodzitsky v. Am. Honda Motor Co.*, 2014 WL 718431, at *3 (C.D. Cal. Feb. 19, 2014) (denying certification because "the question 'is there a defect?' would not be capable of generating a common answer-yes or no."); *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 133 (2009). In contrast, GT's has, for the entire class period, commissioned regular third-party tests of *every* Enlightened flavor, with only one bottle testing above 0.5% ABV. Ex. 39 (App. 2091) (Dave Dep. 2021) 267:16-22); Ex. 38 (App. 2082) (Dave Dep. 2018) 61:15-62:22; 70:9-71:6; 77:9-78:3; 80:4-22; Dave Decl. 2026 (App. 898) ¶¶ 6-7 & Ex. 28; Ex. 27 (App. 853) (McCarrol Report) 4-5, 21-22, 24-26 & Ex. 3; Ex. 32 (App. 1548) (Old tests). To the extent any bottles exceed

cites the conclusions of expert reports in other litigation, "such reliance by an expert upon an excerpt from an opinion by another expert generated for the purposes of another litigation is improper" and "therefore inadmissible." *In re Imp. Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003), *aff'd*, 145 F. App'x 218 (9th Cir. 2005).

[9] Former counsel acknowledged varying alcohol levels meant some class members potentially received non-alcoholic beverages below" 0.5% ABV, which "would present issues as to commonality and predominance at class certification." 2017 WL 5479637, at 4.

Joint Brief on Plaintiffs' Renewed Motion for Class Certification                    15                    Case No. 2:19-cv-10920-FMO-DSRx

0.5% ABV at retail, it is likely the product of poor refrigeration. *Id.*

Spedding did not attempt to account for refrigeration of the tested product, and has no way of doing so, even after conceding that alcohol increases are "very small" when kombucha is properly refrigerated. Ex. 44 (App. 2219) (McCarrol Reb. Rep.) 4,5; Ex. 41 (App. 2165) (Spedding Dep.) 82:11-20; 192:9-14; 203:23-204:2; Ex. 45 (App 2262) (Spedding II) 176:1-14. Nor did he attempt to test every flavor, while admitting fermentation "depends and varies, in large degree, based on the specific ingredients used for a specific flavor" of the kombucha at issue, such that to "understand how a particular flavor is impacted by continued fermentation, you have to have a set of tests that are all on that flavor." *Id.* 251:7-25.

**Sugar.** For the same reasons, Plaintiffs identify no way to evaluate sugar content across the class. Spedding cannot account for the many GT's tests showing sugar within FDA thresholds, and his own tests showed significant variation between products: 30% of the samples had sugar levels within FDA's threshold. Ex. 13 (App. 192) (Spedding Rep.) ¶¶ 47, 47; 21 C.F.R. § 101.9(g)(5). Plaintiffs fail commonality for the sugar claims.

**Standing.** Plaintiffs who purchased Enlightened bottles without elevated sugar or alcohol did not suffer concrete injury and so do not show Article III "injury is capable of being established through a common body of evidence, applicable to the whole class." *In re Apple iPhone Antitrust Litig.*, 2025 WL 3124160, at *15 (N.D. Cal. Oct. 27, 2025).

### b. Individual inquiries as to alcohol content predominate.

Plaintiffs fail to prove "by a preponderance of the evidence that . . . a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023). Individualized inquiries into alcohol content will be necessary for each class member to determine whether the label is deceptive, and whether they suffered an Article III injury. Where a meaningful share of purchasers are uninjured, individualized issues predominate. *Olean*, 31 F.4th at 669-72*; Zinser*, 253 F.3d at 1189, 1192 (individualized inquiries of product variation and handling to decide damages defeats predominance and superiority).

Defendant will be entitled to probe whether individual class members' products actually had elevated alcohol.[10] *See Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025) ( "denying [Defendant]" the right to raise individualize issues "would seem to violate due process"); *Van*, 61 F.4th at 1067. This will require testimony and documents to determine what, when, and where class members purchased, and whether they experienced any effect suggesting elevated alcohol content.[11] Such consumer-by-consumer, or product-by-product, inquiries bar predominance. *See Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138-39 (9th Cir. 2022) (vehicle-specific variables required individualized injury determinations); *Tietsworth v. Sears, Roebuck & Co.*, 2013 WL 1303100, at *6 (N.D. Cal. Mar. 28, 2013) (individualized questions predominated with respect to whether each putative class member experienced claimed product flaw ).

### 7. Plaintiffs: Materiality and reliance are subject to common proof.

"Questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Kumar v. Salov N. Am. Corp.*, 2016 U.S. Dist. LEXIS 92374, at *21 (N.D. Cal. July 15, 2016). Under this "objective standard, the materiality of [Defendant's] alleged misrepresentations and omissions is a question common to all members of the class." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) (quotation omitted).

And although "proof of materiality is not a prerequisite to class certification,"

---

[10] Plaintiffs argue their evidence that "100% of Enlightened Kombucha tested *at the retail level* contained more than 0.5% alcohol is unrebutted," but this ignores the Rebuttal Report of Dr. McCarroll and significantly overstates the sparse, insufficient evidence they have produced. *Supra* § V.A.6. *See Groditsky*, 957 F.3d at 986 ("rigorous analysis" of whether expert evidence satisfies commonality is required).

[11] Plaintiffs misleadingly suggest *Olean*, 31 F.4th at 669, holds class certification may be appropriate "despite argument that 28% of the class was uninjured." *Supra*. But *Olean* did not resolve whether, as requirement of Article III standing, *all* plaintiffs are required to demonstrate standing before class certification, because it concluded that all plaintiffs had in fact done so. *Olean,* 31 F.4th at 682. The Ninth Circuit later held class certification was *not* appropriate due to predominance, where evidence demonstrated that just *18* of 13,680 plaintiffs had been discounted and so had no claim, because that raised the possibility that inquiry into *each* claim might be necessary. *Van*, 61 F.4th at 1068-69.

Joint Brief on Plaintiffs' Renewed                17                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs have it. *Id.* (quotation omitted). Mr. Silverman opines that the absence of the required government warning on the label "would be material to a reasonable consumer, as it would indicate to him or her that the product did not contain alcohol at all, or if it did, that the percentage of alcohol would be so low that it would not require the surgeon general's warning label." Ex. 12 (Appx. 129) (Silverman Rep.) ¶¶ 50, 58.

This Court has already held that Defendant's deception is material because whether its kombucha is an alcoholic beverage goes to "the very nature or an inherent quality or characteristic" of the product. *Tortilla Factory, LLC v. GTs Living Foods, LLC*, 2020 U.S. Dist. LEXIS 219851, at *2 (C.D. Cal. Sept. 11, 2020) (Olguin, J.) (quotation omitted). Furthermore, the Court was "unpersuaded that kombucha-purchasing consumers … would not find the alcohol or sugar content in the drink to be material." *Id.* at *2-3.

For the same reasons, causation (i.e., reliance) is subject to common proof for claims requiring it. "'[C]ausation, on a classwide basis, may be established by materiality,' so that 'if the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'" *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *30-31 (quotation omitted). "[C]lass members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements." *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018); *see, e.g.*, *Arris*, 327 F.R.D. at 366 (rejecting argument that the court had to "conduct individualized inquiries to discover which class members read the box and warranty information," and citing cases).

**8. GT's: Materiality, reliance, and causation preclude certification.**

Plaintiffs failed to identify common proof of materiality, *supra* § V.A.4. Courts deny certification where materiality evidence falls short. *E.g.*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011) (identifying "myriad reasons" someone might not be misled or influenced by the alleged omissions); *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 4398506, at *4-7 (C.D. Cal. Aug. 27, 2019) (defendant's evidence "rebut[ted] any

Joint Brief on Plaintiffs' Renewed 18 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

presumption" of materiality).[12] The same result is warranted here.

### a. No classwide materiality: alcohol omission.

Plaintiffs again rely on Silverman; his opinions fail for five independent reasons.[13]

*First*, Silverman's opinions do not apply classwide, as they are premised on the incorrect assumption that reasonable consumers did not read the alcohol disclosure, as detailed *supra* § V.A.4. *See Townsend v. Moster Bev. Corp.*, 303 F. Supp. 3d 1010, 1032 (C.D. Cal. 2018) (striking materiality expert declaration based "assumption").

*Second*, Silverman's opinion fails to address whether consumers who *have* read the alcohol disclosure, like named Plaintiffs, would consider the federal warning omission material. *Supra* § V.A.4. Even assuming consumers understood the federal minimum is 0.5% ABV (Silverman says they do not), would they find a disclosure that the product contains 0.6% or 1%, rather than 0.1-0.49%, material? Ex. 40 (App. 2095) (Silverman) 71:22-72:3, 73:3-10, 73:25-74:2; Ex. 36 (App. 2026) 42:15-42:7 (Nunez knew 0.5% cutoff); Ex. 35 (App. 1997) 123:18-124:1 (Patel did not know). Silverman cannot answer that question, as he did not consider the potential ranges of ABV at all. *Id.* 21:12-22:4 ("I think, to consumers, it's not so much a matter of the percentages … it's either indicated to be an alcoholic beverage or … a non-alcoholic beverage."). This fails Rule 23(a).

---

[12] Plaintiffs' authority focusing on consumer intent is irrelevant. *Bradach*, 735 F. App'x at 254-55 (concerning customer "motives"); *In re Arris*, 327 F.R.D. at 366 (concerning whether each class "member[] read the box"). Their other authority is likewise inapposite. *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *11 (C.D. Cal. Apr. 14, 2022) (materiality satisfied for supplement efficacy claims, as plaintiffs "would purchase a product that does not work"); *Tortilla Factory, LLC v. GTs Living Foods, LLC*, 2020 WL 6782056, at *1 (C.D. Cal. Sept. 11, 2020) (denying summary judgment in competitor case based on the Lanham Act's distinct materiality rules); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *7-8 (N.D. Cal. July 15, 2016) (plaintiff satisfied burden with market research evidence, industry research, and price premium evidence).

[13] *DZ Reserve*, 96 F.4th at 1234, did not eliminate the requirement of common proof of materiality (nor can it overrule *Stearns*). *DZ* recognizes "a case may be unsuited for class treatment if there was a material variation … in the kinds or degrees of reliance" (as here), and district courts have continued deny certification on this basis after *DZ*. *E.g.*, *Klein v. Dr. Ing. h.c.F. Porsche AG*, 2025 WL 2992172, at *11 (C.D. Cal. Oct. 22, 2025).

Joint Brief on Plaintiffs' Renewed Motion for Class Certification     19     Case No. 2:19-cv-10920-FMO-DSRx

*Third*, GT's *unrebutted* survey evidence shows materiality *cannot* be resolved with common evidence, as many consumers did not find the omission material. *See Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) (survey showed materiality not subject to common proof); *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 546 (N.D. Cal. Oct. 27, 2021) (court must "judge the persuasiveness" of "conflicting evidence" and "resolve any factual disputes" necessary). Expert Hal Poret conducted a 600 respondent survey, where the control group saw a 360° view of the current label, and test group an altered label with the federal warning and other alcohol-related disclosures. Ex. 24 (App. 664) (Poret Rep.) at 4, 8-24. There was no statistically significant difference in willingness to buy the product between the actual label and the federal warning label. *Id.* at 25, 45. And only 1.3% of respondents who saw the federal warning mentioned alcohol as a reason they would be unlikely *or likely* to purchase the Kombucha. *Id.* at 26. These figures demonstrate materiality is not susceptible to common proof. *See Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *13 (C.D. Cal. Mar. 8, 2016) (Olguin, J.) (no common evidence of materiality where survey showed 6% of consumers found statement material).

*Fourth*, Silverman's opinion that consumers don't buy products that expose them to "criminal liability" also fails. It too ignores the alcohol disclosure. Ex. 12 (App. 129) ¶ 59. And, consumers *do* regularly buy and consume alcoholic beverages; it is not illegal to do so. For example, another Enlightened purchaser testified "the amount of alcohol in a kombucha does not stop [her] from purchasing the product," and continued purchasing it, even after learning it might contain over 0.5% ABV. Ex. 43 (App. 2200) 171:21-172:2, 75:1-19, 126:16-128:3, 144:20-25, 155:7-21. Even at the Plaintiffs' claimed levels of alcohol (0.6%-2.2%), which Silverman fails to consider at all, there is no risk of approaching anything near the legal driving limits. *See* Ex. 24 (App. 854) (McCarroll) 6-7; *infra* § V.C.10. And any purported risk of "criminal liability" did not stop Plaintiffs from consuming alcoholic beverages when they were under 21. *E.g.*, Ex. 35 (App. 1997) (Patel) at 7:17-18, 111:3–14; 133:9–18; Ex. 37 (App. 2057) (Schmidt) at 118:13-119:15, 121:24-122:6; Ex. 36 (App. 2026) (Nunez) 7:25–8:1, 50:21–52:19, 53:24-9. Nunez even testified "specific

Joint Brief on Plaintiffs' Renewed             20             Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

alcohol content was not important to" him at the time. *Id.* at 25–8:1, 50:21–52:19; 53:24-9; 60:5-22. As buyers have different preferences, individual inquiries predominate.

*Fifth*, Silverman's opinions fail to address the other reasons consumers purchase kombucha, which also precludes materiality, including the brand, Ex. 12 (App. 129) ¶¶ 74–76; health benefits, flavor, and price. *Id.* ¶ 81 ("most important factors" are "taste[]" and "health[]"); Ex. 40 (App. 2095) (Silverman Dep.) 197:21-200:25, 202:23-203:18. *See Jones*, 2014 WL 2702726, at *15-16 (no common materiality where expert failed to assess other purchasing factors); *In re 5-Hour Energy*, 2017 WL 2559615, at *7 (same).

### b. No Classwide Materiality: Sugar Content

For sugar, Plaintiffs identify no common evidence to satisfy Rule 23(a). To the extent they rely on Silverman, his opinions do not fit the claims here, and he concedes sugar preferences differ among consumers—establishing no common proof exists.

*First*, Silverman's materiality opinion has no bearing on sugar claims. He does not opine that consumers read or rely upon the sugar disclosure in the nutrition facts panel, or even find it material. Instead, he opines that if consumers learn of discrepancies in sugar content *after purchase*, they consider that "material." Ex. 12 (App. 129) ¶¶ 87-88. That does not fit Plaintiffs' claims, which require material deception, i.e., a statement customers read and upon which they base their purchase. *See, e.g.*, *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) (if a customer does not read the nutrition panel, she cannot be "deceived by it"). Without such evidence, Plaintiffs fail to show by common proof they were deceived, let alone by a material misrepresentation. *Painters*, 674 F. Supp. 3d at 835-36, 839 (without this evidence, "the issue is not subject to common proof.").

*Second*, Silverman admitted sugar preferences are not the same classwide. Rather, he testified sugar understatement would only be material to the portion of consumers "concerned about … how much sugar is in a product," but "not every consumer cares about sugar content." Ex. 40 (App. 2095) 209:17-21, 236:6-8; *see Ono*, 2016 WL 6647949, at *13 (no common materiality where portion of consumers that found statement material were not coextensive with class members). For consumers that do care, he admits they

Joint Brief on Plaintiffs' Renewed       21       Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

differ as to what size sugar discrepancy is material. Ex. 40 (App. 2095) 233:11-249:9. Sugar preferences vary among even the named plaintiffs, based on unique dietary preferences. Ex. 36 (App. 2026) (Nunez) 101:2-9 ("limit[s] the amount of added sugar" he "consume[s]"); Ex. 35 (App. 1997) (Patel) 35:8-36:4 (cares about sugar because "borderline" "prediabetic"); Ex. 37 (App. 2057) (Schmidt) 156:11-158:15 (did not care about specific sugar level and confirmed sugar discrepancies would not matter).

### B. Predominance as to liability for each of Plaintiffs' claims.

#### 1. Plaintiffs: Common questions predominate the "unlawful" California UCL claim.

The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (quotation omitted). The "reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." *Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791, at *71 (N.D. Cal. Aug. 13, 2019) (quotation omitted).

Defendant's conduct is unlawful because it violates federal law, which provides that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the health warning statement required by § 16.21." 27 C.F.R. § 16.20. A specific "GOVERNMENT WARNING" must appear on the label of alcoholic beverages. *Id.* § 16.21.

Consumer deception is not an element of a violation of this law. So the only liability questions for this claim are (1) whether Enlightened Kombucha is an "alcoholic beverage"; and (2) whether the labels contained the required warning. As explained above, both questions are subject to common proof. *Supra* §§ V.A.3, 5.

#### 2. GT's: No predominance as to California unlawful UCL claims.

Plaintiffs fail commonality and predominance for UCL "unlawful" claims because they cannot show, on a classwide basis, elevated alcohol content. *Supra* § V.A.6; *see Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 891 (N.D. Cal. 2022); *Berger*, 741 F.3d at

Joint Brief on Plaintiffs' Renewed          22          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

1068 ("certification of UCL claims is available only to [] class members who were actually exposed to the business practices at issue"). Plaintiffs also fail to meet commonality and predominance as to statutory standing, i.e., they have "lost money or property as a result of the unfair competition." *Nacarino*, 668 F. Supp. 3d at 891 (quoting Cal. Bus. & Prof. Code § 17204). Plaintiffs fail as to materiality, *supra* § V.A.8, and loss, *infra* § V.C.6.

### 3. Plaintiffs: Common questions predominate the deception-based California UCL, FAL, and CLRA claims.

"For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *28 (quotation omitted). For the UCL and FAL, "it is necessary only to show that members of the public are likely to be deceived." *Id.* at *29 (quotation omitted). "This inquiry does not require individualized proof of deception, reliance and injury." *Id.* at *30 (quotation omitted). Similarly, CLRA claims require only that "(1) the defendant's conduct was deceptive; and (2) the deception caused plaintiff harm." *Id.*

The UCL, FAL, and CLRA are "ideal for class certification" because "whether or not Defendants' claims are misleading is an objective, classwide inquiry." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (first quotation); *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *29 (C.D. Cal. Apr. 9, 2014) (second quotation). The court need not "investigate class members' individual interaction with the product." *Tait*, 289 F.R.D. at 480. So "district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.*

Here, Plaintiffs' deception-based claims can all be answered with common proof. The contents of the label were materially identical, and what they conveyed is subject to the objective "reasonable consumer" standard. *Supra* § V.A.3. Whether what the labels conveyed was true—i.e., whether Enlightened Kombucha is not an alcoholic beverage—is subject to the common proof of Dr. Spedding's testimony. *Supra* § IV.A.5. Materiality is based on an objective "reasonable consumer" standard. *Supra* § IV.A.7. And classwide causation (i.e., reliance) may be established by materiality. *Id.*

Joint Brief on Plaintiffs' Renewed                23                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

### 4. GT's: No predominance as to the UCL, FAL, and CLRA claims.

Plaintiffs fail to show commonality and predominance as to deception, materiality, and falsity, all required for UCL, CLRA, and FAL claims. *Supra* §§ V.A.4, .6, .8.

### 5. Plaintiffs: Common questions predominate the New York GBL claim.

New York's GBL is "similar to the California statutes discussed above." *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, at *31 (C.D. Cal. July 1, 2013). Like the California statutes, "the standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." *Id.* (quotation omitted).

The GBL also requires injury, which all class members will show in the same way: they spent money to buy one product (non-alcoholic kombucha,) but received a fundamentally different product (alcoholic kombucha). Alcoholic beverages are subject to numerous regulations, are illegal to drink while driving, are illegal to give to minors, are prohibited in many locations (including workspaces), should not be drunk before operating machinery, can lead to alcoholism, obesity, cancer, and other health problems, and pose a risk of intoxication. For these and other reasons, consumers (and the law) view alcoholic and non-alcoholic beverages as fundamentally different. That is why Defendant has separate alcoholic (Classic) and supposedly non-alcoholic (Enlightened) lines of kombucha, and why its Enlightened line makes up 80-90% of its sales. Ex. 10 (Appx. 91) (GT Dave Dep.) at 211:3-9. Thus, consumers did not receive the product they thought they were buying. In these circumstances, "the injury is the purchase price." *In re Amla Litig.*, 282 F. Supp. 3d 751, 768 (S.D.N.Y. 2017) (quotation omitted).

This distinguishes this case from *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999). In *Small*, plaintiffs sued a cigarette manufacturer for deceiving them about the addictive properties of cigarettes. *Id.* at 50. But because they paid for cigarettes, and got cigarettes of the same value, the only alleged "injury" was the deception itself. *Id.* at 56. They could not allege "deception as both act and injury." *Id.* Here, by contrast, Plaintiffs paid for

Joint Brief on Plaintiffs' Renewed      24      Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

non-alcoholic kombucha and received a different product: alcoholic kombucha. The injury is not just deception; it is paying money but being left without the desired product, and instead receiving a different, unwanted product. It is as if the *Small* plaintiffs had bought candy cigarettes but received real ones, or bought cigarettes but received marijuana joints. Paying for a product but receiving a different, unwanted product is an injury, even if people who actually want the different product are willing to pay something for it.

"Accordingly, as with the California claims, liability under the New York statutes can be established with common proof. Individualized proof of reliance is not necessary, and as explained above, whether a reasonable consumer would have been deceived by [Defendant's] packaging is an objective inquiry that focuses on that packaging. Common questions therefore predominate regarding [Defendant's] liability under the New York consumer protection statutes." *Guido*, 2013 U.S. Dist. LEXIS 94031, at *32-33.

### 6. GT's: Plaintiffs' fail commonality for the NY GBL claim.

Plaintiffs cannot certify their GBL claim for the additional reason that Plaintiffs cannot satisfy Rule 23 as to its distinct injury requirement. Plaintiffs fail to distinguish binding New York authority holding their claimed injury is not cognizable under the GBL.

The GBL claim requires deception by a material statement, causation, and injury. *Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 497 (E.D.N.Y. 2024). "[T]he New York Court of Appeals has rejected the argument that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive practices, have necessarily suffered an injury for [GBL] purposes." *In re Lenovo Adware Litig.*, 2018 WL 620145, at *4 (N.D. Cal. Jan. 30, 2018) (cleaned up). Rather, "injury" requires "manifestation of either pecuniary or actual harm" in the form of physical injury or paying more for a product than it is worth. *Small*, 94 N.Y.2d at 56. Where a plaintiff "confine[s] the relief sought solely to . . . recoupment of the purchase price," they have no injury under the GBL. *Id.* (affirming decertification and dismissal of claims that smoking misrepresentations caused purchase); *Kronenberg*, 743 F. Supp. 3d at 497 (plaintiffs cannot seek "refund of the price of a good or service whose purchase was allegedly secured by deception.").

Joint Brief on Plaintiffs' Renewed 25 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs' failure to satisfy Rule 23 as to this definition of injury bars certification of this claim. *See Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 57 (S.D.N.Y. 2019) ("[W]here it is unclear that some or all class members suffered a measurable monetary harm, [this] requirement often precludes certification."). Plaintiffs fail to distinguish *Small*, and cite no authority supporting their claimed distinction. They offer no common evidence or argument the product's value was affected by the claimed deceptions, nor can they, as Enlightened is equal to (or cheaper than) GT's alcoholic kombucha. Ex. 34 (App. 1995). Plaintiffs cannot certify a class on this claim. Plaintiffs cited case, *In re Amla Litig.*, 282 F. Supp. 3d at 768, relied on a quote taken out of context from *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013), which did not hold the injury can be the "purchase price," but rather required a price premium. The *In re Amla* court later shifted to requiring price premium. 328 F.R.D. 127, 135-39 (S.D.N.Y. 2018).

And, as stated *supra* §§ V.A.4, .6, .8, Plaintiffs also fail to show commonality or predominance for deception, materiality, and causation.

### 7. Plaintiffs: Common issues predominate the implied warranty claim.[14]

Predominance is satisfied for breach of the implied warranty of merchantability where the claims are "based on common contentions of deceptive conduct by Defendants in marketing their products." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012). Here, Plaintiffs' implied warranty claim is based on common contentions of deceptive conduct. The labels were materially identical, and Plaintiffs have classwide evidence that the product was not merchantable as a purported non-alcoholic beverage. And because this case involves food products, privity of contract is not needed. *See Stanley v. Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1005 (C.D. Cal. 2014) (collecting cases); *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 606 (1960) (exception to privity requirement "where the product is food for human consumption").

### 8. GT's: The implied warranty claim fails predominance.

---

[14] Plaintiffs seek to certify the implied warranty claim only for the California classes.

Joint Brief on Plaintiffs' Renewed                26                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs cannot certify an implied warranty class because they fail to identify common evidence of classwide "vertical privity with the defendant." *Gross*, 2022 WL 1063085, at *8. Courts routinely deny certification, including as to food products, on this basis. *Id.* (juice-based beverages); *Shin*, 348 F.R.D. at 488-89 (packaged noodles); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 986 (C.D. Cal. 2015), *aff'd* 844 F.3d 1121 (cooking oils). Their "food products" exception does not apply here, but only to "adulterated, dangerous foods" that "are not fit for human consumption." *Shin*, 348 F.R.D. at 488-89. The slightly elevated alcohol levels claimed here do not fit the bill, and nothing in the record suggests products were *ever* dangerous or unfit for human consumption. Plaintiffs also lack class wide evidence that sugar or alcohol levels were excessive. *Supra* § V.A.6.

### 9.  Plaintiffs: Common questions predominate common-law fraud.

The Ninth Circuit "favors class treatment of fraud claims stemming from a common course of conduct." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (quotation omitted); *see, e.g.*, *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 432 (C.D. Cal. 2012) (predominance satisfied where sales brochures were "sufficiently similar to justify an inference of class-wide reliance"); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (certifying fraud claim based on "uniform representations"). Here, all class members' fraud claims stem from a common course of conduct: Defendant's materially identical labels.

### 10. GT's: Individual questions predominate common-law fraud.

Plaintiffs' common law fraud fails predominance for the same reason as their other deception-based claims. *Supra* §§ V.A.4, .6, .8; *Roley*, 2020 WL 8675968, at *7.

### 11. Plaintiffs: Common questions predominate unjust enrichment.

"[U]njust enrichment claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Beck-Ellman*, 283 F.R.D. at 568. "Common to all class members and provable on a class-wide basis is whether Defendant[] unjustly profited from the sale of [its kombucha]." *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010); *see*

Joint Brief on Plaintiffs' Renewed Motion for Class Certification

27

Case No. 2:19-cv-10920-FMO-DSRx

*Yeend v. Akima Glob. Servs., LLC*, 2025 U.S. Dist. LEXIS 61354, at *57 (N.D.N.Y. Mar. 31, 2025) (certifying unjust enrichment class).

### 12. GT's: Individual questions predominate unjust enrichment.

Plaintiffs' unjust enrichment claims fail commonality and predominance for the same reasons as the other claims: whether customers' payment for the Kombucha was "unjust or inequitable" rests on the products' actual alcohol and sugar levels, and whether it was material. *Berger*, 741 F.3d at 1070; *supra* §§ V.A.6, .8.

### C. Predominance as to damages.

#### 1. Plaintiffs: Common questions predominate damages.

At class certification, a plaintiff need only "present a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is 'susceptible of measurement across the entire class.'" *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 303 (N.D. Cal. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). The Ninth Circuit has "not construed *Comcast* as requiring plaintiffs to provide a class-wide method for calculating damages at the class certification stage, but rather as requiring only that plaintiffs demonstrate a logical connection between their damages model and their theory of liability." *Falcone v. Nestle USA, Inc.*, 2026 U.S. App. LEXIS 555, at *5-6 (9th Cir. Jan. 9, 2026). An argument that a damages model is "flawed" does not defeat class certification. *Grace v. Apple, Inc.*, 328 F.R.D. 320, 340 (N.D. Cal. 2018). Rather, to violate *Comcast*, a model must be so "untethered from plaintiff's theory of liability … that it has no possibility of demonstrating the amount of damages." *Lytle*, 114 F.4th at 1027.

Here, Plaintiffs present multiple damages models that stem from Defendant's wrongdoing and can be measured across the entire class.

#### 2. GT's: Plaintiffs cannot satisfy predominance through full refund.

This Court indicated Plaintiffs' full refund model might not be "viable." Dkt. 129 at 6. Correct: it fails to account for Enlightened's value (e.g., flavor, effervescence, probiotics), and thus fails under *Comcast*. Despite the Court advising Plaintiffs to address this concern, Plaintiffs instead try to downplay the *Comcast* requirement and recycle the

Joint Brief on Plaintiffs' Renewed Motion for Class Certification        28        Case No. 2:19-cv-10920-FMO-DSRx

same insufficient arguments. In doing so, they reaffirm this bar to certification.

"The Ninth Circuit rule that damage calculations do not defeat certification does not relieve Plaintiffs of the *requirement* of putting forth a damages model that ties the theory of liability to damages" under *Comcast. In re 5-Hour Energy*, 2017 WL 2559615, at *9. Countless courts have rejected the full refund theory for mislabeled beverages claims, as it fails to account for the value received, and is not sufficiently linked to the theory of liability. *See Capaci*, 2022 WL 1133818, at *16 (listing cases rejecting full refund method for "beverages," noting such products "provide some value … [like] calories, hydration or good taste"). Plaintiffs' full refund model likewise fails here.

### 3. Plaintiffs: The viability of Plaintiffs' full-refund damages model is a merits question not addressed at class certification.

In its prior ruling, the Court asked whether the viability of Plaintiffs' full-refund damages model "is an issue for the class certification or the merits stage of litigation." Dkt. 129 at 6. The Ninth Circuit recently held that the viability of a full-refund damages model for UCL and CLRA claims is "a merits issue not decided at class certification." *Falcone*, 2026 U.S. App. LEXIS 555, at *6 (full-refund model supported class certification where labels falsely stated chocolate was "sustainably" or "responsibly" sourced). In any event, Plaintiffs' full-refund model is viable for the reasons explained below.

### 4. GT's: Plaintiffs must satisfy *Comcast* and Rule 23(b)(3) now.

Plaintiffs' exclusive reliance on *Falcone* does not save their full refund model from *Comcast* scrutiny. **First**, Plaintiffs do not address, or satisfy, their burden to establish *at class certification* that damages are measurable on a classwide basis. *Olean*, 31 F.4th at 664 (plaintiffs must "prove—not simply plead … each requirement of Rule 23 … before class certification"). *Comcast* makes clear no damages class can be certified unless plaintiffs "establish" a model that "measures only damages attributable to [their damages] theory." 569 U.S. at 35. "Refusing to entertain arguments against respondents' damages model …simply because those arguments would also be pertinent to the merits determination" is error. *Id.* at 34. Yet Plaintiffs ask the Court to do exactly that. Nothing excuses Plaintiffs

Joint Brief on Plaintiffs' Renewed        29        Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

from their burden of "establishing that damages are measurable on a classwide basis." *Id.*; *Dukes*, 564 U.S. at 350 & n.6 ("Frequently … rigorous analysis will entail some overlap with the merits"). Plaintiffs fail: there is no legal basis for full damages, *Shin*, 348 F.R.D. at 486 n.4, nor common proof supporting this method should apply, *Alvarez v. NBTY, Inc.*, 331 F.R.D. 416, 416 (S.D. Cal. 2019) (no full refund; "even under Plaintiff's theory [that product was 'worthless'], some people benefitted from the products").

*Second*, *Falcone* does not save their claims. No. 24-7707, Dkt. 60.1 (petition for rehearing *en banc* pending). There, plaintiffs presented evidence the product was "worthless" based on "strong consumer" preferences because it was made using "abhorrent practices of child slave labor" rather than sustainably. 2024 WL 4868298, at *13 (S.D. Cal. Sept. 26, 2024). Plaintiffs here offer no such evidence: many purchasers *do* value Enlightened. *Infra* § V.C.6. Next, *Falcone* is unpublished cannot contradict *Comcast*, which does not permit plaintiffs to simply assert a product is worthless to justify a full refund. Further, *Falcone* rests its holding on *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183-84 (9th Cir. 2017), which held a full refund method was appropriate only because plaintiff proffered *evidence* supporting the product was valueless. *Id.* Last, after *Falcone*, district courts continue to deny class certification on full refund method absent evidence the product is "worthless." *E.g.*, *Smith v. Shahidi*, 2026 U.S. Dist. LEXIS 493369, at *22-26 (C.D. Cal. Mar. 9, 2026). Plaintiffs no longer dispute Enlightened has value (as courts), and thus concede it. They instead argue it is "legally worthless" as illegal, and that certain legal theories do not require accounting for value. These arguments fail, as detailed below.

### 5. Plaintiffs: A full refund is available as actual damages.

Actual damages are available for Plaintiffs' CLRA, implied warranty, and fraud claims.  *See* Cal. Civ. Code § 1780(a)(1); *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2015 U.S. Dist. LEXIS 64145, at *13 (N.D. Cal. May 14, 2015) (implied warranty); *Robalo LLC v. Taigh Ramey*, 2012 U.S. Dist. LEXIS 89378, at *1 (E.D. Cal. June 26, 2012) (fraud).

Courts in this Circuit have repeatedly held that a full refund is an appropriate measure of actual damages in deceptive-advertising class actions.  For example, in

Joint Brief on Plaintiffs' Renewed     30     Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Amavizca*, the court held that a full-refund model of actual damages supported class certification in a deceptive-labeling case. *Amavizca v. Nutra Mfg., LLC*, 2021 U.S. Dist. LEXIS 36009, at *33-34 (C.D. Cal. Jan. 27, 2021). It rejected the defendant's argument that the plaintiffs had to account for value received, because that argument "pertained only to the remedy of restitution, not the remedy of damages." *Id.* at *34. Where the consumer would not have purchased the product but for the deception, actual damages need not account for value received. *Id.* Other courts have held the same. *See Sanderson v. Whoop, Inc.*, 2025 U.S. Dist. LEXIS 42118, at *35 n.18 (N.D. Cal. Mar. 7, 2025) (agreeing that "actual damages, instead of restitution, … does not require Plaintiff to account for value received"); *Keating v. Nordstrom, Inc.*, 2020 U.S. Dist. LEXIS 63124, at *15 (D. Alaska Apr. 10, 2020) (accepting full-refund damages model under CLRA, and stating that the benefit-received argument applies only "in the context of restitutionary damages, or … where the plaintiffs did not contend that consumers never would have purchased the product absent the [deception]") (quotation omitted).

In these cases, plaintiffs did not need to show that the products were valueless to obtain a full refund in actual damages. Rather, full refunds were appropriate because the plaintiffs had evidence that, but for the deception, consumers would not have purchased the products (even though the products may have had value). In *Keating*, for example, the plaintiffs purchased clothes because of misleading discounts, but the clothes still had some value. One of the plaintiffs even admitted that her item was "worth $28.90 to me." *Id.* at *9. But because consumers would not have purchased the items absent the deceptive discounts—i.e., but for the deception, they would have spent $0—a full-refund model was an appropriate measure of actual damages. *Id.* at *15-16.

Here, similarly, class members would not have made their purchases of Enlightened Kombucha had they known they were alcoholic beverages. *See* Ex. 12 (Appx. 129) (Silverman Rep.) ¶ 91 ("[C]onsumers would not have purchased the Challenged Products had they come to know that they could not trust that the products are not alcoholic."); *see, e.g.*, Ex. 3 (Appx. 21) (Patel Dep.); 127:10-16; Ex. 4 (Appx. 27) (Schmidt Dep.) 167:20-

Joint Brief on Plaintiffs' Renewed                31                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

168:2; Ex. 5 (Appx. 35) (Nunez Dep.) 50:3-7, 125:14-126:1. Consumers buy alcoholic beverages only when they want an alcoholic beverage, not when they want a soft drink. Thus, because class members would not have purchased Enlightened Kombucha when they made the purchases at issue—i.e., they would have spent $0 on Enlightened Kombucha (and bought something else instead)—a full refund is appropriate.

### 6. GT's: Full refund damages do not fit Plaintiffs' theory.

As "actual damages" require accounting for the value received, Plaintiffs' claims for full refund "damages" also fail under *Comcast*. "'Actual damages' is 'the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received.'" *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 625 n.3 (9th Cir. 2018) (cleaned up); *Shin*, 348 F.R.D. at 485 (fraud and implied warranty). Courts reject the full refund model because, whether plaintiffs seek restitution or damages for mislabeling claims, their damages model must account for the value of the products. *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *12-14 (N.D. Cal. Aug. 31, 2018) (rejecting full refund for CLRA damages); *Mezzadri v. Med. Depot, Inc.*, 2016 WL 11783673, at *3 (S.D. Cal. Nov. 18, 2016) (same for implied warranty damages).

Plaintiffs' full refund model fails for the same reasons. **First,** under any theory, Plaintiffs lack common proof for excessive alcohol content. *Supra* § V.A.6. **Second**, the *Retta* court acknowledged full refund fails to account for Enlightened's "value" provided by "multiple vitamins, enzymes, and probiotics in the Subject Products that provide hydration and calories to consumers," even assuming the alcohol content for some bottles exceeded 0.5% ABV. *Retta*, 2017 WL 5479637, at *4. **Third**, Plaintiffs themselves testified to the many benefits from which they derive value, which their damages model must account for. Ex. 35 (App. 1997) (Patel) 68:10-16; Ex. 36 (App. 2026) (Nunez) 69:14-70:25; Ex. 37 (App. 2056) (Schmidt) 166:5-167:19. Despite Plaintiffs' claims they would not have purchased Enlightened had they known it contained alcohol, each knew it contained *some* alcohol when they purchased it. Ex. 36 (Nunez) (App. 2026) 42:7-23; Ex. 35 (Patel) (App. 1997) 58:11-59:9, 122:5–124:1; Ex. 37 (Schmidt) (App. 2056) 140:18-142:18. **Fourth**, the

Joint Brief on Plaintiffs' Renewed Motion for Class Certification
32
Case No. 2:19-cv-10920-FMO-DSRx

record does not support any assertion that Enlightened should be treated as worthless even if it had slightly more alcohol than expected, *supra* § V.A.8 and *infra* § V.C.10.

Plaintiffs' cases are inapposite.[15] In *Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113, at *12 (C.D. Cal. Jan. 27, 2021), Judge Klausner permitted full refund, but in a later opinion clarified he only so held because "the product was 'worthless'" as a mislabeled supplement, "justifying a full refund," *Golikov v. Walmart Inc.*, 2025 WL 847342, at *8 n.2 (C.D. Cal. Feb. 27, 2025). *Sanderson v. Whoop, Inc.*, 2025 WL 744036, at *13 n.18 (N.D. Cal. Mar. 7, 2025), relies on *Amavizca*, and bases damages on violation of an auto-renewal statute that rendered full return of the challenged subscription fee appropriate.

### 7. Plaintiffs: A full refund is available as restitution because the fraud is in the selling of alcoholic beverages as non-alcoholic beverages.

Plaintiffs' UCL, FAL, CLRA, and unjust enrichment claims all provide for restitution, which courts give "a broad, liberal reading." *Spann v. J.C. Penney Corp.*, 2015 U.S. Dist. LEXIS 42545, at *8-9 (C.D. Cal. Mar. 23, 2015) (Olguin, J.). As this Court has held, "the difference between what the plaintiff paid and the value of what the plaintiff received" is not "the only way restitution can be calculated." *Id.* at *11. Rather, courts have "broad discretion to craft a restitutionary remedy" to "effectively return the plaintiff to the status quo." *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 637 (S.D. Cal. 2015).

Defendant agrees that full refunds are available in restitution when either "the product (1) is completely valueless, or (2) the fraud in the selling induced the plaintiff[s] to purchase a product [they] otherwise would not have purchased." Dkt. 113 at 36 (quoting *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *10 (S.D. Cal. May 12, 2016)). Thus, a product need not be worthless to obtain a full refund in restitution; a full refund is also available if fraud in the selling induced the plaintiff to purchase a product they otherwise would not have purchased (even if the product has some value). *See FTC v. Figgie Int'l*, 994

---

[15] *E.g., Keating v. Nordstrom, Inc.*, 2020 WL 1846988, at *7 (D. Alaska Apr. 10, 2020) (ruling on summary judgment in deceptive pricing case, and specifically distinguishing class actions from the individual damages claims at bar).

F.2d 595, 606 (9th Cir. 1993) ("reject[ing] the contention" that full refunds are "available only when the goods purchased are essentially worthless").[16]

The quintessential example of this second option is a merchant who sells rhinestones claiming they are diamonds. *See id.* Although rhinestones have value, courts awarding restitution "would not limit [consumers'] recovery to the difference between what they paid and a fair price for rhinestones." *Id.* That is because rhinestones and diamonds are fundamentally different products. A consumer looking for diamonds would not buy rhinestones, even though rhinestones have some value. "The fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds." *Id.*

The Ninth Circuit applied this reasoning in *Figgie* to permit full refunds for consumers who purchased heat detectors from a company that misrepresented their effectiveness as fire safety devices. *Id.* There was a conclusive factual finding in that case that the "heat detectors have some value." *Id.* But the fraud was not in "the value of the thing sold"; it was in whether the product was an effective fire safety device. *Id.* If consumers had known they were not effective fire safety devices, they would not have bought them in the first place. *Id.* So full refunds were appropriate in restitution. *Id.*

In *Makaeff*, the court applied *Figgie* to find a full-refund restitution model appropriate for students who paid for courses at Trump University but did not actually learn "Donald Trump's unique secrets to success." *Makaeff*, 309 F.R.D. at 637. Full refunds were appropriate because "the fraud was in the selling by TU, not in the value of the thing sold. … [T]he issue is not the value or appeal of the classes they did not sign up for (i.e., the rhinestones)—the issue is that they did not receive what they thought they

---

[16] This Court addressed the first option (completely valueless) in the context of weight-loss pills that did not work, and found it satisfied because the plaintiff had sufficiently shown that the dysfunctional pills had no value. *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *46-52. That case did not address the second option (fraud in the selling that induced a purchase that otherwise would not have occurred). Also, since then, the Ninth Circuit has clarified that "whether the products are worthless is a merits issue not decided at class certification." *Falcone*, 2026 U.S. App. LEXIS 555, at *6.

Joint Brief on Plaintiffs' Renewed Motion for Class Certification      34      Case No. 2:19-cv-10920-FMO-DSRx

were buying (i.e., the diamonds)." *Id.* at 638.

The *Suchanek* case from Illinois is especially on point. In that case, the plaintiffs alleged that what the defendant marketed as premium, ground coffee was really over 95% instant coffee. *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 243 (S.D. Ill. 2015). The court held that a full-refund damages model supported class certification. *Id.* at 258. Although instant coffee indisputably has value—there is an entire market for it—it is a fundamentally different product than premium, ground coffee. *Id.* And the consumers in *Suchanek* were looking to buy premium, ground coffee, not instant coffee. *Id.* In other words, the fraud was in the selling and was about the nature of the product, not its value.

Here, too, the fraud is in the selling—about the nature of the product—not in the product's value. There is a market for alcoholic kombucha, just like there are markets for instant coffee, rhinestones, and heat detectors. But an alcoholic beverage is a fundamentally different product from a non-alcoholic beverage. *Supra* § V.B.5. And when consumers buy Enlightened Kombucha, they mean to buy a non-alcoholic beverage, not an alcoholic one. So class members would not have made their purchases of Enlightened Kombucha had they known it was an alcoholic beverage. *See* Ex. 12 (Appx. 129) (Silverman Rep.) ¶ 91; Ex. 3 (Appx. 21) (Patel Dep.); 127:10-16; Ex. 4 (Appx. 27) (Schmidt Dep.) 167:20-168:2; Ex. 5 (Appx. 35) (Nunez Dep.) 50:3-7, 125:14-126:1.

Thus, the fraud in the selling of the product (selling an alcoholic beverage as a non-alcoholic beverage) induced class members to purchase products that they otherwise would not have purchased. This supports restitution in the form of a full refund. *See id.*; *Figgie*, 994 F.2d at 606; *Makaeff*, 309 F.R.D. at 637-38; *Suchanek*, 311 F.R.D. at 258. And Plaintiffs need not actually prove this theory of restitution here; that is a merits question for trial. *Falcone*, 2026 U.S. App. LEXIS 555, at *6.

This is not a case where plaintiffs "put valuation at issue by alleging that due to the alleged misrepresentations they paid more for a [product] tha[n] it was worth." *Makaeff*, 309 F.R.D. at 637 (distinguishing such cases). For example, in some consumer class actions, the theory of harm is that the defendant's misrepresentations artificially inflated

Joint Brief on Plaintiffs' Renewed 35 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

prices, causing the class to pay more than they otherwise would have (a price premium). *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). In such cases, the proper measure of restitution is the difference in the value paid versus the value received. Here, the theory of harm is not that Class members overpaid—it is that they paid at all, because they bought a product they did not want: alcoholic kombucha (like instant coffee or rhinestones). The only way to put Class members in the position they would otherwise be in is to refund the amount they spent. *See Figgie*, 994 F.2d at 606.

### 8. GT's: Fraud-in-the-selling cases do not apply to Plaintiffs' claims.

Plaintiffs fraud-in-the-selling cases do not save their full refund model.

*First*, Plaintiffs' full refund arguments are all premised on Enlightened being alcoholic, but Plaintiffs lack common proof as to that claim. *Supra* § V.A.6.

*Second*, Plaintiffs misapply their cases. The fraud-in-the-selling rule applies only when the purchaser has bought a product that is (a) wholly useless for its stated purpose (like a supplement), or (b) constitutes an entirely different object at its core. *See Mezzadri*, 2016 WL 5107163, at *11; *e.g., Makaeoff*, 309 F.R.D. at 636-67, 639 (educational courses "worthless" where "[plaintiffs] received was nothing of what was promised", and distinguishing from food products). It does not apply where, as here, a plaintiff was dissatisfied with a characteristic of the product, but would have "purchased another manufacturer's product instead"; in that case, plaintiffs cannot say that *no purchase would have occurred at all. Mezzadri*, 2016 WL 5107163, at *11. *Mezzadri* distinguishes Plaintiffs' diamond example and *Figgie* on this basis

*Third*, even if the cases applied, Plaintiffs fail to support their theory. The label advised consumers it contains alcohol and to not drink it if avoiding alcohol. Ex. 30 (App. 1486) (labels). As discussed *supra* § V.A.8, *infra* § V.C.10, the presence of slightly more alcohol than disclosed (a claimed 0.8% ABV difference on average) does not render the product completely different, and many consumers would still purchase it. *Suchanek*, 311 F.R.D. 239, is inapposite for this reason. There, Plaintiffs provided "plenty of evidence" consumers would not have purchased but for the deceptive labeling, because customers

Joint Brief on Plaintiffs' Renewed 36 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

"only" wanted fresh, "ground" coffee as represented, not instant coffee, and Defendants "produced absolutely no evidence" consumers would have purchased the product "had they known [it] was instant coffee." *Id.* at 258. Here, Plaintiffs have no such evidence.

### 9. Plaintiffs: The illegality and danger of selling alcoholic beverages disguised as non-alcoholic beverages further supports a full refund.

Another situation where courts permit full-refund damages models is where the sale of the product at issue is illegal or inherently unfair. *See Jackson-Jones v. Epoch Everlasting Play, LLC*, 748 F. Supp. 3d 823, 832 (C.D. Cal. 2024) ("When a party sells products to consumers that are 'inherently unfair or illegal,' a full refund damages model is appropriate."), *vacated on other grounds by* 2025 U.S. App. LEXIS 21288 (9th Cir. Aug. 20, 2025). Examples of sales warranting full refunds under this doctrine include selling controlled substances over-the-counter, selling nicotine products to minors, selling toys with small parts to children in violation of the Federal Hazardous Substances Act, and selling bird food that poisons birds. *See, respectively*, *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 160 (2010); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022); *Jackson-Jones*, 748 F. Supp. 3d at 832; *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 556 (S.D. Cal. 2017).

Awarding anything less than a full refund for an illegal sale "would legitimatize the illegal sale." *Makaeff*, 309 F.R.D. at 640. So when it is "illegal or inherently unfair" to sell a product, consumers are deemed to "receive[] no value from it at all" and may receive a full refund. *JUUL*, 609 F. Supp. 3d at 976; *see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019) (accepting argument "that a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value"). Thus, a plaintiff "does not put valuation at issue when he alleges that he bought a product that was illegal to sell or possess." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 160.

Here, Defendant's sales of alcoholic Enlightened Kombucha were illegal. It is illegal to sell alcoholic beverages without the required government warning. 27 C.F.R. § 16.20. It is illegal to sell alcoholic beverages without paying excise taxes imposed on

Joint Brief on Plaintiffs' Renewed Motion for Class Certification 37 Case No. 2:19-cv-10920-FMO-DSRx

alcoholic beverages (and willful failure to do so is criminal tax evasion). *E.g.*, 26 U.S.C. §§ 5051, 7201. And it is illegal to sell alcoholic beverages to people under 21. Cal. Bus. & Prof. Code § 25658(a); N.Y. Penal Law § 260.20(2); N.Y. Alco. Bev. Cont. Law § 65.

Defendant's sales were also inherently unfair and dangerous. The government warning is required precisely because inducing people to unknowingly drink alcoholic beverages (any beverages with 0.5% or more alcohol) is unfair and dangerous. *See* 27 C.F.R. § 16.21 ("Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."). Consumers who think an alcoholic beverage is non-alcoholic are likely to drink it when they otherwise would not (e.g., before driving or operating machinery, with a personal or family history of addiction, or while trying to avoid other health issues). Such consumers are also likely to unknowingly engage in criminal behavior (e.g., drinking while driving or giving alcoholic beverages to minors). This unfairly puts consumers at risk without them knowing it.

All of this is especially true for the underage subclasses, for whom it was illegal (and especially dangerous) to purchase, possess, or consume Enlightened Kombucha. In *JUUL*, the court approved of a full-refund damages model for a "Youth Purchaser" class who purchased the defendant's nicotine products while underage. *JUUL*, 609 F. Supp. 3d at 975-76. (Unlike here, JUUL disclosed its products as nicotine products so it was not illegal or inherently unfair to sell them to adults.) The full-refund model supported certification for this class on the theory that "because it was illegal or inherently unfair to market and sell the JUUL product to youth, youth purchasers received no value from it at all." *Id.* at 976. Here, like in *JUUL*, a full refund is especially appropriate for the underage subclasses because it was illegal and inherently unfair to sell alcoholic beverages to minors.

### 10. GT's: Plaintiffs' legality argument cannot justify full refunds.

Plaintiffs cannot justify a full refund model based on the label's legality.

Plaintiffs' lack of common proof of excessive alcohol, *supra* § V.A.6, which destroys their damages claim. Further, Enlightened is lawful, had ample value to many consumers, its alcohol content is minimal, and it does not fall under the illegal sale cases Plaintiffs cite.

Joint Brief on Plaintiffs' Renewed                    38                    Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Their theory—that Enlightened is "dangerous" and "illegal" such that consumers would purchase it if it contained 0.49% alcohol, but not at all if the ABV increased to 0.5%—is unsupported and illogical.

Even as to products with potentially excessive alcohol, Enlightened's label undisputedly discloses it has alcohol, and that consumers should not drink it if they are avoiding alcohol. Ex. 30 (App. 1486). Plaintiffs were all aware it contained alcohol. *Supra* § V.A.4 (discussing testimony). Alcohol generally is not illegal to purchase, possess, or consume—and all the Plaintiffs do in fact voluntarily purchase and consume alcohol, and have since they were 18 or younger. Ex. 37 (App. 2057) (Schmidt) at 118:13-119:15, 121:24-122:6; Ex. 36 (App. 2026) (Nunez) 7:25-8:1, 50:21-52:19, 53:24-9; Ex. 35 (App. 1997) (Patel) 8:17-18, 111:3-14; 133:9-18. Plaintiffs fail to explain how the Kombucha posed any real "danger" classwide, even assuming it contained an average of 1.2% ABV, or max of 2.2% ABV. Ex. 13 (Spedding) (App. 192) ¶¶ 25-27. Those levels are too low to pose a health risk, particularly as compared to the at least 0.49% Plaintiffs concede consumers knew could be present. To consume the same amount of alcohol present in a "standard" alcoholic drink (e.g., beer, wine), a person would have to drink nearly four bottles of 1% ABV kombucha in the same time it would take to consume a standard drink. Ex. 27 (App. 854) (McCarroll) 6–7. Plaintiffs do not testify to drinking anywhere near that amount, indicate they never felt inebriated from drinking the Kombucha, and admitted to drinking multiple alcoholic drinks on single occasions, including while under 21. Ex. 37 (App. 2057) (Schmidt) 80:5-12, 122:2-6, 148:13-22; Ex. 35 (App. 1997) (Patel) 32:20-33:3, 134:11-18 ,135:17-136:1, ; Ex. 36 (App. 2026) (Nunez) 7:25-8:1, 44:4-11, 50:21-52:19, 53:24-9, 68:25-69:13. And many consumers would buy the product even with the surgeon general's warning. *Supra* § V.A.8.

Plaintiffs' cited cases bear no resemblance to this case, and are inapposite. In *Morning Song*, the defendant sold a bird food that was poisonous to birds, making it "worthless" because it did not function as bird food. 320 F.R.D. at 556. In *Steroid Hormone Products*, the state court assessed materiality and injury based on customers' purchases of

Joint Brief on Plaintiffs' Renewed    39    Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

supplements containing untested and illegal steroids. 181 Cal. App. 4th at 153. The court did not discuss the full refund method or classwide damages, and Plaintiffs rely only on an unexplained and inapplicable sentence that plaintiffs there "did not put valuation at issue." *Id.* at 160; *In re POM Wonderful LLC*, 2014 WL 1225184, at *4 n.3 (C.D. cal. Mar. 25, 2014) (distinguishing *Steroid Hormone Cases*). *JUUL* involved a class of minors to whom defendant intentionally marketed illegal nicotine products. *JUUL*, 609 F. Supp. 3d at 975-76. *Jackson-Jones* involved children's toys that constituted "banned hazardous substances," and the court specifically distinguished cases "where plaintiffs had received some value or benefit from misbranded or misrepresented products." 748 F. Supp. 3d at 832.

Moreover, a product generally is not "worthless" simply because a misleading label makes the product illegal to sell or possess. *E.g.*, *Samet v. P&G Co.*, 2019 WL 13167115, at *10 (N.D. Cal. Jan. 15, 2019) (citing *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016)) (rejecting full refund).[17] The "line of cases focusing on illegal sales" is a "limited exception to the general rule" that "a product must be shown to be *worthless* to … support a full refund." *Corbett v. PharmaCare U.S., Inc.*, 2024 WL 1356220, at *25 (S.D. Cal. Mar. 29, 2024). This "limited exception" does not apply to all products characterized in some way as "illegal." *Id.* In *Corbett*, the court held full refund would not apply to a supplement containing an illegal ingredient because the illegality "is more technical than the more blatantly illegal actions" in the illegal sales cases. *Id.; see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 675 (N.D. Cal. 2021) (no full refund model for mislabeled pet food that allegedly contained "unsafe" chemicals, as plaintiff proffered "no evidence that any individual []product was a health risk," only "cumulatively" "meaning not every bag … had zero value"). Enlightened is not illegal; even if it were, it would fall in the category of "technical" illegality under *Corbett*. Enlightened is not a poisonous birdseed, a hazardous children's product, nor do Plaintiffs allege GT's specifically markets it to children.

Plaintiffs' citation of criminal statutes purportedly about *selling* alcohol are also

[17] Plaintiffs' Eleventh Circuit case, *Debernardis*, 942 F.3d 1076, is contrary to this Ninth Circuit authority, and irrelevant here. *See Ang*, 2018 WL 4181896, at *13.

Joint Brief on Plaintiffs' Renewed     40     Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

irrelevant, as the inquiry for restitution and damages looks to the loss or value *to consumers*. *See Shahinian v. Kimberly-Clark Corp.*, 2016 WL 11722907, at \*15 (C.D. Cal. Nov. 14, 2016).

### 11. Plaintiffs: Full-refund damages can be measured classwide.

Damages calculations "'need not be exact' at the class-certification stage." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at \*51 (quoting *Comcast*, 569 U.S. at 35). "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving" and require "only that some reasonable basis of computation of damages be used, … even if the result reached is an approximation." *Id.* (quotation omitted).

Here, Plaintiffs can prove classwide full-refund damages in two ways: by calculating aggregate damages for the entire class, and by providing a common method to calculate individual damages for each class member. *See* William B. Rubenstein, *Newberg on Class Actions* § 12:4 (5th ed., June 2020 update) ("*Newberg*") § 12:2 (aggregate damages), § 12:4 (individual damages). Either method is sufficient, and both satisfy the above standard.

Plaintiffs' damages expert, Mr. Weir, has already calculated classwide aggregate damages. He multiplied the average retail price per unit of Enlightened Kombucha by the number of units sold. Ex. 17 (Appx. 266) (Weir Decl.) ¶ 12. He did this for each of the proposed classes and subclasses. *Id.* ¶¶ 16-19. And he excluded purchases made by *Retta* class members (who are not part of the proposed classes) from his calculations. *Id.* ¶¶ 13-19. To calculate damages for the underage subclasses, and to exclude *Retta* class members, he used Dr. Dennis's survey that determined the percentages of Enlightened Kombucha purchased during the class period by underage purchasers and by *Retta* class members. *Id.*; *see* Ex. 19 (Appx. 321) (Dennis Decl.).[18] Using Mr. Weir's methodology, aggregate full-refund damages can be—and have been—calculated classwide using common evidence.

As an alternative, Plaintiffs can calculate individual damages classwide by providing "a single or common *method* that can be used to measure and quantify the damages of each

---

[18] Mr. Weir and Dr. Dennis created updated reports following this Court's ruling that it lacked jurisdiction over *Retta* class members. *See* Dkt. 178 at 4. Their former reports provide further support. *See* Ex. 18 (Appx. 295); Ex. 20 (Appx. 455).

Joint Brief on Plaintiffs' Renewed          41          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

class member." *Newberg* § 12:4. Differences in the "amount … owed" to each class member "cannot defeat certification" so long as the method for calculating them is the same. *Leyva v. Medline Indus.*, 716 F.3d 510, 513 (9th Cir. 2013) (quotation omitted). Here, a common method can be used to estimate damages for each class member: multiplying the number of units the class member purchased by the average retail price per unit. Class membership, as well as the number of units purchased, can be determined during the claims administration process. *See, e.g.*, *Sateriale v. Rj Reynolds Tobacco Co.*, 2014 U.S. Dist. LEXIS 176858, at *31 (C.D. Cal. Dec. 19, 2014) ("[T]he number of C-Notes held by any single class member can be determined through the claims administration process"); *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *54 (plaintiffs need not "identify a method to 'confirm' class membership at this stage"); *infra* § V.D.

### 12. GT's: Plaintiffs' calculations fail under *Comcast*.

Plaintiffs advance two calculation methods based on the Dennis and Weir declarations, but as set forth in GT's motion to exclude, the data and opinions Plaintiffs rely on to calculate any full refund—Dennis's survey and Weir's pricing data—are unreliable and inadmissible under Rule 702-704 and *Daubert*. *Groditsky*, 957 F.3d at 984.

### 13. Plaintiffs: Restitutionary disgorgement independently supports class certification.

Restitutionary disgorgement is "based on the net profits defendant obtained" through its unlawful and deceptive acts. *Spann*, 2015 U.S. Dist. LEXIS 42545, at *22. The measure of disgorgement is "based upon defendant's benefit and not plaintiff's losses." *Id.* at *24 (quotation omitted). This Court has rejected the argument that restitutionary disgorgement "must account for the benefits received." *Id.* at *23 & n.12.

At trial, Plaintiff will be able to prove restitutionary disgorgement classwide, using common evidence. All that is required is to multiply Defendant's wholesale revenues derived from sales to class members by its percent profit margins. Defendant produced its wholesale revenues from Enlightened Kombucha sold in California from the beginning of the class period through 2019. Ex. 1 (Appx. 17); *see* Ex. 10 (Appx. 91) (GT Dave Dep.)

Joint Brief on Plaintiffs' Renewed 42 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

199:17-203:3. Defendant maintains this data for the remaining class period, so Plaintiffs will be able to present updated numbers for the entire class period at trial. *Id.* at 203:14-24 (testifying that Defendant could create updated versions of this document for more recent sales). And Plaintiffs will call GT Dave—Defendant's founder, owner, and corporate representative—to testify about Defendant's profit margins.

With this information, restitutionary disgorgement can be calculated either in the aggregate or individually based on the number of purchases by each class member. An aggregate calculation will exclude *Retta* purchases in the same way as Plaintiffs' full-refund model: by excluding the percentage of purchases made by *Retta* class members, as determined by Dr. Dennis. *See* Ex. 17 (Appx. 266) (Weir Decl.) ¶¶ 13-19; Ex. 19 (Appx. 321) (Dennis Decl.). And an individual calculation will exclude *Retta* purchases through the claims administration process, which will determine class membership.

Although Plaintiffs have not yet executed a restitutionary disgorgement model, "class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle*, 114 F.4th at 1024. Nor is expert testimony required. "So long as Plaintiffs demonstrate damages to be measurable on a class-wide basis, expert testimony is not required to support a damages model." *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *17-18 (N.D. Cal. Jan. 17, 2019).

### 14. GT's: Reframing as "disgorgement" does not permit full refund.

Plaintiffs' undeveloped "disgorgement" theory likewise cannot support full refund.

**First**, in mislabeling cases, "restitution and disgorgement are functionally the same remedy," and present the same problems for full refunds. *Brazil*, 660 F. App'x at 535; *In re Tobacco Cases II*, 240 Cal. App. 4th at 800 (same). As Plaintiffs note, disgorgement allows a plaintiff "to recover all profits the defendant received unjustly." *Brazil*, 660 F. App'x at 535. "But in most cases, the defendant's benefit is equal to the plaintiff's loss …: the total price premium paid by all misled purchasers," *id.*, as profits must be limited to those

Joint Brief on Plaintiffs' Renewed                     43                     Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

"received unjustly," not by other purchasing factors. *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012). **Second**, even if disgorgement could help, Plaintiffs fail to show "that the model will be able to reliably calculate damages" classwide. *Lytle*, 114 F.4th at 1024. "Merely gesturing at a model or describing a general method will not suffice." *Id.* at 1032; *Shin*, 348 F.R.D. at 484 (same). But that is all Plaintiffs do. Their proposed multiplication—based on "revenues" that need to be updated, as well as "profit margins" they do not have and have never seen, but assume GT's owner can testify about at a deposition they have no grounds to seek—cannot reliably provide any accurate measure of GT's "profits" for the products. *See Shin*, 348 F.R.D. at 484-86. It also fails to account for the value received. *Ang*, 2018 WL 4181896, at *13-14 (rejecting disgorgement theory that "assumes" "class members receive zero value from … products").

### 15. Plaintiffs: Statutory damages are available for Plaintiffs' New York GBL claim, and can be calculated classwide.

Section 349 of the GBL provides for "actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. L. § 349(h). "It is well settled that statutory damages under the relevant sections of the GBL are available as a class-wide remedy in class actions brought in federal courts under Federal Rules of Civil Procedure, irrespective of New York legislature's limitation of class actions to causes of actions brought under statutes with specific authorization of class recovery." *McMorrow v. Mondelēz Int'l, Inc.*, 2021 U.S. Dist. LEXIS 42885, at *45 (S.D. Cal. Mar. 8, 2021). So statutory damages are available for Plaintiffs' GBL claim. "[B]ecause awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary." *Guido*, 2013 U.S. Dist. LEXIS 94031, at *46.

### 16. GT's: Statutory damages are unavailable under the NY GBL.

For GBL statutory damages, Plaintiffs must show commonality and predominance for injury. *See* GBL § 349(h) (statutory damages available only if "injured by reason of any violation" of the GBL). Plaintiffs fail to do so, nor show classwide deceptive conduct, materiality, or causation, *supra* §§ V.A.4, .6, .8. Plus, Plaintiffs' GBL theory also requires

Joint Brief on Plaintiffs' Renewed Motion for Class Certification      44      Case No. 2:19-cv-10920-FMO-DSRx

special scrutiny. They purport to seek nearly $1 billion in statutory damages for NY purchases of Kombucha alone, based on the NY GBL's $50 statutory damages, despite Plaintiffs' estimate that NY consumers spent only $76 million on the products. Weir Decl. (App. 265) ¶¶ 19, 23. Such a disproportionate award violates due process, and GT's reserves its right to challenge the propriety of any such damages on that basis and others.

**D.    Plaintiffs:** *Retta* **membership is not an individualized issue (or an issue at all); the Class definition excludes** *Retta* **class members.**

In its prior briefing, Defendant argued that identifying *Retta* class members is an individualized inquiry. Dkt. 113 at 21. Here, though, the class definitions exclude *Retta* class members. *Supra* § III. No class member is subject to the *Retta* settlement. So this challenge is not about predominance (i.e., whether class members' claims are subject to common proof); it is about ascertainability (i.e., determining who is a class member). And the "Ninth Circuit has declined to adopt an ascertainability and/or administrative feasibility requirement." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *54 (quotation omitted); *see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

Regardless, any ascertainability requirement is satisfied because the "parameters for membership in the class are set by objective criteria." *Werdebaugh v. Blue Diamond Growers*, 2014 U.S. Dist. LEXIS 71575, at *41 (N.D. Cal. May 23, 2014). Class membership is determined objectively based on when a person purchased Enlightened Kombucha. *Supra* § III; *see Guido*, 2013 U.S. Dist. LEXIS 94031, at *53 ("[B]ecause the requirement for membership in the class is whether a consumer purchased a particular product after a particular date, the class is easily identifiable."). This provides "a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. Jan. 13, 2014). Any potential memory issues do not defeat certification because "sufficient notice can cure confusion and these issues may be addressed later in the litigation." *Id.* at *26. Plaintiffs need not "identify a method to 'confirm' class membership at this stage." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *54.

Joint Brief on Plaintiffs' Renewed                45                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Moreover, Plaintiffs' aggregate damages models exclude *Retta* purchases by reducing aggregate damages proportional to the percentage of purchases during the class period that were made by *Retta* class members.  *Supra* §§ V.C.11, 13; *see* Ex. 17 (Appx. 266) (Weir Decl.) ¶¶ 13-19.  So the total damages Defendant must pay accounts for *Retta*; "whether any given individual is or is not a rightful class member is entirely immaterial to Defendant['s] monetary liability in this case."  *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *16.  "[A] defendant's interest is 'only in the total amount of damages for which it will be liable,' not 'the identities of those receiving damage awards.'"  *Id.* at *16-17 (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996)).  So Defendant has "no due process interest in challenging class membership that stands in the way of certification."  *Id.* at *16.  And even for individual damages calculations, "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected."  *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) (quotation omitted).  Determining class membership during the claims process does not "affect predominance or overcome the superiority of a class action."  *Id.*

> **E.     GT's: Individual inquiries into *Retta* class membership are fatal.**

Litigating *Retta* class membership will require fact-intensive individualized inquiries that independently require denial. This Court held that it "lacks jurisdiction" over, and so dismissed, *Retta* class members' claims. Dkt. 178 at 4. **But Plaintiffs offer no way to distinguish between those who purchased Enlighted during the Retta period from those who did not**. Because *Retta* class membership is a jurisdictional bar and complete defense to liability, each class member must demonstrate that they both purchased Enlightened after February 28, 2017 *and* did *not* purchase Enlightened between March 11, 2011 and February 27, 2017. That is impossible absent individual inquiries.

GT's is entitled to invoke these defenses to each class member. *Supra* § V.A.6. The Dennis study suggests each year between 60% and 17% of potential class members also purchased during the *Retta* period. Ex. 19 (Dennis Rep.) (App. 321 ) ¶¶ 38-40. That far

Joint Brief on Plaintiffs' Renewed            46            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

outstrips the 18 of 13,680 discounts (0.13%) requiring individualized inquiries in *Van,* 61 F.4th at 1068. Plaintiffs do not even suggest a method to adjudicate GT's defense without thousands of mini-trials testing memories of 9-year-old purchases.[19] *Bowerman*, 60 F.4th at 469-71 (no certification where mini-trials over each class member's purchase history and credibility necessary); *Sapan*, 2021 WL 5302908, at *6 (no certification where plaintiff "has not proposed a method of identifying class members without individualized inquiries").

Plaintiffs cannot sidestep this fatal issue by baking an individualized factual determination into the class definition and calling it "ascertainability." *Briseno* "did not overrule the many Ninth Circuit authorities recognizing that 'defenses that must be litigated on an individual basis can defeat class certification'…particularly where individualized questions are 'complicated' and there is not 'representative evidence introduced to fill . . . evidentiary gaps.'" *Abboud v. Circle K Stores Inc.*, 2025 WL 2800052, at *16 (D. Ariz. Sept. 30, 2025) (quoting *True Health Chiropractic*, 896 F.3d at 931, and *Bowerman*, 60 F.4th at 471). And Plaintiffs' argument that memory issues can cured with "notice" does not address the administrative complexity of the required mini-trials.

In seeking to determine damages only "in aggregate," Plaintiffs ignore the long line of Ninth Circuit cases holding Rule 23 does not permit "dispensing with individual proof of damages" and rejecting attempts to "allow[] gross damages by treating unsubstantiated claims of class members collectively." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); *Ambrosio*, 154 F.4th at 1112 ("denying [Defendant]" the right to raise individualized issues for each plaintiff "would seem to violate due process"). Plaintiffs' single cited case relied on inapposite language from *Hilao v. Est. of Marcos*, rejecting a due process challenge to a class damages award after trial. 103 F.3d 767, 784 (9th Cir. 1996). And, as explained in the motion to exclude, Plaintiffs have not presented a

---

[19] Dennis agreed there is a "large literature" that consumers' memory "degrade[s] rapidly" and "there's not a methodological literature around how to conduct studies of consumer products" purchased "as much as eight years ago." Ex 42 (App. 2185) (Dennis Dep.) 99:8–13, 132:9–10, 136:12–22, 170:13-17. He could not think of any consumer survey seeking recall of purchases made over eight years ago." *Id.* 169:1-26, 170:11.

Joint Brief on Plaintiffs' Renewed 47 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

workable methodology for calculating aggregate damages.

**F.      Plaintiffs: A class action is the superior way to resolve this controversy.**

Superiority asks "whether the objectives of the particular class action procedure will be achieved in the particular case." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014) (quotation omitted).  Here, "no class members have any significant interest in pursuing individual litigation" for the price of a kombucha bottle; there is no "already-commenced litigation concerning the controversy" (the controversy post-dates *Retta* and excludes *Retta* class members); "economies of scale make it desirable to concentrate the claims" in this forum, where Defendant is based; and there are "no likely difficulties in managing this case as a class action." *Id.*  So superiority is satisfied.

**G.      GT's: Class action is not superior due to numerous individual issues.**

Even if *Retta* class membership does not sound in predominance, the complexity of individualized hearings fatally undermines superiority. *Supra* § V.E. Many fact-intensive individual inquiries are required to establish class membership, liability, and damages, making the class unmanageable. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. Courts routinely deny class certification as unmanageable where class member identification and misclassification issues require complex individualized inquiries, as would be required here. *Supra* § V.E*; Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1200 (9th Cir. 2024); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 415 (C.D. Cal. 2000); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 617 (W.D. Wash. 2003) ("individual factual inquiries" "required for identification of the proposed class"); *Urena v. Earthgrains Dist., LLC*, 2017 WL 4786106, at *10 (C.D. Cal. July 19, 2017) (same); *Anti Police-Terror Project v. City of Oakland*, 2021 WL 4846958, at *9 (N.D. Cal. Oct. 18, 2021) (same); *Sapan*, 2021 WL 5302908, at *6 (same).

**VI.    Plaintiffs: Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class too.**

The Court may certify both a damages class under Rule 23(b)(3) and an injunction

Joint Brief on Plaintiffs' Renewed            48            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

class under Rule 23(b)(2). *See In re Conagra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."). Because the primary relief sought under Rule 23(b)(2) is injunctive, the Court may certify an injunction class even though Plaintiffs separately seek damages under Rule 23(b)(3). *See Ang v. Bimbo Bakeries USA, Inc.*, 2018 U.S. Dist. LEXIS 149395, at *30 (N.D. Cal. Aug. 31, 2018) (seeking damages does not preclude an injunction class "where a plaintiff seeks certification under both Rule 23(b)(2) and (b)(3)"). It should do so here.

"Rule 23(b)(2) applies … when a single injunction … would provide relief to each member of the class." *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (quotation omitted). Under Rule 23(b)(2), courts do not "examine the viability or bases of class members' claims"; they look only to "whether class members seek uniform relief from a practice applicable to all of them." *Bush v. Rust-Oleum Corp.*, 2024 U.S. Dist. LEXIS 20131, at *16-17 (N.D. Cal. Feb. 5, 2024) (quotation omitted). Nor does it matter if "some class members may have suffered no injury or different injuries," as long as at least one Plaintiff has standing to seek an injunction. *Id.* at *17 (quotation omitted); *see Olean*, 31 F.4th at 682 n.32. There is no predominance or cohesiveness requirement for a Rule 23(b)(2) class. *Bush*, 2024 U.S. Dist. LEXIS 20131, at *17-18. And "questions of manageability and judicial economy are irrelevant." *Id.* at *17. In short, for Rule 23(b)(2), it is "sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Here, Defendant's practices of selling alcoholic beverages without the required labeling, and misrepresenting the sugar content, apply to the class as a whole. And the injunctive relief Plaintiffs seek would provide relief to each class member. Plaintiffs seek an injunction requiring Defendant to place the government warning required by 27 C.F.R. § 16.21 on its Enlightened Kombucha labels, or, in the alternative, barring Defendant from selling Enlightened Kombucha unless it contains less than 0.5% alcohol at retail. Ex. 21 (Appx. 573) at 21 (Interrogatory 16); Ex. 22 (Appx. 604) at 21 (same); Ex. 23

Joint Brief on Plaintiffs' Renewed        49        Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

(Appx. 634) at 22 (same). Plaintiffs also seek an injunction barring Defendant from selling Enlightened Kombucha without accurately displaying the sugar content on the labels. *Id.* These injunctions would allow each class member to trust Defendant's labels in the future.

**VII.  GT's: Certification of a 23(b)(2) injunction class is not warranted**

Certification of a Rule 23(b)(2) class is not warranted because plaintiffs have not shown commonality or adequacy. *Supra* §§ IV.D, V.A.4, 6, 8. Additionally, no named plaintiff has standing to represent a 23(b)(2) class. "A Rule 23(b)(2) class can only be certified if the named plaintiff shows that she herself is subject to a likelihood of future injury." *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at \*5 (N.D. Cal. Feb. 13, 2018).

**First**, no plaintiff has testified to a "specific desire" to purchase Enlightened again, which is required for standing. *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at \*2 (9th Cir. Aug. 31, 2021). Instead, each testified they would "consider" purchasing the product again if the requested injunctive relief were issued, Ex. 1 (App. 1) ¶ 6; Ex. 2 (App. 5) ¶ 6; Ex. 3 (App. 8) ¶ 6, which courts routinely hold is not enough, *In re Coca-Cola*, 2021 WL 3878654, at \*2; *Iglesias v. Ariz. Beverages USA, LLC,* 2025 WL 2714143, at \*7 (N.D. Cal. Aug. 14, 2025) (A "declaration that [plaintiff] would 'consider' purchasing the beverages [if correctly labeled] falls short of demonstrating an ongoing injury.").

**Second**, Plaintiffs have not shown the requisite "actual or imminent" threat of *future* injury resulting in elevated alcohol or sugar levels. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). As explained *supra* § V.A.6, plaintiffs rely on testing of a small subset of Enlightened flavors from *2019.* They have done no testing since, let alone on any bottle of the 18 flavors currently offered for sale. Plaintiffs thus cannot show any "ongoing" mislabeling (GT's more recent testing shows none). Dave Decl. (App. 898) ¶ 7 & Ex. 1, meaning they lack standing. *Bruton*, 2018 WL 1009257, at \*6 (declining to certify 23(b)(2) class where labeling "is no longer inaccurate").

**VIII.  Plaintiffs: Conclusion.**

Plaintiffs respectfully request that the Court certify the classes and subclasses, appoint Plaintiffs as class representatives, and appoint their counsel as class counsel.

Joint Brief on Plaintiffs' Renewed          50          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Dated: March 20, 2026

Respectfully submitted,

By: /s/ Gabriel Doble
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Dated: March 20, 2026

Respectfully submitted,

By: /s/ Jacob M. Harper
Jacob M. Harper (SBN 259463)
jacobharper@dwt.com
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

Joint Brief on Plaintiffs' Renewed Motion for Class Certification

51

Case No. 2:19-cv-10920-FMO-DSRx

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-4.3.4, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: /s/ *Gabriel Doble*
Gabriel Doble

# EXHIBIT 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMIT PATEL, et al.,

          Plaintiffs,

    v.

GT'S LIVING FOODS, LLC,

          Defendant.

Case No. 26-mc-80036-TSH

**ORDER VACATING HEARING**

This matter is currently scheduled for a hearing on April 2, 2026, regarding non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C.'s Motion for Sanctions. *See* ECF No. 9. Pursuant to Civil Local Rule 7-1(b), the Court finds the motion suitable for disposition without oral argument and **VACATES** the hearing. The matter is deemed under submission.

    **IT IS SO ORDERED.**

Dated: April 1, 2026

THOMAS S. HIXSON
United States Magistrate Judge

# EXHIBIT 40

<div align="center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| AMIT PATEL, et al., | Case No. 26-mc-80036-TSH |
| Plaintiffs, | |
| v. | **ORDER RE: NON-PARTIES' MOTION FOR SANCTIONS** |
| GT'S LIVING FOODS, LLC, | Re: Dkt. No. 9 |
| Defendant. | |

## I.  INTRODUCTION

This matter arises out of non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C.'s (collectively, the "Non-Parties") motion to quash deposition subpoena issued by Defendant GT's Living Foods, LLC ("GT") in *Patel et al. v. GT's Living Foods, LLC,* No. 2:19-cv-10920-FMO-DSR (C.D. Cal.) (the "*Patel* Action").  ECF No. 1.  Pending before the Court is the Non-Parties' Motion for Sanctions.  ECF No. 9 ("Mot.").  For the reasons stated below, the Court **GRANTS** the motion.

## II.  BACKGROUND

### A.    Factual Background

GT is a defendant in the *Patel* Action.  Mot. at 1:2–10.  Yeremey Krivoshey ("Krivoshey") is an attorney who previously represented the original plaintiffs in the *Patel* Action while a partner at Bursor & Fisher.  Declaration of Yeremey Krivoshey ¶ 2 ("Krivoshey Decl.") (ECF No. 9-1). During this representation, Krivoshey left Bursor & Fisher to start his own firm, Smith Krivoshey, P.C.  *Id.* ¶ 4.  Krivoshey continued his representation in the *Patel* Action after starting his new firm.  *Id.*  In August 2024, Bursor & Fisher and the Non-Parties withdrew from the *Patel* Action. Mot. at 3:16–24 (citing *Patel* Action, ECF Nos. 141–44).

<div align="left" style="writing-mode: vertical-rl">
United States District Court<br>
Northern District of California
</div>

The law firm Dovel & Luner LLP appeared as new counsel in the *Patel* Action. *Id.* Dovel & Luner and Smith Krivoshey entered into two agreements regarding the *Patel* Action: one on July 9, 2024, and one on July 16, 2024. Mot. at 3:25–4:2; *see* Krivoshey Decl. ¶ 7. In 2026, in connection with the *Patel* Action, GT issued two non-party subpoenas (the "Subpoenas") that named the Non-Parties and included deposition and document subpoenas. Mot. at 8:26–10:14; *see* Krivoshey Decl., Exs. A (the "First Subpoena") (ECF No. 9-2), B (the "Second Subpoena") (ECF No. 9-3). The Subpoenas sought testimony and documents regarding the *Patel* Action and fee agreements between the Non-Parties and Dovel & Luner. Krivoshey Decl., Exs. A, B. The Non-Parties moved to quash the Second Subpoena. Mot. at 1:2–10; *see* ECF No. 1 (Motion to Quash). GT and the Non-Parties dispute the propriety of the Subpoenas.

Overall, the Non-Parties seek sanctions against GT and its counsel (Davis Wright Tremaine LLP and attorneys Jacob Harper and Joseph Elie-Meyers) for discovery abuse, asserting that the Subpoenas were improper, caused an undue burden on the Non-Parties, and violated court orders, discovery rules, and professional guidelines. Mot. at 1:11–2:10.

### 1. The Underlying Action

The *Patel* Action is a putative class action that commenced on December 27, 2019. Mot. at 3:7–9 (citing *Patel* Action, ECF No. 1). At inception, the Action was styled as *Sharpe et al. v. GT's Living Foods, LLC* (the "*Sharpe* Action"). Krivoshey Decl. ¶ 2. Krivoshey represented the four original plaintiffs who brought the initial *Sharpe* Action (the "*Sharpe* Plaintiffs"). *Id.* In the *Sharpe* Action, fact discovery closed in April 2021, and expert discovery closed in August 2021. *Id.* ¶ 3 (citing *Patel* Action, ECF No. 62). On August 7, 2024, the court in the *Sharpe* Action approved a substitution of counsel—Bursor & Fisher, Krivoshey, and Smith Krivoshey withdrew from the matter and Dovel & Luner appeared as new counsel in the matter. Mot. at 3:16–24; *see* Krivoshey Decl. ¶ 6 (citing *Patel* Action, ECF Nos. 130–31, 134, 136–37, 139–44). That same day, Davis Wright Tremaine LLP entered a new appearance for GT. Reply at 15:16–23 (citing *Patel* Action, ECF No. 145).

On December 17, 2024, an amended complaint was filed in the *Sharpe* Action that named three new plaintiffs (the "*Patel* Plaintiffs"). Mot. at 5:3–4 (citing *Patel* Action, ECF Nos. 167–

United States District Court
Northern District of California

68). The *Sharpe* Plaintiffs were dismissed on September 30, 2025. Opp. at 5:11–14; *see* Mot. at 5:5–7 (citing *Patel* Action, ECF No. 178).

In October 2025, the *Patel* court re-opened discovery "related solely to the newly added named plaintiffs." Mot. at 5:9–10 (citing *Patel* Action, ECF No. 180). On December 18, 2025, GT and the *Patel* Plaintiffs filed a second request to extend discovery to March 5, 2026, to "complete remaining discovery related to the newly added named plaintiffs." Krivoshey Decl., Ex. M at 1:7 (Joint Stipulation) (ECF No. 9-14). The *Patel* Plaintiffs and GT requested this extension "due to Plaintiffs' unavailability during the week of Christmas and the need to preserve the Parties' ability to file any necessary motions arising from those depositions before the end of the discovery cut off." *Id.* at 1:10–15. GT did not request leave to serve third-party subpoenas. Mot. at 5:16–22 (citing Krivoshey Decl., Ex. M). The *Patel* court granted the extension, stating: "Any remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**. *Id.* (citing Krivoshey Decl., Ex. N (*Patel* Court Order) (ECF No. 9-15)) (bold emphasis in original).

On November 13, 2025, GT served the *Patel* Plaintiffs with a document request seeking "any fee sharing and joint prosecution agreements between current and former counsel in this action." Krivoshey Decl., Ex. S at 3:23–27 (Joint Stipulation Pursuant To GT's Motion To Compel) (ECF No. 9-20). This request included fee sharing arrangements between Dovel & Luner and Smith Krivoshey. *Id.* at 30:1–13. On December 23, 2025, the *Patel* Plaintiffs submitted a declaration stating that they had produced executed copies of the responsive agreements between Dovel & Luner and Smith Krivoshey. Krivoshey Decl., Ex. O ¶¶ 4, 17–18 (Discovery Joint Stipulation) (ECF No. 9-16).

GT deposed the *Patel* Plaintiffs (Plaintiffs Nunez, Schmidt, and Patel) between January 8 and January 26, 2026. Krivoshey Decl., Ex. T ¶ 11 (Declaration of Joseph Elie-Meyers in *Patel* Action) (ECF No. 9-21); *see* Krivoshey Decl., Exs. P (Deposition of Plaintiff Patel) (ECF No. 9-17), Q (Deposition of Plaintiff Schmidt) (ECF No. 9-18), R (Deposition of Plaintiff Nunez) (ECF No. 9-19). None of the *Patel* Plaintiffs indicated that they knew or had contact with Bursor & Fisher, Krivoshey, or Smith Krivoshey; nor did they indicate that they were aware of any

United States District Court
Northern District of California

continuing involvement by the Non-Parties in the *Patel* Action.  Mot. at 6:4–8:25 (citing Krivoshey Decl., Exs. P, Q, R).

### 2. The Fee Agreements

Dovel & Luner and Smith Krivoshey entered into two agreements regarding the *Patel* Action.  Mot. at 3:25–4:2; *see* Declaration of Joseph Elie-Meyers ("Elie-Meyers Decl.") (ECF No. 10-2), Ex. 1 (ECF No. 11) at 4 (the "First Agreement"), 9 (the "Second Agreement").  On July 9, 2024, the two law firms entered into the First Agreement.  ECF No. 11 at 7; *see* Mot. at 4:3–10; Krivoshey Decl. ¶ 7; Opp. at 5:20–6:8.  This Agreement states that Smith Krivoshey and Bursor & Fisher will remain counsel of record and will work with Dovel & Luner going forward, and that all counsel will receive some proportion of fees in the event fees are recovered.  ECF No. 11 at 4–5.

On July 16, 2024, the two law firms entered into the Second Agreement.  ECF No. 11 at 11; *see* Mot. at 4:11–20; Krivoshey Decl. ¶ 7; Opp. at 5:20–6:8.  This Agreement states:

> This Agreement constitutes the entire agreement between the Parties regarding the foregoing subject matter, whether oral or written, and specifically supersedes any prior agreements between them.

ECF No. 11 at 10.  The Agreement states that Smith Krivoshey and Bursor & Fisher will withdraw from the *Sharpe* Action "after the Class Representatives consent to this Agreement"; that Dovel & Luner will serve as lead counsel in the Action going forward and be responsible for all aspects of the Action; and that any party to the Agreement could apply to the court for an award of costs or fees, which would be determined by the court.  *Id.* at 9–10.

### 3. The Subpoenas

In connection with the *Patel* Action, GT issued two non-party subpoenas that named the Non-Parties.  Mot. at 8:26–10:14; Opp. at 6:20–7:17.

#### a. The First Subpoena

GT issued the First Subpoena on January 29, 2026, and notified the *Patel* Plaintiffs of this Subpoena.  Krivoshey Decl., Ex. A.  Attorney Jacob M. Harper[1] of Davis Wright Tremaine signed

---

[1] Harper is lead counsel for GT in the *Patel* Action.  Declaration of Jacob M. Harper ¶ 1 ("Harper Decl.") (ECF No. 10-1).

4

United States District Court
Northern District of California

the Subpoena. *Id.* at 12. This Subpoena listed both Krivoshey and Smith Krivoshey in the "To" line of the Subpoena. *Id.* The First Subpoena noticed a deposition date of February 10, 2026—both in Los Angeles, California and in San Francisco, California—and stated "[r]emote option to be provided to all participants." *Id.* at 1, 12. This deposition date was prior to depositions scheduled for the other law firms named in the Subpoena, including Dovel & Luner. *Id.* at 1. The First Subpoena included a document request for all communications and agreements between the Non-Parties and Dovel & Luner regarding the *Sharpe* Action and *Patel* Action. *Id.* at 15–16.

GT arranged for a process server to serve Krivoshey at his home in Kentucky, but service did not occur. Krivoshey Decl. ¶ 13. The process server did not leave the Subpoena at Krivoshey's residence or provide the Subpoena to any other person. *Id.* GT did not contact Krivoshey to discuss scheduling or what documents it needed that could not be obtained from the *Patel* Plaintiffs or their counsel. *Id.* ¶ 19. GT made four attempts to "personally serve" the First Subpoena on Krivoshey at his law firm address and residence in Kentucky. Elie-Meyers Decl. ¶¶ 5–8.

### b. The Second Subpoena

GT issued the Second Subpoena on February 4, 2026, again signed by Harper. Krivoshey Decl., Ex. B. GT did not provide notice of the Second Subpoena to the *Patel* Plaintiffs or their counsel. Krivoshey Decl., Ex. C (Email From *Patel* Plaintiffs' Counsel) (ECF No. 9-4). GT states that it provided notice of the Second Subpoena to the *Patel* Plaintiffs by serving them with the First Subpoena which was "materially identical." Opp. at 20:9–16. The Second Subpoena also listed both Krivoshey and Smith Krivoshey in the "To" line of the Subpoena. Krivoshey Decl., Ex. B. The Second Subpoena noticed a deposition date of February 18, 2026, in San Francisco, California, and stated "[r]emote option to be provided to all participants." *Id.* The Second Subpoena included a document request for all communications and agreements between the Non-Parties and Dovel & Luner regarding the *Sharpe* Action and *Patel* Action. *Id.* This same document request was included in the First Subpoena to Dovel & Luner. Krivoshey Decl., Ex. A at 6–10.

The Second Subpoena's Attachment A defined "You" as Smith Krivoshey instead of

United States District Court
Northern District of California

Krivoshey "due to an administrative error." Elie-Meyers Decl. ¶ 9; *see* Krivoshey Decl., Ex. B. GT served the Second Subpoena on Smith Krivoshey's California agent for service of process. Krivoshey Decl. ¶ 16; *see* Elie-Meyers Decl. ¶ 9, Ex. 6 (Proof of Service) (ECF No. 10-2 at 14). GT served Smith Krivoshey's agent because GT understands that Krivoshey owns and operates Smith Krivoshey. Elie-Meyers Decl. ¶ 9. The proof of service for this Subpoena lists "Smith Krivoshey, PC / Yeremey O. Krivoshey" as "Party Served." *Id.* at Ex. 6. GT did not contact Krivoshey to discuss scheduling or what documents it needed that could not be obtained from the *Patel* Plaintiffs or their counsel. Krivoshey Decl. ¶ 19. No fees were tendered with the Second Subpoena. *Id.* ¶ 20.

On February 9, 2026, the Non-Parties and GT had a meet and confer call regarding the Second Subpoena. Krivoshey Decl. ¶ 25; Elie-Meyers Decl. ¶ 11. On February 11, 2026, the Non-Parties moved to quash the Second Subpoena and to shorten time to hear the motion. ECF Nos. 1, 2. The Court denied the motion to shorten time and set a hearing on the motion to quash for March 19, 2026. ECF No. 5. In that order, the Court stayed Krivoshey's pending deposition. *Id.*

On February 18, 2026, at 1:04 a.m. EST, GT's counsel emailed Krivoshey stating that it was withdrawing the Second Subpoena. Krivoshey Decl., Ex. F (Email) (ECF No. 9-7). On February 19, 2026, GT filed a notice of withdrawal of subpoena for the Second Subpoena. ECF No. 6.

### 4. Actions Of The Non-Parties And GT

Krivoshey avers that in late July or August 2024, Harper told Krivoshey that he did not believe Krivoshey would "walk away" from the *Sharpe* Action and that he believed Krivoshey would remain in the Action behind the scenes. Krivoshey Decl. ¶ 11. Krivoshey assured Harper that Krivoshey would truly withdraw as he represented. *Id.* The Non-Parties withdrew from the *Sharpe* Action and were not involved going forward, apart from transferring case files and briefly assisting with the transition. *Id.* ¶¶ 8–10.

Krivoshey, Joel Smith (of Smith Krivoshey), and Joseph Elie-Meyers (of Davis Wright Tremaine for GT) met and conferred on February 9, 2026, regarding the Second Subpoena. Elie-

United States District Court
Northern District of California

Meyers Decl. ¶ 11; Krivoshey Decl. ¶¶ 25–27.

Krivoshey makes the following averments in his Declaration, regarding the meet and confer for the Second Subpoena. *See* Mot. at 9:14–13:2. Smith asked Elie-Meyers when fact discovery closed; Elie-Meyers responded March 5, 2026, but did not state that fact discovery was limited to the *Patel* Plaintiffs. Krivoshey Decl. ¶ 30. Smith asked if Krivoshey's deposition was scheduled to occur before or after that of Dovel & Luner; Elie-Meyers responded that Dovel and Luner's deposition was set to proceed prior to that of Krivoshey. *Id.* ¶ 31. After the call, Krivoshey learned that this information was false—Dovel & Luner's deposition had been rescheduled to occur after that of Krivoshey. *Id.* Krivoshey had not seen a copy of the First Subpoena at that time and asked Elie-Meyers to provide a copy to him; Krivoshey also asked whether the First Subpoena had been withdrawn, what the listed date for compliance was, and whether GT was still in the process of trying to serve the Subpoena. *Id.* ¶ 32. Elie-Meyers refused to provide a copy of the First Subpoena, refused to answer Krivoshey's questions, and told Krivoshey to contact Dovel & Luner for a copy. *Id.* Krivoshey repeatedly asked Elie-Meyers what documents GT believed the Non-Parties had that the *Patel* Plaintiffs or their counsel did not have; Elie-Meyers would not identify specific documents. *Id.* ¶ 33. Elie-Meyers stated that because Dovel & Luner's deposition was set to proceed before Krivoshey's deposition, GT would be in a better position to know what information Krivoshey may possess that Dovel & Luner did not have after Dovel & Luner's deposition. *Id.* ¶ 34. Smith asked whether GT provided notice of the Second Subpoena to Dovel & Luner. *Id.* ¶ 35. Elie-Meyers responded that notice was not provided to Dovel & Luner because the two Subpoenas were in effect the same Subpoena with modified dates. *Id.* Elie-Meyers clarified that the Second Subpoena was intended for Krivoshey, as an individual, and not for Smith Krivoshey. *Id.* ¶ 38. Krivoshey asked Elie-Meyers why he thought he could serve Krivoshey in a personal capacity through a registered agent of the law firm; Elie-Meyers responded that Krivoshey's name is part of the firm name and Krivoshey owns the firm. *Id.* Smith asked if GT had received responsive documents from Dovel & Luner such that the Non-Parties would not need to produce them; Elie-Meyers declined to answer. *Id.* ¶ 36. Smith asked why GT's counsel had not called or emailed Krivoshey to discuss the need for the Subpoena

7

or the time or place of the Subpoena; Elie-Meyers declined to answer. *Id.* ¶ 40. At the conclusion of the call, GT's counsel indicated that they would not withdraw the Subpoena and would not modify the noticed deposition date of February 18, 2026. *Id.* ¶ 29.

Elie-Meyers makes the following averments in his Declaration, regarding the meet and confer for the Second Subpoena. *See* Opp. at 7:18–8:3. Elie-Meyers told Krivoshey that GT considered the Second Subpoena as the operative Subpoena. Elie-Meyers Decl. ¶ 10. Elie-Meyers "repeatedly offered to discuss limiting the scope of the Subpoena, or to extend the time for compliance to allow additional time to negotiate the scope of the Subpoena." *Id.* ¶ 12. Smith and Krivoshey declined to discuss these topics. *Id.* Elie-Meyers accurately stated that discovery closed on March 5, 2026; his not mentioning that discovery was limited to the *Patel* Plaintiffs does not amount to a "lack of candor." *Id.* ¶ 13. During the call, Elie-Meyers referred to the issued Subpoena to answer Krivoshey's question regarding the order of depositions—Elie-Meyers accurately told Krivoshey that Dovel & Luner's deposition was noticed before that of Krivoshey, based on the Subpoena. *Id.* ¶ 14. Elie-Meyers "neglected to mention that Dovel's noticed deposition date had subsequently been rescheduled as a result of meet-and-confer efforts." *Id.* When asked which documents may be in the Non-Parties' possession that were not possessed by Dovel & Luner, Elie-Meyers responded that he "could not definitively know the answer to that question until after Dovel's deposition." *Id.*

On February 10, 2026—in response to the Non-Parties' request that GT stipulate to shorten time for the motion to quash or vacate the compliance date for the Second Subpoena—Elie-Meyers emailed Smith, stating:

> We'd be happy to join a stipulated extension of the current discovery deadline to allow you the flexibility to file a normally noticed motion, and will seek Dovel & Luner's agreement to a stipulation to that effect. However, unless and until such a stipulation is entered, we cannot join a motion to shorten time, nor agree that the subpoena compliance date is vacated. If opposing counsel agrees to such a stipulation, we are willing to consider rescheduling the deposition pending a ruling on the joint stipulated scheduling order.

Krivoshey Decl. ¶ 41, Ex. D (Email) (ECF No. 9-5); *see* Mot. at 13:3–24; Opp. at 8:4–13; Elie-Meyers Decl. ¶ 15. The Non-Parties did not have control over whether the *Patel* Plaintiffs agreed

8

to extend discovery in the *Patel* Action. Krivoshey Decl. ¶ 43.

On February 11, 2026, Harper emailed Krivoshey an email that Harper sent to counsel for the *Patel* Plaintiffs, responding to counsel's concern over timing of the Subpoenas. *Id.* ¶ 44, Ex. E (Email) (ECF No. 9-6); *see* Mot. at 13:25–15:13; Opp. at 8:4–13. The email states:

> With respect to timing, the issues giving rise to the need for these subpoenas on Dovel's co-counsel—none of the plaintiffs' signatures on counsel agreements you partially produced, the discovery of a third agreement (the retention agreement itself) that wasn't produced, the plaintiffs' lack of knowledge or supervision over the class counsel in this case, the troubling fee-sharing agreements at odds with the interests of the current class, and other things—came to our attention only with the depositions of the three class representatives in January. And I will remind you that you offered extremely late dates for these witnesses after we first noticed them in December to avoid exactly this kind of issue. The timing issue you raise is disingenuous and a problem of your creation, not ours.
>
> We will respond to the rest of your email separately but I'm raising this now because that point is so outrageously false that it deserves a response of its own.

Krivoshey Decl., Ex. E.

On February 18, 2026, at 1:04 a.m. EST, Elie-Meyers emailed Krivoshey, notifying Krivoshey that GT was withdrawing the Second Subpoena, and stating:

> Mr. Krivoshey provided sworn statements describing the history of his involvement in the Patel litigation and the nature of his relationship with current Patel counsel at Dovel & Luner LLP. *Id.*, paras. 2–10. Because that declaration set out, in sum and substance, the information GT's sought to obtain through the subpoena, and similar to what other subpoenaed parties have agreed in pre-motion conferrals to provide in lieu of deposition testimony or document productions, we are withdrawing GT's subpoena here.

Krivoshey Decl. ¶ 48, Ex. F; *see* Mot. at 15:14–16:8; Opp. at 9:2–7; Elie-Meyers Decl. ¶ 16.

Elie-Meyers met and conferred with Bursor & Fisher on February 9 and 17, 2026, and with Dovel & Luner on February 4 and 13, 2026. Elie-Meyers Decl. ¶ 17. As a result, GT agreed to continue those firms' compliance dates to allow further negotiations of the Subpoenas' scope. *Id.* ¶ 18. After the two firms agreed to provide sworn declarations describing the nature of their relationship with the Non-Parties in the *Patel* Action, GT withdrew the Subpoenas to these firms. *Id.*

9

## B.     Procedural Background

The *Patel* Action commenced on December 27, 2019 (originally, the "*Sharpe* Action"). Mot. at 3:4–11 (citing *Patel* Action, ECF No. 1).  On December 17, 2024, an amended complaint was filed in the *Patel* Action, naming the *Patel* Plaintiffs who are three new plaintiffs.  *Id.* at 5:3–4 (citing *Patel* Action, ECF Nos. 167–68).  The *Sharpe* Plaintiffs were subsequently dismissed, on September 30, 2025.  Opp. at 5:11–14; *see* Mot. at 5:5–7 (citing *Patel* Action, ECF No. 178).

In October 2025, the *Patel* court re-opened discovery.  Mot. at 5:9–10 (citing *Patel* Action, ECF No. 180).  GT then issued two Subpoenas that named the Non-Parties.  On January 29, 2026, GT issued the First Subpoena.  Krivoshey Decl., Ex. A.  On February 4, 2026, GT issued the Second Subpoena.  Krivoshey Decl., Ex. B.  The Second Subpoena requested documents from the Non-Parties and noticed a deposition date of February 18, 2026.  *Id.*

On February 11, 2026, the Non-Parties filed a motion to quash deposition subpoena and motion to shorten time in connection with the Second Subpoena.  ECF Nos. 1, 2.  On February 12, 2026, the Court denied the motion to shorten time, ordered that Krivoshey's deposition shall not proceed nor be rescheduled pending resolution of the motion to quash, and set a hearing on the motion to quash for March 19, 2026.  ECF No. 5.  On February 19, 2026, GT withdrew the Second Subpoena.  ECF No. 6.

On February 20, 2026, the Non-Parties filed the instant Motion for Sanctions.  ECF No. 9 ("Mot.").  On March 6, 2026, GT filed an Opposition.  ECF No. 10 ("Opp.").  On March 13, 2026, the Non-Parties filed a Reply.  ECF No. 13 ("Reply").

## III.   LEGAL STANDARD

### A.     Rule 45

Rule 45 governs sanctions on parties serving third-party subpoenas:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1).  Under this rule, a court "may impose sanctions when a party issues a

United States District Court
Northern District of California

subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). But a "district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id*. Sanctions under Rule 45(d)(1) are discretionary. *Id.* Courts also "have discretion over the type and degree of sanction imposed. Payment of opposing counsel's attorneys' fees is one form of permissible sanction." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012) (citations omitted).

**B.      Rule 26**

Rule 26 "requires parties seeking discovery to act (1) consistently with the rules of existing law or with good reason to change the law; (2) without bad faith; and (3) reasonably without imposing undue burden or expense considering the needs of the case." *Id.* (citing Fed. R. Civ. P. 26(g)(1)(B)). "[B]y signing a discovery request, the attorney certifies that, to the best of his or her knowledge, information, and belief, the discovery request is consistent with Rule 26(g)(1)(B)." *Duong v. Groundhog Enters., Inc.*, No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939, at \*9 (C.D. Cal. Feb. 28, 2020). Rule 26 further states "that if a certification violates Rule 26 without substantial justification, the Court must impose an appropriate sanction." *Li v. Merck & Co.*, No. 23-cv-03347-JSW(TSH), 2025 WL 2162949, at \*6 (N.D. Cal. July 30, 2025) (citing Fed. R. Civ. P. 26(g)(3)). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). Sanctions under Rule 26 are warranted where the signer of a discovery request issues a third-party subpoena that violates Rule 26 and the signer's actions are not substantially justified. *Duong*, 2020 WL 2041939, at \*9–10. Moreover, "a violation of any one of the Rule 26 duties will be relevant to assessing propriety of sanctions under Rule 45(c)(1)'s 'undue burden' language." *Mount Hope*, 705 F.3d at 425.

**C.      Section 1927**

Pursuant to Section 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

11

expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Courts wishing to impose sanctions under § 1927 must make a finding that the attorney to be sanctioned acted with 'subjective bad faith.'" *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024). "[A] finding that the attorneys recklessly raised a *frivolous* argument which resulted in the multiplication of the proceedings justifies § 1927 sanctions." *Id.* at 1155 (emphasis in original) (cleaned up); *see also In re Keegan Mgmt. Co., Secs. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.") (cleaned up). Frivolous arguments are "ones that are baseless and made without reasonable and competent inquiry or made up of legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Caputo*, 96 F.4th at 1155 (cleaned up). Sanctions under Section 1927 may only be imposed upon individual attorneys, rather than against the client or law firm. *Kaass Law Firm v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–94 (9th Cir. 2015).

## D.      Court's Inherent Power

A district "court has the inherent power to sanction a party or its lawyers if it acts in willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as well as for willful abuse of the judicial processes." *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980)) (cleaned up). "[T]he district court may not sanction mere 'inadvertent' conduct." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). Rather, the imposition of sanctions under the court's inherent powers requires "a finding of bad faith, or conduct tantamount to bad faith." *Vernon*, 255 F.3d at 1134. "[R]ecklessness, of itself, does not justify the imposition of sanctions" under the Court's inherent power. *Id.* However, "sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* (cleaned up). "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's

12

United States District Court
Northern District of California

fees." *Fink*, 239 F.3d at 992 (cleaned up).

## IV. DISCUSSION

The Non-Parties move for sanctions under (1) Rule 45; (2) Rule 26; (3) Section 1927; and (4) the Court's inherent power. Mot. at 16:23–18:11. Overall, the Non-Parties request sanctions against GT and its counsel in the form of monetary sanctions and an order requiring GT's counsel "to prepare and present a CLE on ethics and discovery practice on Lawline.com, at a local Bar Association, or another public forum."[2] *Id.* at 1:11–3:1. GT contends that the Motion is "baseless" and serves "as a vehicle to air preexisting grievances" with GT's counsel and to punish GT. Opp. at 1:1–9.

In sum, the Court concludes that sanctions are warranted under Rule 45 and under Rule 26. Because the Court awards the Non-Parties the relief they seek under these Rules, the Court need not determine whether sanctions are also warranted under Section 1927 or under the Court's inherent power.

### A. Basis For Sanctions

The Non-Parties argue that sanctions are warranted because GT and its counsel (1) took reckless legal positions that are contrary to law; (2) acted in bad faith; and (3) imposed undue burdens on the Non-Parties and engaged in harassment. Mot. at 16:23–18:11. GT contends that sanctions are not warranted because (1) there was no undue burden; (2) GT's Subpoena was issued in accordance with the law; (3) Krivoshey's accusations of misrepresentation are actually just ordinary discovery disagreements; and (4) the requested sanctions are improper as a matter of law and equity. Opp. at 2:22–3:18.

#### 1. Rule 45

Under Rule 45, a court "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice*, 738 F.3d at 1185. "For example, a party may issue a subpoena in a manner inconsistent with existing law if it

---

[2] Regarding GT's counsel, the Non-Parties seek sanctions against "the law firm of Davis, Wright, and Tremaine, and attorneys Jacob Harper and Joseph Elie-Meyers for discovery abuse[.]" Mot. at *i*.

13

does not follow the subpoena procedures in Rule 45, such as failure to notify opposing counsel of the subpoenas or requesting information that is wholly irrelevant under any legal theory." *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, No. 3:22-cv-04480-JSC, 2024 WL 5011603, at *2 (N.D. Cal. Dec. 6, 2024) (cleaned up).

Here, the Court concludes that under Rule 45, sanctions are appropriate because GT's "conduct in pursuing the subpoenas and the subpoenas themselves imposed an undue burden on [the Non-Parties], was inconsistent with existing law and issued for an improper purpose." *Cf. Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-mc-80076-JSC, 2016 WL 7212308, at *3 (N.D. Cal. Dec. 13, 2016).

First, the Court finds that because the Second Subpoena had a plethora of defects, it was inconsistent with existent law. The Non-Parties argue that the record supports sanctions because the Second Subpoena was facially defective. Mot. at 18:12–19:5. The Court agrees. GT admits that it did not serve the Second Subpoena on the *Patel* Plaintiffs or their counsel (Dovel & Luner). Opp. at 20:9–16. Rule 45 requires that any subpoena commanding the production of documents must be "served on each party" before "it is served on the person to whom it is directed." Fed. R. Civ. P. 45(a)(4). Indeed, the face of the Second Subpoena quotes this very section. *See* Krivoshey Decl., Ex. B. Yet GT cites no authority for its proposition that it can disregard Rule 45's notice requirement because the Second Subpoena was "materially identical" to the one previously served. Opp. at 20:9–16. Next, GT does not dispute that it did not personally serve Krivoshey but instead served the Second Subpoena on Smith Krivoshey's registered agent. *Id.* at 19:18–20:8; Elie-Meyers Decl. ¶ 9. Most district courts agree that "delivering" a Rule 45 subpoena to a third-party "requires personal service." *Netlist, Inc. v. Montage Tech., Inc.*, No. 22-mc-80337-VKD, 2023 WL 2940043, at *2 (N.D. Cal. Feb. 24, 2023); *see* Reply at 10:4–18 (collecting cases). GT cites to no authority—and the Court is aware of none—that service on a business entity's registered agent is tantamount to personal service on an individual. *See Netlist*, 2023 WL 2940043, at *2 (noting courts acknowledge "that personal service on a corporation may be accomplished by serving its agent"). And in fact, the proof of service for the Second Subpoena lists Smith Krivoshey as a "Party Served." Elie-Meyers Decl., Ex. 6. Nor does GT dispute that the Second

14

United States District Court
Northern District of California

Subpoena defined "You" as Smith Krivoshey—not Krivoshey—but avers this was "due to an administrative error." *Id.* ¶ 9; *see* Opp. at 19:6–17. This "mistake" created ambiguity as to the Subpoena recipient and did not clearly convey that Krivoshey was noticed for deposition, as opposed to Smith Krivoshey. *Cf. Scott v. Keller*, No. 2:07-cv-00184-KJD-PA, 2010 WL 1267772, at *2 (E.D. Cal. Mar. 31, 2010) (explaining that under Rule 34, listing multiple defendants as subpoena recipients made unclear which defendant was supposed to respond). Lastly, GT concedes that the Second Subpoena did not include witness fees. *See* Krivoshey Decl. ¶ 20; Opp. at 20:17–22. Rule 45 requires "concurrent tender of witness fees and an estimated mileage allowance with service of a subpoena." *San Francisco Bay Area Rapid Transit Dist. v. Spencer,* No. C-04-04632-SI, 2006 WL 2734284, at *1 (N.D. Cal. Sept. 25, 2006) (cleaned up).

In sum, GT's counsel issued the Second Subpoena which was not served on the opposing party, was ambiguous regarding the Subpoena recipient, was not personally served on the purported Subpoena recipient, and did not tender the required fees—this was contrary to law. *See Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL(JSC), 2015 WL 5782351, at *8 (N.D. Cal. Oct. 5, 2015) (noting party's "attempt to sidestep the well-settled requirements of Rule 45 . . . weighs in favor of sanctions"); *Spencer*, 2006 WL 2734284, at *1 (holding Rule 45 subpoenas "are invalid because they were not personally served and accompanied by tender of witness fees"). GT's arguments to the contrary are unpersuasive—while courts may excuse singular or inadvertent procedural defects in a subpoena, here, GT knowingly issued a Subpoena that contained several defects. *See* Opp. at 19:3–20:24; Reply at 10:1–3. Therefore, GT's issuance of the facially defective Second Subpoena supports sanctions. *See Diversified Funding Grp., LLC v. Hendon*, No. CV-17-00189-VAP(AFMx), 2018 WL 1870029, at *1 (C.D. Cal. Jan. 4, 2018) (explaining facially defective subpoena is a ground for sanctions under Rule 45).

Second, the Court finds that in issuing the Subpoenas, GT's counsel failed to take reasonable steps to avoid imposing an undue burden on the Non-Parties, which was contrary to law. The Non-Parties argue that the record supports sanctions because GT's counsel sought documents or testimony available from the *Patel* Plaintiffs, counsel refused to work with the Non-Parties to narrow the issues, and counsel's conduct regarding the Second Subpoena violated

15

professional rules of conduct. Mot. at 19:6–20:13. GT does not contest that a party must seek documents from other parties prior to relying on non-parties. Opp. at 13:12–14:24. Nor could it. *See Duong*, 2020 WL 2041939, at *7 ("In its undue burden inquiry, the Court properly may evaluate whether information requested through a nonparty subpoena is readily available from a party."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). But GT contends that the *Patel* Plaintiffs would not possess the documents requested in the Subpoenas, and because Dovel & Luner are also non-parties, GT is not required to go to Dovel prior to the Non-Parties. Opp. at 13:12–14:24. These arguments miss the mark. The Subpoenas sought communications and documents exchanged between the former and present counsel involved in the *Patel* Action—these documents are part of the case file in the *Patel* Action because they concern representation of the *Patel* Plaintiffs by their current counsel. Reply at 6:2– 21. Importantly, these documents would be in the *Patel* Plaintiffs' control, through Dovel if necessary. Reply at 6:2–21; *see* Cal. R. Prof. Cond. 1.16(e)(1) ("'Client materials and property' includes correspondence, . . . and other items reasonably necessary to the client's representation, whether the client has paid for them or not."). Moreover, GT asked other law firms to "provide sworn declarations describing their relationship with former counsel," *after* Krivoshey submitted a declaration with his motion to quash; GT does not explain why it did not seek these items prior to noticing Krivoshey's deposition. Opp. at 14:12–21; *see* Reply at 7:1–11. GT thus unnecessarily burdened the Non-Parties by failing to obtain requested materials from the *Patel* Plaintiffs.

GT further contends that sanctions are not warranted because it attempted to narrow the issues posed by the Second Subpoena by conferring with Krivoshey. Opp. at 14:26–16:8. But this contention is belied by the record. Elie-Meyers makes a general averment that during the call for the Second Subpoena, he "repeatedly offered to discuss limiting the scope of the Subpoena, or to extend the time for compliance to allow additional time to negotiate the scope of the Subpoena." Elie-Meyers Decl. ¶ 12. However, he does not dispute that during the meet and confer call for the Second Subpoena, he refused to continue Krivoshey's deposition after Krivoshey pointed out the facial deficiencies with the Subpoena; he refused to provide a copy of the First Subpoena or

United States District Court
Northern District of California

United States District Court
Northern District of California

answer questions about that Subpoena; he refused to tell the Non-Parties which documents GT had obtained from the *Patel* Plaintiffs and would not communicate what documents GT was seeking; he relayed incorrect information that Dovel's deposition was scheduled to occur before Krivoshey's deposition and told Krivoshey that he would know what documents were needed after deposing Dovel; and he did not disclose that fact discovery was limited to the new *Patel* Plaintiffs. *See* Krivoshey Decl. ¶¶ 29–40; *see generally* Elie-Meyers Decl. Nor does Elie-Meyers dispute that at the time of call, GT had received discovery from the *Patel* Plaintiffs that was responsive to the Second Subpoena that he refused to disclose to the Non-Parties. Reply at 3:17–4:9. And despite the myriad problems with the Second Subpoena, GT refused to continue the compliance date unless the *Patel* Plaintiffs agreed to extend discovery—something the Non-Parties had no control over. *See* Krivoshey Decl. ¶¶ 29, 43, Ex. D; Reply at 9:17–24. Therefore, GT's counsel's behavior—failing to obtain requested materials from the *Patel* Plaintiffs first, refusing to narrow the scope of the Second Subpoena, and refusing to extend the compliance date in the face of the defective Second Subpoena—supports sanctions. *Cf. In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967-CW(NC), 2012 WL 629225, at *8 (N.D. Cal. Feb. 27, 2012) (awarding sanctions under Rule 45 where plaintiffs "did not take advantage of the discovery they obtained from other sources in tailoring their document requests" and exhibited an "unwillingness to compromise during the meet-and-confer process"); *contra Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 283 (N.D. Cal. 2017) (declining to impose Rule 45 sanctions where counsel engaged in discussions to narrow subpoena's scope and "suggested ways to reduce the burden" on the non-party).

Third, the Court finds that the Subpoenas were issued for an improper purpose. The Non-Parties argue that the record supports sanctions because the Subpoenas were served based on GT's "speculation" that the Non-Parties "might have some, unidentified information unavailable from the opposing party." Mot. at 15:25–16:8, 19:6–22. GT contends that that it issued the Subpoenas "to probe [Krivoshey's] potentially continued involvement in the *Patel* litigation." Opp. at 11:9–13:11 (citing Elie-Meyers Decl. ¶ 2). As discussed, GT's document requests were improper. And GT relies on the thinnest of reeds to justify its request to depose Krivoshey. The undisputed

evidence shows that Harper doubted Krivoshey would "walk away" from the *Sharpe* Action; the Non-Parties withdrew from the *Sharpe* Action prior to the addition of the *Patel* Plaintiffs; the Non-Parties and the newly added counsel agreed that the new counsel would be responsible for all aspects of the *Sharpe/Patel* Action going forward; the Non-Parties were not entitled to fees from the *Patel* Action; and none of the *Patel* Plaintiffs testified that the Non-Parties were involved in the *Patel* Action. Reply at 2:5–4:15; *see* Krivoshey Decl. ¶¶ 6–7, 11, Exs. P, Q, R; ECF No. 11 at 11. In the face of this evidence, GT's argument that the fee agreements created a "plausible concern" that Krivoshey "continued to direct and stand to profit from the litigation" is insufficient to justify issuing the Subpoenas. Opp. at 1:19–2:4. Therefore, GT's issuance of the Subpoenas for an improper purpose supports sanctions. *Cf. Beaver*, 2016 WL 7212308, at *4 (holding subpoenas were issued for improper purpose where "subpoenas appeared to be an attempt to fish around to see if there is a basis for bringing a libel case against Gotham which is not an appropriate reason for the subpoena") (cleaned up).

Moreover, as discussed below, the Court finds that GT's counsel's actions also violated Rule 26. This supports an award of sanctions under Rule 45. *Mount Hope*, 705 F.3d at 425.

Accordingly, the Court concludes that sanctions are warranted under Rule 45. Rule 45(d)(1) states that the sanctions are to be imposed "on a party or attorney who fails to comply." Here, those attorneys are Harper and Elie-Meyers, and accordingly the Court sanctions them.[3]

### 2.      Rule 26

Rule 26 "requires parties seeking discovery to act (1) consistently with the rules of existing law or with good reason to change the law; (2) without bad faith; and (3) reasonably without imposing undue burden or expense considering the needs of the case." *Mount Hope*, 705 F.3d at 425 (citing Fed. R. Civ. P. 26(g)(1)(B)). Rule 26(g) "requires a signing attorney to certify that a reasonable inquiry has been made with respect to the factual and legal basis for any discovery request or response." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987). If a certification violates Rule 26 "without substantial justification, the court, on

---

[3] The Court declines to sanction the client or the firm, as the two identified attorneys appear to be the ones responsible.

motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

Here, the Court concludes that under Rule 26, sanctions must be issued. Attorney Harper signed the certifications on the Subpoenas on behalf of Davis Wright Tremaine. *See* Krivoshey Decl., Exs. A, B. As discussed, the Second Subpoena was a facially defective subpoena that imposed an undue burden on the Non-Parties and was issued for an improper purpose. The Second Subpoena thus violates Rule 26. *Mount Hope*, 705 F.3d at 425. In addition, Harper fails to demonstrate that his actions were substantially justified. Indeed, Harper's only explanation for serving the Subpoenas is that they "were issued in *Patel* strictly for the needs of this litigation," and GT "employed the least burdensome means of obtaining information sufficient to address its concerns regarding the ongoing involvement and financial interest of former counsel before issuing the subpoenas."[4] Harper Decl. ¶ 2. Harper does not explain why GT did not seek documents from the *Patel* Plaintiffs or why GT refused to narrow the scope of the Subpoena. And Harper offers no explanation for why the Second Subpoena did not conform to existing rules of law. Therefore, sanctions under Rule 26 are required. *See Williams v. Dr. Harold Katz, LLC*, No. 20-cv-05188-SK, 2020 WL 13832893, at *2 (N.D. Cal. Dec. 30, 2020) (holding sanctions were mandatory for Rule 26 violation).

Accordingly, the Court concludes that sanctions are warranted under Rule 26. Rule 26(g)(3) states that the sanctions should be imposed "on the signer, the party on whose behalf the signer was acting, or both." Here, the Court sanctions Harper, the signer.[5]

**B.    Appropriate Sanctions**

The Non-Parties request both monetary and prospective sanctions "to compensate for the misconduct in this case and to deter future misconduct." Mot. at 22:5–15.

---

[4] In its Opposition, GT sets forth numerous arguments for why the Second Subpoena was proper and consistent with existing law. "But it is well established in this District that attorney argument is not evidence on which the court can rely." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286 (N.D. Cal. 2015); *see also* Civ. L.R. 7-5(a). And in any event, the Court rejects those arguments above.

[5] The Court declines to sanction the client, as the Rule 26 violations are properly attributable to Harper.

United States District Court
Northern District of California

### 1.      Continuing Legal Education

The Non-Parties request the Court impose prospective sanctions on GT's counsel as these sanctions are "likely to encourage improved behavior going forward." Mot. at 22:12–14. Specifically, the Non-Parties request the Court (1) require GT's counsel "to present CLE, or at a bare minimum, attend CLE in person." *Id.* at 23:17–24:26.

Under Rule 45, courts "have discretion over the type and degree of sanction imposed." *Mount Hope*, 705 F.3d at 425.

Here, the Court concludes that prospective sanctions against Attorneys Jacob Harper and Joseph Elie-Meyers are appropriate. GT does not dispute that the Court can impose CLE sanctions; instead, GT argues that such sanctions are not warranted here because the conduct of GT's counsel did not prejudice the Non-Parties. Opp. at 24:15–25:21. But as discussed, the Non-Parties argue persuasively that GT's counsel's conduct—issuing a Subpoena that imposed an undue burden on the Non-Parties, was inconsistent with existing law, and was issued for an improper purpose—*did* prejudice the Non-Parties. *See supra*, Part IV.A.1. Moreover, given that GT's counsel has already been warned about their improper litigation tactics—including by a court in this district—the Court agrees that prospective sanctions are necessary to encourage better behavior in the future. *See* Mot. at 20:14–21:8; *Effinger v. Ancient Organics LLC*, No. 22-cv-03596-AMO, 2024 WL 3643395, at *1 (N.D. Cal. Aug. 2, 2024) (criticizing GT's counsel for lack of "a meaningful effort to schedule and complete depositions" where counsel "avoided making service by electronic means, as the parties had done throughout the case" and "did not coordinate with Plaintiffs' counsel prior to issuing the deposition notices"); *Hawkins v. Kroger Co.*, No. 15-cv-2320-JM(AHG), 2020 WL 6150040, at *10 (S.D. Cal. Oct. 20, 2020) (stating "this court is highly critical of the gamesmanship and stonewalling tactics employed by Counsel, resulting in the derailing of the orderly discovery process," in analyzing GT's counsel's actions). Further, monetary sanctions alone are unlikely to deter counsel's conduct going forward because they are but "loose change" for a national law firm like Davis Wright Tremaine. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 936 (N.D. Cal. 2023). Therefore, the Court finds that monetary sanctions alone are not sufficient to deter the conduct at issue here and

20

that prospective sanctions are appropriate to serve the goal of deterrence. *Cf. Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 980796, at *19 (N.D. Cal. Mar. 31, 2025) (issuing CLE sanctions against counsel); *Davis v. Los Angeles W. Travelodge*, No. CV-08-8279-CBM(CTx), 2010 WL 623657, at *1 (C.D. Cal. Feb. 3, 2010) (issuing CLE sanctions "due to the incivility and unprofessional conduct" by counsel).

Accordingly, the Court **GRANTS** the Non-Parties' request for prospective sanctions. The Court **ORDERS** Attorney Harper and Attorney Elie-Meyers to each complete at least two hours of in-person, California bar-approved CLE classes on Federal Court Litigation (one hour of which shall include a Legal Ethics component or credit), by no later than June 30, 2027, and each file with the Court a certification, under oath, that each has completed such CLE by the deadline. These CLE hours shall be in addition to any CLE hours that Harper and Elie-Meyers must complete to satisfy other requirements.

### 2. Monetary Sanctions

The Non-Parties request the Court award monetary sanctions in the form of compensatory fees and "order supplemental briefing on the appropriate amount." Mot. at 22:16–24:27. GT opposes sanctions but states that per "standard practice in the Ninth Circuit," GT will "provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs, as necessary." Opp. at 24 n.7 (cleaned up).

Both Rule 45 and Rule 26 permit an award of attorneys' fees and expenses as a sanction for misconduct. *See Mount Hope*, 705 F.3d at 425 (explaining "[p]ayment of opposing counsel's attorneys' fees is one form of permissible sanction" under Rule 45); *Li*, 2025 WL 2162949, at *7 (explaining that under Rule 26, "[t]he sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation").

Here, the Court concludes that monetary sanctions are appropriate. The parties dispute to what extent fees may be awarded. The Non-Parties request an award for attorneys' fees incurred "in responding to the subpoena, moving to quash, moving to shorten time on the motion to quash, and moving for sanctions." Mot. at 23:17–24:27. GT argues that under Rule 45, courts may only award sanctions for costs incurred in complying with a subpoena. Opp. at 24:25–25:11. The Non-

United States District Court
Northern District of California

Parties respond that Rule 45 permits an award of costs beyond those associated with compliance where a party issues a third-party subpoena for an improper purpose or in a manner inconsistent with law. Reply at 11:3–18. Under the facts of this matter, the Non-Parties have the better argument. GT issued the Second Subpoena on February 4, 2026; the Non-Parties attempted to narrow the scope of the Subpoena and continue its compliance date during the call on February 9, 2026, but GT refused; the Non-Parties filed a motion to quash and shorten time on February 11, 2026; GT notified the Non-Parties that it was withdrawing the Subpoena on February 18, 2026, and withdrew the Subpoena on February 19, 2026; and the Non-Parties filed their Motion for Sanctions on February 20, 2026. *See* Krivoshey Decl. ¶¶ 29–40, 48, Exs. B, F; ECF Nos. 1, 2, 6, 9. Because GT did not withdraw the improper Second Subpoena until *after* the Non-Parties filed their motion to quash, GT's conduct caused the Non-Parties to incur fees for their motion to quash (and related motion to shorten time) and motion for sanctions. *Cf. Hill v. Robert's Am. Gourmet Food, LLC*, No. C-13-80166-MISC-JST(EDL), 2013 WL 5118943, at *4 (N.D. Cal. Sept. 13, 2013) (granting sanctions under Rule 45 and explaining "because of the timing of Plaintiff's offer [to not enforce the subpoena], two hours before the filing of the motion [to quash], [the non-party] could not reasonably avoid incurring the fees associated with drafting the opening motion to quash and motion for sanctions and filing the motions") (alterations added); *see also Duong*, 2020 WL 2041939, at *5 ("Sanctions are properly imposed where the party issuing an improper subpoena refuses to withdraw it, requiring the nonparty served with the subpoena to institute a motion to quash."). To that end, GT's argument that sanctions are not warranted because GT withdrew the Second Subpoena before the compliance date fails. Opp. at 16:9–18:7; *see* Mot. at 21:9–22:4. GT's delay in withdrawing the Second Subpoena needlessly increased the Non-Parties' costs. *Cf. Beaver*, 2016 WL 7212308, at *3 (awarding attorneys' fees where defendants "needlessly multiplied [non-party's] costs" by withdrawing motion to compel compliance with improper subpoena after non-party incurred costs opposing motion to compel).

Further, GT does not respond to the Non-Parties' request for monetary sanctions under Rule 26. *See* Opp. at 24:15–25:21; *Williams*, 2020 WL 13832893, at *2 (awarding sanctions under Rule 26 for attorneys' fees incurred in filing motion for sanctions). Therefore, the Court

22

finds that sanctions are appropriate for the Non-Parties' attorneys' fees and costs incurred in responding to the Second Subpoena, moving to quash and shorten time for the Second Subpoena, and moving for sanctions and replying to GT's Opposition to the motion for sanctions.

Accordingly, the Court **GRANTS** the Non-Parties' request for monetary sanctions in the form of attorneys' fees and expenses. The Court **ORDERS** the Non-Parties to file a supplemental brief detailing the reasonable fees so incurred, along with a proposed order, no later than July 9, 2026.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Non-Parties' Motion for Sanctions. The Court **SANCTIONS** Joseph Elie-Meyers under Rule 45 and Jacob Harper under Rules 45 and 26. The Non-Parties shall submit a supplemental brief in accordance with this Order by July 9, 2026. The sanctioned attorneys' response, if any, shall be filed by July 23, 2026.

**IT IS SO ORDERED.**

Dated: June 18, 2026

THOMAS S. HIXSON
United States Magistrate Judge

_United States District Court_
_Northern District of California_

23