**EXHIBIT 5**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

| | | |
|---|---|---|
| Dated and Entered: | 03/18/2026 | Time:   10:00 AM |
| Judicial Officer: | Thomas P Anderle | |
| Deputy Clerk: | Veronica Robles | Dept:   SB Dept 3 |
| Deputy Sheriff: | | |
| Bailiff/Court Officer: | Brandon Thillman | Case No: 24CV03007 |
| Court Reporter: | Christopher Dunsmore | |

## People of the State of California vs The Kroger Co

Parties Present:

| | |
|---|---|
| Armstrong, Blake R | Attorney for Non-Party |
| Harper, Jacob M | Attorney for Defendant |
| Lucas, Morgan Siobhan | Attorney for Plaintiff |
| Reid, Andrew | Attorney for Plaintiff |

**NATURE OF PROCEEDINGS*:*  Motion: Protective Order; Motion: Disqualify Counsel**

Jacob Harper presented oral argument.

At the conclusion of argument, the Court adopted its tentative ruling as indicated below.

### HEARING

(1) Defendant The Kroger Co.'s Motion to Disqualify Morgan Lucas and Andrew Reid as Counsel.

(2) Plaintiff the People of the State of California's Motion for Protective Order Regarding Deposition of Morgan Lucas and Andrew Reid.

### ATTORNEYS

*For Plaintiff People of the State of California*: John T. Savrnoch, Morgan S. Lucas, Christopher B. Dalbey, Office of the Santa Barbara County District Attorney; Erik Nasarenko, Andrew J. Reid, Office of the Ventura County District Attorney

*For Defendant The Kroger Co.*: Jacob M. Harper, James H. Moon, Daniel H. Leigh, Davis Wright Tremaine LLP

Emails: jamesmoon@dwt.com; danielleigh@dwt.com; mlucas@countyofsb.org; Andrew.Reid@venturacounty.gov;

### RULING

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

**(1)     For all reasons stated herein, defendant The Kroger Co.'s motion to disqualify Morgan Lucas and Andrew Reid as counsel is denied. The court declines to award monetary sanctions.**

**(2)     For all reasons stated herein, plaintiff People of the State of California's motion for protective order regarding the deposition subpoenas to Morgan Lucas and Andrew Reid is granted. These subpoenas are quashed, and Attorneys Lucas and Reid need not take further action as to these subpoenas. The court declines to award monetary sanctions.**

### Background

On May 29, 2024, plaintiff People of the State of California (People) filed their original complaint in this action against defendant The Kroger Co. (Kroger), an operator of retail grocery stores. The People allege that beginning on November 1, 2018, Kroger sold bread products (Carbmaster Products) in California with misleading packaging pertaining to the number of calories in these products.

Between July 2024 and March 2025, the parties litigated issues pertaining to a notice of removal of this action to federal court by Kroger, a subsequent order of remand from the federal court to this court, and a demurer and motion to strike by Kroger pertaining to the People's first amended complaint.

On April 9, 2025, the People filed their operative second amended complaint (SAC). The SAC asserts 10 causes of action: (1) false advertising (outside of FDA panel), violation of Business and Professions Code section 17500; (2) false advertising (within FDA panel), violation of Business and Professions Code section 17500; (3) unfair competition (false advertising outside of FDA panel), violation of Business and Professions Code section 17200; (4) unfair competition (false advertising within FDA panel), violation of Business and Professions Code section 17200; (5) unfair competition (false advertising by enticement outside of FDA panel), violation of Business and Professions Code section 17200; (6) unfair competition (false advertising by enticement within FDA panel), violation of Business and Professions Code section 17200; (7) unfair competition (misbranded food outside of FDA panel), violation of Business and Professions Code section 17200 and Health and Safety Code section 110660; (8) unfair competition (misbranded food within FDA panel), violation of Business and Professions Code section 17200 and Health and Safety Code section 110660; (9) unfair competition (untrue or misleading advertising outside of FDA panel), violation of Business and Professions Code section 17200; and (10) unfair competition (untrue or misleading advertising within FDA panel), violation of Business and Professions Code section 17200.

As alleged in the SAC: The packaging for Carbmaster Products contained false and misleading information as to the number of calories contained in a serving. (SAC, ¶¶ 13-36.) "For example, on the front packaging and on the FDA Nutrition Facts panel, [Kroger] advertised that its CARBMASTER Wheat Bread contained only 30 calories. In reality, CARBMASTER Wheat Bread contained 50 calories. In another instance, [Kroger] advertised on the front packaging and the FDA Nutrition Facts panel that its CARBMASTER Hamburger Buns contained only 50 calories, when the buns actually contained 100 calories." (SAC, ¶ 18.) In 2021 or 2022, Kroger corrected the FDA nutrition facts on the back of the packaging, but continued to underrepresent the number of calories on the front of the packaging. (SAC, ¶¶ 19-24.) The People seek to recover civil penalties pursuant to Business and Professions Code sections 17200 through 17206, 17500, 17535, and 17536, in the amount of $2,500 for each violation, and to obtain a permanent injunction. (SAC, ¶¶ 32-96.)

On August 22, 2025, Kroger filed its operative first amended answer to the SAC, generally denying the allegations in the SAC and asserting 12 affirmative defenses.

On February 17, 2026, Kroger moved to disqualify two attorneys representing the People in this action, Morgan Lucas and Andrew Reid. Kroger's motion is based on the People having listed attorneys Lucas and Reid as persons with knowledge in response to form interrogatories served by Kroger. Kroger argues that attorneys Lucas and Reid are necessary witnesses in this action, cannot act as counsel of record for the People while also testifying as fact witnesses, and must be disqualified under Rules of Professional Conduct, rule 1.7 and rule 3.7. This motion is opposed. The People request monetary sanctions.

On February 18, 2026, the court granted a protective order quashing a deposition notice seeking to depose the person most qualified (PMQ) of the People pertaining to 20 categories including discussions among counsel of record for the People. After discussing the factors under *Carehouse Convalescent Hospital v. Superior Court* (2006) 143 Cal.App.4th 1558, 1562 (*Carehouse*), the court ruled in part: "Kroger does not reasonably dispute that many of the topics in the Notice have been addressed by written discovery, that Kroger could serve follow-up written discovery on the issues in the Notice, or that Kroger could take the individual deposition of the People's investigator. Kroger has not demonstrated that it lacks other practicable means to obtain the information contained in the Notice. The Notice served by Kroger appears to seek privileged information. Kroger has not demonstrated extreme good cause to take the PMQ deposition of the People. The Court will grant the People's motion for protective order and quash this Notice." (Minute Order, Feb. 18, 2026.) The court also addressed various discovery disputes between the parties. (*Ibid.*)

On February 23, 2026, the People moved for a protective order relieving them of compliance with deposition subpoenas served by Kroger on attorneys Lucas and Reid in their individual capacities. The People request monetary sanctions. This motion is opposed.

On March 13, 2026, Kroger submitted a supplemental brief and supplemental declaration pertaining to its disqualification motion.

On March 16, 2026, the People submitted a supplemental brief in opposition to Kroger's disqualification motion.

## Analysis

(1)    Kroger's Motion to Disqualify Counsel

"A trial court's authority to disqualify an attorney derives from its inherent power, codified at Code of Civil Procedure section 128, subdivision (a)(5), to control the conduct of its ministerial officers and of all other persons connected with its proceedings in furtherance of justice. [Citation.] Disqualification may be ordered as a prophylactic measure against a prospective ethical violation likely to have a substantial continuing effect on future proceedings." (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 581 (*Yim*).)

"A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless:
"(1) the lawyer's testimony relates to an uncontested issue or matter;
"(2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or

"(3) the lawyer has obtained informed written consent from the client. If the lawyer represents the People or a governmental entity, the consent shall be obtained from the head of the office or a designee of the head of the office by which the lawyer is employed." (Rules Prof. Conduct, rule 3.7(a).)

"A lawyer shall not, without informed written consent* from each affected client … represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person,* or by the lawyer's own interests." (Rules Prof. Conduct, rule 1.7(b).)

"The 'advocate-witness rule,' which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics in the American legal system, and traces its roots back to Roman Law. [Citation.] … 'Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced.' [Citations.] In other words, a court retains discretion to disqualify a likely advocate-witness as counsel, notwithstanding client consent, where there is 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.' " (*Yim*, *supra*, 55 Cal.App.5th at pp. 581-582.) The burden is on the moving party seeking disqualification. (See Evid. Code, § 500.)

"[T]o effectuate the rule's purpose of avoiding fact finder confusion, we interpret the rule's use of the term 'trial' to encompass a pretrial evidentiary hearing at which counsel is likely to testify. [Citation.] Further, … most courts recognize that an attorney who intends to testify at trial may not participate in 'any pretrial activities which carry the risk of revealing the attorney's dual role to the jury.' [Citation.] In particular, a testifying attorney should not take or defend depositions." (*Yim*, *supra*, 55 Cal.App.5th at p. 583.)

"In exercising its discretion to disqualify counsel under the advocate-witness rule, a court must consider: (1) 'whether counsel's testimony is, in fact, genuinely needed'; (2) 'the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons'; and (3) 'the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.' " (*Yim*, *supra*, 55 Cal.App.5th at p. 583.)

On September 25, 2025, Kroger served its first set of form interrogatories (FIs) on the People. (Harper Decl., Ex. A.) On December 8, 2025, the People served responses to Kroger's FIs. (Harper Decl., Ex. B.) In support of its motion, Kroger relies on the People's responses to FI Nos. 12.1 and 12.6, wherein attorneys Lucas and Reid were designated as persons with knowledge or persons directing or possessing investigative reports. (See *ibid.*)

FI No.12.1(d) asks the People: "State the name, **ADDRESS,** and telephone number of each individual [¶] … [¶] who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034)." (Harper Decl., Ex. A at p. 5.) In response, the People objected to this FI based on the work product doctrine, the official information privilege, the deliberative process privilege, and on grounds it calls for premature expert discovery. (*Id.*, Ex. B at p. 3, *ll.* 1-7.) Subject to and without waiving these objections, the People identified four persons with knowledge including attorneys Lucas and Reid. (*Id.*, Ex. B at p. 4, *ll.* 4-9.)

FI No. 12.6(c) asks the People: "Was a report made by any **PERSON** concerning the **INCIDENT?** If so, state [¶] … [¶] the name, **ADDRESS,** and telephone number of the **PERSON** for whom the report was made." (Harper Decl., Ex. A at p. 6.) The People asserted the same or similar objections. Subject to and without waiving their objections, the People identified attorneys Lucas and Reid. (*Id.*, Ex. B at p. 6, *ll.* 19-24.)

FI No. 12.6(d) asks the People: "Was a report made by any **PERSON** concerning the **INCIDENT?** If so, state [¶] … [¶] the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the report." (Harper Decl., Ex. A at p. 6.) The People asserted the same or similar objections. Subject to and without waiving their objections, the People identified three persons including attorneys Lucas and Reid. (*Id.*, Ex. B at p. 7, *ll.* 1-7.)

Kroger further relies on the People's responses to special interrogatories wherein the People listed attorneys Lucas and Reid as persons with knowledge, a report from the People's investigator, and the transcript of the investigator's deposition. (Supp. Harper Decl., Exs. A-D.) Attorney Lucas is identified in response to special interrogatory No. 21 as having made a purchase of Carbmaster white bread at the Goleta Ralph's on June 26, 2022. (Kroger Supp. Brief, p. 4, *ll.* 13-15.) Attorneys Lucas and Reid are identified in response to special interrogatory No. 3 as persons with information regarding the People's claims against Kroger. (*Id.*, p. 6, *ll.* 6-9.) In response to special interrogatory No. 19, the June 2022 purchase by Attorney Lucas is listed as a fact that supports the People's claims against Kroger. (*Id.*, p. 9, *ll.* 13-15.) Kroger notes that the People's investigator, Robert Parmelee, verified these interrogatory responses but did not know all the circumstances of the June 2022 purchase by attorney Lucas. (*Id.*, Ex. A [Parmelee Depo.], p. 115, *l.* 23 – p. 119, *l.* 1.) The investigator's report by Mr. Parmelee references two photographs received from attorney Lucas on June 26, 2022, and refers to them "as a referral" to conduct his investigation. (*Id.*, Ex. B.)

Kroger argues that the People have identified attorneys Lucas and Reid as "fact witnesses." As argued by Kroger, "Kroger is entitled to test Mr. Reid's and Ms. Lucas's knowledge, and, in practical effect, Mr. Reid and Ms. Lucas are likely the only available percipient witnesses on core issues in dispute." (Motion, p. 13, *ll.* 21-23.) According to Kroger, "Mr. Reid and Ms. Lucas apparently participated extensively in the State's factual development; moreover, Kroger is entitled to test the limits of their knowledge—establishing *what* evidence the State has, including what each percipient witness can testify to …." (Motion, p. 13, *l.* 26 – p. 14, *l.* 1.)

Kroger argues that attorneys Lucas and Reid's testimony is needed on "what the State contends Kroger 'knew or should have known' regarding calorie statements … including the factual basis for asserting knowledge or reasonable care," "when the People contend violations began, whether and when corrections occurred, and whether alleged conduct continued after notice—issues directly bearing on civil penalties and willfulness," "the October 4, 2022 and December 5, 2023 communications referenced in the SAC, what was conveyed, to whom, and what the People contend those communications establish," "whether alleged conduct is ongoing, whether it has been remediated, and what factual basis exists for claiming a likelihood of recurrence," "the factual predicates the People rely on to seek $2,500 per violation, including alleged harm, scope of impact, and aggravating factors," "what the People knew, when they knew it, and why suit was not filed until May 2024 despite allegations dating to 2018," and "the People's understanding of FDA panel requirements and the factual basis for contending

Kroger's labeling fell outside federal tolerances." (Motion, p. 15, *l.* 23 – p. 16, *l.* 20.)

As Kroger summarizes its arguments in its supplemental brief, "Ms. Lucas's and Mr. Reid's role in the underlying facts of this case reaches far beyond taking 'a single photograph' each—indeed, testimony obtained after Kroger filed its Motion shows that Ms. Lucas is a fact witness to core parts of the State's case, making her irredeemably conflicted and requiring their disqualification." (Kroger's Supp. Brief, p. 2, *ll.* 10-16.) "Due process and basic fairness requires that Kroger be able to take discovery into these facts—and the State's counsel's attempt to perform the dual roles of counsel and fact witnesses is therefore untenable and requires disqualification." (*Id.*, p. 3, *ll.* 17-19.)

According to the evidence submitted by the People, attorney Lucas only has personal knowledge of a single photograph depicting a label for Kroger's Carbmaster white bread. (Lucas Decl., ¶¶ 16-20.) According to the People's response to special interrogatory No. 3, attorney Lucas "has knowledge of … front and side packaging of CARBMASTER White Bread at the Goleta, California Ralph's location advertised 30 calories per slice while the FDA Panel listed 50 calories per slice." (*Id.*, Ex. 13 at p. 26, *ll.* 11-17.) It appears based on the investigator's report and the People's supplemental brief that attorney Lucas may have taken two photographs of this purchased bread product in June 2022. (People Supp. Brief, p. 2, *ll.* 27-28.)

According to the People, attorney Reid only has personal knowledge of a single screenshot of Kroger's website. (*Id.*, ¶¶ 4-6.) According to the People's response to special interrogatory No. 3, attorney Reid "has knowledge of … front and side packaging of CARBMASTER Wheat Bread listed online at Ralph's website advertised 30 calories per slice while the FDA Panel listed 50 calories per slice." (*Id.*, Ex. 13 at p. 26, *ll.* 4-10.) The People argue that knowledge of these photographs (the Photos) taken in the ordinary course of the People's investigation do not make attorney Lucas or Reid necessary witnesses in this action, particularly when the People will not introduce the Photos at trial or otherwise rely on them as evidence in this action. (Opp., p. 4, *ll.* 3-12.)

As the People summarize their position in their supplemental brief: "DDA Lucas purchased one loaf of Carbmaster white bread, photographed its front and back label, and gave the bread and the photographs to DAI Parmelee; DAI Parmelee independently collected the *same evidence* just two days later. DDA Reid took a screen capture of the bread from Defendant's own website. DAI Parmelee also took multiple screen captures of the same bread on Defendant's website." (People's Supp. Brief, p. 2, *ll.* 21-25.)

Applying the first *Yim* factor (whether counsel's testimony is genuinely needed), the photograph(s) taken by attorney Lucas appear to show the same label information as the photographs taken by the People's investigator during the same timeframe, although the identification stamps and sell-by dates indicate the photographs are not of the same loaf of bread. (Lucas Decl., ¶¶ 16-20, Exs. 9-10.) Attorney Lucas states she has no additional personal knowledge. (*Ibid.*) Attorney Reid states that apart from a single screenshot of Kroger's website, he has "no other personal knowledge of any fact or information associated with this case." (Reid Decl., ¶¶ 4-6.)

The testimony sought by Kroger does not focus on the marketing statements contained in the Photos. (Motion, p. 15, *l.* 23 – p. 16, *l.* 20.) Rather, the testimony sought by Kroger appears to focus on attorneys Lucas and Reid's mental impressions on various aspects of the case. (*Ibid.*) Kroger seeks to depose attorneys Lucas and Reid as to the People's contentions about Kroger's knowledge of calorie content (*id.*, p. 15, *ll.* 23-26), the People's contentions about Kroger's violations (*id.*, p. 15, *ll.* 23-26), the People's

knowledge about certain communications (*id.*, p. 15, *ll.* 27-28), the People's knowledge of Kroger's ongoing conduct (*id.*, p. 16, *ll.* 3-5), the People's evidence pertaining to penalties (*id.*, p. 16, *ll.* 6-9), why the People waited until May 2024 to file suit (*id.*, p. 16, *ll.* 10-13), and the People's understanding of federal labeling laws and certain jurisdiction doctrines (*id.*, p. 15, *ll.* 17-20).

The People asserted work product objections in its discovery responses. (Harper Decl., Ex. B at p. 3, *ll.* 1-7, p. 6, *ll.* 7-13.) These objections are preserved even if asserted in a conclusory manner. (See *Best Products, Inc. v. Superior Court* (2004) 119 Cal.App.4th 1181, 1188.) "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected ... in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." (*In re Jeanette H.* (1990) 225 Cal.App.3d 25, 32.) Generally, litigation-related investigations directed by counsel are protected from disclosure unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery or will result in an injustice. (See Code Civ. Proc., § 2018.030, subd. (b).) An attorney's impressions, conclusions, opinions, or legal research or theories are generally not discoverable under any circumstances. (*Id.*, subd. (a).)

Attorneys Lucas and Reid have confirmed that they will not be called as witnesses on behalf of the People. (Lucas Decl., ¶¶ 16-20; Reid Decl., ¶¶ 4-6.) Even assuming there is discoverable testimony within the scope of the Discovery Act pertaining to these Photos, the court as discussed below will grant a protective order precluding the deposition of the People's counsel of record. (See Code Civ. Proc., § 2025.420, subds. (a)-(b).) Extremely good cause has not been shown under *Carehouse*, *supra*, 143 Cal.App.4th at page 1562, to compel attorney Lucas or Reid to testify over the People's objections under these circumstances. Kroger did not establish why the contents of these Photos could not be properly evaluated by means other than deposing opposing counsel, particularly when the People will not introduce them at trial. It does not appear based on the record before the court that attorney Lucas or Reid are genuinely needed as witnesses in this action. (See *Yim*, *supra*, 55 Cal.App.5th at p. 583.) This issue is discussed further below in the context of the motion for protective order brought by the People.

As to the second *Yim* factor (whether the disqualification motion may have been purely for tactical reasons), there are impending depositions, deadlines, and a trial date in July 2026. (See Minute Order, Feb. 18, 2026.) Kroger used the private residences of opposing counsel for the deposition subpoenas to opposing counsel and on February 18 served attorney Lucas at her residence with a package of case-related papers when such service did not appear to serve any legitimate purpose. (Lucas Decl., ¶¶ 5-16, Ex. 8; Reid Decl., ¶¶ 2-3.) Kroger was aware of the heavy burden it must show to depose opposing counsel in this action. (Lucas Decl., ¶3.) The court has already issued a protective order as to the PMQ deposition of the People pertaining to categories that included privileged discussions among counsel. (Minute Order, Feb. 18. 2026.) There is support for the People's position that Kroger's motion to disqualify was made for tactical reasons. (See *Yim*, *supra*, 55 Cal.App.5th at p. 583.)

As to the third *Yim* factor (a parties' interest in counsel of choice), the trial of this action is set on July 8, 2026. There are ongoing discovery tasks that have been recently ordered by the court and there are additional discovery disputes pending on the court's docket. Trial would be delayed if disqualification was granted and discovery would be disrupted. The People's interest in continuity of counsel is significant under these circumstances. (See *Yim*, *supra*, 55 Cal.App.5th at p. 583.)

**MINUTE ORDER**

In addition, the court notes there is no right to a jury trial in this action. (See *Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 327.) Both Kroger and the People have demanded a court trial in this action. (Kroger CMC Stat., March 2, 2026; People CMC Stat., March 3, 2026.) There is no apparent risk of jury confusion under these circumstances, further supporting the People's opposition to disqualification. (See *Yim, supra,* 55 Cal.App.5th at pp. 582-583.) The court can address the issues pertaining to the Photos under these circumstances without prejudice to Kroger.

In addition, for the foregoing reasons, it does not appear that attorney Lucas or Reid's representation of the People in this action will be materially limited by their own interests or relationships with others. (See Rules Prof. Conduct, rule 1.7(b).)

For all these reasons including the factors under *Yim, supra,* 55 Cal.App.5th at pages 582-583, the court will deny Kroger's motion to disqualify attorneys Lucas and Reid. Kroger has not made a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process. This ruling assumes that the People will not submit evidence of the Photos at trial, including any foundational testimony from attorney Lucas or Reid. This ruling is without prejudice to defendant Kroger filing a motion in limine to exclude at trial any evidence of the Photos, any evidence that requires foundational testimony from attorney Lucas or Reid, or any testimony offered by attorney Lucas or Reid as to other subjects. This ruling is also without prejudice to Kroger taking appropriate discovery as to the Photos by means other than deposition testimony from attorney Lucas or Reid.

(2)     The People's Motion for Protective Order

On January 20, 2026, Kroger served deposition subpoenas for personal appearance for the deposition of attorneys Lucas and Reid in their individual capacity. (Lucas Decl. ISO Motion for PO, ¶ 5, Ex. 1; Reid Decl. ISO Motion for PO, Ex. 1.) The People move for a protective order to prevent such testimony on the grounds that Kroger cannot meet the high standard under *Carehouse, supra,* 143 Cal.App.4th at pages 1562-1563. (See Code Civ. Proc., § 2025.420, subds. (a)-(b).)

"Depositions of opposing counsel are presumptively improper, severely restricted, and require 'extremely' good cause—a high standard." (*Carehouse, supra,* 143 Cal.App.4th at p. 1562.) "Attorney depositions chill the attorney-client relationship, impede civility and easily lend themselves to gamesmanship and abuse. 'Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.' [Citation.] '[I]n the highly charged atmosphere of litigation, attorney depositions may serve as a potent tool to harass an opponent.' [Citation.] [¶] To effectuate these policy concerns, California applies a three-prong test in considering the propriety of attorney depositions. First, does the proponent have other practicable means to obtain the information? Second, is the information crucial to the preparation of the case? Third, is the information subject to a privilege?" (*Id.* at p. 1563.)

Applying the first *Carehouse* factor, as to attorney Lucas, there is another photograph of the Carbmaster white bread label taken by the People's investigator. (Lucas Decl. ISO Motion for PO, ¶¶ 17-20.) Kroger could discover information pertaining to the Carbmaster white bread labels from the People's investigator, Kroger's own files or employees, or through written discovery. The same is true as to the screenshot of Kroger's own website. (Reid Decl. ISO Motion for PO, ¶¶ 4-5.) Kroger can obtain information pertaining to this screenshot through other discovery means including from its own files, vendors, or operations. Kroger has not made a sufficient showing that the labels depicted in the Photos contain unique

information not discernable from other labels and marketing statements containing identical information, such that the deposition of opposing counsel would be warranted.

Applying the second *Carehouse* factor, Kroger makes no persuasive argument as to why the Photos are crucial to Kroger's affirmative defenses in this action or the elements of the claims alleged against Kroger. Kroger does not argue that the contents of the Photos are in dispute. As discussed above pertaining to the disqualification motion, the People are not calling these attorneys as witnesses against Kroger. The People are not offering these Photos as evidence at trial. These attorneys do not have other personal knowledge. (Lucas Decl. ISO Motion for PO, ¶¶ 17-20; Reid Decl. ISO Motion for PO, ¶¶ 4-5.) This deposition testimony does not appear crucial to Kroger's defense.

Applying the third *Carehouse* factor, as discussed above pertaining to the disqualification motion, Kroger has indicated it seeks to depose attorneys Lucas and Reid as to their mental impressions about the case against Kroger on behalf of the People. Kroger is not entitled to depose opposing counsel as to their investigation or litigation activities under these circumstances. (See Code Civ. Proc., § 2018.030.) It would be highly unusual to permit a litigant to depose opposing counsel over timely-asserted objections pertaining to counsel's mental impressions about various aspects of the case. (See *id.*, subd. (a).) The information sought by Kroger appears to be privileged.

For all these reasons, the court will grant the People's protective order and quash these deposition subpoenas pertaining to the deposition of attorneys Lucas and Reid. The court declines to award monetary sanctions but instructs counsel for Kroger not to further utilize the personal residential addresses of opposing counsel for service in this action without first demonstrating good cause to the court.

Thomas P. Anderle, Judge

ANGELA BRAUN, EXECUTIVE OFFICER          Minutes Prepared by:

                                                    Veronica Robles                    , Deputy