**EXHIBIT 6**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered: 05/06/2026                          Time:  10:00 AM
Judicial Officer:     Thomas P Anderle
Deputy Clerk:        Veronica Robles                   Dept:   SB Dept 3
Deputy Sheriff:
Bailiff/Court Officer: Brandon Thillman                 Case No: 24CV03007
Court Reporter:      Lindy DeBoer

## People of the State of California vs The Kroger Co

Parties Present:
Evan Goldsmith                    Attorney for Plaintiff (via Zoom)
James Moon                       Attorney for Defendant (via Zoom)

### NATURE OF PROCEEDINGS: Motion: Sanctions

The Court adopted the tentative ruling as follows:

### HEARING

The People's Motion for Issue, Evidentiary, and Monetary Sanctions Re PMQ
Deposition

### ATTORNEYS

*For Plaintiff People of the State of California*: John T. Savrnoch, Morgan S. Lucas,
Office of the Santa Barbara County District Attorney; Erik Nasarenko, Andrew J.
Reid, Office of the Ventura County District Attorney

*For Defendant The Kroger Co.*: Jacob M. Harper, James H. Moon, Daniel H. Leigh,
Davis Wright Tremaine LLP

Emails: jamesmoon@dwt.com; danielleigh@dwt.com;
mlucas@countyofsb.org; Andrew.Reid@venturacounty.gov

### RULING

**For all reasons stated herein, Kroger shall produce one or more witnesses most qualified to testify
on topic Nos. 2, 3, 7, and the stipulated topic in the March 12, 2026, ex parte order. The additional
PMQ deposition shall take place on or before May 29, 2026, at the office of the Santa Barbara
County District Attorney, unless otherwise agreed by the parties. If the parties cannot agree on a
specific date, the parties may appear ex parte and the court will set one. On or before May 15, 2026,
Kroger shall serve a verification that the product formulation documents required herein and in
the March 12, 2026, ex parte order have been produced. Monetary sanctions in the amount of
$12,750 are awarded in favor of plaintiff the People of the State of California, payable by defendant
The Kroger Co. on or before June 5, 2026. The motion is denied in all other respects.**

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Background

On May 29, 2024, plaintiff People of the State of California (People) filed their original complaint in this action against defendant The Kroger Co. (Kroger), an operator of retail grocery stores. The People allege that beginning on November 1, 2018, Kroger sold bread products (Carbmaster Products) in California with misleading packaging pertaining to the number of calories in these products.

Between July 2024 and March 2025, the parties litigated issues pertaining to a notice of removal of this action to federal court by Kroger, a subsequent order of remand from the federal court to this court, and a demurer and motion to strike by Kroger pertaining to the People's first amended complaint.

On April 9, 2025, the People filed their operative second amended complaint (SAC). The SAC asserts 10 causes of action: (1) false advertising (outside of FDA panel), violation of Business and Professions Code section 17500; (2) false advertising (within FDA panel), violation of Business and Professions Code section 17500; (3) unfair competition (false advertising outside of FDA panel), violation of Business and Professions Code section 17200; (4) unfair competition (false advertising within FDA panel), violation of Business and Professions Code section 17200; (5) unfair competition (false advertising by enticement outside of FDA panel), violation of Business and Professions Code section 17200; (6) unfair competition (false advertising by enticement within FDA panel), violation of Business and Professions Code section 17200; (7) unfair competition (misbranded food outside of FDA panel), violation of Business and Professions Code section 17200 and Health and Safety Code section 110660; (8) unfair competition (misbranded food within FDA panel), violation of Business and Professions Code section 17200 and Health and Safety Code section 110660; (9) unfair competition (untrue or misleading advertising outside of FDA panel), violation of Business and Professions Code section 17200; and (10) unfair competition (untrue or misleading advertising within FDA panel), violation of Business and Professions Code section 17200.

As alleged in the SAC: The packaging for Carbmaster Products contained false and misleading information as to the number of calories contained in a serving. (SAC, ¶¶ 13-36.) "For example, on the front packaging and on the FDA Nutrition Facts panel, [Kroger] advertised that its CARBMASTER Wheat Bread contained only 30 calories. In reality, CARBMASTER Wheat Bread contained 50 calories. In another instance, [Kroger] advertised on the front packaging and the FDA Nutrition Facts panel that its CARBMASTER Hamburger Buns contained only 50 calories, when the buns actually contained 100 calories." (SAC, ¶ 18.) In 2021 or 2022, Kroger corrected the FDA nutrition facts on the back of the packaging, but continued to underrepresent the number of calories on the front of the packaging. (SAC, ¶¶ 19-24.) The People seek to recover civil penalties pursuant to Business and Professions Code sections 17200 through 17206, 17500, 17535, and 17536, in the amount of $2,500 for each violation, and to obtain a permanent injunction. (SAC, ¶¶ 32-96.)

On August 22, 2025, Kroger filed its operative first amended answer to the SAC, generally denying the allegations in the SAC and asserting 12 affirmative defenses.

On December 19, 2025, the People served a deposition notice of Kroger's person most qualified (PMQ) as to specified topics to take place on January 21, 2026. (Lucas Decl., ¶ 2, Ex. 1.)

SC-2411 (Revised July 1, 2013)                                **MINUTE ORDER**

On January 16, 2026, Kroger filed a motion to quash this PMQ deposition notice or in the alternative for a protective order.

On January 22, 2026, the People filed a motion to compel the Kroger PMQ deposition due to Kroger's failure to appear on the initially noticed date of January 21.

On January 27, 2026, the court entered an order after an ex parte hearing and advanced the hearing on Kroger's motion to February 18, 2026. The court also stayed the Kroger PMQ deposition pending the February 18 hearing on Kroger's motion.

On February 18, 2026, the court ruled on Kroger's motion for protective order and the People's motion to compel pertaining to the Kroger PMQ deposition (February 18 Order). The court granted Kroger's motion for protective order in part, modifying the deposition topics, but also ordered that this deposition move forward within a specified time period. The court ordered that the Kroger PMQ deposition take place on or before March 25, 2026, on 11 deposition topics as modified in the February 18 Order.

Following the February 18 Order, the People initially noticed the Kroger PMQ deposition to take place on March 12, 2026. (Lucas Decl., ¶ 6, Ex. 3.) Kroger had previously offered March 12 as a date for this deposition and the People accepted this date. (*Id.*, Ex. 6.)

On March 9, 2026, Kroger served objections that the PMQ deposition could not move forward as scheduled on March 12. (Lucas Decl., ¶ 7, Ex. 4.) Kroger's objections stated that the anticipated PMQ witness was on maternity leave and could not testify in person on March 12. (*Ibid.*) As stated in Kroger's objections, Kroger anticipated providing an alternative date for the Kroger PMQ deposition by March 16, but did not offer further specifics. (*Ibid.*)

On March 10, 2026, the parties appeared before the court on a separate ex parte matter. (Lucas Decl., ¶ 8.) The ongoing Kroger PMQ deposition issue was raised to the court. (*Ibid.*) After a discussion with the parties, the court set another ex parte hearing on March 12, 2026, to address the ongoing Kroger PMQ deposition. (*Ibid.*; Rockenstein Decl., p. 5., *l.* 13 – p. 6., *l.* 17.)

After the March 10 ex parte hearing, the parties conferred and agreed that the Kroger PMQ deposition would now take place on March 24, 2026, at the Santa Barbara District Attorney's Office. (Lucas Decl., ¶ 10.) The parties also agreed to an additional PMQ topic and the production by Kroger of certain documents by March 17. (*Ibid.*)

On March 12, 2026, the court issued an order after an ex parte hearing (March 12 Order) ordering Kroger to make its PMQ available for deposition on March 24, 2026, as to all topics listed in the court's February 18 Order. (March 12 Order, ¶ (1).) Moreover, the court ordered that the PMQ deposition will include the additional topic of "all recipe formulations between November 2018 and the present for Kroger Carbmaster White Bread, Wheat Bread, Multiseed Bread, Hamburger Buns, and Hotdog buns, and any changes to the recipe." (*Id.*, ¶ (1)(b).) In addition, Kroger was ordered to "serve upon the People the recipe information for Carbmaster bread products on March 17, 2026." (*Id.*, ¶ (1)(a).)

On March 17, 2026, Kroger produced documents pertaining to the formulation of Carbmaster Products. (Lucas Decl., ¶ 12, Exs. 8-16.)  These documents included nutrient information as to some Carbmaster Products and ingredient information as to others. (*Ibid.*)

On March 24, 2026, the Kroger PMQ deposition took place. (Lucas Decl., ¶¶ 13-14, Ex. 18.) Kroger produced Joel Payne (Dr. Payne), a Kroger product development manager as the PMQ witness on all topics. (*Ibid.*) This was a different witness than anticipated by the People. (*Ibid.*)

On April 13, 2026, the People filed a motion seeking issue, evidentiary, and monetary sanctions, arguing that Kroger violated the February 18 Order and March 12 Order to produce a person most qualified (PMQ) as to topic No. 2 (marketing and advertisement of Kroger's Carbmaster Products sold in California from November 1, 2018, to the present), topic No. 3 (supply and distribution chain for Kroger Carbmaster Products sold in California from November 1, 2018, to the present), and topic No. 7 (Any changes made to the website displays as to the calorie content of Kroger Carbmaster Products from November 1, 2018, to the present [including but not limited to Ralphs.com, food4less.com, fredmeyer.com, and foodsco.net]). As argued by the People, the PMQ witness produced by Kroger on March 24 had little or no knowledge of these topics. The People also argue that the March 17 production of product formulation documents did not comply with the March 12 Order and the People were unable to take a proper PMQ deposition on these issues.

On April 23, 2026, Kroger filed an opposition to the People's motion. Kroger argues that the PMQ witness was qualified and answered questions to the best of his ability. Kroger argues it complied with the requirement that it produce a PMQ witness who is most qualified to testify to the extent the information is known or reasonably available to Kroger. Kroger argues that the PMQ witness, Dr. Payne, sat for deposition for the entire 11-hour timeframe set by the court despite his advanced age of 74 and other job responsibilities. Kroger argues Dr. Payne testified based on information gathered from multiple internal sources, reflecting a reasonable investigation and providing the information available to Kroger. Kroger argues that the People are not entitled to sweeping evidentiary or issue sanctions on key factual issues under these circumstances. Kroger argues that the People are inappropriately requesting sanctions that, in substance, are dispositive, when no prior monetary sanctions were issued against Kroger. Kroger argues the requested sanctions are unjust and disproportionate to the alleged misconduct. Kroger argues that the People are misusing discovery motion practice to establish elements of the case they cannot otherwise prove where lesser remedies would be effective to remedy any perceived prejudice.

## Analysis

(1)    Applicable Discovery Standards

"If the deponent named is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested. In that event, the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent." (Code Civ. Proc., § 2025.230.)

"If … [a] party-affiliated deponent … fails to obey an order compelling … testimony … the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under … against that party deponent or against the party with whom the deponent is affiliated. In lieu of, or in addition to, this sanction, the court may impose a monetary sanction … against the party with whom that party deponent is affiliated, and in favor of any party who … attended in the

expectation that the deponent's testimony would be taken pursuant to that order." (Code Civ. Proc., § 2025.450, subd. (h).)

"California discovery law authorizes a range of penalties for a party's refusal to obey a discovery order, including monetary sanctions, evidentiary sanctions, issue sanctions, and terminating sanctions. [Citations.] A court has broad discretion in selecting the appropriate penalty …. [¶] Despite this broad discretion, the courts have long recognized that the terminating sanction is a drastic penalty and should be used sparingly. [Citation.] A trial court must be cautious when imposing a terminating sanction because the sanction eliminates a party's fundamental right to a trial, thus implicating due process rights. [Citations.] The trial court should select a sanction that is 'tailor[ed] ... to the harm caused by the withheld discovery.' [Citation.] '[S]anctions should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' [¶] The discovery statutes thus 'evince an incremental approach to discovery sanctions, *starting* with monetary sanctions and *ending* with the ultimate sanction of termination.' " (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604 (*Lopez*).)

(2)    PMQ Topic No. 2 Required by the February 18 Order and March 12 Order

Topic No. 2 pertains to marketing and advertisement of Kroger's Carbmaster Products sold in California from November 1, 2018, to the present. (February 18 Order, sect. 21.) The People argue that Kroger's PMQ witness, Dr. Payne, did not have knowledge on key issues including who at Kroger decided to display calorie information on the front packaging of Carbmaster Products, where the calorie information displayed on Kroger's advertising originated, and if advertisements Kroger provided in discovery were ever used. The People argue that Dr. Payne repeatedly referred to another Kroger employee, Kris Durstock, who would be more knowledgeable on these subjects. Yet, as the People argue, Dr. Payne never spoke to Mr. Durstock in preparation for the deposition. As argued by the People, Dr. Payne was not a person most qualified to testify on topic No. 2 and Kroger therefore violated the February 18 Order and March 12 Order.

The court has reviewed the deposition testimony cited by the People in support of their arguments, including pages 27, 29, 30, 31, 160 through 166, 222, 223, 224, 274, 275, 280, 297, and 317 through 320. Dr. Payne testified that "[m]y knowledge of marketing … is very indirect because I deal with the technical side of the problems, and what I know is based on discussions with other people." (Lucas Decl., Ex. 18 at p. 29, *ll.* 5-9.) Dr. Payne indicated he did not know who created a hot dog bun "shelf talker" marketing statement prominently referencing 50 calories or who generated these marketing statement. (Lucas Decl., Ex. 18 at pp. 163, *ll.* 6-15, 164, *ll.* 12-14, 165, *ll.* 7-10.) The witness indicated that Mr. Durstock would be a "good source of information for this," and that "I really think we ought to go to Kris Durstock as the next source of information for this." (*Id.* at pp. 166, *ll.* 7-11, 167, *ll.* 3-6.) According to Dr. Payne, Mr. Durstock was "the individual who used to be the senior category strategy manager for bread and buns at that time." (*Id.* at p. 223, *ll.* 2-6.) Dr. Payne indicated that Jenny Betz would know more about a "large colorful-looking Kroger BCC support Carbmaster document." (*Id.* at p. 317, *l.* 12 – 318, *l.* 10.) Dr. Payne testified that Jennifer Betz or Mr. Durstock would be in a better position to testify to similar advertisements. (*Ibid.*) Mr. Durstock, who was at one point a senior strategy manager for baked breads and buns for Kroger, was referenced by Dr. Payne as someone with more knowledge of historical marketing of Carbmaster Products. (*Id.* at pp. 30, *l.* 14, 164, *l.* 17, 166, *l.* 10, 167, *l.* 3, 223, *l.* 4.)

The court has also reviewed the testimony cited by Kroger in its opposition, including pages 21 through 25, 30 through 53, 163, 164, 231, 308, and 309. Dr. Payne testified that he oversees a product development team at Kroger that includes one or more people who helped formulate Carbmaster Products. (Lucas Decl., Ex. 18 at p. 17., *l.* 23 – p. 23., *l.* 15.) Dr. Payne testified that he had discussions in preparation for the deposition, including with Hillary Hall, Jenny Betz, Laura Smith, and Joe Evans. (*Id.* at pp. 27, *ll.* 15-24, 31, *ll.* 4-13.) Overall, it appears Dr. Payne carried out significant investigation as to some topics set forth in the February 18 Order, but obtained limited knowledge of some of the key marketing issues such as the origin of marketing statements about calorie content and changes to such statements over the relevant time period. (*Id.* at pp. 23, 30-33, 37-43, 48-49, 52-53.)

After reviewing the testimony cited by the parties, the court agrees in part with the People. The PMQ witness, Dr. Payne, testified that other individuals, Kris Durstock and Jennifer Betz, were more knowledgeable on marketing statements about calorie content for the timeframe in question. These are key disputed issues in this action. Moreover, Dr. Payne indicated he did not speak with Mr. Durstock, a key source of information, in preparation for the deposition. Based on these circumstances, the court will order that Kroger produce a PMQ witness who is most qualified to testify about Topic No. 2, including any marketing statements about calories in Carbmaster Products before Kroger determined there may be a discrepancy as to calorie content and after any discrepancy was discovered. Kroger may produce more than one PMQ witness if necessary to cover these issues, but Kroger must "designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent." (Code Civ. Proc., § 2025.230.) Based on the testimony reviewed by the court, Kroger has not yet done so.

(3)     PMQ Topic No. 3 Required by the February 18 Order and March 12 Order

Topic No. 3 pertains to supply and distribution chain for Carbmaster Products sold in California from November 1, 2018, to the present. (February 18 Order, sect. 21.) The People argue that Dr. Payne lacked direct knowledge about the topic and only spoke with one person, Laura Smith, to educate himself about it. As argued by the People, Dr. Payne did not speak with anyone from the Kroger bakery that makes these products. According to the People, Dr. Payne could not provide a consistent or  straightforward answer to questions about when Kroger began selling Carbmaster Products in California or the California stores distributing those Products.

The court has reviewed the deposition testimony cited by the People in support of their arguments, including pages 28, 29, 30, 47, 67, 261, 306, 308, 311, 312, 314, and 315, as well as the testimony cited by Kroger. Dr. Payne testified that "[m]y knowledge of … distribution is very indirect because I deal with the technical side of the problems, and what I know is based on discussions with other people." (Lucas Decl., Ex. 18 at p. 29, *ll.* 5-9.) Dr. Payne spoke with another person, Laura Smith, a manager for a department called "Our Brands," who is "more directly affiliated with the supply chain." (*Id.* at p. 30, *ll.* 6-15.) Dr. Payne indicated Mr. Durstock had that role before Ms. Smith but Dr. Payne did not speak with Mr. Durstock in preparation for the deposition. (*Ibid.*) Dr. Payne indicated Ms. Smith and Mr. Durstock may have knowledge about which Kroger-owned stores in California carried Carbmaster Bread Products. (*Id.* at p. 306, ll. 5-16.)

The court agrees with the People that the PMQ witness produced by Kroger was not most qualified to testify about the distribution chain for Carbmaster Products sold in California and that others at Kroger

appear more qualified. The court will order that Kroger produce one or more PMQ witnesses who are most qualified to testify about Topic No. 3, including which Kroger stores or groups of stores distributed Carbmaster Products in California during the relevant time periods. (See Code Civ. Proc., § 2025.230.)

(4)     PMQ Topic No. 7 Required by the February 18 Order and March 12 Order

Topic No. 7 pertains to any changes made to the website displays as to the calorie content of Kroger Carbmaster Products from November 1, 2018, to the present (including but not limited to Ralphs.com, food4less.com, fredmeyer.com, and foodsco.net). (February 18 Order, sect. 21.) The People argue that Dr. Payne could not answer basic questions about Kroger's websites and openly stated he lacked direct knowledge of the topic. According to the People, he did not know which websites Kroger operates in California or which Kroger department manages Kroger's websites, and he did not have knowledge about changes Kroger made to its websites displaying Carbmaster Products. According to the People, he stated that he only spoke with one person, Jennifer Betz, to educate himself about it, later admitting that Betz was uninvolved with the website until 2024.

The court has reviewed the deposition testimony cited by the People in support of their arguments, including pages 37, 38, 163, 164, 224, 306, 307, and 308, and the testimony cited by Kroger. Dr. Payne testified he did not know what websites Kroger operated that are linked with its stores in California to sell products to consumers. (Lucas Decl., Ex. 18 at p. 306, *ll.* 18-21.) Dr. Payne testified that he did not have knowledge of the individuals that are responsible for creating Kroger websites targeting California consumers or managing how Kroger-branded products would appear on these websites. (*Id.* at p. 306, *l.* 22 – p. 307, *l.* 15.) Dr. Payne testified that Ms. Betz was a person to speak with on these issues as to 2024 or after, but he did not know who would have this information as to the period prior to 2024. (*Id.* at p. 307, *ll.* 16-20,) Dr. Payne testified that he did not know when photos of products were uploaded to various Kroger websites. (*Id.* at p. 307, *l.* 22 – p. 308, *l.* 5.)

The court agrees with the People that the Dr. Payne was not a person most qualified to testify as to topic No. 7. The court will order that Kroger produce one or more PMQ witnesses who are most qualified to testify about Topic No. 7, including the changes made to websites targeting California consumers during the relevant time periods. (See Code Civ. Proc., § 2025.230.)

(4)     Product Formulation Data Required by the March 12 Order

The People argue that the product formulation data provided by Kroger on March 17, 2026, is insufficient. The People argue that the nutrient information produced by Kroger does not contain the quantities of the ingredients. Moreover, the People argue that the ingredient information produced by Kroger contain components consisting of compilations of individual ingredients. According to the People, the formulation data produced by Kroger does not consist of all the complete recipe formulation of Carbmaster Products during the relevant time period. The People also argue that the historical formulations are not included. The People argue that the formulation data is needed to ascertain whether the Carbmaster Products were misbranded as to the number of calories.

The court agrees in part with the People. It appears that Kroger has produced some formulation data, but that Kroger's efforts are incomplete. It is not clear that the parties had the same understanding of the stipulation. The court notes that some of the details argued by the parties are not included in the stipulated language in the March 12 Order. The court will require that Kroger serve a verified response indicating

that it has produced "all the recipe formulations in its custody or control between November 2018 and the present for Kroger Carbmaster White Bread, Wheat Bread, Multiseed Bread, Hamburger Buns, and Hotdog buns, and any changes to the recipe." This production shall include the specific ingredients and their quantities, to the extent Kroger has such documentation within Kroger's custody or control. Kroger must also produce a witness who is most qualified to testify to these issues, including its good faith search for these materials.

(5)     Requested Sanctions

The court finds that Dr. Payne was not the person most qualified as to topic Nos. 2, 3, and 7, and Kroger did not affirmatively offer to produce another PMQ witness as to these topics to ensure compliance with the February 18 Order and March 12 Order. It was Kroger's obligation to fully comply with these orders. The governing statue requires multiple witnesses, if needed to cover the PMQ topics. (See Code Civ. Proc., § 2025.230 ["those of its officers, directors, managing agents, employees, or agents who are most qualified …"].)

The court finds that monetary sanctions are appropriate based on Kroger's failure to produce a witness who is most knowledgeable as to topic Nos. 2, 3, and 7. The court will award monetary sanctions in favor of the People in an amount equal to 30 attorney hours at $425 per hour, totaling $12,750. (See Lucas Decl., ¶¶ 14-26.) The court determines that this amount is just under all the circumstances. (See Code Civ. Proc., § 2025.450, subd. (h).) The court declines to not award monetary sanctions as to the product formulation documents.

As to issue and evidentiary sanctions, the court declines to issue these sanctions requested by the People. Evidentiary and issue sanctions should be used sparingly as a last resort to cure prejudice caused by the failure to provide the required discovery. (*Lopez*, *supra*, 246 Cal.App.4th at p. 604.) The court determines that a more appropriate remedy is to require that Kroger produce a PMQ witness who is most qualified to testify on these subjects. The court does not find that further discovery would be futile. These issues are not particularly complex and should be resolved without difficulty given the experienced counsel in this action. The court anticipates that the parties will work together in good faith to ensure compliance with the court's orders.

ANGELA BRAUN, EXECUTIVE OFFICER          Minutes Prepared by:

_____ Veronica Robles _____ , Deputy