ROSING POTT & STROHBEHN
Heather Rosing (SBN 183986)
  *hrosing@rosinglaw.com*
Wener Vieux (SBN 348047)
  *wvieux@rosinglaw.com*
770 First Avenue, Suite 200
San Diego, California 92101
Telephone: (619) 231-0303

*Attorneys for Jacob M. Harper and
Joseph Elie-Meyers*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GT'S LIVING FOODS, LLC, <br><br> Defendant. | Case No. 3:26-mc-80036-TSH <br><br> (Case No. 2:19-cv-10920-FMO-DSR Pending in the Central District of California) <br><br> **RESPONSE TO NON-PARTIES' SUPPLEMENTAL BRIEF ON THE REASONABLENESS OF ATTORNEY'S FEES** <br><br> [*Declaration of Jacob M. Harper Filed Concurrently*] |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ........................................................................................................ 4

    A.      The Fee Request Improperly Seeks Fees for Self-Representation. ............................. 5

    B.      Alternatively, Any Recoverable Fee Award Should Be Substantially Reduced. .......... 7

        1.      The Fees for Mr. Krivoshey's Self-Representation Should Be Excluded......... 8

        2.      The Non-Parties' Requested Hourly Rates Are Unreasonable. ........................ 8

        3.      The Fees Requested for Each Phase of the Litigation Are Excessive. ........... 10

            a.      The Fees Requested for the Subpoena Response Are Excessive..... 11

            b.      The Fees Requested for the Motion to Quash Are Excessive.......... 13

            c.      The Fees Requested for the Motion for Sanctions Are Excessive... 17

    C.      The Non-Parties Improperly Rely on Unrelated Litigation. ....................................... 21

III.    CONCLUSION .................................................................................................... 25

i

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

**TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Al Ghusain v. Caltrain*,
2026 WL 892824 (N.D. Cal. Mar. 30, 2026)...............................................................................6

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
2012 WL 5451411 (N.D. Cal. Nov. 7, 2012) ...........................................................................16

*Banas v. Volcano Corp.*,
47 F. Supp. 3d 957 (N.D. Cal. 2014) ................................................................................16, 19

*Bd. of Trs. of the U.A. Local Nos. 343 & 355 Defined Contribution Plan v. Breneman*,
No. 25-cv-03015 (N.D. Cal. Nov. 4, 2025) .............................................................................9

*Benson v. Hafif*,
1997 WL 268337 (9th Cir. May 15, 1997) ...............................................................................6

*Binkovich v. Barthelmy*,
2014 WL 4060567 (N.D. Cal. Aug. 15, 2014), *rev'd in part on other grounds*, 672 F.
App'x 648 (9th Cir. 2016) .................................................................................................1, 10

*Black v. Wrigley*,
2019 WL 2717212 (S.D. Cal. June 28, 2019) .......................................................................6, 7

*Blanchard v. Morton Sch. Dist.*,
509 F.3d 934 (9th Cir. 2007) ...................................................................................................6

*Blum v. Stenson*,
465 U.S. 886 (1984)...............................................................................................................8, 9

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) .............................................................................................7, 8, 9

*Carehouse Convalescent Hosp. v. Superior Ct.*,
143 Cal. App. 4th 1558 (Cal. Ct. App. 2006) ........................................................................23

*Chaganti v. Sun Microsystems*,
2004 WL 2677169 (N.D. Cal. Nov. 23, 2004), *aff'd sub nom.*, *Chaganti v. Ceridian
Benefits Servs., Inc.*, 208 F. App'x 541 (9th Cir. 2006) ...........................................................6

*Chalmers v. City of L.A.*,
796 F.2d 1205 (9th Cir. 1986), *as amended*, 808 F.2d 1373 (9th Cir. 1987)
.............................................................................................................................4, 12, 13, 14

ii

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

*Deuss v. Siso*,
    2014 WL 4275715 (N.D. Cal. Aug. 29, 2014) ...............................................................2, 9, 10

*Effinger v. Ancient Organics LLC*,
    No. 4:22-cv-03596-AMO (N.D. Cal. 2023) ...............................................................22

*Elwood v. Drescher*,
    456 F.3d 943 (9th Cir. 2006), *abrogated on other grounds by Citizens for Free Speech*
    *v. Cnty. of Alameda*, 953 F.3d 655 (9th Cir. 2020)...................................................5

*Erickson v. Builder Advisor Grp. LLC*,
    2023 WL 3579317 (N.D. Cal. Feb. 3, 2023) .................................................................13, 19

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) .......................................................................................22

*Fischer v. SJP–P.D. Inc.*,
    214 F.3d 1115 (9th Cir.2000) .......................................................................................16, 17

*Ford v. Long Beach Unified Sch. Dist.*,
    461 F.3d 1087 (9th Cir. 2006) ....................................................................................5

*Fosselman v. Gibbs*,
    2010 WL 1446661 (N.D. Cal. Apr. 7, 2010) ..............................................................5

*Gaby's Bags, LLC v. Mercari, Inc.*,
    2021 WL 1713848 (N.D. Cal. Apr. 30, 2021) ............................................................19, 20

*Garcia v. Resurgent Cap. Servs., L.P.*,
    2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) ............................................................16, 17

*Glass Egg Digital Media v. Gameloft, Inc.*,
    2020 WL 906714 (N.D. Cal. Feb. 25, 2020) ..............................................................15, 20, 21

*Hawkins v. The Kroger Co.*,
    No. 15-cv-02320-JM (S.D. Cal.) .................................................................................22

*Hawkins v. The Kroger Co.*,
    No. 15-cv-02320-JM-AHG, EFC No. 260 (S.D. Cal. Oct. 20, 2020) .........................22

*Hayde v. Taber*,
    2024 WL 4647600 (E.D. Cal. Oct. 31, 2024)..............................................................5

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................*passim*

*Herrington v. Cnty. of Sonoma*,
    883 F.2d 739 (9th Cir.1989) .......................................................................................12, 14, 19

iii

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

*Hill v. Robert's Am. Gourmet Food, LLC,*
   No. 3-13-80166 (N.D. Cal. Oct. 11, 2013) .................................................................................1, 20

*In re Wash. Pub. Power Supply Sys. Sec. Lit.,*
   19 F.3d 1291, *aff'd in part sub nom. Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19
   F.3d 1306 (9th Cir. 1994) ........................................................................................................4, 8

*Kaisha v. Dodson,*
   2010 WL 2354236 (N.D. Cal. June 9, 2010) ................................................................................6

*Kay v. Ehrler,*
   499 U.S. 432 (1991).............................................................................................................*passim*

*Koji IP, LLC v. Renesas Elecs. Am., Inc.,*
   No. 3:24-cv-03089 (N.D. Cal. Mar. 2026) ...................................................................................2

*Lahiri v. Universal Music & Video Distrib. Corp.,*
   606 F.3d 1216 (9th Cir. 2010) ...............................................................................................4, 16

*Lasar v. Ford Motor Co.,*
   399 F.3d 1101 (9th Cir. 2005) .......................................................................................21, 22, 24

*Martinez v. Parks,*
   2026 WL 2078155 (E.D. Cal. July 17, 2026) ..............................................................................5

*Maslic v. ISM Vuzem d.o.o.,*
   2025 WL 3114457 (N.D. Cal. Nov. 6, 2025) .............................................................................10

*McClain v. Cnty. of San Bernardino,*
   2019 WL 12345647 (C.D. Cal. Jan. 2, 2019) ..............................................................................5

*Mohamed v. Barr,*
   562 F. Supp. 3d 1128 (E.D. Cal. 2022) .....................................................................................16

*Optrics Inc. v. Barracuda Networks Inc.,*
   2021 WL 411349 (N.D. Cal. Feb. 4, 2021) ...............................................................................19

*Patel v. GT's Living Foods, LLC*, No.
   3:26-mc-80036-TSH (N.D. Cal. Feb. 20, 2026)...................................................................19, 24

*People of the State of California v. The Kroger Co.,*
   No. 24CV03007 (Cal. Super. Ct., Santa Barbara Cnty. Mar. 18, 2026)...........................23, 24

*Porter v. Mabus,*
   603 F. App'x 630 (9th Cir. 2015) ................................................................................................6

*Roadway Express, Inc. v. Piper,*
   447 U.S. 752 (1980).................................................................................................................21, 24

iv

*Rosenfeld v. U.S. Dep't of Just.*,
904 F. Supp. 2d 988 (N.D. Cal. 2012) ..............................................................................16, 19

*Shayler v. 1310 PCH, LLC*,
51 F.4th 1015 (9th Cir. 2022) .........................................................................................12, 19

*State of Cal. v. The Kroger Co.*,
2024 WL 4453267 (C.D. Cal. Oct. 9, 2024).........................................................................23

*Stonebrae L.P. v. Toll Bros., Inc.*,
2011 WL 1334444 (N.D.Cal. April 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013)..........13

*Trope v. Katz*,
11 Cal. 4th 274 (1995) ...........................................................................................................6

*U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*,
89 F.3d 574 (9th Cir. 1996), *abrogated on other grounds as recognized by Barnes v.
Clark Cnty.*, 2022 WL 73052 (9th Cir. Jan. 7, 2022) .............................................................5

*U.S. S.E.C. v. Chapman*,
602 F. App'x 407 (9th Cir. 2015) ............................................................................................5

*Upton v. Fakhoury*,
2022 WL 213442 (9th Cir. Jan. 24, 2022) (§ 1983) ................................................................6

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) ..............................................................................4, 15, 16, 17

*Wells Fargo Bank, N.A. v. Leach Johnson Song & Gruchow, Ltd.*,
2019 WL 13492801 (D. Nev. Sep. 30, 2019) ..........................................................................6

*White v. U.S. Army Corps of Eng'rs*,
2025 WL 2880130 (N.D. Cal. Oct. 8, 2025) ...........................................................................6

*Witte v. Kaufman*,
141 Cal. App. 4th 1201 (2006) ...............................................................................................6

*Yeh v. Mayorkas*,
2025 WL 917108 (N.D. Cal. Mar. 26, 2025)...........................................................................5

**Statutes**

28 U.S.C. 1447(c) ........................................................................................................................23

28 U.S.C. § 1332(a) and (d)..........................................................................................................23

**Rules**

Fed. R. Civ. P. 4............................................................................................................................5

v

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

Fed. R. Civ. P. 5..................................................................................................................................22

Fed. R. Civ. P. 26..............................................................................................................................6, 7

Fed. R. Civ. P. 37................................................................................................................................22

Fed. R. Civ. P. 37(b) ............................................................................................................................5

Fed. R. Civ. P. 45............................................................................................................................7, 9

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

Pursuant to the Court's June 18, 2026, Order Re: Non-Parties' Motion for Sanctions, attorneys Jacob Harper and Joseph Elie-Meyers (Counsel) submit this Response to Non-Parties' Supplemental Brief on the Reasonableness of Attorney's Fees.

## I.     INTRODUCTION

The Court ordered supplemental briefing on a single, narrow issue: whether the attorneys' fees requested are reasonable.  Non-Parties Yeremey Krivoshey and Joel Smith (Non-Parties) do not meaningfully engage with that question. Instead of justifying their excessive rates, partner-heavy staffing, and bloated 100-plus hours billed for two routine motions, Non-Parties devote substantial portions of their brief to unrelated lawsuits in a naked attempt to prejudice the Court's view of Counsel.  That effort exceeds the scope of the Court's order, deprives Counsel of the procedural protections required before sanctions may be imposed for unrelated conduct, and has no bearing on the reasonable value of compensable fees in this case.  The Court has already resolved the sanctions issue; false innuendo about unrelated cases has nothing to do with the relevant lodestar analysis.  The Non-Parties also repeatedly reference fee awards and billing records from different, and unrelated proceedings.  But the relevant inquiry here is not whether opposing counsel charged comparable fees in unrelated matters that are clearly distinguishable, it is whether the requested fees reflect reasonable hours billed and the prevailing market rate for lawyers performing work similar to this proceeding.

In this case, Non-Parties seek an award of $100,280 in attorneys' fees for litigating a subpoena dispute—more than ***eight times*** the fees awarded for comparable motion practice relied upon by the Court in imposing sanctions.  *See, e.g.*, *Hill v. Robert's Am. Gourmet Food, LLC*, No. 3-13-80166, ECF No. 17 (Order Regarding Attorneys' Fees) at 2–3 (N.D. Cal. Oct. 11, 2013) (approving $10,283.50 in fees for motions to quash and for sanctions, as compared to the $84,932.50 claimed by the Non-Parties for the motion to quash and motion for sanctions).

The best evidence that the requested fees are unreasonable is the demand itself, when compared to fee awards in cases that, in contrast to this case, involved years of litigation, extensive discovery, and jury trials.  *See*, *e.g.*, *Binkovich v. Barthelmy*, 2014 WL 4060567, at *8–10 (N.D.

1

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

Cal. Aug. 15, 2014) (awarding $103,396.82 in attorneys' fees following approximately three years of litigation, discovery, a week-long jury trial, and post-trial motions amounting to 209 hours of attorney time), *rev'd in part on other grounds*, 672 F. App'x 648 (9th Cir. 2016); *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 3:24-cv-03089, ECF No. 120 (Order Quantifying & Awarding Attorneys' Fees) at 11, 14 (N.D. Cal. Mar. 2026) (awarding $107,389.50 after finding the patent litigation exceptional and following multiple related actions and extensive merits litigation totaling 149.5 hours after two years of litigation).  No reasonable paying client would expect to incur, or willingly pay, six-figure fees for discovery motion practice, and no opposing party should be required to do so.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary[.]") (emphases omitted).

That request should be denied or substantially reduced because the Non-Parties have not met their burden of showing that the requested fees are proper or reasonable.

***The Non-Parties Are Not Entitled to Attorneys' Fees for Self-Representation***:  Under *Kay v. Ehrler*, 499 U.S. 432, 435 (1991), and its progeny, attorneys and law firms that represent themselves are not entitled to recover attorneys' fees.  The Non-Parties may not recover fees for their self-representation.

***At a Minimum, the Non-Parties' Fees Should be Reduced to a Reasonable Amount for a Discovery Dispute.***  As an initial matter, even if the Court concludes that the Non-Parties may recover some fees notwithstanding *Kay*, the Non-Parties fail to distinguish between work performed defending the firm and work Mr. Krivoshey performed defending himself, and Mr. Krivoshey's fees should be substantially reduced to account for his self-representation.  Beyond that, the Court should reduce the Non-Parties' lodestar for this routine discovery dispute to bring it in line with reasonable fees in this District for similar work.  The Non-Parties' request for rates as high as $1,125 per hour can only be justified by reference to fee awards in complex class actions and commercial litigation; instead $450 per hour is more in line with rates awarded in this District for similar work.  *E.g.*, *Deuss v. Siso*, 2014 WL 4275715, at *8 (N.D. Cal. Aug. 29, 2014) (granting fees associated with motions to quash subpoenas based on partner hourly rate of $450).

2

And the Non-Parties excessive hours for this routine discovery dispute should be reduced to account for unnecessary partner staffing for routine, unnecessary, and duplicative work; pervasive block billing; vague and inadequately documented time entries; excessive internal conferencing; and other inefficiencies that no paying client would allow on a bill.

The Court should accordingly reduce the requested fee award to reflect only those hours reasonably necessary to litigate this subpoena dispute as set forth in the calculations below and in **Appendix A**.

*Table 1. Summary of Requested Fees and Proposed Reductions*

| | Non-Parties' Requests | Reasonable Fee | Reason for Reduction |
|---|---|---|---|
| Initial subpoena response | $15,347.50 | $1,239.75 | (1) Partner-heavy staffing resulting in routine litigation tasks performed at premium partner rates; (2) duplicative and overlapping work; (3) reducing hourly rates to reasonable levels for similar work; and (4) reducing Mr. Krivoshey's hours for self-representation. |
| Motion to Quash / Shorten Time | $34,067.50 | $6,018.50 | (1) Duplicative time entries; (2) excessive billing by partners for routine litigation tasks that should have been performed at lower rates; (3) impermissible block-billing; (4) time spent on a failed and unnecessary Motion to Shorten Time that should be excluded from the Non-Parties' recovery; (5) reducing hourly rates to reasonable levels for similar work; and (6) reducing Mr. Krivoshey's hours for self-representation. |
| Motion for Sanctions | $50,865.00 | $7,929.25 | (1) Duplicative work; (2) fees for work wholly unrelated to the sanctions motion; and (3) additional impermissible billing, like excessive internal conferences and administrative work billed at attorney rates; (4) reducing hourly rates to reasonable levels for similar work; and (5) reducing Mr. Krivoshey's hours for self-representation. |
| **TOTALS:** | **$100,280.00** | **$15,187.50** | |

3

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

## II.    ARGUMENT

The Non-Parties bear the burden of establishing that every hour for which they seek compensation was reasonably expended. *See In re Wash. Pub. Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1305 (fee applicant bears burden of submitting detailed time records justifying hours claimed), *aff'd in part sub nom. Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994). Attorneys requesting fees must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, duplicative, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. Likewise, "[t]he party petitioning for attorneys' fees bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *In re Wash. Pub. Power*, 19 F.3d at 1305 (*quoting Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended*, 808 F.2d 1373 (9th Cir. 1987)). Inadequately documented or vague billing entries do not satisfy that burden and may properly be reduced where it cannot be determined whether the claimed time was reasonably expended. *Id.*; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010). Although the Court may rely on its familiarity with the litigation and the quality of counsel's work, the fee applicant must still demonstrate that the hours claimed were reasonably necessary under the circumstances of the case. *See Chalmers*, 796 F.2d at 1210.

The Non-Parties have not met that burden. *First*, they fail to establish that any fees are recoverable in the first instance, offering no meaningful response to the well-established rule that attorneys may not recover fees for representing themselves. *Second*, even if the Court were to award fees for Smith Krivoshey, PC's self-representation, those fees should be substantially reduced for several reasons. At a minimum, Mr. Krivoshey's fees for representing himself should be excluded, justifying a 75% reduction in the time he attempts to recover for. The hourly rates for the Non-Parties' work should be reduced to $450 in line with common rates in this District for similar work. And the hours claimed by Non-Parties should be reduced because their billing records reflect a recurring failure to exercise billing judgment. Rather than excluding excessive, duplicative, administrative, and otherwise unnecessary time before submitting their fee petition,

4

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

the Non-Parties seek compensation for repeated attorney conferences, overlapping research and drafting, partner-level billing for routine litigation tasks, vague and mixed billing entries that impede meaningful review, and attorney time devoted to collateral matters that did not materially advance the compensable work.

**A.      The Fee Request Improperly Seeks Fees for Self-Representation.**

As an initial matter, the Non-Parties' fee request should be denied in its entirety because they seek to recover attorneys' fees for representing themselves in this subpoena dispute. The Supreme Court has held that an attorney who represents himself is not entitled to recover attorneys' fees, explaining that fee-shifting statutes are intended to encourage litigants to retain independent counsel whose detached professional judgment benefits both the client and the judicial process. *Kay*, 499 U.S. at 435–38.

The Ninth Circuit has applied *Kay* broadly. In *Elwood v. Drescher*, the court held that "pro se attorney[s] … cannot recover statutory attorneys' fees," explaining that the rationale of *Kay* applies regardless of whether the attorney appears as a plaintiff or defendant. 456 F.3d 943, 946–48 (9th Cir. 2006) (vacating fee award attributable to the attorneys' self-representation), *abrogated on other grounds by Citizens for Free Speech v. Cnty. of Alameda*, 953 F.3d 655 (9th Cir. 2020). In *Fosselman v. Gibbs*, a court in this District held that the prohibition on self-representation fees applies to fees sought under the Federal Rules' fee provisions. 2010 WL 1446661, at *1 (N.D. Cal. Apr. 7, 2010) (denying fees under Rule 37(b)).[1] The Ninth Circuit consistently applies *Kay* across fee-shifting contexts. *See U.S. S.E.C. v. Chapman*, 602 F. App'x 407, 407–408 (9th Cir. 2015) (denying fees under the Equal Access to Justice Act); *Ford v. Long Beach Unified Sch. Dist.*, 461 F.3d 1087, 1091 (9th Cir. 2006) (Individuals with Disabilities Education Act); *U.S. ex*

---

[1] *See also Martinez v. Parks*, 2026 WL 2078155, at *13 (E.D. Cal. July 17, 2026) (denying fees under Rule 37(b)); *Hayde v. Taber*, 2024 WL 4647600, at *9 (E.D. Cal. Oct. 31, 2024) (same); *McClain v. Cnty. of San Bernardino*, 2019 WL 12345647, at *2 (C.D. Cal. Jan. 2, 2019) (same under Rule 4's provision for paying service costs); *Yeh v. Mayorkas*, 2025 WL 917108, at *3 (N.D. Cal. Mar. 26, 2025) ("in the Ninth Circuit, attorneys cannot recover statutory attorney's fees if they are representing themselves"—denying fees under Rule 4).

5

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

*rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574, 577 (9th Cir. 1996) (False Claims Act), *abrogated on other grounds as recognized by Barnes v. Clark Cnty.*, 2022 WL 73052, *1 n.1 (9th Cir. Jan. 7, 2022); *Upton v. Fakhoury*, 2022 WL 213442, at *2 (9th Cir. Jan. 24, 2022) (§ 1983); *Porter v. Mabus*, 603 F. App'x 630, 631 (9th Cir. 2015) (Title VII fee-shifting); *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007) (Rehabilitation Act); *Benson v. Hafif*, 1997 WL 268337, at *3 (9th Cir. May 15, 1997) (Fair Debt Collection Practices Act, Federal Arbitration Act, or any "federal statute"); *Chaganti v. Sun Microsystems*, 2004 WL 2677169, at *7 (N.D. Cal. Nov. 23, 2004) (ERISA), *aff'd sub nom.*, *Chaganti v. Ceridian Benefits Servs., Inc.*, 208 F. App'x 541 (9th Cir. 2006); *Al Ghusain v. Caltrain*, 2026 WL 892824, at *11 (N.D. Cal. Mar. 30, 2026) (anti-SLAPP); *White v. U.S. Army Corps of Eng'rs*, 2025 WL 2880130, at *5 (N.D. Cal. Oct. 8, 2025) (Endangered Species Act); *Trope v. Katz*, 11 Cal. 4th 274, 292 (1995) ("[A]n attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration … for legal representation cannot 'recover reasonable attorney's fees'[.]").

Crucially, *Kay*'s prohibition on attorneys' recovering fees for their own time applies with equal force to *law firms*, not just individual attorneys. Courts, including this one, consistently hold that a law firm may not recover attorneys' fees when it represents itself through its own attorneys because the firm has not retained independent counsel or incurred compensable fees. *See Kaisha v. Dodson*, 2010 WL 2354236, at *3 (N.D. Cal. June 9, 2010) (denying fees where firm was represented by its attorneys resulting in "no clear attorney-client relationship" and "[s]ince the law firm represented itself, it did not incur attorney fees, and was not entitled to such an award"); *Wells Fargo Bank, N.A. v. Leach Johnson Song & Gruchow, Ltd.*, 2019 WL 13492801, at *5 (D. Nev. Sep. 30, 2019) ("The policy barring individual pro se attorneys from collecting fees applies equally to law firms representing themselves through their attorneys."); *see also Witte v. Kaufman*, 141 Cal. App. 4th 1201, 1211–12 (2006).

The only case Counsel is aware of discussing attorneys' fees under Rules 26 or 45 for self-representation is *Black v. Wrigley*, 2019 WL 2717212 (S.D. Cal. June 28, 2019). There, the court

6

acknowledged that because movant was "an attorney who is representing himself pro se … it cannot be said that he actually incurred any attorney's fees." *Id*. at *8. Rather than awarding the requested hourly-rate fees, the court concluded that Rules 26 and 45 permit sanctions beyond attorney's fees and exercised its discretion to impose a flat $5,000 monetary sanction. *Id.* at *9 (finding $5,000 sanction reasonable). The prohibition on self-representation fees articulated in *Kay* and *Elwood* were neither raised nor analyzed.

This settled case law, which the Non-Parties fail to address, forecloses the fee request here. The subpoenas were directed to Yeremey Krivoshey and Smith Krivoshey, PC, who now seek compensation for work performed by attorneys of that same law firm in defending those subpoenas. (Smith Decl. ¶¶ 7, 13, Exs. 1–2.) Mr. Krivoshey alone billed 57.1 hours—56% of all attorney time claimed, necessarily representing both himself and his firm. (*Id*. ¶ 13.) Joel Smith and Brittany Scott, both Smith Krivoshey partners, likewise billed time as attorneys representing their own law firm and its partners.

Because the Non-Parties seek compensation for work performed by attorneys of Smith Krivoshey, PC representing themselves and their own law firm, and they did not retain outside counsel, they did not incur recoverable attorneys' fees pursuant to *Kay* and *Elwood*. The fee request should therefore be denied in its entirety.

**B.      Alternatively, Any Recoverable Fee Award Should Be Substantially Reduced.**

If the Court does award fees for Smith Krivoshey, PC's self-representation, however, the fees the Non-Parties request should be substantially reduced. *First*, all fees claimed by Mr. Krivoshey for representing himself should be excluded under *Kay* and *Elwood*, justifying a 75% reduction in the fees sought for Mr. Krivoshey's work. *Second,* the requested hourly rates are unreasonable, and the Non-Parties fail to show that hourly rates of up to $1,125 (Smith Decl. ¶ 7) are "in line with those prevailing in the community for similar services[.]" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). Rather, $450 per hour would be more in line with common rates in this District for a routine subpoena response and related motions. And, *third*, the

7

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

fees requested for each phase of litigation are excessive, including excessive partner staffing and hours billed for overlapping, duplicative work and non-compensable administrative tasks.

**1.    The Fees for Mr. Krivoshey's Self-Representation Should Be Excluded.**

In the event the Court concludes that some fees incurred on behalf of Smith Krivoshey, PC are recoverable, the Court should reduce Mr. Krivoshey's fees **by 75%** because the Non-Parties have failed to meet their burden of demonstrating what portion of the requested fees is attributable to compensable representation of the firm, as opposed to Mr. Krivoshey's noncompensable self-representation.  The billing records aggregate all work relating to the motion to quash and subsequent sanctions proceedings without identifying which subpoena—or which client—the work concerned.  As the fee applicants, the Non-Parties bear the burden of proving both the recoverability and reasonableness of the fees they seek.  *Hensley*, 461 U.S. at 437; *In re Wash. Pub. Power*, 19 F.3d at 1305.  Because the Non-Parties failed to segregate the time Mr. Krivoshey spent representing his firm, Smith Krivoshey, PC, from the time he spent representing himself individually, the Non-Parties have not established what portion of the requested fees is compensable. Any resulting uncertainty should be resolved against the Non-Parties, not Counsel.

Accordingly, at a minimum, the Court should reduce the hours attributable to Mr. Krivoshey by **75%** to account for the substantial portion of his time necessarily devoted to his own self-representation and to exclude any time billed on behalf of Smith Krivoshey, PC that was incurred solely because Mr. Krivoshey elected to involve his firm in his personal representation.

**2.    The Non-Parties' Requested Hourly Rates Are Unreasonable.**

The Non-Parties' requested hourly rates should also be reduced to, at most, $450.  The fee applicant must establish that requested hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Camacho*, 523 F.3d at 980.  The Non-Parties have not carried that burden—instead, they seek exorbitant hourly rates for what amounts to a routine discovery dispute about a subpoena.

8

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

The Non-Parties principally justify their requested rates by (1) citing fee awards in complex class actions and commercial litigation approving high hourly rates, (2) emphasizing that they are experienced class action practitioners litigating in major legal markets, (3) pointing to prior fee awards approving Smith Krivoshey's rates in other cases, and (4) comparing their rates to those charged by Defendant's counsel in unrelated litigation.  (ECF No. 28 (Non-Parties' Suppl. Br. on the Reasonableness of Attorney's Fees) ("Brief") at 3–5.)  None of those establish that rates of $850 to $1,125 per hour are reasonable for work on a subpoena dispute.  (Smith Decl. ¶ 7.)  The proper comparison is what competent outside counsel would reasonably charge to litigate a routine Rule 45 discovery dispute—not the self-selected rates of attorneys choosing to represent themselves.

This is not a complex class action.  It is a routine discovery proceeding involving objections to subpoenas on Mr. Krivoshey and his firm, a motion to quash, a motion to shorten time, and a motion for sanctions.  The Non-Parties fail to explain why rates approved for nationwide class actions and high-stakes commercial litigation should apply equally to this third-party discovery dispute.  *Bd. of Trs. of the U.A. Local Nos. 343 & 355 Defined Contribution Plan v. Breneman*, No. 25-cv-03015, ECF No. 38 (Order for More Information) at 1–4 (N.D. Cal. Nov. 4, 2025) (holding a fee applicant must support requested rates with evidence of prevailing market rates for similar work, and questioning counsel's reliance on "only complex … cases to support the hourly rates, not cases involving similar work").  The relevant inquiry is not the highest rate counsel commands in other litigation, but the reasonable market rate for the services actually rendered in this proceeding.  *See Deuss*, 2014 WL 4275715, at *8 (granting as reasonable $33,765.67 in fees for motions to quash *six* subpoenas based on partner hourly rate of $450).

Nor does comparing their rates to those charged by Defendant's counsel in other cases satisfy their burden.  The question is whether the requested rates reflect the prevailing market rate—not whether opposing counsel charged similar rates in an unrelated matter.  *See Blum*, 465 U.S. at 895 n.11; *Camacho*, 523 F.3d at 980.  Private billing arrangements between other parties do not establish the prevailing market rate.  Moreover, the comparison is inapt because

9

Defendant's counsel billed those rates to paying clients, whereas the Non-Parties ask for fees based on rates they selected for their own self-representation. Their choice of what rates to assign themselves does not establish that those rates reflect the prevailing market rate.

Rather, a rate of $450 per hour is much more in line with prevailing rates for similar routine discovery work in this District and for the Non-Parties here. *See*, *e.g.*, *Maslic v. ISM Vuzem d.o.o.*, 2025 WL 3114457, at *7 (N.D. Cal. Nov. 6, 2025) (approving rates of $400 per hour for an attorney with more than 30+ years of experience); *Binkovich*, 2014 WL 4099895, at *8-10 (approving hourly rate of $450 for attorney with "nearly two decades" of experience); *Deuss*, 2014 WL 4275715, at *8 (granting fees associated with motions to quash subpoenas based on partner hourly rate of $450).

The Court should therefore reduce the attorney hourly rates to $450:

*Table 3.  Timekeeper Rate Reduction*

| Attorney (years in practice) | Requested Rate | Proposed Rate |
|---|---|---|
| Joel Smith (19) | $1,125.00 | $450.00 |
| Yeremey Krivoshey (13) | $950.00 | $450.00 |
| Brittany Scott (6) | $850.00 | $450.00 |

### 3.     The Fees Requested for Each Phase of the Litigation Are Excessive.

In addition to a reduction in hourly rates and a reduction due to Mr. Krivoshey's self-representation, the Non-Parties seek to recover fees for excessive and unreasonable time spent on each phase of the work they identify. The Court should therefore reduce the hours that go into a reasonable lodestar calculation. *First*, the fees requested for the initial subpoena response phase reflect bloated partner-heavy staffing and duplicative, overlapping work. *Second*, the billing records for the Motion to Quash phase reflect duplicative time entries; excessive billing by partners for routine litigation tasks that should have been performed at lower rates; impermissible block-billing; and significant time spent on a failed and unnecessary Motion to Shorten Time. *Third*, the 50.6 hours claimed for the Motion for Sanctions phase are facially excessive under California caselaw and result from work that is duplicative, unrelated to the sanctions motion, or

10

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

impermissibly billed, such as for excessive internal conferences and administrative work billed at attorney rates.

### a. The Fees Requested for the Subpoena Response Are Excessive.

The Court should reduce the Non-Parties' fees for the initial subpoena response from **$15,347.50** to **$1,239.75.** (*See* Appendix A.)  In addition to a reduction in rates to $450 per hour, and a 75% reduction in Mr. Krivoshey's time, the Court should reduce the time the Non-Parties claim due to (1) partner-heavy staffing resulting in routine litigation tasks performed at premium partner rates and (2) duplicative and overlapping work.[2]

*First*, the Non-Parties overstaffed a routine subpoena dispute by assigning multiple senior partners to perform routine work related to a subpoena response.  Yeremey Krivoshey and Joel Smith, named partners with 13 and 19 years of experience and billing at $950 and $1,125 per hour, performed the vast majority of the routine work for the initial subpoena response.  (Smith Decl. ¶ 7.)  On February 5, 2026 both partners billed to review the subpoena and confer regarding strategy before any substantive work had been performed. (*Id*. Ex. 1.)  The following day, three attorneys—all partners—billed for internal conferences regarding the subpoena and next steps, while additional partner time was simultaneously devoted to researching the anticipated motion to quash.  (*Id*.)  And the senior partners' involvement in routine tasks did not stop there.  They continued to perform basic legal and factual research, work more appropriately performed by attorneys with lower billing rates, in addition to tasks as simple as ***summarizing*** a routine discovery meet-and-confer. (*See* Feb. 6, 2026 Scott entry (researched discovery abuse and sanctions); Feb. 8, 2026 Smith entry (prepared for meet-and-confer and conducted legal and

---

[2] The Non-Parties' billing records also do not support their Non-Parties' allocation of $15,347.50 to the initial subpoena response phase. (Brief at 6.)  Based on the contemporaneous billing entries through the February 9 meet-and-confer reflected, Counsel calculates total fees of $12,645 (12.9 hours), $2,702.50 less than the amount allocated by the Non-Parties.  It is impossible to determine which additional entries—or portions of entries—the Non-Parties attributed to this phase to reach the claimed subtotal.  This discrepancy appears in each phase of the fee request, making it impossible to reconcile the phase allocation to the contemporaneous billing records and impeding review of the reasonableness of the requested fees.

11

factual research); Feb. 9, 2026 Krivoshey entry (prepared for, participated in, and summarized the meet-and-confer, and researched the motion to quash); Feb. 9, 2026 Smith entry (outlined the motion to quash and conducted legal and factual research).)  These are ordinary litigation activities that ordinarily should not require multiple partners billing simultaneously.  There is no reason why the participation of multiple senior attorneys was reasonably necessary for what was, at that point, a routine subpoena response.  *See Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1021 (9th Cir. 2022) (reducing hours and partner rates to $300 per hour due to "unnecessary uses of time" and where it was "unnecessary to staff the case with 'two partner-level attorneys'"); *Chalmers*, 796 F.2d at 1210 ("[H]ours may be reduced by the court … if the case was overstaffed and hours are duplicated [or] if the hours expended are deemed excessive or otherwise unnecessary[.]")

*Second*, to make matters worse, the senior partners' work on a routine discovery dispute reflects overlapping and duplicative work.  For example, on February 9, 2026 alone, Mr. Krivoshey billed for preparing for the meet-and-confer, participating in the meet-and-confer, preparing a summary of the meet-and-confer, discussing it with Mr. Smith, and researching the motion to quash, while Mr. Smith separately billed to outline the motion to quash and conduct legal and factual research.  (Smith Decl. Ex. 1, Feb. 9, 2026 Krivoshey entry (prepared for meet-and-confer, participated in meet-and-confer, prepared summary, discussed same with Smith, and researched motion to quash); Feb. 9, 2026 Smith entry (outlined motion to quash and conducted legal and factual research).)  As noted above, Mr. Smith, Ms. Scott, and Mr. Krivoshey each claim hours for initial research in this phase.  And Mr. Smith and Mr. Krivoshey also claim hours for preparing for a conferral with Counsel, attending the conferral, and drafting associated notes.  (*Id.* Ex 1, Feb 9, 2026 Krivoshey entry (prepared for meet-and-confer, participated in meet-and-confer, prepared summary); Feb 9, 2026 Smith entries (meet and confer with opposing counsel regarding subpoena and finish notes on meet and confer call after call completed).  Non-Parties' billing records do not explain why these overlapping efforts required simultaneous attention of multiple partners or why the work could not have been performed more efficiently.  *See Herrington v. Cnty.*

12

*of Sonoma*, 883 F.2d 739, 747 (9th Cir.1989) ("[D]uplication of effort ... necessitates some reduction of the hours claimed[.]").

The Court is not required to accept the Non-Parties' bloated and duplicative staffing decisions simply because multiple attorneys participated in the work. Rather, the relevant inquiry is whether the hours claimed were reasonably expended and reasonably necessary to litigate the matter. *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (emphases omitted; internal quotation marks & citation omitted). Here, the billing records demonstrate repeated duplication, excessive conferencing, and partner-heavy staffing that materially increased the requested lodestar without any showing that such staffing was warranted. *Stonebrae L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *12 (N.D.Cal. April 7, 2011) ("[C]ounsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts engendered by multiple counsel[.]"), *aff'd*, 521 F. App'x 592 (9th Cir. 2013).

Accordingly, the Court should reduce the fees requested for the initial subpoena response to eliminate excessive partner staffing and duplicative attorney time. Based on the reductions identified above, Counsel calculates that a reasonable fee for this phase is $**1,239.75**, as reflected in **Appendix A**. *Chalmers*, 796 F.2d at 1210 (overstaffed or duplicative entries warrant reduction); *Erickson v. Builder Advisor Grp. LLC*, 2023 WL 3579317, at *2 (N.D. Cal. Feb. 3, 2023) (reducing "excessive and duplicative" hours).

### b.    The Fees Requested for the Motion to Quash Are Excessive.

The Court should also reduce the Non-Parties' requested fees for their Motion to Quash and Motion to Shorten Time **from $34,067.50** to **$6,018.50**. (*See* Appendix A.) The Non-Parties' requested fees for this stage reflect (1) duplicative time entries; (2) excessive billing by partners for routine litigation tasks that should have been performed at lower rates; (3) impermissible block-billing; and (4) time spent on a failed and unnecessary Motion to Shorten Time that should

13

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

be excluded from the Non-Parties' recovery.[3]

*First*, the Court should reduce the Non-Parties' recovery for unnecessarily duplicative work. The Non-Parties' billing records reflect multiple attorneys conducting overlapping research, reviewing and editing successive drafts of the motion, and billing for repeated internal conferences. For example, on February 10, 2026 and February 11, 2026, both Mr. Smith and Mr. Krivoshey billed 12.9 and 18.2 hours, respectively, in block-billed entries that each include motion drafting. (Smith Decl. Ex. 1, Feb. 10, 2026 Smith entry (factual and legal research for motion to quash and motion to shorten time; work on briefs and supporting documents); Feb. 10, 2026, Krivoshey entry (worked on motion to quash and conferred with Smith and Scott regarding same); Feb. 11, 2026 Smith entry (work on motion to quash, motion to shorten time, and objections; multiple calls and meetings throughout day); Feb. 11, 2026 Krivoshey entry (worked on motion to quash and motion to shorten time; many discussions with Smith and Kimberly). Ms. Scott also billed an additional hour to drafting the same motions. (*Id.*, Feb. 11, 2026 Scott entries (reviewed and revised objections; reviewed and revised motion to shorten time).) Such duplication is not compensable. *See Chalmers*, 796 F.2d at 1210 (hours reduced where "the case was overstaffed and hours are duplicated"); *Herrington*, 883 F.2d at 747 ("duplication of effort" necessitates reduction).

*Second*, the Court should reduce the Non-Parties' recovery for partner-heavy staffing. The Non-Parties' time records reflect extensive partner involvement in tasks that could have been performed more efficiently by a single attorney or delegated to lower-billing timekeepers. (*See*, *e.g.*, Smith Decl. Ex. 1, Feb. 10, 2026 Smith entry (factual and legal research for motion to quash and motion to shorten time; work on briefs and supporting documents); Feb. 10, 2026 Krivoshey

---

[3] Here again, the billing records do not support the Non-Parties' allocation of $34,067.50 to the Motion to Quash/Motion to Shorten Time phase. Based on the contemporaneous billing entries identified by the Non-Parties as corresponding to this phase, Counsel calculates total fees of $36,460 (37.4 hours). Such inconsistencies again make it impossible to determine which entries— or portions of entries—the Non-Parties excluded to arrive at the claimed subtotal. This lack of transparency impedes meaningful review of the reasonableness of the fees requested.

14

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

entry (worked on motion to quash and conferred regarding same); Feb. 11, 2026 Smith entry (work on motion to quash, motion to shorten time, and objections); Feb. 11, 2026 Krivoshey entry (worked on motion to quash and motion to shorten time); Feb. 11, 2026 Scott entries (reviewed and revised objections; reviewed and revised motion to shorten time).)  While some partner oversight may be appropriate, the billing records show far more than supervision; rather, multiple partners actively researched, drafted, edited, and conferenced regarding the same work product. The Non-Parties make no showing as to why that staffing was reasonably necessary.  *See Glass Egg Digital Media v. Gameloft, Inc.*, 2020 WL 906714, at *11 (N.D. Cal. Feb. 25, 2020). ("What is unclear is why preparing and arguing such a simple motion to quash … would require anything more than 25 hours of attorney time[.]").

   *Third*, the Court should reduce many of the Non-Parties' requested fees in this phase by 20% due to block billing.  The Non-Parties' billing records contain at least twenty block-billed entries spanning approximately 51.3 hours, over half of the total time claimed.  Particularly problematic are five entries alone—Mr. Smith's February 10, 2026 (6.1 hours) and February 11, 2026 (6.8 hours) entries, and Mr. Krivoshey's February 9, 2026 (4.3 hours), February 10, 2026 (7.8 hours), and February 11, 2026 (10.4 hours) entries—which total 35.4 hours, or 35% of the entire fee request.  Each combines multiple distinct tasks—including legal research, factual investigation, drafting, strategy discussions, revisions, conferences with co-counsel, and other work—or vague descriptions into a single undifferentiated time entry, providing virtually no basis for determining how much time was devoted to any individual task or whether the time claimed for any particular task was reasonable.

   The Non-Parties' block billing is especially problematic because it combines substantive legal work with administrative tasks, including "supervise filing and service," as well as vague references to "multiple calls and meetings throughout [the] day" or "many discussions with JDS and Kimberly."  (Smith Decl. Ex. 1, Feb. 11, 2026 Smith and Krivoshey entries.)  Because block billing renders it difficult for a court to determine whether fees are unnecessarily duplicative or unreasonable, courts routinely reduce block-billed hours.  *Welch*, 480 F.3d at  948.  The Ninth

15

Circuit has affirmed reduction of block-billed entries by up to 30% to account for, and deter, this practice. *See Lahiri*, 606 F.3d at 1223 (applying a 30% reduction to block-billed hours); *see also Welch*, 480 F.3d at 948 (affirming a 20% reduction in fees that were block billed); *Mohamed v. Barr*, 562 F. Supp. 3d 1128, 1136 (E.D. Cal. 2022); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) (reducing attorneys' fee bill to account for block billing); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 5451411, at *5 (N.D. Cal. Nov. 7, 2012) (same); *Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988, 1006 (N.D. Cal. 2012) (reducing fees for duplicative time, clerical time, and overall lack of billing judgment).

Counsel conservatively reduces the most problematic entries in this phase by 20%. *See Welch*, 480 F.3d at 948–49 (affirming district court's 20% reduction of block-billed hours because block billing impaired the court's ability to determine the reasonableness of the time expended); *Apple, Inc.*, 2012 WL 5451411, at *5 (reducing block-billed hours by 20%).

The Non-Parties suggest that their block-billing and vague entries are nonissues, yet invoke authorities that find otherwise. (*See* Brief 5, 7–8.) *Garcia v. Resurgent Cap. Servs., L.P.*, in fact holds that block billing "is not inappropriate *per se*" only when "the party seeking fees meets the basic requirements of 'listing his hours and identifying the general subject matter of his time expenditures'" for each task asserted as a basis for fees. 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (*quoting Fischer v. SJP–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir.2000). Non-Parties correctly cite Counsel's previous assertions that "'time entries are sufficiently detailed'" if they "'specify the time spent down to the tenth of an hour and provide descriptions of the services that were performed.'"[4] (Brief 7 (quoting Smith Decl. Ex. 4 at 5:5-7) (emphasis omitted).) Here, only *one* of the over twenty block-billed entries lists time allocated to each specific task. (*See* Smith

---

[4] To the extent the Non-Parties intended to assert that their block billed entries are acceptable simply because they billed in 0.1 hour increments, such increments do not obviate the Ninth Circuit's requirement that claimed time must be listed for each task. *Fischer*, 214 F.3d at 1121. Otherwise, an attorney could aggregate an entire day's work into a single block-billed entry and avoid meaningful review merely by recording the total time in one-tenth-hour increments—a result *Fischer* does not permit.

16

Decl. Ex. 1, Feb. 9 Krivoshey entry.)  The Non-Parties further omit that *Fischer* recognized the existence of "more detailed [billing] records … readily available" to bolster the challenged vague records if necessary.  214 F.3d at 1121.  Here, the actual billing records *are* the issue.  Therefore, under Non-Parties' own caselaw, nearly all of their block billed entries are "inappropriate per se[.]"  *Garcia,* 2012 WL 3778852, at *8.

And, *fourth*, the Court should also exclude any fees attributable to the Motion to Shorten Time.  The Non-Parties chose to pursue that procedural motion, but it was denied, and they offer no basis for shifting the costs of that unsuccessful effort to Counsel.  More fundamentally, the Non-Parties do not meaningfully distinguish between time spent on the Motion to Quash and the Motion to Shorten Time.  Instead, the billing records repeatedly combine work on multiple motions into single block-billed entries, preventing the Court from determining what portion of the claimed time was devoted to the unsuccessful Motion to Shorten Time.  Because the fee applicant bears the burden of establishing the reasonableness and recoverability of each claimed hour, any ambiguity resulting from its billing practices should be resolved against the requested award rather than against Counsel.  *See Hensley*, 461 U.S. at 424, 437; *Welch.*, 480 F.3d at 948.

The Court should therefore award no more than **$6,018.50** for this phase of the representation, as reflected in **Appendix A.**  The proposed reductions target only time that is clearly excessive, duplicative, administrative, or otherwise unsupported—leaving intact the substantial majority of the hours claimed for preparing the motions.

### c.     The Fees Requested for the Motion for Sanctions Are Excessive.

The Non-Parties seek $50,865.00—more than half of the total fees requested—for preparing the Motion for Sanctions.  That request is excessive on its face.  According to the Non-Parties' own allocation, counsel devoted 50.6 attorney hours to a single sanctions motion— substantially more time than they claim to have spent responding to the subpoena or preparing the Motion to Quash and Motion to Shorten Time.  (Smith Decl. ¶ 12, Exs. 1 & 2.)

The Court should reduce the Non-Parties' fees for the sanctions motion to **$7,929.25**.  (*See* Appendix A.)  The billing records demonstrate that this disproportionate expenditure of attorney

17

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

time resulted not from motion complexity, but from (1) duplicative work; (2) fees for work wholly unrelated to the sanctions motion; and (3) additional impermissible billing, like excessive internal conferences and administrative work billed at partner rates.[5]

*First*, the Non-Parties' billing records reflect pervasive duplication throughout the drafting process. Multiple partners billed simultaneously for researching the same issues, preparing and revising successive drafts of the motion, reviewing each other's work, and repeatedly conferring regarding strategy and revisions. For example, on February 13, 2026 and February 14, 2026, Mr. Smith and Mr. Krivoshey both bill for a collective 8.5 hours researching the Motion for Sanctions. (*See* Smith Decl. Ex. 1, Feb. 13, 2026 Krivoshey entry (research sanctions motion and confer with Smith); Feb. 13, 2026 Smith entry (preliminary legal and factual research; outline major points and authorities); Feb. 14, 2026 Smith entry (strategy and analysis for sanction motion; prepare initial draft).) On February 18, 2026 and February 19, 2026, both Mr. Smith and Mr. Krivoshey, along with Ms. Scott, billed a total of 15.9 hours for even more research and motion drafting. (*Id*., Feb. 18, 2026 Smith entry (research, revise, and update sanctions motion; supporting documents); Feb. 18, 2026 Krivoshey entry (worked on sanctions motion and discussed same with Smith); Feb. 19, 2026 Krivoshey entry (continued working on sanctions motion and discussed same with Smith and Scott); Feb. 19, 2026 Scott entry (work on motion for sanctions); Feb. 19, 2026 Smith entry (meet with Krivoshey regarding supporting documents for motions for sanctions). That pattern of duplicative work repeats for work on the Non-Parties' reply brief. (*See* Smith Decl. Ex. 2, Mar. 8, 2026 Smith entry (outline and preliminary draft of reply brief); Mar. 10, 2026 Krivoshey entry (worked on sanctions reply brief and discussed same with Smith); Mar. 12, 2026 Smith entry (edited reply); Mar. 12, 2026 Scott entry (revised and edited reply); Mar. 12, 2026 Krivoshey entry

---

[5] The Non-Parties' billing records relevant to the Motion for Sanctions exhibit the same reconciliation issue identified above. The Smith Declaration allocates $50,865.00 to the Motion for Sanctions phase, but the contemporaneous billing entries attributable to that work total $51,175 and does not identify which entries—or portions of entries—were excluded to arrive at the requested subtotal. As a result, neither GT's nor the Court can replicate the requested calculation from the evidence submitted. GT's nevertheless accepts the lower requested amount for purposes of this Opposition and demonstrates below that even the reduced request remains unreasonable.

18

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

(continued working on reply and discussed same with Smith and Scott).)  Such unnecessary "duplication of effort [requires] reduction of the hours claimed."  *See Herrington*, 883 F.2d at 747; *Rosenfeld*, 904 F. Supp. 2d at 1006 (reducing fees for duplicative time).

*Second*, the Non-Parties' time records reflect substantial attorney time devoted to issues wholly unrelated to the sanctions request, including research into unrelated litigation, communications concerning other cases, and issues collateral to the sanctions motion.  (*See*, *e.g.*, Smith Decl. Ex. 1, Feb. 12, 2026 Krivoshey entry (emailed order to counsel in the *Patel* case); Feb. 19, 2026 Smith entry (analyzed notice of withdrawal filed in N.D. Cal.); Smith Decl., Ex. 2, Mar. 10, 2026 Smith entry (call with Bursor attorney regarding statements in opposition brief); Mar. 10, 2026 Scott entry (vague entry noting review of "GT Kombucha" motion to compel order); Mar. 11, 2026 Scott entry (emailed Westlaw regarding *Sharpe* motion to compel opinion); Mar. 12, 2026 Scott entry (reviewed Dovel response regarding motion to seal).)  Time spent researching, developing, drafting, or revising arguments that were unnecessary to the sanctions motion or unrelated to the relief sought is not reasonably chargeable to Counsel.  *Optrics Inc. v. Barracuda Networks Inc.*, 2021 WL 411349, at *9–10 (N.D. Cal. Feb. 4, 2021) (reducing requested fees for work not reasonably attributable to acts giving rise to sanctions); *Shayler*, 51 F.4th at 1021 (9th Cir. 2022) (reducing "unnecessary uses of time").

And, *third*, as with the Non-Parties' fee requests for other phases, the Non-Parties' time records reflect additional failure to exercise billing judgment, like excessive internal conferences and administrative work billed at attorney rates.  (*See, e.g.*, Smith Decl. Ex. 2, Mar. 9, 2026 Krivoshey entry (internal conferral); Mar. 10, 2026 Krivoshey entry (same); Mar. 11, 2026 Krivoshey entry (same); Mar. 12, 2026 Smith entry (same); Mar. 12, 2026 Krivoshey entry (same); Mar. 13, 2026 Smith entry (supervise filing).)  These time entries are impermissible and should be reduced.  *Gaby's Bags, LLC v. Mercari, Inc.*, 2021 WL 1713848, at *3 (N.D. Cal. Apr. 30, 2021); *Erickson*, 2023 WL 3579317, at *2 (reducing "excessive and duplicative" hours); *Banas*, 47 F. Supp. 3d at 969–70 (reducing the fee award because the billing records reflected overstaffing, inefficiencies, and other deficiencies warranting an across-the-board reduction).

19

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

The Non-Parties contend 50.6 hours billed resulting in $50,865.00 in fees was reasonable because the motion required responding to multiple filings, marshaling evidence spanning several years, addressing numerous legal issues, and resulted in a twenty-three-page sanctions order.  (*See* Brief 2, 6.)  None of those points justifies the hours claimed.  *See Gaby's Bags, LLC*, 2021 WL 1713848, at *3 ("spending 57 hours on the moving papers is shocking and excessive"—reducing claimed fees on motion for sanctions by 75%).  The number of filings was a product of the Non-Parties' litigation strategy, including their decision to file both a Motion to Quash and a Motion to Shorten Time before seeking sanctions.  Nor did the sanctions motion require counsel to develop a complex factual record—the facts centered on a single subpoena, communications about that subpoena, and the filings in response to it.  To the extent the motion referenced events occurring over several years, those events arose from unrelated litigation that was neither necessary to resolve the sanctions motion nor properly compensable.

Further, the Court's twenty-three-page order does not establish that devoting more than fifty attorney hours to the motion was reasonable—a lengthy order reflects the Court's own analysis of the parties' arguments; it does not demonstrate that every hour counsel chose to expend was reasonably necessary.  Indeed, the fees requested for the sanctions motion alone exceed by more than *eightfold* the fee award approved in *Hill*, one of the authorities this Court relied upon in concluding that sanctions were warranted.  *See* ECF No. 21 (Order Granting Non-Parties' Motion for Sanctions) at 22; *Hill v. Robert's Am. Gourmet Food LLC*, No. C-13-80166 EDL, ECF No. 17 (Order Regarding Attorney's Fees) at 2–3 (approving $10,283.50 in fees for preparing and filing a motion to quash and motion for sanctions, excluding hours claimed for conferrals, as compared to the Non-Parties' $84,932.50 request for the same motions).  "Simply because [the Non-Parties] chose to expend [the claimed] hours of attorney time on this matter does not render the expenditure of that amount of time as reasonable[.]"  *Glass Egg Digital Media,* 2020 WL 906714, at *11.

The Court should thus award no more than **$7,929.25** for the Motion for Sanctions as reflected in **Appendix A**, an amount that disallows only clearly excessive, duplicative, and

20

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

unsupported billing entries while preserving compensation for attorney time reasonably necessary to prepare the motion.

### C.    The Non-Parties Improperly Rely on Unrelated Litigation.

In addition to reducing the Non-Parties' bloated fee request, the Court should disregard the Non-Parties' reliance on unrelated litigation, which has no bearing on the reasonable amount of fees recoverable in this proceeding, whether for "deterrence" or otherwise.  This supplemental proceeding is limited to determining the fees reasonably necessary *on this limited subpoena issue*—not to imposing additional sanctions based on unrelated proceedings involving different parties, different records, and different courts.  The Court should decline Non-Parties' invitation to infer reasonableness of *fees in this case* based on *other litigation* for at least four reasons: (1) the Non-Parties' discussion of Counsel's advocacy in unrelated litigation is irrelevant to the narrow issue or fee reasonableness; (2) any order informed by discussion of *other cases* violates Counsel's due process right to notice and meaningful opportunity to respond; (3) the Non-Parties' discussion of unrelated litigation is misleading because none of the cited matters resulted in sanctions against Counsel; and (4) the Non-Parties' stated justification of deterrence is not warranted under the facts of the cases they cite or as a proper consideration for the instant fee proceeding.

*First*, the Non-Parties' discussion of other unrelated litigation amounts to "hyperbole and the retelling of a number of unrelated anecdotes" that do not assist the Court in determining the reasonableness of the fees requested here.  *Glass Egg Digit. Media*, 2020 WL 906714, at *9–10 (noting that party's attacks on opposing counsel and "unrelated discussion about a different sanctions dispute" failed to "advanced any serious argument as to why the [court] should find that payment of the [claimed] fees would be reasonable under the circumstances").

*Second*, considering *other* cases to determine reasonable fees *in this case* raises due process concerns.  Before a court may impose sanctions, an attorney must receive fair notice of the specific conduct alleged to be sanctionable, the legal authority under which sanctions are sought, and a meaningful opportunity to respond regarding that specific conduct.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109–12 (9th Cir.

21

2005).  These protections ensure that sanctions are based on the record developed in the proceeding before the Court—not generalized assertions regarding counsel's conduct in unrelated matters.  *See Lasar*, 399 F.3d at 1110–12 (reversing sanctions imposed without adequate notice and opportunity to be heard); *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001) (sanctions under the court's inherent authority require specific findings of bad faith or conduct tantamount to bad faith).

*Third*, the Non-Parties' reliance on unrelated litigation here is particularly misleading because none of the cited matters resulted in sanctions against any counsel, including Mr. Harper (and in several instances sanctions were explicitly denied).  Those cases include the following:

In *Hawkins v. The Kroger Co.*, No. 15-cv-02320-JM (AHG) (S.D. Cal.), a class action involving allegedly mislabeled breadcrumbs, the magistrate judge issued discovery sanctions against The Kroger Co. for producing written and documentary discovery that the magistrate and plaintiff maintained was insufficient.  The district court ***reversed*** sanctions against Mr. Harper and counsel on the basis that they had not received adequate notice that sanctions under the court's inherent authority were being considered, an opportunity to prepare a defense, or a meaningful opportunity to be heard.  (*See* Declaration of Jacob M. Harper (Harper Decl.) Ex. A (*Hawkins v. The Kroger Co.*, No. 15-cv-02320-JM-AHG, EFC No. 260 (Order on Objections to Order Granting Sanctions, at 16–20 (S.D. Cal. Oct. 20, 2020).)  ***No sanctions were issued against any counsel, including Mr. Harper***.  The district court upheld sanctions against The Kroger Co. on the basis that Kroger had such notice and opportunity to be heard and declined to disturb the magistrate's findings.

In *Effinger v. Ancient Organics LLC*, No. 4:22-cv-03596-AMO (N.D. Cal.), another putative class action involving mislabeled clarified butter (known as ghee) in which counsel and its client prevailed, no sanctions were issued against counsel.  In that case, Mr. Harper's office had repeatedly sought the depositions of the two putative class plaintiffs, but plaintiffs' counsel failed to provide those depositions.  In compliance with Federal Rules of Civil Procedure 5 and 37, Mr. Harper's office attempted to effect personal service of deposition notices upon the plaintiffs'

22

counsel's purported office address, after which plaintiffs' counsel stated they were not present and had no records of such service.  (Harper Decl. ¶ 3.)  At one point, Mr. Harper filed a motion to compel the depositions, but the court declined to compel the depositions in part on the basis that the deposition notices were not served electronically.  (*Id.*)  Again, ***Mr. Harper was not sanctioned*** (nor could Mr. Harper lawfully have been sanctioned for attempting to comply with the service requirements of the Federal Rules of Civil Procedure).  (Harper Decl. Ex. B (*Effinger v. Ancient Organics LLC*, No. 22-cv-03596-AMO, Order Re Discovery & Scheduling at 4 (N.D. Cal. Aug. 2, 2024)).  Plaintiffs in this action ultimately voluntarily dismissed their individual claims with prejudice after Mr. Harper's office successfully obtained an order denying class certification based on lack of adequacy, commonality, and numerosity.  *See Effinger v. Ancient Organics LLC*, 2025 WL 1489710 (N.D. Cal. May 23, 2025).

Non-Parties also make reference to three events—again, involving no sanctions against any counsel or any misconduct—in *State of Cal. v. The Kroger Co.*, 2024 WL 4453267 at \*3 (C.D. Cal. Oct. 9, 2024), a case brought by several district attorney offices for alleged mislabeling of Kroger "Carbmaster" bread products.  Non-Parties misleadingly cite three examples, none of which (again) involved sanctions or misconduct by any counsel, including Mr. Harper.

*First*, Non-Parties reference the outcome of a motion for remand, in which Kroger initially exercised its statutory right to remove the case under 28 U.S.C. § 1332(a) and (d), and Plaintiffs then moved to remand.  Exercising its right to seek fees, the Plaintiffs were awarded $9,800 from the defendant (not Mr. Harper or counsel) under the statutory ground that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. 1447(c).  The suggestion that the fee-shifting was a "sanction" is false, and in any case the fee shift was awarded against the defendant, ***not against Mr. Harper or any other counsel***.  *The Kroger Co.*, 2024 WL 4453267, at \*4.

*Second*, the Non-Parties discuss deposition subpoenas issued against Plaintiff's counsel, which were good-faith requests for deposition of counsel under the standard set forth in *Carehouse Convalescent Hosp. v. Superior Ct.*, 143 Cal. App. 4th 1558 (Cal. Ct. App. 2006).  There, Kroger

23

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

sought depositions of Plaintiff's counsel, who were listed as the percipient witnesses in the Plaintiff's own discovery responses, a fact that, in Kroger's view, rendered Plaintiff's counsel witnesses from whom Kroger had a duty to seek deposition testimony and discovery. While the court ultimately denied the defendant's request for depositions in that instance, ***the Court declined to award sanctions against Mr. Harper—at any point in that case***. (Harper Decl. Ex. C (*People of the State of California v. The Kroger Co.*, No. 24CV03007, Minute Order at 9 (Cal. Super. Ct., Santa Barbara Cnty. Mar. 18, 2026).)

*Third*, the Non-Parties reference a $12,750 sanction issued against Kroger (again, not against Mr. Harper or counsel)—this time, the court found that while Kroger had supplied its lead food technologist as a Person Most Qualified witness, and prepared the witness accordingly with the assistance of counsel, Kroger was required to produce an additional witness for three of eleven topics. (Harper Decl. ¶ 5.) While the Court did award a sanction of $12,750 against Kroger for inconvenience caused to plaintiffs' counsel, it declined, again, to award sanctions against Mr. Harper or any counsel. (Harper Decl. Ex. D (*People of the State of California v. The Kroger Co.*, No. 24CV03007, Minute Order at 8 (Cal. Super. Ct., Santa Barbara Cnty. May 6, 2026).)

And, *fourth*, The Non-Parties previously argued that a larger fee award would serve as deterrence. (Dkt. 9 at 22–25.) Even if attempting to deter Counsel's zealous and effective defense of clients could justify a sanction award, deterrence of any kind is not a basis to enhance a compensatory fee award in a proceeding limited to determining the amount of recoverable fees. If the Court were to consider imposing additional punitive or deterrent sanctions, due process would require notice of that issue and an opportunity to be heard. *Roadway Express*, 447 U.S. at 767; *Lasar*, 399 F.3d at 1109–12. Here, the parties are being heard on the amount of a compensatory fee award—not on whether additional punitive or deterrent sanctions should be imposed for advocacy in unrelated litigation. Moreover, Non-Parties urge the Court to consider that the context and circumstances of this matter, including the fact that GT's was trying to confirm that Mr. Krivoshey had no continuing role, *pursuant to the serious conflict of interest concerns raised by Judge Olguin in denying class certification in 2024*. (*See* Dkt.. 23-1 (Decl. of Jacob M. Harper in

24

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

Support of Mot. for Relief from Nondispositive Pretrial Order of Magistrate Judge) ¶¶ 9–45.)  This fact pattern does not mandate enhanced sanctions based on the premise that it would deter future conduct.  (*See* Harper Decl. ¶¶ 2–5 & Exs. A–D; *Patel v. GT's Living Foods, LLC*, No. 3:26-mc-80036-TSH, ECF No. 9 (Motion for Sanctions) (N.D. Cal. Feb. 20, 2026).)

The Court has already determined that sanctions are warranted in this matter and directed supplemental briefing solely on the reasonable amount of recoverable fees.  That determination does not open the door to enhancing the award based on allegations regarding unrelated litigation.  The lodestar must reflect only the reasonable fees caused by the conduct at issue in this case.

### III.  CONCLUSION

The Court should deny attorneys' fees outright under *Kay* and *Elwood*.  If the Court awards any fees notwithstanding the Non-Parties self-representation, it should award only those fees the Non-Parties have demonstrated were reasonably incurred.  Based on the reductions identified above and in **Appendix A**, the Court should reduce the requested fee award from **$100,280.00** to **$15,187.50** or such lesser amount as the Court determines is reasonable.

DATED: July 23, 2026

ROSING POTT & STROHBEHN LLP

By: */s/ Heather L. Rosing*
Heather L. Rosing, Attorneys for Jacob M. Harper and Joseph Elie-Meyers

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper, Attorneys for GT's Living Foods LLC

25

RESPONSE TO SUPPLEMENTAL BRIEF
Case No. 3:26-mc-80036-TSH

**FILER'S ATTESTATION**

I hereby attest that, pursuant to N.D. Cal. Civ. L.R. 5-1(i)(3), the concurrence to the filing of this document has been obtained from each signatory hereto.

Date: July 23, 2026                              By: */s/ Jacob M. Harper*
                                                        Jacob M. Harper

1