United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMIT PATEL, et al.,
Plaintiffs,
v.
GT'S LIVING FOODS, LLC,
Defendant.

Case No. 26-mc-80036-TSH

**ORDER RE: ATTORNEYS' FEES**

## I. INTRODUCTION

This matter arises out of non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C.'s (collectively, the "Non-Parties") motion to quash deposition subpoena issued by Defendant GT's Living Foods, LLC ("GT") in *Patel et al. v. GT's Living Foods, LLC,* No. 2:19-cv-10920-FMO-DSR (C.D. Cal.). ECF No. 1. On June 18, 2026, the Court granted the Non-Parties' motion for sanctions and ordered supplemental briefing regarding reasonable attorneys' fees and expenses. ECF No. 21 ("Sanctions Order"). The Non-Parties, and Attorneys Jacob Harper and Joseph Elie-Meyers (the "Sanctioned Attorneys"), have submitted supplemental briefing regarding fees. *See* ECF Nos. 28, 29, 33. For the reasons stated below, the Court **GRANTS** the Non-Parties' request for fees.

## II. BACKGROUND

The facts of this case are well known to the parties, and the Court has previously summarized this case's background in its Order on the Non-Parties' Motion for Sanctions. ECF No. 21; *see Patel v. GT's Living Foods, LLC*, No. 26-mc-80036-TSH, 2026 WL 1766199 (N.D. Cal. June 18, 2026). The Court incorporates by reference the factual background set forth therein.

On June 18, 2026, the Court granted the Non-Parties' motion for sanctions, finding that

United States District Court
Northern District of California

sanctions were warranted against Attorneys Harper and Elie-Meyers. Sanctions Order at 18–19. The Court found that sanctions in the form of reasonable attorneys' fees and expenses were appropriate—for such costs incurred in "responding to the Second Subpoena, moving to quash and shorten time for the Second Subpoena, and moving for sanctions and replying to GT's Opposition to the motion for sanctions"—under Rules 26 and 45 of the Federal Rules of Civil Procedure. *Id.* at 21–23. The Court ordered supplemental briefing on the amount of reasonable attorneys' fees and expenses. *Id.* at 23.

On July 9, 2026, the Non-Parties filed a supplemental brief. ECF No. 28 ("NP Br."). The Non-Parties submit time records to support the amount of fees requested. NP Br. at 1; *see* Declaration of Joel D. Smith ("Smith Decl.") (ECF No. 28-1), Exs. 1 (ECF No. 28-2), 2 (ECF No. 28-3). On July 23, 2026, the Sanctioned Attorneys filed a responsive supplemental brief. ECF No. 29 ("SA Br."). On July 30, 2026, the Non-Parties filed a reply. ECF No. 33 ("NP Reply").

## III. LEGAL STANDARD

When an award of attorneys' fees is authorized, the court must calculate the proper amount of the award to ensure that it is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). In the Ninth Circuit, courts perform a two-step process to determine the reasonableness of any fee award. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the Court determines the "lodestar figure." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). Second, where appropriate, the Court may adjust the lodestar amount based on several factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), known as the *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar

cases.

*Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024).

A strong presumption exists "that the lodestar figure represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). The Ninth Circuit has made clear that "[o]nly in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Id.* (citations omitted). "Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law." *Id.* The *Kerr* factors that are subsumed within the initial lodestar calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, the results obtained in the action, and the contingent nature of the fee agreement. *Id.* at 364 n.9 (citations omitted). "Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure." *Id.* (citation omitted).

The party seeking the award of fees must submit evidence to support the request. *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Specifically, the party must support the request with evidence regarding the "number of hours worked and the rates claimed." *Id.* The party opposing the fee request bears the "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits." *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (quoting *Gates*, 987 F.2d at 1397).

## IV. DISCUSSION

The Non-Parties request $100,280 in attorneys' fees. NP Br. at 2. They submit a declaration and exhibits showing itemized billing records in support of their requested fees. *See* Smith Decl., Exs. 1 ($78,327.50 in fees for subpoena, motion to quash, motion to shorten time, and motion for sanctions), 2 ($21,952.50 in fees for reply brief regarding motion for sanctions). The Sanctioned Attorneys argue that the request "should be denied or substantially reduced because the Non-Parties have not met their burden of showing that the requested fees are proper or reasonable." SA Br. at 2.

As a threshold issue, the Sanctioned Attorneys argue that the Non-Parties are not entitled to attorneys' fees for self-representation. *Id.* at 2:13–16, 5:5–8:19. The Non-Parties respond that "the Court *can* award attorneys' fees to *pro se* litigant law firms and attorneys as sanctions under Rule 26, Rule 45, and the Court's inherent powers." NP Reply at 1:1–8 (emphasis in original). The Court agrees. As the Sanctioned Attorneys acknowledge, the majority of their cited cases deal with attorneys' fees stemming from "fee-shifting statutes" which "are intended to encourage litigants to retain independent counsel." SA Br. at 5:5–6:14; *see, e.g., Kay v. Ehrler*, 499 U.S. 432, 433, 438 (1991) (holding "an attorney who represents himself in a successful civil rights action" cannot "be awarded a reasonable attorney's fee as part of the costs under 42 U.S.C. § 1988") (cleaned up). They argue that the "Ninth Circuit has applied *Kay* broadly"; yet they cite only Ninth Circuit cases involving statutory attorneys' fees which are not at play here. SA Br. at 5:5–6:14; *see, e.g., Elwood v. Drescher*, 456 F.3d 943, 946–48 (9th Cir. 2006), *abrogated on other grounds by Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655 (9th Cir. 2020) (holding *pro se* attorney-defendant cannot be awarded attorneys' fees under 42 U.S.C. § 1988). The Sanctioned Attorneys then pivot to district court cases addressing attorneys' fee awards under the Federal Rules of Civil Procedure. SA Br. at 5:17–19, n.1, 6:26–7:6. However, none hold that a self-represented attorney cannot obtain attorneys' fees under Rule 26 or Rule 45. NP Reply at 1:1–2:4. In fact, in *Black v. Wrigley*, the court concluded that no restriction exists on awarding monetary sanctions to *pro se* attorneys under Rule 26 or Rule 45, which may include an award for lost earnings or reasonable attorneys' fees. No. 18-cv-2367-GPC-BGS, 2019 WL 2717212, at *9 (S.D. Cal. June 28, 2019); *see* SA Br. at 6:26–7:6; NP Reply at 1:9–2:4. Therefore, contrary to the Sanctioned Attorneys' assertion, the Court is not aware of any "settled case law" that "forecloses the fee request here." SA Br. at 7:7–17.

Moreover, the policy consideration identified in *Kay* and *Elwood*—the use of fee-shifting statutes to encourage parties to hire independent counsel to litigate cases that involve important civil rights—is absent here. NP Reply at 2:5–19; *see Kay*, 499 U.S. at 437 ("the overriding statutory concern is the interest in obtaining independent counsel for victims of civil rights violations"); *Elwood*, 456 F.3d at 948 ("We think that resort to independent counsel for

defendants, as well as plaintiffs, serves the statutory policy of ensuring effective prosecution of meritorious civil rights cases."). In contrast, third parties subject to subpoenas have no stake in the merits of a case. Indeed, Rule 45 recognizes as much, explaining that non-party witnesses need enhanced protection from courts. *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("[Rule 45] was amended in 1991 in order to 'clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence[.]'") (quoting 1991 Adv. Comm. Notes, Fed. R. Civ. P. 45). The policies that undergird awarding sanctions for violating these discovery rules justify awarding fees to non-party witnesses who successfully represent themselves or their law firm in combatting discovery abuse. *See* NP Reply at 2:5–19 ("The purpose of sanctions under Rules 26 and 45 is to curb discovery abuse and avoid imposing undue burden, respectively."). It strains credulity that the rules' drafters would have envisioned precluding a witness who happens to be an attorney from recovering attorneys' fees for defending against an improper third-party subpoena. Time is money. And time spent defending against an improper subpoena is time not spent working on matters for paying clients. NP Reply at 1 n.1; *see* 1991 Adv. Comm. Notes, Fed. R. Civ. P. 45 (explaining Rule 45 "specifies liability for earnings lost by a non-party witness as a result of a misuse of the subpoena"). Yet in the Sanctioned Attorneys' view, the rules grant them license to declare open season on attorneys, serve them with improper subpoenas, and escape monetary sanctions for time the attorney spends away from regular work simply because that attorney is representing themself or their law firm. This cannot be the law. *See United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."); *cf. Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1377 (Fed. Cir. 2002) (holding courts may award "attorney fees sanctions in favor of a *pro se* attorney under a court's inherent power" because "[f]ailure to do so . . . would place a *pro se* litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct, but not be liable for attorney fees to a *pro se* party"). Therefore, the Court concludes that the Non-Parties may obtain attorneys' fees for self-representation under Rules 26 and 45.

Accordingly, the Court next considers the reasonableness of the Non-Parties' requested fees with the lodestar analysis.

**A. Rates**

The Non-Parties submit time records for three attorneys—Joel Smith, Yeremey Krivoshey, and Brittany Scott—and one paralegal who worked on this case. Smith Decl., Exs. 1–2. The Non-Parties request the following rates for the attorneys and paralegal who worked on this case:

| **Person** | **Title (years in practice)** | **Hourly Billing Rate** |
|---|---|---|
| Joel Smith | Partner Attorney (19) | $1,125 (2026) |
| Yeremey Krivoshey | Partner Attorney (13) | $950 (2026) |
| Brittany Scott | Partner Attorney (6) | $850 (2026) |
| Kimberly Kittleson | Paralegal | $350 |

NP Br. at 3:5–5:2; *see* Smith Decl. ¶¶ 2–4, Exs. 1–2 (Time Records), 3 (Firm Resume) (ECF No. 28-4).

To determine whether these hourly rates are reasonable, the Court considers "prevailing rates in this district for personnel of comparable experience, skill, and reputation." *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-4922-HSG, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020). A party "may establish the market rates in the relevant community either by submitting a declaration of counsel, or by citing rate determinations in other cases." *Maslic v. ISM Vuzem d.o.o.,* No. 21-cv-02556-BLF, 2025 WL 3114457, at *7 (N.D. Cal. Nov. 6, 2025).

Given the Court's assessment of similar services by lawyers of reasonably comparable skill, experience and reputation, the Court finds the Non-Parties' requested rates are reasonable. *See* NP Br. at 3:19–4:10 (collecting cases); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("[J]udges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."); *cf. Mogan v. Sacks, Ricketts & Case LLP*, No. 21-cv-08431-TSH, 2022 WL 1458518, at *2–3 (N.D. Cal. May 9, 2022) (finding rates up to $1,015.75 for partners reasonable); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600–01 (N.D. Cal. 2020) (finding rates up to $1,275 for partners reasonable); *In re Volkswagen*

*"Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-md-2672-CRB(JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding rates up to $1600 for partners and up to $490 for paralegals reasonable); *see also Hernandez v. WM Wholesale, LLC.*, No. 8:25-cv-02228-RGK-JDE, 2026 WL 1770696, at *6 (C.D. Cal. May 12, 2026) (finding Smith Krivoshey's rates reasonable).

The Sanctioned Attorneys' argument that the Non-Parties' attorney hourly rates should all be reduced to $450 is unavailing. SA Br. at 8:20–10:11. They argue that the Non-Parties' rates are not comparable to "prevailing rates for similar routine discovery work in this District." *Id.* at 10:4–10. To start, it is unclear why the Non-Parties' rates would be governed by rates discussed in cases over a decade old. *See id.* (citing *Deuss v. Siso*, No. 14-cv-00710-YGR(JSC), 2014 WL 4275715 (N.D. Cal. Aug. 29, 2014); *Binkovich v. Barthelmy*, No. 5:11-cv-03774-PSG, 2014 WL 4060567 (N.D. Cal. Aug. 15, 2014)[1]); *see also LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 624 (9th Cir. 2026) ("[F]ee awards must be based on current rather than merely historical market conditions, and the adjudicator should rely on the most current information available.") (cleaned up). It is even more troubling that the Sanctioned Attorneys cite cases for propositions that do not exist and leave important facts out of others. They assert *three* times that in *Deuss v. Siso*, the court granted "fees associated with motions to quash subpoenas based on partner hourly rate of $450," and that the court awarded $33,765.67 in fees. SA Br. at 2:26–27, 9:21–22, 10:8–10 (citing *Deuss*, 2014 WL 4275715, at *8). However, in *Duess*, the defendant sought $13,375 in fees, and the court deferred ruling on that request. *Deuss*, 2014 WL 4275715, at *8. And in *Maslic v. ISM Vuzem d.o.o.*, the attorney explained that the prevailing market rate was much higher than what he charged. 2025 WL 3114457, at *7 (explaining counsel's declaration stated "that San Francisco attorneys with comparable experience typically earned more than $1,100 per hour between June 2024 and May 2025" but that counsel's "hourly rate of $400, which he has charged since 2018, is less than half that amount").

Notably, the Sanctioned Attorneys argue that rates should depend on the type of

[1] In their discussion of rates, the Sanctioned Attorneys erroneously cite this case as "2014 WL 4099895." SA Br. at 10:7. They cite it correctly elsewhere in their brief. *E.g., id.* at 1:27–2:1.

proceeding involved but do not meaningfully respond to the Non-Parties' filings indicating that the Sanctioned Attorneys sought "reasonable" attorneys' fees for a motion for sanctions that parallel the rates requested by the Non-Parties. *See* NP Br. at 4:11–5:2 (citing ECF No. 9-9); SA Br. at 9:23–10:3 ("[T]he comparison is inapt because Defendant's counsel billed those rates to paying clients, whereas the Non-Parties ask for fees based on rates they selected for their own self-representation."). Smith-Krivoshey's attorneys "practice almost exclusively in class action litigation." Smith Decl. ¶ 2; *see* NP Br. at 2:11–16. As such, the Sanctioned Attorneys' assertion that attorney rates approved for class actions are immaterial rings hollow. SA Br. at 9:11–22. Finally, the Sanctioned Attorneys accuse the Non-Parties (without evidence) of randomly assigning themselves rates for their own self-representation. *Id.* at 10:1–3; *but see* Smith Decl. ¶ 7 (explaining rates sought are the "firm's 2026 standard rates"). But it is the Sanctioned Attorneys who seemingly set arbitrary rates, requesting a blanket rate for three attorneys who differ in experience by thirteen years. *See* SA Br. at 10:11–16 (requesting rate of $450 for every Smith-Krivoshey attorney). In any event, reasonable fees must be calculated according to the prevailing market rates in the relevant community, not an individual attorney's usual billing practices. Therefore, the Sanctioned Attorneys fail to rebut the Non-Parties showing that their rates are reasonable. *Gates*, 987 F.2d at 1397.

**B. Hours Expended**

The Non-Parties request fees for 101.2 hours performed on this case. NP Br. at 5:3–7:2; *see* Smith Decl., Exs. 1 (78.9 hours for analyzing subpoena and options for responding, preparing objections, and meeting and conferring, and writing/filing motion to quash, motion to shorten time, and motion for sanctions), 2 (22.3 hours for reviewing opposition to motion for sanctions and writing/filing reply brief). The Non-Parties do not include "post-filing work that was not already included in the prior time sheets," "preparing for the hearing before it was vacated," or "preparing this supplemental brief" in their request for fees. NP Br. at 6:1–16.

"A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Van Gerwen*, 214 F.3d at 1045 (cleaned up). The Court is afforded "considerable deference" in determining what

hours claimed by counsel are excessive, redundant, or otherwise unnecessary and must only provide a "concise but clear explanation of its reasons" if it reduces the number of hours included in a fee award. *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955–56 (9th Cir. 2007) (citations omitted). "An attorney's sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (cleaned up).

After carefully reviewing the Non-Parties' time records, the Court finds the requested hours reasonable. The Non-Parties' time records "include narrative descriptions of the work performed, disclose who did the work, and state the amount of time spent on each task, tracked down to the tenth of an hour." NP Br. at 5:13–26 (citing Smith Decl., Exs. 1–2). The total hours requested are reasonable given the multiple filings by the Non-Parties, "the need to marshal and explain extensive evidence spanning several years," and "the numerous legal issues raised in the briefing." *Id.* at 2:17–22; *see* Mot. for Sanctions (including 21 exhibits) (ECF No. 9); Sanctions Order at 1–9 (discussing Non-Parties' evidence). That the Non-Parties exclude time for post-filing work and preparing their supplemental brief further supports the reasonableness of the fees requested. NP Br. at 1:24–2:10; *see Koeppen v. Carvana, LLC*, No. 21-cv-01951-TSH, 2024 WL 3925703, at *13 (N.D. Cal. Aug. 22, 2024) (noting request for fee award in lesser amount than amount of compensable fees supports reasonableness). Moreover, the Sanctioned Attorneys' refusal to vacate the subpoena compliance deadline forced the Non-Parties to litigate under tight deadlines which affected staffing. NP Br. at 7:6–20; Smith Decl. ¶ 13. Therefore, the Court finds that the Non-Parties' supporting declaration and exhibits, which include itemized billing records, are sufficient evidence of the reasonableness of their hours expended.

The Sanctioned Attorneys make several counterarguments, none of which are persuasive. First, they argue that the Court should reduce the hours attributable to Krivoshey by 75% because the Non-Parties fail to show what portion is attributable to Krivoshey's "noncompensable self-representation." SA Br. at 8:3–19. As discussed, the Court rejects the argument that Krivoshey cannot recover attorneys' fees for self-representation. Taking away the proposed 75% reduction, the delta between what the Non-Parties and the Sanctioned Attorneys argue is reasonable is not

large. *Compare* NP Br. at 6:1–16 (requesting compensation for 101.2 hours) *with* SA Br. at 3:8–25 (requesting reduction of 26.7 hours after blanket reduction in Krivoshey's hours).[2] The Sanctioned Attorneys next argue that the requested fees are excessive because they "reflect bloated partner-heavy staffing" and "routine litigation tasks that should have been performed at lower rates." SA Br. at 10:17–11:2. But the Sanctioned Attorneys cannot tell the Non-Parties how to run their law firm. *See* NP Br. at 3:6–18, 8:8–15; *Prestige Brands*, 168 F.4th at 626 ("We should not reduce fees awards to lawyers simply because of how they have structured their workplaces."). Indeed, the Ninth Circuit had instructed that "district courts may not reduce fee awards based on the size of counsel's firm." *Prestige Brands*, 168 F.4th at 625. And contrary to the Sanctioned Attorneys' assertion, the Non-Parties *do* explain "why [such] staffing was reasonably necessary." SA Br. at 15:4–10; *see* NP Br. at 7:6–20; Smith Decl. ¶ 13.

Finally, the Sanctioned Attorneys complain that that the time records reflect "overlapping and duplicative work," "impermissible block billing," and "excessive" billing entries given the type of filings involved.[3] SA Br. at 10:17–21:2. They spill much ink nit-picking a plethora of individual time entries. But as long as an attorney identifies "the general subject matter of his time expenditures," he "is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12; *see* NP Br. at 5:13–26, 7:21–8:7. The Non-Parties' time records easily clear this hurdle—they are contemporaneous records that include a narrative description of work performed and track the amount spent on each task down to the tenth of an

---

[2] The Sanctioned Attorneys do not come out and say how many hours are "reasonable"; however, based on their requests, the Court can deduce the answer. The Sanctioned Attorneys argue that Krivoshey's total hours (57.1) should be reduced by 75%, to 14.3 hours. SA Br. at 8:3–19; *see* Smith Decl., Exs. 1–2. This reduces the Non-Parties' requested hours to 58.4. The Sanctioned Attorneys argue that at most, the Non-Parties are entitled to $15,187.50 in attorneys' fees. SA Br. at 3:8–25. They do not quarrel with the 2.7 hours ($945) attributed to paralegal work. *See* Smith Decl., Exs. 1–2. They argue that the attorneys are entitled to a rate of $450. SA Br. at 8:20–10:11. As such, for the $14,252.50 of attorney work ($15,187.50 - $945 for paralegal work), they assert that about 31.7 hours are reasonable. Therefore, they request a reduction of 26.7 hours beyond that for the blanket reduction in Krivoshey's hours. In other words, the Sanctioned Attorneys request a 26.4% reduction in the 101.2 hours claimed by the Non-Parties for reasons other than self-representation.

[3] The Sanctioned Attorneys also argue that the Court should exclude "any fees attributable to the Motion to Shorten Time." SA Br. at 17:6–15. However, the Court already held that the Non-Parties may seek attorneys' fees for their motion to shorten time. Sanctions Order at 21–23.

United States District Court
Northern District of California

hour. NP Br. at 5:13–26; *see Hernandez*, 2026 WL 1770696, at *7 (finding Smith-Krivoshey's billing records sufficiently establish that the hours expended were reasonable). Further, even if some work was "overlapping," the Court agrees with the Non-Parties that the total number of hours expended is reasonable. NP Br. at 7:21–8:7; *cf. Mogan*, 2022 WL 1458518, at *3–4 (finding 272 hours for case review, motion to dismiss, motion for sanctions, and supplemental brief on fees reasonable). The Sanctioned Attorneys themselves have argued that similar or *more* hours are reasonable. *Compare* NP Br. at 6:1–16 (requesting 50.6 hours for motion for sanctions) *with id.* at 6:17–7:2 (citing ECF No. 9-9) (Sanctioned Attorneys' request for 166.7 hours for moving for sanctions and preparing a supplemental brief). And while that is not dispositive, it surely undercuts their argument that the Non-Parties' hours are not reasonable. *Id.* at 6:17–7:2, 8:8–16. Therefore, the Sanctioned Attorneys fail to rebut the Non-Parties' showing that their hours expended are reasonable. *Gates*, 987 F.2d at 1397.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Non-Parties' request for attorneys' fees and awards the Non-Parties $100,280 in attorneys' fees. Within 21 days of the date of this order, the Sanctioned Attorneys shall pay this sanction to the Non-Parties.

**IT IS SO ORDERED.**

Dated: August 18, 2026

THOMAS S. HIXSON
United States Magistrate Judge