Heather L. Rosing, SBN 183986
Leah A. Lorenz, SBN 228008
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California 92101
Tel: 619-235-6000
hrosing@rosinglaw.com
llorenz@rosinglaw.com

Attorneys for Non-Parties, Jacob M. Harper and Joseph Elie-Meyers

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GT'S LIVING FOODS, LLC,<br><br>Defendant. | Case No. 3:26-mc-80036-TSH<br><br>(Case No. 2:19-cv-10920-FMO-DSR Pending in the Central District of California)<br><br>**[ORAL ARGUMENT REQUESTED]**<br><br>**CONSOLIDATED SUPPLEMENTAL MOTION CHALLENGING RULINGS OF JUNE 18, 2026 [ECF 21] AND AUGUST 18, 2026 [ECF 35]**<br><br>**[BRIEFING ORDERED VIA ECF 36]**<br><br>Date: November 19, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8 – 19th floor |

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

II. STATEMENT OF FACTS ........................................................ 2

A. The *Patel* Action and Non-Parties' Involvement. ........................................................ 3

B. The Parties are Ordered to Address Adequacy Given Krivoshey's Conflicts. ......... 3

C. In Response to Conflicts Concerns, Krivoshey and Bursor Withdraw. .................... 4

D. GT's Seeks Written Discovery, Documents and Testimony from Plaintiffs. ........... 4

E. Having Exhausted Party Discovery, GT's Serves Subpoenas. ................................ 6

F. After Movants Withdraw the Subpoena, Non-Parties Move for Sanctions. ............. 8

G. The *Patel* Plaintiffs' Renewed Certification Motion. ................................................ 8

H. The Magistrate Judge Awards Sanctions. ........................................................ 9

I. Movants Seek Relief. ........................................................ 9

J. Portions of the Orders to Which Movants Object. ........................................................ 10

III. LEGAL STANDARD ........................................................ 10

IV. THE LEGAL THRESHOLDS TO ISSUE SANCTIONS WERE NOT MET .................. 11

A. Movants Sought Relevant Rule 23 Discovery for a Proper Purpose. ..................... 12

B. Neither the Record Nor the Law Supports the Grounds for Sanctions Here. ......... 14

C. The Rule 26(g) Sanction Applies the Wrong Standard to the Wrong Conduct. ..... 22

V. THE FEE AWARD SHOULD BE VACATED OR, AT A MINIMUM, REDUCED....... 23

A. The Fee Award Does Not Meet the But-For Causation Requirement .................... 23

B. The Fee Order Applied the Wrong Measure for Self-Represented Attorneys ........ 24

VI. CONCLUSION AND REQUEST FOR ORAL ARGUMENT ........................................ 25


ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

## TABLE OF AUTHORITIES

**Cases**

*Bauman v. Saxe Mgmt., LLC*,
2016 WL 11791830 (D. Nev. Jan. 27, 2016) ..... 13

*Bay Area Rapid Transit Dist. v. Spencer*,
No. C-04-04632-SI, 2006 WL 2734284 (N.D. Cal. Sept. 25, 2006) ..... 21

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 WL 7212308 (N.D. Cal. Dec. 13, 2016) ..... 17

*Bell v. Lantz*,
2015 WL 6609290 (S.D. Ind. Oct. 30, 2015) ..... 20

*Bolding v. Banner Bank*,
No. C17-0601RSL, 2020 WL 3667132 (W.D. Wash. July 6, 2020) ..... 12

*Cardinali v. Plusfour, Inc.*,
2018 WL 7502644 (D. Nev. Oct. 9, 2018) ..... 13, 16

*Casun Invest, A.G. v. Ponder*,
2019 WL 2358390 (D. Nev. June 4, 2019) ..... 21

*Chambers v. Whirlpool Corp.*,
2016 WL 9451360 (C.D. Cal. Aug. 12, 2016) ..... 13

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
953 F.3d 655 (9th Cir. 2020) ..... 25

*Clarke v. Amer. Commerce Nat. Bank*,
974 F.2d 127 (9th Cir. 1992) ..... 16

*CPC Patent Techs. Pty Ltd. v. Apple, Inc.*,
34 F.4th 801 (9th Cir. 2022) ..... 10

*Del Campo v. Mealing*,
No. C 01-21151 JW, 2011 U.S. Dist. LEXIS 158019 (N.D. Cal. Sept. 29, 2011) ..... 14

*Elwood v. Drescher*,
456 F.3d 943 (9th Cir. 2006) ..... 24

*Estate of Conners v. O'Connor*,
6 F.3d 656 (9th Cir. 1993) ..... 11

*Ferguson v. Smith*,
2023 WL 8868815 (D. Or. Dec. 22, 2023) ..... 17

*Flam v. Flam*,
788 F.3d 1043 (9th Cir. 2015) ..... 10



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

*Fujikura Ltd. v. Finisar Corp.*,
2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) .......... 20, 21

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) .......... 23, 24

*Haghayeghi v. Guess?, Inc.*,
2016 WL 9526465 (S.D. Cal. Mar. 21, 2016) .......... 13

*Hawkins v. The Kroger Co.*,
No. 15-cv-2320-JM (AHG), 2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) .......... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 14

*In re Osterhoudt*,
722 F.2d 591 (9th Cir. 1983) .......... 16

*Kay v. Ehrler*,
499 U.S. 432 (1991) .......... 24

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) .......... 15, 18

*Massengale v. Ray*,
267 F.3d 1298 (11th Cir. 2001) .......... 25

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) .......... 15

*Mount Hope Church v. Bash Back!*,
705 F.3d 418 (9th Cir. 2012) .......... passim

*Netlist, Inc. v. Montage Tech., Inc.*,
2023 WL 2940043 (N.D. Cal. Feb. 24, 2023) .......... 22

*Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd. P'ship*,
76 F.3d 1003 (9th Cir. 1996) .......... 22

*Pickholtz v. Rainbow Techs., Inc.*,
284 F.3d 1365 (Fed. Cir. 2002) .......... 25

*Pierce v. Underwood*,
487 U.S. 552 (1988) .......... 22

*Radcliffe v. Experian Info. Sols., Inc.*,
715 F.3d 1157 (9th Cir. 2013) .......... 12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 12

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

*Rodriguez v. W. Publ'g Corp.*,
688 F.3d 645 (9th Cir. 2012) ........ 14

*Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*,
2024 WL 5011603 (N.D. Cal. Dec. 6, 2024) ........ 17, 18, 19

*SEC v. CMKM Diamonds, Inc.*,
729 F.3d 1248 (9th Cir. 2013) ........ 10

*Smith v. Levine Leichtman Cap. Partners*,
2011 WL 13153123 (N.D. Cal. Mar. 9, 2011) ........ 12, 13, 14

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) ........ 15, 22

*United States v. Howell*,
231 F.3d 615 (9th Cir. 2000) ........ 2

*Vondersaar v. Starbucks Corp.*,
2013 WL 1915746 (N.D. Cal. May 8, 2013) ........ 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 12

*White v. Kroger Co.*,
2023 WL 2949160 (N.D. Cal. Apr. 13, 2023) ........ 12, 13

*Xue Lu v. United States*,
921 F.3d 850 (9th Cir. 2019) ........ 24

*Younger Mfg. Co. v. Kaenon, Inc.*,
247 F.R.D. 586 (C.D. Cal. 2007) ........ 16

*Zurich Am. Ins. Co. v. Sealink Serv. Corp.*,
2018 WL 10561907 (C.D. Cal. Mar. 16, 2018) ........ 16

**Statutes**

28 U.S.C. § 636(b)(1)(A) ........ 11

28 U.S.C. § 636(c)(1) ........ 11

Fed. R. Civ. P. 23(a)(4) ........ 12

Fed. R. Civ. P. 23(g)(4) ........ 12

Fed. R. Civ. P. 26(b)(3) ........ 16

Fed. R. Civ. P. 26(g)(1)(B) ........ 22

Fed. R. Civ. P. 26(g)(1)(B)(ii) ........ 15

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

Fed. R. Civ. P. 26(g)(3) ........ 23
Fed. R. Civ. P. 30(a)(1) ........ 16
Fed. R. Civ. P. 72(a) ........ 11
Fed. R. Civ. P. 72(b)(3) ........ 2, 11
Fed. R. Civ. P. 73(a) ........ 11

Rosing Pott & Strohbehn LLP
770 1st Avenue, Suite 200
San Diego, California 92101

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

## I. INTRODUCTION

Context is everything. But in imposing $100,280 in personal monetary sanctions and in-person CLE requirements on attorneys Jacob M. Harper and Joseph Elie-Meyers ("Movants") for subpoenas they issued to former counsel in a class action in the Central District of California (*Patel v. GT's Living Foods, LLC,* formerly *Sharpe v. GT's Living Foods, LLC*), Magistrate Judge Thomas Hixson viewed the subpoenas in isolation, as an ancillary discovery dispute, rather than in the context of the class certification proceedings they were issued to serve. The subpoenas sought discovery after the district court ordered Movants' client, GT's Living Foods LLC, to address class counsel's apparent conflict of interest, which bears on adequacy under Federal Rule of Civil Procedure ("Rule") 23(a). The result was an order imposing severe sanctions for conduct that was well within the permissible scope of discovery. That order cannot stand.

*Patel* is a putative class action that has been pending for over six years before Judge Fernando M. Olguin. In denying Plaintiffs' initial class certification motion, Judge Olguin identified an apparent conflict of interest on the part of then-class counsel, non-parties Yeremey O. Krivoshey and Smith Krivoshey, P.C. ("Non-Parties"). Specifically, Krivoshey, as counsel in a prior class settlement with GT's, had asserted a position that was in direct conflict with Plaintiffs' litigation positions in *Patel*. Judge Olguin directed the parties to address this apparent conflict, which bears on class counsel's adequacy under Rule 23(a).

In response, Non-Parties withdrew, or at least claimed to have withdrawn, as counsel of record. Plaintiffs then produced partially executed Joint Prosecution Agreements ("JPAs") between Krivoshey and replacement class counsel, indicating Krivoshey's continuing involvement in, and influence over, the case. The same Rule 23(a) counsel adequacy problems that jeopardized class certification thus appeared to remain, with a renewed certification motion forthcoming.

Movants sought information about Non-Parties' continuing role in the litigation, and its bearing on replacement counsel's adequacy, through every available party discovery device: document requests, interrogatories, follow-up discovery, and depositions. Only *after* Movants exhausted those sources without obtaining answers about Non-Parties' continued involvement did Movants subpoena Non-Parties directly. When Non-Parties moved to quash, Krivoshey's

supporting declaration supplied the information GT's had sought, and Movants withdrew the subpoena. Non-Parties moved for sanctions the next day.

The Magistrate Judge did not hold a hearing before ruling on the sanctions motion. Although Elie-Meyers' declaration described the underlying litigation, the order focused narrowly on the subpoena, without accounting for six years of extensive litigation or the Rule 23 issues Judge Olguin had directed the parties to address.

These rulings, which resolved the entire miscellaneous proceeding, are dispositive in nature and effect and are subject to de novo review. But even under the deferential standard applicable to nondispositive orders, the rulings are clearly erroneous and contrary to law and must be set aside. First, the Magistrate Judge concluded that the subpoena was issued for an "improper purpose." But the Order identifies no motive other than obtaining the information sought. And, although the Magistrate Judge apparently viewed that information as irrelevant, the record shows that GT's and Movants sought narrow discovery directly relevant to the Rule 23 issue Judge Olguin's Order directed the parties to address. Courts routinely permit such discovery. Second, contrary to the Magistrate Judge's conclusion, the subpoena imposed no "undue burden." As the Ninth Circuit has held, the relevant burden is the burden of compliance. There was no compliance here, and the costs of filing motions to quash and for sanctions, particularly for a subpoena that was withdrawn, cannot constitute undue burden. Third, the Magistrate Judge identified several purported procedural defects in the subpoena: notice, service, a witness fee, and a definitional error. But these defects were not "facial," and they imposed no burden on anyone. At most, they rendered the subpoena unenforceable. They cannot support the extraordinary award of sanctions.

## II. STATEMENT OF FACTS

The subpoenas cannot be evaluated in isolation. They were issued to address questions arising in a separate, long-running class action case, and that context explains why the subpoenas were issued and why they were proper. Record citations are primarily to the materials before the Magistrate Judge. The Declarations of Jacob M. Harper (ECF 23-1) and Joseph Elie-Meyers (ECF 23-2) supplement that record with additional detail, which the Court may receive on de novo review. Fed. R. Civ. P. 72(b)(3); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

### A. The *Patel* Action and Non-Parties' Involvement.

This action, again, relates to a class action that has been pending in the Central District for over six years: *Patel v. GT's Living Foods, LLC*, No. 2:19-cv-10920-FMO-DSR (C.D. Cal.) (*Patel*) (formerly *Sharpe v. GT's Living Foods, LLC*). Plaintiffs allege the label on GT's Living Foods, LLC's kombucha products is misleading regarding its alcohol and sugar content. *Patel* ECF 1; ECF 23-1, ¶ 7. Bursor & Fisher P.A. ("Bursor"), including attorney Yeremey Krivoshey, filed the action and litigated it for years. In 2024, Krivoshey started his own firm, Smith Krivoshey (both Non-Parties in this matter), which was added as counsel of record for Plaintiffs along with Bursor. Davis Wright Tremaine LLP, including Movants Harper and Elie-Meyers,[1] began representing GT's in the action in 2024. *Patel* ECF 145, 148, 227; ECF 23-1, ¶ 1, 23-2, ¶ 1.

### B. The Parties are Ordered to Address Adequacy Given Krivoshey's Conflicts.

Plaintiffs moved for class certification, and in June 2024, Judge Olguin denied the motion, raising concerns that the named plaintiffs and class counsel—Bursor, then including Krivoshey—could not adequately represent the class. *Patel* ECF 129 at 2-6; ECF 23-1, Ex. 1. The court explained class counsel filed a prior action, *Retta v. Millennium Products, Inc.* (*Retta*), asserting the same alcohol and sugar allegations against GT's for the same kombucha products and obtained a favorable classwide settlement. *Patel* ECF 129 at 1-2; ECF 23-1, ¶ 9(b). In reaching settlement, the parties designed an updated product label, and to get the settlement approved, Krivoshey represented to the *Retta* court that the new label sufficiently informed consumers of the products' alcohol and sugar content. The parties also agreed to a framework for periodic sugar and alcohol testing, which Krivoshey likewise represented was sufficient to ensure truthful labeling. *Patel* ECF 129 at 2-3; ECF 23-1, ¶ (9). Judge Olguin found that in litigating *Patel*, Krivoshey (and Bursor) appeared to take positions contrary to his representations in *Retta*, challenging the same label design and testing regime he had argued was sufficient there. *Patel* ECF 129 at 3-6; ECF 23-1, ¶ 9(c). The court found the representations undermined *Patel* and "call into question the ability

---

[1] Harper and DWT still represent GT's; Elie-Meyer joined a family business in 2026 and left for reasons unrelated to this matter. *Patel* ECF 145, 148, 227.



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

of Bursor to fairly and adequately represent the interests of the class." *Id*. Judge Olguin also noted that although the named plaintiffs appear to be inadequate, "the majority of the court's concerns relate to counsel. Thus, the court's reference to 'plaintiffs' throughout this Order is generally intended to refer to class counsel." *Patel* ECF 129 at 2, n.3; ECF 23-1, ¶ 9(a). The Court ordered that any renewed motion for certification "shall" address if "plaintiffs and class counsel, including Bursor & Fisher, are adequate representatives and class counsel." *Patel* ECF 129 at 6.

**C. In Response to Conflicts Concerns, Krivoshey and Bursor Withdraw.**

In response to Judge Olguin's Order denying class certification, Bursor and Smith Krivoshey withdrew as class counsel, substituted by new counsel Dovel & Luner. *Patel* ECF 130, 131, 134, 136, 137, 152, 155; ECF 23-1, ¶¶ 11–12 & Exs. 4. Plaintiffs amended the complaint to add three new plaintiffs (the original plaintiffs were later dismissed because they were conflicted members of the *Retta* class). *Patel* ECF 168, 178; ECF 23-1, ¶¶ 13-14.

**D. GT's Seeks Written Discovery, Documents and Testimony from Plaintiffs.**

On October 23, 2025, the court reopened discovery "related solely to the newly added named plaintiffs" and set a deadline for its completion. *Patel* ECF 180; ECF 23-1, ¶ 17, Ex. 10. The deadline was ultimately extended by stipulation to March 5, 2026. ECF 23-1, ¶ 17, Ex. 11. Counsel understood the court's order reopening discovery as to the new plaintiffs included discovery of Plaintiffs' and their new counsel's adequacy. ECF 23-1, ¶ 18. That reading tracked the class certification order, which explained that its references to "plaintiffs" were "generally intended to refer to class counsel, specifically Bursor" (including Krivoshey before he left the firm). *Patel* ECF 129 at 2 n.3; ECF 10-2, ¶ 13; ECF 23-1, ¶ 18, Ex. 1; ECF 23-2, ¶ 19. GT's thus sought discovery regarding Plaintiffs' claims and their adequacy as class representatives, as well as the adequacy of their new counsel to represent a class. ECF 23-1, ¶ 19. That included information relating to Bursor and Krivoshey's involvement in the litigation, as their continued involvement could render the *current* counsel or class representatives inadequate under Rule 23(a), again precluding class certification. *Id*., ¶¶ 19-20. GT's (through Movants) immediately began serving discovery on the named Plaintiffs, in several forms. *Id*., ¶ 20.

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

**1. GT's Requests for Production of Documents**

On November 13, 2025, GT's served requests for production on the three named plaintiffs, defining "plaintiffs" to include their "agents" and "attorneys." ECF 21 at 3:15-19; ECF 9-20; ECF 23-1, ¶ 21, Exs. 12-14. They requested all documents regarding any agreements they had with their attorneys or any agreement their attorneys had concerning the payment or advance of fees and costs regarding *Patel*, including who would advance costs, whether a fee would be shared with any person not a member of their attorney's law firm, and the fee sharing arrangement among current and former counsel for Plaintiffs. ECF 23-1, ¶ 21. Plaintiffs did not, in their responses, object that the above-described discovery was outside the limited scope of reopened discovery. ECF 23-1, ¶ 22(a)-(b).

Rather, on December 23, 2025, Plaintiffs produced the two JPAs among former counsel (including Krivoshey), current counsel (including Dovel), and Plaintiffs.[2] *Patel* ECF 207, Exs. 7 (Appx 52)-8 (Appx 58); ECF 10-2, ¶ 2; ECF 23-1, ¶ 22(b), 26; ECF 23-2, ¶ 2. Both appeared incomplete; [redacted] ECF 23-1, ¶¶ 27-28.

The terms of the JPAs raised substantial concerns. [redacted] *Patel* ECF 207, Ex. 7 (Appx 52)-8; ECF 23-1, ¶ 28.a, Ex. 22. [redacted] *Id.*

The second JPA made matters worse. While it contemplated that [redacted]

---

[2] ECF 23-1 has partially redacted references to the explicit terms of the JPAs and sealed exhibits of the JPA. The unredacted, unsealed version is available as Exhibit A to Movants' Administrative Motion to Consider Whether Another Party's Materials Should Be Sealed, ECF 24.



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

[redacted] likewise rendering them inadequate. *Patel* ECF 207, Ex. 8 (Appx 58); ECF 23-1, ¶ 28.b, Ex. 23.

Plaintiffs produced no other records regarding former counsel's ongoing involvement and agreements with current counsel and Plaintiffs. ECF 23-1, ¶ 28. Thus, it was unclear if one of the JPAs was in effect or some other agreement governed, how counsel understood those agreements, and to what extent former counsel remained involved in the action. *Id.,* ¶ 28(b)(ii).

**2. GT's Interrogatories**

GT's also served interrogatories on Plaintiffs, asking them to describe any agreements with or between their counsel. ECF 23-1, ¶¶ 22-23, Exs. 18-20. In response, Plaintiffs identified the JPAs, but did not provide details regarding their terms, effect, nor their incomplete execution. *Id.*

**3. GT's Depositions of All Named Plaintiffs**

Between January 8 and 16, 2026, GT's deposed all three Plaintiffs, who gave conflicting testimony about the JPAs and indicated they lacked knowledge to testify about the topics. ECF 23-1, ¶¶ 29-35 and Exs. 24-26; ECF 9-17 to 9-19. Plaintiffs Nunez and Patel believed they had signed the first JPA and understood its fee allocations to remain in place, while Schmidt did not recall signing it. ECF 23-1, Ex. 24 at 87:16-88:9, 89:10-15, Ex. 26 at 97:16-98:17, Ex. 25 at 63:1-63:16, 66:14-67:8. None could meaningfully address the second JPA, and none was familiar with Smith Krivoshey. ECF 23-1, ¶¶ 29, 31, 33, Ex. 24 at 92:17-94:3, 95:3-96:8, 80:24-81:5, 87:7-8, Ex. 25 at 67:9-69:10, Ex. 26 at 105:25-106:15, 95:18-21. Counsel objected to questions about how the JPAs operated as calling for legal conclusions or speculation—confirming Plaintiffs could not testify to these matters. ECF 23-1, ¶¶ 29(c), 31(a), 33(c). The depositions thus left unanswered whether former counsel retained an ongoing role or financial interest in *Patel* that would preclude adequacy. *Id.*, ¶¶ 30, 32, 34-35; ECF 23-2, ¶¶ 3-4.

**E. Having Exhausted Party Discovery, GT's Serves Subpoenas.**

Having exhausted discovery from Plaintiffs, and with the March 5, 2026 discovery cutoff approaching, Movants had no choice but to seek adequacy discovery directly from counsel. ECF 6

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

at 5:16-24, ECF 6-1, ¶¶ 2-5; ECF 10-2, ¶¶ 3-4; ECF 23-1, ¶ 36; ECF 23-2, ¶ 5. On January 29, 2026, they served subpoenas on former and current class counsel (former counsel Krivoshey and Bursor, and current counsel Dovel & Luner LLP and Ahdoot & Wolfson, PC) for deposition and a handful of narrow categories of documents. ECF 10-2, ¶ 4; ECF 23-1, ¶ 37, Ex. 27A. As relevant here, the subpoenas sought two categories of records from Smith Krivoshey: (1) communications with current counsel about the action, and (2) documents and communications with current counsel about agreements governing representation of the putative class or Named Plaintiffs, such as joint prosecution, cost-sharing, fee, litigation-funding, and decision-making agreements. *Id.*, Ex. 27B. Each subpoena sought potentially unique, nonduplicative information relevant to the counsel adequacy issues Judge Olguin raised. ECF 23-1, Ex. 27A.

After serving Plaintiffs with notice, GT's made numerous attempts to serve Krivoshey with the subpoena (via personal service) and an amended subpoena. ECF 10-2, ¶¶ 5-9; ECF 23-1, ¶ 39, Ex. 27B; ECF 23-2, ¶¶ 7-12. GT's attempted to serve Krivoshey at the registered agent of his firm, which Movants understood Krivoshey owned and operated, after making several attempts to serve him in person. ECF 23-1, ¶¶ 11-12. The amended subpoena was materially identical to the first, except it extended the deposition date to provide reasonable time to comply. ECF 10-2, ¶ 9.[3]

After serving the subpoenas, Movant Elie-Meyers conferred with the subpoenaed counsel regarding their responses. ECF 10-2, ¶¶ 10-16, 17; ECF 23-2, ¶¶ 13-14, 17, 18-20; ECF 1-1, ¶ 2; ECF 35 at 6. Elie-Meyers was able to reach agreement with most; both former and current counsel agreed to produce a declaration providing the adequacy information that GT's was seeking. ECF 10-2, ¶ 18; ECF 23-1, ¶ 42, Ex. 30; ECF 23-2, ¶ 21.

Elie-Meyers' conversations with Non-Party Krivoshey, however, went very differently. At the outset of the call, which occurred on February 9, Non-Parties stated that unless the subpoena was withdrawn, they would move to quash and for sanctions. ECF 10-2, ¶ 17; *see* ECF 9-1, ¶ 28. Elie-Meyers clarified that the amended subpoena was operative and directed to Krivoshey. ECF

---

[3] Movants later learned that, because of a miscommunication with a colleague preparing the new subpoena, "You" in the subpoena's attachment A was defined in error, referencing Smith Krivoshey rather than Krivoshey. ECF 10-2, ¶ 9.



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

10-2, ¶ 10; ECF 23-2, ¶ 20. He also offered several times to limit the scope of the subpoena or to extend the time for compliance to allow further negotiation but was rebuffed with Krivoshey's demands that they simply withdraw the subpoena. ECF 10-2, ¶ 12; ECF 23-2, ¶ 15.

On February 10, Krivoshey asked whether GT's would vacate the compliance date pending a ruling on a motion to quash. As that would put the compliance date after the *Patel* discovery cutoff, GT's responded it could not extend the compliance deadline unless Plaintiffs' counsel agreed to extend the discovery deadline. ECF 10-2, ¶ 15; ECF 23-2, ¶ 16.

### F. After Movants Withdraw the Subpoena, Non-Parties Move for Sanctions.

The next day, February 11, 2026, Non-Parties moved to quash the subpoena in this ancillary proceeding and to shorten time. ECF 1, 2. On February 12, the court denied the motion to shorten time and ordered the deposition not proceed pending resolution of the motion to quash. ECF 5.

Krivoshey filed a declaration with the motion to quash that addressed what GT's primarily sought: he confirmed that he viewed the second JPA as effective and detailed his understanding of its provisions. *Patel* ECF 1-1, ¶¶ 1-10; ECF 10-2, ¶¶ 16-18; ECF 23-1, ¶ 44, Ex. 32. On February 18, Movants notified Non-Parties that the subpoena was withdrawn, and on February 19, they filed a notice of withdrawal. ECF 6; ECF 10-2, ¶ 16; ECF 23-1, ¶¶ 44-45. Thus, the subpoena was pending—from service to withdrawal—for only 15 days. The court ruled the Motion to Quash moot. ECF 7. The day after the withdrawal, Non-Parties filed the motion for sanctions. ECF 9.

### G. The *Patel* Plaintiffs' Renewed Certification Motion.

Meanwhile, in *Patel*, on March 20, 2026, Plaintiffs filed a renewed Motion for Class Certification, in which the relevant discovery materials played a prominent role. *Patel* ECF 207; ECF 23-1, ¶ 50, Ex. 38. In that briefing, Plaintiffs acknowledged their first JPA maintained the conflict of interest but contended that the second JPA supersedes the first JPA, governs former and current counsel's relationship, and eliminates any conflict. *Patel* ECF 207 at 7, n. 3; ECF 23-1, ¶ 52. They thus cited to the second JPA, and the declarations their counsel produced in response to GT's subpoenas, as evidence of adequacy. *Id*. GT's responded that the second JPA itself creates conflicts because it bars current counsel from opposing former counsel's effort to obtain fees from



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

any class recovery, even if that effort conflicts with the class's interests or court order. *Patel* ECF 207 at 7:9-8:8; ECF 23-1, ¶ 53. The class certification motion remains pending.

### H. The Magistrate Judge Awards Sanctions.

A few months later, the Magistrate Judge in this proceeding vacated the hearing on the motion for sanctions, ECF 19, and, on June 18, 2026, granted the motion, sanctioning Elie-Meyers under Rule 45 and Harper under Rules 45 and 26, awarding fees, and ordering each to complete at least two hours of CLE classes on Federal Court Litigation. ECF 21. The Sanctions Order did not discuss GT's basis for seeking the discovery. Nor did it mention Judge Olguin's prior Order denying class certification that raised the very issues for which GT's sought discovery. *Id.*

Instead, the Magistrate Judge awarded sanctions on three bases, each of which Movants challenge. ECF 21 at 13:23-23:7. First, the Sanctions Order found the subpoena was served for an "improper purpose," because it concluded counsel sought the discovery based only on "speculation" that Krivoshey may remain involved in the *Patel* action, and they should have accepted counsel's assurances that he was not involved and had no financial interests. *Id.* at 17:22-18:13. Second, the Order concluded that the subpoena imposed an "undue burden," based on Krivoshey's costs in moving to quash (which was mooted when GT's withdrew the subpoena), moving for sanctions, and because GT's purportedly did not first seek the discovery from the *Patel* Plaintiffs and was supposedly unwilling to negotiate the scope of the subpoena. *Id.* at 15:24-17:21. Third, the Order states that the subpoena was "inconsistent with existing law" due to certain procedural defects. ECF 21 at 14:5-15:10.

The Magistrate Judge then awarded Non-Parties $100,280 in fees on August 18, 2026 ($15,347.50 for analyzing the subpoena defects, researching options for responding, preparing objections, and meeting and conferring; $34,067.50 for the Motion to Quash and Motion to Shorten Time; and $50,865 for the Motion for Sanctions). ECF 28 at 6:4-10, ECF 28-1, Exs. 1-2, ECF 29, 33, 35. Payment has been stayed pending further review. ECF 41-42.

### I. Movants Seek Relief.

Movants sought relief pursuant to Federal Rule of Civil Procedure 72 from this proceeding:

Rosing Pott & Strohbehn LLP
770 1st Avenue, Suite 200
San Diego, California 92101

first in their July 2, 2026 Motion for Relief and Objections (framed as objections to a non-dispositive ruling on liability for sanctions, given that the amount of sanctions had not yet been determined); and second in their Motion for De Novo Determination of Dispositive Matter or, in the Alternative, for Relief from Nondispositive Pretrial Orders (framed as objections to the dispositive ruling confirming sanctions, awarding the amount of sanctions, and concluding this Case). Movants requested oral argument. ECF 23, 27, 39. The day after the Magistrate Judge's final ruling on sanctions issued, this Court ordered consolidated briefing on all matters. ECF 36. This brief addresses both the Sanctions Order and the Fee Order.

### J. Portions of the Orders to Which Movants Object.

Pursuant to Federal Rule of Civil Procedure 72(a) and (b)(2) and Civil Local Rules 72-2 and 72-3, and as set forth in Movants' prior motions (ECF 23, 39), Movants object to the Sanctions Order's findings that the subpoena was issued for an improper purpose (ECF 21 at 17:22-18:15); Movants failed to take reasonable steps to avoid imposing an undue burden and the subpoena was facially defective and inconsistent with existing law (*Id*. at 14:10-17:21)); the imposition of sanctions under Rule 26(g) (*Id*. at 18:3-19:20); and the holding that fees for the sanctions motion are recoverable and imposition of CLE requirements (*Id*. at 14:5-9, 18:16-18, 19:18-23:12). Movants object to the Fee Order in its entirety, including its rulings on fees for self-represented attorneys and its award of all hours requested. ECF 35, *see also* ECF 35 at 4:1-5:28, 6:21-11:16.

## III. <u>LEGAL STANDARD</u>

A "magistrate judge may not issue binding rulings on case-dispositive matters without the parties' consent." *CPC Patent Techs. Pty Ltd. v. Apple, Inc.,* 34 F.4th 801, 807 (9th Cir. 2022). Whether a matter is dispositive turns on its effect, not its label: a decision that "effectively denies 'the ultimate relief sought' by a party or disposes of 'any claims or defenses'" is dispositive. *Id.* (quoting *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013)); *see Flam v. Flam*, 788 F.3d 1043, 1046-47 (9th Cir. 2015). In *CPC*, as here, a freestanding miscellaneous matter was assigned to a magistrate judge in this District under General Order 44, and the Ninth Circuit held that the magistrate judge's order was dispositive because it resolved the only relief sought in the federal proceeding. 34 F.4th at 807-10.

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

So too here. This miscellaneous proceeding was opened to resolve Non-Parties' motion to quash. ECF 1. After the subpoena was withdrawn, the only matter remaining was the sanctions motion. ECF 6, 9. The Orders imposing sanctions were the only substantive relief entered, and they resolved the entire proceeding as to Movants. Unlike discovery sanctions entered within ongoing litigation, these Orders are the case. And the Fee Order is independently beyond a magistrate judge's final authority, because a fee motion is "neither 'pretrial' nor 'nondispositive.'" *Estate of Conners v. O'Connor*, 6 F.3d 656, 658-59 (9th Cir. 1993).

No party consented to final disposition by the Magistrate Judge. *See* 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73(a). The Orders therefore have the effect of reports and recommendations, which this Court determines de novo. *CPC*, 34 F.4th at 810; Fed. R. Civ. P. 72(b)(3) (also stating, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions"). The August 18 Fee Order was the final order that addressed all issues in this narrowly tailored Rule 45 case, thereby rendering the matter dispositive.[4]

## IV. <u>THE LEGAL THRESHOLDS TO ISSUE SANCTIONS WERE NOT MET</u>

Sanctions should not result from normal advocacy, and the sanction power should not be read "so broad as to chill or deter" vigorous advocacy. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 426, 429-30 (9th Cir. 2012) (holding that a losing or later-quashed subpoena is not sanctionable absent an oppressive subpoena, a facially defective subpoena, or bad faith). But nothing beyond ordinary class certification discovery occurred here. Movants issued a subpoena that sought information bearing on adequacy issues Judge Olguin had directed the parties to address; that Movants sought only after pursuing the same information from Plaintiffs; and that was withdrawn before anyone complied with it. No grounds exist to warrant sanctions, let alone the $100,280 Movants were ordered to pay. This Court should vacate the Sanctions and Fee

[4] Even if the Orders were nondispositive, which they are not, any portion "clearly erroneous or contrary to law" must be set aside, 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a), and the Magistrate Judge's legal conclusions receive no deference. Under either standard, the result is the same.)



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

Rulings on multiple grounds.

**A. Movants Sought Relevant Rule 23 Discovery for a Proper Purpose.**

The subpoena for which Movants were sanctioned was ordinary advocacy: class certification discovery directed to Plaintiffs' and their counsel's adequacy under Rule 23, an issue Judge Olguin expressly directed the parties to address. The Sanctions Order does not discuss the role of counsel adequacy in the *Patel* certification proceedings or Judge Olguin's directive. Instead, it treats the information sought as irrelevant to the underlying action. The history of that litigation shows otherwise, and it confirms that the subpoena cannot support sanctions.

**1. Counsel Adequacy Goes to the Heart of Rule 23, and the Subpoenas.**

The law is clear about the relevance of the information sought. "An absence of material conflicts between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). Class counsel serves as a "fiduciary" to absent class members. *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013). Accordingly, as courts in this District recognize, "[b]ecause of the responsibility to absent class members, California holds class counsel to a heightened standard with respect to conflicts of interest." *Smith v. Levine Leichtman Cap. Partners*, 2011 WL 13153123, at *6 (N.D. Cal. Mar. 9, 2011). A court may not certify a class unless the party seeking certification affirmatively demonstrates, under rigorous analysis, that class counsel is adequate to represent the class, including that counsel has no material conflicts of interest. Fed. R. Civ. P. 23(a)(4), (g)(4); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

This is not a rubber stamp. As another magistrate judge in this District explained in enforcing a subpoena seeking discovery into class counsel's apparent conflicts of interest, "the trial judge has a constant duty, as trustee for absent parties in the class litigation, to inquire into the professional competency and behavior of class counsel." *White v. Kroger Co.*, 2023 WL 2949160, at *4 (N.D. Cal. Apr. 13, 2023). Class counsel's incentives, including fee structures, are central to that inquiry. *E.g.*, *Bolding v. Banner Bank*, No. C17-0601RSL, 2020 WL 3667132 at *1 (W.D. Wash. July 6, 2020) ("Because the Court has an on-going obligation to ensure that class-wide

adjudication or settlement of the claims is appropriate . . . the fee structure remains relevant even though the classes have already been certified."). Defendants and their counsel in class actions are thus entitled (and, in service to their clients, *obligated*) to seek discovery regarding counsel's adequacy. Courts routinely order discovery into counsel's fee agreements, testimony about such agreements, litigation history, and relationships with named plaintiffs. *E.g.*, *Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465, at *1-2 (S.D. Cal. Mar. 21, 2016) (compelling production of fee agreements and litigation funding records); *Bauman v. Saxe Mgmt., LLC*, 2016 WL 11791830, at *2 (D. Nev. Jan. 27, 2016) (compelling production of joint prosecution agreement; as relevant at class certification stage). Seeking such discovery by subpoena to counsel or other non-parties is appropriate, particularly where the records may be in counsel's sole possession or discovery has proved fruitless. *E.g.*, *Chambers v. Whirlpool Corp.*, 2016 WL 9451360, at *2-3 (C.D. Cal. Aug. 12, 2016) (denying motion to quash and compelling counsel for class objectors to respond to subpoena to evaluate counsel's interests); *White*, 2023 WL 2949160, at *1-2 (enforcing subpoena to class counsel's husband seeking discovery regarding counsel's apparent conflicts of interest); *Cardinali v. Plusfour, Inc.*, 2018 WL 7502644, at *1, 6 (D. Nev. Oct. 9, 2018) (ordering deposition of class counsel, including as to counsel's fee agreement with named plaintiff).

**2. Judge Olguin Directed the Parties to Address Adequacy.**

As discussed above, Judge Olguin found that Krivoshey's positions in *Patel* appeared to conflict with his representations in *Retta*. *Supra* Section II.B, *Patel* ECF 129 at 2-6; *Smith*, 2011 WL 13153123, at *6 (denying certification where counsel represented two classes with conflicting interests). Judge Olguin accordingly ordered that the Parties "shall" address Plaintiffs' and counsel's adequacy in any renewed class certification motion. *Patel* ECF 129 at 1, 6; ECF 23-1, ¶ 9(d). GT's counsel therefore sought discovery regarding the conflict that led Non-Parties to withdraw, and whether that conflict carried over to new plaintiffs and new counsel. ECF 23-1, ¶¶ 19-38. Plaintiffs' limited production, which included two JPAs, raised substantial questions on both points. *Id.*, ¶¶ 26-28.

Under the First JPA, [redacted] ECF 23-1, ¶¶ 26-28, Ex.

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

22. That structure raised the question whether counsel's settlement incentives could diverge from the class's interests. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011); *cf. Rodriguez*, 563 F.3d at 959-60. The First JPA also contemplated Non-Parties' continued involvement in the action and provided they would forfeit their fees if they withdrew. *See Smith*, 2011 WL 13153123, at *6 (Rule 23 "does not permit even the appearance of divided loyalties of counsel"); *Del Campo v. Mealing*, No. C 01-21151 JW, 2011 U.S. Dist. LEXIS 158019, at *14-15 (N.D. Cal. Sept. 29, 2011).

Under the Second JPA, [redacted] ECF 23-1, ¶¶ 26-28, Ex. 23. That provision raised the question whether [redacted] *See Rodriguez v. W. Publ'g Corp.*, 688 F.3d 645, 654-55 (9th Cir. 2012) (affirming denial of fees to class counsel for the period a conflict was in effect).

**3. GT's Served Narrow Subpoenas for Critical Adequacy Discovery.**

Movants then served narrow subpoenas on former and current counsel, seeking records and testimony they could not obtain from Plaintiffs. The subpoena to Krivoshey, for example, contained two document requests: communications between former and current counsel regarding the action, and documents exchanged between them regarding agreements governing representation in the action. ECF 23-1, Ex. 27B. Every other recipient conferred with GT's and agreed to provide a declaration with the responsive information in lieu of producing documents. ECF 23-1, ¶ 42; ECF 10-2, ¶ 18. When Krivoshey's declaration in support of the motion to quash supplied the information GT's sought, GT's promptly withdrew the subpoena. ECF 10-2, ¶ 16; ECF 23-1, ¶¶ 44-45. As the subsequent briefing in Patel confirmed, the discovery went directly to the adequacy issues that parties then litigated at class certification. *See supra* Section II.G.

**B. Neither the Record Nor the Law Supports the Grounds for Sanctions Here.**

With this critical context, it is clear neither the factual record nor the law supports any of

Rosing Pott & Strohbehn LLP
770 1st Avenue, Suite 200
San Diego, California 92101

the three grounds for Rule 45(d)(1) sanctions: improper purpose, undue burden, or procedural defects. Movants sought routine class certification discovery, which was all the more relevant here due to serious conflicts issues the court already recognized and asked the Parties to address. If the sanctions here stand, it would operate to chill class action defense lawyers from properly investigating class counsel's adequacy, while also inhibiting courts' ability to comply with their independent and ongoing duty to ensure such adequacy.

**1. The Record Does Not Support Improper Purpose.**

An improper purpose is one outside legitimate information-gathering, such as harassment, delay, or needlessly increasing the cost of litigation. *See* Fed. R. Civ. P. 26(g)(1)(B)(ii); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (subpoena served to pressure witnesses not to testify); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc) (nonfrivolous complaint is not filed for improper purpose).

The record contains no evidence of any such purpose here. Instead, the Magistrate Judge concluded it was unlikely that Krivoshey had any further responsive discovery, as GT's merely "speculat[ed]" based "on the thinnest of reeds" that Krivoshey would have relevant information. ECF 21 at 17:22-27. But a conclusion that discovery would not be fruitful is not a finding of improper purpose. At most, it is a relevance ruling, which falls well short of "improper purpose." Even if a court had ultimately concluded that Movants were mistaken in believing the discovery was relevant, sanctions still could not lie: "[s]anctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost in the end." *Mount Hope*, 705 F.3d at 429. Even a quashed subpoena does not automatically warrant sanctions. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

In any event, the discovery was entirely relevant. *Supra* Section II.B-E. GT's was entitled to investigate counsel's adequacy, including through counsel. *Patel* ECF 129 at 6; *Rodriguez*, 563 F.3d at 959. Harper, Elie-Meyers, and all counsel at all times understood the discovery to be within the scope of the order reopening discovery. ECF 23-2, ¶¶ 18-19; ECF 23-2, ¶¶ 2, 22. And when GT's could not obtain this discovery from Plaintiffs, it was proper to seek it from counsel.

Nor were Movants prohibited from seeking relevant discovery merely because Krivoshey

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

(or others) represented (after the fact) that there is nothing useful to find, as the Sanctions Order suggested. ECF 21 at 17:22-18:9. In finding improper purpose, the Magistrate Judge primarily relied on Krivoshey's declaration in support of the motion to quash. *Id*. But GT's did not have that declaration when it served the subpoena, and it withdrew the subpoena promptly after receiving it. GT's withdrawal, in fact, further supports its proper motive; a party that withdraws a subpoena once it has the information sought is pursuing information, not harassing the witness. And regardless, even if this declaration was available beforehand, GT's and Movants were not required to accept counsel's declaration or assertions at face value; discovery exists precisely to test such statements. *Bolding*, 2020 WL 3667132, at *2 ("Counsel's declaration is effectively unchallengeable, [] and defendant is not required to forego permissible methods of discovery simply because plaintiffs would prefer to provide factual evidence through a declaration."); *Cardinali*, 2018 WL 7502644, at *6 ("[A] would-be deponent cannot simply point to a written statement (whether in a declaration form or otherwise) to stifle an opponent's ability to conduct discovery on those facts."); *Zurich Am. Ins. Co. v. Sealink Serv. Corp.*, 2018 WL 10561907, at *1 (C.D. Cal. Mar. 16, 2018) (a party is not required "to take [responding party's] representations at face value and is entitled to test its veracity [through] discovery").

The Order also rests on an implicit premise: that there is something inherently suspect about directing discovery to a lawyer, here former opposing counsel. ECF 21 at 17:22-18:15. But as discussed, *supra* Section IV.A.1, discovery of opposing counsel is often appropriate and necessary in class actions, and the rules permit discovery from attorneys in appropriate circumstances. Fed. R. Civ. P. 26(b)(3), 30(a)(1), 45; *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588-89 (C.D. Cal. 2007) (a deponent's status as a lawyer does not automatically insulate him or her from deposition but is a circumstance to be considered). In any event, Krivoshey was not current counsel, and the subjects of the subpoena—fee arrangements and continuing involvement in litigation—are not privileged. *Clarke v. Amer. Commerce Nat. Bank*, 974 F.2d 127, 129-30 (9th Cir. 1992) (client identity, fee arrangements, and billing records are generally not privileged); *In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir. 1983) (fee arrangements are not confidential communications).

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

Finally, the Order relied on *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 7212308 (N.D. Cal. Dec. 13, 2016), but the circumstances found improper there are absent here. The subpoenas in *Beaver County* were "an attempt to fish around to see if there is a basis for bringing" a different lawsuit. The subpoenas were also overbroad, sought irrelevant information, and came with no explanation of their basis. *Id.* at *3-4. Here, by contrast, the subpoena sought information about whether former counsel remained involved, or financially interested, in the very case in which it issued, and the discovery was colorable and nonfrivolous. Under *Townsend* and *Mount Hope*, that forecloses a finding of improper purpose.

**2. No Undue Burden Was Imposed as a Matter of Law or Fact.**

Second, the subpoena did not, as a matter of law, impose an undue burden on Krivoshey. In the Rule 45(d)(1) sanctions context, "undue burden" refers to the burden "inflicted by *complying* with the subpoena." *Mount Hope*, 705 F.3d at 428. Thus "[t]he Ninth Circuit has interpreted Rule 45(d)(1) sanctions as applying primarily to reimburse a non-party's costs incurred in *complying* with a subpoena, not merely *litigating* a motion to quash." *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 WL 5011603, at *2 (N.D. Cal. Dec. 6, 2024) (Corley, J.) (citing *Mount Hope*, 705 F.3d at 427). Moving to quash a subpoena and moving for sanctions do not qualify. *See id.* (denying Rule 45(d)(1) sanctions for costs incurred in responding to motion to compel); *Ferguson v. Smith*, 2023 WL 8868815, at *3 (D. Or. Dec. 22, 2023) (denying Rule 45 fees for costs of moving to quash). A party seeking such sanctions must also submit "evidence" of such undue burden, "such as the time required to locate and produce the documents" and "the estimated cost." *SARA*, 2024 WL 5011603, at *2.

Here, Non-Parties incurred no costs of compliance, nor could they. The Magistrate Judge took the deposition off calendar only 8 days after service of the subpoena, and GT's withdrew the subpoena just 6 days later—all before any compliance occurred. ECF 5, 6. Nor did they submit any evidence of such an "undue burden." ECF 9. They cannot establish undue burden on this record. *See Ferguson*, 2023 WL 8868815, at *3 (denying Rule 45 fees where "the Court quashed the … subpoena on an expedited basis before [subpoenaed party] was required to respond").

The Magistrate Judge gave three reasons Movants "failed to take reasonable steps to avoid



ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

imposing an undue burden." ECF 21 at 15:24-16:20. None withstands scrutiny. First, the Order makes much of its conclusion that GT's lawyers did not seek this discovery from the *Patel* Plaintiffs first. ECF 21 at 3:15-4:2. But as set forth earlier, GT's *did* seek this discovery from Plaintiffs before serving the subpoenas. *See supra* Section II.D; ECF 23-1, ¶¶ 20-35; ECF 23-2, ¶¶ 2-5. Plaintiffs could not supply what Movants sought; their responses and testimony were incomplete and raised more questions than they answered. ECF 10-2, ¶¶ 2-3; ECF 23-1, ¶¶ 22-23, 29-36; ECF 23-2, ¶¶ 3-5. GT's had no choice but to subpoena former and current counsel.

Second, the Order found that Movants did not offer to narrow the scope of the subpoena. ECF 21 at 16:21-17:8. But as discussed *supra*, the scope of the subpoena was narrow to begin with (having only two document requests), and Movants did in fact attempt to confer with Non-Parties on a February 9 call; every attempt to negotiate was rebuffed by Krivoshey and his partner's immediate demands that GT's withdraw the subpoena and threats of sanctions. ECF 10-2, ¶¶ 11-12, 18; ECF 23-1, ¶ 45. Indeed, GT's successfully negotiated with the other subpoena recipients to produce only a declaration in response to the subpoena. ECF 10-2, ¶ 18; ECF 23-2 ¶ 17. Regardless, even overbreadth does not compel sanctions: a court "need not impose sanctions every time it finds a subpoena overbroad," because overbreadth "may sometimes result from normal advocacy." *Legal Voice*, 738 F.3d at 1185; *SARA*, 2024 WL 5011603, at *2.

Third, the Order faults Movants for declining to extend the compliance deadline. ECF 21 at 17:8-11. But the requested extension, made the day *after* the conferral, would push compliance past Judge Olguin's discovery cutoff, which GT's could not unilaterally change. ECF 10-2, ¶ 15; ECF 23-2, ¶ 16. GT's therefore offered an extension if the cutoff were extended by stipulation. *Id.* Within the cutoff, GT's readily accommodated scheduling requests; it extended the other subpoena recipients' compliance deadlines multiple times. ECF 23-2, ¶ 17. And although the Order lists several facts it says Elie-Meyers purportedly did not dispute (ECF 21 at 16:21-17:11), Elie-Meyers did dispute Krivoshey's account and addressed those events in detail. ECF 10-2, ¶¶ 11-15; ECF 23-2, ¶¶ 18-20. Movants took reasonable steps to avoid imposing undue burden.

This Court has declined to impose Rule 45 sanctions in circumstances involving a far greater burden than could have been imposed here. In *SARA*, the subpoenaing party served a non-

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

party *before* seeking the same documents from its opponent. It moved to compel the documents from the opposing party only after the non-party objected. *SARA*, 2024 WL 5011603, at *1. The Court nonetheless found the subpoenaing party tried, "albeit belatedly," to obtain the information from its opponent, and that it had turned back to the non-party only when that effort failed. *Id*. at *2. The Court also found no specific evidence of undue burden, such as the time required to locate and produce documents, the number of employees involved, the estimated cost, or the volume of records. *Id*. The Court noted the moving party is "not entitled to fees for responding to the motion to compel," because "Rule 45 sanctions are for costs to comply with a subpoena, not contest it." *Id.* at *3; *see Mount Hope*, 705 F.3d at 421, 427-29 (reversing Rule 45 fee award of more than $28,000, even though the subpoena had been quashed, because the cost of compliance was minimal and there was no showing the subpoena was facially defective or issued in bad faith).

This case is stronger on each point. First, GT's sought this discovery from Plaintiffs before serving the subpoenas, not after. Second, as noted above, Non-Parties offered no evidence of the time, cost, personnel, or volume of records compliance would have required. See generally ECF 9-1; ECF 28-1. Third, GT's did not even seek to enforce the subpoena--it withdrew it before any compliance occurred, so Krivoshey incurred no compliance costs. Indeed, Krivoshey made it clear from the outset that he would not comply and would instead move to quash and for sanctions. ECF 1-2, ¶¶ 11-12; ECF 23-2, ¶ 15; *see also* ECF 9 at 24:2-3. Like the non-party in *SARA*, Non-Parties' only "burden," was motion practice: a motion to quash a subpoena Non-Parties deemed invalid and, one day after the subpoena was withdrawn, a motion for sanctions.

**3. The Procedural Issues Do Not Support Sanctions.**

Third, the procedural issues the Order identifies do not justify sanctions. The Magistrate Judge premised the sanctions in part on four purported defects in the second subpoena: the subpoena did not provide Rule 45(a)(4) notice to Plaintiffs, was served on the registered agent of Krivoshey's firm rather than on Krivoshey personally, contained an ambiguous definition of "You," and was not accompanied by witness fees. ECF 21 at 14:10-15:23. None of these issues caused any harm, and none reflects bad faith. While they may have rendered the subpoena unenforceable, they do not support sanctions. Krivoshey had actual notice of the subpoena and a

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

full opportunity to respond, which he did by moving to quash.

*Mount Hope* holds that sanctions are inappropriate "absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith." 705 F.3d at 429. As discussed above, there was neither undue burden nor bad faith. And the only defect on the face of the subpoena was the definition of "You," which was promptly resolved, as discussed below. Notice, service, and witness fees concern how a subpoena is served, not what it says, and courts treat such defects as grounds to quash, not to sanction. For example, in *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *4 (N.D. Cal. Oct. 5, 2015) (Corley, J.), this Court found that the notice failure was not "a basis for quashing the subpoena" where the opposing party had notice and was not prejudiced. The subpoenas were quashed on other grounds, including improper service and the failure to tender witness fees. *Id*. at *5-6. It nonetheless denied sanctions, finding—as is the case here—that the information sought was relevant, so the subpoenas could not be said to have been issued for an improper purpose. *Id*. at *8. While the court acknowledged that the subpoenas were issued "'in a manner inconsistent with existing law,'" it explained that "courts have interpreted Rule 45(d)(1) sanctions as applying primarily to reimburse a non-party's costs incurred in complying with a subpoena, not merely litigating a motion to quash," and—as is the case here—noted that the subpoenaed party had not represented that it took any steps toward compliance. *Id.*

Each issue the Sanctions Order identifies fits that pattern. First, Plaintiffs had notice of the materially identical first subpoena, and Krivoshey received the second subpoena and moved to quash it. ECF 9-2; ECF 10-2, ¶¶ 4, 9; ECF 21 at 4:25-26; ECF 23-1, ¶ 37, Ex. 27A; ECF 23-2, ¶¶ 6, 12. The notice requirement protects the named parties, not the recipient, so it imposed no burden on Krivoshey. Fed. R. Civ. P. 45(a)(4) advisory committee's note to 2013 amendment; *see Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, *2 (N.D. Cal. May 8, 2013) (declining to quash where opposing counsel had notice and sufficient time to object and was not prejudiced); *Bell v. Lantz*, 2015 WL 6609290, *2 (S.D. Ind. Oct. 30, 2015) (declining sanctions where a second subpoena, served on the same third party and seeking the same documents, was not served on the party, because "[t]he technical violation . . . did not harm" the objecting party).

Second, at the outset of the meet-and-confer, Elie-Meyers confirmed the subpoena was

directed to Krivoshey (and addressed any ambiguity regarding the definition of "you"). ECF 21 at 7:22-23; ECF 23-2, ¶ 13. Any claimed confusion was swiftly remedied. Next, the absence of a witness fee caused no harm because the deposition was stayed once Krivoshey moved to quash and the subpoena was withdrawn before anyone attended. ECF 5; ECF 6.

Third, courts are split on whether Rule 45 requires personal service. *See Fujikura*, 2015 WL 5782351, at *5-6 (noting that most courts require personal service, but a "growing—although still minority—trend" permits substitute service reasonably calculated to provide notice and an opportunity to object or file a motion to quash); *Casun Invest, A.G. v. Ponder*, 2019 WL 2358390, at *7 (D. Nev. June 4, 2019). Movants attempted personal service four times before serving the firm's registered agent. ECF 10-2, ¶¶ 5-9. Even if that choice rendered the subpoena invalid, a good-faith position within a recognized split of authority does not support sanctions. *See Casun*, 2019 WL 2358390, at *7 (declining to sanction the manner of service given the split of authority, where counsel had a good-faith basis for asserting service was proper and the process server had attempted personal service). Adopting a position other district courts have taken is not "inconsistent with existing law"; it is protected advocacy. *See Mount Hope*, 705 F.3d at 428.

The Order's conclusion that Movants "knowingly issued a Subpoena that contained several defects" (ECF 21 at 15:19-20) does not withstand scrutiny. The only thing Movants "knew" was their legal position: that notice of the materially identical first subpoena satisfied Rule 45(a)(4), and that service on the registered agent of the firm Krivoshey owns reached him. Movants disclosed and defended those positions openly. "[T]here is nothing sanctionable in such advocacy, even if it turns out that [the issuer] had a losing legal position." *Mount Hope*, 705 F.3d at 429. The remaining defects were inadvertent. The Order itself calls the definition of "You" a "mistake." ECF 21 at 15:2. The witness fee was omitted amid repeated service attempts, on a subpoena that offered a remote option so no travel would have been required, and nothing in the record suggests the omission was deliberate. ECF 23-1, Ex. 27B.

At most, the defects rendered the second subpoena unenforceable. A defective subpoena compels nothing. *See Fujikura*, 2015 WL 5782351, at *5; *S.F. Bay Area Rapid Transit Dist. v. Spencer*, No. C-04-04632-SI, 2006 WL 2734284, at *1 (N.D. Cal. Sept. 25, 2006) (quashing

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

subpoenas "without prejudice to re-service"); *Netlist, Inc. v. Montage Tech., Inc.,* 2023 WL 2940043, at *2 (N.D. Cal. Feb. 24, 2023) (denying enforcement for a service defect). Krivoshey could have treated the subpoena as invalid. No one sought to compel compliance. He instead chose to move to quash and then for sanctions. There is no basis for awarding more than $100,000 in sanctions based on an instrument that, at most, was invalid and imposed no compliance burden.

**C. The Rule 26(g) Sanction Applies the Wrong Standard to the Wrong Conduct.**

The Rule 26(g) sanction is derivative of the Rule 45 sanctions. The Order's entire Rule 26(g) analysis is a single passage: "[a]s discussed, the Second Subpoena was a facially defective subpoena that imposed an undue burden on the Non-Parties and was issued for an improper purpose. The Second Subpoena thus violates Rule 26." ECF 21 at 19:5-7. Because those findings fail for the reasons above, the Rule 26(g) sanction fails with them.

The ruling also misapplies Rule 26(g). The certification Rule 26 addresses is the discovery request itself, and it is judged objectively at the time of signing. Fed. R. Civ. P. 26(g)(1)(B), *id.* advisory committee's note to 1983 amendment; *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd. P'ship*, 76 F.3d 1003, 1007 (9th Cir. 1996). The question is whether the request was warranted, not interposed for an improper purpose, and not unreasonable or unduly burdensome. Most of the issues the Order relies on (notice to parties, the method of service, and tender of fees) concern how the subpoena was served, which happened *after* Harper signed it. They say nothing about whether the request he certified was objectively reasonable. Seeking fee and relationship evidence bearing on Rule 23 adequacy was, at a minimum, non-frivolous, so it cannot have been served for an improper purpose. *See supra* Section IV.B.1; *Townsend*, 929 F.2d at 1362.

Moreover, the subpoena was substantially justified. A position is substantially justified where reasonable people could differ. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Order found otherwise only because Harper "offer[ed] no explanation for why the Second Subpoena did not conform to existing rules of law." ECF 21 at 19:12-15. But the explanation was before the court. First, Harper's declaration expressly incorporated the concurrently filed Elie-Meyers declaration and stated that the subpoenas were issued at his direction to address Judge Olguin's

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

adequacy concerns. ECF 10-1, ¶¶ 2-3 (citing *Patel* ECF 129). Second, the Elie-Meyers declaration, on which the Order itself relied (ECF 21 at 6:1, 14:20-21), explained each step: GT's first sought the information from Plaintiffs through written discovery and depositions (ECF 10-2, ¶¶ 2-3); served Plaintiffs with notice of the subpoena before attempting service (¶ 4); tried four times to serve Krivoshey before turning to his firm's registered agent (¶¶ 5-9); issued the second subpoena, materially identical to the first except for a later date to allow reasonable time to comply (¶ 9); used a definition of "you" that resulted from an internal miscommunication (¶ 9); and believed the subpoena fell within the reopened discovery (¶ 13). Third, the supplemental declarations provide abundant additional clarification. ECF 23-1, ¶¶ 2-39, 23-2, ¶¶ 2-22.

## V. <u>THE FEE AWARD SHOULD BE VACATED OR, AT A MINIMUM, REDUCED</u>

Movants maintain that no sanction, monetary or prospective, is warranted. Even had there been any ground for a fee award, it was miscalculated on several grounds.[5]

### A. The Fee Award Does Not Meet the But-For Causation Requirement

A compensatory fee sanction "is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the [misconduct]." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017); Fed. R. Civ. P. 26(g)(3) (sanction may include "reasonable expenses, including attorney's fees, caused by the violation"). An award that "extends further than that–to fees that would have been incurred without the misconduct. . . crosses the boundary from compensation to punishment." *Goodyear*, 581 U.S. at 108. The Fee Order never asked what the sanctioned conduct caused. Instead, it awarded every hour requested. ECF 35 at 11:14-16. And Non-Parties defended the full lodestar on the grounds that its "ultimate goal" was "to encourage better behavior going forward." ECF 33 at 3:24-26. That is deterrence, not compensation, and *Goodyear* does not permit it.

---

[5] The Order's CLE sanction is also improper. It rests in part on criticisms of counsel in unrelated cases, ECF 21 at 20:14-27, which have no bearing on the subpoena at issue here. And the Order relies on *Hawkins v. The Kroger Co.*, No. 15-cv-2320-JM (AHG), 2020 WL 6150040 (S.D. Cal. Oct. 20, 2020), without acknowledging that the court there vacated the identical CLE sanction against Harper, holding that it "cannot stand." *See Hawkins*, at * 10.

The record shows that most of the fees would have been incurred regardless of the procedural issues the Sanctions Order identified. Non-Parties moved to quash on substantive grounds: that the subpoena exceeded the scope of reopened discovery, sought privileged material, and sought information available from Plaintiffs' counsel. They described those grounds as "independently sufficient" to quash the subpoena apart from any procedural defect. ECF 1 at 3:3-18, 17:8-21, 18:12-20:27. The sanctions motion likewise led with those substantive objections and treated the procedural defects as secondary: "additional" matters that, "[i]n combination," were "evidence of bad faith." ECF 9 at 1:17-2:14, 18:22-19:5. By Non-Parties' own account, then, the procedural defects drove little of their work on either motion. That matters because more than half the award, $50,865, compensates the sanctions motion alone. ECF 28-1, ¶ 12. A fee sanction is limited to fees incurred "solely because of" the sanctionable conduct. *Goodyear*, 581 U.S. at 108, and must be tied to "the specific conduct" found sanctionable. *Xue Lu v. United States*, 921 F.3d 850, 854 (9th Cir. 2019). Thus, if the Court sets aside any ground on which the Sanctions Order rests, the award must be recalculated to the fees caused by whatever conduct remains sanctionable. And if only the procedural-defect findings survived, the fees attributable to them would be a small fraction of the award. The Fee Order makes no such allocation.

Nor did any of the award compensate compliance. As shown above, Rule 45(d)(1) sanctions serve primarily to reimburse the costs of complying with a subpoena, but Non-Parties produced nothing and never sat for a deposition, which was stayed and then withdrawn. ECF 5; ECF 6; ECF 10-2, ¶ 16. Here, the award compensates only objecting to and litigating the subpoena, contrary to Ninth Circuit authority. ECF 28-1, ¶ 12; *Mount Hope*, 705 F.3d at 429.

### B. The Fee Order Applied the Wrong Measure for Self-Represented Attorneys

The award compensates Krivoshey for his own time, 57.1 of the 101.2 hours, and his firm for time billed by its own partners. ECF 35 at 6:1-12, 10 n.2. Rules 45(d)(1) and 26(g)(3) authorize "attorney's fees," and that term "assumes an agency relationship" between attorney and client that does not exist when a lawyer represents himself. *Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991); *see also Elwood v. Drescher*, 456 F.3d 943, 947-48 (9th Cir. 2006), *abrogated on other*

Rosing Pott & Strohbehn LLP
770 1st Avenue, Suite 200
San Diego, California 92101

*grounds by Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655 (9th Cir. 2020). Applying Ninth Circuit law in a case from this District, the Federal Circuit held that materially identical language in Rule 37 "does not allow a pro se lawyer to receive fees for his own time." *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002), accord. *Massengale v. Ray*, 267 F.3d 1298, 1302-03 (11th Cir. 2001) (Rule 11).

The Fee Order relied on *Black v. Wrigley*, 2019 WL 2717212, at *9 (S.D. Cal. June 28, 2019), and on *Pickholtz*'s discussion of inherent power. ECF 35 at 4:20-5:27. But *Pickholtz* permits a fee-based award to a pro se attorney only under the court's inherent power, which requires bad faith, 284 F.3d at 1377-78, and the Sanctions Order expressly declined to reach inherent power. ECF 21 at 13:10-13. The Fee Order's reasoning that "[t]ime is money," which echoes the Non-Parties' description of their fees as "the value of lost time," ECF 9 at 22:10-11, describes lost earnings, which Rule 45(d)(1) treats as a separate category, requiring proof of income actually lost--the Non-Parties offered none. The Fee Order instead applied billing rates to hours. Rule 26(g)(3) does not authorize lost earnings at all.[6]

## VI. CONCLUSION AND REQUEST FOR ORAL ARGUMENT

Movants respectfully request that the Court vacate the Sanctions Order (ECF 21) and the Fee Order (ECF 35) and deny Non-Parties' Motion for Sanctions (ECF 9). Movants respectfully request oral argument given the significance of the sanctions, including the personal findings and CLE requirements imposed on individual attorneys.

ROSING POTT & STROHBEHN LLP

Dated: October 2, 2026 By: */s/ Heather L. Rosing*

Heather L. Rosing
Leah A. Lorenz
Attorneys for Non-Parties, Jacob M. Harper and Joseph Elie-Meyers

[6] Movants do not reargue the hourly rates or individual time entries here, but preserve the objections raised below. ECF 29.

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

**CERTIFICATE OF SERVICE**

I am a citizen of the United States, over the age of 18, and not a party to this action. My business address is 770 1st Avenue, Suite 200, San Diego, CA 92101.

On October 2, 2026, I electronically filed the foregoing **CONSOLIDATED SUPPLEMENTAL MOTION CHALLENGING RULINGS OF JUNE 18, 2026 [ECF 21] AND AUGUST 18, 2026 [ECF 35]** in this matter via the district court's CM/ECF system. I certify that all parties to this action are registered CM/ECF users and will be served electronically through CM/ECF, service list attached.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 2, 2026, at San Diego, California.

*/s/ Maria E. Suarez-Lopez*
Maria E. Suarez-Lopez

ROSING POTT & STROHBEHN LLP
770 1ST AVENUE, SUITE 200
SAN DIEGO, CALIFORNIA 92101

**SERVICE LIST**

***Amit Patel, et al. v. GT's Living Foods, LLC***

| | |
|---|---|
| **Case No. 3:26-mc-80036-TSH**Simon Carlo Franzini<br>Gabriela Zachiah Doble<br>Martin Brenner<br>Dovel & Luner, LLP<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, CA 90401<br>(310) 656-7066<br>simon@dovel.com<br>gabe@dovel.com<br>martin@dovel.com | *Counsel for Plaintiff Amit Patel, Lauren Schmidt and Christopher Nunez on behalf of Themselves and all others similarly situated* |
| Jacob Michael Harper<br>Heather F. Canner<br>Joseph Elie-Meyers<br>Peter Bae<br>Davis Wright Tremaine LLP<br>350 South Grand Avenue, 27th Floor<br>Los Angeles, CA 90071<br>(615) 714-1996<br>jacobharmer@dwt.com<br>heathercanner@dwt.com<br>peterbae@dwt.com | *Counsel for Defendant GT's Living Foods, LLC* |
| Yeremey O. Krivoshey<br>Smith Krivoshey, PC<br>28 Geary Street, Suite 650<br>San Francisco, CA 94108<br>(415) 839-7077<br>Fax: (888) 410-0415<br>yeremey@skclassactions.com | *Non-Party, Movant* |
| Joel Dashiell Smith<br>Smith Krivoshey, PC<br>867 Boylston Street, 5th Floor<br>Suite 1520<br>Boston, MA 02116<br>(617) 377-7404<br>Email: joel@skclassactions.com | *Non-Party, Movant* |