**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street, Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>Defendant. | MIS. Case No. 26-mc-80036-TSH<br><br>(CASE NO. 2:19-cv-10920-FMO-GJS Pending in the Central District of California)<br><br>**NON-PARTIES' CONSOLIDATED OPPOSITION TO THE SANCTIONED ATTORNEYS':**<br><br>**1) MOTION FOR RELIEF FROM NONDISTPOSTIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (ECF NO. 23);**<br><br>**2) MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE OR, IN THE ALTERNATIVE, FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDERS OF MAGISTRATE JUDGE (ECF NO. 40); AND**<br><br>**3) CONSOLIDATED SUPPLEMENTAL MOTION CHALLENGING JUDGE HIXSON'S SANCTION AND FEE ORDERS (ECF NO. 43-3)** |

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION AND BRIEF STATEMENT OF FACTS ........ 1

II. THE SANCTIONED ATTORNEYS' CONFLICTING MOTIONS FOR RELIEF FROM THE SANCTION AND FEE ORDERS, AND IMPROPER AUGMENTATION OF THE RECORD WITHOUT LEAVE ........ 3

III. THE SANCTIONED ATTORNEYS SEEK APPLICATION OF THE WRONG STANDARD OF REVIEW ........ 3

IV. THE MOTION SHOULD BE DENIED IN FULL OR IN PART ON PROCEDURAL GROUNDS ........ 6

A. Most Of The Evidence The Sanctioned Attorneys Cite In Support Of Their Motion Is Subject To Exclusion ........ 6

B. Under Local Rule 72-2(d), The Motion Seeking Review Of The Sanction Order Is Already Deemed Denied ........ 8

V. THE SANCTIONED ATTORNEYS HAVE NOT MET THEIR BURDEN AS TO THE SANCTION ORDER ........ 8

A. The Sanctioned Attorneys Identify No "Clear Error" Concerning The Facts ........ 8

1. Bogus Excuse No. 1: The Sanctioned Attorneys "Exhausted" Party Discovery Before Serving The Subpoenas ........ 8

2. Bogus Excuse No. 2: The Sanctioned Attorneys Offered To Narrow The Scope Of The Subpoena ........ 10

3. Bogus Excuse No. 3: Judge Olguin "Directed" The Sanctioned Attorneys To Serve The Subpoenas ........ 11

4. Bogus Excuse No. 4: The Sanctioned Attorneys Withdrew The Subpoena Before Compliance Was Required ........ 13

5. Bogus Excuse No. 5: Discovery Raised Colorable Questions About Whether Mr. Krivoshey Continued To Be Involved In *Patel* ........ 14

B. The Sanctioned Attorneys Fail To Establish The Sanction Order Was Contrary To The Law ........ 15

1. Depositions Of Opposing Counsel Are Not Routine And "Ordinary Advocacy" ........ 15

2. The Sanctioned Attorneys' Own Authorities Show Sanctions Are Not Limited To Costs Of Complying With The Subpoena .......... 16

3. The Sanctioned Attorneys Admit That Under *Mount Hope*, A "Facially Defective" Subpoena Is Sanctionable .......... 18

4. The Sanctioned Attorneys' Arguments Concerning Rule 26(g) Lack Merit And Are Waived .......... 19

C. The Sanctioned Attorneys' Argument Concerning The CLE Sanction Is Waived, Misleading, And Lacks Merit .......... 20

VI. THE SANCTIONED ATTORNEYS HAVE NOT MET THEIR BURDEN AS TO THE FEE ORDER .......... 21

A. The Argument That The Fees Are Punitive Rather Than Compensatory Is Waived And Lacks Merit .......... 22

B. Judge Hixson Correctly Rejected The Argument That Self-Represented Attorneys May Not Recover Sanctions .......... 23

VII. CIVIL LOCAL RULE 7-3(A) OBJECTIONS TO EVIDENCE AND REQUEST FOR EXCLUSION, OR IN THE ALTERNATIVE, REQUEST TO AUGMENT THE RECORD TO RESPOND TO THE SANCTIONED ATTORNEYS' NEW DECLARATIONS AND EXHIBITS .......... 24

VIII. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) .......... 4

*Batture Fleet, Inc. v. Browner*,
2000 WL 748093 (E.D. La. June 8, 2000) .......... 5

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 WL 7212308 (N.D. Cal. Dec. 13, 2016) .......... 17, 19

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) .......... 4, 5

*Black v. Wrigley*,
2019 WL 2717212 (S.D. Cal. June 28, 2019) .......... 23

*Burdick v. Comm'r Internal Rev. Serv.*,
979 F.2d 1369 (9th Cir.1992) .......... 1

*Carehouse Convalescent Hosp. v. Super. Ct.*,
143 Cal. App. 4th 1558 (2006) .......... 1

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 24

*CornerStone Staffing Solutions, Inc. v. James*,
2013 WL 12373784 (N.D. Cal. Feb. 22, 2013) .......... 6

*CPC Patent Techs. Pty Ltd. v. Apple, Inc.*,
34 F.4th 801 (9th Cir. 2022) .......... 5

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
2020 WL 6290374 (N.D. Cal. Oct. 27, 2020) .......... 21

*Duong v. Groundhog Enters., Inc.*,
2020 WL 2041939 (C.D. Cal. Feb. 28, 2020) .......... Passim

*E.D. v. Cnty. Of Contra Costa*,
2022 WL 1015992 (N.D. Cal. Apr. 5, 2022) .......... 6

*Elwood v. Drescher*,
456 F.3d 943 (9th Cir. 2006) .......... 23

*Equal Emp. Opportunity Comm'n v. Dillon Co.*, 2010 WL 4134696 (D. Colo. Oct. 12, 2010) ... 14

*Estate of Conners v. O'Connor*, 6 F.3d 656 (9th Cir. 1993) ... 5

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 2023 WL 2477889 (S.D.N.Y. Mar. 13, 2023) ... 6

*Ferguson v. Smith*, 2023 WL 8868815 (D. Or. Dec. 22, 2023) ... 17

*Flam v. Flam*, 788 F.3d 1043 (9th Cir. 2015) ... 5

*Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ... 17, 18, 19

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ... 22

*Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633 (9th Cir.1988) ... 6, 19, 22

*Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236 (9th Cir. 1991) ... 4, 5

*Hawkins v. The Kroger Co.*, 2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ... 2, 20, 21

*Hill v. Robert's Am. Gourmet Food, LLC*, 2013 WL 5118943 (N.D. Cal. Sept. 13, 2013) ... 17, 23

*In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020) ... 5, 6

*In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023) ... 24

*In re Meshbahi*, 280 Fed. Appx. 592 (9th Cir. 2008) ... 7

*In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072 (9th Cir. 2015) ... 1

*In re Vialet*, 460 Fed. Appx. 30 (2d Cir. 2012) ... 21

*JW Gaming Dev., LLC v. James*,
544 F. Supp. 3d 903 (N.D. Cal. 2021) ........................................ 5

*Kay v. Ehrler*,
499 U.S. 432 (1991) ........................................ 23

*Koji IP, LLC v. Renesas Electronics Am., Inc.*,
2025 WL 980796 (N.D. Cal. Mar. 31, 2025) ........................................ 21

*Laatz v. Zazzle, Inc.*,
2024 WL 4487355 (N.D. Cal. Sept. 5, 2024) ........................................ 3, 4, 8

*Lu v. U.S.*,
921 F.3d 850 (9th Cir. 2019) ........................................ 22

*Maisonville v. F2 America, Inc.*,
902 F.2d 746 (9th Cir. 1990) ........................................ 4, 5

*Massengale v. Ray*,
267 F.3d 1298 (11th Cir. 2001) ........................................ 23

*Monster Energy Co v. Vital Pharm, Inc.*,
2020 WL 2405295 (C.D. Cal. Mar. 10, 2020) ........................................ 1, 16

*Mount Hope Church v. Bash Back!*,
705 F.3d 418 (9th Cir. 2012) ........................................ 18

*NCAA Student-Athlete Name & Likeness Licensing Litig.*,
2013 WL 1285588 (N.D. Cal. Mar. 28, 2013) ........................................ 4, 19

*Optrics Inc. v. Barracuda Networks Inc.*,
2020 WL 1815690 (N.D. Cal. Feb. 28, 2020) ........................................ 5

*Oregon RSA No. 6 v. Castle Rock Cellular of Or. Ltd. P'ship*,
76 F.3d 1003 (9th Cir. 1996) ........................................ 19

*Pickholtz v. Rainbow Techs., Inc.*,
284 F.3d 1365 (Fed. Cir. 2002) ........................................ 23, 24

*Salmon v. CRST Expedited, Inc.*,
2016 WL 3945362 (N.D. Okla. July 19, 2016) ........................................ 21

*Scientific Applications & Research Assocs. (SARA), Inc. v. Zipline Int'l., Inc.*,
2024 WL 5011603 (N.D. Cal. Dec. 6, 2024) ........................................ 16, 17, 18

*SEC v. CMKM Diamonds, Inc.*,
729 F.3d 1248 (9th Cir. 2013) ........................................ 5

*Shaw v. DePhillips*,
2022 WL 420941 (S.D. Cal. Feb. 11, 2022) .......... 4

*Silver v. BA Sports Nutrition, LLC*,
2020 WL 6342939 (N.D. Cal. Oct. 29, 2020) .......... 16

*Temple v. WISAP USA in Texas*,
152 F.R.D. 591 (D. Neb. 1993) .......... 5

*Townsend v. Holman Consulting Corp*.,
929 F.2d 1358 (9th Cir. 1990) .......... 20

*Tri-Valley CARES v. U.S. Dep't of Energy*,
671 F.3d 1113 (9th Cir. 2012) .......... 7

*U.S. v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, Cal.*,
2014 WL 325151 (N.D. Cal. Jan. 29, 2014) .......... 4, 6

*Zhu v. Li*,
2021 WL 3910720 (N.D. Cal. Sept. 1, 2021) .......... 16

**Statutes**

28 U.S.C. § 636(b)(1)(A) .......... 4

28 U.S.C. § 1782 .......... 6

**Rules**

Fed. R. Civ. P. 26 .......... 20, 23

Fed. R. Civ. P. 45 .......... 24

**Other Authorities**

Civil L.R. 1-4 .......... 7

Civil L.R. 72-3 .......... 7

## I. Introduction And Brief Statement Of Facts

Magistrate Judge Hixson's Sanction and Fee Orders were preceded by nearly 700 pages of briefing and exhibits detailing events that began in 2019 and culminated in the events at issue here.[1] *See* ECF Nos. 1-2, 6, 9-10, 13, 28-29, 33. The Sanction Order itself was twenty-three pages long, meticulously cited, and reflects the extensive record created in connection with the motion for sanctions. *See* ECF No. 21. Under the governing standard of review, the Court can only overrule Judge Hixson's orders if it "is left with a definite and firm conviction" that he erred. *Burdick v. Comm'r Internal Rev. Serv.,* 979 F.2d 1369, 1370 (9th Cir.1992). This same standard will govern on appeal. *See In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1076 (9th Cir. 2015).

That is an impossible burden to meet here because the facts are extreme and largely undisputed. This is a case study in the principle that depositions of opposing counsel "may pose a potent tool to harass an opponent." *Carehouse Convalescent Hosp. v. Super. Ct.*, 143 Cal. App. 4th 1558, 1563 (2006); *see also Monster Energy Co v. Vital Pharm, Inc*., 2020 WL 2405295 at *6-7 (C.D. Cal. Mar. 10, 2020). In February 2026, the Sanctioned Attorneys Harper and Elie-Meyers served subpoenas at the homes of attorneys at nearly every law firm that ever represented the plaintiffs in the underlying *Patel* matter, past and present. ECF Nos. 9-2. This included the Non-Parties Smith Krivoshey PC and Mr. Krivoshey, who had withdrawn more than a year before. Sanction Order, at 2:21-22. At the time, fact discovery was limited to a few recently added plaintiffs (who were never represented by the Non-Parties), and Mr. Elie-Meyers lied about that fact during the meet-and-confer over the subpoena. *See id.*, at 17:5-6. He refused to disclose the purpose of the subpoena or whether any of the requested documents had already been obtained by the plaintiffs. *See id.* at 17:1-2; 17:6-8; ECF No. 9-1 at ¶ 37. The Non-Parties had to ask Judge Hixson to rule on their motion to quash on shortened time because the Sanctioned Attorneys would not continue the deposition date, and tried to force Mr. Krivoshey to appear at the deposition before the motion to quash could be decided. *See* Sanction Order, at 17:9-10. It later came to light that the Sanctioned

[1] In this brief, "Sanction Order" refers to Judge Hixson's June 18, 2026, Order (ECF No. 21), and "Fee Order" refers to the August 18, 2026, Order (ECF No. 35). For consistency with Judge Hixson's orders, Mr. Harper and Mr. Elie-Meyers are referred by name, or collectively as the "Sanctioned Attorneys."

Attorneys "knew" that the time to enforce the subpoena had passed under the *Patel* discovery deadlines, but they never disclosed that fact (nor do they disclose that fact in their opening brief here). *See* ECF No. 13-2, at 3:8-16; 5:1-5. The whole time, the evidence that the Sanctioned Attorneys sought was always available from the *Patel* plaintiffs or their counsel, but they made little effort to get that evidence until the Non-Parties stated in their motion to quash that they would be seeking sanctions. *See* Sanction Order, at 16:16-20.

The Sanctioned Attorneys primarily argue that they were "obligated" to seek the depositions of nearly every former and current opposing counsel in the *Patel* matter to address Rule 23(a)(4)'s adequacy requirement. That farfetched position ignores the undisputed facts cited above and the standards for deposing opposing counsel. The adequacy argument also is a pretext, because around the same time that Sanctioned Attorney Harper authorized the subpoenas at issue here, he served subpoenas on the homes of two state government attorneys who were opposing counsel in another, *non-class action* matter. ECF No. 28-6, at 9-10. As here, he sought information that was available from the plaintiff, in that case, the State of California. *Id.* at 9. Depositions of opposing counsel are supposed to be rare, not routine. But Mr. Harper proudly touts his "unorthodox tactics" to prospective clients (ECF No. 9-12 at 1), and Judge Hixson properly took into account Mr. Harper's long history of sanctions and problem behavior, including in this district. *See* Sanction Order, at 20:14-24.

At this point, two different judges have determined that monetary sanctions appear to be no deterrent for Mr. Harper. *See* Sanction Order, at 20:24-26; *Hawkins v. Kroger Co.*, 2020 WL 6150040 at *4 (S.D. Cal. Oct. 20, 2020) ("Magistrate Judge Goddard determined that monetary sanctions alone would be insufficient to address the discovery abuses"). His problem behavior continues here, because the Consolidated Supplemental Motion ("Consolidated Motion" or "Mot.") rests on a series of independently sanctionable half-truths, bogus legal arguments, and Local Rule violations. Corrective action is necessary to encourage the Sanctioned Attorneys to do better going forward and to compensate for their misconduct. Granting their motion would only send a message that what happened here is acceptable. It is not.

**II. The Sanctioned Attorneys' Conflicting Motions For Relief From The Sanction And Fee Orders, And Improper Augmentation Of The Record Without Leave**

The Sanctioned Attorneys filed three motions for relief related to the Sanction and Fee orders, taking inconsistent positions and seeking inconsistent relief. First, on July 2, 2026, the Sanctioned Attorneys filed a "Motion for Relief From Nondispositive Pretrial Order of Magistrate Judge," coupled with two new declarations from the Sanctioned Attorneys and over 900 pages of exhibits. *See* ECF No. 23. The Sanctioned Attorneys did not argue that the Sanction Order was subject to de novo review and did not explain the legal basis for submitting the new evidence. *See generally id.* Two weeks passed from the filing of the July 2, 2026 motion without an order from the Court denying the motion or setting a briefing schedule. *See* Civ. Local Rule 72-2(d).

Second, on September 1, 2026, the Sanctioned Attorneys filed a "Motion For De Novo Determination Of Dispositive Matter Referred To Magistrate Judge Or, In The Alternative, For Relief From Nondispositive Pretrial Orders Of Magistrate Judge." ECF No. 40. The second motion sought "review [of] the Fee Order de novo." ECF No. 40 at 2:25; *see also id.* at 2:26-3:14 (addressing Fee Order only); 2:4-7 ("mov[ing] for de novo determination of, and relief from, the August 18, 2026, order …determining the amount of attorneys' fees awarded as sanctions"). This motion included a section titled "Objections and Requests" but did not include a request to augment the record pursuant to Local Rule 72-3(b), and the motion itself included no additional evidence. *See generally id.*

Third, on October 2, 2026, the Sanctioned Attorneys filed a "Consolidated Supplemental Motion Challenging Rulings of June 18, 2026 [ECF 21] and August 18, 2026 [ECF 35]," directed at both the Sanction and Fee Orders, and claiming both are subject to de novo review. ECF No. 43-3. Here again, the motion was not accompanied by any request to augment the record, while relying extensively on the two, new declarations first submitted with the July 2, 2026 motion.

Pursuant to this Court's order (*see* ECF No. 42), the Non-Parties were required to submit a consolidated response to the three, above-described motions, and they do so here.

**III. The Sanctioned Attorneys Seek Application Of The Wrong Standard Of Review**

The standard of review over a magistrate judge's nondispositive pretrial order is "highly deferential." *Laatz v. Zazzle, Inc.*, 2024 WL 4487355 at *1 (N.D. Cal. Sept. 5, 2024); *see also* ECF

No. 23 at 3:11 (Sanctioned Attorneys citing *Laatz* for the correct standard of review). The order "will be modified or set aside only if 'clearly erroneous or contrary to law.'" *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 984 (N.D. Cal. 2012) (Koh, J.) (quoting 28 U.S.C. 636(b)(1)(A)). "In reviewing for clear error, the district judge may not simply substitute his or her judgment for that of the magistrate judge." *Id.* (citing *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 239, 241 (9th Cir. 1991)). "Rather, a magistrate judge's non-dispositive ruling is clearly erroneous only when the district court is left with a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation omitted). The Sanctioned Attorneys may not make new arguments that they did not make to Judge Hixson. *See U.S. v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, California*, 2014 WL 325151, at *2 (N.D. Cal. Jan. 29, 2014) ("*Real Property*").

Here, to evade the standard of review, the Sanctioned Attorneys argue that Judge Hixson's orders are "dispositive in nature and effect and [therefore] are subject to de novo review." Mot., at 2:7-8. But that is not what they said before. They already admitted that Judge Hixson's Sanction Order was a "*non-dispositive pretrial order*." *See* ECF No. 23 ("Motion For Relief From Nondispositive Pretrial Order Of Magistrate Judge") (emphasis added). They had it right the first time; their current position is wrong as to both the Sanction and Fee Orders.

The Ninth Circuit has repeatedly held that "sanctions are non-dispositive matters which may be imposed directly by a magistrate" and are subject to the deferential "clearly erroneous" standard of review. *Grimes*, 951 F.2d at 239, 241; *see also Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747–48 (9th Cir. 1990) (sanction imposed pursuant to Rule 11 non-dispositive); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991) (rejecting Constitutional challenge to the application of the "clearly erroneous" standard of review to magistrate sanction orders). Countless district courts have applied this rule to sanction and fee orders. *See Apple*, 888 F. Supp. 2d at 987-89 (analyzing standard of review over magistrate judge's sanction order); *accord*, *e.g.*, *Shaw v. DePhillips*, 2022 WL 420941, at *1 (S.D. Cal. Feb. 11, 2022). This includes circumstances where a party serves abusive subpoenas on third parties. *See NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 WL 1285588 at *1 (N.D. Cal. Mar. 28, 2013) (applying "clearly erroneous and contrary to law" standard where sanctioned party failed to take "reasonable steps to avoid imposing an undue burden on the

nonparties"); *accord Batture Fleet, Inc. v. Browner*, 2000 WL 748093, at *1 (E.D. La. June 8, 2000).

The Sanctioned Attorneys cite no cases addressing a magistrate judge's sanction order.[2] Instead, they advance three meritless arguments. First, they say that under *Estate of Conners v. O'Connor*, 6 F.3d 656, 658-59 (9th Cir. 1993), a "fee motion is 'neither pretrial' nor 'nondispositive'" under any circumstances. Mot., at 11:6. This argument about *fees* has nothing to do with the Sanction Order, and it is wrong. *Estate of Conners* involved a post-judgement order on attorney's fees for a prevailing party in a § 1983 action, so on its face, it was not a "pretrial order," did not involve a discovery dispute, and did not involve sanctions. *See id.* at 658; *see also JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d 903, 925 (N.D. Cal. 2021) (Orrick, J.) (distinguishing *Estate of Conners* and rejecting argument that it barred magistrate judge from resolving discovery dispute). The Sanctioned Attorneys' interpretation contradicts *Grimes*, *Maisonville*, and *Bhan*, where in each case, the Ninth Circuit held that the magistrate orders awarding monetary sanctions were non-dispositive orders. *See Grimes*, 951 F.2d at 240; *Maisonville*, 902 F.2d at 746-47; *Bhan*, 929 F.2d at 1414. Courts have distinguished or declined to follow *Estate of Conners* in circumstances like this. *See JW Gaming*, 544 F. Supp. 3d at 925; *Temple v. WISAP USA in Texas*, 152 F.R.D. 591, 596 (D. Neb. 1993).

Second, the Sanctioned Attorneys argue that "a decision that 'effectively denies the ultimate relief sought by a party or disposes of any claims or defenses' is dispositive." Mot., at 10:22-23 (quoting *CPC Patent Techs*, 34 F.4th at 807). That rule is inapplicable here. "A motion to quash typically involves a subpoena for discovery in connection with a pending lawsuit. In that situation, the motion is non-dispositive because it disposes of an ancillary discovery issue, and not a party's claim or defense." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 880 (N.D. Cal. 2020). Those are the facts here: the Sanction and Fee Orders were ancillary to the motion to quash, which in turn, was ancillary to the underlying claims and defenses in the *Patel* matter. *See Optrics Inc. v. Barracuda Networks Inc.*, 2020 WL 1815690 at *3 (N.D. Cal. Feb. 28, 2020) (sanction proceedings

[2] *See CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807 (9th Cir. 2022) (reviewing order denying assistance with foreign discovery); *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013) (reviewing order on motion to stay); *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) (reviewing remand order).

are part of the court's "ancillary jurisdiction"). Even the Sanctioned Attorneys describe this dispute as an "ancillary proceeding" in their brief. Mot., at 8:9-10.[3]

Third, the Sanctioned Attorneys' argument that "no party consented to final disposition by a Magistrate Judge" lacks merit because they never moved to withdraw the referral to a magistrate judge, and they waived this argument by not raising it before. *See E.D. v. Cnty. Of Contra Costa*, 2022 WL 1015992 at *2 (N.D. Cal. Apr. 5, 2022) (explaining procedure and standards for challenging referral to magistrate judge); *Real Property*, 2014 WL 325151, at *2 ("District courts need not, and ordinarily should not address arguments raised for the first time in an objection to a magistrate judge's order"). The Sanctioned Attorneys would have had no problem with the referral if Judge Hixson had ruled in their favor, and their dissatisfaction with his orders cannot support an after-the-fact challenge now. *See Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir.1988) o*verruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir.1992) ("We do not believe that the Magistrates Act was intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.").

## IV. The Motion Should Be Denied In Full Or In Part On Procedural Grounds

### A. Most Of The Evidence The Sanctioned Attorneys Cite In Support Of Their Motion Is Subject To Exclusion

A party may not rely on new evidence or arguments when seeking relief from a nondispositive pretrial order of a magistrate judge. *See Greenhow*, 863 F.2d at 638; *CornerStone Staffing Solutions, Inc. v. James*, 2013 WL 12373784 at *2 (N.D. Cal. Feb. 22, 2013) ("parties objecting to a magistrate judge's order may not present affidavits containing evidence not presented below.") (internal quotation omitted). Even when a magistrate judge's order is subject to de novo review, a party who wants to augment the record must file a separate motion for leave to do so. *See* Civ. Local Rule 72-3(b). Unless such a motion is made and granted, "the Court's review and

[3] To be sure, de novo review might be available when the subpoenaing party obtained the "subpoena on a freestanding basis independent of a complaint or litigation," or files an application under 28 U.S.C. § 1782, because in those scenarios, "the subpoena is [effectively] its own civil case." *In re DMCA Subpoena*, 441 F. Supp. 3d at 880; *see also Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 2023 WL 2477889 at *1 (S.D.N.Y. Mar. 13, 2023) (distinguishing *CPC Patent* because it involved "a decision to dismiss a Section 1782 application," whereas "[t]his case is a traditional discovery dispute …"). Those are not the situations presented here.

determination of a motion filed pursuant to Civil L.R. 72-3(a) shall be upon the record of the proceedings before the Magistrate Judge." Civil L.R. 72-3(c).

The Sanctioned Attorneys violated these rules by augmenting the record without leave and relying on new declarations and exhibits. *See supra* Section II. The Sanctioned Attorneys now primarily rely on those new declarations to challenge the Sanction Order, and those declarations can be identified in the opening brief as citations to "ECF 23-1" and "ECF 23-2." They say the purpose of those declarations is to "supplement th[e] record with additional detail" and claim those declarations provide "abundant" additional information. Mot., at 2:27; 23:9. A word search of their opening brief shows they are cited approximately 53 times and 25 times, respectively. In their brief, the Sanctioned Attorneys state that the "[r]ecord citations are primarily to materials before the Magistrate Judge," but that statement is false. Mot., 2:25-26. There appear to be very few citations to that record. At the same time, the Sanctioned Attorneys have the cheek to suggest that Judge Hixson erred by ignoring those declarations. *See id.* at 11:26-28; *see also* ECF No. 23 at 1:9. The Sanctioned Attorneys' position that Judge Hixson's orders are subject to de novo review only makes matters worse for them, because it highlights their failure to seek leave to augment the record under Local Rule 72-3(b).

This situation results in two separate grounds for denial of the motion. First, because the opening brief is primarily supported by inadmissible evidence, most of the factual assertions cannot be credited. The Sanctioned Attorneys have placed the Court in the position of having to hunt for the statements that are properly supported by the record, while weeding out the rest.

Second, the Ninth Circuit has held in the context of a party who attempted to augment the record that "[d]enial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012). Where, as here, a "local rule expressly permits a motion to be denied for failure to comply," a denial on that basis is reviewed under a deferential abuse of discretion standard. *See In re Meshbahi* 280 Fed. Appx. 592, 593 (9th Cir. 2008); *see also* Civil L.R. 1-4 ("Failure by counsel or a party to comply with any duly promulgated local rule … may be a ground for imposition of any authorized

sanction.”). The circumstances here do not involve a minor violation arising from an innocent oversight: instead the motion largely *relies* on the rule violation.[4]

### B. Under Local Rule 72-2(d), The Motion Seeking Review Of The Sanction Order Is Already Deemed Denied

With respect to a motion for relief from a non-dispositive pretrial order of a magistrate judge, Civil Local Rule 72-2 states that “if no order denying the motion or setting a briefing schedule is made within 14 days of filing the motion, the motion shall be deemed denied.” The Sanctioned Attorneys filed their motion for relief from the Sanction Order on July 2, 2026. *See* ECF No. 23. By July 16, 2026, no order denying the motion or setting a briefing schedule was issued. *See generally* Docket. Accordingly, Judge Hixson’s Sanction Order has already been “deemed denied” by operation of Local Rule 72-2, and the only issue remaining to be decided is his later Fee Order.

## V. The Sanctioned Attorneys Have Not Met Their Burden As To The Sanction Order

### A. The Sanctioned Attorneys Identify No “Clear Error” Concerning The Facts

A magistrate's factual determinations are reviewed for “clear error.” *Laatz*, 2024 WL 4487355, at *1. Judge Hixson’s Order began with a ten-page-long recitation of the factual and procedural history of this case, with citations to the record for every fact, including admissions made in the Sanctioned Attorneys’ original declarations and briefing. *See* Sanction Order, at 1:21-10:20. For the most part, the Sanctioned Attorneys do not take issue with Judge Hixson’s recitation of the facts or the evidence he cited. To the limited extent they do, their arguments largely rely on excuses that contradict the undisputed evidence in the record, misleading omissions, or their new, inadmissible declarations (*see* Section III.A above). Each excuse is addressed below.

#### 1. Bogus Excuse No. 1: The Sanctioned Attorneys “Exhausted” Party Discovery Before Serving The Subpoenas

The Sanctioned Attorneys claim that they served the subpoenas only after “exhausting” “every available party discovery device,” such as document requests and interrogatories. Mot., at 1:25-28; 6:9-11. They also claim Judge Hixson erred by finding they failed to take reasonable steps to avoid imposing undue burden. *See id.* at 17:28-18:1. The record contradicts that position on

[4] As stated in Section VII below, the Non-Parties alternatively request leave to submit a responsive declaration if their request to strike or disregard the new declarations is denied.

numerous grounds. First, the Sanctioned Attorneys admitted that all they had to do to obtain the information they wanted was ask for a declaration from *Patel* counsel, but as Judge Hixson found, they only did that after the Non-Parties disclosed in their motion to quash that they would be moving for sanctions. *See* Sanction Order, at 16:16-20; *see also* ECF No. 1 at 21:5-6 (stating in motion to quash, "Mr. Krivoshey and Smith Krivoshey, PC will also seek fees and/or other sanctions via separate motion."). There is no dispute about this fact, because the Sanctioned Attorneys admitted as much in their briefing before Judge Hixson. *See* ECF No. 10, 14:13-15 (admitting, "GT's requested that nonparties Dovel and Bursor provide sworn declarations describing their relationship with former counsel in the *Patel* litigation *after Mr. Krivoshey submitted his own declaration stating the same* [in support of the motion to quash]") (emphasis added).

Second, the Sanctioned Attorneys say they had concerns about the fact that the JPAs they obtained from the *Patel* plaintiffs were not executed by the plaintiffs. *See* Mot., at 5:13-15; 6:11. They fail to disclose to the Court that they moved to compel executed versions from the *Patel* plaintiffs on February 12, 2026, after serving their subpoena on the Non-Parties. *See* ECF No. 13-2 at 3:17-18 (order on motion to compel describing date of filing). None of the Sanctioned Attorneys' arguments about the relevance of the executed JPAs explain why they could not get what they wanted from the *Patel* plaintiffs. The fact that they moved to compel shows that they knew they could.[5]

Third, there is no evidence in the record that the defendant in *Patel* ever served a request for admission or an interrogatory directly asking whether Mr. Krivoshey continued to be involved. After the Non-Parties pointed this out in connection with their motion for sanctions, the Sanctioned Attorneys improperly augmented the record with an interrogatory they served asking generally about other individuals who may have had a financial interest in the case. They now argue for the first time that the subpoena was justified because the *Patel* plaintiffs failed to fully answer it. *See* Mot., at 6:9-

[5] This is the second misleading statement the Sanctioned Attorneys have made to the Court about the JPAs. When opposing sanctions, they told Judge Hixson that the first and second JPAs were "incomplete," suggesting there were seeking disclosure of undisclosed terms that "implicat[ed] [Mr. Krivoshey's] possible ongoing involvement in *Patel*." ECF No. 10 at 12:2. The Non-Parties identified that misrepresentation in their reply brief, and the Sanctioned Attorneys now admit that those JPAs were just missing the new plaintiffs' signatures. Mot., 5:13-15; 6:11.

11. If the interrogatory response was deficient, the remedy was a motion to compel, not a subpoena to nearly every current and former opposing counsel on the case.

Fourth, it is undisputed that Mr. Krivoshey's deposition was staged to occur before the deposition of the *Patel* plaintiff's counsel, and that the Sanctioned Attorneys did not disclose that fact when asked about the order of depositions. Sanctioned Attorney Elie-Meyers admitted that he had told the parties that the deposition of the *Patel* plaintiffs' counsel would occur first, but "'neglected to mention'" that the date had been rescheduled to occur afterwards. *See* Sanction Order, 8:14-15 (quoting original Elie-Meyers Declaration). The reasonable inference is that this was no oversight, because the discussion arose in the context of the Non-Parties' objection that the *Patel* plaintiffs' counsel should be deposed first, and it is undisputed that Mr. Elie-Meyers paused for nearly a full minute to "check his records" when asked about the order of depositions. *Compare* ECF No. 9-1 at ¶ 31 *with* ECF No. 10-2 at ¶ 14.

**2. Bogus Excuse No. 2: The Sanctioned Attorneys Offered To Narrow The Scope Of The Subpoena**

The Sanctioned Attorneys state that Judge Hixson erred by finding that they "did not offer to narrow the scope of the subpoena." Mot., at 18:8 (citing Sanction Order, at 6:21-17:8). Relying in part on the inadmissible new declarations, they also state that they tried to confer with the Non-Parties, but "every attempt to negotiate was rebuffed by Krivoshey and his partner's immediate demands that GT's withdraw the subpoena and threats of sanctions." *Id.* at 18:10-12. They also argue Judge Hixson erred because "Elie-Meyers did dispute Krivoshey's account [of the meet and confer] and addressed those events in detail." *Id.* at 18:25.

Judge Hixson addressed that same argument in his Sanction Order, explaining that the Sanctioned Attorneys' declarations were general and contained little substance, and failed to rebut numerous facts in Mr. Krivoshey's 13-page declaration:

> [Elie-Meyers] does not dispute that during the meet and confer call for the Second Subpoena, he refused to continue Krivoshey's deposition after Krivoshey pointed out the facial deficiencies with the Subpoena; he refused to provide a copy of the First Subpoena or answer questions about that Subpoena; *he refused to tell the Non-Parties which documents GT had obtained from the Patel Plaintiffs and would not communicate what documents GT was seeking*; he relayed incorrect information that Dovel's deposition was scheduled to occur before Krivoshey's deposition and told

> Krivoshey that he would know what documents were needed after deposing Dovel; and he did not disclose that fact discovery was limited to the new *Patel* Plaintiffs. *See* Krivoshey Decl. ¶¶ 29–40; *see generally* Elie-Meyers Decl. *Nor does Elie-Meyers dispute that at the time of call, GT had received discovery from the Patel Plaintiffs that was responsive to the Second Subpoena that he refused to disclose to the Non-Parties*.

Sanction Order, at 16:26-17:8 (emphasis added); *see also id.* at 19:7-14 (discussing lack of substance in Harper Declaration); *see also* ECF Nos. 9-1, 10-1, 10-2 (Krivoshey, Harper, and Elie-Meyers declarations). In their opening brief, the Sanctioned Attorneys do not cite anything in the record establishing Judge Hixson's findings in the above quoted paragraph was "clear error."

Finally, the Sanctioned Attorneys imply that the Non-Parties were uncooperative because two other current or former counsel in the case agreed to "produce a declaration providing the adequacy information that GT's was seeking" after they received a subpoena. Mot., at 7:19-20 18:13-14. The truth is, the Sanctioned Attorneys never asked the Non-Parties for a declaration, and they refused to disclose the purpose of the subpoena during the February 9, 2026, meet and confer call. *Compare* ECF No. 9-1 at ¶ 37 (stating Elie-Meyers refused to answer question about whether "Defendant believed that Mr. Krivoshey continued to work on this matter behind the scenes, or whether there was an undisclosed agreement between Smith Krivoshey and Dovel & Luner concerning this matter") *with* ECF No. 10-2 at ¶¶ 11-14 (containing no denial). The Sanctioned Attorneys also admitted that they never asked the other subpoena recipients for declarations until *after* the Non-Parties moved to quash and warned of sanctions. *See* ECF No. 10, 14:13-15; *see also supra* Section IV.A.1. The fact that they were able to get the information they wanted from the *Patel* plaintiffs' counsel within days of asking for it confirms there was never any need for the subpoena.

#### 3. Bogus Excuse No. 3: Judge Olguin "Directed" The Sanctioned Attorneys To Serve The Subpoenas

The Sanctioned Attorneys repeatedly state that the subpoenas were served in accordance with "Judge Olguin's directive," implying that he had approved the subpoenas; or at the very least, that the subpoenas were within the scope of his order reopening discovery for a limited period of time. Mot., at 12:3-6; 13:21; *see also id.* at 4:17-18 (stating they "understood the court's order reopening discovery" to include the subpoenas here). There are two separate reasons why that argument is

incorrect: (a) there was no request to reopen third-party discovery, and (b) the evidence shows that the Sanctioned Attorneys knew the subpoena was untimely when they served it.

By way of brief background, fact discovery in the underlying *Patel* case closed in April 2021, but new plaintiffs were later added to the case. *See* Sanction Order, at 2:20-28. At the parties' request, "the *Patel* court re-opened discovery '*related solely to the newly added named plaintiffs*,'" and the parties later sought a second extension "'due to Plaintiffs' unavailability during the week of Christmas'" and the need to file any motions "arising from [their] depositions.'" *Id.* at 3:3-14 (emphasis added). Judge Hixson found—and the Sanctioned Attorneys do not deny—that they "did not request leave to serve third-party subpoenas." *Id.* at 3:10. The Sanctioned Attorneys now contend that Judge Olguin's order reopening limited discovery necessarily would have contemplated subpoenas to every current and former plaintiff law firm involved in the case. However, they do not dispute Judge Hixson's finding that they never told Judge Olguin that was their intention (and presumably never told that to opposing counsel either). *See id.* at 3:3-14. If such discovery had truly been contemplated—and if the Sanctioned Attorneys had been candid with Judge Olguin about that intention—then it is highly doubtful Judge Olguin would have approved.

<u>Second</u>, and worse, by the time the Sanctioned Attorneys served the subpoenas, the deadline to enforce them had passed, and they were served in violation of the scheduling order in *Patel*. The discovery cut-off in the *Patel* action was March 5, 2026. However, that "[was] not the date by which discovery requests must be served; it is the date by which all discovery, **including all hearings on any related motions**, [was] to be completed." ECF No. 13-2 at 3:10-12 (bold in original). On February 12, 2026, in the *Patel* action, the Sanctioned Attorneys moved to compel production of the executed versions of the JPAs (i.e., the same JPAs that they now say they were seeking from the Non-Parties here) but the motion was denied as untimely. *See id.* at 2:14; 3:7. Magistrate Judge Roberts criticized the Sanctioned Attorneys for making arguments about the schedule that they "knew" were wrong. *Id.* at 5:5.

The same necessarily holds true here. At the time of the February 9, 2026, meet and confer call with the Non-Parties, the Sanctioned Attorneys knew that it was impossible to timely hear any disputes about discovery by the March 5, 2026 discovery cut-off for the same reason it was too late

to move to compel production of the JPAs in underlying proceedings. The Non-Parties' objections to the subpoena were not due until February 18, 2026, less than 21 days prior to March 5, 2026. A discovery motion must be made at least 21 days prior to a hearing on a motion to compel in the Central District of California, and 35 days prior to a hearing in the Northern District of California. Despite knowing that it was impossible to comply with the March 5, 2026 cut-off, the Sanctioned Attorneys "refused to continue the compliance date unless the *Patel* Plaintiffs agreed to extend discovery—something the Non-Parties had no control over." Sanction Order, at 17:9-11.[6]

**4. Bogus Excuse No. 4: The Sanctioned Attorneys Withdrew The Subpoena Before Compliance Was Required**

The Sanctioned Attorneys claim that when the Non-Parties moved to quash the subpoena, Mr. Krivoshey's supporting declaration provided them the information they were seeking all along, and so the fact that they withdrew the subpoena after obtaining that declaration demonstrates they were not acting in bad faith or with an improper motive. *See* Mot., at 16:4-6 ("a party that withdraws a subpoena once it has the information sought is pursuing information, not harassing the witness"). The Sanctioned Attorneys omit that the withdrawal occurred at 1 a.m. Eastern time, on the February 18 compliance date, a full week after the motion to quash was filed. ECF No. 9-1 at ¶ 48. There are two other reasons why the Sanctioned Attorneys' argument lacks merit.

From a factual standpoint, the argument is nonsensical because it is undisputed that during the meet-and-confer call, Sanctioned Attorney Elie-Meyers refused to disclose the purpose of the subpoena and never asked for a declaration. *Compare* ECF No. 9-1 at ¶ 37 *with* ECF No. 10-2 at ¶¶ 11-14 (containing no denial). So, the only reason the Sanctioned Attorneys got Mr. Krivoshey's declaration was because they forced the Non-Parties to expend close to $50,000 in attorney time moving to quash and to shorten time, which included drafting that declaration. *See* ECF No. 28 at 6:4-7 (disclosing approximate hours and time up to that point).

---

[6] The Sanctioned Attorneys state that they could not extend the compliance date for Mr. Krivoshey's deposition because "that would put the compliance date after the *Patel* discovery cutoff," and Sanctioned Attorney Elie-Meyers makes that same statement under oath. Mot, 8:4-5; ECF No. 23-2 at ¶ 16. That statement comes perilously close to perjury given Magistrate Judge Roberts' March 10, 2026, finding that the Sanctioned Attorneys "knew" their position about the *Patel* schedule was wrong. *See* ECF No. 13-2 at 5:5.

From a legal standpoint, withdrawing an invalid subpoena does not excuse sanctionable conduct when the withdrawal is made after the recipient moves to quash, because by then, the damage is already done. *See Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *5 (C.D. Cal. Feb. 28, 2020). ("The Court finds this thirteenth hour withdrawal to be 'too little too late,' and that such conduct is sanctionable"). Even if withdrawing a subpoena renders a motion to quash moot, that does not moot a related motion for sanctions. *See id*.; *see also Equal Emp. Opportunity Comm'n v. Dillon Co*., 2010 WL 4134696, at *1 (D. Colo. Oct. 12, 2010) (awarding sanctions despite the defendant's withdrawal of the subpoena). Judge Hixson correctly cited these principles, including the *Duong* decision, in the Sanction Order. *See* Sanction Order, at 22:17-20.

#### 5. Bogus Excuse No. 5: Discovery Raised Colorable Questions About Whether Mr. Krivoshey Continued To Be Involved In *Patel*

The Sanctioned Attorneys imply that their interest in Mr. Krivoshey was prompted by the JPAs and the depositions of the *Patel* plaintiffs, which supposedly raised new and "unanswered" questions about his "ongoing role or financial interest" in the *Patel* matter. Mot., 6:13-24. There are two problems with that excuse. <u>First</u>, a party may be sanctioned for serving a subpoena that is issued based on "nothing more than speculation" that the third-party may have unique, relevant documents. *See Duong*, 2020 WL 2041939 at *10. Judge Hixson found that was the case here (*see* Sanction Order, 17:27-18:9), and the Sanctioned Attorneys provide no basis to conclude that finding was in error. The uncontroverted evidence in the record shows that during the meet and confer call, Mr. Elie-Meyers could not (or would not) identify a single document the defendant wanted from the Non-Parties that it could not get from the *Patel* plaintiffs or their counsel. Sanction Order, at 17:1-2; *see* also ECF No. 9-1, at ¶ 33. The Sanctioned Attorneys also admit that none of the evidence they obtained pointed to the Non-Parties' continued involvement, other than speculation based on their own interpretation of the second JPA. *See* Mot., 5:16-6:24. Judge Hixson explained, for example, that "[n]one of the *Patel* Plaintiffs indicated that they knew or had contact with Bursor & Fisher, Krivoshey, or Smith Krivoshey; nor did they indicate that they were aware of any continuing involvement by the Non-Parties in the Patel Action." Sanction Order, at 3:27-4:2. The Sanctioned Attorneys do not dispute that finding. *See. id.* at 6:13-24. What is more, in their opposition before

Judge Hixson, they never identified any specific, unique documents they wanted from the Non-Parties that were not already available from the *Patel* plaintiffs. *See* Sanction Order, 16:1-20.

Second, it is undisputed that Sanctioned Attorney Harper had accused Mr. Krivoshey of planning to manage the case from "behind the scenes" five months before discovery ever reopened (ECF No. 9-1 at ¶ 11), and Judge Hixson cited this fact in his Sanction Order as further evidence of bad faith. Sanction Order, at 17:28-18:1. The Sanctioned Attorneys' interest in Mr. Krivoshey had nothing to do with the JPA or the plaintiffs' testimony, because they had already decided he continued to be involved in the case before seeing a shred of evidence, and none of the evidence they obtained supported their preconceived theory. The fact that they pursued the subpoena anyway supports a finding of bad faith and an improper purpose. *See Duong*, 2020 WL 2041939 at *10.[7]

Finally, the Sanctioned Attorneys now argue—for the first time here—that under the JPA, the Non-Parties "could seek a fee award out of any recovery and … current counsel [i.e., Dovel] could not object even if the class's interest would require it." Mot., at 6:2-3. As a preliminary matter, that argument is incorrect, because the Non-Parties have already stated in open court that "Dovel & Luner retains discretion to oppose any request for fees." ECF No. 9 at 4:20. The Non-Parties would be estopped from contending otherwise. More fundamentally, the argument is waived because it was not made before, and it rests on Sanctioned Attorney Harper's inadmissible new declaration providing his own self-serving—and incorrect—interpretation of the JPA.

### B. The Sanctioned Attorneys Fail To Establish The Sanction Order Was Contrary To The Law

#### 1. Depositions Of Opposing Counsel Are Not Routine And "Ordinary Advocacy"

The Sanctioned Attorneys argue that serving deposition subpoenas on the homes or businesses of current and former opposing counsel was "ordinary advocacy," and that Judge Hixson's order rests on the mistaken premise that "there is something inherently suspect about directing

[7] Throughout these proceedings, the Sanctioned Attorneys have tried to justify their behavior by denigrating the Non-Parties and the *Patel* plaintiffs' current counsel Dovel & Luner, and making incorrect statements concerning the circumstances surrounding Non-Parties' withdrawal in *Patel*. Judge Hixson correctly disregarded those irrelevant attacks in his Sanction and Fee Orders. To the extent that this Court requires more information about the events leading up to the withdrawal, details are provided in the record at ECF No. 13 at 12:18-15:23.

discovery to a lawyer, here a former opposing counsel." Mot., at 12:3; 16:17-18. This attitude explains why Sanctioned Attorney Harper has at least twice been faulted by courts for harassing opposing counsel with deposition subpoenas, here and in a state court matter involving two government attorneys. *See* ECF No. 28-6 at 9-10. Discovery on opposing counsel is subject to a "heightened standard" to protect against abuse. *Silver v. BA Sports Nutrition, LLC*, 2020 WL 6342939 at *2 (N.D. Cal. Oct. 29, 2020). That rule extends to former counsel. *See Monster Energy*, 2020 WL 2405295 at *6-7 (quashing subpoenas of former counsel). Among other factors, the standard requires a showing that "no other means exist to obtain the information." *Zhu v. Li*, 2021 WL 3910720 at *2 (N.D. Cal. Sept. 1, 2021). The Sanctioned Attorneys cannot meet that standard for the reasons shown in Section IV.A above. The standard also requires a showing that the evidence sought is "crucial to the preparation of the case." *Id.* The Sanctioned Attorneys cannot meet that element either because they have consistently failed to articulate precisely *what* unique evidence they wanted from the Non-Parties, and refused to disclose that information during the meet-and-confer. *See* Sanction Order, 7:16-19; *Compare* ECF No. 9-1 at ¶ 37 *with* ECF No. 10-2 at ¶¶ 11-14. The Sanctioned Attorneys have never tried to justify their behavior in light of the governing standard.

### 2. The Sanctioned Attorneys' Own Authorities Show Sanctions Are Not Limited To Costs Of Complying With The Subpoena

The Sanctioned Attorneys argue that Rule 45(d)(1) sanctions apply "primarily" to the costs of complying with a subpoena, rather than litigating the motion to quash, motion to shorten time, and motion for sanctions. *See* Mot., at 17:10-21 (citing, e.g., *Scientific Applications & Research Assocs. (SARA), Inc. v. Zipline Int'l., Inc.*, 2024 WL 5011603 at *2 (N.D. Cal. Dec. 6, 2024) ("*SARA*")). From that premise, they say that sanctions are impermissible because the Non-Parties declined to comply with the subpoena, and thus as a matter of law, suffered no undue burden. *See id.*

However, the Sanctioned Attorneys fail to address most of the decisions that Judge Hixson cited when rejecting the same argument they make here, including decisions holding that last-minute withdrawals of subpoenas do not eliminate the burden associated with moving to quash. *See* Sanction Order, at 22:12-18 (citing, e.g., *Duong*, 2020 WL 2041939 at *5, and *Hill v. Robert's Am. Gourmet Food, LLC*, 2013 WL 5118943, at *4 (N.D. Cal. Sept. 13, 2013)). Judge Hixson also cited this Court's

decision in *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 7212308 at *3 (N.D. Cal. Dec. 13, 2016) (Corley, J.), and the Sanctioned Attorneys attempt to distinguish that case by saying that the sanctioned party had "no explanation" for the basis of the subpoena. *See* Mot., 17:5. That statement just confirms that *Beaver County* is on point here, because: (a) Judge Hixson cited evidence that the Sanctioned Attorneys refused to disclose any documents they wanted from the Non-Parties that were unavailable from the *Patel* plaintiffs or their counsel (Sanction Order, at 7:14-16; 8:16-18; 17:7-8); and (b) the Sanctioned Attorneys refused to disclose the purpose of the subpoena during the meet-and-confer call. *See* ECF No. 9-1 at ¶ 37; ECF No. 10-2 at ¶¶ 11-14 (containing no denial). Their assertion that they believed the subpoena had a "colorable" purpose ignores all the other problems about subpoenaing opposing counsel, failing to disclose the purpose of the subpoena, seeking information available from the parties, and their sustained lack of candor throughout the whole process. *See* Section IV.A above.

Moreover, the Sanctioned Attorneys rely on authorities denying sanctions where bad faith or other relevant factors were not present. *See*, *e.g.*, *SARA*, 2024 WL 5011603 at *2-4 (making no finding of bad faith, improper purpose, etc.); *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351 at *8 (N.D. Cal. Oct. 5, 2015) (Corley, J.) (finding no improper purpose or bad faith). *Ferguson v. Smith*, 2023 WL 8868815 at *2 (D. Or. Dec. 22, 2023) ("Notably, Movants did not allege that Plaintiffs served the subpoena in bad faith or for an improper purpose"). And yet at the same time, those same authorities hold that—regardless of compliance costs—sanctions are permissible when a "a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *SARA*, 2024 WL 5011603 at *2 (internal quotation omitted); *see also Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (holding that "absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, Rule 45(c)(1) sanctions are inappropriate."). This Court clearly stated in *Fujikura* that bad faith "*is sufficient for sanctions*." *Fujikura*, 2015 WL 5782351 at *8 (emphasis added).

### 3. The Sanctioned Attorneys Admit That Under *Mount Hope*, A "Facially Defective" Subpoena Is Sanctionable

The Sanctioned Attorneys agree that under *Mount Hope*, one of the criteria that may support sanctions is when a person serves "a facially defective subpoena." Mot., at 20:3 (citing *Mount Hope*, 705 F.3d at 429). They also admit that the subpoena was defective in almost every respect, including ambiguity about the recipient, lack of notice to the *Patel* plaintiffs, lack of personal service on Mr. Krivoshey, and lack of witness fees. *See id.* at 19:22-22:5. Judge Hixson cited other defects too, such as seeking documents "that would be in the *Patel* Plaintiffs' control," and that "fact discovery was limited to the new *Patel* Plaintiffs." Sanction Order, at 16;13; 17:5. The Sanctioned Attorneys argue that all of these defects simply rendered the subpoena "unenforceable," not sanctionable. Mot., 21:26. But that position begs the question: when would a "facially defective subpoena" *ever* result in sanctions if not here?

Moreover, in the proceedings before Judge Hixson, the Non-Parties argued that it was the "combination" of defects concerning lack of notice, improper service, ambiguity about the recipient, and fees that supported an inference of bad faith and recklessness, especially in light of other more serious problems concerning the failure to seek information from the *Patel* plaintiffs, the close of discovery, and the refusal to continue the compliance date. *See* ECF No. 13 at 9:20-24. The Sanctioned Attorneys have never responded to that argument; instead, they parse out the procedural defects one-by-one, while ignoring the bigger picture issue raised by the Non-Parties and by Judge Hixson. *See* Mot., at 19:22-22:5. Judge Hixson properly focused on the "plethora of defects," and the Sanctioned Attorneys cite no authority for the proposition that he erred by doing so. *See* Sanction Order, at 14:10-15:23; *see also id.* at 15:19-20 ("GT knowingly issued a Subpoena that contained several defects"). The primary decision that the Sanctioned Attorneys cite denying sanctions, *Fujikura*, is distinguishable because it involved no finding of bad faith or improper purpose. *See Fujikura*, 2015 WL 5782351 at *8.[8]

[8] The fact that *Fujikura* found no bad faith or improper purpose is unsurprising given that the portion of the brief seeking sanctions was limited to four sentences containing a cursory legal argument. *See Fujikura* Mtn. to Quash, at 20:1-12 (ECF No. 1).

### 4. The Sanctioned Attorneys' Arguments Concerning Rule 26(g) Lack Merit And Are Waived

The Sanctioned Attorneys' arguments concerning Rule 26(g) are waived because they were not made before Judge Hixson. *See* Sanction Order, at 22:26-27 ("Further, GT does not respond to the Non-Parties' request for monetary sanctions under Rule 26"); *see also*, *e.g.*, *Greenhow*, 863 F.2d at 638. This time, they mainly reiterate arguments already addressed above concerning bad faith and serving subpoenas with an improper purpose. *See* Mot., at 22:10-11; 22:22-23:9.

The Sanctioned Attorneys also contend that the propriety of a discovery request is "judged objectively at the time of signing," and suggest that Rule 26(g) imposes no check on attorney misconduct that occurs after signing the discovery request. *See id.* at 22:12-15. From that theory, they argue that "most of the [Sanction] Order" cites events that occurred after the subpoena was signed, such as lack of notice, the method of service, and the failure to tender fees, all of which happened "after Harper signed it." *See id.* at 22:17-18.

For one thing, the argument has no legal support. Courts often cite conduct that occurs after service of a discovery request when evaluating sanctions, such as misconduct during meet and confer efforts and misconduct related to enforcing discovery requests. *See*, *e.g.*, *Duong*, 2020 WL 2041939 *5 (describing failures during meet and confer process and late withdrawal of subpoena); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 WL 1285588 at *1-2 (same); *Beaver County*, 2016 WL 7212308 at *3 (subpoenaing party moved to compel in wrong district). The *Oregon RSA* decision that the Sanctioned Attorneys cite only held that sanctions are resolved based on an "objective standard," but did not hold that courts are precluded from considering conduct like what occurred here. *See Oregon RSA No. 6 v. Castle Rock Cellular of Or. Ltd. P'ship*, 76 F.3d 1003, 1007 (9th Cir. 1996). Likewise, the advisory committee notes to Rule 26(g)'s 1983 amendments emphasize the "significant problems" of abusive discovery in all its forms.[9] *See* Fed. R. Civ. P. 26 advisory committee's notes.

[9] The Sanctioned Attorneys' citation to *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990), is inapposite because it did not involve Rule 26 or a discovery dispute.

The Sanctioned Attorneys' new argument also ignores some of the bigger problems here that would have been present at the time of signing, like seeking discovery that was always available from the *Patel* plaintiffs; or signing a subpoena when fact discovery was limited to the plaintiffs; and seeking third-party discovery after the deadline to enforce it had passed. Therefore, even if the Sanctioned Attorneys' understanding of the law were correct, it would not support their position.

### C. The Sanctioned Attorneys' Argument Concerning The CLE Sanction Is Misleading And Lacks Merit

In their first motion seeking relief from the Sanction Order, the Sanctioned Attorneys challenged the basis for sanctions generally, but only argued the fee award was "contrary to the law," not the CLE sanction. *See* ECF No. 23, at 5:20-28. Now, in a footnote, the Sanctioned Attorneys argue Judge Hixson erred by relying on *Hawkins*, because he supposedly overlooked that the *Hawkins* court "vacated the identical CLE sanction against Harper, holding that it 'cannot stand.'" Mot., 23:26-28 (quoting *Hawkins*, 2020 WL 6150040 at *10). Here again, the Sanctioned Attorneys are not being entirely candid with the Court. In *Hawkins*, District Judge Miller largely upheld Magistrate Judge Major's sanction order, stating he was "highly critical" of Harper for "gamesmanship," "bad faith" and "willful" misconduct, and he agreed that monetary sanctions were warranted. *Hawkins*, 2020 WL 6150040 at *4, 8, 10. The only reason he sustained Harper's objections to the CLE sanction was that Harper had not been given notice of the potential for CLE sanctions and the issue had not been briefed. *See id.* at *9-10 (addressing CLE sanctions). Here, however, the Non-Parties raised the issue of CLE sanctions in their opening brief. *See* ECF No. 9 at 2:18-3:2; 22:17-23:16.

From a legal standpoint, CLE sanctions are permissible and warranted given the repeated judicial findings that Mr. Harper appears largely indifferent to monetary sanctions. *See* Sanction Order, at 20:24-26; *Hawkins*, 2020 WL 6150040 at *4. The Ninth Circuit holds that the purpose of sanctions "may be to deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter." *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012). "District courts wield significant discretion in determining appropriate sanctions." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 6290374, at *5

(N.D. Cal. Oct. 27, 2020) *aff'd sub nom. Nix v. Major League Baseball*, 2022 WL 4482455 (9th Cir. Sept. 27, 2022). This includes ordering offending attorneys to attend—or even to *present*—CLE on subjects related their misconduct. *See*, *e.g.*, *Salmon v. CRST Expedited, Inc*., 2016 WL 3945362, at *1-4 (N.D. Okla. July 19, 2016) (ordering monetary sanctions and requiring that plaintiff, a licensed legal intern that had "just opened a legal practice" lecture students at a local law school about the dangers of filing a lawsuit as a licensed legal intern or a new attorney). Judge Hixson acted within his discretion in considering Harper's history of prior misconduct and whether monetary sanctions alone would serve as an effective deterrent. *See Koji IP, LLC v. Renesas Electronics Am., Inc*., 2025 WL 980796, at *19 (N.D. Cal. Mar. 31, 2025) (citing prior misconduct and imposing CLE sanctions); *In re Vialet*, 460 Fed. Appx. 30, at *3 (2d Cir. 2012) (affirming sanction order requiring attendance at live CLE courses in addition to regular, required CLE courses); *see also* American Bar Assoc. Model Rules for Lawyer Disciplinary Enforcement ("ABA Rules"), Rule 10(C)(3) and Commentary (permitting the consideration of any "aggravating or mitigating factors" and explaining that "aggravating" factors include prior misconduct).

It also is worth noting that Judge Hixson's two-hour CLE sanction was far more lenient than the eight hours ordered by Magistrate Judge Major in *Hawkins*, and the Non-Parties' request for an order requiring the Sanctioned Attorneys to publicly present a CLE on ethics and discovery, rather than just attend. *See Hawkins*, 2020 WL 6150040 at *4; ECF No. 9 at 22:17-28 (citing, e.g., *Salmon v. CRST Expedited, Inc*., 2016 WL 3945362, at *1-4 (N.D. Okla. July 19, 2016)). And while it was certainly within Judge Hixson's discretion to issue a lesser sanction, nothing would prevent this Court from *sua sponte* issuing an order to show cause why further CLE sanctions should not be issued in light of the sustained lack of candor presented in the Sanctioned Attorneys' opening brief here, and their gamesmanship in attempting to significantly augment the record without leave.

## VI. The Sanctioned Attorneys Have Not Met Their Burden As To The Fee Order

The Sanctioned Attorneys do not argue that Judge Hixson erred when he concluded that the Non-Parties' rates or amount of time they spent on the tasks were reasonable. Instead, they make two arguments concerning the availability of the fees generally. As shown below, neither has merit.

### A. The Argument That The Fees Are Punitive Rather Than Compensatory Is Waived And Lacks Merit

The Sanctioned Attorneys argue that a compensatory fee sanction is "'limited to the fees the innocent party incurred solely because of the misconduct,'" and contend Judge Hixson erred because they believe "the fees would have been incurred regardless of the procedural issues the Sanctions Order identified." Mot., at 23:15-24:2 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017)). Once again, the Sanctioned Attorneys are impermissibly making a new argument that they did not make before. They previously focused on arguments that they have now largely abandoned, such as their challenges to the Non-Parties rates, their staffing, and the amount of time spent on various tasks. *See generally* ECF No. 29. This alone is grounds for rejecting the new argument. *See Greenhow*, 863 F.2d at 638.

In any event, the new argument lacks merit because the Sanctioned Attorneys do not explain why or how the Non-Parties would have incurred fees regardless of all the problems with the subpoena. They say the Non-Parties "moved to quash on substantive grounds" like "exceed[ing] the scope of reopened discovery," and "sought information available from Plaintiffs' counsel," and appear to take the position that just because those issues were *also* relevant to sanctions, no fees are permissible. *See* Mot., at 24:2-9. None of the work here would have occurred but for the attorney misconduct at issue, and the Sanctioned Attorneys' own authorities show that is all that is required. *See Lu v. U.S.*, 921 F.3d 850, 861 (9th Cir. 2019). Consistent with that authority, Judge Hixson identified the work the Non-Parties did as a result of the attorney misconduct here, including spending time analyzing and meeting and conferring over a subpoena that never should have been served; filing a motion to quash and shorten time after the Sanctioned Attorneys refused to withdraw the subpoena or extend the compliance date; and moving for sanctions. *See* Sanction Order at 14:10-16:20; 22:6-25; Fee Order, at 8:19-23). Judge Hixson also cited authority supporting fees for such work, and the Sanctioned Attorneys do not address them. *See* Sanction Order, at 22:12-18 (citing *Duong*, 2020 WL 2041939, at *5 and *Hill*, 2013 WL 5118943 at *4). Nor do the Sanctioned Attorneys dispute that the time spent on a motion for sanctions is compensable (nor could they, given that the record shows they took that same position in other litigation). *See* ECF No. 9-9 at 3:8-9.

**B. Judge Hixson Correctly Rejected The Argument That Self-Represented Attorneys May Not Recover Sanctions**

Judge Hixson addressed at some length the argument that self-represented attorneys may not seek sanctions, concluding that such fees are available under Rule 26, Rule 45, and the Court's inherent powers. *See* Fee Order, 4:2-5. He explained that the Sanctioned Attorneys "acknowledged" that the "majority" of the cases they cited dealt with "'fee-shifting statutes'" which "'are intended to encourage litigants to retain independent counsel,'" and which involve policy considerations that are inapplicable here. *See id.* at 4:5-26 (citing *Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991) and *Elwood v. Drescher*, 456 F.3d 943, 947-48 (9th Cir. 2006)).[10] The Sanctioned Attorneys continue to rely on those same decisions without addressing Judge Hixson's reasoning when concluding they were inapplicable. Nor do they address Judge Hixson's conclusion that the Sanctioned Attorneys' position is contrary to Rule 45's "enhanced protections" for non-parties, and that if their position were adopted, it would "grant them license to declare open season on attorneys," and avoid sanctions "simply because that attorney is representing themselves or their law firm." *Id.* at 5:4-20.

The Sanctioned Attorneys contend that "Rule 37 'does not allow a pro se lawyer to receive fees for his own time.'" Mot., at 25:3 (quoting *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002)). However, that does not preclude sanctions under Rules 26(g) and 45(d)(1), which are separate from Rule 37. *See Black v. Wrigley*, 2019 WL 2717212, at *9 (S.D. Cal. June 28, 2019) ("the restriction as to awarding sanctions to pro se attorneys under Rule 37 does not apply to those requests under Rule 45 …"). In their brief, the Sanctioned Attorneys note that Judge Hixson relied on *Black*, which focused on Rule 45, but they do not distinguish *Black* or explain why Judge Hixson erred by citing it, other than to assert without citation that Rule 45(d)(1) requires a showing of "income actually lost." Mot., at 25:6-13. The text of Rule 45(d)(1) includes no such restriction, and courts are required to construe the Federal Rules of Civil Procedure according to their "plain meaning" and without interposing additional limitations that are not found in that text. *See In re Kirkland*, 75 F.4th 1030, 1042 (9th Cir. 2023) (holding the "plain meaning" rule of statutory

[10] *Massengale v. Ray*, 267 F.3d 1298, 1302-03 (11th Cir. 2001), is likewise inapposite because the decision turned on the language of Rule 11, and had nothing to do with sanctions under Rules 26 or 45.

construction applies to Rule 45); *see also* Fed. R. Civ. P. 45(d)(1). Rule 26(g) likewise does not prohibit pro se attorneys from recovering sanctions, and in any event, the Sanctioned Attorneys' argument about Rule 26(g) is waived for failure to raise it before. *See* Sanction Order, at 22:26-27 ("Further, GT does not respond to the Non-Parties' request for monetary sanctions under Rule 26").

Equally important, *Pickholtz* held that while a pro se litigant attorney cannot recover his own attorneys' fees under Rule 37, the Supreme Court "*requires*, the court to separately consider Pickholtz's motion for attorney fees under its inherent power, which is an independent basis for assessing sanctions, one not preempted by Rule 37." *Pickholtz*, 284 F.3d at 1377 (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 55 (1991)) (emphasis added). *Pickholtz* held that courts can and should award attorneys' fees to a pro se litigant attorney for their own time billed. *Id*. Consistent with Judge Hixson's reasoning here, "[f]ailure to do so … would place a pro se litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct, but not be liable for attorney fees to a pro se party." *Id*. Hence, even if the Sanctioned Attorneys were correct that a court's inherent authority is the only available vehicle for sanctions (it is not), under *Pickholtz*, this Court can and should uphold sanctions based on that inherent authority, for all of the same reasons already articulated in the Sanction Order.

**VII. Civil Local Rule 7-3(a) Objections To Evidence And Request For Exclusion, Or In the Alternative, Request To Augment The Record To Respond To The Sanctioned Attorneys' New Declarations And Exhibits**

Pursuant to Civil Local Rule 7-3(a), the Non-Parties object to the Sanctioned Attorneys' July 2, 2026 declarations and attached exhibits, denoted as "ECF 23-1" and "ECF 23-2" in the opening brief, for the reasons stated in Section III.A above. The Non-Parties ask the Court to strike and/or disregard them for purposes of the pending motion. Alternatively, if the Court overrules the Non-Parties' objections and considers the July 2, 2026, declarations of the Sanctioned Attorneys and/or the exhibits attached to either declaration, to avoid prejudice, the Non-Parties request leave to submit a declaration in response. They will be prepared to file it promptly if ordered to do so by the Court. Nonetheless, the Non-Parties respectfully submit that the better course would be to simply strike or refuse to consider the Sanctioned Attorneys' new evidence, and decide the motion on the basis of the record that was before Judge Hixson.

## VIII. Conclusion

The Sanctioned Attorneys fail to meet their high burden of showing that Judge Hixson erred when issuing the Sanction and Fee Orders. The Court should deny in full their request for relief.

Dated: October 23, 2026

Respectfully submitted,

/s/ Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com